**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Omnis Pleasants, LLC,[1] | ) Case No. 26-11169 (___) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO PAY**
**PREPETITION CLAIMS OF CRITICAL VENDORS, LIENHOLDERS,**
**AND 503(b)(9) CLAIMANTS; (II) CONFIRMING ADMINISTRATIVE**
**EXPENSE PRIORITY OF OUTSTANDING ORDERS; (III) DIRECTING**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PAYMENTS**
**IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

Omnis Pleasants, LLC, d/b/a Pleasants Power Station, as debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case, respectfully states the following in support of this motion (this "**Motion**"), and relies upon and incorporates by reference the *Declaration of David Hindman, as Chief Executive Officer of Omnis Pleasants, LLC, d/b/a Pleasants Power Station, in Support of Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**") filed concurrently herewith:[2]

**RELIEF REQUESTED**

1.      The Debtor seeks entry of interim and final orders (the "**Interim Order**" and "**Final Order**," respectively), substantially in the forms annexed hereto as **Exhibit A-1** and **Exhibit A-2** respectively, (a) authorizing, but not directing, the Debtor, in its sole discretion, to pay, in the ordinary course of business, the prepetition fixed, liquidated, and undisputed claims (collectively,

---

[1]   The last four digits of the Debtor's tax identification number are 2673.  The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia 26134.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

the "**Critical Vendor Claims**") owed to Critical Vendors, Lienholders, and 503(b)(9) Claimants (each as defined below and, collectively, the "**Vendors**") for goods, materials, supplies, and services rendered to the Debtor prior to the Petition Date (as defined below) in an amount not to exceed $3,270,000.00 on an interim basis and $4,020,000.00 on a final basis; (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtor prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtor to satisfy such obligations; (c) authorizing, but not directing, banks and other financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtor relating to satisfaction of the Critical Vendor Claims, whether such checks were presented or electronic-payment requests were submitted prior to or after the Petition Date; and (d) granting related relief, including scheduling a hearing (the "**Final Hearing**") to consider entry of the Final Order (the period of time before the Final Hearing, the "**Interim Period**").

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012 (the "**Standing Order**").

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and legal predicates for the relief requested herein are sections 105(a), 362(d), and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1 and 9013-1.

## BACKGROUND

### A. General Background

6. On July 26, 2026 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its financial affairs as a debtor in possession.

7. As of the date hereof, no request for the appointment of a trustee or examiner has been made, nor has any statutory committee been appointed or designated, in the Chapter 11 Case.

8. Information regarding the Debtor's history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Case can be found in the First Day Declaration, which is incorporated herein by reference.

9. The Debtor owns and operates a two-unit, 1,278-megawatt coal-fired power plant, together with related buildings, facilities, electrical generation infrastructure, and transmission powerlines, situated on approximately 190 acres of real property in Belmont, West Virginia (the "**Pleasants Power Station**" or the "**Plant**"). The Pleasants Power Station operates within the PJM Interconnection, LLC ("**PJM**") market region to provide its customers with energy and power.

**B.**      **Overview of the Debtor's Vendors**

10.      The Debtor relies on its Vendors to ensure the Pleasants Power Station stays operational in order to provide crucial power and energy supply to residential and commercial end-users throughout the PJM market.  Without strong vendor relationships, the Debtor's ability to continue to effectively run the Pleasants Power Station would be severely impacted.  Therefore, it is necessary that the Debtor continue to pay its Vendors on a timely basis so there is no disruption to the running of the Pleasants Power Station.

11.      The following table summarizes the estimated prepetition amounts that the Debtor seeks authority, but not direction, to pay to the Vendors pursuant to this Motion:

| Relief Requested | | |
|---|---|---|
| *Vendor Category* | *Interim* | *Final* |
| **Critical Vendors** | $1,310,000.00 | $1,710,000.00 |
| **Lienholders** | $1,410,000.00 | $1,550,000.00 |
| **503(b)(9) Claimants** | $550,000.00 | $760,000.00 |
| **Total** | $3,270,000.00 | $4,020,000.00 |

