**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Omnis Pleasants, LLC[1] | ) | Case No. 26-11169 (KBO) |
| | ) | |
| | ) | **Hearing Date: September 3, 2026 at 1:00 p.m. (ET)** |
| | ) | **Objection Deadline: August 27, 2026 at 4:00 p.m. (ET)** |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF
AN ORDER (I) APPROVING THE AUCTION
AND BIDDING PROCEDURES FOR THE SALE
OF THE DEBTOR'S ASSETS, (II) SCHEDULING
CERTAIN DATES AND DEADLINES RELATED THERETO,
(III) APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (IV) AUTHORIZING THE DEBTOR TO DESIGNATE
A STALKING HORSE BIDDER AND OFFER BID PROTECTIONS
RELATED THERETO, (V) ESTABLISHING NOTICE AND PROCEDURES
FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES,
(VI) APPROVING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF**

Omnis Pleasants, LLC, d/b/a Pleasants Power Station, as debtor in possession

(the "**Debtor**") in the above-captioned chapter 11 case, respectfully states the following in support

of this motion (this "**Motion**") for the relief set forth herein.[2]

**PRELIMINARY STATEMENT**

1.      The Debtor commenced this chapter 11 case to, among other things, consummate

a value-maximizing sale transaction (a "**Sale Transaction**") for all or substantially all of its assets

(the "**Assets**") through a transparent, robust, and competitive marketing process.  The Debtor

---

[1]    The last four digits of the Debtor's tax identification number are 2673.  The location of the Debtor's principal place of business and service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the Bidding Procedures (as defined herein), the Bidding Procedures Order (as defined herein), or the *Declaration of David Hindman, as Chief Executive Officer of the Omnis Pleasants, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "**First Day Declaration**"), as applicable.

determined, in consultation with its advisors, that a public and court-supervised sale process under chapter 11 of the Bankruptcy Code provides the best path forward to maximize the value of the Debtor's estate and will provide the Debtor and any potential bidders protections that would not otherwise have been available outside of chapter 11.  For the reasons set forth herein, the Debtor believes the process set forth in the Bidding Procedures will elicit the best available bid for the Assets.

2.       As detailed in the First Day Declaration, the Debtor owns and operates the Pleasants Power Station (the "**Plant**"), a 1,278-megawatt coal-fired electric generation facility located in Belmont, West Virginia.  The Plant is a significant operating asset that provides critical generation capacity, supports regional grid reliability, and provides employment for a substantial workforce. Despite extensive financial and operational challenges inherited from the Debtor's prior management, the Plant remains a revenue-generating asset with significant going-concern value.

3.       In the months leading up to the Petition Date, to effectuate an operational turnaround under new management, the Debtor undertook substantial efforts to stabilize operations, strengthen vendor and commercial relationships, improve workforce retention, and address regulatory and operational issues.  Those efforts have produced measurable improvement and positioned the Debtor to pursue a sale process designed to maximize value for all stakeholders. At the same time, the Debtor, through the assistance of its advisors, engaged with prospective purchasers and the Debtor's stakeholders to evaluate potential restructuring alternatives. While the prepetition outreach process did not result in any actionable offers, the Debtor generated market awareness and received indications of interest from third parties—many of which conducted substantial due diligence—interested in acquiring the Plant.  Ultimately, the Debtor determined that a transparent and open Court-supervised sale process would provide the best path forward for

the Debtor and its stakeholders.  Accordingly, the Debtor engaged Houlihan Lokey Capital, Inc. ("**Houlihan**") as of August 3, 2026 as its investment banker to assist the Debtor in conducting a value-maximizing marketing process in this chapter 11 case.

4.      The Debtor seeks approval of bidding procedures specifically designed to promote an open, fair, and competitive marketing and sale process while the Debtor works to identify interested bidders, including a Stalking Horse Bidder (as defined herein), for the sale of the Debtor's Assets.  The bidding procedures attached to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**") will provide sufficient time for the Debtor to market the Assets, receive and evaluate bids, and hold an auction, if necessary, to determine the highest or otherwise best bids for the Assets. The Debtor will consider all viable options in accordance with the Bidding Procedures before determining if selling the Assets will, in its business judgment, maximize value for the estate. A thorough yet expedited bidding process and consummation of one or more Sale Transactions are vitally important to the Debtor's efforts to maximize value.  Conversely, if the Bidding Procedures are not approved or there is any material delay to the proposed sale timeline, then the Debtor's ability to maximize value for the benefit of all stakeholders will be jeopardized.

5.      The Bidding Procedures and the related relief requested in this Motion are in the best interests of the Debtor's estate and its stakeholders, and the Bidding Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, the Debtor respectfully requests that the Court grant the relief requested herein.

### RELIEF REQUESTED

6.      The Debtor requests entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"):

   a) authorizing and approving the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order;

b) approving the manner of notice of the Sale Transaction and of the auction (the "**Auction**"), if any, and the Sale Transaction (the "**Sale Notice**") attached to the Bidding Procedures Order as Exhibit 2;

c) establishing certain dates and deadlines related thereto, including the Bid Deadline and Auction Date (each as defined below);

d) approving the Assumption Procedures (as defined below) and approving the manner of notice thereof attached to the Bidding Procedures Order as Exhibit 3;

e) if applicable, and subject to final Court (as defined below) approval, authorizing, but not directing, the Debtor to designate a Stalking Horse Bidder and offer bid protections related thereto, in accordance with the Bidding Procedures; and

f) granting related relief.

7. In addition, the Debtor will also seek entry of an order in form and substance reasonably acceptable to TRAG/RGE (the "**Sale Order**") at the conclusion of the Sale Hearing (as defined below) providing for the following relief:

a) approving the Sale Transaction and entry into a purchase agreement related thereto, with the Successful Bidder (as defined below) or the Back-Up Bidder, if applicable;

b) authorizing the sale of the Debtor's Assets free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the Successful Bid;

c) authorizing and approving assumption and assignment of the Debtor's applicable Executory Contracts and Unexpired Leases (together, the "**Contracts**"); and

d) granting related relief.

8. The Debtor will file a proposed Sale Order by no later than fourteen (14) days prior to the Sale Objection Deadline (as defined below).

9. In support of this Motion, the Debtor relies on the First Day Declaration, which is incorporated herein by reference, and such other declarations or materials that may be filed by the Debtor in advance of, or presented live at, the hearing on this Motion (the "**Bidding Procedures Hearing**").

**JURISDICTION AND VENUE**

10.     The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.

11.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") the Debtor consents to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1 and 6004-1 of the Local Rules.

**BACKGROUND**

**I.      General**

14.     On July 26, 2026 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its financial affairs as a debtor in possession.

15.     As of the date hereof, no request for the appointment of a trustee or examiner has been made, nor has any statutory committee been appointed or designated, in the Chapter 11 Case.

16.     A detailed description of the Debtor and its business operations, capital structure, and the events leading up to the commencement of the Chapter 11 Case are set forth in detail in the First Day Declaration, which is incorporated herein by reference.

**II.     The Marketing Process**

17.     As described in the First Day Declaration, leading up to the Petition Date, the Debtor engaged with potential sale counterparties to gauge market interest in purchasing the Debtor's assets outside of a chapter 11 process.  While the prepetition outreach process did not result in any binding offers, the Debtor generated market awareness and received interest from third parties interested in acquiring the Plant through a sale process under section 363 of the Bankruptcy Code.

18.     Following the Petition Date, the Debtor retained Houlihan as its investment banker to continue the Debtor's marketing and sale process that was commenced prior to the Petition Date. Since being retained, Houlihan has worked closely with the Debtor's management and other advisors to analyze the Debtor's financial position and outlook, prepare marketing and diligence materials, populate an electronic data room (the "**Data Room**") for prospective purchasers interested in purchasing all or any portion of the Assets, and determine a list of parties potentially interested in purchasing the Assets.  The Debtor will continue to engage with interested parties during the pendency of the Chapter 11 Case in accordance with the Bidding Procedures.

<u>**SALE PROCESS OVERVIEW**</u>

19.     The timeline and the Bidding Procedures described in detail herein were carefully crafted to maximize the likelihood of success for the Debtor's sale and marketing process.

**I.     Key Dates and Deadlines.**

20.     Below is a summary of the proposed key dates and deadlines contemplated by the Bidding Procedures:

| Event | Proposed Date |
|---|---|
| Preliminary Bid Deadline | September 29, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Supplement Deadline | October 22, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Assumption and Assignment Service Deadline | October 23, 2026 |
| Sale Notice Filing and Service Deadline | No later than twenty-one (21) days prior to the Sale Hearing |
| Assumption Notice Objection Deadline | No earlier than fourteen (14) days after service of each Contract Assumption Notice |
| Bid Deadline | November 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | No earlier than fourteen (14) days after the Sale Notice is filed and served |
| Auction (if necessary) | November 12, 2026 at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | November 18, 2026 at [●]:[●] (prevailing Eastern Time) (or such other date as set by the Court) |

21.     The Debtor believes that the proposed Sale Transaction timeline balances the need to provide adequate notice to parties in interest and potential bidders with the need to run a robust and efficient marketing process and therefore maximizes the possibility of receiving the highest or otherwise best offer for the Assets without subjecting the Debtor's estate to an unnecessarily long stay in chapter 11.

