# **EXHIBIT A**

**Proposed Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Omnis Pleasants, LLC, | ) | Case No. 26-11169 (KBO) |
| Debtor.[1] | ) | |

**ORDER (I) APPROVING AUCTION AND BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS, (II) SCHEDULING CERTAIN DATES AND DEADLINES RELATED THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE BIDDER AND OFFER BID PROTECTIONS RELATED THERETO, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) APPROVING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtor in possession (the "**Debtor**") for entry of an order (this "**Order**"): (a) approving marketing, auction, and bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**"), to govern the solicitation and selection of the highest or otherwise best offer for the sale (the "**Sale Transaction**") of all or substantially all of the Debtor's assets (the "**Assets**"), (b) establishing certain dates and deadlines with respect to the marketing and sale of the Assets, (c) authorizing, but not directing, the Debtor to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and offer bid protections related thereto (the "**Bid Protections**"), (d) approving the manner of notice of the Auction (if any) and Sale Transaction substantially in the form attached hereto as **Exhibit 2**, (e) approving

1 The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and service address is One Power Station Boulevard, Belmont, West Virginia 26134.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

procedures for the assumption and assignment of certain executory contracts (the "**Executory Contracts**") and unexpired leases, as applicable (the "**Unexpired Leases**" and together with the Executory Contracts, the "**Contracts**") in connection with the Sale Transaction and approving the manner of notice thereof (the "**Contract Assumption Notice**") substantially in the form attached hereto as **Exhibit 3**, and (f) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Standing Order; and this Court having found that venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that due and proper notice of the Motion has been given, and that no other or further notice is required or necessary under the circumstances; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon the record in the Chapter 11 Case and the proceedings had before this Court; and this Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT:**

A. Jurisdiction and Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Statutory and Legal Predicates. The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1, and 9006-1(c).

C. Sale Process. The Debtor and its advisors have been engaging with a number of interested parties to solicit and develop the highest or otherwise best offer for the Assets.

D. Bidding Procedures. The Debtor has articulated good and sufficient business reasons for this Court to approve the Bidding Procedures. The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the proceeds from the Sale Transaction. The Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets. The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

E. The Debtor has demonstrated a compelling and sound business justification for this Court to enter this Order and grant the relief set forth herein.

F. Stalking Horse Designation. The Stalking Horse Designation Procedures (as defined herein) and the granting of any Bid Protections are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the Purchase Price of the Bid submitted by the Stalking Horse Bidder and what portion is cash; (c) whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Bid submitted by the Stalking Horse Bidder;

(d) any proposed Bid Protections; (e) the Stalking Horse Agreement; (f) the Assets subject to the Stalking Horse Bid; and (g) the Stalking Horse Objection Deadline.

G. Auction Notice. The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide interested parties with timely and proper notice of the Auction (if any) and the proposed Sale Transaction and relevant information related thereto, including: (a) the Bidding Procedures; (b) the date, time, and location of the Auction; (c) the date, time, and location of the Sale Hearing; and (d) the deadline for filing objections to any Sale Transaction and entry of the order approving any Sale Transaction; (e) instructions for obtaining a copy of the Form APA; (f) a summary of the Sale Transaction terms, including that the Sale Transaction contemplates a transfer of the Assets free and clear of liens, claims, interests, and other encumbrances, with such liens, claims, interests and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (g) notice of the proposed assumption and assignment of applicable Contracts.

H. Contract Assumption Notice. The Contract Assumption Notice, substantially in the form attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no further notice of the Assumption and Assignment Procedures shall be required, except as expressly required herein.

I. Notice. Notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the other relief granted herein, and the hearing regarding the foregoing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances

of the Debtor's Chapter 11 Case, such that no other or further notice of the foregoing need or shall be required or provided except as set forth herein or in the Bidding Procedures or the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**I. Important Dates and Deadlines.**

3. *Bid Deadline*. November 9, 2026 at 4:00 p.m. (prevailing Eastern Time) or, if such date is extended in accordance with the Bidding Procedures, such extended date, is the deadline by which all Qualified Bids must be ***actually received*** by the parties and in the manner prescribed by the Bidding Procedures, which may be extended by the Debtor with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE.

4. *Auction*. The date and time of the Auction, if any, is November 12, 2026 at 10:00 a.m. (prevailing Eastern Time), or, if such date is extended in accordance with the Bidding Procedures, such extended date, at a time to be announced by the Debtor. Any extension or other change to the date, time, or format of the Auction shall be made by the Debtor with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE and upon written notice to this Court. The Auction will be conducted via remote video, in-person, or hybrid format, at the Debtor's election. Except as otherwise determined by the Debtor, in consultation with the Consultation Parties, only (i) the Debtor, (ii) the Office of the United States Trustee, (iii) the Consultation Parties, (iv) the Qualified Bidders (including, without limitation, any Stalking

Horse Bidder which has been approved by this Court (if any)), and (v) any other parties as the Debtor may determine to include in its reasonable discretion, or as otherwise ordered by this Court, in each case, along with the respective representatives and professionals of the foregoing parties shall be entitled to attend the Auction (such parties in clauses (ii) through (v) collectively, the "**Auction Parties**"), and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. Notwithstanding the foregoing, the Consultation Parties and their respective representatives and professionals may attend the Auction without prior notice to the Debtor or its advisors of their intention to do so.

5. If the Debtor determines, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE, not to conduct an Auction for the Assets, then the Debtor shall file a notice on the docket of the Chapter 11 Case as soon as reasonably practicable after making such determination.

6. *Notice of Successful Bidder*. As soon as reasonably practicable after closing the Auction, the Debtor shall file a Notice of Successful Bid and Successful Bidder on the docket of the Chapter 11 Case.

7. *Sale Objection Deadline*. Objections, if any, to the Sale Transaction must be made by the date that is fourteen (14) days after the Sale Notice is filed and served. Objections to the approval of the Sale Transaction must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on the following parties (collectively, the "**Notice Parties**"):

a. proposed co-counsel to the Debtor, Young Conaway Stargatt & Taylor, LLP ("**YCST**"), Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), and S. Alexander Faris (afaris@ycst.com); and Herbert Smith Freehills Kramer (US) LLP ("**HSF Kramer**" and together with YCST, "**Debtor's Counsel**"), 1177 Avenue of the Americas, New York, New

York 10036 (Attn: Alexander Woolverton (Alexander.Woolverton@hsfkramer.com), Andrew Pollack (Andrew.Pollack@HSFKramer.com), and Melissa Mertz (melissa.mertz@hsfkramer.com);

b. counsel to TRAG/RGE, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020, Attn: Kristine Manoukian (kristine.manoukian@us.dlapiper.com); 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: R. Craig Martin (craig.martin@us.dlapiper.com); and 500 Eighth Street NW, Washington, DC 20004, Attn: Erik F. Stier (erik.stier@us.dlapiper.com); and

c. the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801 Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov).

Any party or entity who fails to timely make an objection to the Sale Transaction on or before the Sale Objection Deadline shall be forever barred from asserting an objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.

8. *Sale Hearing*. November 18, 2026 at [●]:[●], prevailing Eastern Time is the date and time for the hearing for this Court to consider approval of the Sale Transaction and the Successful Bid and entry of the Sale Order, which shall be in form and substance reasonably acceptable to TRAG/RGE.

9. The dates and deadlines set forth in this Order are subject to modification by the Debtor with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE in accordance with the Bidding Procedures.

## II. Auction, Bidding Procedures and Related Relief.

10. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1,** are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The

Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures with the goal of attaining the highest or otherwise best offer for the Debtor's Assets. Subject to the terms of the Bidding Procedures, the Debtor may, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, modify the Bidding Procedures as necessary or appropriate to maximize value for its estate. All rights of the Debtor, as it may reasonably determine to be in the best interests of its estate, to (i) modify the Bidding Procedures in good faith, (ii) further the goal of attaining the highest or otherwise best offer for the Assets, or (iii) impose, upon or prior to the selection of the Successful Bidder additional customary terms and conditions on the Sale, are reserved to the extent set forth in the Bidding Procedures. Notwithstanding the foregoing, the Debtor shall not amend or modify the Bidding Procedures, this Order, or the bidding process in a manner that reduces, eliminates, or otherwise modifies the Debtor's obligations to consult with or obtain the consent of the Consultation Parties, or that alters, limits, or imposes additional burdens on the rights of TRAG/RGE, without the prior written consent of TRAG/RGE.

11. Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtor or its agent in accordance with the Bidding Procedures, and shall not become property of the Debtor's bankruptcy estate unless and until released from escrow to the Debtor pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable. To the extent any deposit is forfeited and becomes property of the Debtor's estate, such amounts shall constitute cash collateral of TRAG/RGE and shall be subject to their liens and claims, subject to the terms of the Cash Collateral Order.

12. Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction and the Auction shall

be conducted openly and the Auction shall be transcribed or videotaped, as set forth in the Bidding Procedures.

13. Other than any Bid Protections approved for a Stalking Horse Bidder in connection with a Stalking Horse Bid, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment in connection with any Sale Transaction, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any other fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise. Any Bid Protections approved by this Court shall be payable, solely in the event of consummation of a Sale Transaction to a Bidder other than the Stalking Horse Bidder, solely from the cash proceeds of the alternative transaction giving rise thereto, at the closing thereof, and shall not be payable from, or secured by any lien on, the collateral of TRAG/RGE or the proceeds thereof.

