# EXHIBIT 3

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement") is entered into as of October 22, 2025, by and among TRAG LLC ("TRAG") and RG Energy LLC ("RGE" and, together with TRAG, the "Lenders") and Omnis Global Technologies, LLC ("Borrower"), Omnis Fuel Technologies, LLC ("OFT") and Quantum Pleasants, LLC ("Quantum Pleasants" and, together with Borrower and OFT, the "Omnis Parties"). Terms that are used but not defined herein shall have the meanings set forth in the Loan Agreements (as defined below).

## RECITALS

WHEREAS, the Omnis Parties and TRAG are parties to (i) that certain Loan and Security Agreement dated May 26, 2023, as amended (the "May 2023 Loan Agreement") and (ii) that certain Loan and Security Agreement dated January 14, 2025 (the "January 2025 Loan Agreement");

WHEREAS, the Omnis Parties and RGE are parties to that certain Loan and Security Agreement dated June 2, 2023 (the "June 2023 Loan Agreement" and, together with the May 2023 Loan Agreement and the January 2025 Loan Agreement, the "Loan Agreements");

WHEREAS, the Lenders have sent those certain Notices of Default and Reservation of Rights, dated October 1, 2025 (the "Notices of Default") to the Omnis Parties, in which the Lenders identified certain Events of Default pursuant to the Loan Agreements which they are presently aware of (the "Existing Defaults");

WHEREAS, the Lenders have sent those certain Notices of Disposition of Collateral By Private Sale, dated October 21, 2025 (the "Notices of Foreclosure") to the Omnis Parties; and

WHEREAS, Lenders are willing to forbear from exercising certain rights and remedies under the Loan Agreements for a limited period, subject to and conditioned upon the full, complete, timely and continued performance by the Omnis Parties of all of the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties agree as follows:

1. Forbearance Period. Subject to and conditioned upon the full, complete, timely and continued performance by the Omnis Parties of all of the terms and conditions set forth herein, Lenders agree to forbear from exercising their rights and remedies under the Loan Agreements solely with respect to the Existing Defaults for a period commencing on the date hereof and ending on November 30, 2025 (the "Forbearance Period"), unless earlier terminated pursuant to this Agreement, which Forbearance Period may be extended in the sole discretion of the Lenders. The Lenders agree to terminate or rescind the Notices of Default and the Notices of Foreclosure effective upon the parties' execution and delivery of this Agreement although this will not prevent them from reissuing Notices of Default or Notices of Foreclosure in the future.

2. Acknowledgement of Validity of Loan Agreements, Liens, Loans and Default. Each of the Omnis Parties acknowledges and agrees that:

a. Payment Default. As a result of Borrower's failure to pay the Obligations as and when due pursuant to the terms of the Loan Agreements, an Event of Default under each of the Loan Agreements has occurred, continues to exist and has not been cured.

b. Confirmation of Amounts Due. Each of the Omnis Parties acknowledges and agrees that, as of the close of business on August 31, 2025, pursuant to the terms of the Loan Agreements (i) the aggregate Principal balance of the outstanding amount under the Loan Agreements was not less than

$52,450,000; and (ii) the aggregate amount due to the Lenders was not less than $65,715,442, plus all Lender Expenses.

c. Full Force and Effect.

i. The Loan Agreements and the Loans remain in full force and effect;

ii. The Lenders are each a secured party and have a valid lien on the Collateral pursuant to the terms of the Loan Agreements;

iii. There is no currently existing or anticipated breach or default under the Loan Agreements or any other related document except for the Existing Defaults.

3. Reaffirmation of Loans. Each of the Omnis Parties hereby ratifies and reaffirms all of its payment and performance obligations, contingent or otherwise, under the Loan Agreements, agrees and acknowledges that the Loan Agreements and the Loans constitute legal, valid and binding obligations of each of the Omnis Parties. Each of the Omnis Parties further agrees that such ratification and reaffirmation is not a condition to the continued effectiveness of the Loan Agreements and neither such ratification and reaffirmation, nor the Lenders solicitation of such ratification and reaffirmation, constitutes a course of dealing giving rise to any obligation or condition requiring a similar or any other ratification or reaffirmation with respect to any subsequent modifications, consent or waiver with respect to the Loan Agreements. Each of the Omnis Parties acknowledges and agrees that the Loan Agreements shall continue in full force and effect and that all of its Loans thereunder are valid and enforceable and shall not be impaired or limited by the execution or effectiveness of this Agreement, other than as expressly set forth herein and subject to the terms hereof. Notwithstanding the foregoing or anything to the contrary in this Agreement, the Omnis Parties do not waive any available defenses or claims they have to the payment of amounts, or the performance of obligations, otherwise due to be paid or performed under the Loan Agreements.

