# **EXHIBIT 6**

# AMENDMENT
# TO THE
# AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT
# OF
# OMNIS PLEASANTS, LLC

This Amendment to the Amended and Restated Limited Liability Company Operating Agreement of Omnis Pleasants, LLC (this "**Amendment**") is made as of February 12, 2026 (the "**Amendment Effective Date**"), by and between Omnis Pleasants LLC ("the "**Company**") and Quantum Pleasants, LLC, as the sole member of the company ("**QP**"). Capitalized terms used but not defined in this Amendment shall have the meanings set forth in that certain Amended and Restated Limited Liability Company Operating Agreement of the Company, dated August 1, 2023 (the "**Operating Agreement**").

WHEREAS, pursuant to Section 11 of the Operating Agreement, the Operating Agreement may be amended by QP; and

WHEREAS, QP desires to amend the Operating Agreement as set forth in this Amendment.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. <u>Amendments</u>. The Operating Agreement is hereby amended as follows:

a. The Recitals are hereby amended by adding the following new Recitals G and H immediately after Recital F:

"G. On February 6, 2026, the Company entered into that certain Amended and Restated Forbearance Agreement (the "**Forbearance Agreement**"), by and among TRAG LLC ("**TRAG**"), RG Energy LLC ("**RGE**" and together with TRAG, the "**Lenders**"), the Company, QP, Omnis Global Technologies, LLC ("**OGT**") and Omnis Fuel Technologies, LLC ("**OFT**" and collectively with the Company, QP and OGT, the "**Omnis Parties**").

H. As a result of the Forbearance Agreement, QP desires to amend this Agreement as set forth in the Amendment to the Amended and Restated Limited Liability Company Operating Agreement of the Company dated as of February 12, 2026 (the "**Amendment**")."

b. Section 4(a) is hereby amended and restated in its entirety with the following:

"(a) Except as expressly set forth in this Agreement, the day-to-day affairs of the Company shall be managed by a Board of Directors (the "**Directors**"). The number of Directors on the Board of Directors shall be fixed at one (1), which Director shall an independent manager designated by the joint written consent of QP and the Lenders (the "**Independent Manager**"). The Independent Manager may be elected, removed and replaced at any time and from time to time, with or without cause, by the written consent of the QP; provided, however, until such time as the Lenders have received Payment in Full of the Obligations (as defined in the Forbearance Agreement), the Independent Manager may not be removed without the prior written consent of the Lenders. The Independent Manager shall act in good faith to ensure that all material decisions, actions, and approvals are made with the primary objective of maximizing the value of the Plant, consistent with his or her fiduciary duties under applicable law."

c. Section 4(b) is hereby amended by deleting the first letter in such section and replacing it with the following text:

"Except as expressly set forth in this Agreement, t"

d. Section 4(c) is hereby amended by adding the following text at the end of such section:

The Directors shall appoint a chief executive officer of the Company (the "**CEO**") in accordance with the terms set forth in the Forbearance Agreement; provided however, if the Omnis Parties and Lenders agree in writing that it is in the best interests of QP and the Company for the Independent Manager to serve as both the Independent Manager and the CEO, then the Omnis Parties and Lenders may direct the Independent Manager to remove the CEO and all references in this Agreement to the CEO will be deemed to refer to the Independent Manager. The CEO and AP Services, LLC, as the Company's independent financial advisor (the "**FA**"), shall be immediately granted access to all books and records, facilities, employees and any other materials and information of all Omnis Parties as may be reasonably necessary to allow the FA to deliver to the Omnis Parties and Lenders a report identifying any and all recommendations to improve performance, cash flow, profit and loss and such other financial metrics as shall be discussed between the FA and the CEO. The CEO, in consultation with the Independent Manager, shall have the authority to recommend a nationally recognized accounting firm to manage the accounting and financials for the Plant and the Company (the "**Independent Accounting Firm**"), which accounting firm shall be subject to the approval of the Lenders, QP and the Directors, which approval shall not be unreasonably withheld, conditioned, or delayed and shall be provided within five (5) days after the CEO's recommendation. The CEO is authorized to make all operational decisions regarding the Plant, including, but not limited to, authority to sign contracts, access all bank accounts, add and remove persons from such bank accounts, authorize payments on behalf of the Company and the Plant, approve expenditures and disbursements, hire and fire Plant personnel, engage counsel, incur indebtedness, and all other actions that are customary for a Chief Executive Officer operating in a similar industry. The CEO shall immediately have access to all books, records, facilities, materials, employees, and such information as may be reasonably necessary to execute the responsibilities set forth in the Amendment. The CEO shall be responsible for ensuring the timely payment of all payroll obligations for employees of the Company in the ordinary course of business consistent with current practices. This obligation shall include, but not be limited to, the payment of all wages, salaries, and related employment taxes and withholdings for such employees as and when due, subject to the availability of funds and applicable law. The CEO shall act in good faith to ensure that all material decisions, actions, and approvals are made with the primary objective of maximizing the value of the Plant, consistent with his or her fiduciary duties under applicable law."

