# **EXHIBIT 9**

E-FILED | 7/8/2026 9:42 AM
CC-37-2026-C-14
Pleasants County Circuit Clerk
Millie Farnsworth

HERRICK

Elizabeth Plowman
Partner
212.592.1586
eplowman@herrick.com

March 9, 2026

**VIA EMAIL**

Herbert Smith Freehills Kramer
1177 Avenue of the Americas
New York, NY 10036
Attention: Alexander Woolverton
Email: alexander.woolverton@hsfkramer.com
*Counsel to Omnis Pleasants, LLC*

Re: Omnis Pleasants, LLC

Xander:

First, thank you for confirming that "Mr. Nathan will forbear" "from contacting prospective bidders to notify them that he does not support continuing the sale process."[1] If his position changes, we expect you to please let us know promptly and well before Mr. Nathan contacts any prospective bidders. If you are unwilling to do so, let us know now.

Second, we have received no response concerning how, if at all, Mr. Nathan plans to repay the Omnis Parties' indebtedness.[2] That indebtedness includes (i) no less than $75 million owed to the Lenders as of February 3, 2026, (ii) a $50 million loan from WVEDA that matures in June 2026, and (iii) a $20 million loan with Bilt. The forbearance period with the Lenders expires on April 7, 2026, and Herrick's clients have diligently worked to negotiate forbearance terms with WVEDA and Bilt. As you have repeatedly acknowledged, Mr. Nathan is a fiduciary of both OP and Quantum Pleasants. But he has ignored repeated requests to execute or provide feedback on the Bilt forbearance agreement. And, as discussed below, Messrs. Nathan and Hindman are engaging in conduct that appears to be aimed at interfering with Quantum Pleasants' ability to enter into a forbearance agreement with WVEDA. Meanwhile, you have represented that Mr. Nathan is refusing to consider or support any sale regardless of deal terms and lender support. So again, please let us know: Absent a sale that would repay the lenders in full, what is Mr. Nathan's plan

[1] 3/3/26 email from Alexander Woolverton.

[2] Unless otherwise defined, capitalized terms have the same meaning as in the amended and restated forbearance agreement, dated as of February 6, 2026, among the Lenders and the Omnis Parties (the "Forbearance Agreement").

HERRICK



to satisfy OP's and QP's indebtedness?[3] Similarly, please provide us with OP's prompt approval or feedback on the forbearance terms with Bilt.

Third, we understand that OP has provided no financial reporting to Quantum Pleasants since December 2025, despite our clients' repeated demands. Quantum Pleasants is the parent and sole member of OP. It is entitled to OP's financial reporting—which is critical to any sales process.[4] OP's refusal to provide material financial information materially impairs our clients' ability to market and sell OP and its Power Plant. Please promptly produce all of OP's financial reporting and books and records since December 31, 2025. This information should include: (i) OP's financial statements and general ledgers; (ii) Alix Partners' invoices to OP since the invoice dated January 7, 2026; (iii) the Independent Manager's invoices; (iv) the interim CEO agreement between OP and APS Services, LLC; and (v) the report, when available, and all preliminary reports "identifying any and all recommendations to improve performance, cash flow, profit and loss and such other financial metrics as shall be discussed between the FA and the CEO." (Forbearance Agreement § 7(e); 2/12/26 Amendment to OP's Operating Agreement § 1(d)).

Fourth, we understand that your firm directly contacted our clients requesting several categories of documents for Quantum Pleasants, OFT, and OGT. The requested documents date back to 2023, and consist of a wide range of information, including bank statements, check registers, general ledgers, corporate cards, and travel and expense reports. We understand that Quantum Pleasants' bank statements have already been provided to (i) OP and its agent, including Alix Partners, (ii) the Lenders, and (iii) the Lenders' forensic accountant, and Quantum Pleasants' general ledgers have already been provided to the Lenders' forensic accountant. And we struggle to understand how the requested information concerns OP's operations. The Forbearance Agreement entitles Mr. Nathan only to documents "necessary to allow the FA to deliver to the Omnis Parties and Lenders a report identifying any and all recommendations to improve performance, cash flow, profit and loss and such other financial metrics as shall be discussed between the FA and CEO." (Forbearance Agreement § 7(e)). Frankly, we are astounded by Mr. Nathan's focus on corporate cards and travel expenses for non-OP entities, when he should be dedicating all his immediate attention to promptly repaying OP's and QP's debt and avoiding foreclosure. We're willing to meet and confer about the document requests. But all future document requests should be directed to Herrick since—as you know—we represent Quantum Pleasants, OFT, and OGT.

---

[3] We understand that Alix Partners has been engaged as a financial advisor to OP since October 2025. It has had plenty of time to formulate a strategy.

[4] *E.g.*, 2/12/26 Amendment to OP's Operating Agreement § 1(g) ("Member Information Rights. The Member [Quantum Pleasants] shall (A) receive all notices and materials provided to the Directors in connection with any meeting or action of the Directors by written consent, (B) have reasonable access to the books and records of the Company [OP], and (C) participate in meetings (in person or telephonically) at which material Company [OP] actions are considered."); 6 Del. C. § 18-305.

HERRICK



Fifth, we also previously raised that Messrs. Nathan and Hindman are preventing Quantum Pleasants' scientist (Dr. Swensen) from accessing property that Quantum Pleasants leases from OP (the "Leased Property").[5] This is a plain breach of the lease, providing for Quantum Pleasants' access to the Leased Property, including "ingress and egress to, from and over the "Property." (Ex. A ¶ 1). Please promptly confirm that Mr. Swensen—and other scientists, employees, and agents of Quantum Pleasants—will immediately be granted access to the Leased Property.

