# EXHIBIT 10

E-FILED | 7/8/2026 9:42 AM
CC-37-2026-C-14
Pleasants County Circuit Clerk
Millie Farnsworth

# Quantum Pleasants, LLC

March 20, 2026

VIA EMAIL

David Hindman
david.hindman@omnispleasants.com

Gil Nathan
gilbert.nathan@omnispleasants.com

Re: Omnis Pleasants, LLC

Gentlemen:

Reference is made to the letter dated March 9, 2026 (the "March 9 Letter"), from Herrick, counsel to Quantum Pleasants, LLC ("QP"), to counsel for Omnis Pleasants LLC ("OP"). Despite repeated requests, QP remains frustrated in its ability to make any meaningful progress in advancing a sale or financing of OP in large part due to continuing actions or inactions on your part, contrary to the purpose and intent of the Forbearance Agreement and to your duties and responsibilities as fiduciaries of OP, and, in the case of Mr. Nathan, QP. These areas of extreme concern are identified below.

**Adversarial Relationship.** Your principal responsibilities are to increase the profitability of OP and hence its value and help QP facilitate a sale or financing of OP to enable it to pay the indebtedness currently owed to TRAG, LLC and RG Energy, LLC (the "Lenders"), thereby avoiding a foreclosure on OP's and QP's assets. Part of the information QP is requesting below is directed to each of you explaining exactly what strategies and plans you are implementing to achieve these goals. To date, Mr. Nathan's efforts have been focused on creating a hostile relationship with QP that has resulted in his breaching the Forbearance Agreement and the governing documents for QP and OP, notwithstanding that (i) he is a director of QP and owes a fiduciary duty to it, (ii) QP is the 100% owner of OP, and (iii) QP is the possessor of the technology that is the main value driver for the combined enterprise. Mr. Nathan's actions have generated a

continual legal writing campaign between QP and OP that has prompted excessive and unwarranted legal fees and expenses. More importantly, it has caused QP to lose precious time in pursuing avenues to repay the indebtedness owed to the Lenders. This must stop.

**Cardinal Transaction**. The Lenders[1] have met with representatives of Cardinal Power, LLC ("Cardinal") concerning a potential transaction in which Cardinal would acquire 100% of QP's ownership interests in OP at a cash purchase price sufficient to fully satisfy the Omnis Parties' indebtedness to the Lenders. One of the key reasons that the Omnis Parties, including OP, entered into the Forbearance Agreement was to establish a mechanism and period to facilitate a sale as a means to repay such indebtedness. QP has been working intensely and transparently to accomplish this.

Mr. Nathan has stated that, in his opinion, without any articulated basis, the state of the plant, the pending FERC investigation and the lease between QP and OP make any sale to Cardinal or any other buyer an impossibility. Despite this, Cardinal has indicated that it is aware of these issues and is nevertheless willing to proceed on the basis of the term sheet which you have received. It makes no sense to block the commencement of diligence on the part of Cardinal and progress on a sale that would, if consummated, repay all the indebtedness based solely on your unfounded conclusion that a deal would not close. As you know, the Cardinal term sheet mandates a 60-day exclusivity period. Given the Forbearance Period, we must reiterate any decision to grant Cardinal 60 days of exclusivity should be made quickly and will require extending the Forbearance Period.

**Access**. Despite repeated requests, you have continued to impede access to the Pleasants Power Plant (the "Plant") and leased property by QP personnel, vendors and potential sources of financing further hindering our ability to effect a sale and/or repay the indebtedness owed to the Lenders. Most recently, personnel from IAC, one of QP's key equipment vendors, were denied access to the site to conduct work related to IAC's equipment. This is contrary to the Forbearance Agreement, the existing ground lease and the best interests of the Omnis Parties. Quite simply, access must be granted immediately. Funds from such financiers can be used to repay the Omnis Parties' indebtedness, including the amounts owed to the Lenders. Given the importance of the potential financing, and QP's' rights under the lease, QP demands that access be provided to all of its invitees who request presence at the site. **Failure to do so, is a breach of the foregoing agreements and, in the case of Mr. Nathan, his fiduciary duty owed to QP**.

[1] Unless otherwise defined, capitalized terms have the same meaning as in the amended and restated forbearance agreement, dated as of February 6, 2026, among the Lenders and the Omnis Parties (the "Forbearance Agreement").

**<u>Failure to Include QP in Decisions</u>**. As you are also aware, Section 15 of the Amendment to the Amended and Restated Operating Agreement of OP (the "OP Agreement") entitles QP, as the sole member of OP, to: (a) all notices and materials provided to OP's manager(s) in connection with any meeting or action of the manager(s) by written consent, (b) reasonable access to the books and records of OP, and (c) participate in meetings (in person or telephonically) at which material OP actions are considered. Mr. Nathan has made numerous material decisions without consulting the undersigned, as a director and CEO of QP, in clear violation of the OP Agreement, including clandestine dealings with OP's lenders, the termination of Herrick and Vinson & Elkins as counsel to OP, and the engagement of new counsel to replace them. Going forward, any action of a material nature by Mr. Nathan will require notice to the undersigned affording him the ability to participate in the decision-making process. **Failure to do so is a breach of the OP Agreement.**

**<u>Review of Books and Records</u>**. As cited above, Section 15 of the OP Agreement grants QP reasonable access to the OP's books and records, including notices and materials provided to Mr. Nathan in connection with any action taken in his capacity as a director of OP. QP has repeatedly requested and been denied documentation relevant to Mr. Nathan's decision-making process and other written communications as to which QP has a legitimate interest. In view of this, QP is hereby demanding production of the following documentation and information most of which were requested in the March 9 Letter:

