# EXHIBIT 12

Pleasants County
Jody L. Davis, Clerk
Instrument 653928
06/26/2026 @ 12:38:14 PM
TRUST DEED
Book 216 @ Page 310
Pages Recorded 63
Recording Cost $ 94.00

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

By

**OMNIS PLEASANTS, LLC**
a Delaware limited liability company

as Grantor

to

**KENT J. GEORGE** and **LINDSAY M. STOLLINGS,**
Each, a resident of Kanawha County, West Virginia

collectively, as Trustee

for the benefit of

**TRAG LLC** and **RG ENERGY LLC**
Each, a Delaware limited liability company

collectively, as Beneficiary

---

Dated as of June 17, 2026

Location 1 Power Station Boulevard, Belmont, West Virginia 26134

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING** is made as of June 17, 2026 (as amended, extended, renewed, consolidated, spread or otherwise modified from time to time, this "**Deed of Trust**" or "**Security Instrument**"), by **OMNIS PLEASANTS, LLC**, a Delaware limited liability company, having a place of business at Pleasants Power Station, No 1 Power Station, Belmont, WV 26134, as grantor ("**Grantor**"), to **KENT J. GEORGE** and **LINDSAY M. STOLLINGS**, each a resident of Kanawha County, West Virginia, as trustee (collectively, "**Trustee**"), for the benefit of **TRAG LLC**, a Delaware limited liability company, having a place of business at 2655 South Bayshore Drive, Suite 1702, Miami, FL 33133, and **RG ENERGY LLC**, a Delaware limited liability company, having a place of business at 2655 South Bayshore Drive, Suite 1702, Miami, FL 33133 (individually or collectively, "**Beneficiary**")

## BACKGROUND

1 Grantor has agreed to grant liens and security interests to Beneficiary, and has granted first priority liens and security interests in all of its property and assets to Beneficiary to secure obligations, in the principal amount of Eighty-Seven Million Three Hundred Sixty-Eight Thousand Dollars ($87,368,000) plus any and all fees, interest, expenses, other amounts and other Indebtedness (as defined herein), including whether presently due or that may be due from time to time (all of the foregoing, collectively, the "**Loan**") arising under or in connection with

**A.** that certain Loan and Security Agreement, dated May 26, 2023, as amended by that certain Amendment No 1 to Loan and Security Agreement, dated June 30, 2023, as further amended by that certain Amendment No 2 to Loan and Security Agreement, dated July 9, 2024, as further amended by that certain Amendment No 3 to Loan and Security Agreement, dated August 1, 2024, as further amended by that certain Forbearance Agreement (as defined herein) (as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**May 2023 Loan Agreement**"), by and among Omnis Global Technologies, LLC ("**OGT**"), Omnis Fuel Technologies, LLC ("**OFT**"), Quantum Pleasants, LLC, a Delaware limited liability company ("**Quantum**"), and TRAG LLC ("**TRAG**"),

**B.** that certain Loan and Security Agreement, dated June 2, 2023, as amended by that certain Amendment No. 1 to Loan and Security Agreement, dated June 30, 2023, as further amended by that certain Amendment No 2 to Loan and Security Agreement, dated July 9, 2024, as further amended by that certain Forbearance Agreement (as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**June 2023 Loan Agreement**"), by and among OGT, OFT and RG Energy LLC ("**RGE**"),

**C.** that certain Loan and Security Agreement, dated January 14, 2025, as amended by that certain Forbearance Agreement (as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**January 2025 Loan Agreement**"), by and among OFT, OGT, Quantum and TRAG,

**D.** that certain Secured Promissory Note, dated March 31, 2025, as amended by that certain Forbearance Agreement (as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Promissory Note**") by and among OFT, OGT, Quantum and TRAG,

**E.** that certain Irrevocable Standby Letter of Credit, dated January 28, 2026, issued by Bank of America, N A , as amended by that certain Amendment to Irrevocable Standby Letter of Credit, dated February 3, 2026 (as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Letter of Credit**"), and

**F.** that certain Amended and Restated Forbearance Agreement, dated February 6, 2026 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Forbearance Agreement**" and, together with the May 2023 Loan Agreement, the June 2023 Loan Agreement, the January 2025 Loan Agreement, the Promissory Note, the Letter of Credit, and any other agreement, instrument, certificate, report, and/or other document entered into, executed or delivered pursuant hereto, any of the foregoing or in connection with the Loan, or otherwise evidencing or securing any loan or any other obligation to TRAG or RGE arising under or in connection with this Deed of Trust or any of the foregoing, collectively, the "**Existing TRAG/RGE Loan Agreements**"), by and among TRAG, RGE, OGT, OFT, Quantum and Grantor The Existing TRAG/RGE Loan Agreements, as amended, extended, renewed, consolidated or otherwise modified from time to time, the other Loan Documents (as defined herein) and any and all notes that may be given from time to time in exchange, substitution, renewal, restatement, consolidation or replacement therefor, are sometimes collectively referred to in this Deed of Trust as the "**Note** "

2 Grantor owns a fee estate in that certain piece or parcel of land located in Grant District, Pleasants County, West Virginia (the "**Land**"), which Land is more particularly described on **<u>Exhibit A</u>** attached hereto and made a part hereof

3 As a material inducement to Beneficiary having forborne from exercising certain of its rights, and in consideration for Beneficiary extending credit and providing other concessions, accommodation and consideration, under the Existing TRAG/RGE Loan Agreements, Grantor has agreed to execute and deliver this Deed of Trust to secure the following.

(a) payment of the Loan and other indebtedness from time to time evidenced by the Note and all other present and future debts, obligations and liabilities of Grantor, any borrower, guarantor or other loan party under or in connection with this Deed of Trust and/or the Note, whether or not the right of payment in respect of such claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, unsecured, and whether or not such claim is discharged, stayed or otherwise affected by any proceeding, including, but not limited to, all principal, interest, advances, premiums, charges, fees, disbursements, reimbursements, indemnities, costs, expenses and other amounts (including court costs and attorneys' fees) (said indebtedness, debts, obligations and liabilities being collectively referred to in this Deed of Trust as the "**Indebtedness**"), and

(b) the keeping, performance and observance of, and compliance with, all provisions required to be kept, performed, observed and complied with by Grantor under the

Existing TRAG/RGE Loan Agreements, this Deed of Trust, that certain Assignment of Leases, Subleases and Rents of even date herewith executed by Grantor in connection with the Loan (as amended from time to time, the "**Assignment of Leases**", the Note, this Deed of Trust, the Assignment of Leases, and such other agreements, documents, instruments, certificates, and/or reports executed, entered into, or delivered pursuant to or in in connection with any of the foregoing or the Loan, or otherwise evidencing or securing any loan or any other obligation to Beneficiary arising under or in connection with any of the foregoing (being collectively referred to in this Deed of Trust as the "**Loan Documents**") or any other document or instrument now or hereafter evidencing or securing all or any part of the Indebtedness or otherwise governing the responsibilities of Grantor in connection with such Indebtedness or in connection with the Property (as hereinafter defined) or in connection with any other security for such Indebtedness All capitalized terms not defined herein shall have the same meanings as set forth in the Existing TRAG/RGE Loan Agreements, and

(c) any and all other obligations secured by this Deed of Trust and the Note, as more particularly provided herein

**NOW, THEREFORE**, to secure payment of the Indebtedness and the keeping, performance and observance of, and compliance with the aforesaid provisions, and in consideration of the sum of Ten Dollars ($10 00) paid to Grantor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby **GRANTS, BARGAINS, SELLS, AND CONVEYS** to Trustee, for the benefit of Beneficiary and its successors and assigns, **IN TRUST WITH POWER OF SALE**, forever (and grants to Beneficiary and its successors and assigns forever, as secured party, a continuing security interest in and to), all of the following (collectively, the "**Property**")

**A.** all right, title and interest of Grantor, whether vested or contingent and whether now owned or hereafter acquired, in and to (1) Land, (2) all buildings, structures and other improvements now or hereafter situated on the Land (collectively, the "**Buildings**", each a "**Building**"), (3) all fixtures now or hereafter situated in or on, or attached to, the Land or any of the Buildings (collectively, the "**Fixtures**"), and (4) all trees, shrubbery, crops and other plantings now or hereafter grown on the Land, and

**B.** all right, title and interest of Grantor (as owner, chattel lessee or otherwise), whether vested or contingent and whether now owned or hereafter acquired, in and to (1) all right, title and interest in and to any building materials, supplies and other property now or hereafter stored at or delivered to the Land or any other location for installation in or on the Land or any of the Buildings, (2) all right, title and interest in and to any equipment, machinery, appliances, furniture, furnishings, fittings, apparatus, supplies and other tangible personal property now or hereafter situated in or on, or attached to, the Land or any of the Buildings (all of the property described in this clause (2) or in the immediately preceding clause (1) being collectively referred to in this Deed of Trust as the "**Equipment**") (the Buildings, the Fixtures and the Equipment being collectively referred to in this Deed of Trust as the "**Improvements**"), (3) all right, title and interest in and to any oil, gas and other minerals now or hereafter situated in, on, under or about, or produced from or allocated to, the Land, and (4) all right, title and interest in and to any plans, specifications, drawings, books, records and similar items now or hereafter relating to the Land,

the Improvements or any business or other operations now or hereafter conducted therein or thereon, and

**C.** all right, title and interest of Grantor, whether vested or contingent and whether now owned or hereafter acquired, in and to all streets, roads, sidewalks, alleys, ways, passages, public places, vaults, water courses, levees, ditches, wells, reservoirs, strips and gores adjoining or otherwise providing access to, or used or intended to be used in connection with, the Land, any of the Improvements or any other part of the Property, and the land lying in the bed thereof, and

**D.** all right, title and interest of Grantor, whether vested or contingent and whether now owned or hereafter acquired, in and to all easements, rights-of-way and other rights of use or passage (whether public or private), estates, interests, benefits, powers, rights (including development, declarant, lateral support, drainage, slope, riparian, littoral, sewer, water, air, oil, gas, mineral and subsurface rights), privileges, claims, franchises, licenses, profits, tenements, hereditaments, reversions, remainders and appurtenances now or hereafter belonging, relating, appertaining or allocated to the Land, the Improvements or any other part of the Property, and

**E.** all right, title and interest of Grantor, in and to, and all rights, powers, privileges and benefits of Grantor in, to and under·

(1) all leases, subleases, lettings, sublettings, concessions, licenses, occupancy and use agreements and similar arrangements, whether oral or written, now or hereafter relating to all or any part of the Land, any of the Improvements or any other part of the Property (collectively, the "**Leases**") (all present and future lessees, tenants, concessionaires, licensees, occupants and other users of all or any part of the Property under any of the Leases being collectively referred to in this Deed of Trust as the "**Tenants**"), including any subleases under any of the Leases, any tenancies following attornment and any use and occupancy arrangements created pursuant to Section 365 of the Bankruptcy Code, 11 U S.C §§ 101 *et seq* (as amended from time to time, the "**Bankruptcy Code**"), or pursuant to any other provision of the Bankruptcy Code or any other present or future law relating to bankruptcy, insolvency, reorganization, arrangement, composition, readjustment, liquidation, dissolution, conservatorship, receivership or similar relief for debtors (the Bankruptcy Code and each such other law being sometimes referred to in this Deed of Trust as an "**Insolvency Law**"), and

(2) any and all presently effective and future guaranties and other surety arrangements of, for or otherwise relating to any of the Leases (collectively, the "**Lease Guaranties**") (all present and future guarantors and other sureties under any of the Lease Guaranties being collectively referred to in this Deed of Trust as the "**Lease Guarantors**"), and

(3) leases, licenses, easements and/or other rights in or to and/or agreements relating to any off-site parking necessary, required or desirable in connection with Leases or for use of the Property

**F.** all right, title and interest of Grantor in and to, and all rights, powers, privileges and benefits of Grantor with respect to, any and all present and future security for, under or otherwise relating to any of the Leases or any of the Lease Guaranties, whether arising by statute, by agreement or otherwise (collectively, the "**Security**"), including property of any Tenant or any Lease Guarantor and cash deposits, advance rentals and deposits and payments of a similar nature, together with all rights of Grantor and any other person claiming under Grantor to collect, hold, return and retain the Security, provided, however, that Grantor shall be permitted, and is hereby granted a revocable license, until the occurrence of any Event of Default (as hereinafter defined), to collect, hold, return and retain the Security, but only in accordance with applicable laws and agreements (subject, however, to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Security now or hereafter in effect,) which permission and license may be modified in accordance with the provisions of the Assignment of Leases), and

**G.** all right, title and interest of Grantor, whether vested or contingent and whether now owned or hereafter acquired, in and to all rents, royalties, issues, profits, revenues, income and other money and benefits (including non-cash consideration and "*Rents*") of and from the Land, any of the Improvements, any other part of the Property or any business or other operations now or hereafter conducted therein or thereon by or on behalf of or for the benefit of Grantor, whether now or hereafter payable or accruing and whether now or hereafter deliverable (collectively, the "**Rents**"), including (1) all money and other consideration from time to time paid, payable or accruing, or from time to time delivered or deliverable, to or for the benefit of Grantor, or to which Grantor otherwise may be entitled, under or in connection with any of the Leases or any of the Lease Guaranties (including cancellation or termination payments and damages payable in connection with any default), and (2) all money and other consideration from time to time paid, payable or accruing, or from time to time delivered or deliverable, by or on behalf of any other licensees, invitees, guests, customers, occupants or other users of any such Property, together with all rights of Grantor and any other person claiming under Grantor to collect and use the Rents; provided, however, that Grantor shall be permitted, and is hereby granted a revocable license, until the occurrence of any Event of Default, to collect the Rents as, but not before, they become due and payable (subject, however, to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Rents now or hereafter in effect), which permission and license shall automatically and immediately terminate, without notice to Grantor and without the necessity of any other action by any person, upon the occurrence of any Event of Default, and

**H.** all right, title and interest of Grantor (whether as seller, purchaser or otherwise) in and to (1) all presently effective and future agreements for purchase and sale or other transfer of all or any part of the Property, (2) all down payments, earnest money deposits and other money or security paid or payable or deposited or to be deposited in connection with any such agreement, (3) all proceeds of any sale, assignment or other disposition of all or any part of the Property or any rights thereto or any interest therein, and (4) all proceeds of any other conversion of any such Property, rights or interest into cash or any liquidated claim; and

**I.** all right, title and interest of Grantor in and to (1) all judgments, settlements, claims, awards, insurance proceeds and other proceeds and compensation, and any interest thereon (collectively "**Compensation**"), made or payable at any time in connection with any fire, casualty

or other damage or loss to all or any part of the Property, or in connection with any condemnation or eminent domain proceeding relating to all or any part of the Property (any such proceeding being referred to in this Deed of Trust as a "**Condemnation Proceeding**") or any damage to or taking of all or any part of the Property or any rights thereto or any interest therein in connection with any condemnation or exercise of the power of eminent domain (or any conveyance in lieu of or under threat of any such taking), including any Compensation for change of grade of streets or any other injury to or decrease in value (any such damage, taking or conveyance being referred to in this Deed of Trust as a "**Taking**"), (2) all refunds and rebates of, or with respect to, any Insurance Premiums (as hereinafter defined), Impositions (as hereinafter defined) or other utility charges relating to the Property, and any interest thereon, and (3) all unearned or prepaid Insurance Premiums, Impositions and other utility charges, any deposits with respect thereto and any interest thereon, and

**J.** all right, title and interest of Grantor, whether vested or contingent and whether now owned or hereafter acquired, in and to all accounts, accounts receivable, books and/or records (whatever form) option rights, contract rights, general intangibles, permits, licenses, approvals, bonuses, actions, rights in action and other intangible personal property now or hereafter arising from or relating to all or any part of the Property or any business or other operations now or hereafter conducted therein or thereon by or on behalf of or for the benefit of Grantor (including all rights of Grantor in and to any and all contracts and bonds relating to operation, maintenance, construction, renovation, restoration, repair, management or security of all or any part of the Property or any such business or other operations); and

**K.** all right, title and interest of Grantor, whether vested or contingent and whether now owned or hereafter acquired, in and to all proceeds, products, extensions, additions, improvements, betterments, renewals, substitutions, replacements, accessions, accretions and relictions of or to all or any part of the Property or any interest therein, and

**L.** all further or greater estate, right, title, interest, claim and demand of Grantor, of whatever character (whether vested or contingent and whether now owned or hereafter acquired), in and to any of the Property described above and any rights or interests appurtenant thereto

FOR THE PURPOSE OF SECURING the performance of each agreement of Grantor contained herein and the Existing TRAG/RGE Loan Agreements, including, but not limited to, the payment of any Indebtedness evidenced by the Note, and to protect the security of this Deed of Trust, Grantor represents, warrants, covenants and agrees as follows·

## ARTICLE 1

## COVENANTS OF GRANTOR

**1.1** **Performance of Obligations.** Grantor shall keep, perform, observe and comply with, or cause to be kept, performed, observed and complied with, all applicable provisions required to be kept, performed, observed and complied with by or on behalf of Grantor from time to time under each of the Loan Documents

**1.2** **General Representations, Covenants and Warranties.**

(a) Grantor does and will warrant generally the Property, and Grantor will forever defend the title to the Property against the claims of all persons whomsoever claiming or who may claim the same or any part thereof, subject to the outstanding liens, easements, restrictions, security interests and other exceptions to title set forth in the policy of title insurance insuring the lien of this Deed of Trust, together with the liens and security interests in favor of Beneficiary created by the Loan Documents, none of which, individually or in the aggregate, materially interferes with the benefits of the security intended to be provided by this Deed of Trust, materially and adversely affects the value of the Property, impairs the use or operations of the Property or impairs Grantor's ability to pay its obligations in a timely manner (collectively, the "**Permitted Exceptions**") and the Lease(s) set forth in the Existing TRAG/RGE Loan Agreements are referred to herein as the "**Existing Leases**") Without limiting the generality of the immediately preceding sentence, Grantor represents, warrants and covenants that

(i) subject only to the Permitted Exceptions, Grantor is seized of an indefeasible estate in fee simple in and to the Land, the Buildings and all other parts of the Property constituting real property,

(ii) subject only to the Permitted Exceptions, Grantor has good and absolute title to the Equipment, the Fixtures and all other parts of the Property constituting personal property, except Equipment owned by any Tenant (other than Grantor) and Equipment leased by any Tenant from any person other than Grantor;

(iii) the Property is free and clear of any and all liens, security interests, charges, encumbrances and claims of other persons, other than the Permitted Exceptions and the Existing Leases,

(iv) all costs incurred prior to the date hereof in connection with any construction of, in or on any Improvements or in connection with the purchase of any Fixtures or Equipment have been paid in full or will be paid in the ordinary course of business prior to delinquency,

(v) no parcel forming part of the Land is included within a tax parcel, for *ad valorem* or local real estate tax purposes, that also includes real property not encumbered by this Deed of Trust;

(vi) no Leases or Lease Guaranties are in effect other than the Existing Leases and any Lease Guaranties, all of the Existing Leases and such Lease Guaranties are presently in effect, no default exists under any of the Existing Leases or such Lease Guaranties;

(vii) the Land has frontage on, and direct access for ingress from and egress to, physically open, public and dedicated street(s), as described in a survey submitted to Beneficiary in connection with the Loan,

(viii) electric, gas, sewer, water and telephone facilities and any and all other necessary utilities at all times hereafter shall be, available in sufficient capacity to service the Property until the Indebtedness shall have been paid in full, and any easements legally

required to assure the continuation of such utility service to the Property have been obtained and duly recorded, and

(ix) the Property and its current use comply with the Permitted Exceptions, with all other applicable agreements and restrictive covenants, if any, (including all insurance policies maintained with respect to the Property) and with all applicable laws, ordinances, rules, regulations, orders, judgments, injunctions and decrees (collectively, "**Governmental Requirements**") (including all zoning and subdivision ordinances and building codes and all Environmental Laws, as hereinafter defined), and all licenses, permits, approvals and authorizations required in connection therewith have been duly obtained and are in effect

(b) Grantor also represents, warrants and covenants that

(i) Grantor is a duly organized and validly existing limited liability company under the laws of the State of Delaware and is authorized to transact business in the State of West Virginia

(ii) Grantor has duly obtained all licenses, permits, approvals and authorizations, and has duly completed all filings, required for the conduct of its business, and all such licenses, permits, approvals, authorizations and filings are in effect,

(iii) Grantor has good right, full power and lawful authority, without the joinder or consent of any person, to grant, convey, pledge and assign the Property pursuant to and as provided in this Deed of Trust, and Grantor will maintain and preserve the lien of this Deed of Trust until the Indebtedness shall have been paid in full,

(iv) all necessary company action has been taken to make and constitute the applicable Loan Documents, and the applicable Loan Documents do constitute, legal, valid and binding obligations, enforceable in accordance with their respective terms, subject to the effect of Insolvency Laws and other laws affecting creditors' rights generally,

(v) there are no provisions in any indenture, contract, agreement or other document or instrument affecting Grantor, or to which Grantor is a party or by which Grantor or Grantor's properties are bound, which prohibit or limit Grantor's keeping, performance and observance of, or Grantor's compliance with, any provisions set forth in the Loan Documents, and such actions by Grantor will not violate any Governmental Requirement presently in effect or the adoption, issuance or imposition of which is known to Grantor to be presently under consideration,

(vi) no bankruptcy or insolvency cases or proceedings are pending, or to the actual knowledge of Grantor contemplated, by or against Grantor, or any co-maker, endorser, surety or guarantor (if any) of the Note or of all or any part of the Indebtedness (any and all present or future co-maker(s), endorser(s), surety(ies) and guarantor(s) being referred to in this Deed of Trust, individually and collectively, as "**Guarantor**"),

(vii) As of the date hereof and to the actual knowledge of Grantor, there are no actions, suits or proceedings pending, threatened, against or affecting Grantor, any

Guarantor or the Property in any court or before any governmental authority, nor is Grantor, or to the actual knowledge of Grantor, any Principal or any Guarantor, in default with respect to any order of any court or governmental authority, except as to those matters expressly disclosed by Grantor in writing to Beneficiary prior to the execution of this instrument For purposes hereof, the term "**Principal**" shall mean any individual who is an ultimate beneficial owner of the Grantor or who exerts ownership or management control over the Grantor;

(viii) Other than existing defaults specified in the Forbearance Agreement and the existing events of default as it relates only to the Grantor disclosed to Beneficiary prior to the date hereof, Grantor has not received any notice of default, or any notice of the existence of any state of facts which, with notice or the passage of time, or both, would constitute a default if not cured or corrected, under any document or instrument evidencing or securing any indebtedness of any of them, which default or state of facts, if it were to become a default, would have a material adverse effect on the Property or the Loan Documents,

(ix) to the best of Grantor's knowledge, all reports, statements and other data furnished to Beneficiary by Grantor are accurate and complete in all material respects and do not fail to state any fact or circumstance necessary to make the statements contained therein not misleading, and no material adverse change (including the incurring of any indebtedness not approved by Beneficiary) has occurred in their respective financial conditions since the dates of their respective financial statements most recently furnished to Beneficiary,

(x) Grantor is not a "foreign person" within the meaning of Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended, or any other pertinent provision of said Code; and

(xi) (A) Grantor is not and, during the term hereof, will not be an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), or other retirement arrangement which is subject to Title I of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended (the "**IRC**"), (B) none of Grantor's assets constitute or, during the term hereof, shall constitute "plan assets" of one or more such plans or arrangements for purposes of Title I of ERISA or Section 4975 of the IRC, (C) Grantor is not, and will not be a "government plan" within the meaning of Section 3(32) of ERISA, and (D) the Loan will not be subject to West Virgina state statutes applicable to Grantor regulating investments of, and fiduciary obligations with respect to, governmental plans within the meaning of Section 3(32) of ERISA

(c) RESERVED.

