**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Omnis Pleasants, LLC[1] | ) | Case No. 26-11169 (KBO) |
| Debtor. | ) | |

**NOTICE OF INTENT TO SERVE SUBPOENA**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 45(a)(4), made applicable to the matter by Federal Rule of Bankruptcy Procedure 9016, notice is hereby given that counsel for Debtor Omnis Pleasants, LLC intends to serve the subpoena attached hereto as **Exhibit A** upon StarSource, LLC seeking production of the documents described in Schedule A thereto in connection with the *Motion of Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case, or (II) In the Alternative, Directing the Appointment of A Chapter 11 Trustee, and (III) Vacating the Interim Cash Collateral Order* [Docket No. 93].

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

Date: August 20, 2026

*/s/ Katherine Majewski*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Robert F. Poppiti, Jr. (No. 5052)
S. Alexander Faris (No. 6278)
James C. Diver (No. 7568)
Katherine Majewski (No. 7623)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: amagaziner@ycst.com
rpoppiti@ycst.com
afaris@ycst.com
jdiver@ycst.com
kmajewski@ycst.com

*– and –*

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Alexander Woolverton*
Kyle J. Ortiz*
Brian F. Shaughnessy*
Andrew Pollack*
Jared C. Borriello*
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: alexander.woolverton@hsfkramer.com
kyle.ortiz@hsfkramer.com
brian.shaughnessy@hsfkramer.com
andrew.pollack@hsfkramer.com
jared.borriello@hsfkramer.com

**Admitted Pro Hac Vice*

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

# **EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re Omnis Pleasants, LLC
Debtor

(*Complete if issued in an adversary proceeding*)

Case No. 26-11169 (KBO)

Chapter 11

_______________________
Plaintiff
v.
_______________________
Defendant

Adv. Proc. No. ________

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

To: STARSOURCE, LLC
(*Name of person to whom the subpoena is directed*)

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A for Definitions, Instructions, and Document Requests

| PLACE | DATE AND TIME |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>**1000 North King Street, Wilmington, DE 19801**<br>**or such other mutually agreeable location** | September 17, 2026, at 12:00 p.m. (ET) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __8/20/2026___________

CLERK OF COURT

OR

_______________________
*Signature of Clerk or Deputy Clerk*

____/s/ Katherine Majewski_______________
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Debtor Omnis Pleasants, LLC , who issues or requests this subpoena, are: **Katherine Majewski, Young Conaway Stargatt & Taylor LLP, 1000 N. King St. Wilmington, DE 19801; email: kmajewski@ycst.com; tel: (302) 571-6600**

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________
____________________________________________________________________________________________________
__________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________
____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________________
*Server's signature*

________________________________________________
*Printed name and title*

________________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**Exhibit A**

**DEFINITIONS**

As used herein, the terms listed below shall be defined as follows. Insofar as a term is not explicitly defined, the meaning to be used is the commonly accepted definition of the term. The definitions and instructions set forth the Federal Rules of Civil Procedure (the "Federal Rules") and the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") are incorporated in these Requests for Production ("Requests") by reference and shall apply. None of the definitions set forth below are intended to narrow the scope of discovery permitted by the Federal Rules or the Bankruptcy Rules, and the definitions, instructions, and Requests should be read as broadly as permitted by those rules.

1. "Accounts" means: (i) all bank accounts, including all operating, payroll, tax, and escrow accounts; (ii) all investment accounts, including all equities, bonds, and governmental obligations; (iii) all credit card, merchant and other accounts; and (iv) all pension, profit sharing, retirement and life insurance accounts, including (without limitation) the following Accounts:

| **Accountholder** | **Financial Institution** | **Last 4 Digits of Acc. No.** |
|---|---|---|
| Omnis Fuel | JPMorgan Chase Bank, N.A. | 2863 |
| Omnis Fuel | JPMorgan Chase Bank, N.A. | 6201 |
| Omnis Fuel | Morgan Stanley | 2-090 |
| Omnis Fuel | Bank of America | 1066 |
| Omnis Fuel | Bank of America | 6123 |
| Omnis Fuel | Bank of America | 1053 |
| Omnis Fuel | Charles Schwab | 7273 |
| Omnis Global | JPMorgan Chase Bank, N.A. | 9992 |
| StarSource | JPMorgan Chase Bank, N.A. | 6107 |
| Quantum | NBT Bank and Trust | 8437 |
| Quantum | NBT Bank and Trust | 6535 |
| Quantum | JPMorgan Chase Bank, N.A. | 8378 |
| Randall Smith | JPMorgan Chase Bank, N.A. | 9992 |
| Debtor | NBT Bank and Trust | 3897 |
| Debtor | NBT Bank and Trust | 0960 |
| Debtor | NBT Bank and Trust | 2712 |
| Debtor | NBT Bank and Trust | 1972 |

| Accountholder | Financial Institution | Last 4 Digits of Acc. No. |
|---|---|---|
| Debtor | JPMorgan Chase Bank, N.A. | 6552 |
| Debtor | Charles Schwab | 9196 |
| Debtor | Charles Schwab | 9632 |

2. "Adelphi" means Adelphi Construction LC (a subsidiary of IAC) and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

3. "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage this term as it is defined in section 101(2) of the Bankruptcy Code.

4. "AlixPartners" means AlixPartners LLP and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates, including AP Services, LLC.

