**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Omnis Pleasants, LLC,[1] | Case No. 26-11169 (KBO) |
| Debtor. | |

# NOTICE OF INTENT TO SERVE SUBPOENA

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, as incorporated through Rule 9016 of the Federal Rules of Bankruptcy Procedure, Omnis Fuel Technologies, LLC d/b/a Omnis Energy ("Omnis Energy") and Quantum Pleasants, LLC ("Quantum"), by and through their undersigned counsel, intend to serve the subpoena attached hereto as **Exhibit 1** upon RG Energy LLC (the "Subpoena Recipient") seeking production of the documents described in Exhibit A thereto in connection with the *Motion of Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case, or (II) in the Alternative, Directing the Appointment of a Chapter 11 Trustee, and (III) Vacating the Interim Cash Collateral Order*. Omnis Energy and Quantum are serving the Subpoena Recipient with a subpoena in an abundance of caution and do not concede the Subpoena Recipient is not a party to this bankruptcy case. To the contrary, Omnis Energy and Quantum expressly reserve the right to argue at any proceeding in this case that the Subpoena Recipient is a party.

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

Dated: August 21, 2026

**LOWENSTEIN SANDLER LLP**

/s/ Michael A. Kaplan
Michael A. Kaplan (admitted *pro hac vice*)
Christopher A. Ward (No. 3877)
Shanti M. Katona (No. 5352)

1251 Avenue of the Americas, 17th Floor
New York, NY 10020

- and -

1000 N West Street, Suite 1200
Wilmington, DE 19801

Telephone: (973) 597-2500
mkaplan@lowenstein.com
cward@lowenstein.com
skatona@lowenstein.com

*Counsel to Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC*

**EXHIBIT 1**

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re Omnis Pleasants, LLC
Debtor

(*Complete if issued in an adversary proceeding*)

Case No. 26-11169 (KBO)

Chapter 11

Plaintiff
v.

Defendant

Adv. Proc. No. ________________

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: RG Energy LLC
(*Name of person to whom the subpoena is directed*)

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A.

| PLACE | DATE AND TIME |
|---|---|
| Lowenstein Sandler LLP<br>1251 Avenue of the Americas, 17th Floor, New York, NY 10020<br>Documents to be produced electronically. | September 17, 2026 at 12:00 p.m. (ET) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/21/2026

CLERK OF COURT

OR

________________________
*Signature of Clerk or Deputy Clerk*

/s/ Michael A. Kaplan
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing (*name of party*) Quantum Pleasants, LLC and Omnis Fuel Technologies, LLC d/b/a Omnis Energy, who issues or requests this subpoena, are:

Michael A. Kaplan, 1251 Avenue of the Americas, New York, NY 10020, mkaplan@lowenstein.com, (973) 597-2302

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________
____________________________________________________________________________________________________
__________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________
____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________________
*Server's signature*

________________________________________________
*Printed name and title*

________________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

**DEFINITIONS**

1. "Assignment of Leases" refers to the Assignment of Leases, Subleases and Rents dated June 17, 2026, between and among the Debtor, as grantor, and the Lenders, as grantees, and all amendments, attachments, exhibits, supplements, and related documents thereto.

2. "August 2026 Letter" refers to the letter sent by Kristine Manoukian, on behalf of the Lenders, to Christopher Ward dated August 17, 2026.

3. "Bank of America" refers to the Bank of America, N.A. and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

4. "Bankruptcy Court" refers to the United States Bankruptcy Court for the District of Delaware.

5. "Bid Procedures Motion" refers to the *Debtor's Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* dated August 13, 2026, filed in the Chapter 11 Case at Docket No. 86.

6. "CEO" means Chief Executive Officer of the Debtor.

7. "Chapter 11 Case" means the bankruptcy proceeding captioned *In re: Omnis Pleasants*, Case No. 26-11169 (KBO), commenced on the Petition Date in the Bankruptcy Court.

