**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Omnis Pleasants, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11169 (KBO)<br><br>**Docket Ref. Nos. 17 & 86** |

**WEST VIRGINIA ECONOMIC DEVELOPMENT AUTHORITY'S OBJECTION TO (A) DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF PREPETITION COLLATERAL, INCLUDING CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF AND (B) DEBTORS MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE AUCTION AND BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS, (II) SCHEDULING CERTAIN DATES AND DEADLINES RELATED THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE BIDDER AND OFFER BID PROTECTIONS RELATED THERETO, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) APPROVING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF[1]**

West Virginia Economic Development Authority ("WVEDA"), by its undersigned counsel, FBT Gibbons LLP, files this Objection (this "Objection") to the above-captioned debtor's (the "Debtor") (A) *Motion for Entry Interim and Final Orders (I) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 17] (the "Cash Collateral Motion") and (B) *Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving*

[1] For the avoidance of doubt, the filing of this Objection is not a waiver of any immunity under state law or the Eleventh Amendment of the United States Constitution and WVEDA expressly reserves its rights to assert those immunities.

*the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 86] (the "Bid Procedures Motion"). In support of this Objection, WVEDA respectfully states:

## BACKGROUND

### I. The WVEDA Loan and Pleasants Power Station

1. In December 2023 WVEDA made a loan (the "Loan")[2] in the principal amount of $50 million to non-debtors Quantum Pleasants, LLC ("Quantum")[3] to finance the costs related to the transition of the Pleasants Power Station (the "Plant") to hydrogen-based power. The Loan to Quantum is evidenced by, among other documents, a loan agreement dated December 13, 2023 (the "Loan Agreement"). As part of the Loan and entry into the Loan Agreement, the Debtor absolutely, unconditionally and irrevocably guaranteed the obligations of Quantum under the Loan Agreement (and ancillary documents executed by the parties in connection with the Loan).

2. Upon information and belief, on August 1, 2023, Quantum purchased all of the membership interests in ETEM Remediation Two LLC, now the Debtor, which owned the Plant. At that time, the Plant was a decommissioned and mothballed 1,300 Megawatt coal-powered electric generation power plant. The Plant, along with its related buildings, facilities, electrical generation infrastructure and transmission powerlines, is located on approximately 190 acres of real property in St. Marys, West Virginia. Upon information and belief, in August 2023, Quantum

[2] While Omnis Fuel Technologies, LLC ("Omnis Fuel") was a signatory to the Loan, it was neither a borrower nor guarantor pursuant to the Loan.

[3] Upon information and belief, the Debtor is a wholly owned subsidiary of Quantum, and Omnis Fuel is a holder of membership units in Quantum.

changed the name from ETEM Remediation Two LLC to Omnis Pleasants, LLC. Upon information and belief, the Debtor resumed operation of the Plant for electric power generation using coal in August 2023.

3. On December 13, 2023, WVEDA made the Loan to Quantum to finance the expansion and retrofit of the Plant. Specifically, WVEDA understood that the proceeds of the Loan would allow the Debtor to convert the Plant from a coal-powered electric generation power station into a facility that produced electricity solely from the combustion of hydrogen fuel. The production would occur on-site utilizing Omnis Quantum Reformer technology able to reform coal into hydrogen and ancillary materials, including graphite (the "Hydrogen Project").[4]

4. In connection with the Loan, Quantum represented to WVEDA that the proceeds of the Loan would be used exclusively for the costs of the Project, including, without limitation, the acquisition of real and personal property related to the Project. Further, Quantum represented to WVEDA that, Omnis Fuel, the sole voting member of Quantum, would deposit $50 million in matching funds into a project account in the name of Omnis Fuel (the "Project Account") to establish the economic viability of the Project and earmark funds to be used by Quantum and the Debtor to pay for the Project.

5. The economic terms of the Loan are straight forward – interest accrued at the rate of 1% per annum and payment of principal and interest was deferred until the Loan maturity date of June 13, 2026. The non-economic terms of the Loan were more material and substantive - Quantum (a) cause the Debtor to grant a first priority lien to WVEDA on the real property to be acquired in connection with the Project (the "New Project Property"), (b) cause the Debtor to grant a first priority lien on the equipment acquired in connection with the Project (the "Project

[4] The construction and development of the Hydrogen Project and the expansion and renovation of the Plant are collectively referred to as the "Project."

