**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OMNIS PLEASANTS, LLC, | Case No. 26-11169 (KBO) |
| Debtor.[1] | Re: D.I. 83<br>**Hearing Date: Sept. 3, 2026, at 1:00 p.m.**<br>**Obj. Deadline: Aug. 27, 2026, at 4:00 p.m.** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION TO EMPLOY HERBERT SMITH FREEHILLS KRAMER (US) LLP**

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to the *Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Herbert Smith Freehills Kramer (US) LLP as Attorneys for the Debtor and Debtor in Possession Effective as of the Petition Date* [D.I. 83] (the "Application"), and in support of his objection respectfully states:

## PRELIMINARY STATEMENT

1. Herbert Smith Freehills Kramer (US) LLP ("HSF Kramer") has a disqualifying conflict of interest stemming from its prepetition representation of TRAG and RGE (both terms defined below) in connection with a forbearance agreement through which the Debtor's assets were pledged to secure an $80,000,000 debt on which the Debtor was neither an obligor nor guarantor. Thus, HSF Kramer holds or represents an interest adverse to the estate; the

[1] The last four digits of the Debtor's tax identification number is 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia 26134.

firm's representation of the Debtor will be materially limited by its prepetition representation of TRAG and RGE. By extension, HSF Kramer cannot be employed under 11 U.S.C. § 327(a). The Application should be denied.

## JURISDICTION & STANDING

2. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). The U.S. Trustee is specifically authorized to monitor retention applications filed under 11 U.S.C. § 327 and, whenever the U.S. Trustee deems it appropriate, to file comments about such applications with the Court. *See* 28 U.S.C. § 586(a)(3)(I).

4. The U.S. Trustee has standing to be heard on the Application pursuant to 11 U.S.C. § 307.

## BACKGROUND

5. On July 26, 2026, the above-captioned debtor (the "Debtor") filed a chapter 11 petition in this Court.

6. The Debtor owns and operates a coal-fired power plant in West Virginia. *See Declaration of David Hindman, As Chief Executive Officer of Omnis Pleasants, LLC, d/b/a*

*Pleasants Power Station, in Support of Chapter 11 Petition and First Day Motions* [D.I. 10] (the "FDD") ¶ 19.

7. The Debtor's equity interests are indirectly owned 46.62% by TRAG, LLC ("TRAG") and 4.61% by a TRAG affiliate, Robbins Research International, Inc. (together, 51.23%), 43.77% by Omnis Fuel Technologies, LLC, and 5.0% by Harmony Trust. *See* FDD ¶ 36 & Ex. A.

8. Pre-petition, TRAG and RG Energy LLC ("RGE") "made a series of loans to the direct and indirect parent entities of [the Debtor]" totaling over $80,000,000. *Id.* ¶ 42.

9. In February 2026, TRAG, RGE, the Debtor, and certain of the Debtor's affiliates entered into a forbearance agreement, which, among other provisions, "granted TRAG and RGE a first-priority lien on substantially all of the Debtor's assets and property, including the Plant." *Id.* ¶¶ 62 & 64.

10. HSF Kramer represented TRAG and RGE in connection with that forbearance agreement. *See* Appl. Ex. 1 at 6 & Ex. B ¶ 31(a).

11. Upon information and belief, HSF Kramer spent about 154 hours and incurred $243,000 in fees for representing TRAG and RGE prepetition.

12. On February 20, 2026, about two weeks after the parties entered into the forbearance agreement, HSF Kramer switched to representing the Debtor. *See* Appl. ¶ 17.

13. Upon information and belief, six HSF Kramer attorneys who had provided services to TRAG/RGE pre-petition are proposed to represent the Debtor post-petition. Included in that group of six attorneys are two partners: Messrs. Woolverton and Shaughnessy. *See*, *e.g.*, Appl. Ex. 1 at 3. Both partners appear on the signature block of the Debtor's filings in this case.

14. At the first-day hearing, the Debtor sought Court approval to use

TRAG/RGE's purported cash collateral. That relief included the Debtor's waiver of claims relating to TRAG/RGE's prepetition liens, subject to third parties' challenge rights. *See* D.I. 50 ¶ D(iii). Messrs. Woolverton and Shaughnessy attended the first-day hearing on behalf of the Debtor. *See* D.I. 45.

15. On August 14, 2026, Omnis Fuel Technologies, LLC and Quantum Pleasants, LLC filed a motion to dismiss the Debtor's chapter 11 case or alternatively appoint a chapter 11 trustee [D.I. 93] (the "MTD").

