**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OMNIS PLEASANTS, LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-11169 (KBO)<br><br>**Re: Docket Nos. 17, 50, 86, 167** |

**OMNIBUS OBJECTION OF THE ANGELA CHEN PARTIES TO THE DEBTOR'S CASH COLLATERAL MOTION AND BIDDING PROCEDURES MOTION**

Angela Chen (f/k/a Angela Chen Sabella), Harmony Trust, Dynamic HC Co (d/b/a Dynamic Holdings Corporation) ("**DHC**"), and Dynamic Finance Corporation ("**DFC**," and, collectively, with Angela Chen, Harmony Trust, and DHC, the "**Angela Chen Parties**"), by and through their undersigned counsel, hereby submit this omnibus objection (this "**Objection**") to the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Docket No. 17) (the "**Cash Collateral Motion**") and the *Debtor's Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* (Docket No. 86) (the "**Bidding Procedures Motion**,"

[1] The last four digits of Omnis Pleasants, LLC's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

and, together with the Cash Collateral Motion, the "**Motions**"), in each case, filed by Omnis Pleasants, LLC (the "**Debtor**" or "**Omnis Pleasants**"). In support of this Objection, the Angela Chen Parties respectfully state as follows:

## Preliminary Statement[2]

1. The Angela Chen Parties oppose the relief requested in both the Cash Collateral Motion and the Bidding Procedures Motion.

2. The allegations and recriminations lodged in this chapter 11 case are deeply troubling and cannot be ignored. They primarily arise from, relate to, or are the subject of the acrimonious prepetition governance dispute (the "**Governance Dispute**") that precipitated the Debtor's chapter 11 filing.[3] Whatever the merits of the Governance Dispute, the Debtor's "current" management, along with purported secured lenders TRAG LLC ("**TRAG**") and RG Energy LLC ("**RGE**" and, together with TRAG, the "**TRAG/RGE**"), are dueling the Debtor's "former" management and its direct and indirect parent entities, the Omnis Parent Parties, over control. All ascertainable persons and entities authorized to manage the Debtor are thus embroiled in the Governance Dispute and the target of various allegations and recriminations. This precarious situation does not inspire confidence in the prospect of achieving a value-maximizing outcome, will likely have a chilling effect, and is sure to cast a shadow over the process unless remedied.

3. Under the circumstances and given the nature and seriousness of the allegations and recriminations made in this chapter 11 case—and expressly without casting aspersions on any specific person or entity—the Angela Chen Parties respectfully submit that this is the rare case

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Objection.

[3] *See Declaration of David Hindman, as Chief Executive Officer of Omnis Pleasants, LLC d/b/a Pleasants Power Station, in Support of Chapter 11 Petition and First Day Motions* (Docket No. 10) (the "**First Day Declaration**" or the "**Hindman Declaration**") at ¶ 15. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

requiring the appointment of a chapter 11 trustee to maximize the value of the Debtor's estate for the benefit of all stakeholders.[4] Only a demonstrably independent third party should be permitted to exercise control over the Debtor, including in connection with any marketing and sale process ("**Sale Process**") conducted in this chapter 11 case.

4. The Cash Collateral Motion and the Bidding Procedures Motion should be denied on several grounds, as and to the extent set forth herein, or, alternatively, narrowly tailored so as to avoid prejudicing a chapter 11 trustee later appointed in this chapter 11 case.

## Relevant Background

### A. The Plant and the Hydrogen Technology

5. The Pleasants Power Station (the "**Plant**") is an approximately 1,278 megawatt coal-fired power generation facility located along the Ohio River in Pleasants County, West Virginia, which has been in operation since 1979.[5] In August 2023, OFT purchased the Plant for $22.5 million, in a transaction whereby Quantum acquired all of the membership interests in the Debtor, whose name was thereafter changed to Omnis Pleasants.[6] At the time of the acquisition, any owner of the Plant benefited from a business and occupancy tax exemption, which was estimated to result in approximately $12.5 million in annual tax savings.[7]

---

[4] The entry of an order directing the appointment of a chapter 11 trustee pursuant to section 1104(a) of title 11 of the United States Code (the "**Bankruptcy Code**") was requested as alternative relief in the *Motion of Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case, or, (II) in the Alternative, Directing the Appointment of a Chapter 11 Trustee, and (III) Vacating the Interim Cash Collateral Order* (Docket No. 93) (the "**Motion to Dismiss or Appoint**"), filed by Omnis Fuel Technologies, LLC d/b/a Omnis Energy ("**OFT**") and Quantum Pleasants, LLC ("**Quantum**," and, together with OFT, the "**Omnis Parent Parties**"). For the avoidance of doubt, the Angela Chen Parties do not support the dismissal of the chapter 11 case at this time.

