**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Omnis Pleasants, LLC,[1] | Case No. 26-11169 (KBO) |
| Debtor. | **Re: Docket No. 83** |

**OBJECTION OF OMNIS FUEL TECHNOLOGIES, LLC AND QUANTUM PLEASANTS, LLC TO RETENTION OF HERBERT SMITH FREEHILLS KRAMER (US) LLP**

Omnis Fuel Technologies, LLC (**"OFT"**) and Quantum Pleasants, LLC ("**Quantum**") (collectively, the "**Objecting Parties**") respectfully submit this objection (the "**Objection**") to the *Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Herbert Smith Freehills Kramer (US) LLP as Attorneys for the Debtor and Debtor in Possession Effective as of the Petition Date* [Docket No. 83] (the "**Application**") filed by Omnis Pleasants, LLC (the "**Debtor**") seeking to retain Herbert Smith Freehills Kramer (US) LLP ("**HSF Kramer**") under Section 327(a) of the Bankruptcy Code. In support of the Objection, the Objecting Parties respectfully state as follows:

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

## PRELIMINARY STATEMENT[2]

1. The central issue in this Chapter 11 Case is the validity, enforceability, and priority of an alleged lien over the Debtor's crown jewel, a power plant located in West Virginia. In February, HSF Kramer represented the Alleged Lenders in connection with their entry into the forbearance agreement that purports to have created that lien. Four months later (and approximately 30 days before the Petition Date), HSF Kramer represented the Debtor when executing a deed of trust to secure that alleged lien. Since filing this case, the Debtor has sought authority to use "cash collateral" and grant the Alleged Lenders a colossal collateral package and enter into stipulations regarding the validity, enforceability, and non-avoidability of their liens.

2. This situation creates the quintessential "actual conflict" that prohibits retention under Section 327(a) of the Bankruptcy Code. It is undoubtedly in the Debtor's best interest to challenge, avoid, and deny the Alleged Lenders' lien for the benefit of *all* stakeholders, but doing so would put HSF Kramer in an untenable situation given their previous representation of the lenders on this same issue.

3. Because HSF Kramer has already demonstrated its conflicted loyalties and that it is incapable of discharging its duty for the benefit of the estate and its stakeholders, the Court should deny the Application.

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meaning ascribed to such terms elsewhere in this Objection.

## RELEVANT BACKGROUND[3]

### A. Events Leading to this Chapter 11 Case

#### 1. The Objecting Parties

4. Quantum is the direct owner of 100% of the Debtor's equity. It is also a creditor of the Debtor pursuant to that certain *Promissory Note* dated as of October 31, 2023 by and between OP, as borrower, and Quantum, as lender.

5. OFT holds a 43.77% interest in Quantum. OFT is also a creditor of the Debtor pursuant to that certain *Promissory Note* dated as of October 31, 2023 by and between OP, as borrower, and OFT, as lender.

#### 2. The Alleged Lenders

6. TRAG LLC ("**TRAG**") and RG Energy LLC ("**RGE**" and together with TRAG, the "**Alleged Lenders**")[4] are owned and controlled by motivational speaker Tony Robbins ("**Robbins**") and Ajay Gupta ("**Gupta**"). TRAG also owns (i) 46.62% of the Debtor's direct parent and sole member, Quantum, and (ii) 9.0% of QP's direct parent, OFT.[5]

7. Between May 2023 and January 2025, TRAG and RGE purportedly made a series of secured loans to non-debtors Quantum, OFT, and OFT's majority stockholder, Omnis Global Technologies, LLC ("**OGT**"). Notably, the Debtor was not a party to, or indebted under, any of these agreements.

---

[3] The Objecting Parties have filed the *Objection of Omnis Fuel Technologies, LLC and Quantum Pleasants, LLC to Approval of Cash Collateral Motion* (the "**Cash Collateral Objection**"). For the sake of brevity, the Objecting Parties have limited this background section to avoid unnecessary duplication with the background information (including attached exhibits) provided in the Cash Collateral Objection, which is incorporated by reference in this Objection.

[4] The Objecting Parties refer to TRAG and RGE as the "Alleged Lenders" because, as set forth in the Cash Collateral Objection, they never loaned any money to the Debtor that was outstanding as of the Petition Date.

[5] The Objecting Parties reserve their right to obtain any and all discovery as to whether TRAG and/or RGE may be statutory or non-statutory insiders.

