**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Omnis Pleasants, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11169 (KBO)<br><br>**Related D.I.: 86, 169, 182, 171, 168, 173**<br>**Hearing Date: September 3, 2026, at 11:30 a.m. (ET)** |

**REPLY OF THE PREPETITION SECURED PARTIES TO OBJECTIONS TO THE DEBTOR'S BIDDING PROCEDURES MOTION AND RESERVATION OF RIGHTS WITH RESPECT TO CASH COLLATERAL**

TRAG LLC and RG Energy LLC (together, the "Prepetition Secured Parties"), by and through their undersigned counsel, respectfully submit this reply (this "Reply") to the objections to the *Debtor's Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [D.I. 86] (the "Bidding Procedures Motion")[1] filed by (i) Omnis Fuel Technologies, LLC ("OFT") and Quantum Pleasants, LLC ("Quantum" and, together with OFT, the "Quantum Parties"), [D.I. 169] (the "OFT/Quantum Objection"), (ii) Angela Chen Parties, [D.I. 182], (iii) the West Virginia Economic Development Authority ("WVEDA"), [D.I. 171] (the "WVEDA Objection"), (iv) Industrial Accessories Company ("IAC"), [D.I. 168], and (v) Pleasants, LLC, [D.I. 173] (collectively, the "Objections"). In support of this Reply, the Prepetition Secured Parties respectfully state as follows:

[1] Capitalized terms used but not defined in this Reply have the meaning given to them in the Bidding Procedures Motion.

## PRELIMINARY STATEMENT

1. Instead of filing a legitimate objection to the Bidding Procedures Motion, the Quantum Parties devote their entire objection to attacking the Prepetition Secured Parties through baseless aspersions. Riddled with mischaracterizations, the Quantum Parties' objection seeks to convert a routine hearing on the procedural nature of bidding for assets into a premature lien challenge and a dress rehearsal for their dismissal motion. Those issues are not before the Court, only the Bidding Procedures Motion is. That motion only seeks to establish a procedural framework that would allow the Debtor to run a value-maximizing sale process for the benefit of all of its stakeholders.

2. Nothing in that framework is extraordinary: a secured party consulting on the auction of its own collateral, a recital of the credit bid right Congress conferred by statute, and sale milestones tied to cash collateral use. These are the terms secured creditors routinely receive, and they are appropriate here: the Prepetition Secured Parties' collateral is funding the Debtor's operations, this case, and the very sale process the Quantum Parties ask the Court to conduct without them. Still, the Quantum Parties object to customarily approved terms and ask the Court to see a conspiracy in them.

3. As for the attacks, the fundamental premise — that the Prepetition Secured Parties have no secured claim — is not merely wrong, it is contradicted by the Quantum Parties' own agreement to documents under which the Debtor granted those security interests. Whatever the merit of the Quantum Parties' claim (which is none), a lien challenge must be brought in an adversary proceeding after obtaining requisite standing, not at a bidding procedures hearing.

4. The Quantum Parties' asserted "control" narrative cannot survive a reading of the documents either. They say the Bidding Procedures confer "veto rights over every material aspect

of the sale process." OFT/Quantum Objection ¶ 4. In fact, the Prepetition Secured Parties are consulted on, not asked to approve, the designation of Acceptable Bidders, Qualified Bidders, the Stalking Horse Bidder, and the Successful Bidder; their consent rights reach a defined and unremarkable set of items including the Form APA, the Stalking Horse Agreement, the Sale Order, scheduling, and nearly all of them qualified by a standard of reasonableness. Every material decision remains subject to the Debtor's business judgment and to a broad fiduciary out. And if the Prepetition Secured Parties bid, they lose their consultation role as to the affected assets altogether. These guardrails evidence the exact opposite of the "control" and "undue influence" narrative the Quantum Parties perpetuate against the Prepetition Secured Parties.

5. The Quantum Parties agreed to far more than this seven months ago in the A&R Forbearance Agreement (as defined below) where they gave the Prepetition Secured Parties prior written approval over any sale and five Business Days to top any offer, including one that would have paid the Prepetition Secured Parties in full. The Bidding Procedures give them less.

6. So too with the timeline. The Quantum Parties call the 77-day timeline to *approve* a sale "wholly unreasonable and deficient," but in the A&R Forbearance Agreement the Quantum Parties signed in February, they contemplated that 60 days was sufficient to *close* a sale, extendable by thirty days if the only remaining closing condition was regulatory approval.

