# EXHIBIT 1

## AMENDED AND RESTATED FORBEARANCE AGREEMENT

EXECUTION VERSION

**AMENDED AND RESTATED**

**FORBEARANCE AGREEMENT**

This Amended and Restated Forbearance Agreement (this "**Agreement**") is entered into as of February 6, 2026 (the "**Effective Date**"), by and among TRAG LLC ("**TRAG**") and RG Energy LLC ("RGE" and, together with TRAG, the "**Lenders**"), and Omnis Global Technologies, LLC ("**OGT**"), Omnis Fuel Technologies, LLC ("**OFT**"), Quantum Pleasants, LLC ("**Quantum Pleasants**"), and Omnis Pleasants, LLC ("**OP**" and, together with OGT, OFT and Quantum Pleasants, the "**Omnis Parties**"). Terms that are used but not defined herein shall have the meanings set forth in the Loan Agreements (as defined below).

RECITALS

WHEREAS, OGT, as Borrower, OFT, Quantum Pleasants, and TRAG are party to that certain Loan and Security Agreement, dated May 26, 2023, as amended by that certain Amendment No. 1, dated June 30, 2023, as further amended by that certain Amendment No. 2, dated July 9, 2024, as further amended by that certain Amendment No. 3, dated August 1, 2024, and as further amended hereby (as so amended, the "**May 2023 Loan Agreement**");

WHEREAS, OGT, OFT and Quantum Pleasants granted to TRAG a security interest in the assets set forth in the May 2023 Loan Agreement, and Omnis Advanced Technologies, LLC ("**OAT**") granted to TRAG a security interest in the assets set forth in the IP Security Agreement (as defined in the May 2023 Loan Agreement) (such security interests, collectively, the "**May 2023 Loan Agreement Liens**");

WHEREAS, OGT, as Borrower, OFT, and RGE are party to that certain Loan and Security Agreement, dated June 2, 2023, as amended by that certain Amendment No. 1, dated June 30, 2023, as further amended by that certain Amendment No. 2, dated July 9, 2024 and as further amended hereby (as so amended, the "**June 2023 Loan Agreement**");

WHEREAS, OFT granted to RGE a security interest in the assets set forth in the June 2023 Loan Agreement and OAT granted to RGE a security interest in the assets set forth in the IP Security Agreement (as defined in the June 2023 Loan Agreement) (such security interests, collectively, (the "**June 2023 Loan Agreement Liens**");

WHEREAS, Quantum Pleasants, as Borrower, OFT, OP, and the West Virginia Economic Development Authority ("**WVEDA**") are party to that certain Loan Agreement, dated December 13, 2023 (the "**WVEDA Loan Agreement**");

WHEREAS, Quantum Pleasants, OFT, and OP granted or are required to grant to WVEDA a security interest in certain assets set forth in the WVEDA Loan Agreement (the "**WVEDA Liens**");

WHEREAS, Quantum Pleasants, OP, and WVEDA are party to that certain Promissory Note dated December 13, 2023, entered in connection with the WVEDA Loan Agreement (the "**WVEDA Promissory Note**");

WHEREAS, OP endorsed and agreed to pay all principal, interest, amounts, fees and payments of any kind due and owing by Quantum Pleasants in connection with the WVEDA Promissory Note (the "**OP WVEDA Endorsement**"; and the obligations of the Omnis Parties pursuant to the WVEDA Loan Agreement, the WVEDA Promissory Note and the OP WVEDA Endorsement, collectively, the "**WVEDA Indebtedness**");

WHEREAS, OFT, as Borrower, OGT, Quantum Pleasants, and TRAG are party to that certain Loan and Security Agreement, dated January 14, 2025, as amended hereby (as so amended, the "**January 2025 Loan Agreement**");

WHEREAS, OFT granted to TRAG a security interest in the assets set forth in the January 2025 Loan Agreement (the "**January 2025 Loan Agreement Liens**", and together with the May 2023 Loan Agreement Liens and June 2023 Loan Agreement Liens, the "**Lender Liens**");

WHEREAS, OFT, as Borrower, OGT, Quantum Pleasants, and TRAG are party to that certain Secured Promissory Note, dated March 31, 2025, as amended hereby (as so amended, the "**March 2025 Loan Agreement**") which is secured by the Collateral set forth in the January 2025 Loan Agreement and such security interest is included in the January 2025 Loan Agreement Liens;

WHEREAS, OP, as Maker, and Bilt Technology LLC ("**Bilt Technology**") are party to that certain Promissory Note, dated April 8, 2025 (the "**Bilt Technology Promissory Note**", and the obligations of OP pursuant to the Bilt Technology Promissory Note, the "**Bilt Indebtedness**");

WHEREAS, Simon K. Hodson, as Guarantor, and Bilt Technology are party to that certain Personal Guarantee, dated April 8, 2025, entered in connection with the Bilt Technology Promissory Note (the "**Hodson Personal Guarantee**");

WHEREAS, OP, as Borrower, Quantum Pleasants and TRAG are party to that certain Loan and Security Agreement, dated January 29, 2026 (the "**January 2026 Loan Agreement**", and together with the May 2023 Loan Agreement, June 2023 Loan Agreement, the January 2025 Loan Agreement, and the March 2025 Loan Agreement, the "**Loan Agreements**");

WHEREAS, Dynamic HC Co and Harmony Trust have advanced funds to OGT, OFT and Quantum Pleasants to sustain their operations (the "**DHC Indebtedness**");

WHEREAS, the Lenders have sent those certain Notices of Default and Reservation of Rights, dated October 1, 2025 (the "**Notices of Default**") to the Borrowers (copies of which are attached hereto as **Exhibit A**), in which the Lenders identified certain prior and currently existing Events of Default (the "**Noticed Defaults**");

WHEREAS, the Lenders have sent those certain Notices of Disposition of Collateral By Private Sale, dated October 21, 2025 (the "**First Notices of Foreclosure**") to the Borrowers (copies of which are attached hereto as **Exhibit B**);

WHEREAS, certain Events of Default have occurred due to breaches of the "Indebtedness" negative covenant stipulated in the Loan Agreements, resulting from the incurrence of Indebtedness relating to capital lease obligations, certain Contingent Obligations, including credit card obligations, and other indebtedness for borrowed money associated with various other loan documents, including the WVEDA Indebtedness, the Bilt Indebtedness and the DHC Indebtedness (collectively referred to as the "**Debt Covenant Defaults**");

WHEREAS, certain Events of Default have occurred due to breaches of the "Encumbrances" negative covenant stipulated in the Loan Agreements, resulting from the Lender Liens, the WVEDA Liens, vendor liens, purchase money security interests (PSMI) incurred in the ordinary course; equipment capital leases and any related encumbrances (the "**Lien Covenant Defaults**");

WHEREAS, certain Events of Default have occurred due to breaches of the "Confidentiality" covenant stipulated in the Loan Agreements by the Omnis Parties (the "**Confidentiality Covenant Default**"), and together with the Debt Covenant Defaults, the Lien Covenant Defaults and the Noticed Defaults, the "**Existing Defaults**");

WHEREAS, the Lenders and the Omnis Parties previously entered into that certain Forbearance Agreement, dated October 22, 2025 (the "**Prior Agreement**");

WHEREAS, the Prior Agreement has terminated as a result of a breach by the Omnis Parties and pursuant to its terms;

WHEREAS, the Existing Defaults are existing and continuing;

WHEREAS, the Lenders have sent those certain Notices of Disposition of Collateral By Private Sale, dated February 2, 2026 (the "**Second Notices of Foreclosure**" and together with the First Notices of Foreclosure, the "**Notices of Foreclosure**") to the Borrowers (copies of which are attached hereto as **Exhibit C**);

WHEREAS, Lenders are willing to continue to forbear from exercising their rights and remedies under the Loan Agreements for a limited period, subject to and conditioned upon the full, complete, timely and continued performance by the Omnis Parties of all of the terms and conditions set forth herein; and

WHEREAS, the Lenders and the Omnis Parties desire to amend and restate the Prior Agreement with this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the Prior Agreement be, and hereby is, amended and restated in all respects by this Agreement, and the parties agree as follows:

1. Incorporation by Reference. The parties acknowledge and agree that the foregoing recitals are true and correct and are incorporated herein by reference as if fully set forth in this Agreement.

2. Amendments to Loan Agreements.

a. The following definition shall hereby be inserted into Exhibit A of each Loan Agreement in appropriate alphabetical order:

> ""Payment in Full" or "Paid in Full" means, with respect to the Obligations, the indefeasible payment in full in cash of all principal, accrued and unpaid interest, fees, costs, expenses, and other amounts owing under this Agreement (other than contingent indemnification obligations with respect to claims not yet asserted) and the termination, cancellation, or cash collateralization (in an amount equal to 103% of the face value of the letter of credit) of the Letter of Credit (as defined in that certain Amended and Restated Forbearance Agreement, dated as of February 3, 2026, by and among, inter alia, the Lender and the Omnis Parties)."

b. The definition of "Obligations" contained in Exhibit A of each Loan Agreement is hereby amended and restated as follows:

> ""Obligations" means all debt, principal, interest, Lender Expenses, and other amounts owed to Lender by Borrower pursuant to this Agreement, whether absolute or contingent, due or to become due, now existing or hereafter arising, including any interest that accrues after the commencement of an Insolvency Proceeding and including any debt, liability, or obligation owing from Borrower to others that Lender may have obtained by assignment or otherwise."

c. With respect to the Obligations, each instance of "payment in full", "paid in full", "satisfied in full" or any similar language used in each of the Loan Agreements is hereby deleted and replaced with "Payment in Full" or "Paid in Full".

d. Section 12.7 of each Loan Agreement is hereby amended and restated in its entirety as follows:

"12.7 Survival. All covenants, representations and warranties made in this Agreement shall continue in full force and effect so long as any Obligations remain outstanding. The obligations of each Omnis Party to indemnify Lender with respect to the expenses, damages, losses, costs and liabilities described in Section 12.2 shall survive until all applicable statute of limitations periods with respect to actions that may be brought against Lender have run."

e. The following new Section 12.9 shall be inserted into each Loan Agreement immediately following Section 12.8 therein:

"12.9 Termination. Upon Payment in Full of the Obligations, (a) this Agreement and any IP Security Agreement executed in connection herewith shall automatically terminate, except for those provisions that expressly survive termination, and (b) all liens and encumbrances granted to Lender in connection with this Agreement and the IP Security Agreement shall automatically be released and terminated without further action by any Person. At the Borrower's expense, the Lender shall promptly (a) deliver to the Borrower termination statements, lien releases, discharges, reconveyances, and other documents reasonably requested by the Borrower to evidence the release of such Liens, and (b) instruct any third-party depositary, custodian, or other bailee holding Collateral to return such Collateral to the Borrower."

