**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Omnis Pleasants, LLC, | ) | Case No. 26-11169 (KBO) |
| Debtor.[1] | ) | **Ref. Docket No. 86** |

**ORDER (I) APPROVING AUCTION AND BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS, (II) SCHEDULING CERTAIN DATES AND DEADLINES RELATED THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE BIDDER AND OFFER BID PROTECTIONS RELATED THERETO, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) APPROVING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtor in possession (the "**Debtor**") for entry of an order (this "**Order**"): (a) approving marketing, auction, and bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**") to govern the solicitation and selection of the highest or otherwise best offer for the sale (the "**Sale Transaction**") of all or substantially all of the Debtor's assets (the "**Assets**"), (b) establishing certain dates and deadlines with respect to the marketing and sale of the Assets, (c) authorizing, but not directing, the Debtor to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and offer bid protections related thereto (the "**Bid Protections**"), (d) approving the manner of notice of the Auction (if any) and Sale Transaction, substantially in the form attached hereto as **Exhibit 2**, (e) approving

---

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and service address is One Power Station Boulevard, Belmont, West Virginia 26134.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

procedures for the assumption and assignment of certain executory contracts (the "**Executory Contracts**") and unexpired leases, as applicable (the "**Unexpired Leases**" and together with the Executory Contracts, the "**Contracts**") in connection with the Sale Transaction and approving the manner of notice thereof (the "**Contract Assumption Notice**"), substantially in the form attached hereto as **Exhibit 3**, and (f) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Standing Order; and this Court having found that venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that due and proper notice of the Motion has been given, and that no other or further notice is required or necessary under the circumstances; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon the record in the Chapter 11 Case and the proceedings had before this Court; and this Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT:**

A. Jurisdiction and Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Statutory and Legal Predicates. The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1, and 9006-1(c).

C. Sale Process. The Debtor and its advisors have been engaging with a number of interested parties to solicit and develop the highest or otherwise best offer for the Assets.

D. Bidding Procedures. The Debtor has articulated good and sufficient business reasons for this Court to approve the Bidding Procedures. The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the proceeds from the Sale Transaction. The Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets. The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

E. The Debtor has demonstrated a compelling and sound business justification for this Court to enter this Order and grant the relief set forth herein.

F. Stalking Horse Designation. The Stalking Horse Designation Procedures (as defined herein) and the granting of any Bid Protections are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the Purchase Price of the Bid submitted by the Stalking Horse Bidder and what portion is cash; (c) whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Bid submitted by the Stalking Horse Bidder;

(d) any proposed Bid Protections; (e) the Stalking Horse Agreement; (f) the Assets subject to the Stalking Horse Bid; and (g) the Stalking Horse Objection Deadline.

G. Sale Notice. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide interested parties with timely and proper notice of the Auction (if any) and the proposed Sale Transaction and relevant information related thereto, including: (a) the Bidding Procedures; (b) the date, time, and location of the Auction; (c) the date, time, and location of the Sale Hearing; and (d) the deadline for filing objections to any Sale Transaction and entry of the order approving any Sale Transaction; (e) instructions for obtaining a copy of the Form APA; and (f) a summary of the Sale Transaction terms, including that the Sale Transaction contemplates a transfer of the Assets free and clear of liens, claims, interests, and other encumbrances, with such liens, claims, interests and other encumbrances attaching with the same validity and priority to the Sale proceeds.

H. Contract Assumption Notice. The Contract Assumption Notice, substantially in the form attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures and the proposed assumption and assignment of Contracts in connection with the Sale, as well as any and all objection deadlines related thereto, and no further notice of the Assumption and Assignment Procedures shall be required, except as expressly required herein.

I. Notice. Notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the other relief granted herein, and the hearing regarding the foregoing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances

of the Debtor's Chapter 11 Case, such that no other or further notice of the foregoing need or shall be required or provided except as set forth herein or in the Bidding Procedures or the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled as set forth on the record of the Hearing.

## I. Important Dates and Deadlines.

3. *Bid Deadline*. November 9, 2026 at 4:00 p.m. (prevailing Eastern Time) or, if such date is extended in accordance with the Bidding Procedures, such extended date, is the deadline by which all Qualified Bids must be ***actually received*** by the parties and in the manner prescribed by the Bidding Procedures, which may be extended by the Debtor with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE.