**(a)**      **Overview of Critical Vendors**

12.      The Debtor's business depends on an uninterrupted flow of goods and services from a variety of third-party vendors that provide critical resources for the sustained operation of the Pleasants Power Station.  Those critical resources include, but are not limited to, (i) procurement and shipments of inputs and raw materials for power generation, including coal, lime, uric acid, natural gas, and other specialty materials; (ii) Plant operational support, including the procurement of specialized equipment, general on-site maintenance of the Pleasants Power Station, related facilities, and related equipment, and the removal of various byproducts generated by the running of the Plant; (iii) health and safety assistance from vendors that ensure that the Pleasants Power Station is complying with various government imposed regulations, certain mandated safety

checks are conducted, and other related safety and environmental protocols are properly followed; and (iv) other related goods and services that are necessary for running the Pleasants Power Station. Maintaining the Debtor's supply chain without disruption is critical to the Debtor's ability to generate revenue.

13. For several months prior to the Petition Date, as further described in the First Day Declaration, the Debtor's prior management team caused the Debtor to fail to timely pay, or otherwise not pay at all, its vendor constituents. This in turn led to strained relationships and mistrust by several of the Critical Vendors. The Debtor's current management team is working diligently to improve the Debtor's relationships with vendors and rebuild goodwill through, among other things, timely paying for services and goods provided. Given the additional overlay of the Chapter 11 Case, the Debtor believes that failure to make payments to the Critical Vendors at this critical juncture could result in delayed delivery of goods needed to run the Pleasants Power Station or the termination of critical relationships that the Debtor's new management has worked to rebuild.

14. The Pleasants Power Station requires a significant amount of raw materials to operate and generate the requisite power that the Debtor has committed to generate through its existing contractual obligations. Failure to supply the requisite power generation to PJM could result in devastating consequences and would jeopardize the value of the Debtor at this critical juncture. Further, the Debtor operates in a highly regulated industry and requires the services provided by certain of its Critical Vendors to stay in compliance with federal, state, and local regulations. Failure to comply with these regulations may subject the Debtor to substantial monetary or operational penalties.

15. Accordingly, the Debtor, with the assistance of its advisors, undertook an extensive analysis of its current business operations, cash disbursements, and vendor database to identify critical business relationships and/or suppliers of critical goods and services. The Debtor has considered a variety of factors, including:

(i) whether a vendor is critical to maximizing property of the estate by providing much needed coal or other related materials necessary to maintain and operate the Pleasants Power Station during the sale process;

(ii) whether the vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtor's business operations;

(iii) whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms, including within a reasonable timeframe and within reasonable geographic proximity to meet the Debtor's needs;

(iv) whether the Debtor would be able to continue operating while transitioning business to an alternative supplier, if available, and how long such a transition would take;

(v) whether failure to pay all or part of a particular vendor's claim could cause the vendor to withhold goods owned by the Debtor, or to refuse to ship inventory, or to provide critical services on a postpetition basis;

(vi) the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

(vii) whether the likelihood that a temporary break in the vendor's relationship with the Debtor could be remedied through use of the tools available in the Chapter 11 Case;

(viii) whether the vendor is currently refusing to supply the Debtor with product, or is refusing to do so without cash up front; and

(ix) whether failure to pay a particular vendor could result in contraction of trade terms.

16. As a result of the above-described process and analysis, the Debtor identified a select group of Vendors (the "**Critical Vendors**") that are crucial to the Debtor's business and to the preservation of the value of the Pleasants Power Station, the Debtor's most valuable asset. The

Debtor believes that its relationships with these Critical Vendors may materially deteriorate without payment, thereby causing disruption to the Debtor's business operations if the Debtor is unable to pay the Critical Vendor Claims as provided herein.  Accordingly, the Debtor respectfully requests authority to pay the Critical Vendor Claims in an amount not to exceed $3,270,000.00 pursuant to the Interim Order and $4,020,000.00 pursuant to the Final Order.

### (b)    Overview of Lienholders

17.    As discussed above, the Debtor depends on a number of Vendors that transport coal and other materials via the Ohio River, as it would be impracticable to deliver the necessary quantities by any other means of transportation.  These goods and materials are necessary to run the Pleasants Power Station.

18.    The Debtor therefore contracts with various shippers and other transportation, storage, and logistics providers to transport, store, and distribute the Debtor's coal.  Certain of these third parties (collectively, the "**Lienholders**") are presently in possession of the Debtor's coal and other fuel sources.  While the Debtor has previously paid many of the Lienholders, the Lienholders may still incur charges or expenses above any such payments while transporting the Debtor's goods, which they can charge to the Debtor and are potentially prepetition claims.  Under applicable nonbankruptcy law, certain Lienholders may have a lien, or may be able to assert liens, on the goods in their possession to secure payment of the charges or expenses incurred in connection with any such claims.