## II.     The Bidding Procedures.

22.     The Debtor developed and proposed Bidding Procedures, attached as Exhibit 1 to the Bidding Procedures Order, to optimally and efficiently solicit, receive, and evaluate bids in a fair and open process.  The Bidding Procedures will provide potential bidders with ample notice and time to conduct thorough due diligence and submit binding bids in advance of the Auction, if any.  The Bidding Procedures are designed to encourage all prospective bidders to put their best bid forward, effectuate an efficient, value-maximizing process with minimal disruption to the Debtor's operations, and create a path towards the consummation of a Sale Transaction for the

benefit of the Debtor's stakeholders.  The Bidding Procedures are therefore in the best interests of

all stakeholders and should be approved.

23.    The following describes the salient points of the Bidding Procedures and discloses

certain information required pursuant to Local Rule 6004-1:[3]

| Requirement | Description |
|---|---|
| **Participation Requirements**<br><br>L.R. 6004-1(c)(i)(A)(1)-(4) | To participate in the bidding process and to receive diligence information, including access to the Debtor's electronic data room (the "**Data Room**") and to additional non-public information regarding the Debtor (collectively, the "**Diligence Materials**"), any party interested in submitting a bid (each a "**Potential Bidder**"), must deliver by email to each of: (a) proposed co-counsel to the Debtor, (i) Herbert Smith Freehills Kramer (US) LLP ("**HSF Kramer**"), Attn: Alexander Woolverton (alexander.woolverton@HSFKramer.com), Andrew Pollack (andrew.pollack@HSFKramer.com), Jared C. Borriello (jared.borriello@HSFKramer.com), and Melissa Mertz (melissa.mertz@HSFKramer.com); and (ii) Young Conaway Stargatt & Taylor, LLP ("**YCST**" and together with HSF Kramer, "**Debtor's Counsel**"), Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), and S. Alexander Faris (afaris@ycst.com);  (b) proposed financial advisor to the Debtor, AlixPartners, LLP ("**AlixPartners**") (alix-pleasants@alixpartners.com);  and  (c) proposed investment banker to the Debtor, Houlihan, Attn: Xander Hector (XHector@HL.com) and Thad Williams (TWilliams@HL.com) (collectively, the "**Bid Notice Parties**"), the following documents (collectively, the "**Preliminary Bid Documents**") on or prior to **September 29, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Preliminary Bid Deadline**"), unless otherwise waived or extended by the Debtor with the consent of the Consultation Parties:<br><br>(i)    an executed confidentiality agreement in form and substance acceptable to the Debtor (a "**Confidentiality Agreement**");<br><br>(ii)    a statement or other factual support demonstrating to the Debtor's reasonable satisfaction that the Potential Bidder has a bona fide interest in purchasing the Assets (or some subset thereof);<br><br>(iii)    the identification of the Potential Bidder and any principals and representatives thereof (including counsel), including identifying those principals and representatives who are authorized by the Potential Bidder to appear and act on such Potential Bidder's behalf for all purposes under the Bidding Procedures regarding the Potential Bidder's contemplated Sale Transaction;<br><br>(iv)    written disclosure of any and all connections or agreements the Potential Bidder (including its affiliates and any related persons) may have to the Debtor, or "insiders" of the Debtor (as that term is contemplated by section 101(31) of the Bankruptcy Code), |

---

[3]    The following summary is provided for convenience purposes only and is qualified in its entirety by the Bidding Procedures. Because the Bidding Procedures are attached as Exhibit 1 to the Bidding Procedures Order, they are not restated in their entirety herein. To the extent any of the terms described below are inconsistent with the Bidding Procedures, the Bidding Procedures control in all respects. Capitalized terms used in this summary but not defined herein shall have the meanings ascribed to them in the Bidding Procedures.

| Requirement | Description |
|---|---|
| | and/or any manager or any entity holding direct or indirect membership interests in the Debtor; and<br><br>(v)      any other information or documentation that the Debtor reasonably requests.<br><br>The Debtor, in consultation with the Consultation Parties, will determine whether such Potential Bidder has submitted adequate Preliminary Bid Documents (an "**Acceptable Bidder**") to proceed with the bidding process and shall notify Potential Bidders who submitted the above Preliminary Bid Documents whether they have been determined to be an Acceptable Bidder by the Debtor within 5 business days after the Preliminary Bid Deadline, *provided* that, the Debtor will consult with the advisors to TRAG/RGE before determining that any potential Affiliated Bidder (as defined below) has submitted adequate Preliminary Bid Documents to be determined an Acceptable Bidder. Only Acceptable Bidders, as determined by the Debtor, in consultation with the Consultation Parties, may submit Bids.<br><br>To the extent that any of the Consultation Parties submits a Stalking Horse Bid, Credit Bid, or other alternative Bid for any Assets in connection with the Bidding Procedures, then such Consultation Party shall not be a consultation party solely with respect to the Assets that are the subject of such Bid unless and until such Bid is withdrawn, but shall remain a consultation party for all other purposes. For the avoidance of doubt, the exercise by the Consultation Parties of their rights under section 363(k) of the Bankruptcy Code shall not require the Consultation Parties to waive or relinquish any right, claim, lien, or remedy. |
| **Access to Diligence Materials**<br><br>L.R. 6004-1(c)(i)(A)(3) | Beginning on or as soon as is reasonably practicable after the Debtor determines that a Potential Bidder is an Acceptable Bidder, the Debtor will provide such Acceptable Bidder with access to the Diligence Materials. The Debtor, with the assistance of its advisors, will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access, *provided* that the Debtor may decline to provide such information to any Acceptable Bidder who, in the Debtor's reasonable business judgment, has not established, or who has raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Sale Transaction.<br><br>The Debtor will grant each Acceptable Bidder access to the Data Room up to and including the Bid Deadline (as defined below) (such period, the "**Diligence Period**"). The Debtor shall afford any Acceptable Bidder access to the Diligence Materials or additional information as may be reasonably requested by the Potential Bidder that the Debtor, in its business judgment, determines to be reasonable and appropriate under the circumstances. The Debtor shall grant the Consultation Parties and their respective advisors access to the Data Room and the Diligence Materials, subject to the Consultation Parties and their respective advisors maintaining the confidentiality of such information. The Debtor will provide in the Data Room a form asset purchase agreement for the sale of the Assets, in form and substance reasonably acceptable to TRAG/RGE (the "**Form APA**"). The Debtor may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Acceptable Bidders. If any such due diligence material is prepared by the Debtor in written form and has not previously been provided to any other Acceptable Bidder, the Debtor will simultaneously provide access to such materials to all Acceptable Bidders. Each Acceptable Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).<br><br>The Debtor may reasonably withhold or limit access by any Acceptable Bidder (including its affiliates and any related persons) to the Diligence Materials at any time and for any reason, including, without limitation, if (i) any due diligence information is determined to be business sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder by the Debtor, including, but not limited to, Acceptable Bidders who are customers or competitors of the Debtor or affiliates thereof, and other industry participants, (ii) the Potential Bidder does not become, or the Debtor determines that the Acceptable Bidder is not likely to become a Qualified Bidder (as defined herein), (iii) the Acceptable Bidder violates the terms of its Confidentiality Agreement, (iv) the Debtor becomes aware that the information set forth on the Preliminary Bid Documents is inaccurate or misleading or of any other reason to doubt such Acceptable Bidder's ability to close its contemplated transaction, (v) the Acceptable Bidder (including its affiliates and any related |

| Requirement | Description |
|---|---|
| | persons) uses information obtained from the Data Room or the diligence process in connection with, or related to, any litigation or other legal action related to the Debtor or any current or former managers of the Debtor, (vi) such disclosure would jeopardize protections afforded the Debtor under the attorney-client privilege or the attorney work product doctrine, or (vii) the bidding process is terminated in accordance with its terms.<br><br>Neither the Debtor nor any of the Debtor's representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (a) to any person or entity who is not an Acceptable Bidder or (b) if and to the extent doing so would (i) violate any law to which the Debtor is subject, including any privacy law, (ii) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (iii) violate any legally-binding obligation of the Debtor with respect to confidentiality, non-disclosure or privacy or (iv) jeopardize protections afforded to the Debtor under the attorney-client privilege or the attorney work product doctrine (provided that the Debtor shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation, or law).<br><br>Acceptable Bidders may not use FERC investigation materials provided in the Diligence Materials for any purpose other than diligence, and may not in connection with the Sale Transaction contact FERC, PJM Interconnection, L.L.C, the Independent Market Monitor, the North American Electric Reliability Corporation, ReliabilityFirst Corporation, or the West Virginia Department of Environmental Protection.<br><br>The due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtor shall have no obligation to furnish any due diligence information to any party. **All due diligence requests directed to the Debtor must be directed to: Houlihan, Attn: Xander Hector (XHector@HL.com) and Thad Williams (TWilliams@HL.com).** |
| **Due Diligence from Potential Bidders**<br><br>L.R. 6004-1(c)(i)(A)(2) | Each Potential Bidder or Acceptable Bidder shall comply with all reasonable requests with respect to information and due diligence access by the Debtor or its advisors regarding such Potential Bidder or Acceptable Bidder, as applicable, and its contemplated Sale Transaction. Failure by a Potential Bidder or Acceptable Bidder to comply with reasonable requests for additional information and due diligence access will be a basis for the Debtor, in consultation with the Consultation Parties, to determine that the Potential Bidder or Acceptable Bidder, as applicable, is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor, in consultation with the Consultation Parties, to revoke any bidder's classification as a Qualified Bidder. |
| **Communications with Potential Bidders**<br>L.R. 6004-1(c)(i)(A) | Notwithstanding anything to the contrary in the Bidding Procedures, all direct communications between and amongst Potential Bidders regarding the Debtor or its Assets shall involve the Debtor and the Debtor's advisors. No Potential Bidder shall communicate with any other Potential Bidder absent prior written consent (email being sufficient) from the Debtor. |
| **Stalking Horse Bidders and Bid Protections**<br><br>L.R. 6004-1(c)(i)(C) | The Stalking Horse Designation procedures set forth in paragraph 14 of the Bidding Procedures Order apply to the designation of any Stalking Horse Agreement and related Bid Protections. Any Stalking Horse Agreement executed by the Debtor and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to any Stalking Horse Agreement executed by the Debtor will be deemed a Stalking Horse Bidder.<br><br>Other than as provided by order of the Court, no party submitting a Bid (other than a Stalking Horse Bidder) will be entitled to a break-up fee or expense reimbursement. By submitting a Bid, an Acceptable Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bidding Procedures, or participation in the Debtor's sale process.<br><br>The Debtor may, at any time prior to the Stalking Horse Supplement Deadline (as defined below), following consultation with the Consultation Parties, designate a stalking horse bidder (the "**Stalking Horse Bidder**"), |