## III. Stalking Horse Bidders and Stalking Horse Bid Protections

14. The Debtor, upon entry of this Order, shall be authorized, but not obligated, in an exercise of its reasonable business judgment, following consultation with the Consultation Parties, to (a) designate a Stalking Horse Bidder, (b) enter into a Stalking Horse Agreement, and (c) agree to any Bid Protections for the Stalking Horse Bidder subject to further Court approval, in each case, any time prior to the Stalking Horse Supplement Deadline (as defined below) in accordance with the following procedures (the "**Stalking Horse Designation Procedures**"):

a. The Debtor may, at any time prior to the Stalking Horse Supplement Deadline (as defined below), designate a stalking horse bidder (the "**Stalking Horse Bidder**"), whose Qualified Bid (as defined below), subject to the entry of the Stalking Horse Approval Order (as defined below), shall serve as the stalking horse bid (the "**Stalking Horse Bid**") and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (in form and substance reasonably acceptable to TRAG/RGE, the "**Stalking Horse Agreement**"), including any bid protections (the "**Bid Protections**"), will be

binding on the Debtor and the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction.

b. To obtain entry of a Stalking Horse Approval Order, the Debtor is authorized to file a notice (the "**Stalking Horse Supplement**") on or prior to October 22, 2026 (the "**Stalking Horse Supplement Deadline**"). Such Stalking Horse Supplement will be served on (i) the office of the United States Trustee, (ii) the Consultation Parties, (iii) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Case, (iv) ReliabilityFirst Corporation, (v) North American Electric Reliability Corporation, (vi) the United States Environmental Protection Agency, (vii) West Virginia Department of Environmental Protection, (viii) West Virginia Economic Development Authority, (ix) all environmental authorities having jurisdiction over the Plant, (x) counterparties to all PJM, interconnection, energy management, fuel, lime, environmental, rail/barge/transportation, landfill/CCR, hedging, and operating contracts, and (xi) the Debtor's insurance carriers and sureties (those parties listed in clauses (i) through (xi), collectively, the "**Stalking Horse Notice Parties**"), with no further notice being required. The Debtor shall submit with the Stalking Horse Supplement a proposed form of order (in form and substance reasonably acceptable to TRAG/RGE, the "**Stalking Horse Approval Order**") approving the Debtor's designation of the Stalking Horse Bidder, the Stalking Horse Bid, the Stalking Horse Agreement, and any Bid Protections afforded to the proposed Stalking Horse Bidder.

c. Any Stalking Horse Supplement shall (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor), (ii) set forth the Purchase Price of the Bid submitted by the Stalking Horse Bidder and what portion is cash, (iii) state whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Bid submitted by the Stalking Horse Bidder, (iv) specify any proposed Bid Protections (including the amount and calculation thereof), (v) specify which Assets the Bid submitted by the Stalking Horse Bidder includes, (vi) attach the Stalking Horse Agreement, and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.

d. Objections to the designation of any Stalking Horse Bidder or any of the terms of any Stalking Horse Bid (a "**Stalking Horse Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court no later than five (5) calendar days after the service of any such Stalking Horse Supplement (the "**Stalking Horse Objection Deadline**") and be served on the Stalking Horse Notice Parties and Debtor's Counsel. If no Stalking Horse Objection is timely filed with respect to the Stalking Horse Bid in accordance with these Stalking Horse Designation Procedures, the Court may enter the proposed Stalking Horse Approval Order without further notice

or a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.

e. Any Stalking Horse Agreement executed by the Debtor and the Sale Transaction contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

**IV. Assumption and Assignment Procedures.**

15. The procedures set forth below (the "**Assumption Procedures**") regarding the assumption and assignment of the Executory Contracts and Unexpired Leases proposed to be assumed by the Debtor pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale Transaction are hereby approved to the extent set forth herein. These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtor's Executory Contracts and Unexpired Leases to be assumed and assigned in connection with the Sale Transaction under a purchase agreement (including a Stalking Horse Agreement), subject to the payment of any amount necessary pursuant to section 365 of the Bankruptcy Code or otherwise to cure all existing and continuing defaults under the applicable Executory Contract or Unexpired Lease (the foregoing amounts as stated in the Contract Assumption Notice, the "**Cure Payments**"):

a. **Contract Assumption Notice**. No less than two weeks prior to the Auction, (the "**Assumption and Assignment Service Deadline**"), the Debtor shall serve a notice of potential contract assumption and assignment (the "**Contract Assumption Notice**"), in substantially the form attached hereto as **Exhibit 3** via first class mail on the counterparties to such Contracts (the "**Contract Counterparties**"). The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Contract to be potentially assumed and assigned; (ii) the name of the counterparty to the Contract; (iii) the Debtor's good faith estimates of the Cure Payments, if any, required in connection with the potential assumption and assignment of the Contract, as of the date of the Cure notice; and (iv) the Contract Objection Deadline; provided, however, that service of a Contract Assumption Notice

does not constitute an admission that any Contract listed thereon is an executory contract or unexpired lease or that such stated Cure Payment constitutes a claim against the Debtor or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a Contract on the Contract Assumption Notice is not a guarantee that such Contract will ultimately be assumed and assigned.

b. **Cure Payments**. The payment of the applicable Cure Payments by the Debtor and/or the Successful Bidder (including a Stalking Horse Bidder (if any) which has been approved by this Court), as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Contracts by the Debtor and the assignment of such Contracts to the Successful Bidder, constitute adequate assurance of future performance thereof.

c. **Supplemental Contract Assumption Notice**. To the extent the Debtor, at any time after the Assumption and Assignment Service Deadline (i) identifies additional Contracts that may be assumed by and assigned to the Successful Bidder (including a Stalking Horse Bidder (if any) which has been approved by this Court), or (ii) modifies the previously stated Cure Payment associated with any Contract, the Debtor will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the Contract Counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Contracts as was included in the Contract Assumption Notice.

d. **Cure Objections**. Objections, if any, to the potential assumption and assignment of the Contracts or the Cure Payments proposed with respect thereto (such objections, the "**Cure Objections**"), must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed on the docket of the Chapter 11 Case and served upon the Notice Parties, so as actually to be received on or before the Contract Objection Deadline or the deadline set forth in the Supplemental Assumption Notice, as applicable.

e. **Adequate Assurance Objections**. Objections, if any, to the Successful Bidder's provision of adequate assurance of future performance (an "**Adequate Assurance Objection**") must be (i) in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection, and (iv) be filed on the docket of the Chapter 11 Case and served upon the Notice Parties, so as actually

to be received on **12:00 p.m. (ET) on November 16, 2026** (the "**Adequate Assurance Objection Deadline**").

f. **Dispute Resolution**. In the event that the Debtor and a Contract Counterparty cannot resolve an objection to a Cure Payment, the Contract at issue may be assumed by the Debtor and assigned to the Successful Bidder, provided that the Debtor shall segregate the disputed Cure Payment amount, pending resolution by the Court or mutual agreement of the parties. Any objection to the proposed assumption and assignment of a Contract or related Cure Payment proposed in connection with the Sale Transaction that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court). Notwithstanding the foregoing, in accordance with the terms of this Order, the Debtor may, in its sole discretion and in consultation with the Consultation Parties and the Successful Bidder, adjourn Cure Objections to a later hearing and assign to the Successful Bidder other proposed Contracts to be assumed and assigned while such objections remain outstanding.

16. Any party failing to timely file Cure Objection or an Adequate Assurance Objection is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Contract, and (c) adequate assurance of future performance. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Contracts, and adequate assurance of future performance, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtor and the Successful Bidder with respect to such party's Contract.

17. To the extent the Debtor seeks to assume and assign a Contract in connection with a Sale Transaction (an "**Assumed Contract**," and the counterparty to such Assumed Contract, the "**Assumed Contract Counterparty**"), the Debtor shall, at the request of the Assumed Contract Counterparty, provide evidence to such Assumed Contract Counterparty that the Successful Bidder for the Contract has the ability to comply with the requirements of adequate assurance of future performance on a confidential basis. All Bidders are deemed to consent to the transmission of

such evidence of adequate assurances of future performance on a confidential basis to counsel for the Assumed Contract Counterparties via email with such information to be used only for the purpose of assessing the applicable Bidder and objection to adequate assurance; *provided*, that any such Assumed Contract Counterparty shall use best efforts to maintain the confidentiality of such information, including by filing the relevant portions of such objection under seal.

**V. Miscellaneous.**

18. The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

19. To the extent any dates or deadlines set forth herein are modified pursuant to this Order or the Bidding Procedures, and such modification is inconsistent with the requirements of Local Rule 9006-1, such requirements shall be deemed satisfied.

20. Notwithstanding anything to the contrary in the Bidding Procedures or any document filed with or entered by this Court, nothing in this Order or the Bidding Procedures shall require the Debtor, its sole Director and Independent Manager, or similar governing body of the Debtor to take any action, or to refrain from taking any action, with respect to the Bidding Procedures or the Sale Transaction, if the sole Director and Independent Manager, or similar governing body reasonably determines in good faith, after consultation with their outside counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, *however*, that the Debtor shall provide the Consultation Parties with notice of such action or inaction within two (2) Business Days of such action or inaction.

21. In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects. In the event of any inconsistencies between this Order and the Bidding Procedures, the Bidding Procedures shall govern in all respects.