4. Reaffirmation of Collateral. Each of the Omnis Parties hereby affirms, warrants, and represents that there has been no material modification to the Collateral and that such Collateral remains in substantially the same condition as it was in upon entering into the Loan Agreements. To the extent continuation, creation or perfection of the Lenders' security interest reasonably requires further documentation at any time, each of the Omnis Parties covenant that they shall cooperate fully with the Lenders' efforts to effectuate the same, including by signing, filing, or recording, or authorizing Lenders to sign, file, or record such additional documentation as may be reasonably requested by the Lender, including the filing of an amendment to the Lenders' UCC-1 Financing Statement(s). Each of the Omnis Parties hereby expressly authorizes the Lenders to file any such an amendment as the Lenders determine to be appropriate.

5. Conditions to Forbearance.

a. Not later than ten (10) days from the date hereof, the Lenders and Simon Hodson ("Mr. Hodson"), on behalf of the Omnis Parties, shall:

i. Appoint an independent manager (the "IM") to manage the operations of the Pleasants Power Station (the "Power Plant"). owned indirectly by Quantum Pleasants and directly by Omnis Pleasants, LLC, a Delaware limited liability company ("OP"). The IM will work with the FA (as defined below), Mr. Hodson, as member of the Quantum Pleasants and OP Boards of Directors, and TRAG, on behalf of the Lenders, to develop a business plan, strategy and operating and capital budget for each of Quantum Pleasants and OP (together, the "Plan"), which Plan shall be agreed and approved within five (5) days of the IM being appointed. The IM shall have sole authority to make independent decisions regarding the operations of the Power Plant without interference from any person or entity, including without limitation, Mr. Hodson or any of the Omnis Parties, so long as such decisions are made in good faith in

conformity with the Plan. The Plan may be modified from time to time by recommendations made in good faith by the IM or FA based on changed circumstances and such modifications, if reasonably needed to address such modifications, shall be incorporated into and become part of the Plan.

ii. Appoint an independent financial advisor (the "FA") who shall be mutually agreed upon between the Omnis Parties and TRAG. The FA shall be immediately granted access to all books and records, facilities, employees and any other materials and information of all Quantum Pleasants and Omnis Pleasants as may be reasonably necessary to allow the FA to deliver to the Omnis Parties and Lenders a report identifying any and all recommendations to improve performance, cash flow, profit and loss and such other financial metrics as shall be discussed between the FA and the IM, as well as any long term growth, including without limitation, strategic, fundraising, restructuring, sale, investment and other capital events, provided that each of the members of Quantum Pleasants shall be entitled to participate in any proposed fund raising in proportion to their percentage interests under, and in accordance with, the Quantum Pleasants operating agreement (their "Percentage Interests"), and to purchase, either directly or through affiliates, any material asset proposed to be sold other than in the ordinary course on terms no less favorable to OP than those offered to third parties, with such purchase option to be exercised in proportion to the members' Percentage Interests. To the extent there is a deficiency in subscriptions to participate in fundraising or to purchase a capital asset, the deficiencies may be filled though additional subscriptions by the members electing to participate in the fund raising or purchase transaction in proportion to their respective Percentage Interests or as they may otherwise agree. Through this report, the FA shall be empowered to make recommendations to the IM and the IM shall be empowered to implement such recommendations, subject to clause (i) of this Section 5(a).

b. Pursuant to the Plan or otherwise, the Omnis Parties and Mr. Hodson shall, use commercially reasonable efforts to enter into an agreement with TYR Energy, LLC ("TYR") providing for TYR to immediately release its liens on the Omnis Parties' assets and to not further withhold on monies received by the Omnis Pleasants, including capacity payments received from PJM Interconnection LLC to the operating account of the Power Plant); provided that the terms of such agreement and the monies raised by the Omnis Parties to satisfy the TYR terms, are consistent with the terms of the Quantum Pleasants operating agreement and the Loan Agreements.

c. In addition to the foregoing, each of the Lenders and the Omnis Parties hereby agree as follows:

i. That communications with the IM and FA generally shall be handled by Ajay Gupta on behalf of Lenders and the Omnis Parties and Mr. Gupta will promptly report all such communications to such parties.