e. Section 7 is hereby amended by adding the following text at the end of such section:

"Notwithstanding anything in this Agreement to the contrary, (a) the Directors shall approve (i) distributions to QP from the sale of the Plant after payment of all liabilities and obligations of the Company and the creation of a reasonable reserve for contingent liabilities, and (ii) annual distributions to QP in an aggregate amount of no less than QP's estimated tax liabilities (based on the maximum federal and West Virginia income tax rate for individuals residing in West Virginia) attributable to the net taxable profit generated by QP for the year in question, as directed by the Independent Accounting Firm), and (b) after Payment in Full of the Obligations, distributions shall be made to QP at such times and in

such amounts as determined by QP so long as the Company maintains sufficient reserves to account for all liabilities and obligations, as determined in good faith by the Independent Accounting Firm."

f. Section 11 is hereby amended and replaced in its entirety as follows:

"**11. Amendments.** The Member may, at any time and from time to time, amend this Agreement by executing a written amendment to this Agreement, provided however, that (a) prior to the Payment in Full of the Obligations, any such amendment shall require the consent of the Independent Manager, and (b) after the Payment in Full of the Obligations, any amendments that would alter or affect the rights, duties, or protections of the Independent Manager shall require the consent of the Independent Manager."

g. The following new Section 14 and Section 15 are hereby added immediately after Section 13:

"**14. Bankruptcy.** Notwithstanding anything in this Agreement to the contrary, after Payment in Full of the Obligations, the Member shall have sole discretion over any filing of any application or petition initiating (or consenting to the initiation of) any bankruptcy or insolvency proceeding under federal or state bankruptcy or insolvency laws without the consent of any Director or the Independent Manager.

**15. Member Information Rights.** The Member shall (A) receive all notices and materials provided to the Directors in connection with any meeting or action of the Directors by written consent, (B) have reasonable access to the books and records of the Company, and (C) participate in meetings (in person or telephonically) at which material Company actions are considered."

2. Miscellaneous.

a. Entire Agreement. The Operating Agreement, as amended by this Amendment, together with the certificate of formation of the Company and all related exhibits and schedules, constitutes the sole and entire agreement of the parties hereto with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

b. Ratification. This Amendment shall form a part of the Operating Agreement for all purposes, and each party thereto and hereto shall be bound hereby. From and after the execution of this Amendment by the parties hereto, each reference in the Operating Agreement to "this Agreement," "hereof," "hereunder," "herein," "hereby" or words of like import referring to the Operating Agreement shall mean and be a reference to the Operating Agreement as amended by this Amendment. Except as amended hereby, the terms and provisions of the Operating Agreement shall remain unchanged and in full force and effect. In the event of any conflict between the terms of the Operating Agreement and the terms of this Amendment, the terms of this Amendment shall govern and control.

c. Execution. In the event that any signature is delivered by electronic transmission or by email delivery of a "pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or "pdf" signature page were an original thereof.

d. Governing Law. All issues and questions concerning the application, construction, validity, interpretation and enforcement of this Amendment shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Delaware.

[Signature page follows.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to the Amended and Restated Limited Liability Company Operating Agreement of the Company to be executed and delivered as of the Amendment Effective Date.

**COMPANY:**

OMNIS PLEASANTS, LLC

Signed by:
By: Simon Hodson
52F88A74C72E45D...
Name: Simon Hodson
Title: Authorized Person

**SOLE MEMBER:**

QUANTUM PLEASANTS, LLC

Signed by:
By: Simon Hodson
52F88A74C72E45D...
Name: Simon Hodson
Title: Authorized Person

Consented and Agreed by:

**DIRECTORS:**

Signed by:
Simon Hodson
52F88A74C72E45D...
SIMON HODSON

Signed by:
Randall Smith
52F88A74C72E45D...
RANDALL SMITH

DocuSigned by:
Richard Hulme
63AFE1FF6DF3471...
RICHARD HULME

**INDEPENDENT MANAGER:**

GILBERT NATHAN

**AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY OPERATING AGREEMENT**
**OF**
**OMNIS PLEASANTS, LLC**

**[FORMERLY KNOWN AS ETEM REMEDIATION TWO, LLC]**

**THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT** (this "**Agreement**") of Omnis Pleasants, LLC, a Delaware limited liability company (the "**Company**"), is entered into by Quantum Pleasants, LLC ("**QP**"), the sole member of the Company, effective for all purposes and in all respects as of August 1, 2023 (the "**Effective Date**").