Sixth, your March 2 letter's reference to purportedly "damning" and "troubling" allegations by WVEDA "against OP's prior management," is irresponsible, misleading, and, at best, deliberately obtuse. As OP's counsel, you should understand the facts concerning the WVEDA loan.[6] You should especially do so before irresponsibly writing about WVEDA's allegations in written correspondence in which you inexplicably decided to copy[7] the Deputy Director of the West Virginia Department of Commerce. WVEDA's allegations were not limited to claims against "prior management;" the allegations were made against both of our firms' respective clients. And you selectively attached to your letter one-sided correspondence from WVEDA, while ignoring the many other letters from our respective clients—Quantum Pleasants, OFT, and OP—responding to, and refuting, each allegation. We encourage you to read our clients' responses to WVEDA's letters, particularly the letters dated July 8, 2025, July 13, 2025, and August 6, 2025, and to speak to the Omnis Parties' employees with knowledge of the facts, before continuing to lend credence to WVEDA's baseless allegations. As you know (or should know), after WVEDA and our respective clients exchanged letters from March 2025 to October 2025 about WVEDA's concerns, the parties met in person in November 2025 and, since then, they have been engaged in productive negotiations over a forbearance agreement.

Messrs. Nathan's and Hindman's intentional interference with the WVEDA negotiations, as further evidenced by your March 2 letter, threatens to undermine the progress that has been made with WVEDA. As counsel to OP's sole member, Quantum Pleasants, we demand a copy of all communications since October 24, 2025 between (i) OP, Quantum Pleasants, and each of their representatives (including the interim CEO, OP's financial advisor, and the Independent Manager, and their representatives or agents, including counsel), on the one hand, and (ii) WVEDA, the West Virgina Department of Commerce, other West Virginia state agencies, or their

---

[5] The lease is attached as **Exhibit A**.

[6] You describe the WVEDA loan as "a $50 million loan that OP obtained" from WVEDA. (3/2/26 Letter from Herbert Smith Freehills Kramer, at 1). Quantum Pleasants is the borrower of that loan. OP is a guarantor.

[7] The only basis we can see for copying Mr. Preservati on your communications is to attempt to hinder our clients' ability to enter into a forbearance agreement with WVEDA.

HERRICK



representatives, concerning the WVEDA loan or the allegations by WVEDA referenced in your March 2 letter. We similarly demand: (i) all written communications between the Independent Manager, the financial advisor, and the interim CEO; and (ii) all written communications between the Independent Manager, the financial advisor, and the interim CEO, on the one hand, and the Lenders or Bilt, on the other hand.

You have repeatedly misstated other facts, documents, and agreements. We will not attempt to correct all your mistakes. But:

- Mr. Nathan's fiduciary obligations are not limited to maximizing the value of the Power Plant, and his obligations are also owed to our client (Quantum Pleasants).

- Mr. Nathan's statements to Herrick that there would be "no sale"—despite the forbearance agreement and his contractual and fiduciary obligations—are not privileged. Among other things, the statements did not seek legal advice. We further note that your letters to us copied WVEDA (breaking any purported privileged) while citing to WVEDA's "troubling" and "damning" allegations made against our clients as if they were fact.

- We understand that the boots on the ground operations are (and continue to be) handled by third parties (Alix Partners, Pure Energy, and Tyr). So, we fail to see how Mr. Nathan is "focus[ed] on the operational turnaround the Company [OP] so desperately needs."[8] Please tell us if you disagree (and why).

- We fail to see how terminating Vinson & Elkins as OP's counsel was in OP's best interests and not "remotely relevant to FERC."[9] Please let us know why the termination occurred. Our clients would also like an explanation for Herrick's termination as counsel to OP.

Lastly, please confirm that, as OP's counsel, you have advised the interim CEO, AP Services, LLC, Mr. Nathan, and Jackson Square Advisors of their obligations to preserve documents and information. If not, please direct us to their counsel; otherwise, we will directly communicate with each of them. We also assume that you are instituting all appropriate litigation holds on behalf of your client (OP). Please confirm.

In sum—especially with the Lenders' stating their support "to continue to explore the proposal from Cardinal Power"—it is critical for Mr. Nathan to stop playing games and help consummate a sale that is wholly supported by OP's parent, Quantum Pleasants, and fully repays all of OP's

---

[8] 3/3/26 email from Alexander Woolverton.

[9] 3/2/26 Letter from Herbert Smith Freehills Kramer, at 2.

HERRICK



lenders. This includes promptly providing us with the requested OP financial information (as opposed to irrelevant travel records from non-OP entities dating back three years) and consummating reasonable forbearance terms with Bilt and WVEDA.

We look forward to our call on Tuesday. As always, our clients reserve all rights and waive none.

Sincerely,

Elizabeth Plowman

Elizabeth Plowman

cc: Brian Shaughnessy, Herbert Smith Freehills Kramer, LLP
Ayla Lima, Herbert Smith Freehills Kramer, LLP
Gilbert Nathan, Jackson Square Advisors, LLC
David Hindman, AP Services, LLC
Thomas Michael, Manatt, Phelps & Phillips, LLC
Sean E. O'Donnell, Herrick Feinstein LLP
Christopher C. Carty, Herrick Feinstein LLP
Morris DeFeo, Herrick Feinstein LLP