- All financial statements and supporting data of OP since December 31, 2025, including : (i) OP's financial statements and general ledgers; (ii) Alix Partners' invoices to OP since the invoice dated January 7, 2026; (iii) Mr. Nathan's invoices; and (iv) the interim CEO agreement between OP and APS Services, LLC (all requested previously in the March 9 letter), also, please provide all invoices and a list of payments made to counsel engaged by Mr. Nathan.
- Any written plans, communications or proposed strategies (or summaries or notes thereof) for repaying the obligations of the Omnis Parties to the Lenders and Bilt prior to expiration of the Forbearance Period, including Mr. Nathan's or Mr. Hindman's current recommended plan and strategy, (requested in the March 9 Letter).
- All written communications (or notes or summaries thereof) since October 24, 2025 between Messrs. Nathan or Hindman or their counsel or related parties, on the one hand, and WVEDA, Bilt, or the Lenders or their counsel or related parties, on the other hand, with respect to the indebtedness or obligations of OP or QP, or any forbearance or restructuring thereof, including the current status of the negotiations with WVEDA and Bilt (requested in the March 9 Letter).
- All preliminary reports by Messrs. Nathan or Hindman or their related parties identifying any recommendations to improve the performance, cash flow, profit and loss or such other financial metrics of OP and the Plant as required pursuant to Section 7(e) of the Forbearance Agreement (requested in the March 9 Letter).

- All written communications (or notes or summaries thereof) between Messrs. Hindman or Nathan or their related parties concerning the Omnis Parties, other than with respect to the day to day operations of OP (requested in the March 9 letter).
- All written communications (or notes or summaries thereof) between Messrs. Hindman or Nathan or their counsel or related parties, on the one hand, and the Lenders, their counsel or related parties, including Mr. Gupta and Mr. Robbins, on the other hand, concerning any of the Omnis Parties in which QP or the undersigned were not copied (requested in the March 9 letter).
- All written communications (or notes or summaries thereof) between Messrs. Hindman or Nathan or their counsel or their related parties, on the one hand, and any third party, on the other hand, with regard to the sale or financing of OP or the Plant.

I further request that all of the foregoing materials be available for review during regular business hours by Blake Stephens, QP's general counsel, at OP's offices by no later than Friday, March 27. Please advise the undersigned of the day and time these materials will be made available to Mr. Stephens and please ensure there is a copier readily available for his use.

Please be advised that the undersigned requests that he copied on any the foregoing communications, plans, recommendations, notes, summaries, analyses and information that are transmitted in the future.

In this regard, as emphasized in the March 9 Letter, QP is the parent and sole member of OP. It is entitled to OP's financial reporting which is critical to any sales process. OP's refusal to provide material financial information materially impairs QP's ability to market and sell OP and the Plant. **Hence, failure to produce the requested materials in a timely manner is a breach of the OP Agreement**.

**False or Misleading LinkedIn Information.** It was reported that, on his LinkedIn page, Mr. Nathan overstated his role at other public utilities, and may have misstated other information. I request that Mr. Nathan provide me and the Lenders by March 27, 2026, with a corrected LinkedIn profile for Mr. Nathan highlighting the changes from the original version, coupled with an explanation why the required corrections were necessitated. Please also confirm that Mr. Hindman's LinkedIn profile as presented originally to the undersigned and the Lenders was correct at the time presented.

**Requirements under March 11, 2026 Letter.** In Ms. Plowman's March 11, 2026 letter to HSFK summarizing the conversation they had with the Lenders, it was confirmed that OP and its representatives, including Messrs. Nathan and Hindman, will, "for the time being," refrain from communicating to third parties any lack of support for the Sales Process. We trust, and must insist, that this will not change.

The letter further reported that HSFK intended to provide Herrick with term sheets for Bilt and WVEDA, and a proposed framework for all debt, by March 13, 2026, and it also promised to: (i) seek Herrick's comments to the term sheets before sending them to any lenders; and (ii) copy Herrick on all future communications with each of the following parties, including their respective representatives or counsel: (a) the Lenders, (b) WVEDA, (c) West Virginia, and (d) Bilt. QP requests that you each will cause HSFK to promptly comply with such commitments.

As also stated in the letter, HSFK said that a revised engagement letter is being negotiated with Alix Partners or its related parties. Herrick asked to see the revised engagement letter before it is finalized although HSFK stated it must confer with its client (is this OP or Mr. Nathan individually, or both?) and report back. QP renews its request to see the revised agreement prior to execution since it unquestionably is a "material" action affording QP the right to participate.

I would greatly prefer that we work cooperatively together to cause the indebtedness owed to the Lenders and Bilt to be paid in full prior to the end of the forbearance agreement. I trust that the hostility Mr. Nathan has displayed will not continue and that he will adhere to his obligations as a fiduciary to both OP and QP and to the terms of the governing documents. However, just yesterday, Mr. Nathan refused to provide QP with information it requested to provide a proposed financing party with relevant information it sought regarding the Plant's operations, notwithstanding that all of the parties QP is dealing with have signed non-disclosure agreements protecting against the unauthorized use or disclosure of OP's non-public information. These obstructionist efforts must stop immediately.

Simply put, if you are unable or unwilling to (i) support the sale or financing process, (ii) fulfill your duties and obligations under the Forbearance Agreement and the governing documents of QP and OP, or (iii) comply with your obligations as fiduciaries of OP and, as applicable, Quantum Pleasants, you should consider resigning immediately without the need for the Lenders and the undersigned to take further action.

Sincerely,

QUANTUM PLEASANTS, LLC

Simon K. Hodson, Director and CEO