(d) As used in this Deed of Trust, the term "**Environmental Law**" means any present or future Governmental Requirement relating to Hazardous Substances, contamination or other pollution or relating to environmental protection, cleanup or remediation (including, but not limited to. the Clean Air Act, as amended, 42 U S C Section 7401 et seq , the Occupational Safety

and Health Act, as amended, 29 U.S C. Section 651 et seq., the Emergency Planning and Community Right-to-Know Act of 1986, as amended, 42 U S C Section 11001 et seq , the Mine Safety and Health Act of 1977, as amended, 30 U S C. Section 801 et seq., the Safe Drinking Water Act, as amended, 42 U S C Section 300f et seq , the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, collectively "**CERCLA**"), 42 U S C Section 9601 et seq ; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S C. Section 6901, et seq , the Federal Water Pollution Control Act, as amended, 33 U S C Section 1251 et seq ; the Toxic Substances Control Act, as amended, 15 U S.C Section 2601, et seq., and the Hazardous Materials Transportation Act, as amended, 49 U S C. Section 5101 et seq , all amendments and supplements thereto, all administrative interpretations thereof and any official publication promulgated or issued pursuant thereto, and all other comparable state and local laws, administrative orders, regulations, and interpretations promulgated thereunder.

(e) As used in this Deed of Trust, the term "**Hazardous Substances**" means (i) any and all petroleum products, natural gas liquids, asbestos (whether or not friable) and asbestos-containing materials, urea formaldehyde foam insulation, polychlorinated biphenyls and lead-containing materials, (ii) any and all other pollutants, contaminants and other toxic, harmful or hazardous wastes, substances or materials (A) which, because of their quantitative concentration, chemical, radioactive, flammable, explosive, infectious or other characteristics, constitute or contribute to (or might reasonably be expected to constitute or contribute to) a danger or hazard to public health, safety or welfare or to the environment, (B) the removal of which may be required by any Environmental Law, or (C) the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use disposal, release, discharge, spillage, seepage or filtration of which is or shall be restricted, regulated, prohibited or penalized by any Environmental Law, including, without limitation, any substances which are "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances," "wastes," "regulated substances," "industrial solid wastes," or "pollutants" under Environmental Law, as described above, and/or other applicable environmental laws, ordinances and regulations, (iii) any chemical known to cause cancer or reproductive toxicity, the exposure to which is limited or regulated by any governmental authority having jurisdiction over human health and safety, natural resources or the environment, because of such chemical's quantity, concentration, or physical chemical characteristics, or (iv) toxic mold

**1.3** <u>**RESERVED**</u>

**1.4** <u>**Compliance with Requirements**</u>. Grantor shall cause the Property and the use thereof to comply at all times with the Permitted Exceptions, with all other applicable agreements and restrictive covenants, if any (including all insurance policies maintained with respect to the Property) and with all applicable Governmental Requirements (including all zoning and subdivision ordinances and building codes and all Environmental Laws), whether now or hereafter in effect Grantor shall obtain and maintain all licenses, permits, approvals, authorizations and filings from time to time required in connection with the Property and the use thereof

**1.5** <u>**Discharge of Liens**</u>. If any mechanic's, laborer's, materialman's, statutory or other lien or any other security interest, charge or encumbrance (other than the Permitted Exceptions, any lien for Impositions (as hereinafter defined) not yet due and payable or any lien for Impositions

being contested and remaining unpaid in accordance with Section 1 6) shall be filed or otherwise imposed upon or against all or any part of the Property, then Grantor shall, within thirty (30) days after being given notice of (or otherwise becoming aware of) such filing or Imposition, cause such lien, security interest, charge or encumbrance to be vacated or discharged of record by payment, deposit, bond, final order of a court of competent jurisdiction or otherwise, provided however, Grantor shall have the right to actively contest any such mechanic's, laborer's, materialmen's, statutory or other lien or encumbrance provided same is properly bonded If any such lien, security interest, charge or encumbrance shall not be so vacated or discharged, then, in addition to any other right or remedy of Beneficiary, Beneficiary shall be entitled, but shall not be obligated, to discharge such lien, security interest, charge or encumbrance in such manner as Beneficiary may select, and Beneficiary shall be entitled, if Beneficiary shall so elect, to compel the prosecution of an action for the foreclosure of such lien, security interest, charge or encumbrance by the lienor and to pay the amount of any judgment in favor of such lienor, with interest, costs and allowances Within thirty (30) days of Beneficiary's request, Grantor shall reimburse Beneficiary for all such payments and for reasonable costs, expenses and liabilities (including reasonable attorneys' fees) incurred by Beneficiary or Trustee in connection therewith, together with interest thereon at the Default Rate (as hereinafter defined) from the date paid or incurred by Beneficiary until the date of such reimbursement

**1.6 <u>Taxes Affecting Property</u>.**

(a) Grantor shall pay or cause to be paid, on or before the last day when they may be paid without interest, penalty or increase (except to the extent otherwise provided in paragraph (b) of this Section), all taxes, assessments, rates, dues, charges, fees, levies, excises, duties, fines, impositions, liabilities, obligations and encumbrances, general or special, ordinary or extraordinary, foreseen or unforeseen, of every kind whatsoever, now or hereafter imposed, levied or assessed by any public or quasi-public authority or instrumentality upon or against all or any part of the Property or the use, occupancy or possession thereof, or upon or against this Deed of Trust, the Indebtedness or the interest of Beneficiary or Trustee in the Property, as well as all income taxes, assessments and other governmental charges imposed, levied or assessed upon or against Grantor or in respect of all or any part of the Property, and any and all interest, costs and penalties on or with respect to any of the foregoing (collectively, the "**Impositions**") Upon Beneficiary's request, Grantor shall deliver to Beneficiary copies of original receipts or other satisfactory proof of payment of any and all Impositions, unless Beneficiary is escrowing for said Impositions

(b) After prior written notice to Beneficiary, Grantor shall have the right, at its sole expense, to contest the validity, applicability or amount, in whole or in part, of any asserted Imposition and to seek a reduction in the valuation of all or any part of the Property as assessed for tax purposes, by appropriate proceedings diligently conducted in good faith to final determination, but only after payment of the asserted Imposition, unless such payment would operate as a bar to such contest or would interfere materially with the prosecution of such contest, in which event payment of the asserted Imposition may be postponed if, and only so long as

(i) Grantor provides not less than thirty (30) days' prior written notice to Beneficiary of Grantor's intent to contest any asserted Impositions,

(ii) Grantor shall have paid any minimum amount required by applicable law to be paid in connection with such contest (which payment may be made under protest if required or permitted by applicable law),

(iii) neither Beneficiary nor Trustee would, in Beneficiary's sole judgment, be in danger of being subjected to any liability, penalty or charge of any kind in connection with such contest or in connection with such postponement or nonpayment,

(iv) neither the Property nor any part thereof or any interest therein would, in Beneficiary's sole judgment, be in danger of being forfeited or lost by reason of such contest or by reason of such postponement or non-payment (whether due to the foreclosure of any lien securing any asserted Imposition or otherwise), and

(v) Grantor shall have established an escrow acceptable to Beneficiary in an amount estimated by Beneficiary to be adequate to cover (A) the unpaid amount of the asserted Imposition, (B) all interest, penalties and similar charges which reasonably can be expected to accrue by reason of such contest or by reason of such postponement or nonpayment, and (C) all costs, fees and expenses (including attorneys' fees) that reasonably can be expected to be incurred in connection therewith by Beneficiary or Trustee, which escrow shall be maintained in effect throughout such contest and the amount of which shall be increased from time to time if required by Beneficiary

(c) Upon termination of any such contest (whether by entry of a final judgment or otherwise), or at any time during the course of any such contest when the conditions permitting postponement of payment of the asserted Imposition are no longer satisfied or are discovered to be unsatisfied, Grantor shall pay the then-unpaid portion of such asserted Imposition, together with all interest, penalties and similar charges and all costs, fees and expenses (including attorneys' fees) incurred in connection therewith At Grantor's option, the escrow established pursuant to paragraph (b) of this Section may be applied at such time to payment of all or any part of such Imposition, interest, penalties, charges, costs, fees and expenses Upon payment of the full amount of such asserted Imposition and such interest, penalties, charges, costs, fees and expenses, Grantor shall deliver to Beneficiary evidence of such payment Thereafter, the amount then remaining in the escrow established pursuant to paragraph (b) of this Section shall be promptly returned to Grantor

(d) Grantor shall not claim, demand or be entitled to receive any reduction of, or credit toward, any Impositions on account of the Indebtedness No deduction shall be claimed from the taxable value of all or any part of the Property by reason of the Indebtedness, any of the Loan Documents or the interest of Beneficiary or Trustee in the Property

**1.7 <u>Taxes Affecting Beneficiary's or Trustee's Interest</u>.**

(a) If existing laws or procedures governing the taxation of mortgages, deeds of trust or debts secured by mortgages or deeds of trust shall be changed in any manner after the date hereof so as to impair the security of this Deed of Trust or to reduce the net income to Beneficiary in respect of the Indebtedness, then, upon Beneficiary's request, Grantor shall pay to Beneficiary or to the taxing authority (if so directed by Beneficiary) all taxes, charges and related

costs for which Beneficiary may be liable as a result thereof; provided, however, that, if (in Beneficiary's reasonable opinion) payment by Grantor of any such taxes, charges or related costs is prohibited by applicable law or would subject Beneficiary or Trustee to any liability, penalty or charge of any kind or would render the Note usurious, then, in any such event, Grantor shall not make such payment, and the entire balance of the Indebtedness, without notice, shall be due and payable forthwith at the option of Beneficiary Notwithstanding the foregoing, Grantor shall not be liable for the payment of any income tax to be paid by Beneficiary or as a result of any increase in the income tax rate applicable to Beneficiary

(b) Grantor shall pay, when due, any and all recording, intangible property and documentary stamp taxes, all similar taxes, and all filing, registration and recording fees, now or hereafter payable in connection with the Indebtedness, this Deed of Trust or any of the other Loan Documents Grantor shall pay, when due, any and all excise, transfer and conveyance taxes now or hereafter payable in connection with the Indebtedness, this Deed of Trust or any of the other Loan Documents or in connection with the exercise or enforcement of Beneficiary's rights, powers, privileges and remedies with respect thereto. Without limiting the generality of the foregoing, Grantor shall pay, when due, any and all such taxes payable in connection with any foreclosure of this Deed of Trust, any sale pursuant to the power of sale provided under this Deed of Trust, any so-called deed in lieu of foreclosure of this Deed of Trust, any transfer of all or any part of the Property (or any interest therein) pursuant to the Bankruptcy Code or any other Insolvency Law or any other transfer of all or any part of the Property (or any interest therein) in extinguishment or satisfaction of all or any part of the Indebtedness or any related obligations of Grantor Any such foreclosure (whether judicial or, to the extent permitted by law, non-judicial), sale, deed in lieu or other transfer is sometimes referred to in this Deed of Trust as a "**Foreclosure** " The purchaser, grantee or other person succeeding to ownership of all or any part of the Property (or any interest therein) pursuant to any Foreclosure is sometimes referred to in this Deed of Trust as the "**Subsequent Owner** "

**1.8 Insurance.**

(a) Grantor, at its sole expense, shall obtain for, deliver to, assign to, and maintain an insurance policy identifying the Beneficiary as an additionally insured party for so long as this Deed of Trust shall remain in effect, insurance policies (including renewals as provided below) in such amounts as Beneficiary may reasonably require, insuring the Property against all insurable hazards, casualties and contingencies (including, but not limited to, loss of rentals, business interruption, earthquake and terrorism and during the construction of the Project, Builder's Risk) as Beneficiary may reasonably require Grantor shall pay all premiums on such insurance policies and all other fees and charges payable in connection with such insurance policies (such premiums, fees and charges being collectively referred to in this Deed of Trust as "**Insurance Premiums**") not later than the due date thereof During the progress of any construction, renovation, restoration or repair in or on the Property, Grantor shall maintain such insurance in builder's risk, completed value, non-reporting form, with permission to complete and occupy, together with workers' compensation coverage All such policies shall be issued by a company or companies reasonably acceptable to Beneficiary, shall be in form reasonably acceptable to Beneficiary and shall contain such provisions and endorsements as Beneficiary may reasonably require Without limiting the generality of the foregoing, each such policy shall contain noncontributory standard mortgagee and lender's loss payable endorsements making all losses

payable to Beneficiary, shall provide that no act or omission of Grantor shall invalidate such policy as against Beneficiary and shall provide that such policy shall not be canceled, terminated, denied renewal or materially altered without at least thirty (30) days' prior written notice to Beneficiary Certificates of insurance with respect to all such policies and (if requested by Beneficiary) duplicate originals of all such policies shall be delivered to Beneficiary At least thirty (30) days prior to the expiration date of each such policy, a replacement or renewal of such policy reasonably satisfactory to Beneficiary shall be delivered to Beneficiary. At least thirty (30) days prior to the expiration date of each such policy (including each such renewal), Grantor shall deliver to Beneficiary a satisfactory receipt evidencing the prepayment of all Insurance Premiums relating to such policy for a period of not less than one (1) year In the event of any Foreclosure, all right, title and interest of Grantor in and to all such policies then in force shall pass to the Subsequent Owner Beneficiary's acceptance or approval of any insurer or of any insurance coverage shall not be construed as a representation, warranty or agreement concerning the financial capability or reliability of such insurer or concerning the adequacy of such coverage for any purpose other than compliance with the requirements of this Section, and Beneficiary shall not be responsible or accountable to Grantor or any other person for the selection of any such insurer or any such coverage

(b) Grantor, at its sole expense, shall obtain for, deliver to, and maintain for the benefit of Beneficiary, for so long as this Deed of Trust shall remain in effect, liability insurance policies relating to the Property, in such amounts, with such companies and in such form as Beneficiary may reasonably require Each such policy shall name Beneficiary as an additional insured and shall provide that such policy may not be cancelled, terminated, denied renewal or materially altered without at least thirty (30) days' prior written notice to Beneficiary. Grantor shall pay all premiums on such insurance policies when due and, promptly thereafter, shall deliver to Beneficiary satisfactory evidence of such payment.

(c) Grantor shall not carry, and shall not cause, permit or suffer to be carried, any additional or separate insurance concurrent in form or contributing in the event of loss with any insurance required to be maintained pursuant to this Deed of Trust, or in excess of the amounts of insurance coverage required to be maintained pursuant to this Deed of Trust, unless such insurance shall comply with the provisions of this Section (including the loss payable provisions set forth above) Grantor shall immediately notify Beneficiary if any such additional, separate or excess insurance shall be carried and, promptly thereafter, shall deliver to Beneficiary duplicate originals of all policies of such insurance (including all renewals thereof).

**1.9 Payment of Impositions.**

(a) In order to assure compliance with Grantor's obligations under Section 1 6, but not in lieu of such obligations, Grantor shall pay to Beneficiary (or Beneficiary's loan correspondent, if any), upon Beneficiary's request, annual Impositions, next becoming due and payable (as estimated or determined by Beneficiary), but only after Grantor's failure to maintain and timely pay said obligation In addition, upon Beneficiary's request, Grantor shall pay to Beneficiary (or Beneficiary's loan correspondent, if any) such additional funds as Beneficiary may estimate or determine to be necessary to enable Beneficiary (or Beneficiary's loan correspondent,

if any) to pay any Impositions then due and payable or to pay, when due, any or all of the Impositions next becoming due and payable after the date of such request

(b) No payments paid in advance to Beneficiary pursuant to this Section shall be deemed to be trust funds, and any and all such payments may be commingled with the general funds of Beneficiary No interest shall be required to be paid to Grantor in respect of any such payments Grantor shall deliver to Beneficiary, promptly after the receipt thereof, all bills for Impositions for which Beneficiary shall have collected, or shall be collecting, payments in advance pursuant to this Section Grantor also shall deliver to Beneficiary, upon Beneficiary's request or at such other time or times as may be required, any and all other documents and instruments that may be required to enable Beneficiary to pay such Impositions when due (or in the case of real property taxes, the date on which the taxes would become delinquent if not paid) Grantor further acknowledges that Beneficiary may, in its sole discretion, engage the services of a tax service company to verify the status of taxes and assessments on the Property Grantor shall promptly reimburse Beneficiary for the reasonable costs of said tax service company In the event Beneficiary pays any Imposition, Beneficiary shall be entitled to rely, notwithstanding whether or not Beneficiary engages a tax service company, upon any certificate, advice or bill from any authority (or any official thereof) or from any other person to which such Imposition may be payable, and Beneficiary shall have no duty to inquire as to the validity or accuracy of any such certificate, advice or bill or to make any protest in connection with any such payment or any such certificate, advice or bill Upon the occurrence of any Event of Default, Beneficiary, at its option, may apply all or any part of any such payments then remaining to Grantor's credit, in such manner as Beneficiary may determine, to reduce the Indebtedness then outstanding

(c) Nothing contained in this Section shall be deemed to affect any right, power, privilege or remedy of Beneficiary or Trustee, under any provision of this Deed of Trust or under any statute or rule of law, to pay any amount required to be paid by Section 1 6 or Section 1 8, to add the amount so paid to the Indebtedness and to require Grantor to reimburse Beneficiary for such amount, together with interest thereon at the Default Rate from the date so paid until the date so reimbursed Although Beneficiary intends to use reasonable efforts to make payments in a timely fashion with any payments collected pursuant to this Section, the arrangements described in this Section are solely for the added protection of Beneficiary and shall entail no responsibility on Beneficiary's part beyond the allowing of due credit, without interest, for payments actually received by Beneficiary In the event of any transfer of Grantor's right, title and interest in or to all or any part of the Property, Beneficiary shall be entitled to treat such transfer as also effecting an assignment to the transferee of all right, title and interest of Grantor in and to any and all such deposits relating to the transferred portion of the Property, subject, however, to the rights of Beneficiary under this Deed of Trust After any assignment by Beneficiary of its interest in this Deed of Trust, any such payments on hand shall be turned over to the assignee or returned to Grantor, and all responsibility of Beneficiary with respect to such deposits shall terminate

**1.10 <u>Casualty and Condemnation</u>.**

(a) Grantor shall promptly notify Beneficiary, in writing, of (i) the occurrence of any fire, casualty, damage or loss of the type covered (or required to have been covered) by any insurance policy relating to all or any part of the Property (any such occurrence being referred to in this Deed of Trust as a "**Casualty**"), other than any Minor Casualty (as hereinafter defined) not

involving loss of life or serious bodily injury, (ii) Grantor's receipt of any notice of any contemplated, threatened or pending Condemnation Proceeding, (iii) the commencement of any Condemnation Proceeding, and (iv) the occurrence of any Taking Thereafter, Grantor shall cooperate with Beneficiary in evaluating the nature and extent of such event and shall promptly provide Beneficiary with such information concerning such event as Beneficiary may request As used in this Deed of Trust, the term "**Minor Casualty**" means any Casualty that could not reasonably be expected to yield Compensation from any insurance policy in an amount greater than $100,000 and which could not reasonably be expected to require the expenditure of more than $100,000 in restoration, repair and replacement costs

(b) Beneficiary may make proof of loss with respect to any Casualty (other than any Minor Casualty) if Grantor shall not have done so promptly after the occurrence of such Casualty Grantor hereby irrevocably authorizes and appoints Beneficiary the agent and attorney-in-fact of Grantor, at Beneficiary's option, to (i) adjust or compromise the loss arising from any Casualty, (ii) commence, appear in and prosecute in its own or Grantor's name any Condemnation Proceeding and settle or compromise any claim in connection therewith, (iii) collect and receive all Compensation in respect of any Casualty (other than a Minor Casualty), Condemnation Proceeding or Taking, and (iv) give proper receipts and acquittances for all Compensation so collected and received Such appointment includes full power of substitution and shall be deemed to be coupled with an interest and such appointment shall be irrevocable so long as any Indebtedness remains outstanding Grantor shall promptly deliver to Beneficiary any and all documents, instruments and authorizations that Beneficiary may reasonable request (and in Grantor's possession or control) to enable Beneficiary to take any such action If Beneficiary shall not elect to prosecute any Condemnation Proceeding as provided above, then Grantor, at its sole expense, shall prosecute such Condemnation Proceeding diligently and in good faith and shall consult with Beneficiary and keep Beneficiary fully informed in connection therewith Beneficiary shall have the right, at its option, to participate in such Condemnation Proceeding

(c) Each insurer issuing any insurance policy maintained pursuant to this Deed of Trust or otherwise relating to the Property is hereby irrevocably authorized and directed to pay all Compensation payable in connection with any Casualty (other than a Minor Casualty) directly to Beneficiary alone (and not to Grantor, Beneficiary and any other person or persons jointly) Grantor shall take all steps necessary to assure that all Compensation payable in connection with any Casualty (other than a Minor Casualty), Condemnation Proceeding or Taking shall be paid to Beneficiary alone (and not to Grantor, Beneficiary and any other person or persons jointly), and that all such Compensation at all times shall be free and clear of any and all liens, security interests, charges, encumbrances and claims of other persons, of any kind whatsoever Grantor shall promptly pay over to Beneficiary any such Compensation received by Grantor, except as contemplated by paragraph (d) of this Section Grantor hereby irrevocably authorizes and appoints Beneficiary as Grantor's attorney-in-fact to endorse Grantor's name on any instrument in payment of any such Compensation, which appointment includes full power of substitution and shall be deemed to be coupled with an interest and such appointment shall be irrevocable so long as any Indebtedness remains due and owing Although Beneficiary intends to use reasonable efforts to collect such Compensation in a timely fashion, Beneficiary shall not be responsible for any failure to collect such Compensation After any event giving rise to the payment of Compensation, Grantor shall continue to pay interest, at the applicable rate and at the times provided in the Note, on the entire outstanding principal amount of the Indebtedness