5. "Bankruptcy Case" means the bankruptcy case captioned *In re Omnis Pleasants, LLC*, Case No. 26-11169 (KBO) (Bankr. D. Del. 2026).

6. "Bankruptcy Code" means title 11 of the United States Code.

7. "Bill Cole" means William Paul Cole III, a natural Person.

8. "Bilt" means Bilt Technology LLC; Kuro Infrastructure Delaware, Inc., as successor by merger with Bilt Technology LLC; and their officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

9. "Bilt Guarantee" means that certain Personal Guarantee, entered into April 8, 2025, by Simon Hodson (as guarantor), to and for the benefit of Bilt (as lender) and the Debtor, pursuant to which Simon Hodson irrevocably guaranteed, as primary obligor, all payments and liabilities of the Debtor to Bilt under the terms of the Bilt Note.

10. "Bilt Letter Agreement" means the letter agreement, dated October 29, 2025, by and between Simon Hodson and Jamie Majid.

11. "Bilt Note" means the purported $20 million Promissory Note, dated April 8, 2025, executed by the Debtor in favor of Bilt.

12. "Bilt PPA" means the purported Power Purchase Agreement dated as of March 26, 2025, between Element H and Bilt.

13. "Board" means any board of directors, board of managers, or similar governing body for any Entity, including any committee, subcommittee, or other subset thereof.

14. "Board Materials" means with respect to any Board, all Documents concerning the meetings, resolutions, decisions, or business of such Board, including meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

15. "Carnegie Hudson Resources" means Carnegie Hudson Resources LLC, and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates, including Goli Abtahian, and Sheela Kangal.

16. "CEO" means David Hindman, a natural Person.

17. "Chen" means Angela Chen Sabella, a natural Person.

18. "Chen Party" or "Chen Parties" means, individually and collectively, Chen, Dynamic Holdings, Dynamic Finance, Harmony Trust, Simply Noble, and any Affiliate or Subsidiary of Chen.

19. "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, Snapchat, messages on other messaging platforms, telephone conversations (including recorded or taped telephone conversations and messages left

on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

20. "Concerning" means concerning, reflecting, relating to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, corroborating, demonstrating, identifying, referencing, discussing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising from, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

21. "Creditor" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(10) of the Bankruptcy Code.

22. "Debtor" means the debtor Omnis Pleasants, LLC (d/b/a Pleasants Power Station) and its officers, directors, employees, and agents.

23. "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule 34(a)(1)(A) and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a

final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

24. "Dynamic Finance" means Dynamic Finance Corporation and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

25. "Dynamic Holdings" means Dynamic Holdings Corporation and Dynamic HC Co (d/b/a Dynamic Holdings Corporation) and their officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

26. "EH Lease" means the purported Ground Lease Agreement, dated August 21, 2025, between the Debtor and Element H.

27. "EH PPA" means the purported Power Purchase Agreement, dated as of March 26, 2025, between the Debtor and Element H.

28. "Element H" means Element H Data, LLC and its officers, directors, employees, partners, agents, corporate parents (UET and Omnis Mining), Subsidiaries, and Affiliates, including Trace Woodbury, Greg Almeida, Kyle Slutz, and James Rankin.

29. "Enterprise" means Enterprise Bank & Trust and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

30. "Enterprise Account" means all Accounts maintained at Enterprise, including any Account associated with, owned, maintained, or held by IAC or Quantum, including the account bearing the account number ending in 126.

31. "Entity" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(15) of the Bankruptcy Code.

32. "Fenix" means Fenix Technologies (CI) Limited, a Cayman Islands Entity, and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

33. "Flacks Group" means Flacks Group, and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

34. "Forbearance Agreement" means the Amended and Restated Forbearance Agreement, dated February 6, 2026, between and among TRAG, RGE, Omnis Global, Omnis Fuel, Quantum, and the Debtor.

35. "Gassenheimer" means Charles Gassenheimer, a natural Person.

36. "Gassenheimer Declaration" means the *Declaration of Charles Gassenheimer in Support of Motion of Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case, or (II) In the Alternative, Directing the Appointment of A Chapter 11 Trustee, and (III) Vacating the Interim Cash Collateral Order* [Docket No. 94].

37. "Gil Nathan" means Gilbert Nathan, a natural Person.

38. "Goli Abtahian" means Golchehreh Abtahian, a natural Person, currently or formerly associated with or employed by Omnis Fuel, Flacks Group, and Carnegie Hudson Resources.

39. "Government Unit" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(27) of the Bankruptcy Code.

40. "Grant Talbert" means Grant Talbert, a natural Person.

41. "Harmony Trust" means Harmony Trust and its officers, directors, trustees, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

42. "Hodson Family" means any Person who is a beneficial owner of or representative of Hodson Investments, or any relative thereof, whether by blood or marriage, including (a) Simon Hodson, (b) Peggy Hodson, (c) Jonathan Hodson, (d) Michael Hodson, (e) Doug Quezada, (f) Randall Smith, and (g) any of foregoing Persons' spouses or lineal descendants.

43. "Hodson Investments" means Hodson Investments, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

44. "Hodson LLC" means Simon Hodson, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

45. "HSF Kramer" means Herbert Smith Freehills Kramer LLP and its current or former domestic or foreign affiliates, members, partners, shareholders, and employees.