8. "Communication(s)" means the transmittal of information, in the form of thoughts, facts, ideas, inquiries, opinions, data, or otherwise, through any written, electronic or oral mode or means. The term is used here in the broadest sense, and Includes any and all conversations,

meetings, discussions, telephone calls, conference calls, videocalls (Including Zoom, Microsoft Teams, Webex, and similar platforms), audio or video recordings (Including all audio or visual recordings of any telephone calls, conference calls, videocalls, virtual meetings, or other conferences, regardless of the format, platform, or storage location of such recordings), voicemail messages, recorded messages, sent, received, copying or forwarding e-mails, text messages, short messaging service (SMS), multimedia messaging service (MMS), instant messages through any instant message service (Including Slack, WhatsApp, Telegram, Signal, and similar platforms), direct messages through any applications, social media posts or messages (Including on Zoom Chat, Microsoft Teams Chat, Discord, Facebook, Instagram, Twitter, LinkedIn, TikTok, Snapchat, and similar platforms), internet blogs or other online postings, and other Documents and any other mode of verbal, written, or electronic information exchange, whether in person, by telephone, by video, over the internet, or otherwise, as well as all letters, correspondence, memoranda, telegrams, cables, faxes, and other Documents memorializing or constituting any information exchange, regardless of the medium, format, or platform used.

9. "Concern(s)" or "Concerning" means constituting, relating to, pertaining to, based upon, bearing upon, referring to, with reference to, arising in connection with, arising out of, regarding, by reason of, having to do with, or having any relation to, in the broadest sense.

10. "Debtor" refers to Omnis Pleasants, LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

11. "Deed of Trust" refers to the Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing dated June 17, 2026 between and among the Debtor, as grantor,

George and Stollings, as trustees, and the Lenders, as beneficiaries, and all amendments, attachments, exhibits, supplements, and related documents thereto.

12. "DFC" refers to Dynamic Finance Corporation and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

13. "Director" refers to the Director of the Debtor.

14. "Document(s)" is used in its broadest sense and Includes the original and all copies, prior drafts, and translations of all Communications and writings of every kind, whether sent or received, Including non-identical copies bearing notations or marks not found on the original, and Including e-mails, text messages, short messaging service (SMS), multimedia messaging service (MMS), any instant messages through any instant message service (Including Slack, WhatsApp, Discord, Telegram, Signal, and similar platforms), direct messages through any applications, letters, memoranda, reports, studies, notes, speeches, press releases, agenda, minutes, transcripts, summaries, self-sticking removable notes, telegrams, teletypes, telefax, cancelled checks, check stubs, invoices, receipts, medical records, ticket stubs, maps, pamphlets, tables, charts, graphs, schedules, plans, books, periodicals, booklets, circulars, bulletins, contact information (Including telephone numbers, addresses, and e-mail addresses), website content, internet blogs or other online postings, photographs, contracts, agreements, assignments, licenses, ledgers, books of account, diaries, calendars, appointment books, tabulations, analyses, statistical or information accumulation, audits and associated workpapers, any kinds of records, film impressions, magnetic tape, tape records, sound or mechanical reproductions, recorded messages, audio or visual recordings (Including all audio or visual recordings of telephone calls, conference calls, videocalls, or in-person conferences), voicemail messages, transcripts or logs of any such recordings, all

stored compilations of information of any kind which may be retrievable (Including the content of computer memory or information storage facilities, whether cloud-based or otherwise, SharePoint repositories, OneDrive repositories, Google Drive repositories, and computer programs, and any instructions or interpretive materials associated with them), Documents capable of being used with word-processing applications (such as Word or Word Perfect), spreadsheets (in Excel format or otherwise), presentations (in PowerPoint or any other format), electronic files or Documents or any electronically stored information of any kind (Including associated metadata, email, and voice-mail messages), and any other writings, papers, and tangible things of whatever description whatsoever Including any information contained in any computer, even if not printed out, copies of Documents which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or attached thereto), Including prior drafts, whether or not the originals are in Your possession, custody, or control. In addition, "Document" encompasses those at any location, Including on office computers, home computers, laptop computers, iPads, Blackberry devices, iPhones or other cell phones, on the internet (Including social media such as Facebook, Instagram, Twitter, LinkedIn, TikTok, Snapchat, Zoom Chat, Microsoft Teams Chat, and similar platforms) and any other portable devices or removable media, such as CD-ROMs, DVDs, flash drives, thumb drives, cell phones, back-up media, cloud storage and any other devices or media.