Equipment”), and (c) grant a first priority security interest in and to all funds, interest and proceeds held in a segregated account established within 30 days of closing and held in Quantum’s name (the “State Security Revenue Account”).

6. In August 2024, Quantum, the WVEDA and NBT Bankcorp, Inc. entered into a Deposit Account Control Agreement, made effective as of December 13, 2023, with respect to a deposit account established by Quantum, to serve as the State Security Revenue Account, with NBT Bankcorp, Inc. (the “Quantum DACA”). In connection with the Quantum DACA, NBT Bankcorp acknowledged WVEDA’s security interest in, and ultimate control over, the State Security Revenue Account. WVEDA has not been able to confirm whether funds were deposited into the State Security Revenue Account.

7. In November 2024, Quantum, the Debtor and WVEDA entered into a Security Agreement, Fixture Filing and Access Agreement made effective as of December 13, 2023, pursuant to which Quantum granted to WVEDA a security interest in all existing and after-acquired equipment of Quantum located on a tract of land comprising a portion of the Plant owned by the Debtor. Upon information and belief, the Debtor (i) failed to purchase the New Project Property, (ii) accordingly failed to grant a lien on the New Project Property, and (iii) failed to grant a lien on the Project Equipment acquired by Debtor. Based on review of certain documents, it does not appear to WVEDA that funds were ever appropriately segregated in the State Security Revenue Account as required by the Loan Agreement.

8. At the time that the parties entered into the Loan Agreement, the Debtor and Quantum represented to WVEDA that the development and construction of the Project would increase employment at the Plant from approximately 160 employees to over 200 employes during the construction period. The Debtor and Quantum further represented to WVEDA that upon

completion of the Project, employment at the Project could approach as many as 600 permanent jobs. Pleasants County, West Virginia had suffered significant job loss following the shuttering of the original Plant, accordingly, the significance of the job creation promised by the Project cannot be understated. The State of West Virginia viewed the Loan as an opportunity to support and encourage the restoration of jobs and creation of employment opportunities.

9. Further, when combined with Omni Fuel Technologies' investment and the Department of Energy grant under the Black Hydrogen Program, the Loan would contribute to approximately $200 million in total investment directed toward the deployment of cutting-edge technology in Pleasants County. Taken together, it was clear that the Project would have a significant and positive economic impact on the residents of Pleasants County and the State of West Virginia as a whole.

**II. The Debtor's Chapter 11 Case**

10. On July 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition (this "Chapter 11 Case") for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its businesses and property as a debtor-in-possession. No trustee or examiner has been appointed in this Chapter 11 Case.

11. On July 28, 2026, the Debtor filed the Cash Collateral Motion, seeking approval to utilize the cash collateral of TRAG LLC ("TRAG") and RG Energy LLC ("RGE" and together with TRAG, "TRAG/RGE"),[5] As part of the Cash Collateral Motion, the Debtor seeks to provide certain protections to TRAG/RGE as consideration for the Debtor's use of cash collateral. The Cash Collateral Motion proposes no new funds are being advanced by either TRAG or RGE.

[5] Upon information and belief, TRAG is a holder of membership units in the Debtor.

Specifically, and among other things, the Cash Collateral Motion seeks to (i) provide TRAG/RGE with adequate protection liens against of all assets of the Debtor including unencumbered assets and including Avoidance Actions; (ii) limit the Debtor's ability to reorganize in this Chapter 11 Case through certain restrictive covenants; and (iii) waive section 506(c) surcharge rights, section 552(b) "equities of the case" rights, and marshalling rights.

12. On July 29, 2026, this Court entered an interim cash collateral order that approved the Debtor's use of cash collateral through September 3, 2026 [Docket No. 112] (the "Interim Order"). A final hearing on the Cash Collateral Motion is scheduled for September 3, 2026.

13. On August 13, 2026, the Debtor filed the Bid Procedures Motion, pursuant to which the Debtor sought, among other things, entry of an order establishing bid procedures for the sale of the Plant. Specifically, the Bid Procedures Motion seeks authority to (i) implement a sales process pursuant to a strict timeline and parameters for submission of bids; (ii) allow the Debtor to designate a Stalking Horse Bidder for the Plant and provide such bidder with certain bid protections; and (iii) conduct an auction if necessary for the Plant.