16. Omnis Fuel Technologies, LLC owns a 43.77% stake in Quantum Pleasants, LLC (TRAG and its affiliate, Robbins Research International, Inc., collectively own a 51.23% stake in Quantum Pleasants, LLC). *See* FDD ¶ 36 & Ex. A. Quantum Pleasants, LLC in turn owns 100% of the equity in the Debtor. *See id.*

17. The MTD asserts that TRAG/RGE's purported liens on the Debtor's assets are avoidable (or that the movants will seek to avoid them). *See* MTD ¶¶ 3, 9, 149 & 214.

18. The purpose of this chapter 11 case is to sell the Debtor's assets under 11 U.S.C. § 363(b). *See* FDD ¶ 9 ("[I]t has become apparent that the only way to truly maximize value is through chapter 11, where the Debtor's assets can be sold on a free-and-clear basis.").

19. On August 13, 2026, the Debtor filed a bid procedures motion. *See* D.I. 86. The motion indicates there was no stalking horse bidder at that time. *See id.* ¶ 44.

20. The U.S. Trustee has not appointed an official creditors' committee in this case. *See* D.I. 66.

## ARGUMENT

21. The Court should deny the Application because HSF Kramer holds or represents an interest adverse to the Debtor's bankruptcy estate and, by extension, has a disqualifying conflict of interest.

22. Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327.

23. Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005). The twin requirements of disinterestedness and no adverse interest "apply at the time of retention and throughout the case." *In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).

24. The Bankruptcy Code does not define "adverse interest." *See In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). In the context of Section 327(a), the Court may consider an interest adverse to the estate "when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Secs., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). Interests are not adverse "merely because it is possible to conceive a set of circumstances under which they might clash." *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532. "[I]f it is plausible that the representation of another

interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *Id.* at 533.

25. Section 327(c) of the Bankruptcy Code provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). Under Sections 327(a) and (c), the Court: must disqualify an attorney with an actual conflict of interest, may disqualify an attorney with a potential conflict of interest, and may not disqualify an attorney based on the appearance of a conflict alone. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

26. The Bankruptcy Code does not define actual conflict of interest. *See In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002). The term has been given meaning through case-by-case evaluations of particular fact patterns. *See id.* "Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'" *In re Boy Scouts of America*, 35 F.4th 149, 158 (3d Cir. 2022) (quoting *Pillowtex*, 304 F.3d at 251); *see also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'") (quoting cases). Whether a conflict is actual or potential is within the Court's discretion. *See In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742 (Bankr. D. Del. 2004).

27. The Court should generally disapprove retentions involving a potential conflict of interest. *See In re BH & P, Inc.*, 949 F.2d 1300, 1316 (3d Cir. 1991); *see also In re*

*Woodworkers Warehouse, Inc.*, 303 B.R. at 742 ("In most instances a potential conflict should be the basis for disqualification[.]") (citing *Marvel*, 140 F.3d at 476). The Court should permit retention despite a potential conflict of interest only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See In re BH & P, Inc.*, 949 F.2d at 1316 ("We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals.").

28. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). Section 327(a) "is plainly concerned with a professional's divided loyalties and ensuring that professionals employed by the estate have no conflicts of interest with the estate." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (quoting *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993)).

29. Here, HSF Kramer holds or represents an interest adverse to the bankruptcy estate. HSF Kramer advised insider TRAG and RGE in connection with a forbearance agreement that gave those entities liens on substantially all of the Debtor's assets about six months before the Debtor filed for bankruptcy. *See* FDD ¶ 64 & Appl. Ex. B ¶ 31(a). Those purported liens secured more than $80,000,000 in loans to non-debtor affiliates. *See* FDD ¶¶ 42 & 64. TRAG/RGE's purported liens create a competing economic interest that tends to diminish the value of the Debtor's estate or create a potential or actual dispute in which the estate is a rival claimant, because those purported liens (i) serve as a basis for TRAG/RGE to assert adequate protection

liens and restrict the estate's use of purported cash collateral; (ii) would allow TRAG/RGE to recover up to $80,000,000 in value of the sale proceeds of the Debtor's assets before general unsecured creditors can recover anything; (iii) should be objected to by the Debtor if a purpose would be served in doing so (11 U.S.C. §§ 704(a)(5), 1106(a)(1) & 1107(a)); and (iv) should be analyzed for avoidance under Section 548.[2]

30. HSF Kramer is in no position to advise the Debtor about TRAG/RGE's purported liens after HSF Kramer represented TRAG/RGE in connection with the agreement that gave TRAG/RGE liens on substantially all of the Debtor's assets. As part of its representation of TRAG/RGE, HSF Kramer gave confidential advice and obtained confidential information. If the Application is approved, HSF Kramer would be in the untenable position of possessing duties to its former clients related to the confidentiality of that information while owing obligations to the Debtor's bankruptcy estate. Additionally, a successful challenge to TRAG/RGE's prepetition claims and/or liens could potentially give rise to claims by TRAG and RGE against HSF Kramer.