[5] *See* First Day Decl. at ¶¶ 7, 20.

[6] *See, e.g.,* First Day Decl. at ¶ 21.

[7] *See* H.B. 207, 84th W. Va. Legis., 1st Ex. Sess. (W. Va. 2019); *see also* Steven A. Adams, *Reorganization plan approved for owner of Pleasants Power Station*, PARKERSBURG NEWS AND SENTINEL (Oct. 17, 2019), https://www.newsandsentinel.com/news/business/2019/10/reorganization-plan-approved-for-owner-of-pleasants-power-station/.

6. In the First Day Declaration, Mr. Hindman insinuates that shortly after the acquisition closed the Debtor's former management team ("**Former Management**") inappropriately began focusing time and capital on developing Quantum's proprietary pyrolysis and reformer technology (the "**Hydrogen Technology**") for use in transitioning the Plant from coal-based generation to hydrogen-based power (the "**Hydrogen Conversion Project**").[8] However, contrary to Mr. Hindman's insinuations, undertaking the Hydrogen Conversion Project was always the plan, as expressly identified in Quantum's initial application with the Federal Energy Regulatory Commission ("**FERC**").[9]

7. Ms. Chen firmly believes in the Hydrogen Technology and remains committed to its continued development.

## B. <u>The Payoff Tender and the Governance Dispute</u>

8. On February 6, 2026, the TRAG/RGE, Omnis Global Technologies, LLC ("**OGT**"), OFT, Quantum, and the Debtor entered into that certain *Amended and Restated Forbearance Agreement* (the "**Second Forbearance Agreement**"). Aside from purportedly granting TRAG/RGE a security interest in certain of the Debtor's assets, the Second Forbearance Agreement, among other things, replaced Former Management, installed Mr. Hindman as the Debtor's Chief Executive Officer, and resulted in the appointment of Mr. Gilbert Nathan as the "Independent Manager" of the Debtor.[10] The Second Forbearance Agreement gave the Independent Manager with certain authority over "related party transactions" involving the

---

8 *See* First Day Decl. at ¶ 50.

9 Quantum Pleasants, LLC, *Letter re: Quantum Pleasants, LLC, ETEM Remediation Two LLC, Pleasants LLC and Energy Harbor LLC, Joint Application for Approval under Section 203 of the Federal Power Act and Request for Expedited Action*, Docket No. EC23-95-000, FERC (June 8, 2023) ("Upon closing of the transaction, Buyer intends to bring the Pleasants Power Station out of its current mothballed state and commence work to build a hydrogen production facility and to convert the Pleasants Power Station's coal-fired boilers to hydrogen.").

10 *See* Second Forbearance Agreement at § 7(c).

Debtor.[11] With respect to amounts owed to TRAG/RGE, the Second Forbearance Agreement, among other things, gave OFT, OGT, and Quantum the right to tender "Payment in Full" of the amounts owed to TRAG/RGE, prohibited interference therewith, and provided for the termination of the Second Forbearance Agreement upon Payment in Full.[12]

9. In the following months, TRAG/RGE refused to provide a payoff letter to the Omnis Parent Parties, which led the Omnis Parent Parties to file a lawsuit and seek related relief against TRAG/RGE and Mr. Nathan in the Circuit Court of Pleasants County, West Virginia (the "**WV State Court**"), captioned *Omnis Global Technologies, LLC v. TRAG LLC*, CC-37-2026-C-14 (the "**WV State Court Litigation**"), on July 8, 2026.[13] The Omnis Parent Parties' motion for a temporary restraining order ("**TRO**") was denied the following day without hearing.[14]

10. On July 16, 2026, DFC delivered a $75.64 million check to TRAG/RGE's counsel, which TRAG/RGE did not accept.[15] According to the Mr. Hindman, TRAG/RGE did not accept the check because it believed the amounts were insufficient to payoff its loan and the tender of the check was a "suspected related-party transaction" due to Harmony Trust's "indirect equity interest" in the Debtor.[16] Interestingly, TRAG, like Harmony Trust, also holds an "indirect equity interest."[17] Mr. Hindman states that Mr. Nathan determined that because the proposed payor

[11] *See id.* at § 7(b).