### 3. The Forbearance Agreement

8. On February 6, 2026, TRAG and RGE, represented by HSF Kramer (as discussed below), along with OGT, OFT, Quantum, and the Debtor entered into that certain *Amended and Restated Forbearance Agreement* (the "**2026 Forbearance Agreement**") to address certain alleged defaults relating to the Alleged Lenders' loans to non-Debtors. The 2026 Forbearance Agreement did not create any new indebtedness on the part of any party, but merely reaffirmed the existing payment obligations of OGT, OFT, and Quantum, respectively, to TRAG and RGE. The 2026 Forbearance Agreement also purportedly granted to the Alleged Lenders, *for the first time*, a first priority security interest in all of the Debtor's property and assets.

## B. The Application

9. On July 26, 2026 (the "**Petition Date**"), the Debtor commenced this Chapter 11 Case. No Committee has been appointed in this Chapter 11 Case. *See* Docket No. 66.

10. On August 13, 2026, the Debtor filed the Application. The Application attached as exhibits: (i) an Engagement Letter between HSF Kramer and the Debtor dated as of February 20, 2026 (the "**Engagement Letter**"); (ii) the supporting declaration of attorney Alexander Woolverton (the "**Attorney Declaration**"); and (iii) the supporting declaration of David Hindman, the Debtor's chief executive officer (the "**Hindman Declaration**").

11. The Engagement Letter recited that the Debtor was retaining HSF Kramer "with respect to general corporate and litigation matters (the "**Matter**") and such other matters as the Client may from time-to-time request and the Firm may agree to handle." Engagement Letter, p. 1. At the time the Engagement Letter was executed, HSF Kramer's representation was limited to general corporate and litigation matters. *Id.* The Application did not attach any amendments or subsequent engagement letters expanding this initial representation. The Engagement Letter did not contemplate that HSF Kramer would represent the Debtor in a chapter 11 proceeding.

12. The Engagement Letter also contained a section titled "Consent to Existing Firm Representation," which states as follows:

> As we have previously discussed, we previously represented TRAG, LLC and RG Energy, LLC (the "Lenders") in their capacity as lenders to you and certain of your affiliates, which representation included, among other things, advising the Lenders with respect to that certain Amended and Restated Forbearance Agreement, dated as of February 6, 2026 between, among others, you and the Lenders. Such representation shall be deemed a Permitted Representation.

Engagement Letter, p. 6.

13. The Attorney Declaration also contained the following disclosure regarding HSF Kramer's previous representation of the Alleged Lenders:

> TRAG LLC, ("TRAG") and RG Energy are each identified on the Retention Checklist under the categories of "Debtor and Non Debtor Affiliates" and "Secured Lenders, UCC Lien Parties, and Administrative Agents". For six weeks in early 2026, HSF Kramer represented TRAG and RG Energy in connection with their investments in certain affiliates of the Debtor and in connection with TRAG and RG Energy's entry into that certain amended and restated forbearance agreement, dated February 6, 2026. In connection therewith, HSF Kramer incurred approximately $243,000 in fees but has since written off all fees and expenses associated with such representation (and HSF Kramer waives all rights to seek this amount). This work concluded prior to the Debtor retaining HSF Kramer. In connection with the Debtor's retention of HSF Kramer, TRAG/RG Energy consented to the termination of HSF Kramer's representation of TRAG/RG Energy, and HSF Kramer's representation of the Debtor, including on matters where the Debtor will be adverse to TRAG/RG Energy, and TRAG/RG Energy waived any conflicts that may arise as a result of such representations. Likewise, the Debtor provided its informed consent that, prior to HSF Kramer being retained by the Debtor, it had represented TRAG/RG Energy, and it waived any conflicts that may result from such prior representation. HSF Kramer believes that its former representation of TRAG and RG Energy will not affect its representation of the Debtor in this Chapter 11 Case.

Attorney Decl., p. 13.

## OBJECTION

**A. <u>HSF Kramer cannot be retained under Section 327(a) of the Bankruptcy Code.</u>**

14. Section 327(a) of the Bankruptcy Code allows the Debtor, with the Court's approval, to employ "one or more attorneys…that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtor] in carrying out the [Debtor's] duties under [the Bankruptcy Code]."

15. A "disinterested person" is defined as a person that—

> (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, ***or for any other reason***.

11 U.S.C. § 101(14) (emphasis added).

16. Additionally, Section 327(c) of the Bankruptcy Code provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c).

17. The Third Circuit Court of Appeals has explained that—

> (1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.

*In re Pillowtex*, 304 F.3d 246, 251 (3d Cir. 2002) (quoting *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476 (3d Cir.1998)).

18. "The term 'actual conflict of interest' is not defined in the Code and has been given meaning largely through a case-by-case evaluation of particular situations arising in the bankruptcy context." *In re BH &P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991). As a result, "Courts have been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists 'in light of the particular facts of each case.'" *Id.* (citations omitted).