7. Their remaining rhetoric collapses as well. The Quantum Parties describe this case as "a mechanism for TRAG and RGE to seize full control of the Debtor's assets and manufacture benefits only for themselves." If control were the objective, the Prepetition Secured Parties did not need this Court, this case, or an auction. They noticed a private foreclosure sale of the pledged equity through which Quantum owns the Debtor — **twice** — and each time they stood down as part of a forbearance. The Quantum Parties took the benefit of that forbearance and kept their

equity. Now they are asking this Court to believe that the parties who had agreed to forbear from foreclosing are the ones attempting a takeover.

8. Set aside all the speculation, accusations, unripe and misplaced complaints, none of which should be countenanced by this Court, and the economics tell a simple story. The Prepetition Secured Parties' capital funded the acquisition of the Power Plant and kept it running during times of crisis. When the Power Plant endured the lowest power prices in decades, with no recurring capacity revenue and mounting capital needs, the Prepetition Secured Parties provided emergency capital. When a winter storm left the Power Plant unable to buy the coal, lime, and other consumables it needed to keep generating power for West Virginia, the Prepetition Secured Parties provided the funding. And when years of neglect under prior management exposed the Power Plant to regulatory fines, the Prepetition Secured Parties, jointly with the Quantum Parties, installed independent management to fix it. The Prepetition Secured Parties' capital bought the asset. Their money kept it running. Their forbearance was the reason the Debtor, and by extension Quantum, still owns it.

9. For all of the reasons set forth in this Reply, the Prepetition Secured Parties respectfully request that the Court overrule the Objections.

## REPLY

### I. The Bidding Procedures give the Prepetition Secured Parties customary and appropriate consultation and consent rights.

10. Notwithstanding the Objections' claims to the contrary, the consent and consultation rights similar to those granted to the Prepetition Secured Parties here are routinely afforded to a secured party. *See, e.g., In re Out The Gate, Inc.*, Case No. 25-12023 (KBO) [D.I. 79] (Bankr. D. Del. Dec. 10, 2025) (modifications to the bidding procedures and auction date must be acceptable to secured party; consent required to adjourn sale hearing); *In re Pinstripes Holdings,*

*Inc.*, Case No. 25-11677 (KBO) [D.I. 84] (Bankr. D. Del. Sept. 19, 2025) (adjournment or cancellation of auction, modification of bidding procedures must be acceptable to secured party); *In re Accelerate Diagnostics, Inc.*, Case No. 25-10837 (KBO) [D.I. 143] (Bankr. D. Del. June 5, 2025) (modifications to bidding procedures must be in form and substance acceptable to secured party); *In re First Mode Holdings, Inc.*, Case No. 24-12794 (KBO) [D.I. 166] (Bankr. D. Del. Jan. 17, 2025) (secured party consent required for determination of highest or otherwise best bid at auction and designation of backup bidder); *In re OYA Renewables Development LLC*, Case No. 24-12574 (KBO) [D.I. 152] (Bankr. D. Del. Dec. 10, 2024) (secured party consent required to modify minimum bid amount).

11. The Quantum Parties nevertheless contend that the Bidding Procedures give the Prepetition Secured Parties "veto rights over every material aspect of the sale process." OFT/Quantum Obj. ¶¶ 4, 14–15. Consultation rights are not veto rights. And those limited events that require the Prepetition Secured Parties' consent condition it on not being unreasonably withheld, conditioned, or delayed.

12. In fact, the Bidding Procedures significantly curtail the sale approval rights the Quantum Parties agreed to give the Prepetition Secured Parties in February. Under the Amended and Restated Forbearance Agreement dated February 6, 2026 (the "A&R Forbearance Agreement," a copy of which is attached as **Exhibit 1**), the Prepetition Secured Parties had approval rights at every stage, over any sale, as well as topping rights. *See* A&R Forbearance Agreement § 8. Here, the Bidding Procedures give the Prepetition Secured Parties consultation and qualified consent rights, subject to the Debtor's fiduciary obligations. *See, e.g.*, Bidding Procedures, XI. Fiduciary Out. And any sale is subject to this Court's approval. The Prepetition Secured Parties do not control outcomes; they just get to be heard before the Debtor decides.

13. To be sure, the Prepetition Secured Parties should have the consultation and consent rights provided in the Bidding Procedures because, in addition to being a significant secured creditor and stakeholder in this case, their collateral is being used with their consent to allow the Debtor to operate and run the sale process. None of the objecting parties has a similar stake.

## II. The Bankruptcy Code provides the Prepetition Secured Parties with the right to credit bid.

14. Credit bidding is a right Congress conferred by statute. *See* 11 U.S.C. § 363(k); *see also* 11 U.S.C. § 1129(b)(2)(A)(ii). The Bidding Procedures reflect what the statute provides—granting the Prepetition Secured Parties as secured creditors the right to credit bid pursuant to section 363(k) of the Bankruptcy Code. While conceding that the Prepetition Secured Parties have a security interest in the Debtor's assets, which entitles them to a secured claim against the Debtor, the Quantum Parties seek to turn this proceeding into a lien challenge. That is not before this Court today and there is a process prescribed in the Cash Collateral Order that the Quantum Parties must follow. Nothing in the Bidding Procedures adjudicates the validity of any lien, and no objector has invoked section 363(k) or attempted to show the cause that statute requires to limit the right.