3. Forbearance Period.

a. Subject to and conditioned upon the full, complete, timely and continued performance by the Omnis Parties of all of the terms and conditions set forth herein, Lenders agree to forbear from exercising their rights and remedies under the Loan Agreements solely with respect to the Existing Defaults for a period commencing on the Effective Date and ending on the date that is the earliest of (a) sixty (60) days following the Effective Date or (b) the occurrence of a Forbearance Default (the "**Forbearance Period**"), unless earlier terminated pursuant to this Agreement, which Forbearance Period may be extended in the sole discretion of the Lenders. Notwithstanding the foregoing, if, prior to the expiration of the Forbearance Period, the parties have entered into a binding agreement for the sale of all or substantially all of the assets of OP or the equity interests in OP pursuant to the Sale Process, and the only material condition(s) to closing such sale is the receipt of approval(s) from the Federal Energy Regulatory Commission ("**FERC**") and/or any other applicable regulatory body, then the Forbearance Period shall be automatically extended for an additional thirty (30) days solely to permit the parties to obtain such FERC approval. The Lenders agree that the Notices of Default and the First Notices of Foreclosure were previously rescinded upon the effectiveness of the Prior Agreement. The Lenders further agree to rescind the Second Notices of Foreclosure effective upon the parties' execution and delivery of this Agreement. The parties agree that nothing in this Agreement will prevent the Lenders from: (a) issuing notices of default or Notices of Foreclosure or exercising any other rights and remedies for Forbearance Defaults or (b) reissuing Notices of Default or Notices of Foreclosure or exercising any other rights and remedies upon the expiration of the Forbearance Period. Each of the following shall constitute a "**Forbearance Default**": (i) any Omnis Party fails to comply with any of its covenants, undertakings or other agreements set forth in this Agreement and, if curable, fails to cure such non-compliance with five (5) Business Days of being notified thereof; (ii) the occurrence of any Event of Default other than the Existing Defaults or other than Events of Default arising from non-compliance with Sections 7.3 (Indebtedness) and Sections 7.4 (Encumbrances) of the Loan Agreements (it being understood that any breach of debt and encumbrance covenants contained herein would be considered a "Forbearance Default" pursuant to the preceding clause (i)) and, if curable, fails to cure such non-compliance with five (5) Business Days of being notified thereof; (iii) any representation or warranty in this Agreement proving to have been materially incorrect when made or deemed made, or (iv) any holder of material indebtedness (other than Lenders) of any Omnis Party taking any legal action against such Omnis Party, any Collateral or any other material assets or properties of any Omnis Party as a result of any defaults or events of default under the agreements, documents or instruments evidencing such indebtedness, as the case may be. As used herein "legal action" means the commencement

of any action, suit, or proceeding in any court of competent jurisdiction or before any governmental agency, including but not limited to, the filing of any complaint, petition, application, or motion seeking to enforce rights or remedies with respect to such indebtedness, Collateral, or assets, and expressly excluding the delivery or issuance of any notice (including notices of default, acceleration, or demand) or any other out-of-court or non-judicial enforcement actions that do not require a court or governmental agency filing. Notwithstanding the foregoing, any action or omission of the CEO and/or the Independent Manager that would otherwise constitute a breach of this Agreement or an Event of Default, shall not constitute a Forbearance Default.

4. Acknowledgement of Validity of Loan Agreements, Loans and Default. Each of the Omnis Parties acknowledges and agrees that:

a. Payment Default. The Existing Defaults have occurred, continue to exist and have not been cured.

b. Confirmation of Amounts Due. Each of the Omnis Parties acknowledges and agrees that, as of the close of business on February 3, 2026, pursuant to the terms of the Loan Agreements (i) the aggregate Principal balance of the outstanding amount under the Loan Agreements was not less than $58,891,450; (ii) accrued interest on the aggregate amount due to the Lenders was not less than $12,832,870, (iii) accrued origination fees and late fees due to Lenders were not less than $3,355,497, and (iv) Lender Expenses due to the Lenders was not less than $400,000.

c. Full Force and Effect. The Loan Agreements and the Loans remain in full force and effect and constitute valid, binding obligations of each of the Omnis Parties.

5. Reaffirmation of Loans. Each of the Omnis Parties hereby ratifies and reaffirms all of its payment and performance obligations, contingent or otherwise, under the Loan Agreements, agrees and acknowledges that the Loan Agreements and the Loans constitute legal, valid and binding obligations of each of the Omnis Parties. Each of the Omnis Parties further agrees that such ratification and reaffirmation is not a condition to the continued effectiveness of the Loan Agreements and neither such ratification and reaffirmation, nor the Lenders solicitation of such ratification and reaffirmation, constitutes a course of dealing giving rise to any obligation or condition requiring a similar or any other ratification or reaffirmation with respect to any subsequent modifications, consent or waiver with respect to the Loan Agreements. Each of the Omnis Parties acknowledges and agrees that the Loan Agreements shall continue in full force and effect and that all of the Loans thereunder are valid and enforceable and shall not be impaired or limited by the execution or effectiveness of this Agreement, other than as expressly set forth herein and subject to the terms hereof.

6. Reaffirmation of Liens in Collateral. Each of the Omnis Parties hereby affirms, ratifies, and confirms that the liens and security interests granted to each Lender under its respective Loan Agreement(s) in and to the Collateral are and shall remain in full force and effect, are validly created and secure the prompt payment and performance of the respective Obligations. To the extent continuation, creation or perfection of the Lenders' security interest reasonably requires further documentation at any time, each of the Omnis Parties covenant that they shall cooperate fully with the Lenders' efforts to effectuate the same, including by signing, filing, or recording, or authorizing Lenders to sign, file, or record such additional documentation as may be reasonably requested by the Lender, including the filing of an amendment to the Lenders' UCC-1 Financing Statement(s). Each of the Omnis Parties hereby expressly authorizes the Lenders to file any such an amendment as the Lenders reasonably determine to be appropriate.

7. Consideration for Forbearance. In consideration of this Agreement and the Lenders' forbearance as set forth herein, the Omnis Parties hereby agree as follows:

a. Within five (5) Business Days of the Effective Date (unless extended by the Lenders), the Quantum Pleasants operating agreement will be amended, in a form approved by the Lenders, to grant the Independent Manager approval rights over: (1) Quantum Pleasants' exercise of voting rights in OP with respect to the matters set forth in Section 7(b) and any matters intended to circumvent decisions of the CEO or the terms of this Agreement; (2) sales or disposals of Quantum Pleasants assets outside the ordinary course of business (including its interests in OP and the Power Plant) prior to the Payment in Full of the Obligations; (3) related party transactions involving Quantum Pleasants and its members or affiliates; (4) member distributions (provided that the Independent Manager shall approve distributions to the Quantum Pleasants members in an amount at least equal to the members' estimated tax liabilities (based on the maximum federal and West Virginia income tax rate for individuals residing in West Virginia) attributable to the net taxable profit generated by Quantum Pleasants for the year in question, including gain generated by the sale of the Pleasants Power Plant, as directed by the Independent Accounting Firm); provided that, after Payment in Full of the Obligations, the Independent Manager's approval rights over member distributions shall not restrict or delay any distributions so long as Quantum Pleasants maintains sufficient reserves to account for all liabilities and obligations, as determined in good faith by the Independent Accounting Firm; (5) the annual budget, business plan, and material deviations until Payment in Full of the Obligations; (6) amendments to the operating agreement of Quantum Pleasants, provided that, after Payment in Full of the Obligations, the Independent Manager's approval rights over amendments to the operating agreement shall be limited solely to amendments that would alter or affect the rights, duties, or protections of the Independent Manager, and (7) filing any application or petition initiating (or consenting to the initiation of) any bankruptcy or insolvency proceeding under federal or state bankruptcy or insolvency laws until Payment in Full of the Obligations. The Independent Manager may be appointed and removed only with the joint written consent of OFT and the Lenders. It being expressly understood that in all other matters not described in the foregoing, OFT shall retain exclusive governance and operational authority of Quantum Pleasants.

b. Within five (5) Business Days of the Effective Date (unless extended by the Lenders), the OP operating agreement will be amended, in a form approved by the Lenders, to grant the Independent Manager approval rights over: (1) sales or disposals of OP assets outside the ordinary course of business (including the Power Plant), (2) related party transactions involving Quantum Pleasants and its members or affiliates; (3) member distributions (provided that the Independent Manager shall approve distributions to the OP members from the sale of the Pleasants Power Plant after payment of all liabilities and obligations of OP and the creation of a reasonable reserve for contingent liabilities, and distributions each year will at least equal the members' estimated tax liabilities (based on the maximum federal and West Virginia income tax rate for individuals residing in West Virginia) attributable to the net taxable profit generated by QP for the year in question, as directed by the Independent Accounting Firm); provided that, after Payment in Full of the Obligations, the Independent Manager's approval rights over member distributions shall not restrict or delay any distributions so long as OP maintains sufficient reserves to account for all liabilities and obligations, as determined in good faith by the Independent Accounting Firm; (4) removal of the CEO, (5) the annual budget, business plan, and material deviations, (6) amendments to the operating agreement of OP, provided that, after Payment in Full of the Obligations, the Independent Manager's approval rights over amendments to the operating agreement shall be limited solely to amendments that would alter or affect the rights, duties, or protections of the Independent Manager, and (7) filing any application or petition initiating (or consenting to the initiation of) any bankruptcy or insolvency proceeding under federal or state bankruptcy or insolvency laws until Payment in Full of the Obligations. The Independent Manager may be appointed and removed only with the joint written consent of Quantum Pleasants and the Lenders.