4. *Consultation Parties*. At or prior to the Bid Deadline, each Consultation Party shall file a notice on the docket in the Chapter 11 Case stating whether or not it will submit a Bid, directly or indirectly through an affiliate or a wholly or partially owned direct or indirect subsidiary; *provided* that the submission of a Bid by such Consultation Party shall be deemed to satisfy this notice requirement and no further notice shall be required. If a Consultation Party files a notice on the docket stating that it elects to submit a Bid or submits a Bid (as applicable) then, upon such filing or submission of the Bid (as applicable), such electing Consultation Party shall no longer be a Consultation Party under the Bidding Procedures unless and until such notice or Bid (as applicable) is withdrawn, upon which withdrawal such Consultation Party shall be a

Consultation Party. If any dispute arises between a Consultation Party and the Debtor with respect to such Consultation Party's rights as a Consultation Party under the Bidding Procedures and such dispute cannot be consensually resolved by the parties, such dispute may be brought to the Court's attention by such Consultation Party and/or the Debtor on an emergency basis by letter for resolution.

5. *__Auction__*. The date and time of the Auction, if any, is November 12, 2026 at 10:00 a.m. (prevailing Eastern Time), or, if such date and time is extended in accordance with the Bidding Procedures, such extended date and time as announced by the Debtor. Any extension or other change to the date, time, or format of the Auction shall be made by the Debtor with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE and notice of such extension or other change shall be filed on the docket of the Chapter 11 Case. The Auction will be conducted via remote video, in-person, or hybrid format, at the Debtor's election. Except as otherwise determined by the Debtor, in consultation with the Consultation Parties, only (i) the Debtor, (ii) the Office of the United States Trustee, (iii) the Consultation Parties, (iv) the Qualified Bidders (including, without limitation, any Stalking Horse Bidder which has been approved by this Court (if any)), (v) all creditors who make a written request to the Debtor to attend the Auction (*provided, however,* that any creditor seeking to attend the Auction must submit such written request to the Debtor no later than three (3) business days before the Auction), and (vi) any other parties as the Debtor may determine to include in its reasonable discretion, or as otherwise ordered by this Court, in each case, along with the respective representatives and professionals of the foregoing parties shall be entitled to attend the Auction (such parties in clauses (ii) through (v) collectively, the "**__Auction Parties__**"), and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. Notwithstanding the

foregoing, the Consultation Parties and their respective representatives and professionals may attend the Auction without prior notice to the Debtor or its advisors of their intention to do so.

6. If the Debtor determines, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE, not to conduct an Auction for the Assets, then the Debtor shall file a notice on the docket of the Chapter 11 Case as soon as reasonably practicable after making such determination.

7. *Notice of Successful Bidder*. As soon as reasonably practicable but no later than two (2) calendar days after the Debtor selects a Successful Bidder, the Debtor shall file a notice on the docket of the Chapter 11 Case identifying the Successful Bidder and Successful Bid.

8. *Filing and Service of Sale Notice; Sale Objection Deadline*. The Debtor shall file and serve the Sale Notice no later than three (3) business days after entry of this Order. The Debtor must file the form of Sale Order no later than seven (7) days before the Sale Objection Deadline. Objections, if any, to the Sale Transaction shall be filed, in the form provided for herein, by **4:00 p.m. (prevailing Eastern Time) on November 2, 2026** (the "**Sale Objection Deadline**"); *provided, however*, that objections solely to (y) the conduct of the Auction, or (z) to the extent any Stalking Horse Bidder designated pursuant to the Bidding Procedures prior to the Assumption and Assignment Service Deadline is not the Successful Bidder or no Stalking Horse Bidder is designated prior to the Assumption and Assignment Service Deadline, (i) the identity of the Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contracts that are to be potentially assumed and assigned in connection with the proposed Sale Transaction, shall be made no later than at the Sale Hearing (the "**Auction Results Objection Deadline**"). Objections to the approval of the Sale Transaction

must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on the following parties (collectively, the "**Notice Parties**"):

a. counsel to the Debtor, Young Conaway Stargatt & Taylor, LLP ("**YCST**"), Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), and S. Alexander Faris (afaris@ycst.com);

b. counsel to TRAG/RGE, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020, Attn: Kristine Manoukian (kristine.manoukian@us.dlapiper.com); 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: R. Craig Martin (craig.martin@us.dlapiper.com); and 500 Eighth Street NW, Washington, DC 20004, Attn: Erik F. Stier (erik.stier@us.dlapiper.com); and

c. the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801 Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov).

Any party or entity who fails to timely make an objection to the Sale Transaction on or before the Sale Objection Deadline or the Auction Results Objection Deadline, as applicable, shall be forever barred from asserting an objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests and the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contracts that are to be potentially assumed and assigned in connection with the proposed Sale Transaction.