19.    If a Lienholder refuses to make ongoing deliveries and refuses to relinquish possession of the goods in transit to the Pleasants Power Station, the Debtor's business operations will be severely disrupted.  Accordingly, out of an abundance of caution, the Debtor seeks authority, but not direction, to pay any prepetition claims held by Lienholders as they come due in the ordinary course of business.

**(c)      Overview of 503(b)(9) Claimants**

20.      Additionally, in connection with the Debtor's ordinary course business operations, certain of the Vendors (the "**503(b)(9) Claimants**") delivered goods to the Debtor within the twenty (20) days immediately preceding the Petition Date and are therefore entitled to assert administrative priority claims against the Debtor's estate, pursuant to section 503(b)(9) of the Bankruptcy Code, for the associated amounts that remain due and outstanding as of the Petition Date.  Many of the Debtor's relationships with the 503(b)(9) Claimants are not governed by long-term contracts.  Rather, the Debtor often obtains supplies on an order-by-order basis.  As a result, a 503(b)(9) Claimant may refuse to supply new orders without prepayment of its prepetition claims.

21.      To confirm a chapter 11 plan, the Debtor would be required to pay 503(b)(9) Claimants in full as these claims would be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.  Therefore, the Debtor seeks authority, but not direction, to pay such claims as they come due in the ordinary course of business.

22.      Given the highly specialized nature of the products and services they provide, the Vendors are either irreplaceable or would require significant cost, delay, and disruption to replace, to the detriment of the estate and all stakeholders.  Because the Debtor derives substantially all of its revenue from the operation of the Pleasants Power Station, any disruption to the relationship between the Debtor and any of the Vendors would cause irreparable harm to the Debtor's business.

**C.      The Debtor's Conditions on Payment to Prepetition Claimants**

23.      Subject to the Court's approval, the Debtor intends to pay the Critical Vendor Claims only to the extent necessary and critical to preserve and enhance the value of its estate.  In return for paying the Critical Vendor Claims, either in full or in part, the Debtor proposes that it be authorized, within its sole discretion, to require the Critical Vendors to provide favorable trade

terms for the postpetition procurement of goods and services.  The Debtor will seek to require applicable Critical Vendors to continue supplying goods and services to the Debtor on customary or other reasonable trade terms that are acceptable to the Debtor in light of customary industry practices (the "**Customary Trade Terms**").  The Debtor may request, in its sole discretion, that an individual Critical Vendor provide written acknowledgment of its obligation to continue supplying goods and services to the Debtor on the Customary Trade Terms, in addition to promptly releasing any existing liens, as a condition to receiving any payment made pursuant to an order granting the relief requested in this motion.

### D.       The Outstanding Orders

24.       Prior to the Petition Date, and in the ordinary course of business, the Debtor may have ordered goods that will not be delivered until after the Petition Date (the "**Outstanding Orders**").  To avoid potentially becoming general unsecured creditors of the Debtor's estate with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtor confirms that such orders are entitled to administrative expense priority.  To prevent any disruption to the Debtor's business operations during the Chapter 11 Case, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtor seeks entry of an order: (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtor arising from the acceptance of goods subject to Outstanding Orders; and (b) authorizing the Debtor to satisfy such obligations in accordance with its historic practices.

**BASIS FOR RELIEF**

**A.**    **The Court Should Authorize the Payment of Critical Vendors Claims Pursuant to Sections 105(a), 363(b), and 503(b) of the Bankruptcy Code**

25.    The Court has ample statutory authority to grant the relief requested by the Debtor, including pursuant to Sections 503(b), 363(b), and 105(a) of the Bankruptcy Code.   Section 503(b)(1) of the Bankruptcy Code provides that:

> After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate….

11 U.S.C. § 503(b)(1)(A).   The Court, therefore, can authorize the Debtor to use estate funds to pay any Critical Vendor Claims arising or relating to the period after the Petition Date.   Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[a debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists.   *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'"); *see also In re Village Roadshow Entm't Grp. USA Inc.*, 674 B.R. 504, 509 (Bankr. D. Del. 2025) (same).