| Requirement | Description |
|---|---|
| | whose Qualified Bid (as defined below), subject to the entry of the Stalking Horse Approval Order (as defined below), shall serve as the stalking horse bid (the "**Stalking Horse Bid**") and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (in form and substance reasonably acceptable to the Consultation Parties, the "**Stalking Horse Agreement**"), including any bid protections (the "**Bid Protections**") will be binding on the Debtor and the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction. |

The Debtor may designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement on or prior to **October 22, 2026** (the "**Stalking Horse Supplement Deadline**").  If the Debtor decides to designate a Stalking Horse Bidder, the Debtor shall file a supplement to the Bidding Procedures Motion (the "**Stalking Horse Supplement**") seeking approval of the same, with no less than five (5) calendar days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to (i) the Office of the United States Trustee, (ii) counsel to the Consultation Parties, (iii) those parties who have filed appropriate notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Case, (iv) FERC, (v) PJM Interconnection L.L.C., (vi) PJM Settlement, Inc., (vii) Monitoring Analytics, (viii) ReliabilityFirst Corporation, (ix) North American Electric Reliability Corporation, (x) the United States Environmental Protection Agency, (xi) West Virginia Department of Environmental Protection, (xii) West Virginia Economic Development Authority, (xiii) all environmental authorities having jurisdiction over the Plant, (xiv) counterparties to all PJM, interconnection, energy management, fuel, lime, environmental, rail/barge/transportation, landfill/CCR, hedging, and operating contracts, and (xv) the Debtor's insurance carriers and sureties (those parties listed in clauses (i) through (xv), the "**Stalking Horse Notice Parties**") with no further notice being required.  The Stalking Horse Supplement shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the Purchase Price of the Bid submitted by the Stalking Horse Bidder and what portion is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Bid submitted by the Stalking Horse Bidder; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) specify which Assets the Bid submitted by the Stalking Horse Bidder includes; (vi) attach the Stalking Horse Agreement; and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.

Objections to the designation of a Stalking Horse Bidder or any terms of a Stalking Horse Bid (a "**Stalking Horse Objection**") shall (i) be in writing; (ii) comply with Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; (iii) state with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Stalking Horse Notice Parties and Debtor's Counsel within five (5) calendar days after the service of the Stalking Horse Supplement.

If a timely Stalking Horse Objection is filed, the Debtor shall schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable. If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtor is authorized to submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse Agreement (the "**Stalking Horse Approval Order**"), which may be entered by the Court without further notice or a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.

Any Stalking Horse Agreement executed by the Debtor and the Sale Transaction contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

No party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for any Bid Protections granted to any Stalking Horse Bidder which has been approved by the Bankruptcy Court, *provided* that no Bid Protections shall be made available to (i) any party submitting a credit bid or (ii) any Affiliated Bidder. Solely in the event that the Debtor consummates a Sale Transaction with a Bidder other than the Stalking Horse Bidder, any Bid Protections approved by the Court shall be payable solely from the

| Requirement | Description |
|---|---|
| | cash proceeds of the alternative transaction giving rise to such Bid Protections, at the closing thereof, and shall not be payable from, or secured by any lien on, the collateral of TRAG/RGE or the proceeds thereof.<br><br>If any Stalking Horse Bid is not selected as the Successful Bid (as defined herein), such Stalking Horse Bidder must be willing to still serve as the Back-Up Bidder (as defined herein), if its bid represents the second-highest or otherwise best bid after the Auction, unless such requirement is waived in writing (email being sufficient) by the Debtor.  For the avoidance of doubt, the Debtor may hold an Auction notwithstanding the selection of a Stalking Horse Bid. |
| **Qualified Bid Requirements**<br><br>L.R. 6004-1(c)(i)(B)(1)-(4); L.R. 6004-1(b)(E) | Other than in the case of a bid submitted by a designated Stalking Horse Bidder, to participate in the Auction, an Acceptable Bidder must deliver to the Debtor and its advisors an irrevocable offer via email (in .pdf or similar format) for the purchase of all or substantially all of the Assets (each, a "**Bid**") and shall meet the following requirements (the "**Bid Requirements**"), in each case, on or prior to the Bid Deadline (as defined herein), unless any such requirements are waived in writing (email being sufficient) by the Debtor, in consultation with the Consultation Parties; *provided* that any Stalking Horse Bid which has been approved by the Court (if any) shall constitute and be deemed a Qualified Bid.<br><br>a.  *Purchased Assets and Assumed Liabilities*:  Each Bid must clearly state the following: (i) the particular Assets to be purchased; (ii) to the extent such Bid is for substantially all of the Assets, which Assets, if any, are to be excluded from the Proposed Sale Transaction; (iii) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; and (iv) as applicable, whether the Acceptable Bidder intends to operate the Debtor's business as a going concern;<br><br>b.  *Purchase Price*:  Each Bid must clearly set forth the purchase price to be paid (the "**Purchase Price**"), including and identifying separately any cash and non-cash components of the Purchase Price, such as liabilities to be assumed as part of the Sale Transaction, and if the Bid is for less than all of the Assets, the Purchase Price must indicate the allocation of the Purchase Price among the applicable Assets.  The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis;<br><br>c.  *Affiliated Purchaser / Source of Funds*:  Each Bid must disclose any direct or indirect relationship, agreement, understanding, side letter, financing arrangement, management arrangement, consulting arrangement, employment arrangement, option, royalty, earnout, release, settlement, or other economic arrangement involving Quantum Pleasants, LLC, Omnis Fuel Technologies, LLC, Omnis Global Technologies, LLC, Dynamic Finance Corporation, their respective equity holders, and any affiliate of the foregoing, or any other current or former upstream Omnis-related party.  Any Bidder that has any such relationship listed in the prior sentence or is an "insider" of the Debtor (as that term is defined in section 101(31) of the Bankruptcy Code) shall be deemed an "**Affiliated Bidder**" for purposes of the Bidding Procedures;<br><br>d.  *Good Faith Deposit*:  Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "**Good Faith Deposit**").  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction; provided that no Good Faith Deposit shall be required in respect of any Credit Bid or any credit bid portion of a Bid;<br><br>e.  *Same or Better Terms; Bid Documents*: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "**Bid Documents**").  The Bid Documents shall |

| Requirement | Description |
|---|---|
| | include: (i) a form of purchase agreement; (ii) a schedule of contracts and leases to be assumed and assigned to the bidder at closing to the extent applicable to the Bid, and confirmation that the bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate may be provided by the Debtor); (iii) the identification of causes of action to be purchased, if any; (iv) with respect to the purchase agreement, a redline of such agreement marked against the Form APA to reflect the amendments and modifications; (v) any other material documents integral to such Bid; and (vi) a statement from the Acceptable Bidder that (A) it is prepared to enter into and consummate the transactions contemplated in the form purchase agreement, no later than ten (10) business days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, by the Bid Deadline), and (B) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "**Back-Up Bid**")) until the consummation of the Sale Transaction; <br><br> f. *Committed Financing*: To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtor's satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtor; <br><br> g. *Proof of Financial Ability to Perform*: Each Bid must contain evidence acceptable to the Debtor, in its sole discretion, that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under sections 365(b)(1) and 365(b)(3) of the Bankruptcy Code. Without limiting the foregoing, such evidence must include current financial statements or other financial information, tax returns, bank account statements, and/or any other documentation that the Debtor further requests; <br><br> h. *Identity*: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom the Debtor's advisors should contact regarding such Bid; <br><br> i. *No Qualified Bidder Bid Protections*: A Qualified Bid, other than a Stalking Horse Bid approved by the Court (if any), must include a statement disclaiming any right to receive a fee analogous to a break-up fee, expense reimbursement, or "topping" or termination fee, or any other similar form of compensation. No Qualified Bidder (other than a Stalking Horse Bidder, if any, which has been approved by the Court) will be permitted to request, nor be granted by the Debtor at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets; |