22. All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion and (b) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters. All actions by the Debtor necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and to implement the Bidding Procedures are hereby authorized.

23. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

24. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. The Debtor is authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of this Court, including, without limitation, changes to correct typographical and grammatical errors; *provided* that such changes are reasonably acceptable to TRAG/RGE.

26. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# EXHIBIT 1

## Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Omnis Pleasants, LLC, | ) | Case No. 26-11169 (KBO) |
| Debtor.[1] | ) | |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS**

On July 26, 2026, the above-captioned debtor in possession (the "**Debtor**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

On August 13, 2026, the Debtor filed the *Motion of Debtor for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. ●] (the "**Bidding Procedures Motion**").

On [●], 2026, the Court entered the *Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. ●] (the "**Bidding Procedures Order**"),[2] by which the Court approved the following procedures (these "**Bidding Procedures**") setting forth the process by which the Debtor is authorized to solicit bids for and conduct an auction (the "**Auction**") for a sale or disposition (a "**Sale Transaction**") of all or substantially all of the Debtor's Assets (as defined herein).

## I. Key Dates.

The key dates for the sale process are as follows. In accordance with the Bidding Procedures Order, the Debtor may, with the consent (such consent not to be unreasonably withheld,

---

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures Motion, each as defined herein.

conditioned, or delayed) of TRAG LLC ("**TRAG**") and RG Energy LLC ("**RGE**" and together with TRAG, "**TRAG/RGE**" or the "**Consultation Parties**")[3], extend any of the deadlines, or delay any of the applicable dates, in these Bidding Procedures:

| Event | Proposed Date |
|---|---|
| Preliminary Bid Deadline | September 29, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Supplement Deadline | October 22, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Assumption and Assignment Service Deadline | October 23, 2026 |
| Sale Notice Filing and Service Deadline | No later than twenty-one (21) days prior to the Sale Hearing |
| Assumption Notice Objection Deadline | No earlier than fourteen (14) days after service of each Contract Assumption Notice |
| Bid Deadline | November 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | No earlier than fourteen (14) days after the Sale Notice is filed and served |
| Auction (if necessary) | November 12, 2026 at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | November 18, 2026 at [●]:[●] (prevailing Eastern Time) (or such other date as set by the Court) |

## II. Assets to be Auctioned.

These Bidding Procedures set forth the terms by which proposed bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for all or substantially all of the Debtor's assets. These assets include, but are not limited to, the Debtor's going-concern business, the Pleasants Power Station located in Belmont, West Virginia (the "**Plant**") and related real property, unexpired leases, executory contracts, equipment, inventory, supplies, intellectual property, causes of action,[4] insurance proceeds, prepaid expenses and deposits, books and records, and other personal property (collectively, the "**Assets**"), free and clear of all liens, claims, interests, or other encumbrances to the fullest extent permitted by the Bankruptcy Code and any applicable non-bankruptcy law, with such liens, claims, interests and/or other encumbrances attaching to the proceeds of the sale of the Assets with the same validity and priority as such liens, claims, interests, and/or other encumbrances applied against the Assets.

3 Email from counsel to TRAG/RGE is sufficient to constitute consent by the Consultation Parties or TRAG/RGE, as applicable, under these Bidding Procedures.

4 Unless otherwise expressly provided in the applicable purchase agreement and approved by the Court, the Assets shall not include estate claims, avoidance actions, claims against insiders, former officers, directors, managers, members, affiliates, upstream entities, or control persons, claims relating to alleged cash sweeps, misappropriation, diversion of funds, related-party transactions, breach of fiduciary duty, fraudulent transfer, or similar misconduct, or any rights necessary for the Debtor or its estate to comply with the Federal Energy Regulatory Commission ("**FERC**") Enforcement cooperation obligations.

The Debtor prefers bids for all Assets as a single lot from bidders submitting Qualified Bids (as defined herein) but reserves the right, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, to consider bids for less than all of the Assets.

## III. Marketing Process.

### A. Participation Requirements

To participate in the bidding process and to receive diligence information, including access to the Debtor's electronic data room (the "**Data Room**") and to additional non-public information regarding the Debtor (collectively, the "**Diligence Materials**"), any party interested in submitting a bid (each a "**Potential Bidder**"), must deliver by email to each of: (a) proposed co-counsel to the Debtor, (i) Herbert Smith Freehills Kramer (US) LLP ("**HSF Kramer**"), Attn: Alexander Woolverton (alexander.woolverton@HSFKramer.com), Andrew Pollack (andrew.pollack@HSFKramer.com), and Melissa Mertz (melissa.mertz@HSFKramer.com); and (ii) Young Conaway Stargatt & Taylor, LLP ("**YCST**" and together with HSF Kramer, "**Debtor's Counsel**"), Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), and S. Alexander Faris (afaris@ycst.com); (b) proposed financial advisor to the Debtor, AlixPartners, LLP ("**AlixPartners**") (alix-pleasants@alixpartners.com); and (c) proposed investment banker to the Debtor, Houlihan Lokey Capital, Inc. ("**Houlihan**"), Attn: Xander Hector (XHector@HL.com) and Thad Williams (TWilliams@HL.com) and Project_Combustion@hl.com (collectively, the "**Bid Notice Parties**"), the following documents (collectively, the "**Preliminary Bid Documents**") on or prior to **September 29, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Preliminary Bid Deadline**"), unless otherwise waived or extended by the Debtor with the consent of the Consultation Parties:

(i) an executed confidentiality agreement in form and substance acceptable to the Debtor (a "**Confidentiality Agreement**");

(ii) a statement or other factual support demonstrating to the Debtor's reasonable satisfaction that the Potential Bidder has a bona fide interest in purchasing the Assets (or some subset thereof);

(iii) the identification of the Potential Bidder and any principals and representatives thereof (including counsel), including identifying those principals and representatives who are authorized by the Potential Bidder to appear and act on such Potential Bidder's behalf for all purposes under these Bidding Procedures regarding the Potential Bidder's contemplated Sale Transaction;

(iv) written disclosure of any and all connections or agreements the Potential Bidder (including its affiliates and any related persons) may have to the Debtor, or "insiders" of the Debtor (as that term is contemplated by section 101(31) of the

Bankruptcy Code), and/or any manager or any entity holding direct or indirect membership interests in the Debtor; and

(v) any other information or documentation that the Debtor reasonably requests.

The Debtor, in consultation with the Consultation Parties, will determine whether such Potential Bidder has submitted adequate Preliminary Bid Documents (an "**Acceptable Bidder**") to proceed with the bidding process and shall notify Potential Bidders who submitted the above Preliminary Bid Documents whether they have been determined to be an Acceptable Bidder by the Debtor within 5 business days after the Preliminary Bid Deadline, *provided* that, the Debtor will consult with the advisors to TRAG/RGE before determining that any potential Affiliated Bidder (as defined below) has submitted adequate Preliminary Bid Documents to be determined an Acceptable Bidder. Only Acceptable Bidders, as determined by the Debtor, in consultation with the Consultation Parties, may submit Bids. Each Prepetition Secured Party shall at all times be deemed an Acceptable Bidder.

To the extent that any of the Consultation Parties submits a Stalking Horse Bid, Credit Bid, or other alternative Bid for any Assets in connection with these Bidding Procedures, then such Consultation Party shall not be a consultation party solely with respect to the Assets that are the subject of such Bid unless and until such Bid is withdrawn, but shall remain a consultation party for all other purposes. For the avoidance of doubt, the exercise by the Consultation Parties of their rights under section 363(k) of the Bankruptcy Code shall not require the Consultation Parties to waive or relinquish any right, claim, lien, or remedy.

**B. Access to Diligence Materials**

Beginning on or as soon as is reasonably practicable after the Debtor determines that a Potential Bidder is an Acceptable Bidder, the Debtor will provide such Acceptable Bidder with access to the Diligence Materials. The Debtor, with the assistance of its advisors, will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access, *provided* that the Debtor may, after consultation with the advisors to the Consultation Parties, decline to provide such information to any Acceptable Bidder who, in the Debtor's reasonable business judgment, has not established, or who has raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Sale Transaction.

The Debtor will grant each Acceptable Bidder access to the Data Room up to and including the Bid Deadline (as defined below) (such period, the "**Diligence Period**"). The Debtor shall afford any Acceptable Bidder access to the Diligence Materials or additional information as may be reasonably requested by the Potential Bidder that the Debtor, in its business judgment, determines to be reasonable and appropriate under the circumstances. The Debtor shall grant the Consultation Parties and their respective advisors access to the Data Room and the Diligence Materials, subject to the Consultation Parties and their respective advisors maintaining the confidentiality of such information. The Debtor will provide in the Data Room a form asset purchase agreement for the sale of the Assets, in form and substance reasonably acceptable to TRAG/RGE (the "**Form APA**"). The Debtor may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Acceptable Bidders. If any such due diligence material is prepared by the Debtor in written form

and has not previously been provided to any other Acceptable Bidder, the Debtor will simultaneously provide access to such materials to all Acceptable Bidders. Each Acceptable Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

The Debtor may reasonably withhold or limit access by any Acceptable Bidder (including its affiliates and any related persons) to the Diligence Materials at any time and for any reason, including, without limitation, if (i) any due diligence information is determined to be business sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder by the Debtor, including, but not limited to, Acceptable Bidders who are customers or competitors of the Debtor or affiliates thereof, and other industry participants, (ii) the Potential Bidder does not become, or the Debtor determines that the Acceptable Bidder is not likely to become a Qualified Bidder (as defined herein), (iii) the Acceptable Bidder violates the terms of its Confidentiality Agreement, (iv) the Debtor becomes aware that the information set forth on the Preliminary Bid Documents is inaccurate or misleading or of any other reason to doubt such Acceptable Bidder's ability to close its contemplated transaction, (v) the Acceptable Bidder (including its affiliates and any related persons) uses information obtained from the Data Room or the diligence process in connection with, or related to, any litigation or other legal action related to the Debtor or any current or former managers of the Debtor, (vi) such disclosure would jeopardize protections afforded the Debtor under the attorney-client privilege or the attorney work product doctrine, or (vii) the bidding process is terminated in accordance with its terms.