ii. That IM shall be charged with directing management to implement the activities described above (subject to Section 5(a)(i)) and the IM, FA and Lenders shall be entitled (and subject) to the term of the indemnification and exculpation provisions set forth in the OP and Quantum Pleasants operating agreements with regard to any actions or omission by them with regard to the transactions contemplated by this Agreement. The Lenders shall not be subject to any claims of lender liability or otherwise in connection with actions or omissions by the IM and FA taken or omitted in good faith in conformity with the terms and conditions of this Agreement.

iii. That the Lenders and Omnis Parties shall cooperate reasonably in all respects with the IM and FA in good faith and not interfere with their duties performed in accordance with the terms of this Agreement.

iv. That the Lenders and Omnis Parties shall take all actions and execute all documents, including without limitation, any and all corporate resolutions, necessary or reasonably appropriate to effectuate the terms of this Agreement.

v. The Omnis Parties will not take any action, including, but not limited to raising capital, incurring indebtedness, or issuing equity, that would materially and adversely affect either of the Lenders without the prior written consent of such Lender; provided nothing herein will limit or restrict the Omnis Parties from procuring funds to pay off the indebtedness owed to the Lenders (which payment shall terminate this Agreement).

vi. None of the Omnis Parties shall pay off any other indebtedness of any Omnis Party, or of any affiliate of any Omnis Party, prior to repayment in full of the Obligations pursuant to the Loan Agreements; provided that OFT may, in its discretion, sell, transfer, pledge, or otherwise use its equity interests in Quantum Pleasants, which interests are issued and outstanding in the name of OFT as of the date of this Agreement, to pay, satisfy or settle that certain Promissory Note with Bilt Technology LLC. For the avoidance of doubt, "indebtedness" for purposes of this Section 5(c)(vi) does not include operating liabilities or payables incurred in the ordinary course of business.

d. Any decisions made by Mr. Hodson, the Lenders, the IM and FA under this Agreement shall be made in good faith and in a manner reasonably intended to be in the best interests of Quantum Pleasants and OP, and for the purpose of reducing their expenses or maximizing its revenues without unduly exposing their assets or operations to risks of material liabilities (other than contractual obligations).

6. Reservation of Rights. Except as otherwise expressly provided in this Agreement, each of the Omnis Parties and Lenders reserves all rights, defenses and remedies under the Loan Agreements and applicable law. Nothing in this Agreement shall be construed as a waiver of any rights or remedies, or as a waiver of any other defaults.

7. Further Assurances. Each of the Omnis Parties agrees to take all further actions and execute all further documents as Lenders may from time to time reasonably request that are necessary to carry out the transactions contemplated by this Agreement and all other agreements executed and delivered in connection herewith.

8. Termination. This Agreement shall terminate upon the earliest of:

a. The expiration of the Forbearance Period;

b. The occurrence of any event of default under any loan, guaranty, or other debt instrument, other than the Loan Agreements and the Existing Defaults that results in the lender or payee thereunder exercising its remedies in a manner that is materially adverse to the interests of the Lenders or the Collateral;

c. A party's material breach of any of its obligations under this Agreement, including without limitation, any of its obligations set forth in Section 5 hereof;

d. The payment of the indebtedness owed to the Lenders under the Loan Agreements.

9. Miscellaneous.

a. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

b. This Agreement may be executed in counterparts and by electronic signature.

c. All notices shall be sent to the addresses set forth in the Loan Agreements.

d. This Agreement shall be delivered simultaneously with the Notices of Default, which reserve all rights including the right to foreclose at any time.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

BORROWER:

OMNIS GLOBAL TECHNOLOGIES, LLC

By: DocuSigned by: Simon Hodson CE930D2DC037476...

Name: Simon Hodson

Title: CEO

OMNIS FUEL TECHNOLOGIES, LLC

By: DocuSigned by: Simon Hodson CE930D2DC037476...

Name: Simon Hodson

Title: CEO

QUANTUM PLEASANTS, LLC

By: DocuSigned by: Simon Hodson CE930D2DC037476...

Name: Simon Hodson

Title: CEO

SIMON HODSON

By: DocuSigned by: Simon Hodson CE930D2DC037476...

LENDERS:

TRAG LLC

By: DocuSigned by: Ajay Gupta 9D71DF73F8D04AB...

Name: Ajay Gupta

Title: Manager

RG ENERGY LLC

By: DocuSigned by: Ajay Gupta 9D71DF73F8D04AB...

Name: Ajay Gupta

Title: Manager