**Recitals**

**A.** The Company was formed on September 9, 2022 as a Delaware limited liability company under the name "ETEM Remediation Two, LLC." The Company was formed pursuant to the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.), as amended from time to time (the "**Act**"). Any reference to Delaware law herein shall mean and refer to the Act. Upon formation and through the Effective Date, the Company was owned 100% by Energy Transition and Environmental Management, LLC ("**ETEM**").

**B.** On December 29, 2022, the Company acquired the Pleasants Power Plant (the "**Plant**") from Pleasants, LLC pursuant to an Asset Purchase Agreement dated October 7, 2022, among the Company and Pleasants (the "**EH APA**").

**C.** On the Effective Date, QP acquired all of the membership interests in the Company from ETEM pursuant to the terms of a Membership Interest and Asset Purchase Agreement entered into between Pleasants, LLC, ETEM, the Company and QP (the "**Purchase Agreement**"). As part of the transaction, the EH APA was amended and restated (the **Restated APA**").

**D.** On August 9, 2023, the Member caused the Company to change its name from ETEM Remediation Two, LLC to Omnis Pleasants, LLC by filing a name change request with the State of Delaware.

**E.** As a result of the transactions consummated under the Purchase Agreement, QP became the sole member of the Company.

**F.** By executing this Agreement, QP desires to amend and restate in its entirety the original limited liability company operating agreement under which the Company was formed and operated through the Effective Date and to set forth the terms governing the affairs of the Company and the conduct of its business from and after the Effective Date.

**Terms of Agreement**

1. **Name.** The name of the Company is Omnis Pleasants, LLC.

2. **Purpose.** The purpose for which the Company is formed is to own and operate the Plant and the other assets acquired under the Purchase Agreement, to exercise its rights and perform its obligations under the Purchase Agreement, the Restated APA and the other agreements and instruments entered into by the Company in respect of the transactions consummated under the Purchase Agreement, and to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Delaware.

3. **Member.** QP is the sole member of the Company as of the Effective Date. QP and any other person or legal entity who becomes and remains a member of the Company are referred to herein as the "**Members**." All decisions by the Members shall be made by those Members holding a majority of the membership interests in the Company. Until such time as an additional person or legal entity is admitted to the Company as a Member, the Company shall be treated as a disregarded entity for income tax purposes, and as such, its income, gains, losses and expenses shall be treated as being realized directly by QP for income tax purposes.

4. **Management by Directors; Officers.**

(a) Except to the extent otherwise determined at any time and from time to time by the Members, and subject to the general oversight by the Members, the day-to-day affairs of the Company shall be managed by a Board of Directors (the "**Directors**"). The initial Directors shall be Simon Hodson, Randall Smith and Richard Hulme. Each Director succeeding a Director shall be selected from time to time by the Members. A Director may be removed and replaced at any time and from time to time, with or without cause, by the Members.

(b) The Directors shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to manage, control, administer, and operate the business and affairs of the Company, and to make all decisions affecting such business and affairs. Except to the extent otherwise determined at any time and from time to time by the Members, the duties and authority of the Directors to act on behalf of the Company shall include the same duties and authority to act on behalf of a Delaware limited liability company as a "manager" would have under the Act in the absence of a specific delegation of authority. In furtherance, and not in limitation, of the foregoing, the Directors shall have the right, power and authority, acting for and on behalf of the Company, to enter into and execute any contract, agreement, mortgage or other instrument or document on behalf of the Company, to sell or encumber Company assets, and to otherwise carry on any and all other activities related to the business of the Company. The Directors shall act on any matter with the consent of at least two Directors, and any third party shall be entitled to rely on the execution of any agreement, instrument or document by a Director as the act of the Board of Directors.