(d) No Compensation received by Beneficiary as contemplated by this Section shall be deemed to be trust funds, and any and all such Compensation may be commingled with the general funds of Beneficiary. No interest shall be required to be paid to Grantor in respect of any such Compensation After deducting from such Compensation any reasonable expenses (including reasonable attorneys' fees) incurred by Beneficiary in connection with the collection or handling of such Compensation (including any expenses incurred in the adjustment or compromise of any loss and any expenses incurred in connection with any Condemnation Proceeding), Beneficiary may apply such net Compensation, in such manner as Beneficiary may determine in accordance with customary construction loan practices, either toward restoring or repairing the Improvements or building new Improvements in their place or to reduce the Indebtedness then outstanding, whether then matured or to mature in the future Alternatively, Beneficiary, at its option, may pay over to Grantor from time to time all or any part of such net Compensation for the purpose of restoring or repairing the Improvements or building new Improvements in their place, or for any other purpose satisfactory to Beneficiary, without affecting the lien of this Deed of Trust as security for the full Indebtedness secured by this Deed of Trust before such payment to Grantor took place Notwithstanding the foregoing, after deducting expenses as provided above, Beneficiary shall, if requested by Grantor within thirty (30) days after Beneficiary's receipt of such Compensation, make such net Compensation available for restoring or repairing the Improvements or building new Improvements in their place, all in accordance with terms, conditions and procedures customarily followed by prudent institutional lenders in making construction loans in similar amounts and in accordance with such other terms, conditions and procedures as Beneficiary may require to assure the proper application of such Compensation and the continuing performance by Grantor of its obligations under the Loan Documents, provided (i) no Event of Default shall then exist beyond any applicable notice and cure period and no state of facts shall then exist which, with notice or the passage of time, or both, would constitute an Event of Default if not cured or corrected, (ii) Beneficiary shall be reasonably satisfied that such net Compensation, together with any additional funds made available for such purpose by Grantor and deposited with Beneficiary, or with a depository acceptable to Beneficiary pursuant to instructions acceptable to Beneficiary, shall be sufficient to restore or repair the Improvements or build new Improvements in their place, as the case may be, in accordance with the budget and plans and specifications approved by Beneficiary, free and clear of any and all liens, security interests, charges and encumbrances, except the lien of this Deed of Trust and any other liens expressly permitted pursuant to this Deed of Trust, (iii) Beneficiary shall be satisfied that such restoration, repair or rebuilding can be completed within any applicable time limit imposed by law or agreement, (iv) Beneficiary shall be satisfied, in its sole discretion, that, after such restoration, repair or rebuilding (taking into account the status of leasing of the Property and any restrictions imposed by law or agreement on such restoration, repair or rebuilding or on the use of the Property after such restoration, repair or rebuilding), the remaining Property shall constitute adequate security for the Indebtedness, and (v) the Rents, together with the proceeds of any business interruption insurance, exceed the sum of (x) the amount necessary to service the monthly debt service of the Loan, and (y) the amount of the operating expenses of the Property, until such time as the Improvements are restored, repaired or rebuilt and Rents will thereafter exceed said amounts

**1.11 <u>Care and Management of Property</u>.**

(a) Grantor shall keep the Property (or cause the Property to be) in good and safe condition and repair and in working order (ordinary wear and tear excepted and subject to the

right to restore and repair after a Casualty) and shall cause all repairs, replacements and improvements to be made as and when required to keep the Property in such condition and repair and in working order. Grantor shall not threaten, cause, permit or suffer (i) any abandonment or waste of all or any part of the Property or any material impairment or deterioration of all or any part of the Property, (ii) the conduct of any nuisance in or on the Property, or (iii) any act or omission that would materially increase the risk that any Casualty could occur Grantor shall pay or cause to be paid, when due, all charges for utilities serving or intended to serve the Property, as well as all assessments and charges payable from time to time under the Permitted Exceptions or any other agreements or covenants, whether public or private, affecting the Property

(b) Grantor hereby authorizes Beneficiary, or any agent, independent contractor or other representative of Beneficiary, upon reasonable and advanced written notice to Grantor and subject to the rights of tenants under any Leases, to enter upon the Property (and Grantor may at its option have a representative of Grantor accompany the Beneficiary for such site visits or audits) for the purpose of examining and copying the books and records of Grantor and the property manager related to the Property and for performing, or causing to be performed (i) non-invasive environmental inspections of the Property (including, but not limited to, the investigations and testing necessary to conduct and complete Phase I investigations), (ii) engineering and structural inspections, testing, investigations and analysis, (iii) property valuation appraisals, and (iv) any other acts that Beneficiary is expressly authorized to perform under the terms of this Deed of Trust All costs and expenses incurred by Beneficiary in the exercise of its rights under this subsection shall be paid by Beneficiary, provided that if (1) Beneficiary has a good faith basis for suspecting that a deterioration in the physical condition of the Property has or is occurring, or (2) Beneficiary has a good faith basis for suspecting that there are Hazardous Substances present on, or are otherwise being handled or discharged from, the Property in violation of applicable law, or (3) the examination of such books and records reveals that any financial information submitted to Beneficiary is incorrect, incomplete or misleading in any material respect or (4) an Event of Default hereunder or under the Loan Documents exists and remains uncured, then the costs and expenses of such inspection shall be secured by this Deed of Trust and shall be payable by Grantor upon written demand

(c) If the Property shall be physically damaged or destroyed by any Casualty or other cause, then Grantor shall promptly give written notice of such damage or destruction to Beneficiary. Thereafter, Grantor shall promptly commence and diligently pursue to completion the restoration or repair of the Property to the equivalent or better of its condition immediately prior to such damage or destruction (or, in the case of any Taking, to such condition as shall be reasonably satisfactory to Beneficiary), whether or not there shall be any Compensation therefor

(d) No work required to be performed pursuant to this Section (other than routine maintenance and repairs) shall be undertaken until plans and specifications for such work, have been prepared and signed by an architect or engineer satisfactory to Beneficiary, have been approved by all governmental authorities whose approval is required, and have been submitted to and approved in writing by Beneficiary

(e) No part of the Improvements shall be removed, demolished or materially altered, without the prior written consent of Beneficiary Notwithstanding the foregoing, Grantor shall have the right, without the consent of Beneficiary, to remove and dispose of, free from the

lien of this Deed of Trust, items of Equipment that have become worn out or obsolete, <u>provided, however</u>, that, either simultaneously with or prior to such removal or disposition, each such item shall be replaced with another item or items of equal utility and of a value at least equal to that of the replaced item when first acquired, which item or items shall be owned by Grantor and shall be free from any lien, security interest, charge, encumbrance, ownership interest or other right or claim of any other person By such removal and replacement, Grantor shall be conclusively deemed to have elected to subject said replacement item to the lien of this Deed of Trust

(f) The Property shall at all times be managed by Grantor, or by such other management company as may be reasonably approved in writing by Beneficiary in its sole discretion Such management shall be conducted pursuant to and in accordance with a management agreement approved in writing by Beneficiary. Such management agreement shall not be materially amended, terminated or canceled without the prior written consent of Beneficiary, which approval shall not be unreasonably withheld, conditioned or delayed Notwithstanding anything to the contrary contained herein, Beneficiary shall have the right to require a change in the property manager upon the occurrence of an Event of Default Payments due under any management agreement after an Event of Default shall be subordinate to the payments becoming due under the Loan Documents

**1.12 <u>Use of Property</u>.**

(a) The Property shall be used as a coal-fired power plant only (along with related amenities), and for no other purpose except as otherwise permitted by Beneficiary in its sole discretion Without limiting the generality of the immediately preceding sentence, Grantor shall not cause, permit or suffer any drilling or exploration for, or extraction, removal or production of, oil, gas or minerals from the surface or subsurface of the Land Grantor shall not declare, advertise or market all or any part of the Property as an existing or proposed condominium, cooperative or other common interest community

(b) Grantor shall not, without the prior written consent of Beneficiary, to be granted or withheld in Beneficiary's sole discretion, (i) request or otherwise initiate, consent to or acquiesce in any zoning classification or reclassification of the Property or the adoption, issuance, imposition or amendment of any other Governmental Requirement relating to the use, occupancy, operation, development or disposition of the Property, (ii) request or otherwise initiate, consent to or acquiesce in the annexation of all or any part of the Property by or into any municipality or other governmental or quasi-governmental unit, or (iii) execute, file or record any subdivision plat affecting the Property or request or otherwise initiate, consent to or acquiesce in any subdivision affecting the Property

(c) Grantor shall not, without the prior written consent of Beneficiary, to be granted or withheld in Beneficiary's sole discretion (i) enter into, consent to or otherwise cause, permit or suffer the Property to become subject to any covenant, agreement or other arrangement restricting or limiting the use, occupancy, operation, development or disposition thereof, (ii) execute, file or record any map, plat or replat affecting the Property, or (iii) except as otherwise specifically permitted pursuant to this Deed of Trust, cause, permit or suffer the Property to become subject to any easement, right-of-way, privilege, claim, franchise, license or profit or any other estate, interest, benefit, power or right

(d) Grantor shall not cause, permit or suffer the Property to be used by the public without restriction or in any manner that might tend to impair Grantor's right, title and interest in and to all or any part of the Property or in any manner that might make possible any claim of adverse usage or adverse possession by the public or any claim of implied dedication of all or any part of the Property

(e) If, pursuant to any Governmental Requirement, the existing or any future use, occupancy or operation of the Property is or shall be permitted only so long as such use, occupancy or operation shall continue, then Grantor shall not cause, permit or suffer such use, occupancy or operation to be discontinued without the prior written consent of Beneficiary

**1.13 <u>Leases</u>.**

(a) Grantor shall keep, perform, observe and comply with all of its obligations as landlord under all Leases from time to time in effect, and Grantor shall use its commercially reasonable efforts to require the Tenant under each Lease to keep, perform, observe and comply with Tenant's obligations thereunder Upon request, Grantor shall deliver to Beneficiary accurate and complete original or certified copies of all Leases and all amendments thereto

(b) Without in any way limiting the foregoing, any new Lease executed and/or agreed upon by Grantor subsequent to the execution of this Deed of Trust, or any amendment, renewal, extension, modification, or other change to any Existing Lease, shall be in writing and subject to the approval of the Beneficiary, which approval may be withheld in its sole and absolute discretion.

(c) Grantor shall not, without the prior written consent of Beneficiary, to be granted or withheld in Beneficiary's sole and absolute discretion (i) accelerate or accept the payment of Rents under any Lease more than thirty (30) days in advance of the due date thereof, or (ii) grant any reduction, deferral or abatement of the Rents payable under any Lease Grantor shall hold all such security deposits and advance payments as trust funds for the benefit of Tenants and subsequent owners and operators of the Property.

(d) Neither the assignment of the Leases and the Lease Guaranties under this Deed of Trust nor any acts or omissions of Beneficiary or Trustee in connection therewith shall be deemed or construed to (i) cause Beneficiary or Trustee to be or to become a mortgagee-in-possession of the Property, (ii) impose upon Beneficiary or Trustee any obligations, duties or liabilities of Grantor under or in respect of any Lease or any Lease Guaranty (including any liability under any covenant of quiet enjoyment in the event that any Tenant shall have been barred and foreclosed as a result of any Foreclosure), or (iii) impose on Beneficiary any responsibility for the control, management, operation, care, repair or maintenance of the Property, for any waste or dangerous or defective condition of the Property or for any environmental contamination of or emanating from the Property Without limiting or otherwise affecting the foregoing, Grantor shall assign to Beneficiary (if so directed by Beneficiary), as additional security for the Indebtedness, by a written document approved by Beneficiary, all right, title and interest (presently, absolutely, and unconditionally and not merely collaterally) of Grantor in and to any and all Leases and Lease Guaranties then in effect, together with all Rents payable or accruing thereunder as set forth below and further described in the Assignment of Leases

(e) Without limiting the generality of the foregoing, each Lease entered into on or after the date hereof, and any amendment, modification, renewal, or extension of any Existing Lease, and all rights of the Tenants thereunder, shall be subject and subordinate to this Deed of Trust, except to the extent, if any, such Lease or Leases shall be made superior to the lien of this Deed of Trust as provided for in this subsection (e). At any time and from time to time, Beneficiary or Trustee (acting at Beneficiary's request) may, by written notice to the Tenant under any Lease otherwise subordinate to the lien of this Deed of Trust, cause such Lease to be made superior to the lien of this Deed of Trust, subject to and in accordance with the terms of this paragraph, whether or not any such Lease shall have been entered into after the date hereof From and after such written notice, the Lease or Leases described therein shall be superior to the lien of this Deed of Trust and shall not be extinguished by any Foreclosure, provided, however, that the aforesaid subordination shall not apply to, and neither the lien of this Deed of Trust nor any of Beneficiary's rights under this Deed of Trust shall be subordinate to, (i) any purchase option or any first refusal, first offer or similar option set forth in any such Lease or entered into in connection therewith, (ii) any extension, renewal or similar option set forth in any such Lease or entered into in connection therewith (unless Beneficiary shall specifically agree to the contrary in writing), (iii) any modifications or amendments of any such Lease (unless Beneficiary shall specifically agree to the contrary in writing), or (iv) any lien, security interest, charge, encumbrance or other interest of any kind (other than the Lease or Leases specifically identified in such notice) in or on the Property (whether superior or subordinate to any such Lease or Leases), provided, further, that the aforesaid subordination shall not affect the priority of Beneficiary's rights under this Deed of Trust in and to any Compensation and shall not subject Beneficiary or any Subsequent Owner to liability for any act, omission, representation or warranty of Grantor or any other previous landlord under any Lease, to any offsets or defenses which the Tenant under any Lease might have against Grantor or any other previous landlord or to liability for return of any security deposits under any Lease

(f) At Beneficiary's option in Beneficiary's sole and absolute discretion, upon the occurrence and during the continuance of an Event of Default, Grantor shall deposit with Beneficiary or Beneficiary's mortgage loan correspondent (if any) all tenant security deposits or reasonable security (such as a letter of credit) therefore subject to and pursuant to the terms of the Leases with respect to such security deposits or security

**1.14 Assignment of Rents.**

(a) The assignment of the Rents and the Security under this Deed of Trust is intended to be and, to the fullest extent permitted by law, is an absolute and unconditional present assignment of the Rents and the Security, and not merely the grant or other creation of a lien or security interest in or on the Rents and the Security, provided, however, that Grantor shall be permitted and is hereby granted a revocable license, until the occurrence of any Event of Default which continues beyond any applicable notice and cure period, to collect the Rents as, but not before (except as permitted in Section 1 13(c)), they become due and payable subject to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Rents now or hereafter in effect, provided further, however, that, if a court of competent jurisdiction shall construe such assignment to be unenforceable or otherwise ineffective as an absolute and unconditional present assignment, then such assignment shall be deemed and construed to be a collateral assignment of the Rents and the Security, creating a lien and security interest therein which shall be deemed to have been perfected upon recording of this

Deed of Trust in the real estate records of the recording jurisdiction in which the Land is located. Neither the existence nor the exercise of such conditional permission shall cause such assignment or Beneficiary's interest in the Rents or the Security to be or to become subordinate to any other assignment by Grantor (whether absolute, conditional or otherwise) The assignment of the Rents and the Security under this Deed of Trust shall be fully operative without any further action by any person Upon written notice to Grantor, Beneficiary is hereby irrevocably authorized, at its option, to notify any and all Tenants, any and all Lease Guarantors and any and all other licensees, invitees, guests, customers, occupants and other users of the Property of the aforesaid assignment and the rights of Beneficiary with respect thereto, subject (if applicable) to Grantor's revocable license as described above Grantor hereby irrevocably consents to the entry upon and taking physical possession of the Property by Beneficiary in connection with the exercise of its rights with respect to the aforesaid assignment upon the occurrence of any of any Event of Default, whether or not any foreclosure or other enforcement action shall have been commenced. No exercise of any such rights shall cure, waive or invalidate any default, any Event of Default which exists beyond any applicable notice and cure period or any act done pursuant to this Deed of Trust or any of the other Loan Documents

(b) Upon the occurrence and during the continuance of any of any Event of Default, Beneficiary shall have the right, with or without taking possession of the Property, to demand, collect, receive and enforce payment of any and all Rents (including any Rents then past due and unpaid) directly from Tenants, Lease Guarantors and other licensees, invitees, guests, customers, occupants and users of the Property or, in the case of any such Rents thereafter paid to Grantor or any other person, from Grantor or such other person In addition, Beneficiary thereafter shall have the right to collect, hold, return and retain the Security and to give receipts, releases and satisfactions for any such Rents paid to Beneficiary or to any person designated by Beneficiary as provided below and for any Security collected by Beneficiary Without limiting the generality of the foregoing, at any time upon the occurrence of any Event of Default, Beneficiary shall have the right to make written demand on any Tenant, any Lease Guarantor or any such other licensee, invitee, guest customer, occupant or user, notifying such person that an Event of Default has occurred and directing such person to make all subsequent payments of Rents (including any Rents then past due and unpaid) directly to Beneficiary or to any person designated by Beneficiary in such demand Each such written demand shall be sufficient, without the necessity of any further direction or consent from Beneficiary, to warrant and require such Tenant, Lease Guarantor or other licensee, invitee, guest, customer, occupant or user to make all such payments directly to Beneficiary to any such person designated by Beneficiary All Tenants, Lease Guarantors and other licensees, invitees, guests, customers, occupants and users (i) are hereby irrevocably authorized and directed to rely on and comply with any and all such written demands received by them, and (ii) are hereby irrevocably relieved of any responsibility to make any inquiry regarding the existence of any Event of Default claimed by Beneficiary or regarding Beneficiary's right to demand, collect, receive and enforce payment of the Rents and to collect, hold, return and retain the Security After making any such written demand, Beneficiary shall be entitled and is hereby irrevocably authorized, at its option, to enforce payment of the pertinent Rents by appropriate action or proceeding, whether brought in the name of Grantor or otherwise Any and all amounts so collected by Beneficiary shall be applied to the Indebtedness in such order and manner as Beneficiary shall determine

(c) Notwithstanding anything contained herein to the contrary, it is the intention of Grantor and Beneficiary that this conveyance in this Section 1 14 creates (i) a presently and immediately effective security interest in all Rent, whether accrued or unaccrued, by means of assignment of the Rent pursuant to this Deed of Trust, and (ii) a present and absolute assignment of the Leases, and in both cases, Beneficiary's rights to same are not contingent or conditioned upon, and may be exercised without, possession of the Property Notwithstanding anything to the contrary contained herein, Beneficiary is entitled to all the rights and remedies of an assignee as permitted under West Virgina law, and this Deed of Trust shall constitute and serve as a security instrument under West Virgina law Beneficiary shall have the ability to exercise its rights related to the Leases and Rents, in Beneficiary's sole discretion and without prejudice to any other remedy available, as provided in this Deed of Trust or as otherwise allowed by applicable law

**1.15 <u>Security Agreement and Fixture Filing</u>.**

(a) Grantor (as Debtor) hereby grants and assigns to Beneficiary (as Creditor and Secured Party), in order to secure the obligations secured by this Deed of Trust, a security interest in all personal property and fixtures included within the definition of the term "Property" set forth above, and in any and all other personal property and fixtures now or hereafter constituting part of the Property All references in this Deed of Trust to the lien of this Deed of Trust shall be deemed to refer also to the aforesaid security interest It is the intention of the parties hereto that this Deed of Trust shall constitute a security agreement within the meaning of the Uniform Commercial Code as in effect in the State of West Virgina, as amended and recodified from time to time (the "**UCC**") In addition to all rights, powers, privileges and remedies specified in this Deed of Trust, Beneficiary shall have all the rights, powers, privileges and remedies of a secured party under the UCC and under other applicable law To the extent any notice of sale of any such personal property may be required by law in connection with any exercise of such rights, powers, privileges and remedies, notice of the time and place of any public or private sale given at least ten (10) days in advance thereof shall constitute reasonable notification Beneficiary shall not be required to make any sale of any such personal property regardless of any notice of sale having been given Beneficiary may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it shall have been so adjourned Notwithstanding the foregoing, in no event shall Beneficiary be deemed to have accepted any property other than cash in satisfaction of any obligation of Grantor unless Beneficiary shall make an express written election of said remedy under Section 9.620 and 9 621 of the UCC

(b) This Deed of Trust, when filed for record in the real estate records of the recording jurisdiction in which the Land is located, shall be effective, from the date of recording, as a financing statement filed as a fixture filing under the UCC, with respect to all fixtures included within the definition of the term "Property" set forth above This Deed of Trust, when so filed for record, also shall be effective, from the date of recording, as a financing statement covering minerals or the like (including oil and gas) to the extent the same constitute as-extracted collateral (as defined in the UCC) A carbon, photographic or other reproduction of this Deed of Trust or any financing statement relating to this Deed of Trust (provided the financing statement includes all information required under the UCC) shall be sufficient to be effective as a financing statement. The filing of any other financing statement relating to any personal property rights or interests described herein shall not be construed to diminish any rights or priority hereunder

(c) It is hereby expressly declared and agreed that, to the fullest extent permitted by law, all items of Equipment, all accessions, renewals, substitutions and replacements of and to any such items and all other parts of the Property are, and at all times and for all purposes shall be deemed to be, part and parcel of the real property encumbered by this Deed of Trust and appropriated to the use of such real property, whether or not any such item is affixed or annexed to such real property and whether or not any such item is or shall be identified by serial number or otherwise referred to or reflected in any recital or list set forth in this Deed of Trust or in any financing statement filed or recorded in connection with the transaction of which this Deed of Trust is a part. Neither anything set forth in this Section nor the filing or recording of any such financing statement in the records for personal property security interests shall be construed as in any way derogating from or otherwise impairing the effectiveness of the aforesaid declaration. The mention in any such financing statement of any particular part of the Property shall not be construed as in any way altering the rights of Beneficiary or Trustee under this Deed of Trust with respect to such Property or as in any way altering or otherwise affecting the perfection or priority of the lien of this Deed of Trust with respect to such Property Any and all such financing statements are intended to be for the protection of Beneficiary in the event that any court shall determine that the perfection or priority of the lien of this Deed of Trust with respect to any part of the Property requires the recording or filing of notice in the records for personal property security interests

**1.16 __After-Acquired Property__.** To the fullest extent permitted by and subject to applicable law, the lien of this Deed of Trust shall attach automatically, without the necessity of any action by Grantor or any other person, to all right, title and interest of Grantor in and to any and all after-acquired property of the character or type included within the definition of the term "Property" set forth above Grantor shall promptly execute and deliver to Beneficiary such documents and instruments as Beneficiary may reasonably request to confirm such lien Grantor hereby irrevocably authorizes and appoints Beneficiary as its agent and attorney-in-fact to take all actions authorized by this Section to execute all such documents and instruments on behalf of Grantor subsequent to an Event of Default which has occurred and is continuing beyond any applicable notice and cure period, which appointment includes full power of substitution and shall be deemed to be coupled with an interest

**1.17 __Further Assurances__.** Upon Beneficiary's reasonable request, Grantor shall, at Grantor's sole cost and expense, make, execute and deliver to Beneficiary or any other person designated by Beneficiary (or shall cause to be made, executed and delivered to Beneficiary or any such other person) any and all further mortgages, deeds of trust, assignments, security agreements, financing statements, instruments of further assurance, notices, certificates and other documents and instruments that Beneficiary may consider reasonably necessary to correct any errors in or omissions from any of the Loan Documents, or to effectuate, complete, perfect, continue or preserve the obligations of Grantor under or in connection with the Loan Documents, the lien of this Deed of Trust upon all or any part of the Property or any other rights or interests of Beneficiary or Trustee under this Deed of Trust. In addition to its other rights, powers, privileges and remedies under this Deed of Trust, Beneficiary is hereby irrevocably authorized to make, execute and deliver any and all such documents and instruments for and in the name of Grantor subsequent to an Event of Default which exists beyond any applicable notice and cure period Beneficiary is hereby irrevocably authorized to record, file, re-record or refile, at such times and in such offices and places as Beneficiary may consider necessary or desirable, any or all of the Loan Documents and

any or all such other documents and instruments Grantor hereby irrevocably authorizes and appoints Beneficiary as its agent and attorney-in-fact to take all actions authorized by this Section subsequent to an Event of Default which has occurred and is continuing beyond any applicable notice and cure period, which appointment includes full power of substitution and shall be deemed to be coupled with an interest

**1.18 Maintenance of Existence.** Grantor shall at all times maintain (a) its existence, franchises, rights and privileges as a limited liability company under the laws of State of Delaware and the State of West Virgina, and (b) a duly authorized registered agent for service of process in the State of West Virgina Upon any failure by Grantor to do so, Beneficiary may appoint any person as Grantor's agent for service of process, and Grantor hereby irrevocably authorizes and appoints Beneficiary as Grantor's agent and attorney-in-fact to do so, which appointment includes full power of substitution and shall be deemed to be coupled with an interest Upon Beneficiary's request, Grantor shall provide to Beneficiary satisfactory evidence of Grantor's compliance with the terms of this Section

**1.19 Books and Records.**

Grantor shall at all times keep and maintain, or cause to be kept and maintained, complete and accurate books of accounts and records reflecting the results of the operation of the Property and any business or other operations conducted in or on the Property by or on behalf of or for the benefit of Grantor.