46. "IAC" means Industrial Accessories Company and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates, including Adelphi.

47. "IAC Agreement" means the purported agreement (identified as IAC Contract No. E23173), dated October 20, 2023, between the Debtor and IAC (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time), and all attachments and exhibits.

48. "IAC Lien" means the materialman's lien recorded by IAC on March 27, 2026, with the Pleasants County Clerk.

49. "Including" means including, without limitation.

50. "Independent Management" means, individually and collectively, the Independent Manager, the CEO, and the professionals retained by them on behalf of the Debtor, including HSF Kramer, Sidley, and AlixPartners.

51. "Independent Manager" means the Independent Manager of the Debtor.

52. "Initial Forbearance Agreement" means and the Forbearance Agreement, dated October 22, 2025, between and among TRAG, RGE, Omnis Global, Omnis Fuel, and Quantum.

53. "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

54. "Intercompany Note" or "Intercompany Notes" means, individually and collectively, all promissory notes, revolving credit notes, demand notes, or intercompany loans between or among any of the Omnis Parties or the Debtor, including: (i) the revolving promissory note dated October 31, 2023, between Quantum and the Debtor; (ii) the revolving promissory note dated October 31, 2023, between Omnis Fuel and the Debtor; (iii) the revolving promissory note dated March 24, 2023, between Quantum and Omnis Fuel; (iv) the revolving promissory note dated March 24, 2023, between Omnis Fuel and Omnis Global; and (v) the revolving promissory note dated March 24, 2023, between Quantum and Omnis Global.

55. "Intercompany Loan" or "Intercompany Loans" means all funds advanced pursuant to the Intercompany Notes and any other advance to the Debtor referred to in paragraph 37 of the Gassenheimer Declaration.

56. "Jonathan Hodson" means Jonathan Hodson, a natural Person and the son of Simon Hodson.

57. "Lawyers" means, individually and collectively, the law firms Lowenstein Sandler LLP; Vinson & Elkins LLP; Herrick Feinstein LLP; Bowles Rice LLP; Simmerman Law Office,

PLLC; J. Nicholson Thomas; Hissam Forman Donovan Ritchie PLLC; and any of their respective current or former domestic or foreign affiliates, members, partners, shareholders, and employees.

58. "Mat Hart" means Mathew Hart, a natural Person.

59. "MF Power" means Mine Farming Power (a/k/a MF Power) and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

60. "Mon Power" means Monongahela Power Company and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

61. "Mon Power Construction Agreement" means the Construction Agreement, dated April 9, 2024, between Quantum and Mon Power.

62. "Motion" means the *Motion of Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case, or (II) In the Alternative, Directing the Appointment of A Chapter 11 Trustee, and (III) Vacating the Interim Cash Collateral Order* [Docket No. 93].

63. "Obligation" or "Obligations" shall be construed broadly and means obligations owed by a Person or Entity, whether individually, as a co-obligor, or jointly with another Person or Entity, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise, and shall include any "claim" as defined in section 101(5) of the Bankruptcy Code.

64. "OBT Bluefield Project" means the Omnis Party project located in Bluefield, West Virginia and/or the project referred to as IAC job number E23140.

65. "Omnis Advanced" means Omnis Advanced Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

66. "Omnis Building" means Omnis Building Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates (including OBT Ashland, LLC; OBT Bluefield, LLC; OBT West Virginia, LLC; and Omnis Bailey, LLC).

67. "Omnis Entity" or "Omnis Entities" means, individually and collectively, Hodson Investments, Omnis Global, Omnis Fuel, Quantum, Omnis Advanced, Omnis Building, Omnis Mining, Omnis Mineral, Omnis Regenerative, Omnis Sublimation, Omnis Thermal, Omnis Water, Hodson, LLC, and StarSource.

68. "Omnis Fuel" means Omnis Fuel Technologies, LLC, d/b/a Omnis Energy, and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

69. "Omnis Global" means Omnis Global Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

70. "Omnis Mineral" means Omnis Mineral Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

71. "Omnis Mining" means Omnis Mining Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

72. "Omnis Party" or "Omnis Parties" means, individually and collectively, the Omnis Entities, the Hodson Family, Simon Hodson, Blake Stephens, Gassenheimer, Randall Smith, Rich Hulme, Mat Hart, Goli Abtahian, Doug Grunder, James Swenson, David Gibbel, Stephen Gibbel, Daniel Gibbel, and Bill Cole.

73. "Omnis Regenerative" means Omnis Regenerative Energy, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

74. "Omnis Sublimation" means Omnis Sublimation Recovery Technologies LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

75. "Omnis Thermal" means Omnis Thermal Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

76. "Omnis Water" means Omnis Water Technologies, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

77. "Overseas Hodson Related Party" means, individually and collectively, Sandy Ruan Qianting; Qinova (HK) Limited; Shaanxi Boyuan Ruijia Technology; Kristina Matviyenko; Chen Zhou; Shen Mu Huang Ming Technology Co. Ltd; Fenix Investment Co., Ltd; Fugu Huangming Technology; Ordos Fenix Technologies Co. Ltd; Fenix Energy Refineries (HK), Limited; Shaanxi Fenix Management Consulting Co., Ltd.; Weijian Shan; Keyao Wu; Yichen Zhang; Citic; PAG Capital Partners (HK); and Silver Road Holdings Limited.