15. "February 2026 UCC Financing Statements" refers to UCC Financing Statement Nos. 2026 1125554 and 2026 1125562 filed by TRAG and RGE, respectively, with the Delaware Department of State on February 10, 2026.

16. "First Day Declaration" refers to the *Declaration of David Hindman, as Chief Executive Officer of Omnis Pleasants, LLC, d/b/a Pleasants Power Station, in Support of Chapter*

*11 Petition and First Day Motions* dated July 27, 2026, filed in the Chapter 11 Case at Docket No. 10.

17. "First Notices of Foreclosure" refers to the Notices of Disposition of Collateral by Private Sale dated October 21, 2025 sent by the Lenders to and among the Omnis Parent Parties.

18. "Forbearance Agreement" refers to the Amended and Restated Forbearance Agreement dated February 6, 2026 between and among the Lenders, the Omnis Parent Parties, and the Debtor and all amendments, attachments, exhibits, supplements, and related documents thereto, Including the prior forbearance agreement dated October 22, 2025.

19. "Gassenheimer" refers to Charles Gassenheimer.

20. "George" refers to Kent J. George.

21. "Gupta" refers to Ajay Gupta.

22. "Hindman" refers to David Hindman.

23. "Hodson" refers to Simon K. Hodson.

24. "HSF Kramer" refers to Herbert Smith Freehills Kramer (US) LLP and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, counsels, associates, and anyone acting on its behalf.

25. "Identify(ing)," "Identified," "Identity," and "Identification" means:

a. When used in reference to an individual, his or her (i) full name, (ii) present or last known home address and telephone numbers, (iii) present or last known business address and telephone numbers, and (iv) present or last known occupation, employer and job title or description (indicating whether the information provided is "current" or "last known" in each instance);

b. When used in reference to an organization of any kind, (i) its full name, (ii) its form of organization, (iii) its date and state of incorporation (if applicable), (iv) the address of its principal place of business and its telephone numbers, (v) each state in which it is registered or authorized to do business and the date on which it was first so registered or authorized, (vi) each state in which it was, but is no longer, registered or authorized to do business, the date on which it was first so registered or authorized, and the date on which it ceased to be so registered or authorized, (vii) the name and current or last known address of each person who currently serves as an officer or director (if applicable) together with the title held by each such person and the date from which such title has been held, (viii) whether it is currently active and, if not, the date on which and reason for which it ceased doing business, (ix) whether it is currently in good standing in each state in which it is incorporated or registered or authorized to do business, (x) the address and phone number of each other location at which it currently does business and the date on which it commenced doing business at that location, and (xi) the address and phone number of each location at which it did business in the past, but at which it currently does not operate, and the dates between which it did business at each such location;

c. When used in reference to a Document, (i) the type of Document, (ii) its date, (iii) the identity of its author(s) and its recipient(s), (iv) any title and/or serial or file number appearing on the Document, (v) the identity of its present custodian, (vi) its present location, and (vii) a brief description of

its subject matter. If any such Document was, but is no longer in Your possession or control or in existence, state whether it is missing, lost, has been destroyed, has been transferred to others or has been otherwise disposed of; and

d. When used in reference to an oral Communication, (i) the date, place or places, and parties to the oral Communication or some other means of identifying the oral Communication; (ii) the substance of the oral Communication; (iii) the medium through which the oral Communication was made (in person or by telephone or video conference); (iv) each person who participated in the oral Communication; (v) each person hearing the oral Communication; and (vi) whether any written note or memorandum documenting the oral Communication exists in the manner required to identify a Document as defined above.