14. On August 14, 2026, Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum filed their *Motion for Entry of an Order (i) Dismissing the Debtor's Chapter 11 Case, or, (ii) in the Alternative, Directing the Appointment of a Chapter 11 Trustee, and (iii) Vacating the Interim Cash Collateral Order* [Docket No. 93] (the "Motion to Dismiss"),[6] seeking the Dismissal of the Debtor's Chapter 11 Case.

15. On August 18, 2026, the Debtor filed its *Notice of Extension of Objection Deadline for Debtor's Motion for Entry Interim and Final Orders (i) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (ii) Granting Adequate Protection to the*

---

[6] WVEDA has just retained outside counsel to assist WVEDA in this Chaopter 11 Case. At this time, WVEDA takes no position regarding the Motion to Dismiss; all rights of WVEDA are reserved.

*Prepetition Secured Parties, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Docket No. 100], extending the deadline for parties to file any objections or responses to the Cash Collateral Motion on a final basis was extended to August 27, 2026 at 4:00 p.m. ET, which is also the deadline for responses or objections to the Bid Procedures Motion.

16. On August 26, 2026, the Debtor filed a revised *Proposed Final Order (i) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (ii) Granting Adequate Protection to the Prepetition Secured Parties, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief* [Docket No. 167] (the "Proposed Final Order"), which, notably, contains new sale milestones tied to the timeline set forth in the Bid Procedures Motion.

**OBJECTION**

17. The Plant represents more than an asset to be sold for the benefit of the Debtor's creditors as part of this Chapter 11 Case. From WVEDA's perspective, the successful sale of the Plant should result in the payment in full of all obligations owing to WVEDA under the Loan Agreement and hopefully result in over 600 permanent, well-paying jobs for West Virginia residents. WVEDA's primary goals in this Chapter 11 Case are to ensure that the sale of the Plant results in the indefeasible payment in full of all obligations owing under the Loan Agreement and the transition of the Plant to a successful new operator for the benefit of the residents of the State of West Virginia. Given the value of the Plant, WVEDA believes that a sale of the Plant should result in the satisfaction of the Debtor's significant obligations owing to WVEDA. Further, the importance of the Project to the people of West Viriginia warrants that the sale process be completed properly and through a fully transparent process. Accordingly, WVEDA submits this

Objection to the Cash Collateral Motion and Bid Procedures Motion and requests that the final orders, if entered, granting each motion reflect the concerns of WVEDA.

## I. The Cash Collateral Motion

18. While WVEDA understands the Debtor's need to access cash collateral to maintain its operations at the Plant and fund this Chapter 11 Case, WVEDA believes that certain of the "protections" and accommodations sought by the Cash Collateral Motion are over-reaching and may infringe on the ability of WVEDA to be paid in full on account of the Loan in this Chapter 11 Case and the Debtor to run an open, transparent and value maximizing sale process. WVEDA believes that this Court should carefully review and scrutinize the Proposed Final Order to ensure that the interests of WVEDA, among others, are properly preserved in a Chapter 11 Case that has great importance in the State of West Virginia.

### A. This Court Should Examine the Proposed Liens on Previously Unencumbered Assets.

19. The Debtor seeks to grant senior liens in favor of TRAG/RGE on assets that the Debtor states are unencumbered, including, among other things, Avoidance Actions and the proceeds of Avoidance Actions. WVEDA is concerned that granting TRAG/RGE liens on unencumbered assets could effectively strip away possible sources of recovery in this Chapter 11 Case that could be realized by WVEDA, if WVEDA is not otherwise paid in full from the proceeds from the sale of the Plant.

20. WVEDA is not aware of any legal basis or compelling circumstances that support this Court granting liens to TRAG/RGE on the Debtor's unencumbered assets, including but not limited to, the Avoidance Actions.[7] WVEDA believes that Avoidance Actions are a distinct

[7] WVEDA is not aware of any disclosure by the Debtors whether TRAG/RGE are or could be potential targets of an Avoidance Action. That disclosure should be made to ensure that liens are not granted on proceeds of any claims that the chapter 11 estates may have against TRAG/RGE, if any.

creature of bankruptcy law and should be preserved and utilized to increase recoveries for unsecured creditors. *See Schubert v. Lucent Technologies, Inc. (In re Winstar Communications, Inc.)*, 554 F.3d 382, 412 (3d Cir. 2009). *See also In re Tribune Co.*, 464 B.R. 126, 171 (Bankr. D. Del. 2011) (noting "that case law permits all unsecured creditors to benefit from avoidance action recoveries"); *In re Cybergenics Corp.*, 226 F.3d 237, 244 (3d Cir. 2000) (finding that "the debtor in possession is similarly endowed to bring [avoidance] claims on behalf of, and for the benefit of, all creditors").