31. HSF Kramer's representation of the Debtor will be materially limited by the prior representation of TRAG/RGE. For example, HSF Kramer would "analyz[e] proofs of claim filed against the Debtor and object[] to such claims as necessary[.]" Appl. ¶ 10(h). It is inconceivable that HSF Kramer would advise the Debtor to object to any of TRAG/RGE's claims or purported liens, after HSF Kramer advised TRAG/RGE in connection with the document that gave TRAG/RGE those liens in the first instance. For the same reasons, HSF Kramer could be

[2] The U.S. Trustee notes that the Debtor's bar date motion seeks to exempt TRAG/RGE from filing proofs of claim for any liens they have against the Debtor's assets (even though the underlying loans were apparently made to non-debtors). *See* D.I. 103 Ex. A ¶ 13(k). The U.S. Trustee has informally asked that this provision be removed, and that TRAG/RGE be required to file proofs of claim so that there is a clear and complete record of what claims they have, if any, against the Debtor.

materially limited when advising the Debtor about any avoidance actions the estate may have against TRAG/RGE.

32. While HSF Kramer's representation of TRAG/RGE in connection with the forbearance agreement is imputed to the entire firm, *see In re Essential Therapeutics, Inc.*, 295 B.R. 203 (Bankr. D. Del. 2003), the fact that six attorneys (including two partners) who advised TRAG/RGE in connection with that document a few months ago would now advise the Debtor about those same liens in the chapter 11 case highlights the disqualifying conflict. *See* Appl. Ex. 1 at 3. Those attorneys cannot unlearn privileged information they obtained while representing TRAG/RGE, and they cannot betray their duties to TRAG/RGE to maintain client confidences.

33. Even if HSF Kramer's conflict of interest were only potential, it should still result in disqualification. Potential conflicts are generally disqualifying. *See In re BH & P, Inc.*, 949 F.3d at 1316. The Court should permit retention despite a potential conflict only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See id.* Here, there is no showing that every competent law firm is already employed in this case. Nor is there a showing that the conflict (to the extent it is still only potential) becoming actual is remote, for the reasons stated herein. The MTD parties have signaled that they may seek to avoid TRAG/RGE's liens. Finally, changing counsel would not materially prejudice the Debtor. The Application is being heard on day 39 of the case. Although HSF Kramer billed over $10,000,000 in prepetition fees (*see* Appl. ¶ 18), the Debtor also recently filed notices of intent to serve 21 subpoenas. *See* D.I. 112-132. Thus, it would appear any investigation or fact-finding the Debtor needs to undertake in the case is still nascent.

34. HSF Kramer asserts that the Debtor "waived any conflicts that may result

from" the firm's prior representation of TRAG and RGE. *See* Appl. Ex. B ¶ 31(a). However, "waivers under § 327(a) are ordinarily not effective." *In re Congoleum Corp.*, 426 F.3d at 692. *See also In re Granite Partners LP*, 219 B.R. at 34 ("Although the client can, under certain circumstances, waive the conflict, DR 5-105(c), the mandatory provisions of section 327(a) do not allow for waiver."); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 235 (Bankr. E.D. Cal. 1988) ("Although the parties can waive the conflict upon appropriate disclosures, the waiver is more difficult to obtain in a chapter 11 case because the debtor in possession stands in a fiduciary capacity that constrains its ability to make such a waiver."); *In re JMK Construction Grp., Ltd.*, 441 B.R. 222, 237 (Bankr. S.D.N.Y. 2010) ("Courts have recognized that conflicts waivers are not effective for purposes of satisfying the 'adverse interest' requirement of section 327(a) of the Bankruptcy Code.") (collecting cases); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 374 (Bankr. S.D.N.Y. 2010) (conflict waiver by creditor "cannot trump the requirements of section 327(a)."); *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996) ("section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct.").

35. Nothing in Section 327(a) suggests that the requirement of no adverse interest can somehow be satisfied through conflict waivers. Rather, the Court "has the authority and the responsibility to only approve employment of professionals who meet the minimum requirements set forth in § 327(a), independent of objections." *In re Interwest Business Equip., Inc.*, 23 F.3d 311, 317 (10th Cir. 1994).

## **CONCLUSION**

36. The U.S. Trustee reserves any and all rights, remedies and obligations to

complement, supplement, augment, alter and/or modify this objection, file an appropriate motion or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Application and grant such other relief as the Court deems appropriate and just.

Dated: August 27, 2026
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman (DE #7702)
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
benjamin.a.hackman@usdoj.gov