[12] *See id.* at §§ 2(a), 8(e), 11(b), 13, 15.

[13] *See* First Day Decl. at ¶ 75.

[14] *Id.*

[15] *Id.* at ¶ 76.

[16] *Id.*

[17] *Id.* at Exh. A.

"appear[ed] to be affiliated with the Debtor's parent and its affiliates," acceptance of DFC's check required his approval.[18]

11. After refusing to accept the payoff tender, further litigation ensued in the WV State Court: TRAG/RGE filed an answer and counterclaim to the Omnis Parent Parties' complaint and a motion for a TRO, which was denied on July 24, 2026.[19]

12. In his Declaration, Mr. Hindman states that the catalyst for the Debtor's chapter 11 filing was the "serious governance uncertainty" created by the Omnis Parent Parties, which apparently "made the need to file for chapter 11 immediate."[20] Among the actions Mr. Hindman identifies as creating the immediate need for the commencement of the chapter 11 case are the Omnis Parent Parties' commencement of the WV State Court Litigation "seeking to undo previous governance protections" and "an attempted improper payoff transaction that, if successful, would have paved the way for the removal of independent management."[21] Based on the First Day Declaration, it is evident that both Messrs. Hindman and Nathan were first and foremost concerned with losing their management positions and control of the Plant, whereas TRAG/RGE apparently did not want to receive Payment in Full.

13. Mr. Nathan's interpretation and use of the term "related party transaction" to attempt to prevent Payment in Full and preserve his position as independent manager is astonishing. The Second Forbearance Agreement makes plain that "related party transaction" was not meant to be used in both as a shield and sword to prevent Payment in Full. Under Mr. Nathan's strained reading of the turn, it would be impossible for the borrower or a minority equity holder to

---

[18] *Id.* at ¶ 76.

[19] *Id.* at ¶ 79.

[20] *Id.* at ¶¶ 15–16.

[21] *Id.* at ¶ 16.

tender Payment in Full without his consent. The Second Forbearance Agreement did not give Mr. Nathan a super veto over any payoff he disapproved of, but he abused the term "related party transaction" to achieve that end.

14. Accordingly, it is apparent that control—not maximizing value—is at the heart of this chapter 11 case.

## **Objection**

### A. **The Cash Collateral Motion Seeks Inappropriate Relief Under the Circumstances**

15. In support of the relief requested in the Cash Collateral Motion, the Debtors cite *In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (3d Cir. 1993) for the proposition that the "essential purpose of adequate protection is to protect against diminution in value of a secured creditor's collateral."[22] The Angela Chen Parties do not disagree with this traditional notion of adequate protection. However, there are at least two distinguishing factors here: First, TRAG/RGE refused to cooperate with respect to the repayment of their debt of the course of months. Second, the Debtor's chapter 11 case appears to have been filed for the dual purpose of stopping the repayment of TRAG/RGE's debt and to preserve Messrs. Nathan and Hindman's control positions. Accordingly, providing TRAG/RGE with any form of adequate protection in this chapter 11 case would flip the traditional notion of adequate protection on its head.

16. Mr. Hindman touts the successful operations at the Plant in the First Day Declaration (though tacitly acknowledges that the Plant's current forward capacity revenue was locked in years before he and Mr. Nathan ever became involved).[23] In addition, at the First Day Hearing, counsel for the Debtor shared his view that a sale will "generate proceeds for equity

---

[22] Cash Collateral Mot. at ¶ 22.