19. The seminal case in this District regarding "actual conflicts" for purposes of Section 327(a) is *In re Marvel Entertainment Group, Inc.*, where the Third Circuit held that a trustee could retain its preferred counsel even though the firm had previously represented a significant secured creditor on matters unrelated to the bankruptcy. *See Marvel*, 140 F.3d at 477 ("The Firm has never represented Chase on a matter related to this bankruptcy and severed *all* attorney-client relations with Chase in anticipation of its selection as trustee's counsel." (emphasis in original)).

20. But, while a previous creditor representation unrelated to the bankruptcy may be permissible under *Marvel*, prior creditor engagements that touch upon the creditor's relationship with the debtor are actual conflicts that prohibit retention under Section 327(a). Judge Walrath's thorough opinion in *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999) is particularly instructive on this point. There, the Court ruled that the debtor could not retain an investment banker that had been engaged by the debtor's largest shareholder and creditor to value the company for a period of only <u>five days</u> a full <u>two years</u> before the bankruptcy case was commenced. *Zenith*, 241 B.R. at 101. Judge Walrath explicitly distinguished *Zenith* from *Marvel* on the basis that in *Zenith*, unlike in *Marvel*, the firm represented the shareholder-creditor in connection with its investment in the bankrupt entity. The Court concluded that "[the investment banker], having represented the majority shareholder and single largest creditor of Zenith in

connection with its claims against Zenith, has an actual conflict of interest and may not be retained by Zenith in this bankruptcy case." *Id*. at 102.

21. HSF Kramer's previous representation of the Alleged Lenders in connection with their entry into the 2026 Forbearance Agreement—the key to this entire Chapter 11 Case—creates an actual conflict of interest that disqualifies it from representing the Debtor in this case. This is not a case where Debtor's counsel represented a secured creditor in matters unrelated, or even tangentially related, to the Chapter 11 Case. HSF Kramer, acting on behalf of TRAG and RGE, was directly adverse to the Debtor when it granted the Alleged Lenders their interest in the Power Plant Collateral—the Debtor's crown jewel assets—in February. Then, four months later, HSF Kramer, this time acting on behalf of the Debtor, facilitated the Debtor's entry into a deed of trust to perfect that lien.

22. HSF Kramer attempts to downplay the significance of its representation of the Alleged Lenders, couching it as only "six weeks in early 2026." Attorney Decl., ¶31(a). But Judge Walrath found even a five-day engagement to be disqualifying. *See Zenith*, 241 B.R. at 101 ("It is irrelevant that the retention…only lasted for five days.").

23. Moreover, the previous creditor-shareholder engagement at issue in *Zenith* was a full two years before the bankruptcy case—and even that "cooling off" period was not sufficient to pass the disinterestedness requirement in Section 327(a). HSF Kramer has not detailed the exact dates of its retention by the Alleged Lenders, but "early 2026" is, at best, less than six months before the Petition Date. Worse, it appears that there was very little, if any, time between the conclusion of HSF Kramer's representation of the Alleged Lenders and the commencement of its prepetition representation of the Debtor. That is, it appears that HSF Kramer represented the

Alleged Lenders until at least February 6 when the Forbearance Agreement was executed (if not later) and that the Debtor retained HSF Kramer on February 20—exactly two weeks later.

24. HSF Kramer's work for the Debtor since February 20 has been incurably tainted by its previous representation of the Alleged Lenders in this transaction. Despite having counseled the Alleged Lenders in attempting to obtain a lien on the Debtor's crown jewel power plant assets, the Alleged Lenders apparently took no immediate steps to perfect that lien, which is the central dispute in this Chapter 11 Case. Then, in June—mere weeks before this case was filed—the Debtor (now represented by HSF Kramer) entered into the Deed of Trust purporting to perfect that lien. The Debtor appears to have gained very little by cooperating in this process since the forbearance period had already expired, no new consideration was received, and there is no evidence that the Alleged Lenders were attempting to enforce their rights under the original loan documents.

25. More recently, at the outset of this Chapter 11 Case, the Debtor filed the Cash Collateral Motion, pursuant to which the Debtor entered into a series of Debtor Stipulations as to the validity, enforceability, perfection, and non-avoidability of the lien allegedly created through the 2026 Forbearance Agreement and the Deed of Trust. This has already placed HSF Kramer in an untenable situation that will only get worse as the case progresses through a proposed bidding and sale process. If the lien is avoidable (which the Objecting Parties strongly believe it is and intend to pursue if the Debtor unjustifiably refuses to do so), then the Alleged Lenders are substantially unsecured—despite having retained HSF Kramer to assist them in taking a lien on the Debtor's most valuable assets. But if the lien stands, it does so to the detriment of all of the Debtor's other stakeholders. No law firm could walk this tightrope while honoring its duties to a bankrupt estate and its stakeholders.