15. WVEDA's concern that a credit bid submitted without a Good Faith Deposit, a Confidentiality Agreement, or evidence of committed financing "could chill bidding from third parties" identifies no actual or prospective bidder so deterred. WVEDA Objection ¶ 25. If WVEDA's contention were accepted, no secured creditor would ever hold the right Congress provided.

## III. The proposed sale timeline was not dictated by the Prepetition Secured Parties and is reasonable.

16. The Quantum Parties' contention that the proposed sale timeline reflects the Debtor's "capitulation to TRAG and RGE's improper demands" because it coincides with the sale

milestones in the proposed final cash collateral order is meritless and yet another baseless conjecture. OFT/Quantum Objection ¶ 47, n.6. The sale milestones and timeline were developed and proposed *by the Debtor* in the exercise of its business judgment with input from its proposed investment banker on what would generate a value maximizing sale process, and the Prepetition Secured Parties accepted those milestones in deference to that judgment. The Prepetition Secured Parties are supportive of a value maximizing sale process and believe that the timeline proposed by the Debtor seeks to accomplish that objective.

17. The Quantum Parties also make much of the proposed timeline, maintaining (again without support) that it is too short to maximize value. But under section 3(a) of the A&R Forbearance Agreement, the Quantum Parties contemplated that 60 days was sufficient to close a sale, extendable by 30 days only if regulatory approval was the sole condition left to closing. The Bidding Procedures allow 77 days just to reach the Sale Hearing, where a sale is approved, not closed. Accordingly, the Bidding Procedures provide more time than the Quantum Parties considered may be necessary to complete a sale just seven months ago.

## IV. <u>The remaining objections are not objections to the Bidding Procedures</u>.

18. What remains are not objections to the sale framework at all: restatements of the Quantum Parties' motion to dismiss; an opposition to waiver of Bankruptcy Rules 6004(h) and 6006(d) (an issue for the Sale Order); requests to wait for a ruling on the appointment of a chapter 11 trustee; IAC's request that its asserted materialman's lien attach to sale proceeds (already provided for in the Bidding Procedures (*see* Bidding Procedures § II)); and Pleasants, LLC's reservation as to certain Emissions Allowances (ownership dispute for the Sale Hearing or a separate proceeding). None of these is a reason to withhold approval of the Bidding Procedures.

## RESERVATION OF RIGHTS

19. The final approval of the Debtor's cash collateral motion [D.I. 17] (the "Cash Collateral Motion") has been adjourned and the Prepetition Secured Parties will respond in full to objections by the applicable deadline in advance of the adjourned hearing. Nothing in this Reply waives, limits, or prejudices any objection, argument, right, claim, remedy, or defense of the Prepetition Secured Parties, including, without limitation, with respect to the Cash Collateral Motion and/or any issue that overlaps with matters raised in connection with the Bidding Procedures Motion.

20. Without limitation, the Prepetition Secured Parties expressly reserve all rights, objections, arguments, claims, remedies, and defenses with respect to, without limitation: adequate protection; postpetition interest; and the validity, perfection and priority of any liens, including prepetition and postpetition liens.

21. The Prepetition Secured Parties further reserve the right to supplement, amend, or modify this Reply, and to respond to any objection, joinder, or argument raised in advance of or at the hearing.

## CONCLUSION

22. The Prepetition Secured Parties respectfully request that the Court (a) overrule the objections to the Bidding Procedures Motion, (b) grant the relief requested in the Bidding Procedures Motion as reflected in the Bidding Procedures Order,[2] and (c) grant such other and further relief as the Court deems just and proper.

[2] To the extent there are modifications to the proposed Bidding Procedures Order, the Prepetition Secured Parties reserve their rights with respect to any such modifications.

Dated: September 1, 2026
Wilmington, Delaware

**DLA PIPER LLP (US)**

/s/ *R. Craig Martin*
R. Craig Martin (DE 5032)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Craig.Martin@us.dlapiper.com

- and -

Kristine Manoukian (DE 5509)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: Kristine.Manoukian@us.dlapiper.com

- and -

Erik F. Stier (*pro hac vice* forthcoming)
500 Eighth Street, N.W.
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000
Email: Erik.Stier@us.dlapiper.com

*Counsel to TRAG LLC and RG Energy LLC*