c. The Omnis Parties agree to appoint:

i. Within five (5) Business Days (or such longer period as agreed to by Lender), a qualified and experienced individual approved by the Omnis Parties and Lenders as the "Independent Manager" of OP and Quantum Pleasants (in such capacity, the "**Independent Manager**"), it being

acknowledged that that Gilbert Nathan and William Wexler have been recommended and the parties are currently vetting these choices. In the event the Omnis Parties and Lenders do not approve and appoint an Independent Manager within such period, then David Hindman shall have the authority to choose and appoint the Independent Manager.

ii. David Hindman, by and through AP Services, LLC ("**APS**"), an affiliate of AlixPartners LLP ("**AlixPartners**"), as the Chief Executive Officer of OP (the "**CEO**"). It being understood that the existing Chief Executive Officer of OP be, and hereby is, removed as an officer of OP and David Hindman be, and hereby is, elected as the CEO of OP, with the CEO having such rights as set forth herein, which election is subject to and in accordance with the terms of the engagement letter by and between OP and APS ("**Engagement Letter**"), for the performance of services by APS and Mr. Hindman as CEO. For the avoidance of doubt, in the event of any conflict between this Agreement and the Engagement Letter, the Engagement Letter shall control.

Such appointments shall be pursuant to written consents by the Board of OP (and Quantum Pleasants in the case of the Independent Manager) in form and substance satisfactory to the Lenders.

d. If the Omnis Parties and Lenders agree in writing that it is in the best interests of Quantum Pleasants and OP for the Independent Manager to serve as both the Independent Manager and the CEO, then the Omnis Parties and Lenders may direct the Independent Manager to remove the CEO and all references in this Agreement to the CEO will be deemed to refer to the Independent Manager.

e. APS shall continue the services that AlixPartners has been providing as an independent financial advisor (the "**FA**") to the Power Plant and OP in accordance with the terms and fee structure outlines in the Engagement Letter. The CEO and FA shall be immediately granted access to all books and records, facilities, employees and any other materials and information of all Omnis Parties as may be reasonably necessary to allow the FA to deliver to the Omnis Parties and Lenders a report identifying any and all recommendations to improve performance, cash flow, profit and loss and such other financial metrics as shall be discussed between the FA and the CEO.

f. Randall Smith, be and hereby is, removed as Chief Financial Officer of Quantum Pleasants and OP. Randall Smith and Simon Hodson shall be immediately removed as signatories on the bank accounts of OP and shall be replaced by the CEO. The Omnis Parties agree that the CEO, in consultation with the Independent Manager, shall have the authority to recommend a nationally recognized accounting firm to manage the accounting and financials for the Power Plant, OP and Quantum Pleasants (the "**Independent Accounting Firm**"), which accounting firm shall be subject to the approval of the Lenders and the Board of Directors of each of OP and Quantum Pleasants, which approval shall not be unreasonably withheld, conditioned, or delayed and shall be provided within five (5) days of the CEO's recommendation. The Lenders, including their accountants, shall be immediately granted access to all books, records, and accounts of the Omnis Parties, and the CEO, FA, and independent accounting firm shall be authorized to share all such information with the Lenders.

g. OP hereby grants to Lenders a first priority security interest in all property and assets of OP, including the Power Plant (collectively, the "**Power Plant Collateral**"); provided that Power Plant Collateral will include a second priority security interest in any property required to be pledged as collateral to secure the WVEDA Loan until such time as consent is provided by WVEDA, which WVEDA Loan does not include a pledge of the Power Plant. Notwithstanding any termination of this Agreement or of any filings undertaken related to Lenders' rights under the Uniform Commercial Code (the "**Code**"), the Lenders' lien on the Power Plant Collateral shall remain in effect for so long as any Obligations under the Loan Agreements are outstanding. OP authorizes Lenders to file at any time financing statements, continuation statements, and amendments thereto that (i) specifically describe the relevant Power Plant Collateral and (ii) contain any other information required by the Code for the sufficiency of filing office

acceptance of any financing statement, continuation statement, or amendment, including whether the OP is an organization, the type of organization and any organizational identification number issued to OP, if applicable. OP will not create any chattel paper without placing a legend on the chattel paper acceptable to Lenders indicating that Lenders have a security interest in the chattel paper. OP shall take such other actions as Lenders reasonably request to perfect its security interests granted under this Agreement.

h. The Omnis Parties shall use commercially reasonable efforts to obtain the written consent of the West Virginia Economic Development Authority, a governmental instrumentality and body corporate of the State of West Virginia ("**WVEDA**"), to grant the Lenders a first priority security interest in the Power Plant Collateral. In consideration of such consent by WVEDA, OP shall grant to WVEDA a second priority security interest in Power Plant Collateral in connection with the WVEDA loan, which second priority security interest shall be subordinate in all respects to Lenders' first priority security interest, and WVEDA shall agree in writing to such subordination. All documentation relating to any such security interest shall be subject to Lenders prior written approval, which such consent shall not be unreasonably withheld or conditioned. Subject to OP's compliance with the foregoing, in the event WVEDA refuses to provide such consent, such refusal will not be considered a breach of this Agreement by the Omnis Parties.

i. In connection with that certain Irrevocable Standby Letter of Credit, dated January 28, 2026, issued by Bank of America, N.A. for the benefit of TYR Energy, LLC ("**TYR**") and payable by TRAG (the "**Letter of Credit**"), OP agrees that, in the event the Letter of Credit is drawn against by TYR, OP will repay to TRAG any such amounts drawn against the Letter of Credit and such repayment obligation will be secured by the Power Plant Collateral. OP shall take all further actions and execute all further documents as may be reasonably required by Lenders to memorialize the foregoing payment obligation and security interest. Notwithstanding the foregoing, OP's failure to pay the Lenders any reimbursement obligation during the Forbearance Period due to the unavailability of funds, in the sole discretion of the CEO, shall not constitute a Forbearance Default.

8. Joint Sale Process Authority. Notwithstanding anything to the contrary in this Agreement or the Loan Agreements, the Lenders and OFT, acting through their respective designated representatives, shall have the joint authority to initiate, manage, and conduct a process to solicit, and negotiate one or more transactions for the sale of all or substantially all of the assets of OP, including the Power Plant, or the equity interests in OP (the "**Sale Process**"). The parties may, at their own cost and expense, engage advisors, market the assets, and take such other actions as are reasonably necessary to facilitate the Sale Process and consummate a sale of the Power Plant, subject to the terms herein.

a. Full Transparency and Cooperation. The Lenders, OFT, and their respective advisors shall provide each other with full and prompt access to all information, documents, communications, and materials related to the Sale Process, including but not limited to all term sheets, proposals, offers, correspondence with potential purchasers, and drafts of transaction documents. Both parties and their advisors shall have the right to participate in all material meetings and discussions with prospective purchasers or their representatives, and to receive reasonable advance notice of such meetings.

b. Bona Fide Offer Requirement. No sale of OP or the Power Plant assets shall be promised, pledged, or agreed, including, the execution of any term sheet for the foregoing, unless a bona fide, written offer from a third party (the "**Bona Fide Offer**") is received and approved pursuant to the terms of this Agreement. A Bona Fide Offer must (a) be in writing, (b) be from a financially capable purchaser, (c) set forth all material terms and conditions, including purchase price, form of consideration, and any contingencies, and (d) be accompanied by evidence of committed financing or other proof of funds reasonably satisfactory to the Lenders.

c. Lender Approval. No sale of OP or the Power Plant assets pursuant to the Sale Process shall be promised, pledged, or agreed without the prior written approval of the Lenders, which approval

shall not be unreasonably withheld, conditioned, or delayed. Notwithstanding the foregoing, if a Bona Fide Offer is received for the sale of OP or the Power Plant assets that would result in Payment in Full of the Obligations under the Loan Agreements, plus the payment in full of all other indebtedness of Quantum Pleasants and Omnis Pleasants, the Lenders shall not withhold, condition, or delay their approval of such sale, unless the Lenders present a written, binding, and superior Bona Fide Offer (on terms at least as favorable in the aggregate to the Omnis Parties and their creditors) within five (5) Business Days of receipt of the Bona Fide Offer.

d. Board Approval. Subject to a sale meeting the requirements of Section 8(c), any sale of OP or the Power Plant assets pursuant to the Sale Process shall also be subject to the prior written approval of the Independent Manager and the board of directors (or equivalent governing body) of OP (and, if applicable, Quantum Pleasants).

e. No Interference. Neither the Lenders nor OFT shall intentionally take actions the primary purpose of which is to materially interfere with the other party's efforts to pursue a transaction that would result in the Payment in Full of the Obligations; provided, however, that nothing herein shall limit or restrict the Lenders' rights or remedies under the Loan Agreements following termination of the Forbearance Period.