9. *Sale Hearing*. November 18, 2026 at 10:00 a.m. (prevailing Eastern Time) is the date and time for the hearing for this Court to consider approval of the Sale Transaction and the Successful Bid and entry of the Sale Order, which shall be in form and substance reasonably acceptable to TRAG/RGE.

10. The dates and deadlines set forth in this Order are subject to modification by the Debtor with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of TRAG/RGE in accordance with the Bidding Procedures.

## II. Auction, Bidding Procedures and Related Relief.

11. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1,** are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures with the goal of attaining the highest or otherwise best offer for the Debtor's Assets. Subject to the terms of the Bidding Procedures, the Debtor may, with the consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Consultation Parties, modify the Bidding Procedures as necessary or appropriate to maximize value for its estate. All rights of the Debtor, as it may reasonably determine to be in the best interests of its estate, to (i) modify the Bidding Procedures in good faith, (ii) further the goal of attaining the highest or otherwise best offer for the Assets, or (iii) impose, upon or prior to the selection of the Successful Bidder additional customary terms and conditions on the Sale, are reserved to the extent set forth in the Bidding Procedures. Notwithstanding the foregoing, the Debtor shall not amend or modify the Bidding Procedures, this Order, or the bidding process in a manner that reduces, eliminates, or otherwise modifies the Debtor's obligations to consult with or obtain the consent of the Consultation Parties, or that alters, limits, or imposes additional burdens on the rights of TRAG/RGE, without the prior written consent of TRAG/RGE.

12. Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtor or its agent in accordance with the Bidding Procedures, and shall not become property of the Debtor's bankruptcy estate unless and until released from escrow

to the Debtor pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

13. Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction and the Auction shall be conducted openly and the Auction shall be transcribed or videotaped, as set forth in the Bidding Procedures.

14. Other than any Bid Protections approved for a Stalking Horse Bidder in connection with a Stalking Horse Bid, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment in connection with any Sale Transaction, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any other fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise. Any Bid Protections approved by this Court shall be payable, solely in the event of consummation of a Sale Transaction to a Bidder other than the Stalking Horse Bidder, solely from the cash proceeds of the alternative transaction giving rise thereto, at the closing thereof, and shall not be payable from, or secured by any lien on, the collateral of TRAG/RGE or the proceeds thereof.

## III. Stalking Horse Bidders and Stalking Horse Bid Protections

15. The Debtor, upon entry of this Order, shall be authorized, but not obligated, in an exercise of its reasonable business judgment, following consultation with the Consultation Parties, to (a) designate a Stalking Horse Bidder, (b) enter into a Stalking Horse Agreement, and (c) agree to any Bid Protections for the Stalking Horse Bidder subject to further Court approval, in each case, any time prior to the Stalking Horse Supplement Deadline (as defined below) in accordance with the following procedures (the "**Stalking Horse Designation Procedures**"):

a. The Debtor may, at any time prior to the Stalking Horse Supplement Deadline (as defined below), designate a stalking horse bidder (the "**Stalking Horse Bidder**"), whose Qualified Bid (as defined below), subject to the entry of the Stalking Horse Approval Order (as defined below), shall serve as the stalking horse bid (the "**Stalking Horse Bid**") and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (in form and substance reasonably acceptable to TRAG/RGE, the "**Stalking Horse Agreement**"), including any bid protections (the "**Bid Protections**"), will be binding on the Debtor and the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction.

b. To obtain entry of a Stalking Horse Approval Order, the Debtor is authorized to file a notice (the "**Stalking Horse Supplement**") on or prior to October 22, 2026 (the "**Stalking Horse Supplement Deadline**"). Such Stalking Horse Supplement will be served on (i) the office of the United States Trustee, (ii) the Consultation Parties, (iii) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Case, (iv) ReliabilityFirst Corporation, (v) North American Electric Reliability Corporation, (vi) the United States Environmental Protection Agency, (vii) West Virginia Department of Environmental Protection, (viii) West Virginia Economic Development Authority, (ix) the Federal Energy Regulatory Commission, (x) all environmental authorities having jurisdiction over the Plant, (xi) counterparties to all PJM, interconnection, energy management, fuel, lime, environmental, rail/barge/transportation, landfill/CCR, hedging, and operating contracts, and (xii) the Debtor's insurance carriers and sureties (those parties listed in clauses (i) through (xii), collectively, the "**Stalking Horse Notice Parties**"), with no further notice being required. The Debtor shall submit with the Stalking Horse Supplement a proposed form of order (in form and substance reasonably acceptable to TRAG/RGE, the "**Stalking Horse Approval Order**") approving the Debtor's designation of the Stalking Horse Bidder, the Stalking Horse Bid, the Stalking Horse Agreement, and any Bid Protections afforded to the proposed Stalking Horse Bidder.