26.    Section 105(a) of the Bankruptcy Code authorizes a court, in its discretion, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).   This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of prepetition claims, under what is known as the "doctrine of necessity" or the "necessity of payment" doctrine, when such payment is critical to a

debtor's reorganization or necessary for the preservation of the value of the debtor's estate. *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[T]he sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment.  In such a circumstance, it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties . . . because such payment will facilitate the [debtors'] continued operation."); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (citations omitted) ("A number of cases declare a so-called 'necessity of payment' exception to the normal deferment of the payment of prereorganization claims until their disposition can be made part of a plan of reorganization.  These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *see also In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2 n.5 (D. Del. Feb. 10, 2009) ("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor."); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

27.     The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors' claims. *See Bank of Am. Nat'l Tr. & Savs. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).  Indeed, bankruptcy courts routinely grant "first day" relief in the form of authorizing the payment of prepetition obligations,

including to critical vendors, where granting such relief serves these and other "significant Code-related objectives." *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts have entered "'critical vendor' orders that allow payment of essential suppliers' prepetition invoices," particularly where such "distributions . . . would 'enable a successful reorganization and make even the disfavored creditors better off'" (quoting *In re Kmart Corp.*, 359 F. 3d 866, 872 (7th Cir. 2004) (discussing the justifications for "critical vendor" orders))); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"). Similarly, the Debtor's ability to satisfy Critical Vendor Claims is consistent with its fiduciary duty as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1107, 1108. "Implicit in the duties of a . . . debtor in possession . . . is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value." *CoServ*, 273 B.R at 497. In addition, granting the relief requested herein is consistent with Bankruptcy Rule 6003, which implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). Indeed, allowing the Debtor to pay the Critical Vendor Claims is particularly appropriate where, as here, doing so is consistent with increasing the Debtor's prospects for a successful chapter 11 process and preserving and maximizing the value of the Debtor's estate.

28.    The relief requested herein represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code. As noted herein, the Debtor has sound business reasons for seeking authority to pay the Critical Vendors. It is the Debtor's

12

business judgment that the failure to pay the Critical Vendor Claims would likely have a material adverse impact on the Debtor's efforts to monetize its assets and maximize the value of its estate. Absent the requested payments, the value of the Debtor's estate will suffer significant irreparable harm.

**B.      The Court Should Authorize the Debtor to Pay the Vendors Pursuant to Sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code**

29.      Moreover, courts look to section 363(b) of the Bankruptcy Code as a basis to authorize payment of prepetition obligations like those held by the Vendors when the Debtor has a sound business purpose to do so. *See, e.g.*, *In re Murray Metallurgical Coal Holdings, LLC*, 613 B.R. 442, 450 (Bankr. S.D. Ohio 2020) ("[T]here can be little doubt that [section 363(b)(1)] also provides a mechanism for debtors to obtain court authority to pay prepetition claims before confirmation if a sound business purpose supports the payment."); *In re Windstream Holdings Inc.*, 614 B.R. 441, 456 (S.D.N.Y. 2020) (authorizing payment of prepetition claims where the debtor can "articulate some business justification, other than mere appeasement of major creditors . . . ."); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source of authority to make critical vendor payments, and section 105 is used to fill in the blanks."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397–98 (S.D.N.Y. 1983) (allowing the payment of suppliers' potential prepetition lien claimants under section 363 because the payments were necessary for general contractors to release funds owed to debtors). In granting these requests, these courts have found that sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition lien claims.

30.      Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See,*

*e.g.*, *In re Just For Feet, Inc.*, 242 B.R. at 824–25 (permitting debtors to pay prepetition claims essential to ongoing business operations); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages).  When authorizing these payments, courts have relied upon several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.

31.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary charged with "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. As a fiduciary, a debtor in possession has the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled only "by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court provided several examples, including where "payment of a prepetition unsecured claim is the only means to effect a substantial enhancement of the estate." *Id.*

32.     Under section 363(b) of the Bankruptcy Code, courts have authorized debtors to make such payments when a debtor has been able to "articulate some business justification, other than the mere appeasement of major creditors."  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 175 (finding that payment of prepetition wages was a sound business justification); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (a sound business justification existed when a contractor was allowed to pay the prepetition claims of suppliers who were potential lien claimants).