| Requirement | Description |
|---|---|
| | j. **Contingencies; No Financing or Diligence Outs**:  The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline; |
| | k. **As-Is, Where-Is**:  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement; |
| | l. **Authorization**:  Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.  The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Acceptable Bidder; |
| | m. **Joint Bids**:  The Debtor shall be authorized to approve joint Bids on a case-by-case basis so long as a joint Bid meets the Qualified Bid Requirements, and the applicable bidders otherwise comply with the Bidding Procedures; |
| | n. **Contracts and Leases:**  Prior to the Bid Deadline, each Bid must identify all executory contracts and unexpired leases to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "**Assigned Contracts**").  Each Bid must be accompanied by written evidence of the applicable Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of future performance under all Assigned Contracts, which evidence shall include audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, and such other documentation as the Debtor may request in writing (email being sufficient) (the "**Adequate Assurance Package**").  The Adequate Assurance Package should be submitted in its own compiled PDF document. |
| | o. **Acknowledgement of Compliance with Bidding Procedures, Bidding Procedures Order, Bankruptcy Code, and Non-Bankruptcy Law**:  Each Bid must acknowledge its compliance in all respects with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code and any applicable non-bankruptcy law; |
| | p. **No Collusion**:  The Acceptable Bidder must represent in writing (i) that it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code or other applicable non-bankruptcy law with respect to any Bids, the Auction, or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (ii) that it agrees not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction.  For the avoidance of doubt, this |

| Requirement | Description |
|---|---|
| | requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtor's prior written consent (email being sufficient); |
| | q. **Good Faith Offer**:  The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction and must include a statement that the Acceptable Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code; |
| | r. **Irrevocable**:  The Bid must include a letter stating that the Acceptable Bidder's offer is irrevocable and binding until the closing of the Sale Transaction if such Acceptable Bidder is the Successful Bidder, and that the Acceptable Bidder agrees to serve as a Back-Up Bidder (as defined herein) if such bidder's Bid is selected as the next highest or otherwise next best bid after the Successful Bid (as defined herein); |
| | s. **Back-Up Bid**:  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined herein) if the Acceptable Bidder's Bid is the next highest or otherwise best bid; |
| | t. **Regulatory Approvals and Covenants**:  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction, including approval by FERC, and an explanation and/or evidence of the Acceptable Bidder's ability to obtain all such regulatory and third-party approvals, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the applicable purchase agreement and/or confirmation of the Plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible); |
| | u. **FPA Section 203 Approval**:  Each Bid must state that if the Acceptable Bidder is selected as the Successful Bidder or the Back-Up Bidder, within five (5) business days following the date on which the Successful Bidder and the Back-Up Bidder, as applicable, is announced, such Acceptable Bidder shall take all actions reasonably necessary to prepare, in consultation with the Debtor, an application under section 203 of the Federal Power Act for approval of the proposed Sale Transaction and requesting expedited action from the Federal Energy Regulatory Commission ("**FERC**"), which shall be submitted to FERC jointly by such Acceptable Bidder and the Debtor within such five (5) business days; |
| | v. **PJM and Market-Participation Transition**:  Each Bid must include a regulatory transition plan addressing PJM Interconnection, L.L.C. and PJM Settlement, Inc. requirements, including, as applicable, PJM membership, credit and collateral requirements, market-participant registration, PJM officer and authorized representative updates, generation owner / generator operator updates, Capacity Resource obligations, energy-market participation, resource-limitation reporting, eDART / eGADS / GADS reporting, settlement arrangements, and any required PJM or PJM Settlement consents, notices, forms, or approvals. Each Bid must also identify whether the Acceptable Bidder intends to assume or replace any energy-management, scheduling, hedging, or market-participation arrangements necessary to operate the Plant and participate in PJM markets after closing; |
| | w. **Market-Based-Rate Authority and FERC Part 35 Filings**: Each Bid must include a plan for all FERC Part 35 filings required for the Acceptable Bidder or post-closing operating entity to make wholesale sales of energy, capacity, or ancillary services, including any market-based-rate application, notice of succession, notice of cancellation, notice of |

| Requirement | Description |
|---|---|
| | change in status, asset appendix update, or other filing required to preserve authority to sell into PJM markets following closing; |

x. *Reliability and Compliance Transition*:  Each Bid must include a plan for maintaining compliance with all applicable NERC Reliability Standards and regional requirements, including any required Generator Owner, Generator Operator, or related registration changes, ReliabilityFirst coordination, compliance personnel, procedures, event-reporting obligations, and transition of books and records needed to maintain reliability compliance. The Acceptable Bidder must identify the personnel, operator, asset manager, or third-party service provider that will perform these functions after closing;

y. *Adequate Working Capital and Operating Support*:  Each Bid must provide evidence satisfactory to the Debtor that the Acceptable Bidder will have sufficient working capital, credit support, vendor relationships, and operational funding to operate the Plant as a going concern after closing, including funding for coal, lime, fuel handling, maintenance, payroll, taxes, insurance, environmental compliance, ash disposal, PJM credit and collateral, and other consumables and ordinary-course operating needs;

z. *Operational Transition/ Transition Services*.  Each Bid must identify whether the Acceptable Bidder intends to enter into any transition services arrangement with the Debtor, current management, an energy manager, plant operator, asset manager, or other third-party provider for plant operations, PJM market participation, fuel procurement, dispatch coordination, environmental compliance, accounting, payroll, IT, compliance reporting, or other services necessary to operate the Plant after closing.  If applicable, the Bid must include a proposed transition services agreement or term sheet.

aa. *Expected Closing Date*:  Each Bid must state the Acceptable Bidder's expected date of closing of the Sale Transaction;

bb. *Time Frame for Closing*:  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtor.  The Acceptable Bidder must commit to closing the proposed Sale(s) contemplated by the Bid as soon as practicable subject to any potential regulatory issues that may arise as set forth above;

cc. *No Fees*:  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation;

dd. *Adherence to the Bidding Procedures*:  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of the Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

ee. *Consent to Jurisdiction*:  The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bids, the Auction, the Sale Transaction(s) and the construction and enforcement of the Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable;

| Requirement | Description |
|---|---|
| | ff.  *Conditions to Closing*: Each Bid must identify with particularity all conditions to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required; and<br><br>gg.  *Other Information*:  Each Bid must contain such other information as may be reasonably requested by the Debtor in writing (email being sufficient). |
| **Right to Credit Bid**<br><br>L.R. 6004-1(b)(iv)(N) | TRAG/RGE, and any other person or entity holding a valid and perfected security interest in the Assets (each, a "**Secured Creditor**"), together with any agent or designee thereof, shall have the right to credit bid up to the full amount of its claims against the Debtor, including all principal, accrued and accruing interest, fees, expenses, premiums, indemnities, and any adequate protection obligations, in each case through the closing of the Sale Transaction, pursuant to section 363(k) of the Bankruptcy Code, with respect to any Assets constituting such Secured Creditor's collateral (each such bid, a "**Credit Bid**").<br><br>Any Credit Bid shall be deemed a cash Bid for all purposes of evaluating Bids hereunder, and the fact that a Bid is composed in whole or in part of a Credit Bid shall not be a detrimental factor in the Debtor's determination of the highest or otherwise best Bid. Any Secured Creditor submitting a Credit Bid shall be deemed an Acceptable Bidder and a Qualified Bidder, its Credit Bid shall be deemed a Qualified Bid, and it may participate in the Auction with respect to any Assets constituting its collateral, in each case without the requirement to submit a Good Faith Deposit, a Confidentiality Agreement, Preliminary Bid Documents, evidence of committed financing, or any Bid Documents other than a purchase agreement marked against the Form APA; *provided* that any Credit Bid must be submitted on or prior to the Bid Deadline. A Credit Bid shall not be required to serve as the Back-Up Bid. |
| **Designation of Qualified Bids**<br><br>L.R. 6004-1(c)(i)(B) | Only Bids fulfilling all of the Bid Requirements (other than any waived in writing by the Debtor in accordance with the Bidding Procedures) may, in the Debtor's reasonable business judgment and in consultation with the Consultation Parties, be deemed to be "**Qualified Bids**," and only those parties submitting Qualified Bids may, in the Debtor's reasonable business judgment and in consultation with the Consultation Parties, be deemed to be "**Qualified Bidders**"; *provided* that a Stalking Horse Bid will constitute and be deemed a Qualified Bid for all purposes hereunder; *provided further* that the Debtor will consult with counsel to the Consultation Parties before designating any Bid submitted by an Affiliated Bidder a Qualified Bid.<br><br>As soon as reasonably practicable after the Bid Deadline and prior to the Auction, the Debtor shall determine, in its reasonable business judgment and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualify as Qualified Bids and will notify each Qualified Bidder in writing (email being sufficient) of its status as a Qualified Bidder.  Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtor; *provided* that if the Debtor receives a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtor may, in consultation with the Consultation Parties, provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction.  Potential Bidders shall have until the Bid Deadline to remedy any deficiencies with respect to non-conforming or non-Qualified Bids.  The Debtor may, in consultation with the Consultation Parties, waive or modify in writing (email being sufficient) any of the Bid Requirements in the exercise of its reasonable business judgment.<br><br>Between the date that the Debtor notifies an Acceptable Bidder in writing (email being sufficient) that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent (email being sufficient) of the Debtor, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures. |