Neither the Debtor nor any of the Debtor's representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (a) to any person or entity who is not an Acceptable Bidder or (b) if and to the extent doing so would (i) violate any law to which the Debtor is subject, including any privacy law, (ii) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (iii) violate any legally-binding obligation of the Debtor with respect to confidentiality, non-disclosure or privacy or (iv) jeopardize protections afforded to the Debtor under the attorney-client privilege or the attorney work product doctrine (provided that the Debtor shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation, or law).

Acceptable Bidders may not use FERC investigation materials provided in the Diligence Materials for any purpose other than diligence, and may not in connection with the Sale Transaction contact FERC, PJM Interconnection, L.L.C., the Independent Market Monitor, the North American Electric Reliability Corporation, ReliabilityFirst Corporation, or the West Virginia Department of Environmental Protection.

The due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtor shall have no obligation to furnish any due diligence information to any party.

**All due diligence requests directed to the Debtor must be directed to: Houlihan, Attn: Xander Hector (XHector@HL.com) and Thad Williams (TWilliams@HL.com) and Project_Combustion@hl.com.**

### C. Due Diligence from Potential Bidders or Acceptable Bidders

Each Potential Bidder or Acceptable Bidder shall comply with all reasonable requests with respect to information and due diligence access by the Debtor or its advisors regarding such Potential Bidder or Acceptable Bidder, as applicable, and its contemplated Sale Transaction. Failure by a Potential Bidder or Acceptable Bidder to comply with reasonable requests for additional information and due diligence access will be a basis for the Debtor, in consultation with the Consultation Parties, to determine that the Potential Bidder or Acceptable Bidder, as applicable, is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor, in consultation with the Consultation Parties, to revoke any bidder's classification as a Qualified Bidder.

### D. Communications with Potential Bidders

Notwithstanding anything to the contrary in these Bidding Procedures, all direct communications between and amongst Potential Bidders regarding the Debtor or its Assets shall involve the Debtor and the Debtor's advisors. **No Potential Bidder shall communicate with any other Potential Bidder absent prior written consent (email being sufficient) from the Debtor**.

## IV. Stalking Horse Bidders and Bid Protections

The Stalking Horse Designation procedures set forth in paragraph 14 of the Bidding Procedures Order apply to the designation of any Stalking Horse Agreement and related Bid Protections. Any Stalking Horse Agreement executed by the Debtor and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to any Stalking Horse Agreement executed by the Debtor will be deemed a Stalking Horse Bidder.

Other than as provided by order of the Court, no party submitting a Bid (other than a Stalking Horse Bidder) will be entitled to a break-up fee or expense reimbursement. By submitting a Bid, an Acceptable Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bidding Procedures, or participation in the Debtor's sale process.

The Debtor may, at any time prior to the Stalking Horse Supplement Deadline (as defined below), following consultation with the Consultation Parties, designate a stalking horse bidder (the "**Stalking Horse Bidder**"), whose Qualified Bid (as defined below), subject to the entry of the Stalking Horse Approval Order (as defined below), shall serve as the stalking horse bid (the "**Stalking Horse Bid**") and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (in form and substance reasonably acceptable to the Consultation Parties, the "**Stalking Horse Agreement**"), including any bid protections (the "**Bid**

**Protections**") will be binding on the Debtor and the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction.

The Debtor may designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement on or prior to October 22, 2026 (the "**Stalking Horse Supplement Deadline**"). If the Debtor decides to designate a Stalking Horse Bidder, the Debtor shall file a supplement to the Bidding Procedures Motion (the "**Stalking Horse Supplement**") seeking approval of the same, with no less than five (5) calendar days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to (i) the Office of the United States Trustee, (ii) counsel to the Consultation Parties, (iii) those parties who have filed appropriate notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Case, (iv) FERC, (v) PJM Interconnection L.L.C., (vi) PJM Settlement, Inc., (vii) Monitoring Analytics, (viii) ReliabilityFirst Corporation, (ix) North American Electric Reliability Corporation, (x) the United States Environmental Protection Agency, (xi) West Virginia Department of Environmental Protection, (xii) West Virginia Economic Development Authority, (xiii) all environmental authorities having jurisdiction over the Plant, (xiv) counterparties to all PJM, interconnection, energy management, fuel, lime, environmental, rail/barge/transportation, landfill/CCR, hedging, and operating contracts, and (xv) the Debtor's insurance carriers and sureties (those parties listed in clauses (i) through (xv), the "**Stalking Horse Notice Parties**") with no further notice being required. The Stalking Horse Supplement shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the Purchase Price of the Bid submitted by the Stalking Horse Bidder and what portion is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Bid submitted by the Stalking Horse Bidder; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) specify which Assets the Bid submitted by the Stalking Horse Bidder includes; (vi) attach the Stalking Horse Agreement; and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.

Objections to the designation of a Stalking Horse Bidder or any terms of a Stalking Horse Bid (a "**Stalking Horse Objection**") shall (i) be in writing; (ii) comply with Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; (iii) state with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Stalking Horse Notice Parties and Debtor's Counsel within five (5) calendar days after the service of the Stalking Horse Supplement.

If a timely Stalking Horse Objection is filed, the Debtor shall schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable. If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtor is authorized to submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse Agreement (the "**Stalking Horse Approval Order**"), which may be entered by the Court without further notice or a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.

Any Stalking Horse Agreement executed by the Debtor and the Sale Transaction contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse

Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

No party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for any Bid Protections granted to any Stalking Horse Bidder which has been approved by the Bankruptcy Court, *provided* that no Bid Protections shall be made available to (i) any party submitting a credit bid or (ii) any Affiliated Bidder. Solely in the event that the Debtor consummates a Sale Transaction with a Bidder other than the Stalking Horse Bidder, any Bid Protections approved by the Court shall be payable solely from the cash proceeds of the alternative transaction giving rise to such Bid Protections, at the closing thereof, and shall not be payable from, or secured by any lien on, the collateral of TRAG/RGE or the proceeds thereof.

If any Stalking Horse Bid is not selected as the Successful Bid (as defined herein), such Stalking Horse Bidder must be willing to still serve as the Back-Up Bidder (as defined herein), if its bid represents the second-highest or otherwise best bid after the Auction, unless such requirement is waived in writing (email being sufficient) by the Debtor. For the avoidance of doubt, the Debtor may hold an Auction notwithstanding the selection of a Stalking Horse Bid.

## V. Qualified Bids

### A. Qualified Bid Requirements

Other than in the case of a bid submitted by a designated Stalking Horse Bidder, to participate in the Auction, an Acceptable Bidder must deliver to the Debtor and its advisors an irrevocable offer via email (in .pdf or similar format) for the purchase of all or substantially all of the Assets (each, a "**Bid**") and shall meet the following requirements (the **"Bid Requirements"**), in each case, on or prior to the Bid Deadline (as defined herein), unless any such requirements are waived in writing (email being sufficient) by the Debtor, in consultation with the Consultation Parties, *provided* that any Stalking Horse Bid which has been approved by the Court (if any) shall constitute and be deemed a Qualified Bid.

a. ***Purchased Assets and Assumed Liabilities***: Each Bid must clearly state the following: (i) the particular Assets to be purchased; (ii) to the extent such Bid is for substantially all of the Assets, which Assets, if any, are to be excluded from the Proposed Sale Transaction; (iii) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; and (iv) as applicable, whether the Acceptable Bidder intends to operate the Debtor's business as a going concern;

b. ***Purchase Price***: Each Bid must clearly set forth the purchase price to be paid (the "**Purchase Price**"), including and identifying separately any cash and non-cash components of the Purchase Price, such as liabilities to be assumed as part of the Sale Transaction, and if the Bid is for less than all of the Assets, the Purchase Price must indicate the allocation of the Purchase Price among the applicable Assets. The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis;

c. ***Affiliated Purchaser / Source of Funds***: Each Bid must disclose any direct or indirect relationship, agreement, understanding, side letter, financing arrangement, management arrangement, consulting arrangement, employment arrangement, option, royalty, earnout, release, settlement, or other economic arrangement involving Quantum Pleasants, LLC, Omnis Fuel Technologies, LLC, Omnis Global Technologies, LLC, Dynamic Finance Corporation, their respective equity holders, and any affiliate of the foregoing, or any other current or former upstream Omnis-related party. Any Bidder that has any such relationship listed in the prior sentence or is an "insider" of the Debtor (as that term is defined in section 101(31) of the Bankruptcy Code) being deemed an "**Affiliated Bidder**";