(c) The Directors may, from time to time, designate one or more persons to be officers of the Company (collectively, "**Officers**"), with such titles as the Directors may assign to such persons. No Officer need be a Member or Director or a resident of Delaware. Officers so designated will have such authority and perform such duties as the Directors may, from

time to time, delegate to them and, unless otherwise specified by the Directors, will have the authority and responsibilities generally held by officers of a Delaware corporation holding the same respective titles, if any. Any number of offices may be held by the same person. Any Officer may resign as such at any time. Such resignation shall be made in writing and will take effect at the time specified therein, or if no time is specified, at the time of its receipt by the Directors. Any Officer may be removed as such, either with or without cause, by the Directors, in the Directors' sole discretion. Any vacancy occurring in any office of the Company may be filled by the Directors.

**5. Member Approval Rights.** Notwithstanding anything in this Agreement to the contrary, each of the following shall require the prior written approval of those Members owning a majority of the membership interests in the Company:

(i) any amendment, modification, termination, or waiver of this Agreement or any term or provision hereof;

(ii) the dissolution and/or liquidation of the Company;

(iii) any sale, license, transfer, or other disposition of all or substantially all of the assets of the Company;

(iv) the issuance of any equity interest in the Company or the admission of any additional member(s) to the Company; and

(v) any other action by, on behalf of, or with respect to, the Company identified in writing by the Directors at any time and from time to time by resolution or otherwise.

**6. Term.** The Company shall dissolve, and its affairs shall be wound up, at the election of the Members holding a majority of the membership interests in the Company or upon the occurrence of an event of dissolution under Delaware law unless the Members elect to continue the Company to the extent permitted under Delaware law.

**7. Distributions.** Distributions shall be made to the Members in proportion to their membership interests at such times and in such amounts as determined by the Directors from time to time, subject to compliance with applicable law.

**8. Limitation on Liability; Indemnification.**

(a) To the fullest extent permitted by the Act, the personal liability of the Members, Directors and Officers of the Company to the Company or any third party is hereby eliminated.

(b) The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under Delaware law or this Agreement shall not be grounds for imposing personal liability on any of the Members, Directors, Officers, employees or agents of the Company or the Members for any debts, obligations or liabilities of the COMPANY.

(c) To the fullest extent permitted by law, the Company shall indemnify and hold harmless any person made or threatened to be made a party to a proceeding by reason of that person's former or current status as a Director or Member of the Company, and the Company may indemnify and hold harmless any person made or threatened to be made a party to a proceeding by reason of that person's former or current status as an Officer of the Company (the "**Indemnitee**"), against any liability incurred with respect to the proceeding (including reasonable attorney's fees and expenses), regardless of whether such Indemnitee continues to be a Member, Director or Officer of the Company at the time any such liability or expense is paid or incurred; *provided, however*, that this provision shall not eliminate or limit the liability of (i) the Directors or Officers or any other person for any breach of any duty of loyalty of such Director, Officer or other person to the Company or to the Members or (ii) any Indemnitee for acts or omissions which involve such Indemnitee's intentional misconduct, gross negligence, breach of this Agreement or any other contract between such Indemnitee and the Company, or knowing violation of law.

(d) The Company may purchase liability insurance on behalf of any Director, Officer, or employee, and any person who is or was serving at the request of the Company as a director, officer or employee of another legal entity against any liability asserted against him or incurred by him in any such capacity or status.

**9. Winding Up and Distribution Upon Dissolution.** The Company shall be dissolved and its affairs shall be wound up upon the earlier to occur of (a) the decision of the Members to dissolve the Company, or (b) the sale of all or substantially all of the Company's assets for cash. Upon dissolution of the Company, the Directors shall wind up the business and affairs of the Company, and shall cause all of its property and assets to be paid and/or distributed as follows:

(i) first, all of the Company's debts, liabilities and obligations, including without limitation any loans or advances from the Member, shall be paid in full or reserves therefor shall be set aside; and

(ii) second, any remaining assets shall be distributed to the Members in proportion to their membership interests.

**10. Benefits of Agreement.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or of any Member.

**11. Amendments.** The Member at any time, and from time to time, may amend this Agreement by executing a written amendment to this Agreement.

**12. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of Delaware (but not including the choice of law rules thereof), including without limitation the Act.

**13. Uncertificated Interests**. The limited liability company interests of the Company shall initially not be certificated.

**[Signature page follows]**

**IN WITNESS WHEREOF**, QP has duly executed this Amended and Restated Limited Liability Company Agreement effective as of the date first set forth above.

**QUANTUM PLEASANTS, LLC**

By: ______________________________
Name: Simon K. Hodson
Title: Chief Executive Officer