**1.20 Use of Information** Grantor shall not use Beneficiary's name or the name of any person, firm or corporation controlling, controlled by or under common control with Beneficiary in connection with any of Grantor's activities, except as such use may be required by applicable law or regulation of any governmental body, or by any financing institution with which Grantor may be doing or seeking to do business Beneficiary agrees that it shall not use Grantor's name, the name of any person, firm or corporation controlling, controlled by or under common control with Grantor in connection with any of Beneficiary's activities, except as such use may be required by applicable law or regulation of any governmental body or by any financing institution with which Beneficiary may be doing or seeking to do business, provided, Grantor hereby consents to Beneficiary's participation, sale (including, but not limited to securitization), assignment, transfer or other disposition (any of such events being referred to as a "**Sale**"), at any time or times hereafter of all, or any part of, its interest in the Indebtedness and the Note (provided, however, that in the event of a sale, Grantor shall not be obligated to notify or communicate with more than one party as Beneficiary) and, in connection therewith, hereby consents to Beneficiary's dissemination of any of the foregoing information, on a confidential basis, to Beneficiary's advisers, underwriters and placement agents, as well as rating agencies and prospective purchasers, in connection with a prospective Sale, provided that all such persons to whom Beneficiary proposes to provide any such information shall agree in writing to keep such information confidential and to use it only for the purpose of considering a purchase of Beneficiary's interest in the Indebtedness and the Note or a portion thereof and in connection with such prospective Sale Grantor shall provide such cooperation and additional information as Beneficiary may reasonably request in connection with a prospective Sale; provided, that if Beneficiary proposes to sell any interest in the Indebtedness to a person that is not a United States citizen or company, then, as a condition to such Sale, such person shall provide Grantor with two original signed copies of Internal Revenue Service Form

4224 certifying such person's entitlement to a complete exemption from United States withholding tax

1.21 **Estoppel Certificates.** Upon Beneficiary's request, Grantor shall deliver to Beneficiary a written statement, duly acknowledged, setting forth the then-outstanding principal of and interest on the Indebtedness, and stating (a) whether or not any offsets, claims or defenses exist against enforcement of any of the Loan Documents or against collection of the Indebtedness and, if any such offsets, claims or defenses are claimed, identifying the same in reasonable detail, or if any default exists under the Loan Documents and (b) any other information reasonably requested by Beneficiary.

1.22 **Expenses and Indemnification.**

(a) Subject to the provisions of Section 1.11(b) and Section 1 19(b), Grantor shall pay, when due, and upon Beneficiary's request shall reimburse Beneficiary or Trustee for, all reasonable appraisal fees, filing and recording fees, taxes, brokerage fees and commissions resulting from any agreement made by Grantor with the broker to whom such fee or commission is to be paid, abstract and search fees, title insurance fees and premiums, escrow fees, attorneys' fees, court costs, fees of inspecting architect(s) and engineer(s) and all other costs and expenses of every character that have been reasonably incurred by Beneficiary or Trustee, or that may be reasonably incurred by Beneficiary or Trustee after the date hereof, in connection with any of the following (i) Beneficiary's forbearance of rights in connection with the Loan; (ii) any of the Loan Documents, including preparation, execution and/or recording of any of the Loan Documents, (iii) RESERVED, (iv) preparation for enforcement of this Deed of Trust or any of the other Loan Documents after the occurrence of any Event of Default or any state of facts which, with notice or the passage of time, or both, would constitute an Event of Default if not cured or corrected, whether or not any suit or other action shall be commenced or undertaken, (v) communications and negotiations with Grantor or any Guarantor, or with their respective officers, employees, agents, contractors, attorneys or other representatives, concerning any such occurrence, (vi) preparation for, and actions taken in connection with, the prevention or cure of any such occurrence, (vii) enforcement or attempted enforcement of this Deed of Trust or any of the other Loan Documents, (viii) court or administrative proceedings of any kind to which Beneficiary or Trustee may become a party, whether as plaintiff, defendant or otherwise, by reason of the Indebtedness or any of the Loan Documents (including all attorneys' fees, court costs and other expenses incurred in consultation, litigation and bankruptcy or administrative proceedings and all appeals therefrom), (ix) defending and upholding the lien of this Deed of Trust or otherwise defending or asserting any rights or claims of Beneficiary or Trustee under this Deed of Trust or under any of the other Loan Documents; (x) preparation for, and actions taken in connection with, Beneficiary's taking possession of all or any part of the Property, (xi) any prepayment or proposed prepayment of all or any part of the Indebtedness, (xii) any refinancing or payment of the entire Indebtedness or any proposed refinancing or payment of the entire Indebtedness, (xiii) any actual or proposed release, satisfaction, discharge or other extinguishment of this Deed of Trust or any of the other Loan Documents, (xiv) any transfer or proposed transfer of all or any part of the Property in lieu of foreclosure, or (xv) any consent or approval (whether conditional or unconditional) or any withholding of consent or approval to any matter for which Beneficiary's consent or approval is

required pursuant to any of the Loan Documents or pursuant to any Governmental Requirement or judicial decision.

(b) Grantor shall indemnify and hold Beneficiary and Trustee harmless from and against, and shall reimburse Beneficiary or Trustee (as the case may be) for, any and all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including attorneys' fees) that may be imposed upon, asserted against, or incurred or paid by Beneficiary or Trustee by reason of, on account of or in connection with any or all of the following (i) any bodily injury, death or property damage occurring in or on or in the vicinity of the Property through any cause whatsoever; (ii) any transaction, suit, action or proceeding arising out of or in any way connected with the ownership, use, operation, maintenance or repair of the Property, (iii) the exercise of any rights, powers, privileges or remedies of Beneficiary or Trustee under this Deed of Trust or any of the other Loan Documents (including any actions contemplated by Section 2 3), (iv) the breach of any warranty or representation set forth in any of the Loan Documents, and (v) the breach of any warranty or representation set forth in Section 1 2(b), any violation or any alleged violation of any Environmental Law, any proceedings relating to any such violation or alleged violation of any Environmental Law, the presence of any Hazardous Substances in, on, under or about all or any part of the Property, any actual or threatened release, discharge, spillage, seepage or filtration of any Hazardous Substances in, on, under, about or from the Property, the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use or disposal of any Hazardous Substances in, on, under, about or from all or any part of the Property, or any threatened, proposed or actual cleanup or other protective, removal or remedial action relating to any Hazardous Substances, whether pursuant to any Environmental Law or otherwise Notwithstanding anything to the contrary contained herein, the obligations and liability of Grantor with respect to the matters set forth in clause (v) above shall not be subject to or limited by any nonrecourse or exculpation provisions set forth in this Deed of Trust or any of the other Loan Documents, and said obligations and liability survive any Foreclosure and any payment, release, satisfaction, discharge or other extinguishment of this Deed of Trust or the Indebtedness The obligations and liability of Grantor with respect to said matters shall run in favor of and benefit Beneficiary and any affiliate of Beneficiary which may succeed to Beneficiary's position under this Deed of Trust or which may acquire all or any part of the Property

Notwithstanding anything to the contrary contained in this Section, Grantor's indemnification obligations under this Section shall not extend to, and Grantor shall have no obligation to indemnify, defend, or hold harmless Beneficiary or Trustee for any claims, demands, liabilities, losses, damages, judgments, penalties, costs or expenses to the extent arising solely from the gross negligence of Beneficiary or Trustee, as applicable, as finally determined by a court of competent jurisdiction.

(c) All reasonable costs, expenses and other obligation required to be paid or reimbursed by Grantor pursuant to this Section, and all other indemnification obligations of Grantor under this Deed of Trust, shall bear interest at the Default Rate from the date the amount thereof shall have been paid by Beneficiary until the date of such payment or reimbursement by Grantor

**1.23** **Security for Advances.** All amounts advanced by Beneficiary or Trustee pursuant to this Deed of Trust, all amounts otherwise advanced by Beneficiary or Trustee to protect the security of this Deed of Trust, all costs, expenses and liabilities reasonably incurred by Beneficiary or Trustee and reimbursable or payable by Grantor pursuant to this Deed of Trust and all indemnification obligations of Grantor under this Deed of Trust, together with interest thereon as provided in this Deed of Trust or as otherwise provided by law, shall be deemed to be a part of the Indebtedness and, to the fullest extent permitted by law, shall be secured by this Deed of Trust equally with all other portions of the Indebtedness

**1.24** **Revival.** If all or any part of any payment on account of the Indebtedness shall be invalidated, set aside, declared or found to be void or voidable or required to be refunded or otherwise returned to or for the benefit of Grantor or any trustee, custodian, receiver, conservator, master, liquidator or other person (whether pursuant to any Insolvency Law, any other law, any equitable cause or otherwise), then, to the fullest extent permitted by law, but only to the extent of such invalidation, set aside, voidness, voidableness or required refund or return, (a) neither the Indebtedness nor the lien of this Deed of Trust shall be deemed to have been paid, cancelled, extinguished, released, satisfied or discharged, (b) the Indebtedness and the lien of this Deed of Trust shall be immediately and automatically revived without the necessity of any action by any person, and (c) the lien of this Deed of Trust thereafter shall continue in full force and effect in accordance with the terms hereof as if it had never been paid, cancelled, extinguished, released, satisfied or discharged

**1.25** **Required Notices.**

(a) Grantor shall give written notice to Beneficiary of any of the following occurrences, in each case promptly after the occurrence thereof:

(i) Grantor's receipt of any notice from any governmental authority or instrumentality concerning (A) lack of compliance of the Property, or any business or other operations conducted in or on the Property, with any Governmental Requirement or with the conditions or other requirements of any license, permit, approval or authorization (including notice of any violation or alleged violation of any Environmental Law and notice of any threatened, proposed or actual cleanup or other protective, removal or remedial action relating to any Hazardous Substances, whether pursuant to any Environmental Law or otherwise), or (B) the actual or threatened revocation or suspension of, any license, permit, approval or authorization relating to the Property or any business or other operations conducted, or proposed to be conducted, in or on the Property,

(ii) Grantor's receipt of any notice concerning lack of compliance with all or any part of the Property, or any business or other operations conducted in or on the Property, with any covenant, agreement or other arrangement restricting or limiting the use, occupancy, operation, development or disposition of the Property,

(iii) Intentionally Omitted,

(iv) Grantor's receipt of any notice from the holder or grantee of any lien, security interest, charge or encumbrance on all or any part of the Property, concerning any

default or any other material matter in respect of such Lease, lien, security interest, charge or encumbrance,

(v) Grantor's receipt of any notice concerning (A) any contemplated, threatened or pending cancellation of any insurance coverage relating to the Property, (B) any refusal by any insurance company to provide or continue any insurance coverage relating to the Property, or (C) any increase in the cost of any insurance coverage relating to the Property due to the condition of the Property or due to any business or other operations conducted, or proposed to be conducted, in or on the Property, or (D) a change or proposed change in the assessed value of the Property or any tax rate applicable thereto,

(vi) commencement of any judicial or administrative proceedings by or against, and which reasonably can be expected to have a material adverse effect on, Grantor, Principal, any Guarantor or the Property,

(vii) commencement by any creditor of any action or proceeding for default under the terms of any loan or other extension of credit to Grantor or any Guarantor,

(viii) any change in the name of Grantor or any Guarantor or in the location of Grantor's or any Guarantor's chief executive office, principal place of business or residence, or

(ix) any material change in the occupancy of the Building

(b) Grantor also shall give written notice to Beneficiary of any other occurrence requiring the giving of notice to Beneficiary pursuant to this Deed of Trust or pursuant to any of the other Loan Documents Each notice to Beneficiary pursuant to this Section shall be accompanied by accurate and complete copies of any and all notices received by Grantor which are the subject of such notice to Beneficiary (whether or not Beneficiary may have received, or may be entitled to receive, such notice directly from the person giving such notice to Grantor)

## ARTICLE 2

## DEFAULTS AND REMEDIES

**2.1** **<u>Event of Default</u>.** As used in this Deed of Trust, the term "**Event of Default**" shall (a) mean any default under this Deed of Trust beyond the expiration of any notice and cure period specifically set forth herein or (b) have the same meaning as set forth in the other Loan Documents

**2.2** **<u>Acceleration of Maturity</u>.** At any time following the occurrence of any Event of Default, Beneficiary, at its option and without demand or notice, may declare the outstanding Indebtedness (or, at Beneficiary's option, any part of the outstanding Indebtedness that may be designated by Beneficiary) to be immediately due and payable Upon such declaration, the Indebtedness (or such part thereof) shall become immediately due and payable without demand or notice To exercise this option, Beneficiary may invoke the power of sale and any other remedies permitted by law

**2.3** **<u>Enforcement; Power of Sale</u>.**

(a) Subject to applicable law, at any time after any Event of Default, Beneficiary or Trustee may proceed by any appropriate judicial or non-judicial action or proceeding to (i) enforce payment of all or any part of the Indebtedness in accordance with the Loan Documents, (ii) enforce performance of any provision of this Deed of Trust or any of the other Loan Documents, (iii) foreclose this Deed of Trust and sell or cause the sale of the Property, as an entirety or in separate parts, under the power of sale provided under this Deed of Trust or pursuant to the judgment, order, writ of execution or decree of any court of competent jurisdiction, (iv) to the fullest extent permitted by law, pursue the partial foreclosure of this Deed of Trust for any part of the Indebtedness then due and payable, subject to the continuing encumbrance of this Deed of Trust as security for the balance of the Indebtedness not then due, and (v) pursue any other rights, powers, privileges and remedies available to Beneficiary or Trustee, at law or in equity, in connection with the Indebtedness, the Property or any other security for the Indebtedness, including, without limitation, any and all of the remedies granted Beneficiary as a secured party under the UCC Beneficiary or Trustee may pursue any or all such actions or proceedings separately or concurrently and in such order as Beneficiary may elect, either with or without entry or taking possession and whether or not all or any part of the Indebtedness shall have been declared to be immediately due and payable or shall otherwise be due Beneficiary or Trustee may pursue any and all such actions or proceedings without prejudice to Beneficiary's right thereafter to foreclose this Deed of Trust and without prejudice to the rights of Beneficiary to proceed by any other action or proceeding to enforce any rights, powers, privileges or remedies with respect to the Indebtedness, the Property or any other security for the Indebtedness, whether or not the basis for any such subsequent action or proceeding shall be a default or an Event of Default existing at the time such earlier action or proceeding was commenced

(b) At any time after any Event of Default, Beneficiary may direct Trustee to, and Trustee is hereby authorized and empowered, to the fullest extent permitted by applicable law, to enter and take possession of the Property and, after such entry, to sell all or any part of the Property at public auction, in such manner, at such time and place, upon such terms and conditions and upon such public notice (in any event at least in accordance with all applicable laws) as Trustee shall deem advantageous and proper for the interests of all concerned and as required by applicable laws, rules and regulations The Property may be sold hereunder as an entirety or in such parcels as Beneficiary may request, without regard to any right of Grantor or any other person to the marshaling of assets To the fullest extent allowed by applicable law, any sale may be adjourned by announcement at the time and place appointed for such sale without further notice, except as may be required by applicable law To the extent permitted under the law, Beneficiary shall have the sole right to require Trustee to sell less than all of the Property Any such sale of less than all of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically authorized and empowered, if and as directed by Beneficiary, to make successive sales under such power of sale until the Indebtedness has been fully, finally and indefeasibly paid or until all of the Property has been sold If the proceeds of any such sale of less than all of the Property shall be less than the then outstanding balance of the Indebtedness and the expenses of executing this trust as provided herein, then, to the fullest extent permitted by law, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made hereunder The failure to complete any sale hereunder or any defect in any sale hereunder shall not exhaust the power of sale herein granted, and, in any such event, Beneficiary shall have the right to cause a subsequent sale or sales to be made hereunder Trustee may, if and as directed by Beneficiary, sell not only the real property but also the personal property

formıng a part of the Property, as a unıt and as a part of a sıngle sale to be held ın accordance with the laws and procedures applıcable to real property, as permıtted by the UCC, or may sell any part of the Property separately from the remaınder of the Property Upon each sale made hereunder, Trustee shall execute and delıver to the purchaser or purchasers at such sale good and suffıcıent conveyances, conveyıng the Property, or the part or parts thereof so sold, to such purchaser or purchasers, and Trustee shall receıve the proceeds of such sale or sales and apply the same as hereın provıded Except as requıred by applıcable law, no purchaser of all or any part of the Property shall be requıred to see to the proper applıcatıon of the purchase money Any and all statements of fact or other recıtals made ın any conveyance gıven by Trustee as to nonpayment of the Indebtedness, or as to the occurrence of any default or Event of Default, or as to all or any part of the Indebtedness having been declared to be due and payable, or as to the request to sell, or as to notıce of tıme, place and terms of sale and the part or parts of the Property to be sold havıng been duly given, or as to the refusal, failure or inabılıty to act of Benefıcıary, or as to the appoıntment of any substıtute or successor trustee, or as to any other act or thıng havıng been duly done by Benefıcıary or Trustee, shall be taken as *prıma facıe* evıdence of the truth of the facts so stated or recıted Trustee may appoınt or delegate any one or more persons as agent to perform any act or acts necessary or ıncıdent to any sale held by Trustee, ıncludıng the postıng of notices and the conduct of sale, but ın the name and on behalf of Trustee If Trustee shall have gıven notıce of sale hereunder, any successor or substıtute Trustee thereafter appoınted may complete the sale and the conveyance of the property pursuant thereto as ıf such notıce had been gıven by the successor or substıtute Trustee conductıng the sale.