78. "PEMS" means PurEnergy Management Services, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

79. "Person" includes natural persons, partnerships, joint ventures, unincorporated associations, corporations, state, local and federal governments and subdivisions, instrumentalities and agencies thereof, and any other legal Entity.

80. "PJM" means PJM Interconnection, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

81. "Plant" means the two-unit, 1,278-megawatt coal-fired power plant owned by the Debtor, together with related building, facilities, electrical generation infrastructure, and transmission powerlines, situated on approximately 190 acres of real property in Belmont, West Virginia.

82. "Quantum" means Quantum Pleasants, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

83. "Quantum Lease" means the purported Lease Agreement, dated January 2, 2026, between Quantum and the Debtor.

84. "Quantum Reformer Pilot Project" means the pilot project located at the Plant, the purported purpose of which was to establish the commercial feasibility of the Quantum Reformer technology, which the Omnis Parties claim can transform hydrocarbon fuel stock into carbon products and hydrogen gas to power the Plant and/or the project referred to by IAC job number E23173.

85. "Randall Smith" means Randall A. Smith, a natural Person, and the current or former brother-in-law of Simon Hodson.

86. "Relevant Period" means the period on or after January 1, 2023.

87. "Representation" means the actual or purported provision of services, advice, consultation, or representation, including legal advice, services, or representation, whether in the context of an attorney-client relationship or otherwise, including in the context of an actual or potential dispute, litigation, arbitration, or other legal proceeding.

88. "RGE" means RG Energy LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

89. "Rich Hulme" means Richard Kent Hulme, a natural person, and the former president and chief operating officer of the Debtor.

90. "RRI" means Robbins Research International, Inc. and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

91. "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an Entity, including such holder's

Affiliates, relatives, or other related parties, and shall include any "equity security holder" as defined in section 101(17) of the Bankruptcy Code.

92. "Sidley" means Sidley Austin LLP and its current or former domestic or foreign affiliates, members, partners, shareholders, and employees.

93. "Simon Hodson" means Simon K. Hodson, a natural Person.

94. "Simply Noble" means Simply Noble Investment Limited and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

95. "StarSource" means StarSource, LLC and its officers, directors, employees, agents, corporate parent, Shareholders, Subsidiaries, and Affiliates, including Simon Hodson, Doug Grunder, Robert Zavala, and Albert Botton.

96. "Subsidiary" means any Entity whose management is controlled, directly or indirectly, by a second Entity, including any Entity whose stock or other ownership interests are owned by a second Entity in such quantity that the second Entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the Entity.

97. "Trace Woodbury" means Harold ("Trace") Woodbury, a natural Person.

98. "TRAG" means TRAG LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

99. "TRAG Party" or "TRAG Parties" means, individually and collectively, TRAG, RGE, and RRI.

100. "Transfer" means a sale, transfer, payment, disposition, transaction, hypothecation, encumbrance, impairment, or redemption, or any transfer of value, ownership or control, in each case whether direct or indirect, absolute or conditional, voluntary or involuntary, and shall include any "transfer" as defined in section 101(54) of the Bankruptcy Code.

101. "Tyr" means TyrEnergy, LLC and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

102. "UET" means Universal Edge Technologies, d/b/a H2 Data, and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates, including Trace Woodbury, Greg Almeida, Kyle Slutz, and James Rankin.

103. "Valuation" means the attribution of a qualitative or quantitative value to or a change in value of a particular asset, liability, or category of either, whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

104. "West Virginia" means the State of West Virginia and its departments, agencies, divisions, bureaus, boards, commissions, offices, authorities, instrumentalities, political subdivisions, and other governmental entities, whether executive, legislative, judicial, administrative, or quasi-governmental in nature, including WVEDA, WV State Auditor, WV DOC, WV DAQ, and WV DEP. The term also includes, without limitation, all elected and appointed officials, officers, directors, employees, counsel, agents, officials, and representatives of the State of West Virginia or its constituent Government Units.

105. "WV DAQ" means the West Virginia Department of Air Quality and its officers, directors, employees, counsel, agents, officials, and representatives.

106. "WV DEP" means the West Virginia Department of Environmental Protection and its officers, directors, employees, counsel, agents, officials, and representatives.

107. "WV DOC" means the West Virginia Department of Commerce and its officers, directors, employees, counsel, agents, officials, and representatives.

108. "WV State Auditor" means the West Virginia State Auditors' Office and its officers, directors, employees, counsel, agents, officials, and representatives.

109. "WVEDA" means West Virginia Economic Development Authority and its officers, directors, employees, counsel, agents, officials, and representatives.

110. "WVEDA Loan" means the $50 million loan obtained by Quantum from WVEDA pursuant to the WVEDA Loan Agreement, the WVEDA Note, and other related loan documents.

111. "WVEDA Note" means that certain Promissory Note executed by Quantum in favor of WVEDA in connection with the WVEDA Loan.

112. "WVEDA Loan Agreement" means that certain Loan Agreement, dated December 13, 2023, by and among WVEDA (as lender), Quantum (as borrower), the Debtor (as guarantor), and Omnis Fuel.

113. "You" and "Your" shall refer to StarSource.

114. "ZEECO" means ZEECO, Inc. and its officers, directors, employees, partners, agents, corporate parent, Subsidiaries, and Affiliates.