26. "Include(s)" or "Including" means including without limitation.

27. "Independent Manager" refers to the Independent Manager of the Debtor.

28. "Intercompany Notes" refers to, individually and collectively, (i) the revolving promissory note dated October 31, 2023 between Quantum and the Debtor, as referenced at paragraph 43 of the First Day Declaration, and all amendments, attachments, exhibits, supplements, and related documents thereto, and (ii) the promissory note dated October 31, 2023 between Omnis Energy and the Debtor, as referenced at paragraph 43 of the First Day Declaration, and all amendments, attachments, exhibits, supplements, and related documents thereto.

29. "Interim Cash Collateral Order" refers to the *Interim Order (I) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (II) Granting Adequate*

*Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, filed in the Chapter 11 Case at Docket No. 50.

30. "January 2025 Loan Agreement" refers to the Loan and Security Agreement dated January 14, 2025 between and among TRAG and the Omnis Parent Parties and all amendments, attachments, exhibits, supplements, and related documents thereto.

31. "January 2026 Loan Agreement" refers to the Loan and Security Agreement dated January 29, 2026 between and among TRAG, Quantum, and the Debtor and all amendments, attachments, exhibits, supplements, and related documents thereto.

32. "January 2026 UCC Financing Statement" refers to UCC Financing Statement No. 2026 0297198 filed by TRAG with the Delaware Department of State on January 13, 2026.

33. "June 2023 Loan Agreement" refers to the Loan and Security Agreement dated June 2, 2023 between and among RGE, Omnis Global, and Omnis Energy and all amendments (Including those amendments on June 30, 2023 and July 9, 2024), attachments, exhibits, supplements, and related documents thereto.

34. "Lenders" refers to TRAG and RGE.

35. "Letter of Credit" refers to the Irrevocable Standby Letter of Credit dated January 28, 2026 issued by the Bank of America for the benefit of Tyr and payable by TRAG.

36. "March 2025 Note" refers to the Secured Promissory Note dated March 31, 2025 between and among TRAG and the Omnis Parent Parties and all amendments, attachments, exhibits, supplements, and related documents thereto.

37. "May 2023 Loan Agreement" refers to the Loan and Security Agreement dated May 26, 2023 between and among TRAG and the Omnis Parent Parties and all amendments

(Including those amendments on June 30, 2023, July 9, 2024, and August 1, 2024), attachments, exhibits, supplements, and related documents thereto.

38. "Nathan" refers to Gilbert Nathan.

39. "Notices of Default" refers to the Notices of Default and Reservation of Rights dated October 1, 2025 sent by the Lenders to and among the Omnis Parent Parties.

40. "November 2023 Loan Agreement" refers to the Loan and Security Agreement dated November 8, 2023 between and among TRAG, Omnis Energy, and Omnis Global, as referenced at paragraph D(ii) of the Interim Cash Collateral Order, and all amendments, attachments, exhibits, supplements, and related documents thereto.

41. "Omnis Advanced" refers to Omnis Advanced Technologies, LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

42. "Omnis Energy" refers to Omnis Fuel Technologies, LLC d/b/a Omnis Energy and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

43. "Omnis Global" refers to Omnis Global Technologies, LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

44. "Omnis Parent Parties" refers to Omnis Global, Omnis Energy, and Quantum.

45. "Payoff Amount" refers to the $75,640,000 aggregate outstanding obligation amount owed pursuant to the TRAG/RGE Loan Agreements, as represented by the Lenders in the Term Sheet.

46. "Payoff Attempt" refers to DFC's delivery of the check for the Payoff Amount to counsel for the Lenders on or about July 16, 2026 as payment in full of all obligations under the TRAG/RGE Loan Agreements.

47. "Petition" refers to the Chapter 11 Voluntary Petition filed by the Debtor on the Petition Date.