21. WVEDA respectfully submits that the adequate protection liens granted, if any, to TRAG/RGE should be limited in scope to the prepetition collateral and should attach only to the extent that this Court determines such prepetition liens, if any, are valid and not subject to avoidance. Further, WVEDA believes that this Court should consider preserving the Avoidance Action proceeds to maximize the value of the Debtor's estate for the benefit of all creditors, including WVEDA.

**B. <u>This Court Should Examine the Restrictive Covenants to Determine if they are in the Best Interest of the Debtor.</u>**

22. WVEDA believes that continued operation of the Plant is of vital importance to the State of West Virginia and its approximately 1.8 million residents. In reviewing the Proposed Final Order, WVEDA is concerned that that the Debtor has agreed to certain covenants that could impact the continued operation and successful marketing and sale of the Plant. Among other things, WVEDA is concerned that the Debtor has agreed: (i) *not to* seek alternative debtor-in-possession financing under sections 364(c) or 364(d) of the Bankruptcy Code; (ii) *not to* challenge the value of the prepetition collateral claimed by TRAG/RGE to be encumbered by their liens; (iii) *not to* propose or support any chapter 11 plan that does not provide for the indefeasible payment in full in cash of all amounts allegedly owing to TRAG/RGE; or (iv) *not to* seek any relief that

would restrict or impair TRAG/RGE's rights under the Proposed Final Order or applicable nonbankruptcy law.

23. While WVEDA recognizes that certain of these provisions may be common in debtor-in-possession financing orders approved by bankruptcy courts in this District where new money is being advanced to the chapter 11 debtor; however, that is not the case here. WVEDA does not believe that new money is being advanced to the Debtor and consequently, WVEDA is concerned about the impact of these provisions on the Debtor's ability to continue funding operations of the Plant and consummate a successful sale of the Plant that indefeasibly pays the Loan in full to WVEDA.

24. WVEDA provided significant and meaningful capital to invest in the Plant. WVEDA is concerned that the covenants that the Debtor has agreed to may limit or hinder the Debtor's ability to maximize the value of the Plant to provide a full recovery to WVEDA. Taken together, the restrictive covenants contained in the Proposed Final Order, effectively grant TRAG/RGE a veto power over the Debtor's restructuring by prohibiting the Debtor from seeking alternative financing, challenging collateral values, or proposing any restructuring plan that does not pay TRAG/RGE in full, possibly foreclosing potentially value-maximizing alternatives.

25. Similarly, the form of the Proposed Final Order provides for credit bid rights for TRAG/RGE, allowing TRAG/RGE to bid up to the full amount of their alleged secured claims without the requirements imposed on third party bidders of providing a Good Faith Deposit, entering into a Confidentiality Agreement, providing the Debtor with Preliminary Bid Documents, providing the Debtor and its estate with evidence of committed financing, or Bid Documents other than a marked-up purchase agreement. These concessions could chill bidding from third parties

and impact the entire sale process. WVEDA believes that the grant of such rights at this time may be premature.

26. WVEDA believes that any final order entered by this Court should ensure that the ability of the Debtor to uphold its fiduciary duties and explore and pursue all possible value-maximizing restructuring alternatives are preserved for the benefit of WVEDA and the residents of the State of West Virginia.

**C. <u>The Challenge Period Should be Extended.</u>**

27. The Interim Order and the Proposed Final Order (at ¶ 4(b)) provide that creditors shall have 75 days from the date of entry of the Interim order to investigate the validity, perfection, and amount of the claims of TRAG/RGE (the "<u>Challenge Period</u>"). WVEDA acknowledges that this is a standard timeline for a challenge under the Local Rules for the Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"). However, the Local Rules with respect to challenge periods should be considered a guideline and not necessarily a perfect fit in all cases. Under the circumstances of this Chapter 11 Case, WVEDA believes that the Challenge Period should be extended for 75 days from entry of a final order on the Cash Collateral Motion. Specifically, on August 4, 2026, the Office of the United States Trustee filed a notice of the inability to appoint an official committee of unsecured creditors in this Chapter 11 Case [Docket No. 66]. Therefore, the investigation and challenge will be left to creditors. Under the Proposed Final Order, creditors would have just 39 days between the final hearing on the Cash Collateral Motion and the Challenge Period deadline. The burden for a creditor to conduct a thorough investigation and bring a challenge in just over a month is unreasonable under the facts and circumstances of this Chapter 11 Case. Accordingly, WVEDA respectfully requests and believes that this Court should require a longer Challenge Period given the facts and circumstances of this Chapter 11 Case.