[23] *See, e.g.*, First Day Decl. at ¶¶ 24–25.

holders" and that the estate will be "solvent."[24] Yet notwithstanding the foregoing, the Debtor proposes to provide TRAG/RGE with a rich adequate protection package inclusive of postpetition interest payments, replacement liens in the proceeds of avoidance actions, and the payment of professional fees, which is defined so broadly that it could encompass TRAG/RGE's fees for opposing the Motion to Dismiss or Appoint. Viewed in its totality, the adequate protection package contemplated here is inappropriate and should be denied.

17. The $11 million professional fee budget line item for the first 13-week period is alarming in a single-debtor, single-asset chapter 11 case like this and must be scrutinized by the Court. It is unclear whether this amount includes the payment of TRAG/RGE's fees for opposing the Motion to Dismiss or Appoint, but those fees should not be included in any budget. And, as discussed below, the proposed milestones are inappropriate and should be rejected outright. Fortunately, this is not a "melting ice cube" scenario.

18. Finally, given the glaring potential perfection issues regarding TRAG/RGE's purported liens, those entities may not even be secured. Harmony Trust should be granted automatic standing if the Debtor intends to waive all chapter 5 claims. The Court should reject or significantly reduce the inappropriate value transfer contemplated by the Cash Collateral Motion.

**B. <u>The Bidding Procedures Motion Establishes a Flawed Sale Process</u>**

19. The Angela Chen Parties support the concept of conducting a fair, transparent, and comprehensive Sale Process on a reasonable timeline in hopes of identifying a value maximizing sale transaction for the Plant. However, in light of the Governance Dispute and swirling allegations and recriminations, only a chapter 11 trustee can be trusted to conduct a fair and transparent value-maximizing Sale Process.

---

[24] First Day Hr'g Tr. 19:7–25.

20. Through the Bidding Procedures Motion, the Debtor seeks approval of a flawed and needlessly truncated Sale Process. No evidentiary basis has been identified. The Court should deny the relief requested in the Bidding Procedures Motion.

21. First, consistent with the proposed milestones contemplated by the Cash Collateral Motion, the Debtor proposes to complete the Sale Process and hold an auction on November 12, 2026. That date is only 70 days after the hearing on the Bidding Procedures Motion. Given that the Debtor is cash flow positive, there is simply no basis to race through the Sale Process. This is not a "melting ice cube" scenario.

22. Second, any sale of the Plant is highly complex and will require significant diligence, including with respect to decommissioning obligations and other legacy liabilities, before any meaningful offers can be made. While the Debtor states that it has established a data room, no details are available. Is it substantially completed? If so, when did prospective bidders gain access to a substantially complete set of materials? If not, when will they? The extent and quality of the diligence materials made available to prospective bidders greatly impacts the overall timing of the Sale Process. The data room must be substantially completed with a full suite of diligence materials for the Sale Process to genuinely kick-off in earnest. Many questions remain unanswered.

23. Third, the Angela Chen Parties and the Omnis Parent Parties must be included as "Consultation Parties". The fact that TRAG/RGE are the only "Consultation Parties" and are granted certain consent rights speaks volumes about the one-side approach to this chapter 11 case advanced by Messrs. Nathan and Hindman. Oversight is essential to ensuring the credibility of the Sale Process.

24. Fourth, the Debtor must support the relief requested in the Bidding Procedures with evidence. As of the date hereof, no evidentiary basis has been identified.

25. For these reasons, the Court should deny the Bidding Procedures Motion outright or require significant modifications consistent with the foregoing.

**Reservation of Rights**

26. The Angela Chen Parties expressly reserve all rights arising from or relating to both of the Motions, including the right to supplement this Objection in advance of the hearing on the Motions and to raise or respond to any arguments whatsoever. Nothing herein waives or shall be construed to waive any such rights.

Dated: August 27, 2026
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Ira D. Kharasch (*pro hac vice* forthcoming)
Theodore S. Heckel, Sr. (*pro hac vice* forthcoming)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: ljones@pszjlaw.com
ikharasch@pszjlaw.com
theckel@pszjlaw.com

*Counsel to Angela Chen (f/k/a Angela Chen Sabella), Harmony Trust, Dynamic HC Co (d/b/a Dynamic Holdings Corporation), and Dynamic Finance Corporation*