**B. <u>HSF Kramer's attempts to resolve its conflict are insufficient.</u>**

26. HSF Kramer asserts in the Attorney Declaration that "the Debtor provided its informed consent that, prior to HSF Kramer being retained by the Debtor, it had represented TRAG/RG Energy, and it waived any conflicts that may result from such prior representation[.]" Attorney Decl., p. 13. While the Debtor may have waived conflicts arising from the general corporate and litigation representation contemplated under the Engagement Letter, it is difficult to see how the Debtor could have knowingly waived the conflicts arising from HSF Kramer's representation of the Debtor in bankruptcy, which was not contemplated at the time the Engagement Letter was executed.

27. Moreover, the Debtor has not disclosed the contours of the Alleged Lenders' conflict waiver.[6] *See, e.g.*, *In re Project Orange Assocs.,* LLC, 431 B.R. 363, 375 (Bankr. S.D.N.Y. 2010) (denying approval of retention application where conflict waiver did not allow firm to threaten or commence suit against major stakeholder). The Attorney Declaration discloses only that "[i]n connection with the Debtor's retention of HSF Kramer, TRAG/RG Energy consented to the termination of HSF Kramer's representation of TRAG/RG Energy, and HSF Kramer's representation of the Debtor, including on matters where the Debtor will be adverse to TRAG/RG Energy, and TRAG/RG Energy waived any conflicts that may arise as a result of such representations." Attorney Decl., ¶ 31(a). To the extent that HSF Kramer cannot adequately discharge its obligations to the Debtor without violating the conditions of that waiver (if any), the Court should deny the Application. *See In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 865–66 (Bankr. N.D. Ill. 1992) ("Debtor's counsel must at least vigorously negotiate ... in order to fulfill its duties to Debtor, even if litigation is not warranted.").

---

[6] The Objecting Parties have requested this through formal discovery related to the Dismissal Motion.

28. And while the retention of conflicts counsel does often solve what would otherwise be disqualifying facts under Section 327(a), this remedy is best suited where primary counsel has a discrete, stand-alone issue—not where the conflict is the focal point of the proceeding. *See Project Orange Assocs.*, 431 B.R. at 376 ("Other courts have determined that where proposed counsel is conflicted from representing a debtor with regards to matters central to the bankruptcy, even the presence of conflicts counsel does not make the retention appropriate…"); *In re Amdura Corp.*, 121 B.R. 862, 867 (Bankr. D. Colo. 1990) (retention not appropriate where resolution of claims that were subject of conflict may be "lynch-pin of the case.").

29. Finally, to the extent that HSF Kramer asserts that it has erected an ethical wall to cure its conflict (which it does not claim in the Application), the Court should reject such an argument. Delaware bankruptcy courts have applied the following factors in evaluating the propriety of ethical walls: "(1) The substantiality of the relationship between the attorney and the former client, (2) The time lapse between the matters in dispute, (3) The size of the firm and the number of disqualified attorneys, (4) The nature of the disqualified attorney's involvement, and (5) The timing of the wall." *In re Maxus Energy Corp.*, 626 B.R. 249, 259 (Bankr. D. Del. 2021) (citing *Enzo Life Sciences, Inc. v. Adipogen Corp.*, 2013 WL 6138791, at *3 (D. Del. Nov. 20, 2013)). Because neither the Debtor nor HSF Kramer have supplied any facts to support a conclusion that an ethical wall (to the extent one was instituted at all) was sufficient under the circumstances, the Court should reject such claims to the extent they are made.

**RESERVATION OF RIGHTS**

30. This Objection is submitted without prejudice to, and with a full reservation of, the Objecting Parties' claims, defenses, and remedies, including the right to amend, modify, or supplement this Objection, to seek further discovery, to raise additional objections and to introduce evidence at any hearing related to this Objection and without in any way limiting any other rights of the Objecting Parties, or further object to the Application, on any grounds, as may be appropriate.

**WHEREFORE**, the Court should (i) deny the Application or, alternatively, defer a ruling pending additional discovery, and (ii) grant such other and further relief as is just and warranted.

Dated: August 28, 2026
Wilmington, Delaware

**LOWENSTEIN SANDLER LLP**

Christopher A. Ward (No. 3877)
Shanti M. Katona (No. 5352)
1000 N West Street, Suite 1200
Wilmington, DE 19801
Telephone: (973) 597-2500
cward@lowenstein.com
skatona@lowenstein.com

*Counsel to Omnis Fuel Technologies, LLC and Quantum Pleasants LLC*