9. Additional Agreements among the Parties. In addition to the foregoing, each of the Lenders and the Omnis Parties hereby agree as follows:

a. Role of Independent Manager.

i. The Independent Manager shall (A) receive all notices and materials provided to OP and/or Quantum Pleasant's Board in connection with any meeting or action by written consent, (B) have reasonable access to the OP and Quantum Pleasant's books and records, and (C) participate in meetings (in person or telephonically) at which material OP and/or Quantum Pleasant actions are considered. The Independent Manager shall have the consent rights with respect to OP and Quantum Pleasants as set forth in the OP Amendment and Quantum Pleasants Amendment, respectively.

ii. The Independent Manager is not an agent, fiduciary, or representative of any Lender and shall owe fiduciary duties solely as provided under applicable law to OP and Quantum Pleasants (and, if applicable, its members) in performing his or her duties.

b. Role of the CEO.

i. The CEO is hereby authorized to make all operational decisions regarding the Pleasants Power Station (the "**Power Plant**"), including, but not limited to, authority to sign contracts, access all bank accounts, add and remove persons from such bank accounts, authorize payments on behalf of OP and the Power Plant, approve expenditures and disbursements, hire and fire Power Plant personnel, engage counsel, incur indebtedness, and all other actions that are customary for a Chief Executive Officer operating in a similar industry. The CEO shall immediately have access to all books, records, facilities, materials, employees, and such information as may be reasonably necessary to execute the responsibilities set forth in this Agreement. The CEO shall be responsible for ensuring the timely payment of all payroll obligations for employees of Omnis Pleasants in the ordinary course of business consistent with current practices. This obligation shall include, but not be limited to, the payment of all wages, salaries, and related employment taxes and withholdings for such employees as and when due, subject to the availability of funds and applicable law.

ii. The CEO is not an agent, fiduciary, or representative of any Lender and shall owe fiduciary duties solely as provided under applicable law to OP and its members in performing his or her duties.

c. The Independent Manager and the CEO shall act in good faith to ensure that all material decisions, actions, and approvals are made with the primary objective of maximizing the value of the Power Plant, consistent with their other fiduciary duties under applicable law.

d. The Omnis Parties agree to cooperate with the Lender to obtain a standalone Side A directors and officers insurance policy covering the CEO and Independent Manager ("**D&O Insurance**") at the reasonable cost and expense of OP, which D&O Insurance will be secured within five (5) Business Days following the Effective Date and will be effective as of the Effective Date. If such D&O Insurance is not obtained, the CEO shall have the authority to obtain such D&O Insurance on commercially reasonable terms at the reasonable cost and expense of OP. Failure by Omnis Parties to procure such D&O Insurance within 5 Business Days shall not be deemed a breach of this Agreement or a Forbearance Default.

e. The Omnis Parties agree to enter into such other agreements as may be reasonably required by the CEO, AlixPartners, APS, or the Independent Manager in connection with their engagement pursuant to the terms of this Agreement.

f. In addition to the indemnification and exculpation provisions set forth in the OP and Quantum Pleasants operating agreements (as applicable), to the fullest extent permitted by law, the CEO, APS, AlixPartners, and the Independent Manager shall not have any liability to the Omnis Parties, the Lenders, or any other Person for any loss, damage, claim, or liability whatsoever arising out of or related to the performance of their duties as CEO and Independent Manager (as applicable), except to the extent arising from their fraud, gross negligence, willful misconduct, or bad faith.

g. The Lenders and Omnis Parties shall cooperate reasonably in all respects with the CEO and FA in good faith and not interfere with their duties performed in accordance with the terms of this Agreement;

h. The Lenders and Omnis Parties shall take all actions and execute all documents, including without limitation, any and all corporate resolutions, necessary or reasonably appropriate to effectuate the terms of this Agreement;

i. Any decisions made by the Omnis Parties, the Lenders, the CEO, IM, CFO and FA under this Agreement shall be made in good faith and in a manner reasonably intended to be in the best interests of Quantum Pleasants and OP, and for the purpose of reducing their expenses or maximizing their revenues without unduly exposing their assets or operations to risks of material liabilities (other than contractual obligations); and

j. Neither the Lenders nor the Omnis Parties, nor any of their respective principals, officers, directors, employees, agents, or representatives, shall disparage the other party, whether orally or in writing, or make or issue any public statements regarding the other party, except as required by applicable law or regulation; provided that nothing herein shall prohibit good-faith statements made to such party's attorneys, financial advisors, or other professional representatives in connection with this Agreement and the Loan Agreements.

10. Independent Manager and CEO. Lenders hereby agree and confirm that each of the Independent Manager and CEO: (a) do not have any material direct or indirect financial interest in any Lender or an any affiliate of any Lender, and (b) are not a person who controls, is controlled by, or is under common control with any Lender or an any affiliate of any Lender, in each case other than customary compensation for serving as Independent Manager.

11. Negative Covenants. None of the Omnis Parties will take any of the following actions without the prior written consent of the Lenders:

a. Enter into any agreement or take any action that would materially and adversely affect the Lenders' rights and remedies under this Agreement and the Loan Agreements;

b. Raise capital, incur indebtedness, incur or modify any liens, or issue equity in any Omnis Party; provided, however, that nothing herein will limit or restrict (i) the Omnis Parties from incurring vendor liens, purchase money security interests (PSMI), equipment capital leases and any related encumbrances, in the ordinary course of business, (ii) the Omnis Parties (other than Quantum Pleasants or OP) from incurring unsecured indebtedness to fund their operations in the ordinary course as currently conducted provided such amount does not exceed $1,000,000 per month or (iii) modifying the Lender Liens and/or WVEDA Liens as set forth herein, provided, further, that nothing herein will limit or restrict the Omnis Parties from procuring funds resulting in a Payment in Full of all Obligations (which payment shall terminate this Agreement and the Loan Agreements);

c. Pay off any indebtedness of any Omnis Party, or of any affiliate of any Omnis Party, including intercompany loans, prior to Payment in Full of all Obligations under each Loan Agreement. For the avoidance of doubt, "indebtedness" for purposes of this Section 11(c) does not include operating liabilities, accounts payable or accrued expenses incurred in the ordinary course of business to third parties that are not affiliates of any Omnis Party;

d. Enter into any transaction to sell, transfer, or assign, any material assets of any Omnis Party, including by merger or equity purchase, the sale of the Power Plant or intellectual property, but excluding sales, transfers or assignments in the ordinary course or transactions that will result in the Payment in Full of all Obligations under the Loan Agreements;

e. Make any distributions of capital to any members of any Omnis Party, including intercompany distributions from one Omnis Party to another Omnis Party (other than distributions made to members of any Omnis Party solely to cover pass-through tax liabilities of the members arising from the operations of such Omnis Party, as directed by the Independent Accounting Firm) prior to Payment in Full of the Obligations with respect to each Loan Agreement;

f. Use revenues derived from the operation of the Power Plant, including, but not limited to, capacity payments, for any purpose other than for the operations of the Power Plant in accordance with the advice of the FA and CEO; and

g. Enter into any agreement with any affiliate or related party, including any member, manager, employee, officer, or family member of any of the foregoing, or any entity owned directly or indirectly by any of the forgoing, other than in the ordinary course of business and subject to the approval of the Independent Manager.

12. General Release; Covenant Not to Sue.

a. In consideration of, among other things, Lenders' execution and delivery of this Agreement, each of the Omnis Parties, and their respective past and present parent, subsidiary, related, affiliated, predecessor, and/or successor entities, as well as their past and present officers, directors, employees, representatives, agents and insurers (the "**Releasors**"), hereby forever waives, releases and discharges, to the fullest extent permitted by law, each Lender and each of their respective affiliates, successors, and assigns, and each and all of the officers, directors, employees, agents, attorneys and other representatives of each of the foregoing (collectively, the "**Releasees**") from any and all claims (including, without limitation, crossclaims, counterclaims, defenses, rights of set-off and recoupment), actions, causes of action, suits, debts, accounts, interests, liens, promises, warranties, damages and consequential damages, demands, agreements, bonds, bills, specialties, covenants, controversies, variances, trespasses, judgments, executions, costs, expenses, defenses or claims whatsoever (collectively, the "**Claims**"), that any of the Releasors now has or hereafter may have, of whatsoever nature and kind, whether known or unknown,

whether now existing or hereafter arising, whether arising at law or in equity, against the Releasees, in each case solely to the extent arising out of or relating to the Loan Agreements, this Agreement, or any related loan documents, or the transactions contemplated thereby; provided, however, that the foregoing release shall not apply to, and nothing herein shall release, (a) any claims arising from the fraud, gross negligence, or willful misconduct of any Releasee, (b) any rights or claims that cannot be waived as a matter of law, or (c) any obligations of any Releasee under this Agreement or any Loan Agreement or related loan document that arise after the date hereof.

b. In connection with such releases, each of the Releasors acknowledge that they are aware that they or their attorneys or others may hereafter discover claims or facts presently unknown or unsuspected in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Claims being released pursuant to this agreement. Nevertheless, it is the intention of each of the Releasors in executing this Agreement to fully, finally, and forever settle and release all matters and all claims relating thereto, which exist, hereafter may exist or might have existed (whether or not previously or currently asserted in any action) constituting Claims released pursuant to this Agreement, subject to the carve-outs set forth above.

c. In entering into this Agreement, each of the Releasors consulted with, and has been represented by, legal counsel and expressly disclaims any reliance on any representations, acts or omissions by any of the Releasees and hereby agrees and acknowledges that the validity and effectiveness of the releases set forth above do not depend in any way on any such representations, acts and/or omissions or the accuracy, completeness or validity hereof.

d. Each Releaser further agrees that such Releasor is knowingly waiving the provisions and protections of Section 1542 of the California Civil Code and any similar law in any other jurisdiction, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

e. Each of the Releasors hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged pursuant to this Agreement, subject to the carve-outs set forth above. If any of the Releasors violates the foregoing covenant, each of the Releasors agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and any other out-of-pocket expenses incurred by any Releasee as a result of such violation.

f. The provisions of this Section 12 shall survive the termination of this Agreement, the Loan Agreements, and payment in full of the Obligations.