c. Any Stalking Horse Supplement shall (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor), (ii) set forth the Purchase Price of the Bid submitted by the Stalking Horse Bidder and what portion is cash, (iii) state whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Bid submitted by the Stalking Horse Bidder, (iv) specify any proposed Bid Protections (including the amount and calculation thereof), (v) specify which Assets the Bid submitted by the Stalking Horse Bidder includes, (vi) attach the Stalking Horse Agreement, and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. The Stalking Horse Supplement shall set forth the reasons the Debtor believes any Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. For the avoidance of doubt, nothing in

this Order is: (a) shifting the burden of proof under applicable bankruptcy law with respect to the approval of any Bid Protections; (b) authorizing the Debtor to propose or award any Bid Protections related to a credit bid; or (c) approving any Bid Protections.

d. Objections to the designation of any Stalking Horse Bidder or any of the terms of any Stalking Horse Bid (a "**Stalking Horse Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court no later than five (5) calendar days after the service of any such Stalking Horse Supplement (the "**Stalking Horse Objection Deadline**") and be served on the Stalking Horse Notice Parties and Debtor's Counsel. If no Stalking Horse Objection is timely filed with respect to the Stalking Horse Bid in accordance with these Stalking Horse Designation Procedures, the Court may enter the proposed Stalking Horse Approval Order without further notice or a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.

e. Any Stalking Horse Agreement executed by the Debtor and the Sale Transaction contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

## IV. Assumption and Assignment Procedures.

16. The procedures set forth below (the "**Assumption Procedures**") regarding the assumption and assignment of the Executory Contracts and Unexpired Leases proposed to be assumed by the Debtor pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale Transaction are hereby approved to the extent set forth herein. These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtor's Executory Contracts and Unexpired Leases to be assumed and assigned in connection with the Sale Transaction under a purchase agreement (including a Stalking Horse Agreement), subject to the payment of any amount necessary pursuant to section 365 of the Bankruptcy Code or otherwise to cure all existing and continuing defaults under the applicable Executory Contract or Unexpired

Lease (the foregoing amounts as stated in the Contract Assumption Notice, the "**Cure Payments**"):

a. **Contract Assumption Notice**. No later than September 29, 2026 at 4:00 p.m. (ET), (the "**Assumption and Assignment Service Deadline**"), the Debtor shall file on the docket of the Chapter 11 Case and serve a notice of potential contract assumption and assignment (the "**Contract Assumption Notice**"), in substantially the form attached hereto as **Exhibit 3**, via first class mail on the counterparties to such Contracts (the "**Contract Counterparties**"). The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Contract to be potentially assumed and assigned; (ii) the name of the counterparty to the Contract; (iii) the Debtor's good faith estimates of the Cure Payments, if any, required in connection with the potential assumption and assignment of the Contract, as of the date of the Cure notice; and (iv) the deadline to object to the proposed Cure Payment, the potential assumption and assignment of such Contract, and the ability of the Stalking Horse Bidder (if any Stalking Horse Bidder has been designated by the Assumption and Assignment Service Deadline) to provide adequate assurance of future performance under such Contract (the "**Contract Objection Deadline**"), which objection deadline shall be fourteen (14) days after service of the Contract Assumption Notice or a Supplemental Assumption Notice (defined below); provided, however, that service of the Contract Assumption Notice or a Supplemental Assumption Notice does not constitute an admission that any Contract listed thereon is an executory contract or unexpired lease or that such stated Cure Payment constitutes a claim against the Debtor or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a Contract on the Contract Assumption Notice or a Supplemental Assumption Notice is not a guarantee that such Contract will ultimately be assumed and assigned.

b. **Cure Payments**. The payment of the applicable Cure Payments by the Debtor and/or the Successful Bidder (including a Stalking Horse Bidder (if any) which has been approved by this Court), as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Contracts by the Debtor and the assignment of such Contracts to the Successful Bidder, constitute adequate assurance of future performance thereof.

c. **Supplemental Contract Assumption Notice**. To the extent the Debtor, at any time after the Assumption and Assignment Service Deadline (i) identifies additional Contracts that may be assumed by and assigned to the Successful Bidder (including a Stalking Horse Bidder (if any) which has been approved by this Court), or (ii) modifies the previously stated Cure Payment associated with

any Contract, the Debtor will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the Contract Counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Contracts as was included in the Contract Assumption Notice.