33.     Additionally, section 105(a) of the Bankruptcy Code has proven other grounds for courts to permit a debtor to pay prepetition claims.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

14

of this title." 11 U.S.C. § 105(a). Section 105(a) allows a court to permit preplan payments of prepetition obligations when such payments are essential to business operations. *See Ionosphere Clubs*, 98 B.R. at 177 (section 105 of the Bankruptcy Code found to empower a bankruptcy court to permit payment of prepetition debt).

34. As set forth above, the Debtor has determined, in the exercise of its sound business judgment, that payment of claims held by Vendors is essential to continue the Debtor's business uninterrupted. The relief requested herein is narrowly tailored to facilitate the Debtor's successful prosecution of the Chapter 11 Case and its efforts to maximize the value of the Pleasants Power Station. Also, with respect to Lienholders, most state laws permit a carrier to assert a lien on goods in its possession, and certain carriers may refuse to deliver or release goods, freight, or other estate property these carriers have in their possession or control, as applicable, before the prepetition amounts owed to them by the Debtor are satisfied and their liens redeemed. Further, pursuant to section 363(e) of the Bankruptcy Code, Lienholders may be entitled to adequate protection of a valid possessory lien to the extent the Debtor uses or sells the estate property against which a Lienholder's claim is asserted. The Debtor believes that the value of this property generally exceeds the value of the related claim. In short, payment to the Lienholders will not prejudice unsecured creditors, as these claimants will only be paid in amounts (a) secured by valid liens or (b) that the Debtor believes Lienholders are capable of perfecting liens in the Debtor's property.

35. Based on the foregoing, the Debtor respectfully submits that honoring the prepetition claims of the Vendors is a sound exercise of the Debtor's fiduciary obligation.

**C.      The Court Should Authorize Payment of 503(b)(9) Claims Pursuant to Section 503(b)(9) of the Bankruptcy Code and to Avoid Lien Claims**

36. Section 503(b)(9) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the value of any goods

received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).   The Debtor will be required to pay in full all claims entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code to confirm any chapter 11 plan filed in this case.  *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).

37.    Certain of the Critical Vendor Claims would likely be entitled to administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code.  Therefore, the Debtor's proposed payment of such claims now only affects the timing of such payments, but not the amounts or priority thereof, so no other creditor or party in interest in the Chapter 11 Case will be unfairly prejudiced by such payment.

**D.      The Court Should Confirm that Outstanding Orders Are Administrative Expenses and that Payment of Such Claims is Authorized**

38.    Obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, should be considered as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prior to the petition date but delivered postpetition are entitled to administrative priority).  Thus, granting the relief sought here with respect to the Outstanding Orders will not afford these claimants any greater priority than they otherwise would receive if the relief requested herein were not granted, and will not prejudice any other party in interest.

39.     Meanwhile, without this relief, the Debtor may be required to expend substantial time and effort reissuing the Outstanding Orders at the expense of other estate assets.  Disruption and delay to the continuous and timely flow of critical materials and other goods to the Debtor could cause irreparable harm and delay to the Debtor's operations and potentially slow the sale process.

### E.     Processing of Checks and Electronic Fund Transfers Should Be Authorized

40.     The Debtor has sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations.  In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtor respectfully requests that the Court authorize, but not direct, the Banks, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### IMMEDIATE RELIEF IS JUSTIFIED

41.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition if the "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a).  As set forth in the First Day Declaration, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations, including by authorizing payment of the Critical Vendor Claims to ensure the continued supply of services and materials.  Any delay in granting the relief requested herein could hinder the Debtor's operations and restructuring efforts and could immediately threaten the Debtor's future as a going concern.

17

Accordingly, the Debtor respectfully requests that the Court grant the relief requested in this Motion on an emergency basis.

## REQUEST FOR WAIVER OF STAY

42.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

43.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

44.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE

45.    Notice of the Motion will be given to the following or their respective counsel, as applicable:  (i) the U.S. Trustee;  (ii) the parties included on the Debtor's list of thirty (30) largest unsecured creditors; (iii) the West Virginia Economic Development Authority; (iv) TRAG LLC and RG Energy LLC; (v) the United States Attorney's Office for the District of Delaware; (vi) the attorneys general for the state of West Virginia; (vii) the United States Department of Justice; (viii) the Internal Revenue Service; and (ix) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Bankruptcy Rule 2002 and Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtor submits that due and proper notice has been given under the circumstances, and that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A-1** and **Exhibit A-2**, (a) granting the relief requested herein and (b) granting such other relief as the Court may deem just and appropriate under the circumstances.