| Requirement | Description |
|---|---|
| | Neither the Debtor nor the Debtor's advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtor to a bidder, or any other matter or thing regarding the Assets. All bidders must acknowledge and agree that upon closing the Debtor shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction. The Debtor and each of the Debtor's representatives and advisors, are not responsible for, and will bear no liability with respect to, any information obtained by any Acceptable Bidder in connection with any Sale or Sale Transaction. Neither the Debtor nor the Debtor's advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtor, any advisor, or agent representing or purporting to represent the Debtor to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtor only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction. |
| **Bid Deadline**<br><br>L.R. 6004-1(c)(i)(B)(1) | Qualified Bids must be submitted in writing to the Bid Notice Parties so as to be actually received **no later than 4:00 p.m. (prevailing Eastern Time) on November 9, 2026**, or, if such date is extended in accordance with the Bidding Procedures, such extended date (the "**Bid Deadline**").<br><br>The Debtor may extend the Bid Deadline, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, for any reason whatsoever, in its reasonable business judgment. |
| **Evaluation of Qualified Bids**<br><br>L.R. 6004-1(c)(i)(B); L.R. 6004-1(b)(iv)(D) | The Debtor shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's business judgment and in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid for the Assets (the "**Starting Bid**").<br><br>When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Consultation Parties, will consider the following factors, to the extent applicable, in addition to any other factors that the Debtor deems appropriate: (i) the amount and nature of the total consideration; (ii) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (iii) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; (iv) the tax consequences of such Qualified Bid; (v) the Assets subject to the Qualified Bid and whether the Qualified Bid is for all of the Assets; (vi) the impact on trade and other unsecured creditors. In addition, the Debtor, in consultation with the Consultation Parties, may consider the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; (vii) the Qualified Bidder's ability to obtain FERC, PJM, PJM Settlement, NERC, ReliabilityFirst, environmental, and other regulatory approvals; (viii) the Qualified Bidder's ability to maintain the Debtor's PJM capacity-resource obligations and operate the Plant reliably after closing; (ix) the Qualified Bidder's PJM credit/collateral plan and market-participation plan; (x) the Qualified Bidder's ability to fund coal, lime, maintenance, payroll, environmental compliance, and ordinary-course operating needs; (xi) whether the Qualified Bid supports the Debtor's proposed FERC settlement and sale free-and-clear objectives; and (xii) the likelihood and timing of obtaining all required approvals and closing without operational disruption; and (xiii) the extent to which the Qualified Bid provides for the indefeasible payment in full in cash at closing of the obligations owing to TRAG/RGE. The Debtor will prefer Qualified Bids for all of the Assets but reserves the right, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, to consider bids for less than all of the Assets. Prior to commencing the Auction, the Debtor shall notify all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction. |
| **No Qualified Bids**<br><br>L.R. 6004-1(c)(i)(E) | If no Qualified Bids other than a Stalking Horse Bid, which has been approved by the Court, or in the absence of a Stalking Horse Bid, the Debtor has only received a single Qualified Bid by the Bid Deadline, the Debtor, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, may cancel the Auction and the Stalking Horse Bid or the Qualified Bid, as applicable, will be deemed to be the Successful Bid for the Assets to which such Stalking Horse Bid or the Qualified |

| Requirement | Description |
|---|---|
|  | Bid relates.  The Debtor shall file a notice on the docket of the Chapter 11 Case of any cancellation of the Auction as soon as reasonably practicable after making such determination. |
| **Auction**<br><br>L.R. 6004-1(c)(ii)(A)-(D); L.R. 6004-1(c)(i)(C)(3); L.R. 6004-1(b)(iv)(D) | If more than one Qualified Bid is received, the Auction will take place on **November 12, 2026 at 10:00 a.m. (prevailing Eastern Time)** via remote video, in-person, or hybrid format, at the Debtor's election.<br><br>The Auction will be conducted by the Debtor in accordance with the following procedures (the "**Auction Procedures**"):<br><br>a.  the Auction will be conducted openly;<br><br>b.  except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;<br><br>c.  bidding shall begin with the Starting Bid;<br><br>d.  subsequent bids (each, an "**Overbid**") may only be made at the Auction and shall be at least a $1,000,000.00 increase in cash, cash equivalents, or other such consideration that the Debtor, in its reasonable business judgment, deems equivalent over the previous bid (a "**Minimum Overbid**"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid.  The Debtor may, in its reasonable business judgment, announce increases or reductions to the Minimum Overbid at any time during the Auction, in consultation with the Consultation Parties. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtor, in its reasonable business judgment, deems equivalent that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;<br><br>e.  at the commencement of the Auction, the Debtor may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);<br><br>f.  each Qualified Bidder will be permitted a reasonable amount of time to respond to previous bids at the Auction;<br><br>g.  during the course of the Auction, the Debtor shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtor's view, the then highest or otherwise best bid(s) for the applicable Assets;<br><br>h.  the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;<br><br>i.  each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction;<br><br>j.  each Qualified Bidder will be required to confirm that its Bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid in accordance with the Bidding Procedures (as may be modified in accordance herewith prior to or at the Auction);<br><br>k.  the Court and the Debtor will not consider Bids made after the Auction has been closed;<br><br>l.  the Debtor, in its reasonable business judgment and in consultation with the Consultation Parties, consistent with the Debtor's fiduciary obligations under applicable law to maximize the value of its estate and to consider the interests of its stakeholders, may reject, at any time |

| Requirement | Description |
|---|---|
| | before entry of an order of the Court approving a Successful Bid, any Bid that the Debtor determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures Order, the Bidding Procedures, or the terms and conditions of the Sale Transaction, (iii) contrary to the best interests of the Debtor, its estate, its creditors, and other stakeholders; or (iv) otherwise violative of any of the Debtor's fiduciary obligations under applicable law.<br><br>m. the Debtor has the right to request any additional information that will allow the Debtor to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by its proposal and any further information that the Debtor believes is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;<br><br>n. the Debtor, in consultation with the Consultation Parties, reserves the right to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and<br><br>o. notwithstanding anything herein to the contrary, the Debtor may, in consultation with the Consultation Parties, at any time choose to adjourn the Auction by announcement prior to or at the Auction. The Debtor shall file notice of such adjournment on the docket of the Chapter 11 Case as soon as reasonably practicable.<br><br>The Auction shall include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their bids; provided that any Overbid made by a Qualified Bidder (including with respect to any Back-Up Bid) must remain open and binding on the Qualified Bidder until the earliest of (i) the closing of a Sale Transaction pursuant to the Successful Bid or Back-Up Bid, (ii) 120 days after the date of the Sale Hearing, provided, that, with respect to any Back-Up Bid, such date may be extended by up to an additional eighty (80) days if the only item outstanding with respect to the closing of any Sale Transaction pursuant to the Successful Bid is obtaining the required regulatory approvals, and (iii) the release of such Back-Up Bid by the Debtor in writing (email being sufficient) (the "**Back-Up Bid Termination Date**"). The Debtor may, in its reasonable business judgment and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in the Auction the terms of such Qualified Bidder's respective Bids.<br><br>For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtor from exercising its fiduciary duties under applicable law (as reasonably determined in good faith by the Debtor, in consultation with counsel).<br><br>The Consultation Parties and their respective representatives and professionals shall be entitled to attend the Auction, without any requirement to provide prior notice of their intention to do so. Except as otherwise determined by the Debtor, only (i) the Debtor, (ii) the Office of the United States Trustee, (iii) the Committee, (iv) the Consultation Parties, (v) the Qualified Bidders (including, without limitation, any Stalking Horse Bidder which has been approved by the Court (if any)) and (vi) any other parties as the Debtor may determine to include in its reasonable discretion, or as otherwise ordered by the Court, in each case, along with the respective representatives and professionals of the foregoing parties shall be entitled to attend the Auction (such parties in clauses (ii) through (vi) collectively, the "**Auction Parties**"). |

| Requirement | Description |
|---|---|
| **Acceptance of a Successful Bid**<br><br>L.R. 6004-1(c)(ii); L.R. 6004-1(b)(iv)(E) | The Auction shall continue until (i) there is only one Qualified Bid that the Debtor determines, in its reasonable business judgment and in consultation with the Consultation Parties, consistent with the exercise of its fiduciary duties and outlined below in further detail, is the highest or otherwise best bid to purchase the Assets (each, a "**Successful Bid**"), and (ii) the Debtor determines, in its reasonable business judgment and with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid that would be reasonably acceptable to the Debtor, at which point, the Auction will be closed.<br><br>When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor shall take into account the factors set forth in Section V.E of the Bidding Procedures, as well as any other factors the Debtor, in its reasonable business judgment, reasonably deems relevant and/or appropriate.<br><br>Any Qualified Bidder that submits a Successful Bid will be deemed a "**Successful Bidder**" with respect to the Assets contemplated for the purchase pursuant to such Successful Bid.  As soon as reasonably practicable, after closing the Auction, the Debtor shall file notice of the Successful Bid and the Successful Bidder on the docket of the Chapter 11 Case.  Following conclusion of the Auction and selection of a Successful Bidder, the Debtor shall present the results of the Auction at the sale hearing scheduled pursuant to the Bidding Procedures Order (the "**Sale Hearing**") and shall seek entry of the Sale Order approving a binding purchase agreement reasonably acceptable to TRAG/RGE with the Successful Bidder on the terms of the Successful Bid.  The Sale Order shall deem the Debtor's selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, the Debtor shall not solicit and/or accept any further bids or offers to submit a bid after such selection; *provided* that, nothing in the Bidding Procedures shall require the sole Director and Independent Manager, or similar governing body of the Debtor to take or refrain from taking any action that the Debtor determines in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.<br><br>Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder (including any Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtor pursuant to a customary and reasonable escrow agreement.  Each Successful Bidder and the Debtor shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made. |
| **Designation of a Back-Up Bidder**<br><br>L.R. 6004-1(c)(i)(E) | The Back-Up Bid to purchase the Assets (the "**Back-Up Bidder**") will be determined by the Debtor, in consultation with the Consultation Parties, at the conclusion of the Auction, and will be announced at that time to all the Qualified Bidders participating in the Auction.  The Debtor's selection of a Back-Up Bid shall be deemed final and the Debtor shall not accept any further bids or offers to submit a bid after such selection.  The Debtor will be authorized, but not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved pursuant to the Sale Order or subject to Court approval if not.<br><br>If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Back-Up Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale Transaction with the Debtor as soon as is reasonably practicable without further order of the Court (so long as such Back-Up Bid shall have been approved pursuant to the Sale Order or subject to Court approval if not).<br><br>The Back-Up Bid shall remain open and irrevocable until the Back-Up Bid Termination Date.  The Debtor shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Bid Termination Date. |