d. ***Good Faith Deposit***: Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "**Good Faith Deposit**"). To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction; provided that no Good Faith Deposit shall be required in respect of any Credit Bid or any credit bid portion of a Bid;

e. ***Same or Better Terms; Bid Documents***: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "**Bid Documents**"). The Bid Documents shall include: (i) a form of purchase agreement; (ii) a schedule of contracts and leases to be assumed and assigned to the bidder at closing to the extent applicable to the Bid, and confirmation that the bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate may be provided by the Debtor); (iii) the identification of causes of action to be purchased, if any; (iv) with respect to the purchase agreement, a redline of such agreement marked against the Form APA to reflect the amendments and modifications; (v) any other material documents integral to such Bid; and (vi) a statement from the Acceptable Bidder that (A) it is prepared to enter into and consummate the transactions contemplated in the form purchase agreement, no later than ten (10) business days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, by the Bid Deadline), and (B) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "**Back-Up Bid**")) until the consummation of the Sale Transaction;

f. ***Committed Financing***: To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtor's satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other

obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtor;

g. ***Proof of Financial Ability to Perform***: Each Bid must contain evidence acceptable to the Debtor, in its sole discretion, that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under sections 365(b)(1) and 365(b)(3) of the Bankruptcy Code. Without limiting the foregoing, such evidence must include current financial statements or other financial information, tax returns, bank account statements, and/or any other documentation that the Debtor further requests;

h. ***Identity***: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom the Debtor's advisors should contact regarding such Bid;

i. ***No Qualified Bidder Bid Protections***: A Qualified Bid, other than a Stalking Horse Bid approved by the Court (if any), must include a statement disclaiming any right to receive a fee analogous to a break-up fee, expense reimbursement, or "topping" or termination fee, or any other similar form of compensation. No Qualified Bidder (other than a Stalking Horse Bidder, if any, which has been approved by the Court) will be permitted to request, nor be granted by the Debtor at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

j. ***Contingencies; No Financing or Diligence Outs***: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline;

k. ***As-Is, Where-Is***: Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral

statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement;

l. ***Authorization***: Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid. The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Acceptable Bidder;

m. ***Joint Bids***: The Debtor shall be authorized to approve joint Bids on a case-by-case basis so long as a joint Bid meets the Qualified Bid Requirements, and the applicable bidders otherwise comply with these Bidding Procedures;

n. ***Contracts and Leases***: Prior to the Bid Deadline, each Bid must identify all executory contracts and unexpired leases to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "**Assigned Contracts**"). Each Bid must be accompanied by written evidence of the applicable Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of future performance under all Assigned Contracts, which evidence shall include audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, and such other documentation as the Debtor may request in writing (email being sufficient) (the "**Adequate Assurance Package**"). The Adequate Assurance Package should be submitted in its own compiled PDF document;

o. ***Acknowledgement of Compliance with Bidding Procedures, Bidding Procedures Order, Bankruptcy Code, and Non-Bankruptcy Law***: Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code and any applicable non-bankruptcy law;

p. ***No Collusion***: The Acceptable Bidder must represent in writing (i) that it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code or other applicable non-bankruptcy law with respect to any Bids, the Auction, or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (ii) that it agrees not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtor's prior written consent (email being sufficient);

q. ***Good Faith Offer***: The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction and must include a statement that the Acceptable Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code;

r. ***Irrevocable***: The Bid must include a letter stating that the Acceptable Bidder's offer is irrevocable and binding until the closing of the Sale Transaction if such Acceptable Bidder is the Successful Bidder, and that the Acceptable Bidder agrees to serve as a Back-Up Bidder (as defined herein) if such bidder's Bid is selected as the next highest or otherwise next best bid after the Successful Bid (as defined herein);

s. ***Back-Up Bid***: Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined herein) if the Acceptable Bidder's Bid is the next highest or otherwise best bid;

t. ***Regulatory Approvals and Covenants***: A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction, including approval by FERC, and an explanation and/or evidence of the Acceptable Bidder's ability to obtain all such regulatory and third-party approvals, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the applicable purchase agreement and/or confirmation of the Plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible);

u. ***FPA Section 203 Approval***: Each Bid must state that if the Acceptable Bidder is selected as the Successful Bidder or the Back-Up Bidder, within five (5) business days following the date on which the Successful Bidder and the Back-Up Bidder, as applicable, is announced, such Acceptable Bidder shall take all actions reasonably necessary to prepare, in consultation with the Debtor, an application under section 203 of the Federal Power Act for approval of the proposed Sale Transaction and requesting expedited action from the Federal Energy Regulatory Commission ("**FERC**"), which shall be submitted to FERC jointly by such Acceptable Bidder and the Debtor within such five (5) business days;

v. ***PJM and Market-Participation Transition***: Each Bid must include a regulatory transition plan addressing PJM Interconnection, L.L.C. and PJM Settlement, Inc. requirements, including, as applicable, PJM membership, credit and collateral requirements, market-participant registration, PJM officer and authorized representative updates, generation owner / generator operator updates, Capacity Resource obligations, energy-market participation, resource-limitation reporting, eDART / eGADS / GADS reporting, settlement arrangements, and any required PJM or PJM Settlement consents, notices, forms, or approvals. Each Bid must also identify whether the Acceptable Bidder intends to assume or replace any energy-

management, scheduling, hedging, or market-participation arrangements necessary to operate the Plant and participate in PJM markets after closing;

w. ***Market-Based-Rate Authority and FERC Part 35 Filings***: Each Bid must include a plan for all FERC Part 35 filings required for the Acceptable Bidder or post-closing operating entity to make wholesale sales of energy, capacity, or ancillary services, including any market-based-rate application, notice of succession, notice of cancellation, notice of change in status, asset appendix update, or other filing required to preserve authority to sell into PJM markets following closing;

x. ***Reliability and Compliance Transition***: Each Bid must include a plan for maintaining compliance with all applicable NERC Reliability Standards and regional requirements, including any required Generator Owner, Generator Operator, or related registration changes, ReliabilityFirst coordination, compliance personnel, procedures, event-reporting obligations, and transition of books and records needed to maintain reliability compliance. The Acceptable Bidder must identify the personnel, operator, asset manager, or third-party service provider that will perform these functions after closing;

y. ***Adequate Working Capital and Operating Support***: Each Bid must provide evidence satisfactory to the Debtor that the Acceptable Bidder will have sufficient working capital, credit support, vendor relationships, and operational funding to operate the Plant as a going concern after closing, including funding for coal, lime, fuel handling, maintenance, payroll, taxes, insurance, environmental compliance, ash disposal, PJM credit and collateral, and other consumables and ordinary-course operating needs;

z. ***Operational Transition / Transition Services***. Each Bid must identify whether the Acceptable Bidder intends to enter into any transition services arrangement with the Debtor, current management, an energy manager, plant operator, asset manager, or other third-party provider for plant operations, PJM market participation, fuel procurement, dispatch coordination, environmental compliance, accounting, payroll, IT, compliance reporting, or other services necessary to operate the Plant after closing. If applicable, the Bid must include a proposed transition services agreement or term sheet;

aa. ***Expected Closing Date***: Each Bid must state the Acceptable Bidder's expected date of closing of the Sale Transaction;

bb. ***Time Frame for Closing***: A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtor. The Acceptable Bidder must commit to closing the proposed Sale(s) contemplated by the Bid as soon as practicable subject to any potential regulatory issues that may arise as set forth above;

cc. ***No Fees***: Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation;

dd. ***Adherence to the Bidding Procedures***: By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

ee. ***Consent to Jurisdiction***: The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bids, the Auction, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable;

ff. ***Conditions to Closing***: Each Bid must identify with particularity all conditions to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required; and

gg. ***Other Information***: Each Bid must contain such other information as may be reasonably requested by the Debtor in writing (email being sufficient).

**B. Right to Credit Bid**

TRAG/RGE, and any other person or entity holding a valid and perfected security interest in the Assets (each, a "**Secured Creditor**"), together with any agent or designee thereof, shall have the right to credit bid up to the full amount of its claims against the Debtor, including all principal, accrued and accruing interest, fees, expenses, premiums, indemnities, and any adequate protection obligations, in each case through the closing of the Sale Transaction, pursuant to section 363(k) of the Bankruptcy Code, with respect to any Assets constituting such Secured Creditor's collateral (each such bid, a "**Credit Bid**").

Any Credit Bid shall be deemed a cash Bid for all purposes of evaluating Bids hereunder, and the fact that a Bid is composed in whole or in part of a Credit Bid shall not be a detrimental factor in the Debtor's determination of the highest or otherwise best Bid. Any Secured Creditor submitting a Credit Bid shall be deemed an Acceptable Bidder and a Qualified Bidder, its Credit Bid shall be deemed a Qualified Bid, and it may participate in the Auction with respect to any Assets constituting its collateral, in each case without the requirement to submit a Good Faith Deposit, a Confidentiality Agreement, Preliminary Bid Documents, evidence of committed financing, or any Bid Documents other than a purchase agreement marked against the Form APA;

*provided* that any Credit Bid must be submitted on or prior to the Bid Deadline. A Credit Bid shall not be required to serve as the Back-Up Bid.