At any tıme after an Event of Default and the exercıse by Benefıcıary of the optıon to declare the Indebtedness to be ımmedıately due and payable, Trustee, upon the wrıtten request of Benefıcıary, shall foreclose upon and sell the Property , or any part thereof, to satısfy the Indebtedness at publıc auctıon at the front door of the courthouse of the county (or any county ıf more than one) ın the State of West Vırgınıa in whıch the Property ıs located, for cash ın hand on the day of sale, after first gıvıng notıce of such sale by publıshıng such notıce ın a qualıfied newspaper of general cırculatıon published ın saıd county, or ıf there be no such newspaper ın a qualified newspaper of general cırculation ın saıd county, once a week for two successıve weeks precedıng the day of sale and after gıvıng notıce to Grantor and any subordınate lienholder who has prevıously notıfied the Benefıcıary of the exıstence of a subordınate lıen, at least twenty days prior to the sale, and except as otherwıse hereın provıded or requıred by applıcable law, no other notıce of such sale shall be requıred

(c) To the fullest extent permıtted by law, Trustee may act under thıs Deed of Trust although Trustee may have been, may now be or may hereafter be the attorney or agent for Benefıcıary wıth respect to the Indebtedness, the Loan Documents or any other matter whatsoever Benefıcıary may bıd for and purchase all or any part of the Property at any sale pursuant to the power of sale hereın granted or pursuant to any ȷudgment, order, wrıt of executıon or decree of any court of competent ȷurısdıctıon and, upon complıance wıth the terms of sale, may hold, retaın, possess and dıspose of such Property ın ıts own absolute rıght wıthout further accountabılıty for the proper applıcation of the purchase money In payıng the purchase prıce ın connectıon wıth any such sale, Benefıcıary, after allowıng for the costs and expenses of such sale, may, to the fullest extent permıtted by law, apply all or any part of the Indebtedness, ın lıeu of cash, as a credıt agaınst such purchase prıce and any other amounts payable ın connectıon therewıth

(d) Any Foreclosure may, at Beneficiary's option, be subject to any or all Leases and the rights of Tenants thereunder No failure to make any Tenant a defendant in any foreclosure proceedings or to foreclose or otherwise terminate any Lease and the rights of any Tenant in connection with any Foreclosure shall be, or be asserted to be, a defense or hindrance to any Foreclosure, any foreclosure proceeding or to any proceeding seeking collection of all or any part of the Indebtedness (including any deficiency remaining unpaid after completion of any Foreclosure)

**2.4** **Proceeds of Foreclosure.** Unless otherwise required by law, from the proceeds of any Foreclosure, Trustee shall pay (a) all costs and expenses of sale, including reasonable attorneys' fees, advertising costs, an auctioneer's allowance, reasonable and customary Trustee's fee, costs of title searches, the expense of correcting any title irregularities, inspection fees and appraisal costs, and (b) all currently payable Impositions and Insurance Premiums Trustee shall pay the balance of said proceeds to Beneficiary to the extent required to pay the entire then-outstanding Indebtedness Any remaining surplus shall be paid to Grantor or to any other person entitled to such surplus as determined by a court of competent jurisdiction

**2.5** **Right To Enter and Take Possession.**

(a) At any time following the occurrence of any Event of Default, whether or not foreclosure proceedings shall have been instituted, Beneficiary, to the fullest extent permitted by law, may enter and take possession of all or any part of the Property, may exclude Grantor and its members, officers, employees, agents, contractors, attorneys and other representatives therefrom and may have joint access with Grantor to the books, papers and accounts of Grantor and of any manager of the Property Upon Beneficiary's request at any time following the occurrence of any Event of Default, Grantor shall peaceably and quietly vacate, surrender and deliver possession of the Property (or any part of the Property that may be designated by Beneficiary) to Beneficiary If Grantor shall not vacate, surrender and deliver possession of the Property (or such part of the Property) to Beneficiary as provided above, then, without limiting any other right to enter and take possession of the Property (or such part of the Property), Beneficiary may resort to any and all legal and equitable remedies required to evict and dispossess Grantor therefrom (including one or more summary proceedings or actions for forcible entry and detainer, trespass to try title or restitution), and Beneficiary may obtain a judgment, order, writ of execution or decree of any court of competent jurisdiction conferring on Beneficiary the right to immediate possession and requiring Grantor to immediately vacate, surrender and deliver possession of the Property (or such part of the Property) to Beneficiary Grantor hereby specifically and irrevocably consents to the entry of any such judgment, order, writ of execution or decree. Upon Beneficiary's request, Grantor shall pay to Beneficiary, or to any other person that Beneficiary may designate, all reasonable and documented costs, expenses and liabilities (including attorneys' fees) incurred by Beneficiary in connection with any such failure to vacate, surrender and deliver possession or in connection with any such judgment, order, writ of execution or decree or the exercise of any such remedies, together with interest thereon at the Default Rate from the date incurred by Beneficiary until the date so paid to, or as directed by, Beneficiary

(b) RESERVED

(c) After any such entry into possession, Beneficiary, acting in Grantor's name or otherwise, may hold, store, use, operate, manage and control the Property (or any part of the Property which then is in the possession of Beneficiary or Trustee) and may conduct the business and operations thereof In doing so, Beneficiary may

(i) take and possess all documents, books, records, papers and accounts of Grantor or the then owner of the Property,

(ii) carry out any and all necessary and desirable maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements of or to the Property (or such part of the Property);

(iii) purchase or otherwise acquire and install in or on the Property (or such part of the Property) additional fixtures, personal property and other property of the type encumbered by this Deed of Trust,

(iv) insure the Property or keep the Property insured,

(v) manage, operate and exercise all rights and powers of Grantor with respect to the Property (or such part of the Property) and the management and operation thereof (including the right to enter into Leases, to cancel, enforce or modify Leases, to evict Tenants by summary proceedings or otherwise and to take other appropriate steps to enforce Leases),

(vi) enter into agreements with others to exercise the rights and powers of Beneficiary and Trustee under this Deed of Trust,

(vii) collect and receive all Rents (including those past due as well as those accruing thereafter), and apply the money so received, in such priority as Beneficiary may determine, to pay (1) the interest, principal and other amounts due and payable in respect of the Indebtedness or otherwise payable pursuant to any of the Loan Documents, (2) the deposits payable under this Deed of Trust for Impositions and Insurance Premiums, (3) the cost of insurance, Impositions and other expenses of holding, storing, using, operating, managing, controlling, maintaining, repairing, altering and improving the Property (including any leasing commissions and rental collecting commissions payable to any agent, contractor or other representative of Beneficiary), (4) the compensation, expenses and disbursements of the agents, contractors, attorneys and other representatives of Beneficiary, and (5) amounts advanced for any purpose recognized under this paragraph (c) or otherwise permitted by law or agreement

(d) In the event of any such entry into possession, Beneficiary shall be liable to account only for Rents actually received by Beneficiary while in possession of the Property In the event of any foreclosure, subject to applicable law, Beneficiary may remain in possession of all or any part of the Property until the foreclosure sale and thereafter during any period of redemption In the absence of any foreclosure, subject to applicable law, Beneficiary may remain in possession of all or any part of the Property as long as there exists an Event of Default that remains uncured by Grantor Subject to applicable law, the same right of taking possession shall exist after any subsequent Event of Default Subject to applicable law, Beneficiary shall not be

obligated, by virtue of this Section or by virtue of any actions contemplated by this Deed of Trust or any of the other Loan Documents, to perform or discharge any obligation, duty or liability of Grantor under any Lease or other agreement relating to all or any part of the Property or under any Governmental Requirement relating to the Property Beneficiary shall not incur any liability for, nor shall Grantor assert any claim or set off as a result of, any acts or omissions of Beneficiary, or its officers, employees, agents, contractors, attorneys or other representatives, while in possession of all or any part of the Property (except for damages directly caused by Beneficiary's own gross negligence or intentional wrongful acts) Grantor hereby expressly and irrevocably waives, releases, discharges and relinquishes all such liabilities, claims and rights of set off, to the fullest extent permitted by applicable law

(e) Upon Beneficiary's request, Grantor shall pay to Beneficiary, or to any other person that Beneficiary may designate, all costs, expenses and liabilities (including attorneys' fees) incurred by Beneficiary in connection with the holding, storage, use, operation, management, control, maintenance, repair, alteration or improvement of all or any part of the Property (except to the extent such costs, expenses and liabilities shall have been paid out of collections from the Property as provided above), together with interest thereon at the Default Rate from the date incurred by Beneficiary until the date so paid to, or as directed by, Beneficiary

**2.6 Appointment of Receiver.**

(a) At any time after the occurrence of an Event of Default (either before or after any foreclosure or any sale in connection therewith), Beneficiary, to the fullest extent permitted by law and without regard to the value, adequacy or occupancy of the Property (whether as a homestead or otherwise) or the solvency of Grantor, Principal or any Guarantor, shall be entitled as a matter of right and upon notice, if it so elects, to the appointment of a receiver to enter upon and take possession of the Property, collect the Rents and apply the Rents so collected as the court making such appointment may direct or as otherwise permitted by law To the fullest extent permitted by law, the receiver's powers shall continue during the pendency of any foreclosure proceedings and throughout any statutory period of redemption, whether there be a redemption or not Grantor hereby specifically and irrevocably consents to such appointment Without limiting the generality of the foregoing, Grantor agrees that any failure of Grantor to pay any Insurance Premiums or Impositions (except to the extent permitted in connection with any contest pursuant to Section 1.6) or to maintain any insurance required with respect to the Property shall constitute waste, justifying the appointment of a receiver to the fullest extent permitted by law The receiver shall have all rights and powers permitted by the laws of the State of West Virgina (including, to the fullest extent permitted by law, all rights and powers for the protection, possession, management and operation of the Property that an absolute owner would have) and such other rights and powers as the court making such appointment shall confer The receiver shall be liable to account only for Rents actually received by the receiver Notwithstanding the appointment of any receiver or other custodian, Beneficiary shall be entitled to maintain possession and control of any cash, deposits or instruments held by or for Beneficiary, as pledgee or depository, at the time of such appointment or payable or deliverable to Beneficiary, as pledgee or depository, from time to time pursuant to this Deed of Trust or any of the other Loan Documents

(b) Upon Beneficiary's request, Grantor shall pay, or reimburse Beneficiary and any such receiver for, all costs, expenses and liabilities incurred by Beneficiary or such

receiver in connection with the appointment of such receiver and the exercise of the rights and powers of such receiver (including attorneys' fees, receivers' fees, agents' compensation and the fees of any manager retained by such receiver), except to the extent such costs, expenses and liabilities shall have been paid out of collections from the Property, together with interest thereon at the Default Rate from the date paid by Beneficiary or such receiver (as the case may be) until the date of such reimbursement

**2.7** **<u>Performance of Defaulted Obligations</u>.** If Grantor shall fail (i) to make any payment or (ii) perform any obligation of Grantor under this Deed of Trust or any of the other Loan Documents, then, upon notice, Beneficiary may, but shall not be obligated to, make any payment or perform any obligation (in Grantor's name or otherwise) in such manner and to such extent as Beneficiary may deem necessary or appropriate under the circumstances to preserve or protect Beneficiary's rights and interests under the Loan Documents, specifically including, but not limited to, the value and condition of any collateral. If Grantor shall fail to perform any other obligation of Grantor under this Deed of Trust or any of the other Loan Documents then, upon notice, Beneficiary may, but shall not be obligated to, perform any obligation (in Grantor's name or otherwise) in such manner and to such extent as Beneficiary may deem necessary or appropriate under the circumstances to preserve or protect Beneficiary's rights and interests under the Loan Documents, specifically including, but not limited to, the value and condition of any collateral Beneficiary shall be subrogated to all rights against Grantor of the person or persons benefiting from such payment or performance No such payment or performance shall (a) release Grantor from any obligation under any of the Loan Documents, (b) cure, waive or invalidate any obligation, any Event of Default or any breach or default by Grantor or any Guarantor under any of the Loan Documents, or (c) waive or relinquish any right, power, privilege or remedy of Beneficiary or Trustee under or in connection with any of the Loan Documents Upon Beneficiary's request, Grantor shall pay, or reimburse Beneficiary for, all reasonable and documented expenditures (including attorneys' fees) made or incurred by Beneficiary in making any such payment or performing any such obligation, together with interest thereon at the Default Rate from the date paid by Beneficiary until the date of such reimbursement Beneficiary is hereby irrevocably authorized to enter upon, and to authorize others to enter upon, the Property for the purpose of performing any such obligation, without thereby becoming liable to Grantor or to any person in possession holding under Grantor

**2.8** **<u>Waivers of Certain Rights</u>.** To the fullest extent permitted by law, Grantor, for itself and all persons claiming through or under it, hereby waives and releases all benefit of any law providing for appraisement, valuation, stay, extension, redemption (including any equity or statutory right of redemption), moratorium, homestead, dower, curtesy or exemption from execution, levy or sale, and all rights to require marshaling of the Property or any other security, in each case in connection with the foreclosure or other enforcement of this Deed of Trust or any of the other Loan Documents. Beneficiary shall not be required to (i) release any part of the Property or other security, or be prevented from foreclosing or enforcing the Loan Documents, unless the Indebtedness shall have been fully, finally and indefeasibly paid in accordance with the Loan Documents, (ii) accept any part of the Property or other security in satisfaction of all or any part of the Indebtedness, or (iii) accept any apportionment of the Indebtedness among any parts of the Property or other security Any repeal of, or cessation in force of, any such law after the date hereof shall not preclude the application of this Section

**2.9 Suits To Protect Property.** Beneficiary and Trustee (acting at Beneficiary's request) are hereby irrevocably authorized by Grantor, at Beneficiary's option to institute and maintain any and all suits and proceedings that Beneficiary may deem advisable (a) with prior written notice to Grantor, to prevent any impairment of the Property or the security of this Deed of Trust by any unlawful acts or omissions, (b) with prior written notice to Grantor, to prevent the occurrence or continuance of any violation of this Deed of Trust or of any of the other Loan Documents, (c) to foreclose this Deed of Trust (after the occurrence of any Event of Default), (d) with prior written notice to Grantor, to preserve and protect Beneficiary's and Trustee's interests in the Property, and (e) to restrain the enforcement of, or compliance with, any Governmental Requirement that may be unconstitutional or otherwise invalid, if such enforcement or compliance might (in Beneficiary's judgment) impair the Property or the security of this Deed of Trust or be prejudicial to Beneficiary's or Trustee's interests

**2.10 Proofs of Claim.** In the event of any bankruptcy, reorganization, arrangement, composition, readjustment, liquidation, dissolution, insolvency, receivership, conservatorship or other case or proceeding affecting Grantor, Principal or any Guarantor, or any of their respective creditors or properties, Beneficiary may, to the fullest extent permitted by law, file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness outstanding as of the institution of such case or proceeding (or for any part of such Indebtedness that may be designated by Beneficiary) and for any additional amounts that may thereafter become due and payable in respect of the Indebtedness

**2.11 No Waiver.**

(a) No failure or delay of or by Beneficiary or Trustee to insist upon strict performance of any obligation of Grantor, Principal or any Guarantor under or in connection with this Deed of Trust or any of the other Loan Documents or to exercise any right, power, privilege or remedy under or in connection with this Deed of Trust or any of the other Loan Documents shall waive, exhaust or impair any such obligation or any such right, power, privilege or remedy. Nor shall any such failure or delay be construed to be a waiver of, or acquiescence in or to, any Event of Default or any breach or default by Grantor or any Guarantor under this Deed of Trust or any of the other Loan Documents Notwithstanding any such failure or delay, Beneficiary or Trustee (acting at Beneficiary's request) thereafter shall have the right, from time to time and as often as may be deemed advisable by Beneficiary, to insist upon and enforce strict performance of any and all obligations of Grantor or any Guarantor under or in connection with this Deed of Trust or any of the other Loan Documents

(b) No waiver of any Event of Default or of any breach or default by Grantor or any Guarantor under this Deed of Trust or any of the other Loan Documents shall extend to or affect any subsequent Event of Default, breach or default or any other then-existing Event of Default, breach or default Nor shall any such waiver impair any rights, powers, privileges or remedies available to Beneficiary or Trustee after the occurrence of any Event of Default or of any breach or default After the occurrence of any Event of Default or of any such breach or default (whether or not the Indebtedness or any part thereof shall have been declared to be immediately due and payable), Beneficiary may accept payments of amounts owing in respect of the Indebtedness, and no such acceptance shall waive any such Event of Default, breach or default or

result in any stay or reversal of any acceleration of maturity or in any forgiveness of all or any part of the Indebtedness, unless Beneficiary expressly and specifically agrees to the contrary in writing

**2.12 Remedies Cumulative.** No right, power, privilege or remedy now or hereafter available to Beneficiary, Trustee or any receiver under or in connection with this Deed of Trust or any of the other Loan Documents (whether or not herein or therein specified) or any law or judicial decision is or shall be exclusive of any other right, power, privilege or remedy (whether or not herein or therein specified), all of which shall be cumulative, concurrent and in addition to each and every other right, power, privilege and remedy now or hereafter available under or in connection with this Deed of Trust Each and every such right, power, privilege and remedy may be exercised prior to, simultaneously with or subsequent to any other right, power, privilege or remedy and as often as occasion therefor may arise No single or partial exercise of any such right, power, privilege or remedy shall preclude any other or further exercise of any such right, power, privilege or remedy No act of Beneficiary or Trustee shall be construed as an election to proceed under any one provision of this Deed of Trust or of any applicable statute or other law to the exclusion of any other such provision, statute or other law

**2.13 Discontinuance of Proceedings.** If Beneficiary or Trustee shall exercise any right, power, privilege or remedy available under or in connection with any of the Loan Documents or under any law or judicial decision, and if such exercise and any related proceedings shall be discontinued or abandoned for any reason, or if any such proceedings shall result in a final determination adverse to Beneficiary or Trustee, then, to the fullest extent permitted by law, Grantor and Beneficiary thereafter shall be restored to their respective former positions and to their respective rights, powers, privileges and remedies under the Loan Documents or otherwise relating to the Indebtedness, the Property or any other security for the Indebtedness, and all rights, powers, privileges and remedies of Beneficiary shall continue to be available as if no such exercise and no such proceedings had occurred.

**2.14 Additional Security and Guaranty.** If Beneficiary or any trustee or agent for Beneficiary at any time holds additional security for, or any guaranty of, all or any part of the Indebtedness, then Beneficiary or such trustee or agent (acting at Beneficiary's request) may foreclose such security or otherwise enforce its rights, powers, privileges and remedies with respect to, and realize upon, such security or such guaranty (as the case may be), either before or concurrently with or after a foreclosure or other enforcement of this Deed of Trust or of any of the other Loan Documents, without being deemed to have waived any rights, benefits, liens or security interests evidenced by or arising under or in connection with this Deed of Trust or any of the other Loan Documents and without being deemed to have made an election thereby or to have accepted the benefits of such guaranty or such additional security (or the proceeds thereof) in full satisfaction and settlement of the Indebtedness and of Beneficiary's or such trustee's or agent's rights with respect thereto No judgment, order, writ of execution or decree with respect to the Indebtedness or with respect to any such guaranty or security, whether rendered in the State of West Virgina or elsewhere, shall in any manner affect the security of this Deed of Trust, and any deficiency or other debt represented by any such judgment, order, writ of execution or decree shall, to the fullest extent permitted by law, be secured by this Deed of Trust to the same extent that the Indebtedness shall have been secured by this Deed of Trust prior to the rendering of such judgment, order, writ of execution or decree Grantor, for itself and for any and all persons who may at any time claim through or under Grantor or who hereafter may otherwise acquire any interest in or title

to all or any part of the Property or any other security for the Indebtedness, hereby irrevocably waives and releases, to the fullest extent permitted by law, all benefit of any and all laws that would limit or prohibit the effectiveness of anything set forth in this Section

**2.15** **Default Rate.** After any Event of Default, the principal and such other portion of the Indebtedness shall, at Beneficiary's option, bear interest at the Default Rate set forth in the Existing TRAG/RGE Loan Agreements (the "**Default Rate**")

## ARTICLE 3

## TRANSFER OR FURTHER ENCUMBRANCE OF PROPERTY

**3.1** **Option to Accelerate; Consent of Beneficiary.**

(a) Except as otherwise permitted in accordance with this Section 3 1, in the event of (i) any sale or transfer of Grantor's interest in the Property, in whole or in part or the execution of an installment sales contract pursuant to which buyer take possession and control of the Property but title thereto does not pass to the buyer until performance and satisfaction of future covenants and conditions, or (ii) any change, directly or indirectly, in the ownership, form of business association or composition of Grantor, or (iii) any financing, other than the Loan, secured by a *pari passu* or senior lien on all or any portion of the Property or any beneficial interest in the Property, or (iv) any change in the nature of the Property's use in whole or in part (except to the extent that such partial change or alteration is made in the ordinary course of business), or any material structural alteration of the Property, or (v) any recording of a condominium declaration affecting the Property, then, at Beneficiary's option, Beneficiary may declare the Indebtedness to be immediately due and payable, and, upon such declaration, the Indebtedness shall be immediately due and payable without demand or notice Grantor covenants and agrees that it shall not, without the prior written consent of Beneficiary, to be granted or withheld in Beneficiary's sole discretion, take any of the actions, or suffer any of the events, that would be a cause for declaring the Indebtedness to be immediately due and payable pursuant to this Section and any such actions shall be construed as an Event of Default.

(b) Beneficiary may give, withhold or condition any consent contemplated by paragraph (a) of this Section, for any reason or for no reason, in Beneficiary's sole discretion. Without limiting the generality of the immediately preceding sentence, Beneficiary specifically reserves the right to condition its consent upon such matters as Beneficiary may deem appropriate, including, but not limited to, (i) Beneficiary's approval of the creditworthiness, financial condition and management ability of the purchaser, transferee, lessee, pledgee or assignee, (ii) modification of any or all of the Loan Documents in any manner that Beneficiary may deem appropriate (which may include, among other things, an increase in the interest rate then in effect under the Note or the maturity date thereof), (iii) assumption of the obligations and liabilities of Grantor under any or all of the Loan Documents by the purchaser, transferee, lessee, pledgee or assignee, (iv) receipt of satisfactory guaranties of all or any part of the Indebtedness, (v) receipt of satisfactory additional collateral, and (vi) payment to Beneficiary of an assumption fee in such amount as Beneficiary may deem appropriate

**3.2 <u>Subsequent Owner</u>.** Each purchaser, transferee, lessee, pledgee and assignee referred to in Section 3 1 shall be deemed to have assumed and agreed, to the extent that its seller, transferor, lessor or pledgor was liable, to pay the Indebtedness and to have assumed and agreed to be bound by and to keep, perform, observe and comply with all provisions required to be kept, performed, observed and complied with by Grantor pursuant to this Deed of Trust (including the terms of this Article), unless Beneficiary shall specifically agree to the contrary in writing Without limiting the generality of the immediately preceding sentence, each such purchaser, transferee, lessee, pledgee and assignee shall be deemed to have made and agreed to each waiver, consent, authorization, direction and appointment made by and agreed to by Grantor pursuant to this Deed of Trust If ownership of all or any part of the Property shall become vested in any person other than Grantor, then Beneficiary may, without notice to Grantor, deal with any such successor in interest in any manner that Beneficiary may deem appropriate, without in any way waiving, releasing, discharging or otherwise vitiating any obligations or liabilities of Grantor or any Guarantor with respect to the Indebtedness, the Property, any of the Loan Documents or the transaction of which this Deed of Trust is a part No sale, conveyance, transfer, pledge, encumbrance, assignment or lease referred to in the immediately preceding Section, and no forbearance, extension or assumption by or to any person with respect to the Indebtedness or any of the Loan Documents, shall change, waive, release, discharge or otherwise affect the liability of Grantor or any Guarantor, in whole or in part, unless Beneficiary shall specifically agree to the contrary in writing

## ARTICLE 4

## MISCELLANEOUS

**4.1 <u>Use of Certain Terms</u>.** Each reference in this Deed of Trust to Grantor, any Guarantor, Beneficiary or Trustee shall be deemed also to include their respective heirs, executors, administrators, personal representatives, successors and assigns Each reference in this Deed of Trust to any gender shall be deemed also to include any other gender, and the use in this Deed of Trust of the singular shall be deemed also to include the plural and vice versa, unless the context clearly requires otherwise. As used in this Deed of Trust, the term "**person**" means any and all natural persons (whether acting for themselves or in a representative capacity), sole proprietorships, partnerships, joint ventures, associations, trusts, estates, limited liability companies, corporations (non-profit or otherwise), financial institutions, governments (and agencies, instrumentalities and political subdivisions thereof), and other entities, authorities and organizations of every type As used in this Deed of Trust, unless the context clearly requires otherwise, (a) the words "herein," "hereunder," "hereinafter" and "hereto" and words of similar import shall be deemed to refer to this Deed of Trust as a whole and not to any particular Article, Section, subsection, paragraph or other subdivision, (b) the words "include" and "including" shall be deemed to be followed by the words "without limitation," and (c) the terms "Dollars" and "$" shall be deemed to refer to the lawful currency of The United States of America. Each reference in this Deed of Trust to the provisions of this Deed of Trust or the provisions of any of the other Loan Documents shall be deemed to refer to any and all covenants, agreements, terms, conditions and other provisions hereof or thereof Each reference in this Deed of Trust to the fees or other compensation of any agents, contractors, attorneys or other representatives of any person shall be deemed also to include expenses and disbursements, as well as fees of paraprofessionals and similar personnel (such as paralegals and legal assistants) Each reference in this Deed of Trust to

any statute shall be deemed to include within such reference any amendments, substitutions or replacements thereof or therefor, and each reference in this Deed of Trust to any specific provision of the Bankruptcy Code or any other statutory compilation shall be deemed to include within such reference any similar statutory provision that may hereafter be enacted by any governmental authority