115. "ZEECO Pilot Project" means the project located in or around Broken Arrow, Oklahoma and/or the project referred to by (a) ZEECO Project Number 65391, or (b) IAC job number E23181.

## INSTRUCTIONS

A. These Requests encompass all documents in Your possession, custody, or control, whether or not such documents were prepared by or for You. Where documents in Your possession, custody, or control are requested or inquired of, such Request or inquiry includes Documents in the possession, custody, or control of each of Your current and former direct and indirect affiliates, subsidiaries, directors, employees, representatives, agents, advisors, attorneys, accountants, auditors and consultants, all other persons or entities acting or purporting to act on

Your behalf or under Your control, any other persons or entities from whom You could obtain Documents, and each of their predecessors and successors.

B. If You contend that no Documents exist concerning all or part of a Request, You shall state this contention and respond as fully as possible to all parts of the Request for which Documents exist.

C. If You claim that any privilege or protection excuses production of any Document or part thereof, You must expressly make such claim in writing and describe the nature of each Document withheld on this ground, in sufficient detail for the Debtor to determine whether there is an adequate basis for invoking privilege or protection.

D. In the event that any Document covered hereunder has been destroyed, discarded, or lost, You shall inform the Debtor of this in writing and provide a general description of the categories of documents destroyed or lost and the circumstances of their destruction or loss.

E. If any Document cannot be produced in full, it shall be produced to the maximum extent possible, and You shall specify in writing the reasons for Your inability to produce the remainder.

F. Each Document is to be produced with all non-identical copies and drafts thereof in their entirety without abbreviation or redaction (other than for a claim of privilege, consistent with these Instructions).

G. All Documents that are produced in electronic format shall be provided with: (i) Group IV TIFF images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic Document. All spreadsheets created in Microsoft Excel, PowerPoint presentations, or other spreadsheet, presentation, or similar program files shall

be produced in their native format. The Debtor reserves its rights to request that other Documents be produced in their native format if necessary. The following metadata fields shall also be produced with all Documents produced in electronic format:

| **Field Name** | **Description** |
|---|---|
| BEGDOC | An automatically generated number assigned to first page of the Document |
| ENDDOC | An automatically generated number assigned to last page of the Document |
| BEGATTACH | An automatically generated number assigned to the first page of the parent Document in a family |
| ENDATTACH | An automatically generated number assigned to the last page of an attachment in a Document family |
| PARENT_ID | The beginning DOCID for a parent Document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | A vendor populated field where "P" denotes a parent Document and "A" denotes an attachment |
| PAGECOUNT | The number of pages of each individual Document |
| FROM | The name of the sender of an email, from the "From" field |
| TO | The recipient(s) of an email, from the "To" field |
| CC | The name(s) of any Person(s) to whom a copy of an email was sent, from the "CC" field |
| BCC | The name(s) of any Person(s) that were blind copied on an email, from the "BCC" field |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or application file |
| CUSTODIAN | The name(s) of the Person(s) from which a collection of |
| AUTHOR | The name of the author or the creator of an application file, from the "Author" field |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last Modified |
| DATE_CREATED | The date an email or application file was created |
| TIME_CREATED | The time at which an email or application was created |

| **Field Name** | **Description** |
|---|---|
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the “Title” field of an application file |
| LAST_AUTHOR | The name in the “Last Author” field for an application file |
| LAST_SAVED | The date in the “Last Saved” field for an application file |
| LAST_PRINTED | The date in the “Last Printed” field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The filename extension of each email, attachment, or application file |
| FILENAME | The name of an application file, including its extension |
| FILESIZE | The size of a Document in bytes |
| SOURCEFOLDER | The full path information for email, attachments, and application files beginning with the original source-folder Name |
| HASHVALUE | The output of an algorithm-generated value for each individual file |
| SEARCH_HIT | The search term or terms that “hit” on a Document |
| NATIVE_FILE | A hyperlink to the native file |

H. The use of the singular form of any word includes the plural and vice versa.

I. The terms “all,” “each,” and “any” shall be construed to mean all, each, every, and any, so as to be as expansive as possible.

J. The connectives “and” and “or” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each document request all documents that might otherwise be construed to be outside of its scope.

K. Each Request shall be interpreted to include all Documents that concern the Relevant Period (unless otherwise stated), even if such Documents were prepared or published outside of the Relevant Period or otherwise-specified period. If any Document that was prepared or published before or after the Relevant Period or otherwise-specified period is necessary for a correct or complete understanding of any Document that is responsive to a Request, You shall

produce this Document as well. If any Document is undated and the date of its preparation cannot be determined, You shall produce the Document if otherwise responsive to a Request.

L. These Requests shall be deemed to be continuing and to require You to supplement Your responses if You or Your attorneys or agents become aware of, receive, or generate additional documents responsive to these Requests after the time of the initial response.

**REQUESTS FOR PRODUCTION**

1. All Documents concerning any good or service provided by You to, or for the benefit of, the Debtor, Quantum, Omnis Fuel, Omnis Global, any other Omnis Party, IAC, ZEECO, or any Chen Party, including:

   a. any agreements, contracts, engagement letters, retainer agreements, billing statements, invoices, and Communications reflecting the transmittal of the same; and

   b. payment records, Account statements, cancelled checks, and wire transfer receipts or confirmations.