48. "Petition Date" refers to July 26, 2026.

49. "Plant" refers to the Pleasants Power Station, a 1,278-megawatt coal-fired power plant located in Pleasants County, West Virginia that is owned and operated by the Debtor.

50. "Power Plant Collateral" shall have the meaning set forth in section 7(g) of the Forbearance Agreement.

51. "Quantum" refers to Quantum Pleasants, LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

52. "RGE" refers to RG Energy LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

53. "RGE IP Agreement" refers to the Intellectual Property Security Agreement dated June 2, 2023 between RGE and Omnis Advanced, as referenced at paragraph D(ii) of the Interim Cash Collateral Order, and all amendments, attachments, exhibits, supplements, and related documents thereto.

54. "Robbins" refers to Anthony Jay "Tony" Robbins.

55. "Second Notices of Foreclosure" refers to the Notices of Disposition of Collateral by Private Sale dated February 2, 2026 sent by the Lenders to and among the Omnis Parent Parties.

56. "Smith" refers to Randall Smith.

57. "Stollings" refers to Lindsay M. Stollings.

58. "Suggestion of Bankruptcy" refers to the Notice of Suggestion of Bankruptcy filed by Nathan on August 12, 2026 in the West Virginia Litigation.

59. "Term Sheet" refers to the proposed corporate restructuring term sheet that the Lenders circulated on or about July 15, 2026 Identifying the Payoff Amount.

60. "TRAG" refers to TRAG LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

61. "TRAG IP Agreement" refers to the Intellectual Property Security Agreement dated May 26, 2023 between TRAG and Omnis Advanced, as referenced at paragraph D(ii) of the Interim Cash Collateral Order, and all amendments, attachments, exhibits, supplements, and related documents thereto.

62. "TRAG/RGE Credit Documents" refers to the May 2023 Loan Agreement, TRAG IP Agreement, June 2023 Loan Agreement, RGE IP Agreement, November 2023 Loan Agreement, January 2025 Loan Agreement, March 2025 Note, and Forbearance Agreement.

63. "TRAG/RGE Loan Agreements" refers to the May 2023 Loan Agreement, June 2023 Loan Agreement, January 2025 Loan Agreement, March 2025 Note, and January 2026 Loan Agreement.

64. "TRAG/RGE Secured Obligations" refers to the debts, liabilities, fees, costs, expenses, penalties, premiums, indemnities, and other charges allegedly owed to TRAG and RGE under or in connection with the TRAG/RGE Credit Documents.

65. "TRAG/RGE TRO Motion" refers to the motion for a temporary restraining order and preliminary injunction filed by the Lenders on July 21, 2026 in the West Virginia Litigation.

66. "Tyr" refers to TyrEnergy, LLC and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

67. "UCC" refers to the Uniform Commercial Code.

68. "West Virginia Litigation" refers to the civil action initiated by the Omnis Parent Parties against the Lenders and Nathan in the Circuit Court of Pleasants County, West Virginia at Case No. CC-37-2026-C-14.

69. "WVEDA" refers to the West Virginia Economic Development Authority and its current and former affiliates, corporate parents, subsidiaries, officers, directors, employees, representatives, attorneys, joint ventures, partners, and anyone acting on its behalf.

70. "WVEDA Loan" refers to the $50 million in principal that WVEDA loaned pursuant to the WVEDA Loan Agreement.

71. "WVEDA Loan Agreement" refers to the Loan Agreement dated December 13, 2023 between and among WVEDA, Quantum, the Debtor, and Omnis Energy and all amendments, attachments, exhibits, supplements, and related documents thereto.

72. "You" or "Your" refers to RGE.

**INSTRUCTIONS**

1. Federal Rule of Civil Procedure ("FRCP") 45 is hereby incorporated by reference and applies to each of the following instructions. All responses shall comply with the requirements of the FRCP.