**D. The Court Should Examine Whether the New Sale Milestones in the Proposed Final Order Should be Modified.**

28. The Proposed Final Order, unlike the draft originally submitted with Cash Collateral Motion, contains strict milestones that the Debtor must meet in connection with the sale of the Plant in order to continue to access cash collateral (the "Milestones"). WVEDA is concerned that these Milestones are unduly restrictive, particularly in a liquidation case where TRAG/REG are not advancing new funds to the Debtor. Indeed, the Interim Order contained one sale related milestone, the Debtor's deadline to file the Bid Procedures Motion, which was not met by the Debtor. Accordingly, WVEDA submits that the inclusion of strict Milestones likely to be tripped by the Debtor, without any opportunity for cure or similar relief for materiality, may be inappropriate under the facts of this Chapter 11 Case.

**E. Additional Concerns**

29. While of less critical importance to the overall Chapter 11 Case, WVEDA is concerned with the provisions of the Proposed Final Order where the Debtor has agreed to *waive* the estate's right to surcharge any collateral claimed by TRAG/REG to be encumbered by their liens., if any, pursuant to section 506(c) of the Bankruptcy Code, the estate's statutory right to apply the "equities of the case" exception under section 552(b) of the Bankruptcy Code, and the marshalling doctrine. WVEDA is concerned about the impact of these provisions on the continued operation of the Plant and the sale process. WVEDA respectfully requests that this Court carefully consider the necessity of these provisions in the final order and whether they are in the best interests of the Debtor and their estate. The waiver of these estate protections, before this Court

has had an opportunity to evaluate the full scope of the Debtor's chapter 11 estate and assets and the validity of liens and claims, could irreversibly prejudice WVEDA and the chapter 11 estate.

## II. The Bid Procedures Motion

30. WVEDA is aware that the ultimate goal of this Chapter 11 Case appears to be the sale of the Plant. Given the meaningful obligations the Debtor owes to WVEDA – in excess of $50,000,000 – and the importance of the Plant in the State of West Virginia, WVEDA believes that the sale process must create a framework that that results in a robust process leading to the highest and best bid for the Plant. *See In re Bakalis*, 220 B.R. 525, 533 (Bankr. E.D.N.Y. 1998) ("a 'highest' bid is not always the 'highest and best' bid"). Accordingly, while WVEDA is supportive – subject to the preservation of its rights – of the concept of a sale of the Plant, the proposed bidding procedures must be crafted to ensure that the sale process is fair and open and designed to identify a well-qualified operator for the Plant. As noted, WVEDA and the residents of West Virginia are deeply invested in seeing the Project completed. Accordingly, WVEDA respectfully submits that the sale process must be a fair and open, with a manageable timeline, that will yield the highest and best results for WVEDA, the residents of the State of West Virginia and parties in interest in this Chapter 11 Case.[8]

### A. The Proposed Sale Timeline and Parameters

31. The Plant is a 1,278 MW coal-fired generation facility subject to regulatory oversight, including by the Federal Energy Regulatory Commission ("FERC"), PJM Interconnection, L.L.C. ("PJM"), the North American Electric Reliability Corporation ("NERC"), and state environmental agencies. The Bidding Procedures reflect the extraordinary complexity

[8] WVEDA has previously commented in this Objection on the certain of the restrictive provisions in the Proposed Final Order that could impact the proposed sale process. WVEDA suggests that this Court's consideration of the Cash Collateral Motion and the Bid Procedures Motion cannot be in isolation of one another.

of acquiring and operating the Plant by imposing meaningful; bid requirements, including: (a) FERC Section 203 approval applications; (b) PJM transition plans; (c) market-based rate authority plans; (d) reliability compliance transition plans; (e) evidence of adequate working capital; (f) operational transition plans; and (g) numerous other regulatory and operational submissions.