13. <u>Non-Frustration of Omnis Parties' Compliance</u>. Notwithstanding anything to the contrary in this Agreement or the Loan Agreements, the Lenders, the Independent Manager, and the CEO shall not take any action, or fail to take any action, the primary purpose of which is to frustrate, hinder, or unreasonably interfere with the efforts of the Omnis Parties to comply with the terms and conditions of this Agreement or the Loan Agreements.

14. <u>Further Assurances</u>. Each of the Omnis Parties and Lenders agree to take all further actions and execute all further documents as Lenders may from time to time reasonably request that are necessary

to carry out the transactions contemplated by this Agreement and all other agreements executed and delivered in connection herewith.

15. Termination. This Agreement and each Loan Agreement shall terminate only upon the Payment in Full of all Obligations owed to the Lenders under the Loan Agreements.

16. Miscellaneous.

a. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

b. This Agreement may be executed in counterparts and by electronic signature.

c. All notices sent pursuant to this Agreement or any Loan Agreement shall be sent to the addresses set forth below:

To Omnis Parties:

Omnis Global Technologies, LLC
Omnis Fuel Technologies, LLC
Quantum Pleasants, LLC
Omnis Pleasants, LLC
3710 Collins Ferry Road
Morgantown, WV 26505
Attn: Legal
Email: bstephens@omnisenergy.com

with copy to:

Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Attn: Morris DeFeo, Esq
Email: mdefeo@herrick.com

To Lenders:

TRAG, LLC
RG Energy, LLC
9051 Mira Mesa Blvd #261229
San Diego, CA 92126
Attn: Ajay Gupta
Email: ajay@robbinsgupta.com

With a copy to:

Manatt, Phelps & Phillips, LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
Attn: Thomas Michael
Email: tmichael@manatt.com

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

OMNIS GLOBAL TECHNOLOGIES, LLC

By: Signed by: Randall Smith 52F88A74C72E45D...

Name: Randall Smith

Title: CFO

OMNIS FUEL TECHNOLOGIES, LLC

By: Signed by: Randall Smith 52F88A74C72E45D...

Name: Randall Smith

Title: CFO

QUANTUM PLEASANTS, LLC

By: Signed by: Randall Smith 52F88A74C72E45D...

Name: Randall Smith

Title: CFO

OMNIS PLEASANTS, LLC

By: Signed by: Randall Smith 52F88A74C72E45D...

Name: Randall Smith

Title: CFO

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

TRAG LLC

DocuSigned by:

By: Ajay Gupta

5F3F158A45D04BD...

Name: Ajay Gupta

Title: Manager

RG ENERGY LLC

DocuSigned by:

By: Ajay Gupta

5F3F158A45D04BD...

Name: Ajay Gupta

Title: Manager

**EXHIBIT A**

**RG ENERGY LLC**
**9051 Mira Mesa Blvd #261229**
**San Diego, CA 92126**

October 1, 2025

Randall Smith, Chief Financial Officer
OMNIS GLOBAL TECHNOLOGIES, LLC
OMNIS FUEL TECHNOLOGIES, LLC
3710 Collins Ferry Road
Morgantown, West Virginia 26505
Email:

Re: RG ENERGY LLC, as Lender (in such capacity "Lender") Loan**s** to OMNIS GLOBAL TECHNOLOGIES, LLC ("Borrower"), OMNIS FUEL TECHNOLOGIES, LLC ("OFT") and any Qualified Affiliate ("Qualified Affiliate"; and together with Borrower and OFT, the "Omnis Parties"), Notice of Default and Reservation of Rights

Dear Mr. Smith:

Reference is made to that certain Loan and Security Agreement dated as of June 2, 2023 (as amended from time to time, collectively, the "Loan Agreement"), by and among Lender and the Omnis Parties. Unless otherwise defined, all initially capitalized terms used herein shall be as defined in the Loan Agreement.

Lender hereby gives notice to the Omnis Parties that an Event of Default under the Loan Agreement has occurred and continues to exist (the "Existing Default"), including without limitation, violation of the following provisions of the Loan Agreement:

- Section 8.1 (Payment Default) – as a result of Borrower's failure to pay the Obligations as and when due pursuant to the terms of the Loan Agreement.

The Existing Default entitles Lender to exercise the rights, remedies, powers, and privileges afforded to it by contract, under applicable law, in equity, and otherwise arising as a result of the breach or violation of the Loan Documents (collectively, "rights and remedies" and individually or as the context may indicate, "right or remedy"), including, without limitation, the right to accelerate and declare the loan and other Obligations immediately due and payable, enforce its security interest in the collateral securing the Obligations, impose the default rate of interest on the outstanding Obligations to the extent permitted by law, and collect any fees and expenses which Lender may incur in connection with the Obligations or the Existing Default.

Notice is further given to the Omnis Parties that Lender may opt to, without further notice, exercise its other rights and remedies under the Loan Documents and applicable law.

Nothing contained in this letter shall operate as a consent to or a waiver, amendment, or forbearance with respect to any of the above-referenced defaults or any other or further matter (including any default or Event of Default) or any other right, power, or remedy of Lender under the Loan Agreement or any other document, instrument or agreement entered into in connection therewith. No delay on the part of Lender in the exercise of any remedy, power, right or privilege under the Loan Agreement, or any other document, instrument or agreement entered into in connection therewith, shall impair such remedy, power, right, or privilege or be construed to be a waiver of any Default or Event of Default, and Lender

hereby expressly reserves all of Lender's remedies, powers, rights or privileges under the Loan Agreement and each other document, instrument or agreement entered into in connection therewith, at law, in equity, or otherwise. All of the foregoing hereafter is referred to collectively as the "Reservation of Rights". The Reservation of Rights hereunder extends to all defaults, whether now existing or hereafter arising, and whether known or unknown. The Loan Documents at all times remain in full force and effect in accordance with their terms and any present or future negotiations or discussions with Lender or its representatives regarding the Obligations or the Loan Documents and any proposed modifications thereto shall not be binding on Lender, unless and until an agreement in writing is signed by an authorized officer of Lender.

Sincerely,

RG ENERGY LLC

DocuSigned by:

By: Ajay Gupta ________________________________
9D71DE7858D04AB...
Name: Ajay Gupta
Title: Manager

**TRAG LLC**
**9051 Mira Mesa Blvd #261229**
**San Diego, CA 92126**

October 1, 2025

Randall Smith, Chief Financial Officer
OMNIS GLOBAL TECHNOLOGIES, LLC
OMNIS FUEL TECHNOLOGIES, LLC
QUANTUM PLEASANTS, LLC
3710 Collins Ferry Road
Morgantown, West Virginia 26505
Email:

Re: TRAG LLC, as Lender (in such capacity "Lender") Loan**s** to OMNIS FUEL TECHNOLOGIES, LLC ("Borrower"), OMNIS GLOBAL TECHNOLOGIES, LLC ("OGT") and QUANTUM PLEASANTS, LLC ("Quantum Pleasants"; and together with Borrower and OGT, the "Omnis Parties"), Notice of Default and Reservation of Rights

Dear Mr. Smith:

Reference is made to that certain Loan and Security Agreement dated as of January 14, 2025 (as amended from time to time, collectively, the "Loan Agreement"), by and among Lender and the Omnis Parties. Unless otherwise defined, all initially capitalized terms used herein shall be as defined in the Loan Agreement.

Lender hereby gives notice to the Omnis Parties that an Event of Default under the Loan Agreement has occurred and continues to exist (the "Existing Default"), including without limitation, violation of the following provisions of the Loan Agreement:

- Section 8.1 (Payment Default) – as a result of Borrower's failure to pay the Obligations as and when due pursuant to the terms of the Loan Agreement.

The Existing Default entitles Lender to exercise the rights, remedies, powers, and privileges afforded to it by contract, under applicable law, in equity, and otherwise arising as a result of the breach or violation of the Loan Documents (collectively, "rights and remedies" and individually or as the context may indicate, "right or remedy"), including, without limitation, the right to accelerate and declare the loan and other Obligations immediately due and payable, enforce its security interest in the collateral securing the Obligations, impose the default rate of interest on the outstanding Obligations to the extent permitted by law, and collect any fees and expenses which Lender may incur in connection with the Obligations or the Existing Default.

Notice is further given to the Omnis Parties that Lender may opt to, without further notice, exercise its other rights and remedies under the Loan Documents and applicable law.

Nothing contained in this letter shall operate as a consent to or a waiver, amendment, or forbearance with respect to any of the above-referenced defaults or any other or further matter (including any default or Event of Default) or any other right, power, or remedy of Lender under the Loan Agreement or any other document, instrument or agreement entered into in connection therewith. No delay on the part of Lender in the exercise of any remedy, power, right or privilege under the Loan Agreement, or any other document, instrument or agreement entered into in connection therewith, shall impair such remedy,

power, right, or privilege or be construed to be a waiver of any Default or Event of Default, and Lender hereby expressly reserves all of Lender's remedies, powers, rights or privileges under the Loan Agreement and each other document, instrument or agreement entered into in connection therewith, at law, in equity, or otherwise. All of the foregoing hereafter is referred to collectively as the "Reservation of Rights". The Reservation of Rights hereunder extends to all defaults, whether now existing or hereafter arising, and whether known or unknown. The Loan Documents at all times remain in full force and effect in accordance with their terms and any present or future negotiations or discussions with Lender or its representatives regarding the Obligations or the Loan Documents and any proposed modifications thereto shall not be binding on Lender, unless and until an agreement in writing is signed by an authorized officer of Lender.