d. **Contract Objections**. Objections, if any, to the potential assumption and assignment of the Contracts, the proposed Cure Payments proposed with respect thereto, and the ability of the Stalking Horse Bidder (if any Stalking Horse Bidder has been designated by the Assumption and Assignment Service Deadline) to provide adequate assurance of future performance under such Contract (such objections, the "**Contract Objections**"), must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed on the docket of the Chapter 11 Case and served upon the Notice Parties, so as actually to be received on or before the Contract Objection Deadline or the deadline set forth in the Supplemental Assumption Notice, as applicable. Contract Objections will be heard at the Sale Hearing, unless adjourned as provided for herein.

e. **Adequate Assurance Objections**. To the extent any Stalking Horse Bidder designated pursuant to the Bidding Procedures prior to the Assumption and Assignment Service Deadline is not the Successful Bidder or no Stalking Horse Bidder is designated prior to the Assumption and Assignment Service Deadline, objections, if any, to the Successful Bidder's provision of adequate assurance of future performance with respect to any Contracts that are to be potentially assumed and assigned in connection with the proposed Sale Transaction shall be made by the Auction Results Objection Deadline as provided for in paragraph 8 of this Order; *provided*, *however*, that if any Stalking Horse Bidder has been designated by the Assumption and Assignment Service Deadline, any objections to the ability of the Stalking Horse Bidder to provide adequate assurance of future performance under such Contracts shall be made by the Contract Objection Deadline as provided for in this paragraph 16.

f. **Dispute Resolution**. In the event that the Debtor and a Contract Counterparty cannot resolve an objection to a Cure Payment, the Contract at issue may be assumed by the Debtor and assigned to the Successful Bidder, provided that the Debtor shall segregate the disputed Cure Payment amount, pending resolution by the Court or mutual agreement of the parties. Any objection to the proposed assumption and assignment of a Contract or related Cure Payment proposed in connection with the Sale Transaction that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the

> Court). Notwithstanding the foregoing, in accordance with the terms of this Order, the Debtor may, in its sole discretion and in consultation with the Consultation Parties and the Successful Bidder, adjourn Contract Objections to a later hearing and assign to the Successful Bidder other proposed Contracts to be assumed and assigned while such objections remain outstanding.

17. Any party failing to timely file a Contract Objection or an objection with respect to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contracts that are to be potentially assumed and assigned in connection with the proposed Sale Transaction is deemed to have consented to (a) the proposed Cure Payment, (b) the potential assumption and assignment of such Contract, and (c) such adequate assurance of future performance. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Contracts, and adequate assurance of future performance, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtor and the Successful Bidder with respect to such party's Contract.

18. To the extent the Debtor seeks to assume and assign a Contract in connection with a Sale Transaction (an "**Assumed Contract**," and the counterparty to such Assumed Contract, the "**Assumed Contract Counterparty**"), the Debtor shall, at the request of the Assumed Contract Counterparty, provide evidence to such Assumed Contract Counterparty that the Successful Bidder for the Contract has the ability to comply with the requirements of adequate assurance of future performance on a confidential basis. All Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to counsel for the Assumed Contract Counterparties via email with such information to be used only for the purpose of assessing the applicable Bidder and objection to adequate assurance; *provided*, that any

such Assumed Contract Counterparty shall use best efforts to maintain the confidentiality of such information, including by filing the relevant portions of such objection under seal.

**V. Miscellaneous.**

19. The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

20. To the extent any dates or deadlines set forth herein are modified pursuant to this Order or the Bidding Procedures, and such modification is inconsistent with the requirements of Local Rule 9006-1, such requirements shall be deemed satisfied.

21. Notwithstanding anything to the contrary in the Bidding Procedures or any document filed with or entered by this Court, nothing in this Order or the Bidding Procedures shall require the Debtor, its sole Director and Independent Manager, or similar governing body of the Debtor to take any action, or to refrain from taking any action, with respect to the Bidding Procedures or the Sale Transaction, if the sole Director and Independent Manager, or similar governing body reasonably determines in good faith, after consultation with their outside counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, *however*, that the Debtor shall provide the Consultation Parties with notice of such action or inaction within two (2) Business Days of such action or inaction.

22. In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects. In the event of any inconsistencies between this Order and the Bidding Procedures, the Bidding Procedures shall govern in all respects.

23. All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion and (b) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters. All actions by the Debtor necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and to implement the Bidding Procedures are hereby authorized.

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26. The Debtor is authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of this Court, including, without limitation, changes to correct typographical and grammatical errors; *provided* that such changes are reasonably acceptable to TRAG/RGE.

27. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

28. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Ka B. O

**Dated: September 14th, 2026**
**Wilmington, Delaware**

**KAREN B. OWENS**
**CHIEF JUDGE**

60478352.6