19

Dated: July 27, 2026

/s/ S. Alexander Faris

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Robert F. Poppiti, Jr. (No. 5052)
S. Alexander Faris (No. 6278)
James C. Diver (No. 7568)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: amagaziner@ycst.com
　　　rpoppiti@ycst.com
　　　afaris@ycst.com
　　　jdiver@ycst.com

*– and –*

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Alexander Woolverton*
Kyle J. Ortiz*
Brian F. Shaughnessy*
Andrew Pollack*
Jared C. Borriello*
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: alexander.woolverton@HSFKramer.com
　　　kyle.ortiz@HSFKramer.com
　　　brian.shaughnessy@HSFKramer.com
　　　andrew.pollack@HSFKramer.com
　　　jared.borriello@HSFKramer.com

*\*Pending Admission Pro Hac Vice*

*Proposed Co-Counsel to the Debtor and
Debtor in Possession*

## EXHIBIT A-1

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Omnis Pleasants, LLC[1] | ) | Case No. 26-[-----] (--) |
|  | ) |  |
| Debtor. | ) | **Ref. Docket No. __** |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO PAY**
**PREPETITION CLAIMS OF CRITICAL VENDORS, LIENHOLDERS,**
**AND 503(b)(9) CLAIMANTS; (II) CONFIRMING ADMINISTRATIVE**
**EXPENSE PRIORITY OF OUTSTANDING ORDERS; (III) DIRECTING**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PAYMENTS**
**IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] filed by the above-captioned debtor and debtor in possession (the "**Debtor**") seeking entry of an order (this "**Interim Order**"), (a) authorizing, but not directing, the Debtor, in its sole discretion, to pay the prepetition fixed, liquidated, and undisputed claims of certain Critical Vendors, Lienholders, and 503(b)(9) Claimants; (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtor prior to the Petition Date that are not delivered until after the Petition Date, and authorizing the Debtor to satisfy such obligations; (c) authorizing, but not directing, the Banks to honor and process checks and electronic transfer requests related to the foregoing; and (d) granting related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the Standing Order; and this Court having found that venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding

---

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia 26134.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b); and this Court having found that due and proper notice of the Motion has been given, and that no other or further notice is required or necessary under the circumstances; and this Court having determined that it may enter an interim order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Case and all of the proceedings had before this Court; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein on an interim basis.

2.      The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2026, at _____, prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be received by the following parties, by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2026: (i) proposed co-counsel to the Debtor, (a) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com); Robert F. Poppiti, Jr. (rpoppiti@ycst.com); and S. Alexander Faris (afaris@ycst.com), and (b) Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Alexander Woolverton (alexander.woolverton@HSFKramer.com); Brian Shaughnessy (brian.shaughnessy@HSFKramer.com); Andrew Pollack (andrew.pollack@HSFKramer.com); and Jared C. Borriello (jared.borriello@HSFKramer.com); (ii) counsel to TRAG LLC and RG Energy LLC, DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: R. Craig Martin (craig.martin@us.dlapiper.com)

and 500 Eighth Street NW, Washington, DC 20004, Attn: Erik F. Stier (erik.stier@us.dlapiper.com); (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov); and (iv) if any statutory committee has been appointed in the Chapter 11 Case, counsel to such committee (collectively, the "**Notice Parties**").  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.      The Debtor is authorized, but not directed, in its sole discretion, subject to this Interim Order, to pay, honor, or otherwise satisfy prepetition claims held by Critical Vendors, Lienholders, and 503(b)(9) Claimants in the ordinary course of business in an amount up to $3,270,000.00 in the aggregate during the Interim Period.

4.      Payments made to Critical Vendors shall be applied, in the first instance, against claims held by such Critical Vendors arising under section 503(b)(9) of the Bankruptcy Code, to the extent the applicable Critical Vendor holds such a claim.

5.      The Debtor is further authorized, but not directed, in its sole discretion, to condition the payment of a Critical Vendor Claim on the agreement of the Critical Vendor to continue supplying goods and services to the Debtor on the Customary Trade Terms, or such other trade terms that are at least as favorable to the Debtor as those in place prior to the Petition Date, or as otherwise agreed to by the Debtor and the Critical Vendor.