| Requirement | Description |
|---|---|
| **Approval of the Sale Transaction**<br><br>L.R. 6004-1(b)(iv)(D)-(E) | The Sale Hearing to consider approval of the Sale Transaction shall take place **on November 18, 2026 at [●]:[●] (prevailing Eastern Time)**, or such other date as set by the Court, at the United States Bankruptcy Court for the District of Delaware, 824 Market St. N, Wilmington, Delaware 19801 or by such other virtual or electronic means as determined by the Court.<br><br>At the Sale Hearing certain findings will be sought from the Court regarding the Sale Transaction and the Auction, including, among other things, that: (1) the Auction was conducted, and the Successful Bidder (which may be any Stalking Horse Bidder (if any) which has been approved by the Court) was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the Assets and is in the best interests of the Debtor and its estate. **The Sale Hearing may be continued to a later date by the Debtor by filing a notice on the docket of the Chapter 11 Case and/or making an announcement at the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**<br><br>Objections to the Sale Transaction and entry of any Sale Order approving the Sale Transaction must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to be **actually received** by the Debtor and the Bid Notice Parties by the date that is no later than fourteen (14) days after the Sale Notice is filed and served. |
| **Return of Good Faith Deposit**<br><br>L.R. 6004-1(c)(i)(B)(3); see also L.R. 6004-1(b)(iv)(F) | The Good Faith Deposit of the Successful Bidder, if any, will, upon consummation of the Successful Bid, become property of the Debtor's estate and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.<br><br>If the Successful Bidder (or Back-Up Bidder, if applicable), if any, fails to consummate the Successful Bid (or Back-Up Bid if applicable), then the Good Faith Deposit(s) of such Successful Bidder will be irrevocably forfeited to the Debtor and may be retained by the Debtor as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtor.<br><br>The Good Faith Deposit of any unsuccessful Qualified Bidders (except for any Back-Up Bidder) will be returned within five (5) business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.<br><br>The Good Faith Deposit of any Back-Up Bidder, if any, will be returned in accordance with Section VI.B of the Bidding Procedures.<br><br>All such deposits shall be held in escrow and at no time shall be deemed property of the Debtor's estate absent further order of the Court. To the extent any Good Faith Deposit is forfeited and becomes property of the Debtor's estate, such amounts shall constitute cash collateral of TRAG/RGE and shall be subject to their liens and claims, subject to the terms of the Cash Collateral Order.[4] |

---

[4] "Cash Collateral Order" means the *Interim Order (I) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (II) Granting Adequate Protection Liens to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 50] or such final order as may be entered by the Court.

| Requirement | Description |
|---|---|
| **Reservation of Rights**<br><br>L.R. 6004-1(c)(i)(D) | The Debtor reserves its rights to modify the Bidding Procedures in its reasonable business judgment with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties and in a manner consistent with the exercise of its fiduciary duties in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional terms and conditions on the sale of the Assets, including, without limitation: (1) extending the deadlines set forth in the Bidding Procedures; (2) adjourning the Auction without further notice; (3) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (4) canceling the Auction; (5) rejecting any or all Bids or Qualified Bids; and (6) adjusting the applicable minimum overbid increment; provided that Debtor shall not amend or modify the Bidding Procedures or the bidding process to reduce, eliminate, or otherwise modify its obligations to consult with or obtain the consent of the Consultation Parties (as applicable) without the prior written consent of the Consultation Parties. |
| **Consent to Jurisdiction**<br><br>L.R. 6004-1(c)(i)(D) | All Qualified Bidders (including any Stalking Horse Bidder (if any) which has been approved by the Court) at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale Transaction and the construction and enforcement of the Bidding Procedures, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to the Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.<br><br>Any parties raising a dispute relating to the Bidding Procedures must request that such dispute be heard by the Court on an expedited basis. |
| **Fiduciary Out**<br><br>L.R. 6004-1(c)(i)(D) | Notwithstanding anything to the contrary in the Bidding Procedures or any other document filed with or entered by the Court, nothing in the Bidding Procedures or the Bidding Procedures Order shall require the Debtor or the sole Director and Independent Manager, or similar governing body of the Debtor to take any action or to refrain from taking any action related to any Sale Transaction or with respect to the Bidding Procedures, to the extent the Debtor, the sole Director and Independent Manager, or similar governing body of the Debtor reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, *however*, that the Debtor shall provide the Consultation Parties with notice of such action or inaction within two (2) Business Days of such action or inaction. |

24.     In addition, the Debtor anticipates that the Sale Order will contain certain provisions that require disclosure under Local Rule 6004-1.  At this time, the Debtor makes the following statements:

a) Local Rule 6004-1(b)(iv)(A). To the extent a proposed purchaser is an insider (within the meaning of section 101(31) of the Bankruptcy Code), the Debtor will make the necessary disclosures to the Court and take measures to ensure the fairness of the sale process and the proposed transaction.

b) Local Rule 6004-1(b)(iv)(B). The Debtor does not presently have any agreement between any interested bidder and the Debtor's management or key employees. If any agreements are reached, the Debtor will make the necessary disclosures.

c) Local Rule 6004-1(b)(iv)(C). To the extent that the Sale Order includes a release in favor of any entity, the Debtor will make the necessary disclosures.

d) Local Rule 6004-1(b)(iv)(D). The Debtor is permitted to respond to any inquiries or offers to purchase any or all of the Assets in accordance with the terms of the Bidding Procedures.

e) Local Rule 6004-1(b)(iv)(E). The contemplated closing date for the Sale Transaction intends to close on the Sale Transaction as set forth in the applicable asset purchase agreement and following any applicable regulatory approvals.

f) Local Rule 6004-1(b)(iv)(F). The Debtor is requiring Qualified Bids to include a good faith deposit constituting ten percent (10%) of the total cash consideration of the bid.

g) Local Rule 6004-1(b)(iv)(G). The Debtor does not currently have any interim management or other agreement with any potential purchaser. If any agreements are reached, the Debtor will make the necessary disclosures.

h) Local Rule 6004-1(b)(iv)(H). The Debtor intends to request in the Sale Order that net proceeds from the sale of the Prepetition Secured Parties' collateral be released to such parties as may be required under any order authorizing the use of such collateral.

i) Local Rule 6004-1(b)(iv)(I). The Debtor is not presently seeking to have the Sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code pursuant to this Motion.

j) Local Rule 6004-1(b)(iv)(J). The Debtor will retain necessary books and records, copies thereof, or include as part of the purchase agreement with the Successful Bidder(s) appropriate access to such information, to enable it to administer the Chapter 11 Case following any Sale.

k) Local Rule 6004-1(b)(iv)(K). The Assets available for acquisition may include all claims and causes of action arising under sections 502(d) and 544 through 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or any analogous state law.

l) Local Rule 6004-1(b)(iv)(L). The Debtor anticipates that any purchase agreement with a Successful Bidder will provide that the Successful Bidder(s) shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Assets, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, or substantial continuity.

m) Local Rule 6004-1(b)(iv)(M). The Debtor is seeking to sell the Assets free and clear of all liens, claims, and encumbrances to the fullest extent permitted by sections 363 and 365 of the Bankruptcy Code.

n) Local Rule 6004-1(b)(iv)(N). Any party's right to submit a credit bid pursuant to section 363(k) or any other applicable provision of the Bankruptcy Code is preserved.

o) Local Rule 6004-1(b)(iv)(O). The Debtor is seeking relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) for any Sale, as further described below.

### III.    Form and Manner of Sale Notice

25.    The Debtor also seeks approval of the form of Sale Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 2.

26.    Upon entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtor will cause the Sale Notice to be served on the parties that receive notice of this Motion.  The Debtor submits that, in light of the nature of the requested relief, no other or further notice needs to be given.

27.    In addition, as soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtor will post the Sale Notice on its restructuring website, https://cases.stretto.com/pleasantspowerstation (the "**Case Website**") and will also publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in the national edition of *The Wall Street Journal*, *The New York Times*, *USA Today*, or another publication of similar circulation, as determined by the Debtor.

28.    The Debtor respectfully submits that the Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale Transaction and Sale Hearing and an opportunity to respond accordingly.

### IV.    The Assumption Procedures

29.    The Debtor also seeks approval of certain procedures to carry out the assumption and assignment of the Contracts in connection with the Sale Transaction (the "**Assumption Procedures**").  The Assumption Procedures, set forth in detail in the Bidding Procedures Order, outline the process by which the Debtor may serve notice to certain counterparties to the Contracts (each, a "**Contract Counterparty**") regarding the proposed assumption and assignment of contractual agreements, and the related cure amounts, if applicable.  The Assumption Procedures and associated notices likewise inform parties of their right to object and how and when to submit

such an objection, along with other relevant deadlines and a means for resolving disputes, if

necessary, relating to the assumption and assignment of contractual agreements.