**C. Designation of Qualified Bids**

Only Bids fulfilling all of the Bid Requirements (other than any waived in writing by the Debtor in accordance with these Bidding Procedures) may, in the Debtor's reasonable business judgment and in consultation with the Consultation Parties, be deemed to be "**Qualified Bids**," and only those parties submitting Qualified Bids may, in the Debtor's reasonable business judgment and in consultation with the Consultation Parties, be deemed to be "**Qualified Bidders**"; *provided* that a Stalking Horse Bid will constitute and be deemed a Qualified Bid for all purposes hereunder; *provided further* that the Debtor will consult with counsel to the Consultation Parties before designating any Bid submitted by an Affiliated Bidder a Qualified Bid.

As soon as reasonably practicable after the Bid Deadline and prior to the Auction, the Debtor shall determine, in its reasonable business judgment and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualify as Qualified Bids and will notify each Qualified Bidder in writing (email being sufficient) of its status as a Qualified Bidder. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtor; *provided* that if the Debtor receives a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtor may, in consultation with the Consultation Parties, provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction. Potential Bidders shall have until the Bid Deadline to remedy any deficiencies with respect to non-conforming or non-Qualified Bids. The Debtor may, in consultation with the Consultation Parties, waive or modify in writing (email being sufficient) any of the Bid Requirements in the exercise of its reasonable business judgment.

Between the date that the Debtor notifies an Acceptable Bidder in writing (email being sufficient) that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent (email being sufficient) of the Debtor, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Neither the Debtor nor the Debtor's advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtor to a bidder, or any other matter or thing regarding the Assets. All bidders must acknowledge and agree that upon closing the Debtor shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable

Assets, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction. The Debtor and each of the Debtor's representatives and advisors, are not responsible for, and will bear no liability with respect to, any information obtained by any Acceptable Bidder in connection with any Sale or Sale Transaction. Neither the Debtor nor the Debtor's advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtor, any advisor, or agent representing or purporting to represent the Debtor to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtor only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction.

### D. Bid Deadline

Qualified Bids must be submitted in writing to the Bid Notice Parties so as to be actually received **no later than 4:00 p.m. (prevailing Eastern Time) on November 9, 2026**, or, if such date is extended in accordance with Section I hereof, such extended date (the "**Bid Deadline**"):

The Debtor may extend the Bid Deadline, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, for any reason whatsoever, in its reasonable business judgment.

### E. Evaluation of Qualified Bids.

The Debtor shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's business judgment and in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid for the Assets (the "**Starting Bid**").

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Consultation Parties, will consider the following factors, to the extent applicable, in addition to any other factors that the Debtor deems appropriate: (i) the amount and nature of the total consideration; (ii) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (iii) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; (iv) the tax consequences of such Qualified Bid; (v) the Assets subject to the Qualified Bid and whether the Qualified Bid is for all of the Assets; (vi) the impact on trade and other unsecured creditors. In addition, the Debtor, in consultation with the Consultation Parties, may consider the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; (vii) the Qualified Bidder's ability to obtain FERC, PJM, PJM Settlement, NERC, ReliabilityFirst, environmental, and other regulatory approvals; (viii) the Qualified Bidder's ability to maintain the Debtor's PJM capacity-resource obligations and operate the Plant reliably after closing; (ix) the Qualified Bidder's PJM credit/collateral plan and market-participation plan; (x) the Qualified Bidder's ability to fund coal, lime, maintenance, payroll, environmental compliance, and ordinary-course operating needs; (xi) whether the Qualified Bid supports the Debtor's proposed FERC settlement and sale free-and-clear objectives; and (xii) the likelihood and timing of obtaining all required approvals and closing without operational disruption; and (xiii) the extent to which the Qualified Bid provides for the indefeasible payment in full in cash at closing of the obligations owing to TRAG/RGE. The Debtor will prefer Qualified

Bids for all of the Assets but reserves the right, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, to consider bids for less than all of the Assets to multiple Qualified Bidders to the extent necessary to fulfill its fiduciary duties. Prior to commencing the Auction, the Debtor shall notify all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction.

### F. No Qualified Bids.

If no Qualified Bids other than a Stalking Horse Bid, which has been approved by the Court, or in the absence of a Stalking Horse Bid, the Debtor has only received a single Qualified Bid by the Bid Deadline, the Debtor, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, may cancel the Auction and the Stalking Horse Bid or the Qualified Bid, as applicable, will be deemed to be the Successful Bid for the Assets to which such Stalking Horse Bid or the Qualified Bid relates. The Debtor shall file a notice on the docket of the Chapter 11 Case of any cancellation of the Auction as soon as reasonably practicable after making such determination.

## VI. Auction.

If more than one Qualified Bid is received, the Auction will take place on **November 12, 2026 at 10:00 a.m. (prevailing Eastern Time)** via remote video, in-person, or hybrid format, at the Debtor's election.

The Auction will be conducted by the Debtor in accordance with the following procedures (the "**Auction Procedures**"):

a. the Auction will be conducted openly;

b. except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the auction;

c. bidding shall begin with the Starting Bid;

d. subsequent bids (each, an "**Overbid**") may only be made at the Auction and shall be at least a $1,000,000.00 increase in cash, cash equivalents, or other such consideration that the Debtor, in its reasonable business judgment, deems equivalent over the previous bid (a "**Minimum Overbid**"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid. The Debtor may, in its reasonable business judgment, announce increases or reductions to the Minimum Overbid at any time during the Auction, in consultation with the Consultation Parties. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtor, in its reasonable business judgment, deems equivalent that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;

e. at the commencement of the Auction, the Debtor may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

f. each Qualified Bidder will be permitted a reasonable amount of time to respond to previous bids at the Auction;

g. during the course of the Auction, the Debtor shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtor's view, the then highest or otherwise best bid(s) for the applicable Assets;

h. the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

i. each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction;

j. each Qualified Bidder will be required to confirm that its Bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith prior to or at the Auction);

k. the Court and the Debtor will not consider Bids made after the Auction has been closed;

l. the Debtor, in its reasonable business judgment and in consultation with the Consultation Parties, consistent with the Debtor's fiduciary obligations under applicable law to maximize the value of its estate and to consider the interests of its stakeholders, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtor determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures Order, the Bidding Procedures, or the terms and conditions of the Sale Transaction, (iii) contrary to the best interests of the Debtor, its estate, its creditors, and other stakeholders; or (iv) otherwise violative of any of the Debtor's fiduciary obligations under applicable law.

m. the Debtor has the right to request any additional information that will allow the Debtor to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by its proposal and any further information that the Debtor believes is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

n. the Debtor, in consultation with the Consultation Parties, reserves the right to adjourn the Auction one or more times to, among other things, (i) facilitate

discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

o. notwithstanding anything herein to the contrary, the Debtor, in consultation with the Consultation Parties, may, at any time choose to adjourn the Auction by announcement prior to or at the Auction. The Debtor shall file notice of such adjournment on the docket of the Chapter 11 Case as soon as reasonably practicable.

The Auction shall include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their bids; provided that any Overbid made by a Qualified Bidder (including with respect to any Back-Up Bid) must remain open and binding on the Qualified Bidder until the earliest of (i) the closing of a Sale Transaction pursuant to the Successful Bid or Back-Up Bid, (ii) 120 days after the date of the Sale Hearing, provided, that, with respect to any Back-Up Bid, such date may be extended by up to an additional eighty (80) days if the only item outstanding with respect to the closing of any Sale Transaction pursuant to the Successful Bid is obtaining the required regulatory approvals, and (iii) the release of such Back-Up Bid by the Debtor in writing (email being sufficient) (the "**Back-Up Bid Termination Date**"). The Debtor may, in its reasonable business judgment and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in the Auction the terms of such Qualified Bidder's respective Bids.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtor from exercising its fiduciary duties under applicable law (as reasonably determined in good faith by the Debtor, in consultation with counsel).

The Consultation Parties and their respective representatives and professionals shall be entitled to attend the Auction, without any requirement to provide prior notice of their intention to do so. Except as otherwise determined by the Debtor, only (i) the Debtor, (ii) the Office of the United States Trustee, (iii) the Committee, (iv) the Consultation Parties, (v) the Qualified Bidders (including, without limitation, any Stalking Horse Bidder which has been approved by the Court (if any)) and (vi) any other parties as the Debtor may determine to include in its reasonable discretion, or as otherwise ordered by the Court, in each case, along with the respective representatives and professionals of the foregoing parties shall be entitled to attend the Auction (such parties in clauses (ii) through (vi) collectively, the "**Auction Parties**").

### A. Acceptance of Successful Bid

The Auction shall continue until (i) there is only one Qualified Bid that the Debtor determines, in its reasonable business judgment and in consultation with the Consultation Parties, consistent with the exercise of its fiduciary duties and outlined below in further detail, is the highest

or otherwise best bid to purchase the Assets (each, a "**Successful Bid**"), and (ii) the Debtor determines, in its reasonable business judgment and with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid that would be reasonably acceptable to the Debtor, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor shall take into account the factors set forth in Section V.E of these Bidding Procedures, as well as any other factors the Debtor, in its reasonable business judgment, reasonably deems relevant and/or appropriate.