4.2 **Schedules; Recitals; Headings.** The Schedules and Exhibits attached hereto and the paragraphs set forth at the beginning of this Deed of Trust under the heading "BACKGROUND" are incorporated in and made a part of this Deed of Trust by this reference The captions and headings of the Articles, Sections, subsection, paragraphs and other subdivisions of this Deed of Trust are for convenience of reference only, are not to be considered a part of this Deed of Trust and shall not be deemed or construed to define, modify, limit, expand or otherwise affect any of the provisions of this Deed of Trust

4.3 Notices. All notices, reports, demands, requests or other communications to be given or delivered to Grantor, Beneficiary or Trustee under this Deed of Trust (the "**Notices**") shall be in writing and shall be deemed to have been given as follows. (i) three business days after the same is deposited in the United States Mail, registered or certified, return receipt requested, postage prepaid, (ii) one business day after the same is given to a nationally recognized overnight courier service for next business day delivery, or (iii) on the date of transmission if sent by electronic mail to the email address set forth below prior to 5 00 p m local time of the recipient on a business day (and otherwise on the next business day), provided that a paper copy of such notice is also dispatched no later than the next business day by either United States Mail, registered or certified, return receipt requested, postage prepaid, or by a nationally recognized overnight courier service for next business day delivery Notice given by email alone, without the required mailing or courier dispatch of a paper copy, shall not be effective Each such notice shall, in each instance, be addressed as follows

| | |
|---|---|
| To the Beneficiary | TRAG LLC<br>RG ENERGY LLC<br>2655 South Bayshore Drive, Suite 1702<br>Miami, FL 33133<br>Attn. Ajay Gupta<br>Email ajay@robbinsgupta com |
| And with a copy to | McDermott Will & Schulte LLP<br>919 Third Avenue<br>New York, NY<br>Attn Kristine Manoukian, Esquire<br>Email kmanoukian@mcdermottlaw com |
| | Robinson & McElwee PLLC<br>700 Virginia Street East, Suite 400<br>Charleston, WV 25301<br>Attn· Kent J. George<br>Lindsay M Stollings |

Email kjg@ramlaw com
lindsay stollings@ramlaw com

To the Trustee

Robinson & McElwee PLLC
700 Virginia Street East, Suite 400
Charleston, WV 25301
Attn: Kent J George
Lindsay M Stollings
Email kjg@ramlaw.com
lindsay stollings@ramlaw com

To the Grantor

Omnis Pleasants, LLC
No 1 Power Station
Belmont, WV
Attn David Hindman, CEO
Email dhindman@alixpartners com

And with a copy to

HSF Kramer
1177 Avenue of the Americas
New York, NY 10036
Attn Alexander Woolverton
Email alexander woolverton@hsfkramer com

Jackson Kelly
500 Lee Street East, Suite 1600
Charleston, WV 25301
Attn· Richard Dorsey
Email rdorsey@jacksonkelly com

Jackson Kelly
3000 Swiss Pine Way, Suite 200
Morgantown, WV 26501
Attn Brian Jett
Email bjett@jacksonkelly com

Any party may change any address to which Notice is to be given to it by giving Notice as provided above of such change of address Any notice may be given by counsel for a party with the same force and effect as if given by such party

The Lender and Indemnitor hereby each acknowledges and agrees that the "copy to" Notice to be given as set forth above is a courtesy copy only and the failure to give such a courtesy copy of a Notice shall not constitute a failure to give Notice to the principal party

**4.4 Binding Effect; Third Parties.** All provisions of this Deed of Trust shall run with the Land and shall bind and inure to the benefit of Grantor, Beneficiary, Trustee and their

respective heirs, executors, administrators, personal representatives, successors and assigns Except as otherwise expressly provided in this Deed of Trust, this Deed of Trust is for the exclusive benefit of such persons, and nothing set forth herein shall be deemed to be for the benefit of any other person If there is more than one Grantor at any time, all undertakings of Grantor under this Deed of Trust shall be deemed to be joint and several

**4.5 <u>Applicable Law; Severability</u>.** THIS DEED OF TRUST SHALL BE GOVERNED BY THE LAWS OF THE STATE OF WEST VIRGINA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW All rights, powers, privileges and remedies provided in this Deed of Trust may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Deed of Trust invalid, illegal or unenforceable. If any provision of this Deed of Trust or any of the other Loan Documents shall be invalid, illegal or unenforceable in any respect, then such provision alone shall be deemed to be null and void, and the validity, legality and enforceability of the remaining provisions of this Deed of Trust and of the other Loan Documents shall remain in full force and effect and shall not in any way be impaired or otherwise affected thereby

**4.6 <u>Changes</u>.** Neither this Deed of Trust nor any of the other Loan Documents, nor any provision of any of them, may be changed, waived, released, discharged, withdrawn, revoked, canceled or terminated orally, or by any action or inaction Any such change, waiver, release, discharge, withdrawal, revocation, cancellation or termination shall be effective only if set forth in a written document signed by the party against whom enforcement of such change, waiver, release, discharge, withdrawal, revocation, cancellation or termination is sought, and then shall be effective only to the extent specifically provided in such document Any agreement hereafter made by Grantor, Trustee or Beneficiary relating to this Deed of Trust or to any of the other Loan Documents shall, to the fullest extent permitted by law, be superior to the rights and interests of the holder, owner or Beneficiary of any intervening lien or encumbrance. Neither the modification of this Deed of Trust or any of the other Loan Documents nor the release of any part of the Property from the lien of this Deed of Trust shall impair the priority of such lien

**4.7 <u>Discretion</u>.** Each and every decision, determination, estimate, request, consent or similar matter to be made or given by Beneficiary from time to time pursuant to or in connection with this Deed of Trust shall be within its sole, absolute, unlimited and subjective discretion, except to the extent specifically provided to the contrary in this Deed of Trust or in any of the other Loan Documents All conditions to any agreement or obligation of Beneficiary or Trustee under or in connection with this Deed of Trust or any of the other Loan Documents (including any agreement or obligation to make any Compensation or other funds available to Grantor) are solely for the benefit of Beneficiary Any or all such conditions may be waived or relaxed at any time or times by Beneficiary No such waiver or relaxation in any particular instance shall affect Beneficiary's discretion in dealing with any such condition in any other instance

**4.8 <u>No Release</u>.** No obligation or liability of Grantor or any Guarantor in connection with the Indebtedness or the Property (whether existing or arising under this Deed of Trust, any of the other Loan Documents or otherwise) shall be changed, waived, released, discharged, withdrawn, revoked, canceled, terminated or otherwise affected (except to the extent expressly provided in this Deed of Trust, any of the other Loan Documents or any written agreement

executed by Beneficiary) by reason of any of the followmg· (a) any Casualty, Taking or other damage affectmg all or any part of the Property, (b) any restrction or preventıon of, or mterference wıth, any use of all or any part of the Property; (c) any tıtle defect, lıen or other encumbrance on all or any part of the Property or any evıction or dıspossessıon of any person from all or any part of the Property by paramount tıtle or otherwıse, (d) any bankruptcy, ınsolvency, reorganızatıon, arrangement, composıtıon, readjustment, lıquıdatıon, dıssolutıon, conservatorshıp, receıvershıp or sımılar case or proceedıng relatıng to Grantor, Prıncıpal or any Guarantor or any actıon taken wıth respect to the Indebtedness, the Property or any of the Loan Documents by any trustee, custodıan, receıver, conservator, master, lıquıdator or court ın connectıon wıth any such case or proceedıng, (e) any claım that any person may have agaınst Benefıcıary or Trustee, (f) any default or faılure by Benefıcıary or Trustee to perform or comply wıth any of the provısıons of thıs Deed of Trust, any of the other Loan Documents or any other agreement wıth Grantor, Prıncıpal or any Guarantor, (g) any consent or approval (whether conditional or unconditional) or any wıthholding of consent or approval to any matter for whıch Benefıcıary's consent or approval may be requıred, (h) any failure by Beneficiary or Trustee to comply wıth any request to foreclose thıs Deed of Trust, accept a deed or other conveyance or assıgnment of all or any part of the Property ın lıeu of foreclosure or otherwıse enforce any of Benefıcıary's rıghts, powers, prıvıleges or remedıes under thıs Deed of Trust or any of the other Loan Documents, (ı) any release of all or any part of the Property or any other securıty for the Indebtedness from the lıen of thıs Deed of Trust or from the effect of any of the other Loan Documents or any acceptance of other or addıtıonal securıty for all or any part of the Indebtedness, (ȷ) any release of any person from lıability for or ın connectıon wıth all or any part of the Indebtedness, (k) any compromise, settlement, forbearance or extensıon of tıme for payment or performance of or ın connectıon wıth the Indebtedness, (l) any waıver of, or other faılure by Benefıcıary or Trustee to exercıse, any rıght, power, prıvılege or remedy avaılable after the occurrence of any Event of Default or at any other tıme; (m) any agreement by Benefıcıary or Trustee, or any consent by Benefıcıary or Trustee to any agreement, modıfyıng the terms of thıs Deed of Trust or any of the other Loan Documents, modıfyıng the prıorıty of thıs Deed of Trust or modıfyıng the oblıgatıons or lıabılıtıes of any person ın connectıon wıth the Indebtedness, the Property or any of the Loan Documents, or (n) any other occurrence, whether similar or dıssımılar to any of the foregoıng occurrences, whether or not Grantor or any Guarantor shall have notıce or knowledge of any of the foregoing occurrences None of the foregoıng occurrences shall preclude Benefıcıary or Trustee (actıng at Benefıcıary's request) from exercısıng any rıght, power, prıvılege or remedy avaılable after the occurrence of any then-exıstıng or subsequent Event of Default, nor shall the prıorıty of the lien of thıs Deed of Trust be altered by any such occurrence (except to the extent expressly provıded ın any document or ınstrument executed by Benefıcıary)

**4.9** **Receipt of Copy Acknowledged.** Grantor hereby acknowledges that ıt has receıved an accurate and complete copy of thıs Deed of Trust, as executed

**4.10** **Commercial Transaction.** The transactıon of whıch thıs Deed of Trust ıs a part of a commercıal transactıon, and this Deed of Trust is gıven for commercıal purposes

**4.11** **Counterparts** Thıs Deed of Trust may be executed ın one or more counterparts, each of whıch shall be deemed to be an orıginal and all of which shall be deemed to be one and the same Deed of Trust

**4.12** **Trustee Acceptance and Actions.**

(a) Trustee's Acceptance of Trust. Trustee accepts this trust when this Deed of Trust is recorded

(b) Certain Actions of Trustee Upon the written request of Beneficiary, Trustee may at any time (i) reconvey all or any portion of the Property, (ii) consent to the making of any map or plat thereof, (iii) join in granting any easement thereon or in creating any covenants or conditions restricting the use or occupancy thereof, or (iv) join in any extension agreement or in any agreement subordinating the lien or charge hereof Any such action may be taken by Trustee without notice to Grantor, and shall not affect the personal liability of any person for the payment of the Indebtedness or the lien of this Deed of Trust upon the Property for the full amount of the Indebtedness.

(c) Reconveyance Upon the written request of Beneficiary stating that all sums secured hereby have been paid, and upon payment of its fees, Trustee shall reconvey without warranty the Property then held by Trustee hereunder

(d) Trustee's Covenants and Compensation Trustee, by its acceptance hereof, covenants faithfully to perform and fulfill the trust herein created, being liable, however, only for negligence or willful misconduct Trustee hereby waives any statutory fee and shall be entitled to, and hereby agrees to accept, reasonable compensation in lieu thereof for all services rendered or expenses incurred in the administration or execution of the trust hereby created Grantor hereby agrees to pay such compensation subject to any applicable legal limitations

**4.13 Substitution of Trustee.** If Beneficiary shall for any reason desire to remove Trustee (or any successor of Trustee) as trustee under this Deed of Trust and to appoint a new trustee in the place and stead of Trustee, then Beneficiary shall have the right, and is hereby irrevocably granted full power and authority, to remove Trustee and to appoint a successor trustee by a written document, which shall be duly executed and acknowledged so as to entitle such document to be recorded in the land records for the State of West Virgina Upon such recording, such document shall be conclusive proof of the proper substitution of such successor trustee Such successor trustee thereupon shall become Trustee under this Deed of Trust and shall automatically succeed to all title, estate, rights, powers and duties of the predecessor Trustee Beneficiary shall be entitled to exercise the right to appoint a successor trustee as many times as Beneficiary may desire Grantor hereby irrevocably consents to the naming of employees, agents and attorneys of Beneficiary as Trustee or successor trustee

**4.14 Resignation of Trustee.** Trustee may resign at any time upon giving not less than thirty (30) days' notice to Grantor and to Beneficiary Upon such resignation, Beneficiary may select and appoint a successor Trustee hereunder in the same manner as described in Section 4 13 above

**4.15 Ratification of Acts of Trustee.** Grantor hereby ratifies and confirms any and all acts which Trustee named herein or its successors or assigns in this trust shall do lawfully and in accordance with the provisions of this Deed of Trust by virtue hereof

**4.16 Cancellation of Deed of Trust.** If (a) the Indebtedness shall be fully, finally, and indefeasibly paid (without any deduction or credit for taxes or other charges) in accordance with

the Loan Documents, and (b) the provisions of the Loan Documents required to be kept, performed, observed and complied with by or on behalf of Grantor shall be so kept, performed, observed and complied with, then, after written request by Grantor, the Beneficiary shall direct Trustee to, and Trustee shall, reconvey the Property then subject to this Deed of Trust, all without warranty and all at the expense of Grantor The grantee in such reconveyance may be described as the "person or persons legally entitled thereto "

**4.17 Waiver of Jury Trial. GRANTOR, TRUSTEE (BY ACCEPTING THIS DEED OF TRUST) AND BENEFICIARY, FOR THEMSELVES AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, HEREBY (a) AGREE THAT NONE OF THEM SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, ACTION, PROCEEDING, COUNTERCLAIM OR OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF OR OTHERWISE RELATING TO THE INDEBTEDNESS, THIS DEED OF TRUST, ANY OF THE OTHER LOAN DOCUMENTS, ANY RELATED INSTRUMENT OR AGREEMENT, ANY COLLATERAL FOR ALL OR ANY PART OF THE INDEBTEDNESS, OR THE DEALINGS OR RELATIONSHIP BETWEEN OR AMONG GRANTOR, BENEFICIARY, TRUSTEE AND ANY GUARANTOR (OR ANY OF THEM) IN CONNECTION THEREWITH, (b) IRREVOCABLY WAIVE ANY AND ALL RIGHT TO ANY SUCH JURY TRIAL, AND (c) AGREE THAT NONE OF THEM SHALL SEEK TO CONSOLIDATE ANY SUCH LAWSUIT, ACTION, PROCEEDING, COUNTERCLAIM OR OTHER LITIGATION PROCEDURE AS TO WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LAWSUIT, ACTION, PROCEEDING, COUNTERCLAIM OR OTHER LITIGATION PROCEDURE AS TO WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. THIS SECTION HAS BEEN FULLY DISCUSSED BY GRANTOR, TRUSTEE AND BENEFICIARY, EACH OF WHOM HAS BEEN REPRESENTED BY COUNSEL. THIS SECTION SHALL NOT BE SUBJECT TO ANY EXCEPTIONS, AND NO SUCH PERSON HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PERSON THAT THIS SECTION WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.**

***[Remainder of Page Intentionally Left Blank; Signature Page Follows]***

**IN WITNESS WHEREOF,** Grantor has caused this Deed of Trust to be executed under seal by a person or persons duly authorized, all as of the day and year first above written

| **NOTICE OF INDEMNIFICATION· GRANTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING WITHOUT LIMITATION, THOSE CONTAINED IN SECTION 1.22 HEREOF), WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY GRANTOR OF BENEFICIARY OR TRUSTEE FROM CLAIMS OR LOSSES ARISING AS A RESULT OF BENEFICIARY'S OR TRUSTEE'S OWN NEGLIGENCE OR OTHER FAULT** | **GRANTOR**<br><br>**OMNIS PLEASANTS, LLC**<br><br>By [signature]<br>Name David Hindman<br>Title Chief Executive Officer of Omnis Pleasants, LLC |
|---|---|

STATE OF MASSACHUSETTS
) SS
COUNTY OF SUFFOLK )

On this 17th day of JUNE, 2026, before me personally appeared DAVID R HINDMAN, to me personally known, who, being duly sworn, did say that he/she the CHIEF EXECUTIVE OFFICER of **OMNIS PLEASANTS, LLC**, a Delaware limited liability company, and that said instrument was signed on behalf of said limited liability company by authority of its SOLE DIRECTOR, who acknowledged said instrument to be the free act and deed of said limited liability company

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my official seal at my office in the county and state aforesaid, the day and year last above written.

[signature]
Notary Public

[SEAL]

KATIE BECKLES
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires on
February 19, 2027

**Prepared By and Return to**
ROBINSON & MCELWEE PLLC
PO Box 1791
Charleston, WV
Attn Kent J George
(304) 347-8322

*[Signature Page to Deed of Trust]*

# EXHIBIT A

**Parcel No 1**
**Plant Site**

All that certain tract or parcel of land situated on the north side of West Virginia State Route 2 in Grant District, Pleasants County, West Virginia, being more particularly described as follows

Beginning at a concrete monument found in the northerly right of way line of WV Route 2, said point being a common corner to Eureka Pipeline Company,

Thence with said Eureka N 19° 09' 08" W 720 88' to a concrete monument found, common corner to Hammett Cemetery,

Thence leaving said Eureka Pipeline tract and with said cemetery for the following three (3) courses and distances
N 70° 49' 02" E 189 69' to a concrete monument found,
N 19° 08' 13" W 130 92' to a concrete monument w/brass plug found,
S 70° 50' 33" W 189 85' to a concrete monument found, common corner to aforementioned Eureka Pipeline Co ,

Thence with said Eureka Pipeline tract for the following five (5) courses and distances
N 19° 12' 00" W 255 31' to a 5/8" rebar and cap set,
S 77° 04' 45" W 149 70' to a 5/8" rebar and cap set,
S 63° 40' 00" W 439 11' to a 5/8" rebar and cap set,
N 19° 22' 24" W 629 34' to a concrete monument found,
S 63° 10' 08" W, passing a concrete monument found at 260 66', passing another concrete monument at 1050 14', in all 1310 80' to a concrete monument w/brass plug found in the southerly right of way line of B&O Railroad,

Thence leaving said Eureka Pipeline tract, and with said railroad right of way line for the following ten (10) courses and distances
N 47° 14' 44" E 2027 69' to a point,
With a curve to the right having a radius of 2267 01' and arc length of 573 48' to a point,
With a curve to the right having a radius of 8569 42' and arc length of 307 02' to a point,
With a curve to the right having a radius of 5704 65' and arc length of 994 29' to a point,
N 73° 46' 21" E 333 82' to a point,
S 16° 13' 39" E 5 00' to a point,
N 73° 46' 21" E 537 26' to a point,
N 18° 07' 39" W 5 00' to a 5/8" rebar and cap set,
N 73° 37' 52" E 480 21' to a point,
Thence with a curve to the left having a radius of 4322 08' and arc length of 456 57' to a concrete monument found, common corner to West Virginia Oil Gathering Corporation,

Thence with said WV Oil Gathering Corp properties for the following fifteen (15) courses and distances
S 60° 29' 15" W 162 77' to a point,
S 70° 03' 52" W 86 32' to a point,
S 66° 28' 52" W 110 43' to a point,
S 59° 19' 52" W 67 26' to a point,
N 30° 39' 08" W 13 48' to a point,
S 66° 28' 52" W 198 69' to a point,
S 73° 37' 52" W 314 12' to a concrete monument found,
S 18° 11' 56" E 5 00' to a concrete monument found,
S 73° 46' 22" W 57 82' to a concrete monument found,
S 16° 16' 46" E 40 00' to a concrete monument found,

N 73° 54' 34" E 59 09' to a concrete monument found,
S 18° 06' 55" E 548 38' to a concrete monument found,
N 70° 46' 40" E 811 93' to a concrete monument found,
S 86° 40' 42" E 199 69' to a concrete monument found,
N 19° 13' 27" W 710 55' to a concrete monument found in the railroad southerly right of way line,

Thence with said right of way line
N 62° 48' 12" E 673 35' to a 2" iron pipe found,
N 57° 57' 33" E 84 83' to a 2" iron pipe found,
N 59° 28' 16" E 85 91' to a 2" iron pipe found, common corner to Binegar,

Thence with said Binegar S 18° 19' 04" E 132 00' to a 5/8" rebar and cap set in the northerly right of way line of West Virginia County Route 2/9,

Thence with said Route 2/9
S 58° 23' 20" W 85 47' to a 2" iron pipe found,
S 58° 23' 20" W 83 91' to a 2" 5/8" rebar and cap set,
S 18° 58' 56" E 105 57' to a concrete monument found, corner to Doak,

Thence with said Doak S 18° 17' 43" E 570 77' to a point in the northerly right of way line of said Route 2,

Thence with said right of way line for the following five (5) courses and distances
S 49° 18' 17" W 545 29' to a concrete monument found,
S 49° 18' 17" W 161 08' to a concrete monument found,
S 48° 17' 27" W 2940 65' to a concrete monument found,
S 41° 42' 33" E 12 00' to a point,
S 48° 17' 34" W 1039 36' to the place of beginning, containing 168 43 acres, more or less

EXCEPTING AND RESERVING therefrom

(a) The part or portion thereof (1 48 acres) conveyed by Monongahela Power Company to MP Generating Company LLC by a Deed dated June 1, 2001, and of record in the Office of the Clerk of the County Commission of Pleasants County, WV, in Deed Book No 249, at Page 598, and a Confirmatory Deed from MP Generating Company LLC to Allegheny Energy Supply Company, LLC dated June 1, 2001, and of record in said Clerk's Office in Deed Book No 249, at Page 632,

(b) The part or portion thereof ( 21 acres) conveyed by Monongahela Power Company to Allegheny Energy Supply Company, LLC by a Deed dated December 20, 2006 and of record in said Clerk's Office in Deed Book No 265, at Page 108,

(c) All that certain tract of land situate in Grant District, Pleasants County, West Virginia, upon which the main plant facilities for the Willow Island Power Station and the Willow Island Substation are located Said tract, identified as Willow Island Power Station Tract 1 on Allegheny Energy Supply Company, LLC Drawing No C79403858, entitled "Pleasants / Willow Island Asset Swap," is more particularly bounded and described as follows