2. All Documents concerning any Obligation owed by You to the Debtor, Quantum, Omnis Fuel, Omnis Global, any other Omnis Party, or any Chen Party, whether individually, as co-obligor, as guarantor, or jointly with another Person or Entity.

3. All Documents concerning any Obligation owed to You by the Debtor, Quantum, Omnis Fuel, Omnis Global, any other Omnis Party, or any Chen Party, whether individually, as co-obligor, as guarantor, or jointly with another Person or Entity.

4. All Documents concerning any Transfer by You to, or for the benefit of, the Debtor, Quantum, Omnis Fuel, Omnis Global, any other Omnis Party, or any Chen Party.

5. All Documents concerning any Transfer to You by, or for the benefit of, the Debtor, Quantum, Omnis Fuel, Omnis Global, any other Omnis Party, or any Chen Party.

6. All Communications with the Debtor, Omnis Party, Chen Party, or Creditor of the Debtor concerning the Bankruptcy Case.

7. All Communications with any of the Debtor's Creditors, personnel, contract counterparties, vendors, services providers, or regulators after February 6, 2026.

8. All Communications with PEMS, Tyr, any TRAG Party, Flacks Group, or West Virginia concerning the Debtor, the Plant, the Quantum Reformer technology, the Quantum Reformer Pilot Project, or the WVEDA Loan.

9. All Documents concerning employment agreements, consulting agreements, or similar arrangements reflecting salaries, consulting fees, or other compensation between any Omnis Party and the Debtor, including:

a. the Omnis Global Management Agreement; and

b. any agreements concerning any director, officer or employee of any Omnis Party or the Debtor, including Simon Hodson, Randall Smith, Rich Hulme, Mat Hart, Jonathan Hodson, Blake Stephens, and Gassenheimer.

**A. Quantum Reformer Pilot Project**

10. All Documents concerning the development, testing, operation, financing, demonstration, or commercialization of the Quantum Reformer technology or the Quantum Reformer Pilot Project, including:

a. budgets, cash forecasts, operating reports, projections, Valuation models, technical reports, engineering studies, feasibility analyses, pilot test results, and progress reports;

b. investor presentations, pitch decks, offering memoranda, private placement memoranda, marketing materials, Valuation models, or other Documents prepared for or presented to investors, lenders, government officials, or other third parties relating to the Quantum Reformer technology or the Quantum Reformer Pilot Project, including all drafts thereof;

c. Communications with investors, lenders, governmental agencies, regulators, or prospective investors, lenders or capital providers concerning the Quantum Reformer technology or the Quantum Reformer Pilot Project;

d. demonstrations and tours of the Quantum Reformer Pilot Project, including attendee lists, preparation materials, scripts, talking points, and any internal post-event assessments;

e. representations made by You or any other Omnis Party concerning the commercial readiness, technical capability, or revenue-generating potential of the Quantum Reformer technology or the Quantum Reformer Pilot Project;

f. capital or personnel allocated to the Quantum Reformer Pilot Project, including any cost-sharing arrangements, labor allocation records, and expense reimbursements;

g. internal Omnis Party or third-party assessments of the technical progress or commercial viability of the Quantum Reformer technology or the Quantum Reformer Pilot Project, including any analyses indicating that commercialization was not imminent or that the technology faced significant challenges;

h. all invoices issued to You by any other project vendors, including IAC, ZEECO, Omnis Advanced and Omnis Global;

i. all invoices paid by You, including by using any credit card, whether under the name of StarSource, any StarSource employee, Sherri Sepessy, Rich Hulme, or someone else; and

j. all invoices You issued, and any itemized documentation underlying those invoices, for products or services You provided on Quantum Reformer technology or the Quantum Reformer Pilot Project.

k. the IAC Agreement, including all Documents concerning its negotiation, drafting, execution, authorization, amendment, performance, and any services provided by IAC pursuant to the IAC Agreement or otherwise.

11. All Documents concerning any actual (paid or outstanding) or potential loan, credit, financing, funding, grant, guarantee, subsidy, assistance, or other financial arrangement at any time (whether or not during the Relevant Period) between or among, on the one hand, (a) the Debtor or any Omnis Party, and, on the other hand, (b) (i) West Virginia, (ii) the United States Department of Energy, or (iii) any other Government Unit, including:

a. the "DOE/NETL voucher program" referenced in paragraph 17 of the Gassenheimer Declaration;

b. any loan, credit, financing, funding, grant, guarantee, subsidy, assistance, or other financial arrangement related to the OBT Bluefield Project;

c. any loan, credit, financing, funding, grant, guarantee, subsidy, assistance, or other financial arrangement related to the Omnis Baily project in West Finley Township, Pennsylvania; and

d. the application for Federal funds from the United States Department of Energy, Title 17 Clean Energy Financing Program referenced in paragraph A.5 of the WVEDA Loan Agreement.

12. All Documents concerning the Overseas Hodson Related Parties:

a. any good or service provided by any Overseas Hodson Related Party to You, including any agreements, contracts, billing statements, invoices, payment records, Account statements, cancelled checks, and wire transfer receipts or confirmations;

b. all documents concerning employment agreements or similar arrangements reflecting salaries, consulting fees, or other compensation between You and any Overseas Hodson Related Parties;

c. all Obligations owed by any Overseas Hodson Related Party to You, whether individually, as co-obligor, as guarantor, or jointly with another Person or Entity;

d. all Obligations owed to any Overseas Hodson Related Party by You, whether individually, as co-obligor, as guarantor, or jointly with another Person or Entity;

e. all Transfers by any Overseas Hodson Related Party to, or for the benefit of, You; and

f. all Transfers to any Overseas Hodson Related Party by, or for the benefit of, You.