2. Unless otherwise stated in the Document Requests in this subpoena (collectively, the "Requests" and each, a "Request"), the relevant time period for the discovery being sought shall be January 2023 to the present. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be Identified and produced.

3. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all responses that might otherwise be construed to be outside of their scope.

5. The use of the singular form of any word includes the plural and vice versa. The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense. The singular and masculine form of nouns and pronouns shall embrace, and be read and applied as including, the plural, feminine, or neuter, as circumstances may make appropriate.

6. The phrase "possession, custody, or control" shall be construed in the broadest possible manner and includes not only those things in Your immediate possession, but also those things which are subject to Your control.

7. The Requests shall be deemed continuing in nature. In the event You become aware of or acquire additional information Concerning any of the following Requests, such additional information is to be promptly produced.

8. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, Including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, attorneys, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, Including on personal computers, wireless devices, local area networks, application-based communications services (Including Facebook Messenger, Instant Bloomberg, WeChat, Kakao Talk, WhatsApp, Signal, Telegram, iMessage, Discord, etc.) and web-based file hosting services (Including Gmail, Yahoo, etc.). You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf.

9. Documents not otherwise responsive to the Requests should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by the Requests; (b) if such Documents are attached to, enclosed with, or accompanying Documents called for by the Requests; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

10. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11. If a Document responsive to any Request is not a communication between You and the Debtor, or is not otherwise in the Debtor's possession, custody, or control, You must produce such Document directly in response to this subpoena. Omnis Energy and Quantum expressly

reserve the right to seek production of any responsive Document directly from You in the event that the Debtor fails or refuses to produce such Document in the Chapter 11 Case.

12. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

a. Identify the type, title, and subject matter of the Document;

b. State the place, date, and manner of preparation of the Document;

c. Identify all authors, addressees, and recipients of the Document, Including information about such persons to assess the privilege asserted; and

d. Identify the legal privilege(s) and the factual basis for the claim.

13. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 12 above must be provided.

14. To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.

15. If any part of the following Requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and

stating whatever information or knowledge You have concerning the portion to which You do not respond.

16. If You object to any of the Requests, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request, You shall respond to any other portions of such Request as to which there is no objection.

17. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

18. If there are no Documents responsive to a particular Request, please provide a written response so stating.

19. If You believe that any Request, definition, or instruction is ambiguous, in whole or in part, You nonetheless must respond and (a) set forth the matter deemed ambiguous and (b) describe the manner in which You construed the Request in order to frame Your response.

20. All Documents produced shall be provided in either native file or single-page 300 dpi-resolution group IV TIF (tiff) format, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file as rendered by an industry-standard text extraction program in the case of electronic originals or by an industry-standard Optical Character Recognition (OCR) program in the case of scanned paper Documents.

21. Documents and other responsive data or materials created, stored, or displayed on electronic or electromagnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, Including all reasonably accessible metadata, custodian, or Document source information, and searchable text so as to allow Omnis Energy and Quantum through a reasonable and modest effort to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

## DOCUMENT REQUESTS

### *A. Loans and Other Agreements*

1. The June 2023 Loan Agreement, Including all drafts of the June 2023 Loan Agreement.

2. All Documents and Communications Concerning the status, enforcement, or collection of any amounts owed under the June 2023 Loan Agreement, Including any amounts owed by the Debtor.

3. The RGE IP Agreement, Including all drafts of the RGE IP Agreement.

4. All Documents and Communications with WVEDA Concerning the status, enforcement, or collection of the WVEDA Loan.

5. All Documents and Communications with WVEDA regarding its willingness to grant a 90-day forbearance period on the WVEDA Loan.

6. All Documents and Communications Concerning the Lenders' funding of the Intercompany Notes.

7. All Documents and Communications Concerning the Notices of Default, Including their issuance and any responses thereto.

8. All Documents and Communications Concerning the First Notices of Foreclosure, Including their issuance and any responses thereto.

9. All Documents and Communications Concerning the Second Notices of Foreclosure, Including their issuance and any responses thereto.