32. The Preliminary Bid Deadline of September 29, 2026 is a mere 26 days after the September 3, 2026 hearing on approval of the Bidding Procedures. WVEDA is concerned that, given this tight time line, an interested and qualified buyer may be unable to submit a bid by the Preliminary Bid Deadline thereby foreclosing an interested and qualified bidder the opportunity to participate in the sale process. The Preliminary Bid Deadline unnecessarily restricts the opportunity for interested and qualified parties to submit bids. Further, the final Bid Deadline of November 9, 2026 is less than ten (10) weeks after the September 3, 2026 hearing on approval of the Bidding Procedures. Given the extraordinary regulatory issues associated with operating the Plant and the extensive bid requirements imposed by the Bidding Procedures, these deadlines may not afford interested and qualified buyers with sufficient time to complete the regulatory, environmental, and operational diligence necessary to submit a conforming bid. WVEDA respectfully submits that there should be additional disclosure by the retained investment banker for the Debtor and that this Court should inquire as to the feasibility of the proposed deadlines.

### B. WVEDA is Uniquely Invested in the Outcome of the Proposed Sale and Should be Included in the Sale Process

33. Pursuant to the Bid Procedures Motion, the Debtor intends to designate TRAG/RGE as Consultation Parties, provided that TRAG/RGE are not active participants in submitting a bid. As such, TRAG/RGE will have extraordinary oversight in and influence on the sale process, i.e., rights with respect to determining Acceptable Bidders, Qualified Bidders, the

Starting Bid, the conduct of the Auction (as each of those terms may be defined in the Bidding Procedures), modifications to the Bidding Procedures, and other material decisions. WVEDA respectfully submits that given the significance of its claim in this Chapter 11 Case coupled with its unique interest in ensuring the successful transition of the Plant to a new, qualified operator necessitates that WVEDA also be designated as a Consultation Party.

### C. The Bid Evaluation Factors Should More Explicitly Prioritize Operational Capability and Going-Concern Value

34. While the Bid Procedures Motion provides that the Debtor may include various operational requirements as part of the Qualified Bid criteria, the bid *evaluation* factors are primarily financial in nature. The current evaluation framework does not sufficiently weigh a bidder's operational track record in power generation, its ability to maintain the existing workforce, or its demonstrated commitment to operating the Plant as a going concern. The success of the sale of the Plant is dependent upon the consummation of a sale with an operator who can maintain the Plant's revenue stream, commercial relationships, and regulatory standing. Accordingly, WVEDA believes that the bid evaluation criteria should also weigh operational capability, power generation experience, and commitment to going-concern operations.

## RESERVATION OF RIGHTS

35. WVEDA submits this Objection without prejudice to, and with a full reservation of, WVEDA's rights to supplement and amend this Objection. This reservation includes, but is not limited to: the filing of a declaration in support thereof, introducing evidence at any hearing relating to this Objection, and further objection to the Cash Collateral Motion or the Bid Procedures Motion, on any grounds that may be appropriate. The Objection is also without prejudice to WVEDA's right to seek other appropriate relief. Finally, given that the Bidding Procedures are procedural and not substantive, all rights of WVEDA to object to the designation of a Stalking

Horse Bidder, submission of a credit bid, conduct of the Auction, Debtor's designation of a Successful Bidder, and the sale of the Plant are expressly preserved by WVEDA.

**WHEREFORE**, WVEDA respectfully requests that the Court consider the issues raised by WVEDA with respect to the Collateral Motion and the Bid Procedures Motion and grant WVEDA such other and further relief as the Court deems just and appropriate under the circumstances.

*[Signature Page Follows]*

Dated: August 27, 2026

**FBT GIBBONS LLP**

Respectfully submitted,

*/s/ Morgan L. Patterson*

Morgan L. Patterson (DE Bar No. 5388)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Facsimile: (302) 429-6294
Email: mpatterson@fbtgibbons.com

-and-

Ronald E. Gold (OH Bar No. 0093655)
Joy D. Kleisinger (OH Bar No. 0101993)
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
E-mail: rgold@fbtgibbons.com
jkleisinger@fbtgibbons.com

-and-

Jared M. Tully (WV Bar No. 9444)
500 Virginia Street East, Suite 1100
Charleston, WV 25301
Phone: (304) 345-0111
Fax: (304) 345-0115
Email: jtully@fbtgibbons.com

***Counsel to the West Virginia Economic Development Authority***