Sincerely,

TRAG LLC

DocuSigned by:

By: Ajay Gupta

Name: Ajay Gupta
Title: Manager

**TRAG LLC**
**9051 Mira Mesa Blvd #261229**
**San Diego, CA 92126**

October 1, 2025

Randall Smith, Chief Financial Officer
OMNIS GLOBAL TECHNOLOGIES, LLC
OMNIS FUEL TECHNOLOGIES, LLC
QUANTUM PLEASANTS, LLC
3710 Collins Ferry Road
Morgantown, West Virginia 26505
Email:

Re: TRAG LLC, as Lender (in such capacity "Lender") Loan**s** to OMNIS GLOBAL TECHNOLOGIES, LLC ("Borrower"), OMNIS FUEL TECHNOLOGIES, LLC ("OFT") and QUANTUM PLEASANTS, LLC ("Quantum Pleasants"; and together with Borrower and OFT, the "Omnis Parties"), <u>Notice of Default and Reservation of Rights</u>

Dear Mr. Smith:

Reference is made to that certain Loan and Security Agreement dated as of May 26, 2023 (as amended from time to time, collectively, the "<u>Loan Agreement</u>"), by and among Lender and the Omnis Parties. Unless otherwise defined, all initially capitalized terms used herein shall be as defined in the Loan Agreement.

Lender hereby gives notice to the Omnis Parties that an Event of Default under the Loan Agreement has occurred and continues to exist (the "<u>Existing Default</u>"), including without limitation, violation of the following provisions of the Loan Agreement:

- Section 8.1 (Payment Default) – as a result of Borrower's failure to pay the Obligations as and when due pursuant to the terms of the Loan Agreement.

The Existing Default entitles Lender to exercise the rights, remedies, powers, and privileges afforded to it by contract, under applicable law, in equity, and otherwise arising as a result of the breach or violation of the Loan Documents (collectively, "rights and remedies" and individually or as the context may indicate, "right or remedy"), including, without limitation, the right to accelerate and declare the loan and other Obligations immediately due and payable, enforce its security interest in the collateral securing the Obligations, impose the default rate of interest on the outstanding Obligations to the extent permitted by law, and collect any fees and expenses which Lender may incur in connection with the Obligations or the Existing Default.

Notice is further given to the Omnis Parties that Lender may opt to, without further notice, exercise its other rights and remedies under the Loan Documents and applicable law.

Nothing contained in this letter shall operate as a consent to or a waiver, amendment, or forbearance with respect to any of the above-referenced defaults or any other or further matter (including any default or Event of Default) or any other right, power, or remedy of Lender under the Loan Agreement or any other document, instrument or agreement entered into in connection therewith. No delay on the part of Lender in the exercise of any remedy, power, right or privilege under the Loan Agreement, or any other document, instrument or agreement entered into in connection therewith, shall impair such remedy,

power, right, or privilege or be construed to be a waiver of any Default or Event of Default, and Lender hereby expressly reserves all of Lender's remedies, powers, rights or privileges under the Loan Agreement and each other document, instrument or agreement entered into in connection therewith, at law, in equity, or otherwise. All of the foregoing hereafter is referred to collectively as the "Reservation of Rights". The Reservation of Rights hereunder extends to all defaults, whether now existing or hereafter arising, and whether known or unknown. The Loan Documents at all times remain in full force and effect in accordance with their terms and any present or future negotiations or discussions with Lender or its representatives regarding the Obligations or the Loan Documents and any proposed modifications thereto shall not be binding on Lender, unless and until an agreement in writing is signed by an authorized officer of Lender.

Sincerely,

TRAG LLC

DocuSigned by:

By: Ajay Gupta

9D71DF73F8D04AB...

Name: Ajay Gupta
Title: Manager

# EXHIBIT B

**RG ENERGY LLC**

## NOTIFICATION OF DISPOSITION OF COLLATERAL BY PRIVATE SALE

***Via Certified Mail, Return Receipt Requested (and email, as indicated)***

**TO: OMNIS GLOBAL TECHNOLOGIES, LLC. AND PARTIES IN INTEREST:**

NOTICE IS HEREBY GIVEN that RG ENERGY LLC ("Lender") is secured under that Loan and Security Agreement dated as of June 2, 2023 (as amended from time to time, the "Agreement"), wherein OMNIS GLOBAL TECHNOLOGIES, LLC ("Borrower"), OMNIS FUEL TECHNOLOGIES LLC ("OFT") and any Qualified Affiliate that signed a counterpart to the Agreement (any such Qualified Affiliates, together with Borrower and OFT, the "Omnis Parties;" hereinafter collectively referred to as, "Grantor") granted a security interest in certain Collateral described therein to Lender, as secured party. Pursuant to the California Commercial Code Sections 9610 *et seq*., Lender hereby gives notice to the Grantor and to all other parties who are entitled to notice that, because of defaults under the Agreement, certain collateral (the "Collateral") will be sold privately at one or more sales on or after October 31, 2025 commencing at 10:00 a.m. Pacific Standard Time.

**THE COLLATERAL TO BE SOLD CONSISTS OF ALL OF GRANTORS' RIGHT, TITLE AND INTEREST IN THE FOLLOWING:**

The Collateral shall be sold free and clear of any and all security interests of Lender and any security interest or lien subordinate thereto.

The Collateral is more particularly described in **Exhibit A** attached hereto.

Grantors are entitled to an accounting of the unpaid indebtedness secured by the property that Lender intends to sell. Grantors may request an accounting by contacting the undersigned either by telephone at 858-945-5485 or in writing at the address set forth below.

Date: October 21, 2025

RG ENERGY LLC

DocuSigned by:

By: Ajay Gupta
9D71DF73F8D04AB...
Name: Ajay Gupta
Title: Manager

9051 Mira Mesa Blvd #261229
San Diego, CA 92126

**MAILING LIST**

| | |
|---|---|
| Randall Smith, Chief Financial Officer<br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>OMNIS FUEL TECHNOLOGIES, LLC<br>3710 Collins Ferry Road<br>Morgantown, West Virginia 26505<br>E: rsmith@omnisglobaltechnologies.com<br><br>***Article No:*** | Nicholson Thomas<br>Thomas & Associates International Inc.<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067<br>nick@jnicholsonlawgroup.com<br><br>***Article No:*** |
| David Kennedy<br>dkennedy@dkennedylawoffice.com | |
| Alina Energy | |

# EXHIBIT A

All personal property of Debtor whether presently existing or hereafter created or acquired, and wherever located, including, but not limited to:

(a) all accounts (including health-care-insurance receivables), chattel paper (including tangible and electronic chattel paper), deposit accounts, documents (including negotiable documents), equipment (including all accessions and additions thereto), financial assets, general intangibles (including patents, trademarks, copyrights, goodwill, payment intangibles, domain names and software), all Intellectual Property, goods (including fixtures), instruments (including promissory notes), inventory (including all goods held for sale or lease or to be furnished under a contract of service, and including returns and repossessions), investment property (including securities and securities entitlements), letter of credit rights, money, and all of Debtor's books and records with respect to any of the foregoing, and the computers and equipment containing said books and records;

(b) any and all cash proceeds and/or noncash proceeds of any of the foregoing, including, without limitation, insurance proceeds, and all supporting obligations and the security therefor or for any right to payment. All terms above have the meanings given to them in the California Uniform Commercial Code, as amended or supplemented from time to time, including revised Division 9 of the Uniform Commercial Code-Secured Transactions; and

(c) any rights, interests, or assets, whether directly or indirectly held, relating to hydrogen conversion, graphite or graphene.

**TRAG LLC**

## NOTIFICATION OF DISPOSITION OF COLLATERAL BY PRIVATE SALE

***Via Certified Mail, Return Receipt Requested (and email, as indicated)***

**TO: OMNIS FUEL TECHNOLOGIES LLC. AND PARTIES IN INTEREST:**

NOTICE IS HEREBY GIVEN that TRAG LLC ("Lender") is secured under that Loan and Security Agreement dated as of January 14, 2025 (as amended from time to time, the "Agreement"), wherein Omnis Fuel Technologies LLC ("Borrower"), Omnis Global Technologies, LLC ("OGT"), and Quantum Pleasants, LLC ("QP", together with Borrower and OGT, each an "Omnis Party", and together, the "Omnis Parties"; hereinafter collectively referred to as, "Grantor") granted a security interest in certain Collateral described therein to Lender, as secured party. Pursuant to the California Commercial Code Sections 9610 *et seq*., Lender hereby gives notice to the Omnis Parties and to all other parties who are entitled to notice that, because of defaults under the Agreement, certain collateral (the "Collateral") will be sold privately at one or more sales on or after October 31, 2025 commencing at 10:00 a.m. Pacific Standard Time.

**THE COLLATERAL TO BE SOLD CONSISTS OF ALL OF GRANTORS' RIGHT, TITLE AND INTEREST IN THE FOLLOWING:**

The Collateral shall be sold free and clear of any and all security interests of Lender and any security interest or lien subordinate thereto.

The Collateral is more particularly described in **Exhibit A** attached hereto.

Grantors are entitled to an accounting of the unpaid indebtedness secured by the property that Lender intends to sell. Grantors may request an accounting by contacting the undersigned either by telephone at 858-945-5485 or in writing at the address set forth below.

Date: October 21, 2025

TRAG LLC

DocuSigned by:

By: Ajay Gupta
9D71DF73F8D04AB...
Name: Ajay Gupta
Title: Manager

9051 Mira Mesa Blvd #261229
San Diego, CA 92126

**MAILING LIST**

| | |
|---|---|
| Randall Smith, Chief Financial Officer<br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>OMNIS FUEL TECHNOLOGIES LLC<br>QUANTUM PLEASANTS, LLC<br>3710 Collins Ferry Road<br>Morgantown, West Virginia 26505<br>E: rsmith@omnisglobaltechnologies.com<br><br>***Article No:*** | Nicholson Thomas<br>Thomas & Associates International Inc.<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067<br>nick@jnicholsonlawgroup.com<br><br>***Article No:*** |
| David Kennedy<br>dkennedy@dkennedylawoffice.com | |
| West Virginia Economic Development Authority<br>Northgate Business Park<br>180 Association Drive<br>Charleston, WV 25311<br><br>***Article No:*** | TYR ENERGY, LLC<br>7500 College Boulevard, Suite 400<br>Overland Park, KS 66210<br><br>***Article No:*** |
| William Herlihy, Spilman Thomas & Battle<br>Joseph Unger<br>300 Kanawha Blvd. East<br>Charleston, WV 25301<br>junger@spilmanlaw.com<br><br>***Article No:*** | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br><br>***Article No:*** |
| Alina Energy | |

# EXHIBIT A

All of Borrower's right, title, and interest in and to the following property: (i) all goods, Accounts, Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, securities accounts, securities entitlements and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; (ii) all Omnis Books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing, and (iii) all Intellectual Property.