6.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

7.      The Banks are authorized, but not directed, when requested by the Debtor, in the Debtor's discretion, to honor and process checks or electronic fund transfers drawn on the Debtor's

3

bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtor with respect to whether any check or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtor, as provided for in this Interim Order.

8.      Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) create any rights in favor of, or enhance the status or nature of any claim held by, any person.

4

9.      Notwithstanding anything herein (a) any payment made or to be made pursuant to the authority granted herein, or any authorization contained herein, shall be subject to and in compliance with any orders authorizing the Debtor's use of prepetition collateral (in each case, the "**Adequate Protection Order**"), including any budget in connection therewith (the "**Budget**") and (b) to the extent there is any inconsistency between the Adequate Protection Order and the terms of this Interim Order, the terms of the Adequate Protection Order, including the Budget, shall control. Nothing herein shall modify, alter, or waive any terms, provisions, requirements, or restrictions of the Adequate Protection Order.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

11.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

**EXHIBIT A-2**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Omnis Pleasants, LLC,[1] | ) Case No. 26-[-----] (--) |
| | ) |
| Debtor. | ) **Ref. Docket Nos. _ & _** |
| | ) |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO PAY**
**PREPETITION CLAIMS OF CRITICAL VENDORS, LIENHOLDERS,**
**AND 503(b)(9) CLAIMANTS; (II) CONFIRMING ADMINISTRATIVE**
**EXPENSE PRIORITY OF OUTSTANDING ORDERS; (III) DIRECTING**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PAYMENTS**
**IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] filed by the above-captioned debtor and debtor in possession (the "**Debtor**") seeking entry of an order (this "**Final Order**") (a) authorizing, but not directing, the Debtor, in its sole discretion, to pay the prepetition fixed, liquidated, and undisputed claims of certain Critical Vendors, Lienholders, and 503(b)(9) Claimants; (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtor prior to the Petition Date that are not delivered until after the Petition Date, and authorizing the Debtor to satisfy such obligations; (c) authorizing, but not directing, the Banks to honor and process checks and electronic transfer requests related to the foregoing; and (d) granting related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the Standing Order; and this Court having found that venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding

---

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia 26134.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b); and this Court having found that due and proper notice of the Motion has been given, and that no other or further notice is required or necessary under the circumstances; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Case and all of the proceedings had before this Court; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is **GRANTED** as set forth herein on a final basis.

2.  The Debtor is authorized, but not directed, in its sole discretion, subject to this Final Order, to pay, honor, or otherwise satisfy prepetition claims held by Critical Vendors, Lienholders, and 503(b)(9) Claimants in the ordinary course of business in an amount up to $4,020,000.00 in the aggregate.

3.  Payments made to Critical Vendors shall be applied, in the first instance, against claims held by such Critical Vendors arising under section 503(b)(9) of the Bankruptcy Code, to the extent the applicable Critical Vendor holds such a claim.

4.  The Debtor is further authorized, but not directed, in its discretion, to condition the payment of a Critical Vendor Claim on the agreement of the Critical Vendor to continue supplying goods and services to the Debtor on the Customary Trade Terms, or such other trade terms that are

2

at least as favorable to the Debtor as those in place prior to the Petition Date, or as otherwise agreed to by the Debtor and the Critical Vendor.

5.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

6.      The Banks are authorized, but not directed, when requested by the Debtor, in the Debtor's discretion, to honor and process checks or electronic fund transfers drawn on the Debtor's bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtor with respect to whether any check or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtor, as provided for in this Final Order.

7.      Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability,

3

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) create any rights in favor of, or enhance the status or nature of any claim held by, any person.

8.      Notwithstanding anything herein (a) any payment made or to be made pursuant to the authority granted herein, or any authorization contained herein, shall be subject to and in compliance with any orders authorizing the Debtor's use of prepetition collateral (in each case, the "**Adequate Protection Order**"), including any budget in connection therewith (the "**Budget**") and (b) to the extent there is any inconsistency between the Adequate Protection Order and the terms of this Final Order, the terms of the Adequate Protection Order, including the Budget, shall control.  Nothing herein shall modify, alter, or waive any terms, provisions, requirements, or restrictions of the Adequate Protection Order.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice thereof and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

11.      The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

12.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

4