**<u>BASIS FOR RELIEF</u>**

**I.    The Relief Sought in This Motion Will Maximize Value and Is in the Best Interests of the Debtor's Estate.**

30.    The goal of any proposed sale of property in bankruptcy is to maximize value for

the estate. *See, e.g.*, *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (holding

that a debtor has "a fiduciary duty to protect and maximize the estate's assets"); *In re Adams Res.*

*Expl. Corp.*, No. 17-10866, 2017 WL 5484017, at *3 (Bankr. D. Del. Sept. 20, 2017) ("The relief

requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to

maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate,

and its creditors.");

31.    To effectuate this goal, bankruptcy courts routinely approve bidding procedures in

connection with sales carried out pursuant to section 363 of the Bankruptcy Code understanding

that these procedures promote fair, robust and value-maximizing sale processes. *See, e.g.*, *In re*

*Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders

is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Dura*

*Auto. Sys., Inc.*, No. 06-11202, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) ("The

paramount goal in any proposed sale of property of the estate is to maximize the proceeds received

by the estate . . . .  To that end, courts recognize that procedures intended to enhance competitive

bidding are consistent with the goal of maximizing the value received by the estate and therefore

are appropriate in the context of bankruptcy sales."); *In re Fin. News Network, Inc.*, 126 B.R. 152,

156 (S.D.N.Y. 1991) ("[T]he purpose of [approving bidding procedures] has been to ensure fair

comparability between competing bids or to protect other bidders who have limited their bids to

the announced terms"); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206– 08 (3d Cir. 2010) (evaluating bid protections and break-up fees by examining whether they act to "encourage bidding" and "maximize the value of the estate" or whether they "chill the bidding process").

32.     Courts in the Third Circuit have routinely held that a debtor's business judgment with respect to the procedures to be used in selling an estate's assets is entitled to substantial deference. *See, e.g.*, *In re Immune Pharms. Inc.*, 635 B.R. 118, 122 (Bankr. D.N.J. 2021) ("[U]nder normal circumstances, the court should defer to the [Debtor's] judgment so long as there is a legitimate business justification."); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) ("[T]he Third Circuit follows the 'sound business purpose' rather than the 'emergency' rule.") (citations omitted); *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under [Section 363], courts require the [Debtor] to show that a sound business purpose justifies such actions.'  If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)).

33.     The Debtor believes that the proposed Bidding Procedures will facilitate active, competitive bidding from parties with serious interest in purchasing the Debtor's Assets and will elicit the most value-maximizing offers for these Assets.  The proposed Bidding Procedures will allow the Debtor to execute a sale of its Assets in a streamlined, fair, and transparent process that will encourage participation by numerous financially-capable bidders and provide them with enough time to conduct due diligence and obtain the information necessary to submit a timely and well-informed bid.

34. To further ensure a broad outreach, the Bidding Procedures allow the Debtor to conduct a fair and transparent public auction with minimal barriers to entry. The Debtor has generated a data room which will allow eligible potential bidders to conduct necessary diligence.

35. In addition, the Bidding Procedures provide the Debtor with a robust opportunity to consider competing bids and select the highest or otherwise best offer for the Assets. Accordingly, for the foregoing reasons, the Debtor believes that the proposed Bidding Procedures will encourage robust bidding for the Assets and are appropriate under the relevant standards governing bidding procedures previously approved by courts in this District.

## II.    The Debtor Has Articulated a Sound Business Purpose for the Sale.

36. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts, including courts within the Third Circuit, routinely authorize a sale of a debtor's assets pursuant to section 363 if the debtor's entry into the transaction is based on a sound business purpose. *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) ("[U]nder normal circumstances the court would defer to the [debtor's] judgment so long as there is a legitimate business justification."); *In re Lehigh Valley Pro. Sports Clubs, Inc.*, No. 00-11296, 2000 WL 567905, at *3 (Bankr. E.D. Pa. May 5, 2000) ("The standard for court approval [of a sale of a debtor's property under section 363], commonly referred to as the business judgment test, is whether sound business purpose justifies the action."); *Montgomery Ward Holding Corp.*, 242 B.R. at 153 ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"); *Delaware & Hudson*, 124 B.R. at 176–77 (applying the "sound business purpose" standard for approval of a pre-confirmation sale of a debtor's assets rather than an "emergency" standard); *In re Olsen*, No. 14-11273, 2017 WL 3311218, at *7 (Bankr. D.N.J. July 20, 2017)

("The Third Circuit [has] adopted the 'sound business purpose' test . . . when examining the reason for an asset sale.").

37.    Courts typically consider the following factors in determining whether a proposed sale meets this standard:

    i)   whether a sound business justification exists for the sale;
    ii)  whether adequate or reasonable notice of the sale was given to interested parties;
    iii) whether the sale will produce a fair and reasonable price for the property; and
    iv) whether the parties have acted in good faith.

*In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *Del. & Hudson*, 124 B.R. at 176).

38.    Once a debtor articulates a sound business justification for a proposed sale under section 363 of the Bankruptcy Code, the debtor is entitled to a presumption that the proposed sale is reasonable and in the best interests of the estate.  *See, e.g.*, *In re Filene's Basement, LLC*, No. 11-13511, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction."); *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity."); *In re Troll Commc'ns, LLC*, 385 B.R. 110, 118 (Bankr. D. Del. 2008) ("the burden is on the party challenging the decision to establish facts rebutting the presumption") (citation omitted); *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he [Bankruptcy] Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions . . . Where the debtor articulates a reasonable basis for its business decisions (as distinct from a

decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

39.     A sound business purpose exists for the proposed Sale Transaction.  The Sale Transaction, following the robust marketing process described herein, is designed to achieve the highest price for the Assets, generating as much recovery as possible for the Debtor's stakeholders while preserving the going-concern operations of the Plant and continued ability to provide critical generation capacity in the Debtor's energy market.  The Auction invites credible, interested bidders to participate in a competitive process and is thereby designed to yield the highest or otherwise best offer for the Assets.  Further, because any sale of the Assets will likely involve assuming certain of the Contracts, the Sale Transaction creates the greatest likelihood for payment in full and a continuing business relationship for certain of the Debtor's go-forward creditors.  Although the Debtor is not seeking approval of the Sale Transaction by this Motion, the foregoing demonstrates that a sound business purpose exists for pursuing approval of the Sale Transaction at the Sale Hearing.

**III.     The Sale Transaction Should be Subject to the Protections of Section 363(m) of the Bankruptcy Code.**

40.     Section 363(m) of the Bankruptcy Code protects the purchaser of assets sold pursuant to a sale under section 363 of the Bankruptcy Code from the risk that the purchaser's interest in the purchased assets will be clawed back if the applicable sale order is reversed on appeal, so long as such purchaser purchased the assets in "good faith."  It provides, in relevant part, as follows:

> [t]he reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the

pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

41. The term "good faith" is not defined in the Bankruptcy Code, but courts, including within the Third Circuit, have held that a purchaser may demonstrate good faith through the "integrity of [the purchaser's] conduct in the course of the sale proceedings." *In re Jersey City Cmty. Hous. Corp.*, No. 21-15863, 2023 WL 3250267, at *3 (D.N.J. May 4, 2023) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) ("The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (citation omitted)).  A lack of good faith can be demonstrated through activities such as "fraud, collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders." *Jersey City Cmty. Hous. Corp.*, 2023 WL 3250267, at *3 (quoting *Rock Indus.*, 572 F.2d at 1198).

42. The Debtor requests that the Court find that the Successful Bidder (including a Stalking Horse Bidder (if any) whose bid is the Successful Bid), arising from the Auction, if any, is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets. Such relief is appropriate in that the selection of the Successful Bidder will be the result of a competitive Bidding Process and arm's-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed sale transaction. *See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616, 620

(Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

43.     Accordingly, the Debtor believes that the Successful Bidder arising from the Auction, if any, should be entitled to the full protections of Section 363(m) of the Bankruptcy Code.

**IV.     The Potential Bid Protections Have a Sound Business Purpose and Should Be Approved.**

44.     The Debtor also seeks authority under the Bidding Procedures to designate a Stalking Horse Bidder and offer Bid Protections to such Stalking Horse Bidder.  The Debtor only seeks to utilize such authority if the Debtor designates a Stalking Horse Bidder and if the Debtor determines in its business judgment that such Bid Protections will facilitate a more competitive bidding and auction process.

45.     The use of a stalking horse is customary practice in chapter 11 cases.  In many circumstances, a stalking horse can be the best way to maximize value in an auction process.  *See Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, No. 11-cv-219, 2011 WL 2671254, at *1 n. 1 (E.D. Wis. July 7, 2011) (an auction process "establishes a framework for competitive bidding and facilitates a realization of that value.").  As a result, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bid protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement."  *Id.* (citation omitted).  Thus, the use of bid protections has become an established practice in chapter 11 cases.

46.     The Debtor believes that having the flexibility to offer and obtain court approval of Bid Protections is necessary to induce and retain a Stalking Horse Bidder.  Any Bid Protections

will be negotiated at arm's length.  By compensating a Stalking Horse Bidder for holding its offer open and establishing a baseline bid against which other potential bidders may submit higher or otherwise better offers, the Bid Protections are expected to promote a more competitive bidding process and increase the likelihood of maximizing the purchase price for the Assets.