Any Qualified Bidder that submits a Successful Bid will be deemed a "**Successful Bidder**" with respect to the Assets contemplated for the purchase pursuant to such Successful Bid. As soon as reasonably practicable, after closing the Auction, the Debtor shall file notice of the Successful Bid and the Successful Bidder on the docket of the Chapter 11 Case. Following conclusion of the Auction and selection of a Successful Bidder, the Debtor shall present the results of the Auction at the sale hearing scheduled pursuant to the Bidding Procedures Order (the "**Sale Hearing**") and shall seek entry of the Sale Order approving a binding purchase agreement reasonably acceptable to TRAG/RGE with the Successful Bidder on the terms of the Successful Bid. The Sale Order shall deem the Debtor's selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, the Debtor shall not solicit and/or accept any further bids or offers to submit a bid after such selection; *provided* that nothing in these Bidding Procedures shall require the sole Director and Independent Manager, or similar governing body of the Debtor to take or refrain from taking any action that the Debtor determines in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder (including any Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtor pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtor shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

**B. Designation of Back-Up Bidder.**

The Back-Up Bid to purchase the Assets (the "**Back-Up Bidder**") will be determined by the Debtor, in consultation with the Consultation Parties, at the conclusion of the Auction, and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtor's selection of a Back-Up Bid shall be deemed final and the Debtor shall not accept any further bids or offers to submit a bid after such selection. The Debtor will be authorized, but not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved pursuant to the Sale Order or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Back-Up Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale Transaction with the Debtor as soon as is reasonably practicable without further order of the Court (so long as such Back-Up Bid shall have been approved pursuant to the Sale Order or subject to Court approval if not).

The Back-Up Bid shall remain open and irrevocable until the Back-Up Bid Termination Date. The Debtor shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Bid Termination Date.

**VII. Approval of the Sale Transaction.**

The Sale Hearing to consider approval of the Sale Transaction shall take place **on November 18, 2026 at [●]:[●] (prevailing Eastern Time)**, or such other date as set by the Court, at the United States Bankruptcy Court for the District of Delaware, 824 Market St. N, Wilmington, Delaware 19801 or by such other virtual or electronic means as determined by the Court.

At the Sale Hearing certain findings will be sought from the Court regarding the Sale Transaction and the Auction, including, among other things, that: (i) the Auction was conducted, and the Successful Bidder (which may be any Stalking Horse Bidder (if any) which has been approved by the Court) was selected, in accordance with the Bidding Procedures; (ii) the Auction was fair in substance and procedure; (iii) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (iv) consummation of any Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the Assets and is in the best interests of the Debtor and its estate. **The Sale Hearing may be continued to a later date by the Debtor by filing a notice on the docket of the Chapter 11 Case and/or making an announcement at the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

Objections to the Sale Transaction and entry of any Sale Order approving the Sale Transaction must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to be **actually received** by the Debtor and the Bid Notice Parties by **the date that is fourteen (14) days after the Sale Notice is filed and served, at 4:00 p.m. (prevailing Eastern Time**).

**VIII. Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder, if any, will, upon consummation of the Successful Bid, become property of the Debtor's estate and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder (or Back-Up Bidder, if applicable), if any, fails to consummate the Successful Bid (or Back-Up Bid if applicable), then the Good Faith Deposit(s) of such Successful Bidder will be irrevocably forfeited to the Debtor and may be retained by the Debtor

as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtor.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for any Back-Up Bidder) will be returned within five (5) business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit of any Back-Up Bidder, if any, will be returned in accordance with Section VI.B of these Bidding Procedures.

All such deposits shall be held in escrow and at no time shall be deemed property of the Debtor's estate absent further order of the Court. To the extent any Good Faith Deposit is forfeited and becomes property of the Debtor's estate, such amounts shall constitute cash collateral of TRAG/RGE and shall be subject to their liens and claims, subject to the terms of the Cash Collateral Order.[5]

## IX. Reservation of Rights.

The Debtor reserves its rights to modify these Bidding Procedures in its reasonable business judgment with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, and in a manner consistent with the exercise of its fiduciary duties in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional terms and conditions on the sale of the Assets, including, without limitation: (1) extending the deadlines set forth in the Bidding Procedures; (2) adjourning the Auction without further notice; (3) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (4) canceling the Auction; (5) rejecting any or all Bids or Qualified Bids; and (6) adjusting the applicable minimum overbid increment; provided that the Debtor shall not amend or modify these Bidding Procedures or the bidding process to reduce, eliminate, or otherwise modify its obligations to consult with or obtain the consent of the Consultation Parties (as applicable) without the prior written consent of the Consultation Parties.

## X. Consent to Jurisdiction.

All Qualified Bidders (including any Stalking Horse Bidder (if any) which has been approved by the Court) at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale Transaction and the construction and enforcement of these Bidding Procedures, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process,

---

[5] "Cash Collateral Order" means the *Interim Order (I) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (II) Granting Adequate Protection Liens to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 50] or such final order as may be entered by the Court.

the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XI. Fiduciary Out.

Notwithstanding anything to the contrary in these Bidding Procedures or any other document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require the Debtor or the sole Director and Independent Manager, or similar governing body of the Debtor to take any action or to refrain from taking any action related to any Sale Transaction or with respect to these Bidding Procedures, to the extent the Debtor, the sole Director and Independent Manager, or similar governing body of the Debtor reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, *however*, that the Debtor shall provide the Consultation Parties with notice of such action or inaction within two (2) Business Days of such action or inaction.

# EXHIBIT 2

## Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Omnis Pleasants, LLC[1] | ) | Case No. 26-11169 (KBO) |
| Debtor. | ) | **Sale Hearing: November 18, 2026 at 10:00 a.m. (ET)** |
| | ) | **Sale Objection Deadline: [●]** |

**NOTICE OF SALE, POTENTIAL AUCTION,**
**SALE OBJECTION DEADLINE AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on July 26, 2026 (the "**Petition Date**"), Omnis Pleasants, LLC (the "**Debtor**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing the above-captioned chapter 11 case.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Debtor filed the *Debtor's Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. ●] (the "**Bidding Procedures Motion**"),[2] seeking authority from the Court to, among other things, market and sell the Debtor's Assets free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the applicable sale proceeds (the "**Sale**") and, if required, to conduct an auction (the "**Auction**") in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that, on [●], the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the bidding procedures attached to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**"), which establish certain key dates and times related to the Sale and the Auction. All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures Order and the Bidding Procedures and the summary descriptions of the Bidding Procedures Order and the Bidding Procedures in this notice, the terms of the Bidding Procedures Order and the Bidding Procedures shall control in all respects.

| |
|---|
| Copies of the Bidding Procedures Order, and other documents related thereto, are available upon visiting the Debtor's restructuring website at https://cases.stretto.com/pleasantspowerstation. |

**Contact Persons for Parties Interested in Submitting a Bid In Connection with the Sale**

**Any person or entity who wishes to participate in the Auction and Sale process must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures. The Preliminary Bid Deadline is September 29, 2026 at 4:00 p.m. (prevailing Eastern Time), and the Bid Deadline is November 10, 2026 at 4:00 p.m. (prevailing Eastern Time). Only Qualified Bidders may participate in the Auction. The requirements for submitting a Qualified Bid are set forth in Section V of the Bidding Procedures.**

All requests directed to the Debtor in connection with the foregoing, or for further information regarding the Auction and Sale Process and participation therein, or for further information regarding the Assets must be directed to: (a) proposed co-counsel to the Debtor, (i) Herbert Smith Freehills Kramer (US) LLP ("**HSF Kramer**"), Attn: Alexander Woolverton (alexander.woolverton@HSFKramer.com), Andrew Pollack (andrew.pollack@HSFKramer.com), Jared C. Borriello (jared.borriello@HSFKramer.com), and Melissa Mertz (melissa.mertz@HSFKramer.com); and (ii) Young Conaway Stargatt & Taylor, LLP, Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), and S. Alexander Faris (afaris@ycst.com); and (b) proposed investment banker to the Debtor, Houlihan Lokey Capital, Inc. ("**Houlihan**"), Attn: [●]. All Potential Bidders are instructed to review the Bidding Procedures with counsel.

The Debtor intends to conduct an Auction (if required) at which the Debtor will consider Qualified Bids submitted to the Debtor and its advisors in accordance with the Bidding Procedures. In the event that the Auction is required to be held pursuant to the Bidding Procedures, the Debtor intends to commence the Auction on **November 12, 2026 at 10:00 a.m. (prevailing Eastern Time)** either in-person or by videoconference or such other form of remote communication established by the Debtor (to be communicated to Qualified Bidders in advance).

The Sale Hearing to consider the proposed Sale will be held before the Honorable Karen B. Owens on **November 18, 2026 at 10:00 a.m. (ET)**, or such other date as determined by the Court or to which the hearing may be adjourned in accordance with the Bidding Procedures, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

**Filing Objections to the Sale**

Objections to the Sale, if any, must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all orders of the Court entered in the Chapter 11 Case, (iii) be filed with the Court by the Sale Objection Deadline, and (iv) be served upon the following parties (collectively, the "**Objection Notice Parties**") by no later than **[●], 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"):

i. proposed co-counsel to the Debtor, (a) Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Alexander Woolverton (alexander.woolverton@HSFKramer.com); Andrew Pollack (andrew.pollack@HSFKramer.com); Melissa Mertz (melissa.mertz@HSFKramer.com); and Michael C. Blackmon (michael.blackmon@HSFKramer.com); and (b) Young Conaway Stargatt & Taylor, LLP, 1000 N King Street, Wilmington, Delaware 19801, Attn: Andrew Magaziner (amagaziner@ycst.com); Robert F. Poppiti, Jr. (rpoppiti@ycst.com); and S. Alexander Faris (afaris@ycst.com);

ii. counsel to TRAG LLC and RG Energy LLC, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020, Attn: Kristine Manoukian (kristine.manoukian@us.dlapiper.com); 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: R. Craig Martin (craig.martin@us.dlapiper.com); and 500 Eighth Street NW, Washington, DC 20004, Attn: Erik F. Stier (erik.stier@us.dlapiper.com); and

iii. the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov).