Beginning at a property corner established within the land now or formerly owned by Allegheny Energy Supply Company, LLC and Monongahela Power Company, said corner being located S 20° 21' 28" E 292 35 feet from a point on the southerly right of way line of the railroad (now or formerly the CSX System), thence by the following courses and distances, (1) N 20° 21' 28" W 292 35 feet, (2) Chord = 542 76 feet N 53° 41' 09" E Radius = 2267 01 feet Arc = 544 07 feet, (3) Chord = 307 00 feet N 61° 35' 15" E Radius = 8,569 42 feet Arc = 307 02 feet, (4) Chord = 41 28 feet N 62° 49' 16" E Radius = 5704 65 feet Arc = 41 28 feet, (5) S 20° 29' 51" E 66 55 feet, (6) N 69° 34' 18" E 568 00 feet, (7) S 09° 03' 32" W 1217 78 feet, (8) S 74° 33' 32" W 221 08 feet, (9) N 65° 16' 56" W 873 12 feet, to the point of beginning

Said tract of land contains 22 76 acres, more or less

(d) All that certain tract of land situate in Grant District, Pleasants County, West Virginia, upon which the waste water treatment lagoons for the Willow Island Power Station are located Said tract, identified as Willow Island Power Station Tract 2 on Allegheny Energy Supply Company, LLC Drawing No C79403858, entitled "Pleasants I Willow Island Asset Swap," is more particularly bounded and described as follows

Beginning at a property corner established within the land now or formerly owned by Allegheny Energy Supply Company, LLC and Monongahela Power Company, said corner being located N 20° 21' 28" W 90 09 feet from a 5/8" rebar and cap being a property corner with Allegheny Energy Supply Company, LLC, Monongahela Power Company and property now or formerly owned by Cytec Industries, Inc , thence by the following courses and distances,

1) N 20° 21' 28" W 496 44 feet
2) N 65° 36' 52" E 270 00 feet
3) S 20° 21' 28" E 496 44 feet
4) S 65° 36' 52" W 270 00 feet, to the point of beginning

Said tract of land contains 3 07 acres, more or less

(e) All those certain access road easements that provide ingress, egress and regress in and to the facilities affiliated with the Willow Island Power Station, the Willow Island Substation and the Eureka Substation, Said roadway easements are of varying widths, not to exceed a maximum of thirty feet in width, and are more particularly bounded and described by the center line descriptions identified as Easements 1 through 6 on the heretofore referenced Willow Island/Eureka Substations Subdivision Plan (Drawing No 518-129)

(f) All that certain right of way or roadway easement over and upon said item 1 and being more particularly bounded and described as containing 1 25 acres, more or less, to provide ingress, egress and regress between West Virginia Highway No 2 and the cemetery known as the Hammett Heirs Cemetery

g) All those tracts or parcels of land situate in Grant District, Pleasants County, West Virginia, and being more particularly described as follows

Tract No 2A

Containing 6,186 square feet of Noncontrolled Access Right of Way and is further identified as Parcel 1, Tract 1 on the plans for Project S337-2-2 56, as attached to a Deed of record in Deed Book No 284, at Page 612

Tract No 2B

Containing 29,830 square feet of Noncontrolled Access Right of Way and is further identified as Parcel 1, Tract 2 on the plans, as attached to a Deed of record in Deed Book No 284, at Page 612

The Tracts or parcels of land hereinabove described are the same tracts or parcels of land conveyed to the West Virginia Department of Transportation, Division of Highways, by Allegheny Energy Supply Company, LLC a Delaware limited liability company, and Monongahela Power Company, an Ohio corporation, by Deed dated October 12, 2011, and of record in said Clerk's Office in Deed Book No 284, at Page 612

NOTE By Deed dated December 22, 1980, and of record in Deed Book No 163, at Page 232, Monongahela Power Company, The Potomac Edison Company, and West Penn Power Company granted and conveyed unto the West Virginia Department of Highways all right, title, and interest

in and to a single parcel of land containing 0 810 acre, more or less, and being further identified as Parcel No 1 within said Deed The metes and bounds description for Parcel 2 contained herein was prepared subsequent to said conveyance

**Parcel No 2**
**7 62 Acres, more or less**
**(Deed Book No 294, at Page 112)**

All that certain parcel of land situated in Grant District, Pleasants County, West Virginia, identified as Pleasants Tract 2 on Allegheny Energy Supply Company Drawing C79403858 Said tract being more particularly bounded and described by the following courses and distances

Beginning at a point on the northerly right of way line of the railroad (now or formerly the CSX System), thence,
(1) N 20° 06' 58" W 190 13 feet to a point in the Ohio River, thence along the Ohio River by the following courses and distances,
(2) N 62° 28' 00" E 300 00 feet
(3) N 72° 42' 00" E 220 00 feet
(4) N 62° 34' 00" E 100 00 feet
(5) N 66° 22' 00" E 100 00 feet
(6) N 72° 48' 00" E 341 98 feet
(7) N 69° 45' 00" E 353 05 feet
(8) N 72° 13' 10" E 722 12 feet thence leaving said river,
(9) S 19° 17' 32" E 150 00' to a point in the northerly railroad right of way line, thence with said railroad right of way line for the following
(10) S 72° 36' 00" W 535 30 feet
(11) S 17° 24' 00" E 5 00 feet
(12) S 72° 36' 00" W 333 82 feet
(13) Chord = 1001 73 S 67° 36' 25" W Radius = 5754 65 feet Arc = 1003 00 feet
(14) Chord = 263 50 feet S 61° 44' 17" W Radius = 8619 42 feet Arc = 263 51 feet to the point of beginning

Said tract of land contains 7 62 acres, more or less

**Parcel No 3**
**0 29 Acre**

Being a tract of land located North of West Virginia County Route 2/9 and south of B&O Railroad in Grant District, Pleasants County, West Virginia, being more particularly described as follows

Beginning at a 2" iron pipe found in the northerly right of way line of West Virginia County Route 2/9, common corner to the church property,

Thence with said Church Property N 17° 56' 05" W 132 00' to a 5/8" rebar and cap set in the southerly line of B&O Railroad,

Thence with said railroad N 57° 43' 12" E 100 00' to a 5/8" rebar and cap set, corner to Tract 5,

Thence with said Tract 5 S 17° 29' 16" E 129 50' to a 1" iron pipe found in the northerly right of way line of aforementioned Route 2/9,

Thence with said right of way line S 56° 10' 53" W 99 68' to the place of beginning, containing 0 29 acre, more or less

**Parcel No. 4**
**0.63 Acre**

Beıng a tract of land located North of West Vırgınıa County Route 2/9 and South of B&O Raılroad ın Grant Dıstrıct, Pleasants County, West Vırgınıa, beıng more partıcularly descrıbed as follows

Begınnıng at a 1" ıron pıpe found ın the northerly rıght of way lıne of West Vırgınıa County Route 2/9, common corner to Tract 4,

Thence wıth saıd Tract 4 N 17° 29' 16" W 129 50' to a 5/8" rebar and cap set ın the southerly rıght of way lıne of B&O Raılroad,

Thence wıth saıd raılroad N 57° 38' 54" E 225 00' to a 5/8" rebar and cap set, corner to Pleasants Memorıal Estates, Inc ,

Thence wıth saıd Pleasants Memorıal Estates, Inc property for the followıng two courses and dıstances
S 05° 10' 26" W 188 46' to a 5/8" rebar and cap set,
S 59° 16' 03" W 148 82' to a 5/8" rebar and cap set,

Thence N 17° 29' 16" W 20 79' to the place of begınnıng, contaınıng 0 63 acre, more or less

**Parcel No 5**
**.93 Acre**

Beıng a tract of land located North of West Vırgınıa Route 2 and South of B&O Raılroad ın Grant Dıstrıct, Pleasants County, West Vırgınıa, beıng more partıcularly descrıbed as follows

Begınnıng at a 1" ıron pıpe found, common corner to Pleasants Memorıal Estates, Inc , thence wıth saıd Pleasants Memorıal Estates property N 25° 36' 39" W 190 15' to a 5/8" rebar and cap set ın the southerly rıght of way lıne of B&O Raılroad,

Thence wıth saıd raılroad N 58° 49' 20" E 212 43' to a 1" ıron pıpe found, corner to Buttrey,

Thence wıth saıd Buttrey S 25° 37' 05" E 210 76' to a 1" ıron pıpe found, common corner to aforementıoned Pleasants Memorıal Estates, Inc ,

Thence wıth Pleasants Memorıal Estates property S 64° 23' 21" W 211 46' to the place of begınnıng, contaınıng 0 93 acre, more or less

**Parcel No. 6**
**29.452 Acres**

All that pıece, parcel, or tract of land sıtuate ın Grant Dıstrıct, Pleasants County, West Vırgınıa, beıng more partıcularly bounded and descrıbed as follows

BEGINNING at a monument (found) on the southeasterly rıght-of-way of State Route 2 (varıable wıdth R/W), saıd monument beıng the northerly corner of the now or formerly Thomas G Hammett (Deed Book No 279, at Page 538),

thence, leavıng saıd Hammett, and wıth the southeasterly lıne of saıd State Route 2 the followıng three (3) courses and dıstances North 48° 16' 15" East, 179 87 feet to a rebar (found), thence, North 41° 43' 45" West, 12 00 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, North 48° 16' 15" East, 56 60 feet to a rebar (found), saıd rebar beıng the most westerly corner of the J&J Equıpment, Inc (Deed Book No 301, at Page 57),

thence, leavıng saıd State Route 2, wıth saıd J&J Equıpment, Inc , South 41° 12' 18" East, 308 52' to a spıke (found) at the most southerly corner of J&J Equıpment (Deed Book No 248, at Page 346),

thence, North 48° 07' 38" East, 314 64 feet to a rebar (found) at the most easterly corner of J&J Equıpment, Inc (Deed Book No 301, at Page 57),

thence, North 41° 41' 26" West, 308 13' to a rebar (found), ın the southeasterly lıne of saıd State Route 2,

thence, leavıng saıd J&J Equıpment, Inc , wıth saıd State Route 2 the followıng three (3) calls North 48° 17' 42" East, 386 21 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 53° 40' 03" East, 12 02 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, North 48° 17' 46" East, 806 42 feet to a 5/8" rebar and cap stamped "Thrasher" (set) ın the westerly lıne of a vacated WVDOT rıght-of-way (Deed Book No 294, at Page 112),

thence, leavıng saıd State Route 2, wıth the westerly lıne of saıd vacated rıght-of-way the followıng five (5) calls South 41° 42' 14" East, 36 72 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 15° 20' 36" East, 282 35 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 53° 08' 14" East, 71 75 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 79° 54' 14" East, 71 75 feet to a 5/8" rebar and cap stamped "Thrasher" (set),

thence, severıng the land of the grantor hereın the followıng three (3) calls North 86° 37' 18" East, 178 46 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 21° 29' 03" East, 496 64 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 59° 27' 56" West, 1244 00 feet to a 5/8" rebar and cap stamped "Thrasher" (set) on a northern lıne of Thomas G Hammett (Deed Book No 279, at Page 538), thence, wıth saıd Hammett the followıng three (3) calls South 81° 45' 46" West, 176 20 feet to a monument (found), thence, curvıng to the rıght 611 52 feet, havıng a radıus of 618 86 feet, a delta of 56° 35' 58" and a chord of whıch bears, North 69° 57' 38" West, 586 94 feet to a monument (found), thence, North 41° 41' 01" West, 137 02 feet to the BEGINNING containıng 29 452 acres

The followıng easements

1 Easement provıded for ın an Agreement dated October 1, 1977, and of record ın saıd Clerk's Office ın Deed Book No 149, at Page 7, by and between Amerıcan Cyanamıd Company and Monongahela Power Company

2 Easement provıded for ın a Deed of Easement dated December 20, 2006, and of record ın saıd Clerk's Office ın Deed Book No 265, at Page 247, by and between Monongahela Power Company and Allegheny Energy Supply Company, LLC

3 Easement provıded for ın an Agreement dated November 16, 1983, and of record ın saıd Clerk's Office ın Deed Book No 188, at Page 510, by and between John Carlton Lyne and Mary L Lyne and Monongahela Power Company

4 Easement provıded for ın an Easement Agreement dated December 8, 1977, and of record ın saıd Clerk's Office ın Deed Book No 149, at Page 64, by and between Elza F Adams and Edıth A Adams and Monongahela Power Company

5 Easement provıded for ın an Agreement dated July 3, 1984, and of record ın saıd Clerk's Office ın Deed Book No 196, at Page 112, by and between The Eureka Pıpe Lıne Company and Monongahela Power Company and Amendments thereto dated September 25, 1992, and of record ın saıd Clerk's Office ın Deed Book No 226, at Pages 414 and 523

6 Easement granted in a Deed dated February 3, 1998, and of record in said Clerk's Office in Deed Book No 240, at Page 423, from William F Grose and Margaret Jean Grose, his wife, to Monongahela Power Company and West Penn Power Company

The aforesaid tracts or parcels of land were determined by a survey prepared by Thrasher Engineering dated April 22, 2019, and last revised January 29, 2020, to be described as follows

AS-SURVEYED METES AND BOUNDS

**Parcel No. 1 - Plant Site**
**Tax Map 2, Parcels 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 32, 33, 65, 65.1, 65.2, 65.3, and 86**

All that piece, parcel, or tract of land situate in Grant District, Pleasants County, West Virginia, being more particularly bounded and described as follows

BEGINNING at POB#1, a disturbed monument (found) on the northwesterly right-of-way of State Route 2 (variable width R/W), said monument being an easterly corner of the now or formerly Cytec Industries, Inc (Deed Book No 229, at Page 54),

thence, leaving said northwesterly right-of-way and with a northeasterly line of Cytec Industries, Inc North 19° 10' 00" West, 720 76 feet to a concrete monument (found), said monument being the southern corner of the now or formerly Hammett Cemetery,

thence, leaving said Cytec Industries, Inc and with said Hammett Cemetery the following three (3) courses and distances North 70° 44' 15" East, 189 63 feet to a concrete monument (found), thence, North 19° 04' 50" West, 130 77 feet to a concrete monument (found), thence, South 70° 49' 19" West, 189 92 feet to a concrete monument (found), said monument being a northeasterly corner of the aforementioned Cytec Industries, Inc ,

thence, leaving said Hammett Cemetery and with said Cytec Industries, Inc the following five (5) courses and distances North 19° 12' 02" West, 255 73 feet to a disturbed iron rod (found), thence, South 77° 00' 02" West, 149 72 feet to a rebar (found), thence South 63° 41' 06" West, 438 99 feet to a rebar (found), thence, North 19° 24' 32" West, 629 25 feet to a disturbed iron rod (found), thence South 63° 10' 24" West, 1310 68 feet, passing over a concrete monument (found) at 860 83 feet to a concrete monument (found), said monument lies on the southerly line of CSX Transportation,

thence, leaving Cytec Industries, Inc and with the southerly lines of CSX Transportation the following ten (10) courses and distances North 47° 15' 12" East, 2027 59 feet to a point, thence, 573 48 feet along the arc of a curve to the right, having a radius of 2267 01 feet, a delta of 14° 29' 38" and a chord of North 54° 29' 40" East, 571 95 feet to a point, thence, 307 02 feet along the arc of a curve to the right, having a radius of 8569 42 feet, a delta of 02° 03' 10" and a chord of North 62° 46' 08" East, 307 00 feet to a point, thence, 994 29 feet along the arc of a curve to the right, having a radius of 5704 65 feet, a delta of 09° 59' 11" and a chord of North 68° 47' 14" East 993 03 feet to a point, thence, North 73° 46' 49" East, 333 82 feet to a point, thence, South 16° 13' 11" East, 5 00 feet to a point, thence, North 73° 46' 49" East, 537 26 feet to a point, thence, North 18° 07' 11" West, 5 00 feet to a rebar (found), thence, North 73° 37' 36" East, 480 29 feet to a point, thence 456 65 feet along the arc of a curve to the left, having a radius of 4322 08 feet, a delta of 06° 03' 13" and a chord of North 70° 35' 57" East, 456 44 feet to a rebar found, said rebar being a northerly corner of the now or formerly Ohio River Valley Pipeline, Inc (Deed Book No 295, at Page 150),

thence, leaving CSX Transportation and with the northerly lines of Ohio River Valley Pipeline, Inc the following eight (8) courses and distances South 60° 29' 33" West, 162 77 feet to a point, thence, South 70° 04' 10" West, 86 32 feet to a point, thence, South 66° 29' 10" West, 110 43 feet to a point, thence, South 59° 20' 10" West, 67 26 feet to a point, thence North 30° 38' 50" West, 13 48

feet to a pont, thence, South 66° 29' 10" West, 198 69 feet to a pont, thence, South 73° 38' 10" West, 314 12 feet to a rebar (found), thence, South 18° 06' 20" East, 5 07 feet to a rebar (found), said rebar being the northerly corner of a second Ohio River Valley Pipeline, Inc parcel (Deed Book No 295, at Page 150),

thence, leaving the first Ohio River Valley Pipeline, Inc parcel and with the second Ohio River Valley Pipeline, Inc parcel the following three (3) courses and distances South 73° 45' 49" West, 57 83 feet to a rebar (found), thence, South 16° 18' 42" East, 40 02 feet to a rebar (found), thence, North 73° 41' 25" East, 59 08 feet to a concrete monument (found), said monument lies on the westerly line of the first mentioned Ohio River Valley Pipeline, Inc parcel,

thence, leaving the second Ohio River Valley Pipeline, Inc parcel and with the first Ohio River Valley Pipeline, Inc parcel the following four (4) courses and distances South 18° 06' 20" East, 548 25 feet to a concrete monument (found), thence North 70° 47' 17" East, 812 08 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 86° 40' 55" East, 199 83 feet to a leaning rebar (found), thence, North 19° 14' 42" West, 710 57 feet to a rebar (found), said rebar lies on a southerly line of aforementioned CSX Transportation,

thence, leaving the first Ohio River Valley Pipeline, Inc parcel and with the southerly lines of CSX Transportation three (3) courses and distances North 62° 46' 57" East, 673 2 feet to iron pipe (found), thence, North 58° 07' 49" East, 84 87 feet to an iron pipe (found), thence, North 59° 26' 01" East, 85 88 feet to an iron pipe (found), said pipe being the northwesterly corner of David and Nancy Wells (Deed Book No 289, at Page 355),

thence, leaving CSX Transportation and with the westerly line of Wells South 18° 18' 50" East, 129 68 feet to an iron pipe found, said pipe lies on the northerly line of an "alley" described in Deed Book No 106, at Page 191, said "alley" is now known as Lower Eureka Lane - Route 2/9 (30' prescriptive R/W),

thence, leaving Wells and with the said "alley" and Lower Eureka Lane the following three (3) courses and distances South 56° 54' 45" West, 86 06 feet to an iron pipe (found), thence, South 58° 20' 01" West, 83 56 feet to a rebar (found), thence, South 19° 39' 24" East, 99 96 feet to an iron pipe (found), said pipe being a northwesterly corner of Leota M Doak (Deed Book No 106, at Page 191),

thence, with the westerly line of Doak South 18° 10' 43" East, 576 42 feet to a 5/8" rebar and cap stamped "Thrasher" (set), said rebar lies on the first mentioned northwesterly right-of-way of State Route 2,

thence, with the northwesterly right-of-way of State Route 2 the following three (3) courses and distances South 50° 27' 57" West, 39 47 feet to a rebar (found), thence, North 41° 01' 48" West, 34 94 feet to a rebar (found), thence, South 48° 18' 14" West, 525 65 feet to a rebar (found), said rebar being on the easterly right-of-way of Lower Eureka Lane - Route 2/9 (variable width and 30' prescriptive R/W),

thence, with said right-of-way the following thirteen (13) courses and distances South 83° 17' 56" West, 61 09 feet to a rebar (found), thence, North 42° 04' 51" West, 137 97 feet to a rebar (found), thence, South 68° 56' 52" West, 14 00 feet to a point, thence, South 26° 05' 11" East, 174 47 feet to a point, thence, South 53° 03' 51" East, 35 30 feet to a point, thence, South 49° 18' 27" West 35 61 feet to a point, thence, North 35° 27' 22" West, 34 04 feet to a point, thence, North 23° 54' 35" West, 233 43 feet to a point, thence, South 71° 58' 21" West, 15 00 feet to a rebar (found), thence, South 21° 14' 22" East, 115 33 feet to a rebar (found), thence, South 27° 13' 52" East, 43 17 feet to a rebar (found), thence, South 31° 07' 12" East, 95 06 feet to a rebar (found), thence, South 35° 00' 39" West, 81 82 feet to a 5/8" rebar and cap stamped "Thrasher" (set), said rebar lies on the first mentioned northwesterly right-of-way of State Route 2,

thence, with the northwesterly right-of-way of State Route 2 the following three courses and distances South 48° 17' 37" West, 2855 70 feet to a concrete monument (found), thence, South 41° 42' 43" East, 12 00 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 48° 17' 25" West, 1039 13 feet to the beginning containing 167 714 acres saving and excepting the parcels listed below leaving a net area of 141 671 acres Note parcel "a" lies entirely within parcel "c "

Saving and reserving the following parcels

(a) BEGINNING POB#1A thence, 29 41 feet along the arc of a curve to the right, having a radius of 2267 01 feet, a delta of 00° 44' 36" and a chord of North 47° 37' 09" East, 29 41 feet, thence, South 65° 46' 57" East, 378 55 feet to a rebar (found) the True Point of Beginning,

Thence, North 70° 34' 03" East, 128 00 feet to a point, thence, South 20° 07' 52" East, 42 28 feet to a point, thence, North 70° 29' 35" East, 83 33 feet to a point, thence, South 19° 15' 15" East, 7 22 feet to a point, thence, North 70° 42' 25" East, 130 32 feet to a point, thence, North 19° 38' 22" West, 2 77 feet to a point, thence, North 70° 35' 41" East, 11 70 feet to a point, thence, South 19° 20' 04" East, 166 65 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 70° 58' 07" West, 353 35 feet to a monument (found), thence, North 19° 29' 21" West, 211 12 feet to the True Point of Beginning containing 1 482 acres

(b) BEGINNING POB#1B, a monument (found), thence North 80° 19' 54" East, 546 39 feet to the True Point of Beginning, a monument (found), thence North 72° 33' 32" East, 81 77 feet to a monument (found), thence South 17° 37' 34" East, 111 03 feet to a monument (found), thence South 72° 19' 58" West, 81 74 feet to a monument (found), thence North 17° 38' 13" West, 111 36 feet to the True Point of Beginning containing 0 209 acre