**B. WVEDA Loan**

13. All Documents concerning the WVEDA Loan, including:

a. all negotiations, due diligence materials, loan application materials, disbursement requests, supporting documentation provided to any Omnis Party to submit to WVEDA or submitted to WVEDA directly by You, and other Documents related to the application, negotiation, approval, funding, administration, and performance of the WVEDA Loan;

b. invoices provided to any Omnis Party, or submitted to West Virginia directly by You, substantiating either matching-fund expenditures by any Omnis Party or representations made to West Virginia in connection with disbursement requests under the WVEDA Loan, and all supporting documentation submitted in connection with each disbursement request;

c. the disbursement and subsequent Transfer of any WVEDA Loan proceeds, including all Account records, wire transfer records, ledger entries, and statements for all Entities or Persons that received or transferred WVEDA Loan proceeds; and

d. Communications concerning West Virginia or the WVEDA Loan, including all Communications concerning the WVEDA Loan proceeds, disbursements, requests for documentation, notices of default, letters, correspondence, and any negotiations or settlement discussions with West Virginia.

14. All Documents concerning any Transfers or transactions related to the WVEDA Loan, including:

a. all Account statements, bank records, wire confirmations, general ledger entries, journal entries, accounting records, and other Documents concerning any Transfers between You and any Omnis Party, IAC, or the Debtor from August 1, 2023, to July 30, 2025, including the following Transfers:

| Date | Sending Party | Receiving Party | Amount |
|---|---|---|---|
| 01/16/2024 | Omnis Fuel | StarSource | $13,185,000 |
| 01/16/2024 | StarSource | Omnis Fuel | $13,185,000 |
| 01/17/2024 | Omnis Fuel | Omnis Fuel | $10,702,000 |
| 01/17/2024 | Omnis Fuel | StarSource | $10,565,000 |
| 01/18/2024 | StarSource | Omnis Fuel | $13,100,000 |
| 01/18/2024 | Omnis Fuel | Omnis Fuel | $13,250,000 |
| 01/19/2024 | Omnis Fuel | StarSource | $11,750,000 |
| 01/22/2024 | StarSource | Omnis Fuel | $11,000,000 |
| 03/18/2024 | Omnis Fuel | StarSource | $5,471,023 |
| 03/20/2024 | Omnis Global | Omnis Fuel | $4,500,000 |

b. all Account statements, bank records, wire confirmations, general ledger entries, journal entries, accounting records, and other Documents concerning any StarSource Invoice submitted to West Virginia in support of matching-fund disbursement requests, and the preparation, approval, and submission of such invoices, including with respect to each of the following invoices:

| Entity | Inv. No. | Date | Amount |
|---|---|---|---|
| IAC | 23173-01 | 12/15/2023 | $35,500,000 |
| IAC | 23173-02 | 01/23/2024 | $44,436,900 |
| IAC | 23173-03 | 04/08/2024 | $11,968,296 |
| IAC | 23173-04 | 06/05/2024 | $8,708,904 |
| StarSource | 164 | 04/29/2024 | $2,161,002 |
| StarSource | 165 | 02/07/2024 | $17,561,671 |
| StarSource | 166 | 01/01/2024 | $13,350,000 |

| Entity | Inv. No. | Date | Amount |
|---|---|---|---|
| StarSource | 182 | 06/05/2024 | $4,354,452 |
| Omnis Advanced | 1001 | 07/02/2024 | $15,000,000 |
| Omnis Advanced | 1002 | 04/30/2025 | $2,500,000 |
| Omnis Global | 762.30 | 04/04/2024 | $155,264.14 |
| Omnis Global | 762.31 | 04/04/2024 | $155,264.14 |
| Omnis Global | 762.32 | 04/04/2024 | $155,264.14 |
| Omnis Global | 762.42 | 05/01/2024 | $155,264.14 |
| Omnis Global | 762.48 | 06/01/2024 | $155,264.14 |
| Omnis Global | 762.54 | 07/01/2024 | $155,264.14 |
| Omnis Global | 762.59 | 08/01/2024 | $155,264.14 |
| Omnis Global | 762.68 | 09/01/2024 | $155,264.14 |
| Omnis Global | 762.119 | 09/30/2024 | $229,631.60 |
| Omnis Global | 762.120 | 10/01/2024 | $229,631.60 |
| Omnis Global | 762.122 | 11/01/2024 | $229,631.60 |
| Omnis Global | 762.123 | 12/01/2024 | $229,631.60 |
| Omnis Global | 762.144 | 01/01/2025 | $109,455.71 |
| Omnis Global | 762.145 | 02/03/2025 | $109,455.71 |
| Omnis Global | 762.146 | 03/03/2025 | $109,455.71 |
| Omnis Global | 762.165 | 04/01/2025 | $93,136.54 |