10. All Documents and Communications Concerning the filing of the February 2026 UCC Financing Statements.

11. The Forbearance Agreement, Including all drafts of the Forbearance Agreement.

12. All Documents and Communications Concerning the negotiation of the Forbearance Agreement, Including of the Power Plant Collateral.

13. All Documents and Communications Concerning entry into the Forbearance Agreement.

14. All Documents and Communications Concerning the status, enforcement, or collection of any amounts owed under the Forbearance Agreement.

***B. Nathan and Hindman's Appointment***

15. All Documents and Communications Concerning the removal of Hodson and Smith from their positions with the Debtor, Including the Lenders' involvement in the removal.

16. All Documents and Communications Concerning Nathan's appointment as sole Director and Independent Manager, Including the Lenders' involvement in the appointment.

17. All Documents and Communications Concerning the relationship between and among the Lenders and Nathan.

18. All Documents and Communications Concerning the Lenders' role in defining, expanding, or limiting the scope of Nathan's authority as Independent Manager.

19. All Documents and Communications Concerning Hindman's appointment as CEO, Including the Lenders' involvement in the appointment.

20. All Documents and Communications Concerning the relationship between and among the Lenders and Hindman.

21. All Documents and Communications Concerning the Lenders' role in defining, expanding, or limiting the scope of Hindman's authority as CEO.

22. All Documents and Communications Concerning the Lenders' involvement in or control over the Debtor's governance, operations, or management, Including the operations and management of the Plant.

23. All Documents and Communications Concerning the Lenders' voting rights in Quantum, Including any exercise or attempted exercise of such rights.

24. All Documents and Communications Concerning any agreement or understanding that the Debtor's financial information would be provided by Gupta, on behalf of the Lenders, to Quantum.

25. All Documents and Communications Concerning any withholding by Gupta or the Lenders of the Debtor's financial information from Quantum following the Forbearance Agreement.

26. All audio or visual recordings of any telephone calls, conference calls, videocalls, virtual meetings, or other conferences (regardless of the format, platform, or storage location of such recordings), between or among the Lenders, Robbins, or Gupta, on the one hand, and Debtor, Nathan, or Hindman, on the other.

### *C. Deed of Trust and Assignment of Leases*

27. The Deed of Trust, Including all drafts of the Deed of Trust.

28. The Assignment of Leases, Including all drafts of the Assignment of Leases.

29. All Documents and Communications Concerning the decision to execute the Deed of Trust, Including any consideration or benefit received or expected to be received by the Lenders.

30. All Documents and Communications Concerning the decision to execute the Assignment of Leases, Including any consideration or benefit received or expected to be received by the Lenders.

31. All Documents and Communications Concerning the authorization or approval of the Deed of Trust, Including Communications between and among the Debtor, Nathan, Hindman, and the Lenders.

32. All Documents and Communications Concerning the recording of the Deed of Trust with the Clerk of Pleasants County, West Virginia.

33. All Documents and Communications Concerning the recording of the Assignment of Leases with the Clerk of Pleasants County, West Virginia.

34. All Documents and Communications Concerning the timing of the Deed of Trust relative to the expiration of the forbearance period under the Forbearance Agreement.

***D. Payoff Dispute***

35. All Documents and Communications Concerning requests for information about amounts owed to the Lenders under the TRAG/RGE Loan Agreements or TRAG/RGE Secured Obligations, and all responses to those requests.

36. The Term Sheet, Including all drafts of the Term Sheet.

37. All Documents and Communications Concerning the Term Sheet.

38. All Documents and Communications Concerning the calculation or determination of the Payoff Amount, Including supporting analyses.

39. All Documents and Communications Concerning the amount the Lenders contend constitute payment in full under the Forbearance Agreement.