**TRAG LLC**

## NOTIFICATION OF DISPOSITION OF COLLATERAL BY PRIVATE SALE

***Via Certified Mail, Return Receipt Requested (and email, as indicated)***

**TO: OMNIS GLOBAL TECHNOLOGIES, LLC. AND PARTIES IN INTEREST:**

NOTICE IS HEREBY GIVEN that TRAG LLC ("Lender") is secured under that Loan and Security Agreement dated as of May 26, 2023 (as amended from time to time, the "Agreement"), wherein OMNIS GLOBAL TECHNOLOGIES, LLC ("Borrower"), OMNIS FUEL TECHNOLOGIES, LLC ("OFT") and QUANTUM PLEASANTS, LLC ("Quantum Pleasants"; and together with Borrower and OFT, the "Omnis Parties;" hereinafter collectively referred to as, "Grantor") granted a security interest in certain Collateral described therein to Lender, as secured party. Pursuant to the California Commercial Code Sections 9610 *et seq*., Lender hereby gives notice to the Omnis Parties and to all other parties who are entitled to notice that, because of defaults under the Agreement, certain collateral (the "Collateral") will be sold privately at one or more sales on or after October 31, 2025 commencing at 10:00 a.m. Pacific Standard Time.

**THE COLLATERAL TO BE SOLD CONSISTS OF ALL OF GRANTORS' RIGHT, TITLE AND INTEREST IN THE FOLLOWING:**

The Collateral shall be sold free and clear of any and all security interests of Lender and any security interest or lien subordinate thereto.

The Collateral is more particularly described in **Exhibit A** attached hereto.

Grantors are entitled to an accounting of the unpaid indebtedness secured by the property that Lender intends to sell. Grantors may request an accounting by contacting the undersigned either by telephone at 858-945-5485 or in writing at the address set forth below.

Date: October 21, 2025

TRAG LLC

DocuSigned by:

By: Ajay Gupta

9D71DF73F8D04AB...

Name: Ajay Gupta
Title: Manager

9051 Mira Mesa Blvd #261229
San Diego, CA 92126

**MAILING LIST**

| | |
|---|---|
| Randall Smith, Chief Financial Officer<br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>OMNIS FUEL TECHNOLOGIES, LLC<br>QUANTUM PLEASANTS, LLC<br>3710 Collins Ferry Road<br>Morgantown, West Virginia 26505<br>E: rsmith@omnisglobaltechnologies.com<br><br>***Article No:*** | Nicholson Thomas<br>Thomas & Associates International Inc.<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067<br>nick@jnicholsonlawgroup.com<br><br>***Article No:*** |
| David Kennedy<br>dkennedy@dkennedylawoffice.com | |
| West Virginia Economic Development Authority<br>Northgate Business Park<br>180 Association Drive<br>Charleston, WV 25311<br><br>***Article No:*** | TYR ENERGY, LLC<br>7500 College Boulevard, Suite 400<br>Overland Park, KS 66210<br><br>***Article No:*** |
| William Herlihy, Spilman Thomas & Battle<br>Joseph Unger<br>300 Kanawha Blvd. East<br>Charleston, WV 25301<br>junger@spilmanlaw.com<br><br>***Article No:*** | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br><br>***Article No:*** |
| Alina Energy | |

# EXHIBIT A

All personal property of Quantum Pleasants, LLC (herein referred to as "Debtor") whether presently existing or hereafter created or acquired, and wherever located, including, but not limited to:

(a) all accounts (including health-care-insurance receivables), chattel paper (including tangible and electronic chattel paper), deposit accounts, documents (including negotiable documents), equipment (including all accessions and additions thereto), financial assets, general intangibles (including patents, trademarks, copyrights, goodwill, payment intangibles, domain names and software), all Intellectual Property, goods (including fixtures), instruments (including promissory notes), inventory (including all goods held for sale or lease or to be furnished under a contract of service, and including returns and repossessions), investment property (including securities and securities entitlements), letter of credit rights, money, and all of Debtor's books and records with respect to any of the foregoing, and the computers and equipment containing said books and records;

(b) any and all cash proceeds and/or noncash proceeds of any of the foregoing, including, without limitation, insurance proceeds, and all supporting obligations and the security therefor or for any right to payment. All terms above have the meanings given to them in the California Uniform Commercial Code, as amended or supplemented from time to time, including revised Division 9 of the Uniform Commercial Code-Secured Transactions; and

(c) any rights, interests, or assets, whether directly or indirectly held, relating to hydrogen conversion, graphite or graphene.

**EXHIBIT C**

**TRAG LLC**

## NOTIFICATION OF DISPOSITION OF COLLATERAL BY PRIVATE SALE

***Via Certified Mail, Return Receipt Requested (and email, as indicated)***

**TO: OMNIS GLOBAL TECHNOLOGIES, LLC. AND PARTIES IN INTEREST:**

NOTICE IS HEREBY GIVEN that TRAG LLC ("Lender") is secured under that Loan and Security Agreement dated as of May 26, 2023 (as amended from time to time, the "Agreement"), wherein OMNIS GLOBAL TECHNOLOGIES, LLC ("Borrower"), OMNIS FUEL TECHNOLOGIES, LLC ("OFT") and QUANTUM PLEASANTS, LLC ("Quantum Pleasants"; and together with Borrower and OFT, the "Omnis Parties;" hereinafter collectively referred to as, "Grantor") granted a security interest in certain Collateral described therein to Lender, as secured party. Pursuant to the California Commercial Code Sections 9610 *et seq*., Lender hereby gives notice to the Omnis Parties and to all other parties who are entitled to notice that, because of defaults under the Agreement, certain collateral (the "Collateral") will be sold privately at one or more sales on or after February 12, 2026 commencing at 10:00 a.m. Pacific Standard Time.

**THE COLLATERAL TO BE SOLD CONSISTS OF ALL OF GRANTORS' RIGHT, TITLE AND INTEREST IN THE FOLLOWING:**

The Collateral shall be sold free and clear of any and all security interests of Lender and any security interest or lien subordinate thereto.

The Collateral is more particularly described in **Exhibit A** attached hereto.

Grantors are entitled to an accounting of the unpaid indebtedness secured by the property that Lender intends to sell. Grantors may request an accounting by contacting the undersigned either by telephone at 858-945-5485 or in writing at the address set forth below.

Date: February 2, 2026

TRAG LLC

DocuSigned by:

By: Ajay Gupta
8D71DE713E8D4AB...
Name: Ajay Gupta
Title: Manager

9051 Mira Mesa Blvd #261229
San Diego, CA 92126

**MAILING LIST**

| | |
|---|---|
| Simon Hodson, Chief Executive Officer<br>Randall Smith, Chief Financial Officer<br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>OMNIS FUEL TECHNOLOGIES, LLC<br>3710 Collins Ferry Road<br>Morgantown, West Virginia 26505<br>E: rsmith@omnisglobaltechnologies.com<br><br>***Article No:*** | Nicholson Thomas<br>Thomas & Associates International Inc.<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067<br>nick@jnicholsonlawgroup.com<br><br>***Article No:*** |
| David Kennedy<br>dkennedy@dkennedylawoffice.com | Herrick Feinstein LLP<br>301 Grant Street, Suite 270<br>Pittsburgh, PA 15219<br>Attn: Megan Thompson and Morris DeFeo<br>mthompson@herrick.com<br>mdefeo@herrick.com |
| West Virginia Department of Commerce<br>Office of Energy<br>1900 Kanawha Boulevard East, Building 3, Suite 800<br>Charleston, WV 25305<br>Attn: Nicholas Preservati<br>nicholas.s.preservati@wv.gov | Bilt Technology LLC<br>Corporation Trust Center<br>1209 Orange Street<br>New Castle, DE 19801<br>Attention: Jamie Majid, CEO, and Ethan Feffer, GC<br>jamie@biltek.com<br>ethan.feffer@bilttek.com |
| West Virginia Economic Development Authority<br>Northgate Business Park<br>180 Association Drive<br>Charleston, WV 25311<br><br>***Article No:*** | TYR ENERGY, LLC<br>7500 College Boulevard, Suite 400<br>Overland Park, KS 66210<br><br>***Article No:*** |
| William Herlihy, Spilman Thomas & Battle Joseph Unger<br>300 Kanawha Blvd.<br>East Charleston, WV 25301<br>junger@spilmanlaw.com<br><br>***Article No:*** | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br><br>***Article No:*** |
| Alina Energy | Harmony Trust |

# EXHIBIT A

All personal property of Quantum Pleasants, LLC (herein referred to as "Debtor") whether presently existing or hereafter created or acquired, and wherever located, including, but not limited to:

(a) all accounts (including health-care-insurance receivables), chattel paper (including tangible and electronic chattel paper), deposit accounts, documents (including negotiable documents), equipment (including all accessions and additions thereto), financial assets, general intangibles (including patents, trademarks, copyrights, goodwill, payment intangibles, domain names and software), all Intellectual Property, goods (including fixtures), instruments (including promissory notes), inventory (including all goods held for sale or lease or to be furnished under a contract of service, and including returns and repossessions), investment property (including securities and securities entitlements), letter of credit rights, money, and all of Debtor's books and records with respect to any of the foregoing, and the computers and equipment containing said books and records;

(b) any and all cash proceeds and/or noncash proceeds of any of the foregoing, including, without limitation, insurance proceeds, and all supporting obligations and the security therefor or for any right to payment. All terms above have the meanings given to them in the California Uniform Commercial Code, as amended or supplemented from time to time, including revised Division 9 of the Uniform Commercial Code-Secured Transactions; and

(c) any rights, interests, or assets, whether directly or indirectly held, relating to hydrogen conversion, graphite or graphene.