47.     The Third Circuit has established standards for determining the propriety of bidding incentives in the bankruptcy context.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533–38 (3d Cir. 1999); *see also Reliant Energy*, 594 F.3d at 205 (noting that *O'Brien* "set forth the controlling legal principles" applicable to bidding incentives).  The Court held that even though bidding incentives, including break-up fees, are measured against a business judgment standard in nonbankruptcy transactions, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern in the bankruptcy context. *See O'Brien Envtl. Energy*, 181 F.3d at 535.  Accordingly, bidding incentives must provide some postpetition benefit to the debtor's estate to be approved. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3d Cir. 2018).  With respect to break-up fees, the standard is generally satisfied if the bid protections promote a more competitive process. *See O'Brien Envtl. Energy*, 181 F.3d at 537.

**V.     The Court Should Approve the Sale Transaction Free and Clear of Any Liens, Claims, Interests, or Encumbrances Under Section 363(f) of the Bankruptcy Code.**

48.     Section 363(f) of the Bankruptcy Code allows a sale of a debtor's assets to be made "free and clear" of any liens, claims, interests, charges, or encumbrances (with such liens, claims, interests, charges, or encumbrances attaching to the net sale proceeds with the same rights and priorities as in the assets immediately prior to the sale). *See* 11 U.S.C. § 363(f).  For a court to approve a sale of a debtor's assets pursuant to section 363 free and clear of such interests, only *one*

of the five conditions set forth in section 363(f) must be satisfied.  *See, e.g.*, *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if *any* of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all [interests]." (emphasis added)); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive.  Therefore, if *any* of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of all [interests]." (emphasis added)).

49.     Furthermore, section 105(a) of the Bankruptcy Code grants the court broad discretionary powers, providing that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  This equitable power may be used to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 Bankr. LEXIS 723, at *18–19 (Bankr. D. Del. Mar. 27, 2001) (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

50.     The Debtor submits that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale Transaction with the same validity and priority that existed prior to consummation of the Sale Transaction, subject to any claims or defenses the Debtor may possess with respect thereto.  The Debtor accordingly requests authority to convey the assets to the Successful Bidder arising from the Auction, if any, free and clear of all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances, with any such liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or

encumbrances to attach to the proceeds of the Sale Transaction with the same validity and priority that existed prior to consummation of the Sale Transaction.

**VI.    The Form and Manner of the Sale Notice Should Be Approved.**

51.    Bankruptcy Rule 2002(a) requires the Debtor to provide creditors with twenty-one (21) days' notice of the Sale Hearing.  Bankruptcy Rule 2002(c) requires that such notice must include the date, time, and location of the Auction (if any) and the Sale Hearing, and the deadline for filing any objections to the proposed sale.

52.    As noted above, upon entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtor will serve the Sale Notice upon the parties receiving notice of this Motion and publish a modified version of the Sale Notice (with any such modifications made to the extent necessary for ease of publication) (a) on the Case Website and (b) on one occasion in the national edition of The Wall Street Journal, The New York Times, USA Today, or another publication of similar circulation, as determined by the Debtor.  The Debtor submits that notice of this Motion and the Bidding Procedures Hearing to consider entry of the Bidding Procedures Order, together with service of the Sale Notice detailed herein, constitutes good and adequate notice of the Sale, the Auction, and the associated proceedings in compliance with the applicable requirements of Bankruptcy Rule 2002.  The Debtor respectfully submits that no further notice is necessary and the Debtor requests that this Court approve the form and manner of the Sale Notice.

**VII.    Assumption and Assignment of the Assigned Contracts Should Be Approved.**

53.    Section 365(a) of the Bankruptcy Code provides that, subject to certain conditions, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Courts within the Third Circuit typically approve the assumption or rejection of a contract or lease where the debtor shows that it has

exercised its sound business judgment in so doing. *See, e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (affirming the Bankruptcy Court's approval of a debtor's decision to reject a contract using the "business judgment test"); *In re Taylor*, 103 B.R. 511, 517 (D.N.J. 1989) (noting that courts typically apply the "business judgment test" in their judicial review of a debtor's decision to reject a contract). Courts applying the "business judgment test" typically only require that the debtor demonstrate that such decision to assume or reject would "benefit the estate." *In re HQ Global Holdings Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (noting that courts typically apply the "business judgment test" in their judicial review of a debtor's decision to reject an executory contract by a debtor-in-possession); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984).

54.     The assumption and assignment of the applicable Contracts in connection with the Sale Transaction are an exercise of the Debtor's sound business judgment. Without the ability to assume and assign these Contracts, the Debtor risks missing out on the most competitive, value-maximizing bids, as bidders may determine that such Contracts are necessary to operate the business as a going concern. The integrity of the assumption and assignment process will likewise be secured as such assignments will be conducted in accordance with the Assumption Procedures approved by the Court pursuant to the Bidding Procedures Order.

55.     Moreover, the assumption and assignment of the Contracts will fully comply with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1)(A) requires, in relevant part, that for any assumed executory contract or unexpired lease that is in default, the debtor must "cure[], or provide[] adequate assurance that the [debtor] will promptly cure, such default." 11 U.S.C. § 365(b)(1)(A). The Debtor will file with the Court, and serve on each applicable Contract Counterparty, sufficient notice of any cure (each, a "**Contract Assumption**

**Notice**") indicating the Debtor's calculation of the Cure Amount for each such Contract. Such Contract Counterparty will then have the opportunity to object to the proposed assumption and assignment of the applicable Contracts pursuant to the Sale, including the proposed Cure Amount, in advance of the Sale Hearing. The Debtor's assumption and assignment of the applicable Contracts will be contingent upon payment or reserve of the applicable Cure Amounts and will be effective only upon the closing of the Sale.

56.     Section 365(f)(2) requires that any assignment of an executory contract or unexpired lease of the debtor be contingent on "adequate assurance of future performance by the assignee of such contract or lease . . . whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). What constitutes "adequate assurance of future performance" is an inquiry "determined by consideration of the facts of the proposed assumption." *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001). While "adequate assurance of future performance" is a fact-specific inquiry, this district has held that such adequate assurance "is to be given a practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009) ("The Bankruptcy Code does not provide a definition of adequate assurance . . . . Based on legislative history, courts have turned to the Uniform Commercial Code for guidance as to the meaning of adequate assurance . . . as such, courts have held that the term 'adequate assurance' was intended to be given a practical, pragmatic construction." (citations omitted). One key indicator of adequate assurance of future performance that at least one court within the Third Circuit has cited is the "assignee's financial health and experience in managing the type of enterprise or property assigned." *Dura Auto*, 2007 WL 7728109, at *97.

57.     As set forth in the Bidding Procedures, any "Qualified Bid" must include information demonstrating adequate assurance of future performance. The Debtor will provide

- 37 -

such information to all Contract Counterparties to any assigned Contract and/or direct the Contract Counterparty to any relevant publicly available information regarding the financial condition of the Successful Bidder. Contract Counterparties will then have the opportunity to object to any proposed adequate assurance. Based on the foregoing provisions of the Assumption Procedures, the Debtor's assumption and assignment of the applicable Contracts in connection with the Sale comply with section 365 of the Bankruptcy Code and should be approved.

58.     To facilitate the assumption and assignment of the assigned Contracts, the Debtor further requests that the Court find that all anti-assignment provisions in the assigned Contracts, whether such provisions expressly prohibit or have the effect of restricting or prohibiting assignment of such contract, to be unenforceable under section 365(f) of the Bankruptcy Code.[5]

## **RESERVATION OF RIGHTS**

59.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted, is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) an

---

[5]     Section 365(f)(1) of the Bankruptcy Code provides, in relevant part, that, subject to certain conditions, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease." 11 U.S.C. § 365(f)(1). Section 365(f)(3) of the Bankruptcy Code further provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the [debtor]." 11 U.S.C. § 365(f)(3).

admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (f) a waiver or limitation of any claims, causes of action, or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE OF MOTION AND ORDER

60.     Notice of the Motion will be given to the following parties or their respective counsel, as applicable:  (i) the Office of the United States Trustee for the District of Delaware, (ii) the parties included on the Debtor's list of thirty (30) largest unsecured creditors,  (iii) the West Virginia Economic Development Authority, (iv) TRAG LLC and RG Energy LLC, (v) the United States Attorney's Office for the District of Delaware, (vi) the attorneys general for the State of West Virginia, (vii) the United States Department of Justice, (viii) the Internal Revenue Service, (ix) all parties reasonably known by the Debtor to assert a lien or encumbrance on any of the Assets; (x) all parties reasonably known by the Debtor to have asserted an interest in or claim to any of the Assets; (xi) all Contract Counterparties; and (xii) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Bankruptcy Rule 2002.

61.     The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice and the Contract Assumption Notice (where applicable), as provided for herein, constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto in compliance

with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtor proposes that no other or further notice of the Sale shall be required.

[*Remainder of page intentionally left blank.*]

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Date: August 13, 2026

*/s/ S. Alexander Faris*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Robert F. Poppiti, Jr. (No. 5052)
S. Alexander Faris (No. 6278)
James C. Diver (No. 7568)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: amagaziner@ycst.com
    rpoppiti@ycst.com
    afaris@ycst.com
    jdiver@ycst.com

*– and –*

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Alexander Woolverton (admitted *pro hac vice*)
Kyle J. Ortiz (admitted *pro hac vice*)
Brian F. Shaughnessy (admitted *pro hac vice*)
Andrew Pollack (admitted *pro hac vice*)
Melissa Mertz (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: alexander.woolverton@hsfkramer.com
    kyle.ortiz@hsfkramer.com
    brian.shaughnessy@hsfkramer.com
    andrew.pollack@hsfkramer.com
    melissa.mertz@hsfkramer.com

*Proposed Co-Counsel to the Debtor and
Debtor in Possession*