**Consequences of Failing to Timely File an Objection to the Sale**

**ANY PARTY WHO FAILS TO MAKE A TIMELY SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.**

**Sale Free and Clear**

**The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtor prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, the Successful Bidder or the Backup Bidder, as applicable, will not be a successor to the Debtor by reason of any theory of law or equity, and the Successful Bidder or the Backup Bidder, as applicable, shall have no liability, except as expressly provided in the applicable asset purchase agreement, for any liens, claims, encumbrances and other interests against or in the Debtor under any theory of law, including successor liability theories.**

**Key Dates**

| Event | Proposed Date |
|---|---|
| Preliminary Bid Deadline | September 29, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Supplement Deadline | October 22, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Assumption and Assignment Service Deadline | October 23, 2026 |
| Sale Notice Filing and Service Deadline | No later than twenty-one (21) days prior to the Sale Hearing |
| Assumption Notice Objection Deadline | No earlier than fourteen (14) days after service of each Contract Assumption Notice |
| Bid Deadline | November 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | No earlier than fourteen (14) days after the Sale Notice is filed and served |
| Auction (if necessary) | November 12, 2026 at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | November 18, 2026 at 10:00 (prevailing Eastern Time) (or such other date as set by the Court) |

[*Remainder of page intentionally left blank.*]

The Debtor reserves the right to modify the Bidding Procedures in accordance with the Bidding Procedures and the Bidding Procedures Order.

Date: August [●], 2026

//DRAFT//

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Robert F. Poppiti, Jr. (No. 5052)
S. Alexander Faris (No. 6278)
James C. Diver (No. 7568)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
E-mail: amagaziner@ycst.com
rpoppiti@ycst.com
afaris@ycst.com
jdiver@ycst.com

*– and –*

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Alexander Woolverton*
Kyle J. Ortiz*
Brian F. Shaughnessy*
Andrew Pollack*
Jared C. Borriello*
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: alexander.woolverton@hsfkramer.com
kyle.ortiz@hsfkramer.com
brian.shaughnessy@hsfkramer.com
andrew.pollack@hsfkramer.com
jared.borriello@hsfkramer.com

**Admitted Pro Hac Vice*

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

# **<u>EXHIBIT 3</u>**

## **Contract Assumption Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Omnis Pleasants, LLC[1] | ) | Case No. 26-11169 (KBO) |
| Debtor. | ) | **Sale Hearing: November 18, 2026 at 10:00 a.m. (ET)** |
| | ) | **Sale Objection Deadline: [●]** |
| | ) | **Cure Objection Deadline:** |
| | ) | **Adequate Assurance Objection Deadline:** |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [●], 2026, the Debtor filed the *Debtor's Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. ●] (the "**Bidding Procedures Motion**"),[2] seeking authority from the Court to, among other things, (i) market and sell the Debtor's Assets free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the applicable sale proceeds (the "**Sale**"), and (ii) in connection with the Sale, conduct an auction (if required) (the "**Auction**") and assume and assign certain executory contracts and unexpired leases.

On [●], the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the bidding procedures attached to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**"), which establish certain key dates and times related to the Sale, the Auction, and the Debtor's potential assumption and assignment of certain executory contracts and unexpired leases. All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

1 The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

2 Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

3 To the extent of any inconsistencies between the Bidding Procedures Order and the Bidding Procedures and the summary descriptions of the Bidding Procedures Order and the Bidding Procedures in this notice, the terms of the Bidding Procedures Order and the Bidding Procedures shall control in all respects.

Pursuant to the Bidding Procedures and the Bidding Procedures Order and by this notice (this "**Contract Assumption Notice**"), the Debtor may potentially assume and assign to the Successful Bidder one or more of those executory contracts and unexpired leases listed on **Schedule 1** hereto (the "**Potential Assumption List**") pursuant to section 365 of the Bankruptcy Code.

The Debtor has indicated on the Potential Assumption List the cure amounts, if any, that the Debtor believes must be paid to cure any defaults and any other amounts that must be satisfied pursuant to section 365 of the Bankruptcy Code in connection with any assumption and assignment of the Contracts (in each instance, the "**Cure Amount**").

Any party seeking to (x) object to the validity of the Cure Amount, (y) otherwise assert that any other amounts, defaults, conditions, or pecuniary losses must be cured or otherwise satisfied under any of the Contracts included on the Potential Assumption List in order for such Contract to be assumed and assigned pursuant to section 365 of the Bankruptcy Code, or (z) make any other objection to the potential assumption and assignment, other than on the basis of adequate assurance of future performance, must file an objection (a "**Cure Objection**") that is (a) in writing, (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, and other amounts and conditions to the Debtor's potential assumption and assignment and the support therefore, (c) attaches any applicable documentation in support of such Cure Objection, (d) is filed with the Court, and (e) is served on the following (collectively, the "**Notice Parties**") by no later than **[●], 2026 at 4:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline")**: (a) the Debtor, Omnis Pleasants d/b/a Pleasants Power Station, One Power Station Boulevard, Belmont, West Virginia, 26134, Attn: [●]; (b) proposed co-counsel to the Debtor, (i) Herbert Smith Freehills Kramer (US) LLP ("**HSF Kramer**"), Attn: Alexander Woolverton (alexander.woolverton@HSFKramer.com), Andrew Pollack (andrew.pollack@HSFKramer.com), Jared C. Borriello (jared.borriello@HSFKramer.com), and Melissa Mertz (melissa.mertz@HSFKramer.com); and (ii) Young Conaway Stargatt & Taylor, LLP, Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), and S. Alexander Faris (afaris@ycst.com); and (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin Hackman (bejamin.a.hackman@usdoj.gov)

The Debtor shall file a notice identifying the Successful Bidder and any Backup Bidder with the Court and serve such notice upon parties as soon as reasonably practicable after closing the Auction. The deadline for filing and serving an objection to the Debtor's potential assumption and assignment of the Potentially Assigned Agreements to such Successful Bidder or Backup Bidder ***solely*** on the basis of adequate assurance of future performance ("**Adequate Assurance Objections**") is [●], 2026 at 4:00 p.m. (prevailing Eastern Time) (the "**Adequate Assurance Objection Deadline**").

Unless a Cure Objection is timely and properly filed and served before the Cure Objection Deadline, or an Adequate Assurance Objection is timely and properly filed and served before the Adequate Assurance Objection Deadline, the Contract Counterparty to a Contract on the Potential Assumption List shall be: (i) forever barred from objecting to the Cure Amount and from asserting any other amounts, defaults, conditions, or pecuniary losses that must be cured or otherwise satisfied in order for such Contract to be assumed and assigned pursuant to section 365 of the

Bankruptcy Code, or that there is any objection or defense to the assumption and assignment of such Contract,, and the Debtor, the Successful Bidder(s), and any Backup Bidder shall be entitled to rely solely upon the Cure Amount; and (ii) deemed to have consented to any assumption and assignment to the Successful Bidder(s) or the Backup Bidder, as applicable, of such Contract.

Where a Contract Counterparty timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "**Disputed Cure Amount**"), then (y) the cure amount shall be as agreed between the parties or (z) to the extent the parties are unable to consensually resolve the dispute, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Sale Hearing (or at a later date as fixed by the Court). Notwithstanding the foregoing, in accordance with the terms of the Bid Procedures Order, the Debtor may, in consultation with the Consultation Parties and the Successful Bidder, adjourn Cure Objections to a later hearing and assign to the Successful Bidder other proposed Contracts to be assumed and assigned while such objections remain outstanding

***If you agree with the Cure Amount indicated on Schedule A, and otherwise do not object to the Debtor's assignment of your lease or contract, you need not take any further action.***

**Inclusion of any document on the Potential Assumption List shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

The Sale Hearing to consider the proposed Sale Transaction will be held before the Honorable Karen B. Owens on **November 18, 2026 at 10:00 a.m. (ET)**, or such other date as determined by the Court, at the Court, 824 N. Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801. The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

Copies of the Bidding Procedures Order, and other documents related thereto, are available upon visiting the Debtor's restructuring website at https://cases.stretto.com/pleasantspowerstation.

Date: August [●], 2026 //DRAFT//

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Robert F. Poppiti, Jr. (No. 5052)
S. Alexander Faris (No. 6278)
James C. Diver (No. 7568)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
E-mail: amagaziner@ycst.com
rpoppiti@ycst.com
afaris@ycst.com
jdiver@ycst.com

*– and –*

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Alexander Woolverton*
Kyle J. Ortiz*
Brian F. Shaughnessy*
Andrew Pollack*
Jared C. Borriello*
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: alexander.woolverton@hsfkramer.com
kyle.ortiz@hsfkramer.com
brian.shaughnessy@hsfkramer.com
andrew.pollack@hsfkramer.com
jared.borriello@hsfkramer.com

**Admitted Pro Hac Vice*

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## **Schedule 1**

### **Potential Assumption List**