(c) BEGINNING POB#1 A, thence, 29 41 feet along the arc of a curve to the right, having a radius of 2267 01 feet, a delta of 00° 44' 36" and a chord of North 47° 37' 09" East, 29 41 feet to the True Point of Beginning, thence, 544 07 feet along the arc of a curve to the right, having a radius of 2267 01 feet, a delta of 13° 45' 02" and a chord of North 54° 52' 02" East, 542 76 feet to a point, thence, 307 02 feet along the arc of a curve to the right, having a radius of 8569 42 feet, a delta of 02° 03' 10" and a chord of North 62° 46' 08" East, 307 00 feet to a point, thence, 41 28 feet along the arc of a curve to the right, having a radius of 5704 65 feet, a delta of 00° 24' 53" and a chord of North 64° 00' 09" East, 41 28 feet to a point, thence, South 19° 18' 58" East, 66 55 feet to a point thence, North 70° 45' 11" East, 568 00 feet to a point, thence, South 10° 14' 25" West, 1217 78 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 75° 44' 24" West, 221 08 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, North 64° 06' 03" West, 873 12 feet to a point, thence, North 19° 10' 35" West, 292 35 feet to the beginning containing 22 764 acres

(d) BEGINNING at POB#1C, thence N 19° 12' 02" West, 90 09 feet to a 5/8" rebar and cap stamped "Thrasher" (set), the True Point of Beginning, thence North 19° 12' 02" West, 496 44 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, North 66° 46' 18" East, 270 00 feet to a point, thence, South 19° 12' 02" East, 496 44 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 66° 46' 18" West, 270 00 feet to the True Point of Beginning containing 3 070 acres

**Parcel No. 2**
**Plant Site**
**Tax Map 2, Parcel 34**

All that piece, parcel, or tract of land situate in Grant District, Pleasants County, West Virginia, being more particularly bounded and described as follows

BEGINNING at POB#2 a point on the northerly line of CSX Transportation, said point also being a northeasterly corner of now or formerly Allegheny Energy Supply Company, LLC (Deed Book No 265, at Page 142, and Deed Book No 265, at Page 108),

thence, leaving the northerly line of CSX Transportation and with the northeasterly line of Allegheny Energy Supply Company, LLC North 18° 55' 40" West, 190 20 feet to a point in the Ohio River,

thence, leaving Cytec Industries, Inc and with the Ohio River the following seven (7) courses and distances North 63° 39' 11" East, 300 00 feet to a point, thence, North 73° 53' 11" East, 220 00 feet to a point, thence, North 63° 45' 11" East, 100 00 feet to a point, thence, North 67° 33' 11" East, 100 00 feet to a point, thence, North 73° 59' 11" East, 341 98 feet to a point, thence, North 70° 56' 11" East, 352 92 feet to a point, thence, North 73° 24' 21" East, 722 43 feet to a point,

thence, leaving the Ohio River South 18° 06' 06" East, 150 00 feet to rebar (found), said rebar lies on the first mentioned northerly line of CSX Transportation,

thence, with the northerly line of CSX Transportation the following five (5) courses and distances South 73° 47' 11" West, 535 39 feet to a point, thence, South 16° 12' 49" East, 5 00 feet to a point, thence, South 73° 47' 11" West, 333 82 feet to a point, thence, 1003 01 feet along the arc of a curve to the left, having a radius of 5754 65 feet, a delta of 09° 59' 11" and a chord of South 68° 47' 35" West 1001 74 feet to a point, thence, 263 60 feet along the arc of a curve to the left, having a radius of 8619 42 feet, a delta of 01° 45' 08" and a chord of South 62° 55' 00" West, 263 59 feet to the beginning containing 7 624 acres

**Parcel No 3**
**Tax Map 2, Parcel 31**

All that piece, parcel, or tract of land situate in Grant District, Pleasants County, West Virginia, being more particularly bounded and described as follows

BEGINNING at POB#3, an iron pipe (found) on the northerly side of Lower Eureka Lane - Route 2/9 (30' prescriptive R/W), said pipe being the southeasterly corner of the now or formerly David and Nancy Wells (Deed Book No 289, Page 355),

thence, leaving Lower Eureka Lane and with Wells North 17° 38' 54" West, 131 14 feet to an iron pipe (found), said pipe lies on the southerly line of CSX Transportation,

thence leaving Wells and with the southerly line of CSX Transportation North 57° 34' 03" East, 99 40 feet to a 5/8" rebar and cap stamped "Thrasher" (set), said rebar being the northwesterly corner of the now or formerly Allegheny Energy Supply Company, Inc (Deed Book No 294, Page 112 - eastern portion of Item 4),

thence, leaving southerly line of CSX Transportation and with westerly line of Allegheny Energy Supply Company, Inc South 17° 29' 00" East, 128 75 feet to an iron pipe (found), said pipe lies on the northerly side of Lower Eureka Lane - Route 2/9 (30' prescriptive R/W),

thence, leaving Allegheny Energy Supply Company, Inc and with the northerly side of Lower Eureka Lane South 56° 11' 08" West, 99 68 feet to the beginning containing 0 286 acre

**Parcel No. 4**
**Tax Map 2, Parcel 73.2**

All that piece, parcel, or tract of land situate in Grant District, Pleasants County, West Virginia, being more particularly bounded and described as follows

BEGINNING at POB#4 an ıron pıpe (found) on a northerly lıne of now or formerly Pleasants Memorıal Estates, Inc (Deed Book No 217, Page 31), saıd poınt also lıes at the termınus of Lower Eureka Lane - Route 2/9 (30' prescrıptıve R/W),

thence, leavıng Pleasants Memorıal Estates, Inc and wıth the termınus of Lower Eureka Lane and the easterly lıne of Allegheny Energy Supply Company, Inc (Deed Book No 294, Page 112 - western portıon of Item 4) North 17° 29' 00" West, 149 54 feet passıng over an ıron pıpe found at 20 75 feet) to a 5/8" rebar and cap stamped "Thrasher" (set), saıd rebar lıes on the southerly lıne of CSX Transportatıon,

thence, leavıng Allegheny Energy Supply Company, Inc and wıth the southerly lıne of CSX Transportatıon North 57° 29' 46" East, 225 46 feet to a poınt, saıd poınt beıng the northwesterly corner of now or formerly Tımothy L Sweeney and Charlene D Sweeney (Deed Book No 293, Page 313),

thence leavıng CSX Transportatıon and wıth a westerly lıne of Sweeney South 05° 15' 47" West, 188 54 feet to an ıron pıpe (found), saıd pıpe beıng the northeasterly corner of the first mentıoned Pleasants Memorıal Estates, Inc ,

thence, leavıng Sweeney and wıth a northerly lıne of Pleasants Memorıal Estates, Inc South 59° 16' 18" West, 148 82 feet to the begınnıng contaınıng 0 634 acre

**Parcel No. 5**
**Tax Map 2, Parcel 1**

All that pıece, parcel, or tract of land sıtuate ın Grant Dıstrıct, Pleasants County, West Vırgınıa, beıng more partıcularly bounded and descrıbed as follows

BEGINNING at POB#5 an ıron pıpe (found) on the southerly lıne of CSX Transportatıon, saıd pıpe beıng the northwesterly corner of the now or formerly Tımothy B Shultz and Debra J Buttery (Deed Book No 298, Page 83),

thence, leavıng CSX Transportatıon and wıth the westerly lıne of Shultz and Buttery South 25° 39' 33" East 211 61 feet to a monument (found), saıd monument beıng the northwesterly corner of a second now or formerly Tımothy B Shultz and Debra J Buttery parcel (Deed Book No 300, Page 297), saıd monument also beıng a northerly corner of now or formerly Tımothy L Sweeney and Charlene D Sweeney (Deed Book No 293, Page 313),
thence, leavıng Shultz and Buttery and wıth the northerly lınes of Sweeney the followıng two (2) courses and dıstances South 64° 35' 59" West, 211 66 feet to an ıron pıpe (found), thence, North 25° 41' 10" West, 190 24 feet to an ıron pıpe found, saıd pıpe lıes on the first mentıoned southerly lıne of CSX Transportatıon,

thence, leavıng Sweeney and wıth the southerly lıne of CSX Transportatıon North 58° 50' 03" East, 212 73 feet to the begınnıng contaınıng 0 977 acre

**Parcel No. 6**
**Tax Map 2, Parcel 40**

All that pıece, parcel, or tract of land sıtuate ın Grant Dıstrıct, Pleasants County, West Vırgınıa, beıng more partıcularly bounded and descrıbed as follows

BEGINNING at POB#6 a monument (found) on the southeasterly rıght-of-way of State Route 2 (varıable wıdth R/W), saıd monument beıng the northerly corner of the now or formerly Thomas G Hammett (Deed Book No 279, at Page 538),

thence, leavıng saıd Hammett, and wıth the southeasterly lıne of saıd State Route 2 the followıng three (3) courses and dıstances North 48° 16' 15" East, 179 87 feet to a rebar (found), thence, North 41° 43' 45" West, 12 00 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, North 48° 16' 15" East, 56 60 feet to a rebar (found), saıd rebar beıng the most westerly corner of the J&J Equıpment, Inc (Deed Book No 301, at Page 57),

thence, leavıng saıd State Route 2, wıth saıd J&J Equıpment, Inc , South 41° 12' 18" East, 308 52 feet to a spıke (found) at the most southerly corner of J&J Equıpment (Deed Book No 248, at Page 346),

thence, North 48° 07' 38" East, 314 64 feet to a rebar (found) at the most easterly corner of J&J Equıpment, Inc (Deed Book No 301, at Page 57),

thence, North 41° 41' 26" West, 308 13 feet to a rebar (found), ın the southeasterly lıne of saıd State Route 2,

thence, leavıng saıd J&J Equıpment, Inc , wıth saıd State Route 2 the followıng three (3) calls North 48° 17' 42" East, 386 21 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 53° 40' 03" East, 12 02 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, North 48° 17' 46" East, 806 42 feet to a 5/8" rebar and cap stamped "Thrasher" (set) ın the westerly lıne of a vacated WVDOT rıght-of-way (Deed Book No 294, at Page 112),

thence, leavıng saıd State Route 2, wıth the westerly lıne of saıd vacated rıght-of-way the followıng five (5) calls South 41° 42' 14" East, 36 72 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 15° 20' 36" East, 282 35 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 53° 08' 14" East, 71 75 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 79° 54' 14" East, 71 75 feet to a 5/8" rebar and cap stamped "Thrasher" (set),

thence, severıng the land of the grantor hereın the followıng three (3) calls North 86° 37' 18" East, 178 46 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 21° 29' 03" East, 496 64 feet to a 5/8" rebar and cap stamped "Thrasher" (set), thence, South 59° 27' 56" West, 1244 00 feet to a 5/8" rebar and cap stamped "Thrasher" (set) on a northern lıne of Thomas G Hammett (Deed Book No 279, at Page 538), thence, wıth saıd Hammett the followıng three (3) calls South 81° 47' 34" West, 176 20 feet to a monument (found), thence, curvıng to the rıght 611 52 feet, havıng a radıus of 618 86 feet, a delta of 56° 35' 58" and a chord of whıch bears North 69° 57' 38" West, 586 94 feet to a monument (found), thence, North 41° 41' 01" West, 137 02 feet to the BEGINNING contaınıng 29 452 acres

**Parcel No. 7**

The followıng appurtenant Easements granted by Allegheny Energy Supply Company, LLC, a Delaware lımıted lıabılıty company, and Monongahela Power Company, an Ohıo corporatıon, to Pleasants LLC, a Delaware lımıted lıabılıty company, by Easement Agreements dated as of January 30, 2020, and by an Easement Agreement dated as of January 30, 2020, granted by Allegheny Energy Supply, LLC, a Delaware lımıted lıabılıty company, to Pleasants LLC, a Delaware lımıted lıabılıty company, and of record ın saıd Clerk's Office ın Deed Book No 334, at Page 278, and Deed Book No 334, at Page 339

<u>MONONGAHELA POWER COMPANY PROPERTY</u>
<u>C/L 16' ACCESS EASEMENT #5</u>

BEGINNING at a poınt on a southerly lıne of CSX Transportatıon, thence 11 19' along the arc of a curve to the left, havıng a radıus of 2267 01' to the True Poınt of Begınnıng, thence through the subject property the followıng five (5) courses and dıstances

1) S 82° 55' 28" E, a dıstance of 109 60' to a poınt, thence,

2) 46 98' along the arc of a curve to the left, having a radius of 120 00', a delta of 22° 26' 01" and a chord of N 85° 51' 32" E, a distance of 46 69' to a point, thence,
3) N 74° 38' 32" E, a distance of 53 02' to a point, thence,
4) 20 02' along the arc of a curve to the right, having a radius of 25 00', a delta of 45° 53' 27" and a chord of S 82° 24' 45" E, a distance of 19 49' to a point, thence,
5) S 59° 28' 02" E, a distance of 56 25'

MONONGAHELA POWER COMPANY PROPERTY
C/L 22' ACCESS EASEMENT #6

BEGINNING at a rebar set at a southerly corner of Tax Map 2-81, thence along the southerly line of Tax Map 2-81

N 64° 06' 03" W, a distance of 31 48' to the True Point of Beginning, thence through the subject property the following twelve (12) courses and distances

1) N 06° 21' 11" W, a distance of 240 41' to a point, thence,
2) 135 26' along the arc of a curve to the left, having a radius of 1250 00', a delta of 06° 11' 59" and a chord of N 09° 27' 11" W, a distance of 135 19' to a point, thence,
3) N 12° 33' 11" W, a distance of 67 06' to a point, thence,
4) 117 43' along the arc of a curve to the right, having a radius of 600 00', a delta of 11° 12' 49" and a chord of N 06° 56' 46" W, a distance of 117 24' to a point, thence,
5) N 01° 20' 22" W, a distance of 52 26' to a point, thence,
6) 80 79' along the arc of a curve to the left, having a radius of 250 00', a delta of 18° 30' 57" and a chord of N 10° 35' 51" W, a distance of 80 44' to a point, thence,
7) N 19° 51' 19" W, a distance of 172 03' to a point, thence,
8) 142 42' along the arc of a curve to the right, having a radius of 90 00', a delta of 90° 40' 13" and a chord of N 25° 28' 47" E, a distance of 128 02' to a point, thence,
9) N 70° 48' 54" E, a distance of 303 46' to a point, thence,
10) 63 17' along the arc of a curve to the right, having a radius of 200 00', a delta of 18° 05' 51" and a chord of N 79° 51' 50" E, a distance of 62 91' to a point, thence,
11) 71 42' along the arc of a curve to the left, having a radius of 300 00, a delta of 13° 38' 22" and a chord of N 82° 0 5' 34" E, a distance of 71 25' to a point, thence,
12) N 75° 16' 23" E, a distance of 118 09' to a point

MONONGAHELA POWER COMPANY PROPERTY
DRAIN AND COAL PILE EASEMENT #7

BEGINNING at a rebar set at a southerly corner of Tax Map 2-81, thence along the southerly line of Tax Map 2- 81

N 64° 06' 03" W, a distance of 18 47' to a point, thence parallel and 11' east and south of the C/L of 22' Access Easement #6 the following twelve (12) courses and distances

1) N 06° 21' 11" W, a distance of 247 35' to a point, thence,
2) 136 45' along the arc of a curve to the left, having a radius of 1261 00', a delta of 06° 11' 59" and a chord of N 09° 27' 11" W, a distance of 136 38' to a point, thence,
3) N 12° 33' 11" W, a distance of 67 06' to a point, thence,
4) 115 27' along the arc of a curve to the right, having a radius of 589 00', a delta of 11° 12' 49" and a chord of N 06° 56' 46" W, a distance of 115 09' to a point, thence,
5) N 01° 20' 22" W, a distance of 52 26' to a point, thence,
6) 84 35' along the arc of a curve to the left, having a radius of 261 00', a delta of 18° 30' 57" and a chord of N 10° 35' 51" W, a distance of 83 98' to a point, thence,
7) N 19° 51' 19" W, a distance of 172 03' to a point, thence,
8) 125 02' along the arc of a curve to right, having a radius of 79 00', a delta of 90° 40' 13" and a chord of N 25° 28' 47" E, a distance of 112 37' to a point, thence,

9) N 70° 48' 54" E, a dıstance of 303 46' to a poınt, thence,
10) 59 70' along the arc of a curve to the rıght, havıng a radıus of 189 00', a delta of 18° 05' 51" and a chord of N 79° 51' 50" E, a dıstance of 59 45' to a poınt, thence,
11) 74 03' along the arc of a curve to the left, havıng a radıus of 311 00', a delta of 13° 38' 22" and a chord of N 82° 05' 34" E, a distance of 73 86' to a poınt, thence,
12) N 75° 16' 23" E, a dıstance of 112 97' to a poınt on the easterly lıne of Tax Map 2-81, thence wıth the easterly and southerly lıne of Tax Map 2-81 the followıng two (2) courses and dıstances
    1) S 10° 14' 25" W, a dıstance of 1077,95' to a poınt, thence,
    2) S 75° 44' 25" W, a dıstance of 221 08' to the Poınt of Begınnıng

MONONGAHELA POWER COMPANY PROPERTY
C/L 24' DIESEL TANK AND PUMP CONTROL EASEMENT #8

BEGINNING at a northeasterly corner of Tax Map 2-81, thence,

S 10° 14' 25" W, a dıstance of 127 70' to a poınt, thence through the subȷect property the followıng three (3) courses and dıstances

1) S 75° 16' 23" W, a dıstance of 118 09' to a poınt, thence,
2) 71 42' along the arc of a curve to the rıght, havıng a radıus of 300 00', a delta of 13° 38' 22" and a chord of S 82° 05' 34" W, a dıstance of 71 25' to a poınt, thence,
3) 27 94' along the arc of a curve to the left, havıng a radıus of 200 00', a delta of 08° 00' 19" and a chord of S 84° 54' 35" W, a dıstance of 27 94' to the True Poınt of Begınnıng, thence contınuıng through the subȷect property the followıng two (2) courses and dıstances
    1) S 18° 15' 17" E, a dıstance of 80 61' to a poınt, thence,
    2) S 69° 44' 43" W, a dıstance of 29 71' to a poınt

ALLEGHENY ENERGY SUPPLY COMPANY, LLC PROPERTY
ACCESS ROAD EASEMENT #12

BEGINNING at a rebar set on the southern rıght-of-way of S Pleasants Hıghway — Route #2, thence wıth the southern rıght-of-way of S Pleasants Hıghway

N 48° 17' 46" E, a dıstance of 99 92' to a poınt, thence through the subȷect property the followıng four (4) courses and dıstances

1) S 12° 59' 14" E, a dıstance of 154 44' to a poınt, thence,
2) S 77° 00' 46" W, a dıstance of 66 94' to a poınt, thence,
3) N 15° 20' 36" W, a dıstance of 74 29' to a poınt, thence,
4) N 41° 42' 14" W, a dıstance of 36 72' to the poınt of begınnıng

ALLEGHENY ENERGY SUPPLY COMPANY, LLC PROPERTY
C/L 15' STORM DRAINAGE EASEMENT #13

BEGINNING at a rebar set on the southern rıght-of-way of S Pleasants Hıghway — Route #2, thence through the subȷect property

S 41° 42' 14" E, a dıstance of 27 38' to the True Poınt of Begınnıng, thence through the subȷect property the followıng two (2) courses and dıstances

1) S 75° 05' 21" E, a dıstance of 89 63' to a poınt, thence,
2) S 58° 14' 29" E, a dıstance of 224 44' to a poınt

## ALLEGHENY ENERGY SUPPLY COMPANY, LLC PROPERTY
## C/L 30' SLURRY LINE EASEMENT #15

BEGINNING at a rebar found on the southern right-of-way of S Pleasants Highway — Route #2, said rebar being the northwesterly corner of the J&J Equipment, Inc property, thence with the southern right-of-way of S Pleasants Highway

S 48° 16' 50" W, a distance of 34 11' to the True Point of Beginning, thence through the subject property the following seventeen (17) courses and distances

1) S 39° 31' 45" E, a distance of 273 43' to a point, thence,
2) 304 84' along the arc of a curve to the left, having a radius of 300 00', a delta of 58° 13' 15" and a chord of S 68° 38' 22" E, a distance of 291 90' to a point, thence,
3) N 82° 15' 00" E, a distance of 532 06' to a point, thence,
4) N 81° 23' 46" E, a distance of 468 90' to a point, thence,
5) N 72° 39' 18" E, a distance of 304 45' to a point, thence,
6) N 70° 22' 06" E, a distance of 540 36' to a point, thence,
7) N 72° 49' 11" E, a distance of 540 77' to a point, thence,
8) N 71° 08' 28" E, a distance of 430 89' to a point, thence,
9) N 66° 58' 54" E, a distance of 145 63' to a point, thence,
10) S 76° 09' 41" E, a distance of 502 52' to a point, thence,
11) S 64° 13' 47" E, a distance of 248 03' to a point, thence,
12) S 62° 05' 57" E, a distance of 303 78' to a point, thence,
13) S 89° 55' 44" E, a distance of 237 18' to a point, thence,
14) S 74° 15' 18" E, a distance of 239 74' to a point, thence,
15) S 42° 48' 55" E, a distance of 365 59' to a point, thence,
16) S 47° 57' 55" E, a distance of 103 57' to a point, thence,
17) S 32° 06' 01" E, a distance of 65 70' to a point

## ALLEGHENY ENERGY SUPPLY COMPANY, LLC PROPERTY
## C/L 20' REUSE MAKEUP WATERLINE EASEMENT #16

BEGINNING at rebar set on a northerly line of the Thomas G Hammett property, thence through the subject property

N 59° 27' 56" E, a distance of 312 09' to the True Point of Beginning, thence through the subject property the following six (6) courses and distances

1) N 81° 51' 40" E, a distance of 396 45' to a point, thence,
2) N 75° 45' 24" E, a distance of 419 30' to a point, thence,
3) N 70° 52' 10" E, a distance of 524 29' to a point, thence,
4) N 72° 48' 45" E, a distance of 387 20' to a point, thence,
5) N 73° 20' 36" E, a distance of 437 15' to a point, thence,
6) N 48° 02' 46" E, a distance of 225 61' to a point in the center of a 110 00' by 160 00' rectangle, which is the approximate location of a vault containing a reuse makeup water line, siphon discharge line valves and controls, which is to be included in this easement

## PLEASANTS COAL PILE SAMPLING EASEMENT #29

BEGINNING at a 5/8" iron rod set, corner of reservation from Deed Book No 249, at Page 598, thence N 11° 26' 46" W a distance of 384 88' to a point, thence through the subject parcel for four (4) courses and distances

1) N 00° 00' 00" W a distance of 75 00' to a point, thence,
2) N 90° 00' 00" E a distance of 75 00' to a point, thence,
3) S 00° 00' 00" E a distance of 75 00' to a point, thence,

4) N 00° 00' 00" E a distance of 75 00' to the true point of beginning

Note All of the above easements are shown on an ALTA/NSPS Land Title Survey by The Thrasher Group dated April 22, 2019, last revised January 29, 2020

LAST PAGE