15. All Documents concerning Transfers or other disbursements by West Virginia related to the WVEDA Loan, including:

a. the $17,750,000 Transfer by West Virginia to IAC or the Enterprise Account in December 2023, and the subsequent Transfer of those funds from IAC or the Enterprise Account, including Documents sufficient to show the Persons or Entities that were the recipients of any Transfer from IAC or the Enterprise Account;

b. the $21,911,400 Transfer by West Virginia to IAC or the Enterprise Account in February 2024, and the subsequent Transfer of those funds from IAC or the Enterprise Account, including Documents sufficient to show the Persons or Entities that were the recipients of any Transfers from IAC or the Enterprise Account;

c. the $5,984,148 Transfer by West Virginia to Quantum in April 2024, and the subsequent Transfer of those funds by Quantum, including Documents sufficient to show the Persons or Entities that were the recipients of any Transfers from Quantum; and

d. the $4,354,452 Transfer by West Virginia to Quantum in June 2024, and the subsequent Transfer of those funds by Quantum, including Documents sufficient to show the Persons or Entities that were the recipients of any Transfers from Quantum.

16. All Documents concerning IAC, including:

a. the IAC Agreement;

b. the IAC Lien;

c. all Transfers to or from IAC, including invoices, contracts, purchase orders, payment requests, proof of payment, and supporting documentation;

d. all Obligations related to IAC; and

e. all Communications with Cort Stephens or Bob Carter.

17. All Documents concerning the ZEECO Pilot Project, including:

a. budgets, projections, technical reports, engineering studies, feasibility analyses, StarSource tours of the ZEECO facility and project, pilot test results, and progress reports;

b. investor presentations, pitch decks, offering memoranda, private placement memoranda, marketing materials, or other Documents prepared for or presented to investors, lenders, government officials, or other third parties concerning the ZEECO Pilot Project, including all drafts thereof;

c. Communications with investors, lenders, governmental agencies, regulators, or prospective investors, lenders or capital providers concerning the ZEECO Pilot Project;

d. demonstrations and tours of the ZEECO Pilot Project, including attendee lists, preparation materials, scripts, talking points, and any internal post-event assessments; and

e. all invoices issued by ZEECO, IAC, or other project vendors to StarSource.

18. All Documents concerning any Transfers to or from IAC, Omnis Fuel, Omnis Global, Quantum, or any other Omnis Party.

19. Document sufficient to show and services provided or invoices issued by StarSource in connection with the OBT Bluefield Project.

**C. Cryptocurrency Data Center**

20. Any Documents concerning the cryptocurrency mining initiative or proposed behind-the-meter cryptocurrency mining data center co-located with the Plant, including:

a. plans, analysis, budgets, projections, technical reports, engineering studies, feasibility studies, progress reports, regulatory analysis, or internal approvals; and

b. all Communications with any Omnis Party, the Debtor, Bilt, Element H, PEMS, Tyr, PJM, Mon Power, MF Power, UET, or any third party.

**D. Corporate Structure and Governance**

21. StarSource's corporate formation or organizational documents, including articles of amendment certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar documents, and any amendments or restatements thereto.

22. Documents sufficient to show the formation, capital structure, ownership, or organizational structure of StarSource.

23. All Board Materials of StarSource's Board, including all Documents concerning:

a. any meeting, resolution, action, or decision of the Board concerning the Debtor, Quantum, IAC, Fenix, UET, the Chen Parties, Element H, Bilt, Blue Terra, the WVEDA Loan, Quantum Lease, EH PPA, EH Lease, Bilt PPA, Bilt Note, Bilt Guarantee, the Quantum Reformer Pilot Project, the ZEECO Pilot Project, the OBT Bluefield Project, or the operation, management or financing of the Plant; and

b. any materials provided to, reviewed by, or considered by the Board concerning the Debtor, Quantum, IAC, Fenix, UET, the Chen Parties, Element H, Bilt, Blue Terra, the WVEDA Loan, Quantum Lease, EH PPA, EH Lease, Bilt PPA, Bilt Note, Bilt Guarantee, the Quantum Reformer Pilot Project, the ZEECO Pilot Project, the OBT Bluefield Project, or the operation, management or financing of the Plant.

24. Documents sufficient to identify all officers, directors, managers, employees, and other Persons or Entities acting on behalf of StarSource, including organizational charts, personnel charts, or other documents concerning organization or reporting-structure.

25. Documents sufficient to show the appointment, election, removal, replacement, resignation, or authority of any officer, director, or manager of StarSource.

26. Documents sufficient to identify (a) each Shareholder of StarSource and (b) the beneficial owner(s) of each Shareholder of StarSource.

27. Documents sufficient to show for each Shareholder of StarSource:

a. the amounts invested by such Shareholder, including the date(s) of any investment(s);

b. the percentage of ownership of such Shareholder; and

c. all distributions—declared, accrued, paid, or otherwise—to such Shareholder and any other Transfers to or for the benefit of such Shareholder.

28. All Documents concerning any meeting, vote, consent, resolution, or action of the Shareholders of StarSource, concerning the Debtor, Quantum, Omnis Global, Omnis Fuel, the Quantum Reformer Pilot Project, the ZEECO Pilot Project, the OBT Bluefield Project, or the operation or management of the Plant.

29. Documents sufficient to show the financial condition of StarSource, including:

a. audited and unaudited annual financial statements;

b. monthly trial balances;

c. general ledgers;

d. monthly Account statements, and Account details related to ACH, wire, and check information; and

e. monthly Account reports and lists of all receipts and disbursements by check, wire and ACH.