40. All Documents and Communications Concerning the Payoff Attempt, Including the check for the Payoff Amount.

41. All Documents and Communications Concerning any offer or agreement to pay, in addition to the Payoff Amount, any documented amounts owed to the Lenders under the TRAG/RGE Loan Agreements or TRAG/RGE Secured Obligations.

42. All Documents and Communications Concerning the Lenders' requests for information about the Payoff Attempt.

43. All Documents and Communications Concerning any approval required for acceptance of the Payoff Attempt.

44. All Documents and Communications Concerning whether the Payoff Attempt qualified as a related-party transaction under the Forbearance Agreement.

45. All Documents and Communications Concerning whether the Payoff Attempt qualified as an indefeasible payment under the Forbearance Agreement.

46. All Documents and Communications Concerning the rejection of the Payoff Attempt, Including the reasons for rejection.

47. All Documents and Communications Concerning the effect of the Payoff Attempt on Nathan's role as sole Director and Independent Manager.

48. All Documents and Communications Concerning the Lenders' stance on Nathan or Hindman's authority to act on behalf of the Debtor after the Payoff Attempt.

49. All Documents and Communications Concerning any actual or attempted removal of Nathan as sole Director and Independent Manager.

50. All Documents and Communications Concerning any actual or attempted appointment of Gassenheimer as interim Director of the Debtor.

51. All Documents and Communications Concerning the $84,420,216 allegedly owed to the Lenders, as referenced in the August 2026 Letter, Including any calculation, determination, or supporting analyses.

52. All Documents and Communications Concerning the assertion in the August 2026 Letter that the "obligations owed to the Lenders have continued to increase daily."

53. All Documents and Communications Concerning the assertion in the August 2026 Letter that "the Lenders believe that additional defaults have occurred that could further increase the obligations owed to the Lenders."

***E. West Virginia Litigation and the Chapter 11 Case***

54. All Documents and Communications Concerning the denial of the TRAG/RGE TRO Motion.

55. All Documents and Communications between or among Nathan, Hindman, the Debtor, and the Lenders from the denial of the TRAG/RGE TRO Motion through the filing of the Petition.

56. All Documents and Communications Concerning the Lenders' involvement in or knowledge of the Debtor's decision to file the Petition.

57. All Documents and Communications Concerning the Suggestion of Bankruptcy filed in the West Virginia Litigation, Including any Communications between and among the Lenders and Nathan.

58. All Documents and Communications Concerning the Debtor's retention of professionals in the Chapter 11 Case, Including the Lenders' involvement in or approval of such retentions.

59. All Documents and Communications Concerning any engagement, retention, agreement, or arrangement between or among the Lenders, on the one hand, and any professional retained by the Debtor in the Chapter 11 Case, on the other.

60. All Documents and Communications Concerning any engagement, retention, agreement, or arrangement between or among the Lenders, on the one hand, and HSF Kramer, on the other, Including in connection with the filing of the January 2026 UCC Financing Statement and the Forbearance Agreement.

61. All Documents and Communications Concerning any engagement, retention, agreement, or arrangement between or among the Debtor, on the one hand, and HSF Kramer, on the other.

62. All Documents and Communications Concerning any actual or potential conflict of interest arising from HSF Kramer's representations of (i) the Lenders in connection with the filing of the January 2026 UCC Financing Statement and the Forbearance Agreement and (ii) the Debtor prior to and in connection with the Chapter 11 Case.

***F. Sale Process and Restructuring***

63. All previous analyses, reports, memoranda, studies, or similar documents Concerning the value of the Plant and/or the Power Plant Collateral.

64. All Documents and Communications Concerning the Lenders' involvement in any proposed sale, restructuring, refinancing, or recapitalization of the Debtor or its assets, Including the sale contemplated in the Bid Procedures Motion.

65. All Documents and Communications Concerning the Lenders' involvement in any marketing process for the Plant or the Debtor's assets.

66. All Documents and Communications Concerning the Lenders' involvement in or attempts to acquire additional claims, whether purportedly secured or unsecured, against Debtor in the Chapter 11 Case.