**TRAG LLC**

## NOTIFICATION OF DISPOSITION OF COLLATERAL BY PRIVATE SALE

***Via Certified Mail, Return Receipt Requested (and email, as indicated)***

**TO: OMNIS FUEL TECHNOLOGIES LLC. AND PARTIES IN INTEREST:**

NOTICE IS HEREBY GIVEN that TRAG LLC ("Lender") is secured under that Loan and Security Agreement dated as of January 14, 2025 (as amended from time to time, the "Agreement"), wherein Omnis Fuel Technologies LLC ("Borrower"), Omnis Global Technologies, LLC ("OGT"), and Quantum Pleasants, LLC ("QP", together with Borrower and OGT, each an "Omnis Party", and together, the "Omnis Parties"; hereinafter collectively referred to as, "Grantor") granted a security interest in certain Collateral described therein to Lender, as secured party. Pursuant to the California Commercial Code Sections 9610 *et seq*., Lender hereby gives notice to the Omnis Parties and to all other parties who are entitled to notice that, because of defaults under the Agreement, certain collateral (the "Collateral") will be sold privately at one or more sales on or after February 12, 2026 commencing at 10:00 a.m. Pacific Standard Time.

**THE COLLATERAL TO BE SOLD CONSISTS OF ALL OF GRANTORS' RIGHT, TITLE AND INTEREST IN THE FOLLOWING:**

The Collateral shall be sold free and clear of any and all security interests of Lender and any security interest or lien subordinate thereto.

The Collateral is more particularly described in **Exhibit A** attached hereto.

Grantors are entitled to an accounting of the unpaid indebtedness secured by the property that Lender intends to sell. Grantors may request an accounting by contacting the undersigned either by telephone at 858-945-5485 or in writing at the address set forth below.

Date: February 2, 2026

TRAG LLC

DocuSigned by:

By: Ajay Gupta

B07DF73F3004AB...

Name: Ajay Gupta
Title: Manager

9051 Mira Mesa Blvd #261229
San Diego, CA 92126

**MAILING LIST**

| | |
|---|---|
| Simon Hodson, Chief Executive Officer<br>Randall Smith, Chief Financial Officer<br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>OMNIS FUEL TECHNOLOGIES, LLC<br>3710 Collins Ferry Road<br>Morgantown, West Virginia 26505<br>E: rsmith@omnisglobaltechnologies.com<br><br>***Article No:*** | Nicholson Thomas<br>Thomas & Associates International Inc.<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067<br>nick@jnicholsonlawgroup.com<br><br>***Article No:*** |
| David Kennedy<br>dkennedy@dkennedylawoffice.com | Herrick Feinstein LLP<br>301 Grant Street, Suite 270<br>Pittsburgh, PA 15219<br>Attn: Megan Thompson and Morris DeFeo<br>mthompson@herrick.com<br>mdefeo@herrick.com |
| West Virginia Department of Commerce<br>Office of Energy<br>1900 Kanawha Boulevard East, Building 3, Suite 800<br>Charleston, WV 25305<br>Attn: Nicholas Preservati<br>nicholas.s.preservati@wv.gov | Bilt Technology LLC<br>Corporation Trust Center<br>1209 Orange Street<br>New Castle, DE 19801<br>Attention: Jamie Majid, CEO, and Ethan Feffer, GC<br>jamie@biltek.com<br>ethan.feffer@bilttek.com |
| West Virginia Economic Development Authority<br>Northgate Business Park<br>180 Association Drive<br>Charleston, WV 25311<br><br>***Article No:*** | TYR ENERGY, LLC<br>7500 College Boulevard, Suite 400<br>Overland Park, KS 66210<br><br>***Article No:*** |
| William Herlihy, Spilman Thomas & Battle Joseph Unger<br>300 Kanawha Blvd.<br>East Charleston, WV 25301<br>junger@spilmanlaw.com<br><br>***Article No:*** | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br><br>***Article No:*** |
| Alina Energy | Harmony Trust |

# EXHIBIT A

All of Borrower's right, title, and interest in and to the following property: (i) all goods, Accounts, Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, securities accounts, securities entitlements and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; (ii) all Omnis Books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing, and (iii) all Intellectual Property.

**RG ENERGY LLC**

## NOTIFICATION OF DISPOSITION OF COLLATERAL BY PRIVATE SALE

***Via Certified Mail, Return Receipt Requested (and email, as indicated)***

**TO: OMNIS GLOBAL TECHNOLOGIES, LLC. AND PARTIES IN INTEREST:**

NOTICE IS HEREBY GIVEN that RG ENERGY LLC ("Lender") is secured under that Loan and Security Agreement dated as of June 2, 2023 (as amended from time to time, the "Agreement"), wherein OMNIS GLOBAL TECHNOLOGIES, LLC ("Borrower"), OMNIS FUEL TECHNOLOGIES LLC ("OFT") and any Qualified Affiliate that signed a counterpart to the Agreement (any such Qualified Affiliates, together with Borrower and OFT, the "Omnis Parties;" hereinafter collectively referred to as, "Grantor") granted a security interest in certain Collateral described therein to Lender, as secured party. Pursuant to the California Commercial Code Sections 9610 *et seq*., Lender hereby gives notice to the Grantor and to all other parties who are entitled to notice that, because of defaults under the Agreement, certain collateral (the "Collateral") will be sold privately at one or more sales on or after February 12, 2026 commencing at 10:00 a.m. Pacific Standard Time.

**THE COLLATERAL TO BE SOLD CONSISTS OF ALL OF GRANTORS' RIGHT, TITLE AND INTEREST IN THE FOLLOWING:**

The Collateral shall be sold free and clear of any and all security interests of Lender and any security interest or lien subordinate thereto.

The Collateral is more particularly described in **Exhibit A** attached hereto.

Grantors are entitled to an accounting of the unpaid indebtedness secured by the property that Lender intends to sell. Grantors may request an accounting by contacting the undersigned either by telephone at 858-945-5485 or in writing at the address set forth below.

Date: February 2, 2026

RG ENERGY LLC

DocuSigned by:

By: Ajay Gupta
9D71D778B8D04AB...
Name: Ajay Gupta
Title: Manager

9051 Mira Mesa Blvd #261229
San Diego, CA 92126

**MAILING LIST**

| | |
|---|---|
| Simon Hodson, Chief Executive Officer<br>Randall Smith, Chief Financial Officer<br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>OMNIS FUEL TECHNOLOGIES, LLC<br>3710 Collins Ferry Road<br>Morgantown, West Virginia 26505<br>E: rsmith@omnisglobaltechnologies.com<br><br>***Article No:*** | Nicholson Thomas<br>Thomas & Associates International Inc.<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067<br>nick@jnicholsonlawgroup.com<br><br>***Article No:*** |
| David Kennedy<br>dkennedy@dkennedylawoffice.com | Herrick Feinstein LLP<br>301 Grant Street, Suite 270<br>Pittsburgh, PA 15219<br>Attn: Megan Thompson and Morris DeFeo<br>mthompson@herrick.com<br>mdefeo@herrick.com |
| West Virginia Department of Commerce<br>Office of Energy<br>1900 Kanawha Boulevard East, Building 3, Suite 800<br>Charleston, WV 25305<br>Attn: Nicholas Preservati<br>nicholas.s.preservati@wv.gov | Bilt Technology LLC<br>Corporation Trust Center<br>1209 Orange Street<br>New Castle, DE 19801<br>Attention: Jamie Majid, CEO, and Ethan Feffer, GC<br>jamie@biltek.com<br>ethan.feffer@bilttek.com |
| West Virginia Economic Development Authority<br>Northgate Business Park<br>180 Association Drive<br>Charleston, WV 25311<br><br>***Article No:*** | TYR ENERGY, LLC<br>7500 College Boulevard, Suite 400<br>Overland Park, KS 66210<br><br>***Article No:*** |
| William Herlihy, Spilman Thomas & Battle Joseph Unger<br>300 Kanawha Blvd.<br>East Charleston, WV 25301<br>junger@spilmanlaw.com<br><br>***Article No:*** | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br><br>***Article No:*** |
| Alina Energy | Harmony Trust |

# EXHIBIT A

All personal property of Debtor whether presently existing or hereafter created or acquired, and wherever located, including, but not limited to:

(a) all accounts (including health-care-insurance receivables), chattel paper (including tangible and electronic chattel paper), deposit accounts, documents (including negotiable documents), equipment (including all accessions and additions thereto), financial assets, general intangibles (including patents, trademarks, copyrights, goodwill, payment intangibles, domain names and software), all Intellectual Property, goods (including fixtures), instruments (including promissory notes), inventory (including all goods held for sale or lease or to be furnished under a contract of service, and including returns and repossessions), investment property (including securities and securities entitlements), letter of credit rights, money, and all of Debtor's books and records with respect to any of the foregoing, and the computers and equipment containing said books and records;

(b) any and all cash proceeds and/or noncash proceeds of any of the foregoing, including, without limitation, insurance proceeds, and all supporting obligations and the security therefor or for any right to payment. All terms above have the meanings given to them in the California Uniform Commercial Code, as amended or supplemented from time to time, including revised Division 9 of the Uniform Commercial Code-Secured Transactions; and

(c) any rights, interests, or assets, whether directly or indirectly held, relating to hydrogen conversion, graphite or graphene.