**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OMNIS PLEASANTS, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11169 (KBO)<br><br>**Related D.I.: 17, 50** |

# SECOND INTERIM ORDER (I) AUTHORIZING POSTPETITION USE OF PREPETITION COLLATERAL, INCLUDING CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of Omnis Pleasants, LLC (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case, seeking entry of an interim order and a final order (the "Final Order") pursuant to sections 105, 361, 362, 363, 503, 506, 507, 510, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*:

(a) authorizing the Debtor's use of Prepetition Collateral and the Prepetition Secured Parties' Cash Collateral (each as defined herein), subject to the terms of the First Interim Order (as defined herein) and this second interim order (this "Second Interim Order" and together with the First Interim Order, the "Interim Orders"), and granting adequate protection to the Prepetition Secured Parties, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, for any diminution in value of their interests in the Prepetition Collateral (as defined herein);

(b) vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof, to the extent necessary to implement and effectuate the terms and provisions of the Interim Orders;

[1] The last four digits of Omnis Pleasants, LLC's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia 26134.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings assigned in the Motion.

(c) subject to entry of the Final Order, waiving (i) all rights to surcharge any Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law and (ii) the applicability of the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(d) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to consider approval of the relief sought in the Motion on a final basis pursuant to the Final Order; and

(e) granting related relief, all as more fully set forth herein;

and an initial hearing on the Motion having been held by this Court on July 29, 2026 (the "Interim Hearing"); and this Court having previously entered an interim order approving the use of cash collateral on July 29, 2026 [Docket No. 50] (the "First Interim Order"); and this Court having considered the Motion, the First Day Declaration, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and due and proper notice of the Motion and the Interim Hearing having been given in accordance with the Bankruptcy Rules and the Local Rules; and such notice having complied with the requirements of the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion on an interim basis having been withdrawn, resolved, or overruled by this Court; and it appearing that granting the relief requested in the Motion on an interim basis is essential to enable the Debtor to operate its business, fund this chapter 11 case and preserve the value of the Debtor and its estate, and otherwise is fair and reasonable, in the best interests of the Debtor, its estate, creditors, and other parties in interest; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. *Petition Date*. On July 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B. *Debtor in Possession*. The Debtor continues to manage and operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case, and no official committee of unsecured creditors (a "Committee") has been appointed in this chapter 11 case pursuant to section 1102 of the Bankruptcy Code.

C. *Jurisdiction and Venue*. This Court has jurisdiction over this matter, this proceeding, and the persons and property affected hereby under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent under Local Rule 9013-1(f) to the entry of a final order by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for this chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409.

D. *Debtor's Stipulations*. In requesting the use of Prepetition Collateral and in exchange for and as a material inducement to the consent of the Prepetition Secured Parties (as

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

defined herein) to the use of their Prepetition Collateral and subject only to the challenge rights set forth in paragraph 4 below, the Debtor, for itself, its estate, and all representatives of such estate, acknowledges, represents, admits, stipulates, and agrees as follows (collectively, the "Debtor's Stipulations"):

(i) *Cash Collateral*. Any and all cash of the Debtor, including cash, cash equivalents and other amounts on deposit or maintained in the Debtor's accounts, negotiable instruments, investment property and securities, cash generated from the sale of energy and capacity, any amounts generated by the collection of the Debtor's accounts receivable, and any proceeds of the Prepetition Collateral (as defined below), wherever located, arising or acquired from and after the Petition Date, together with all proceeds of any of the foregoing, constitute the Prepetition Secured Parties' Collateral and cash collateral within the meaning of section 363(a) of the Bankruptcy Code to the extent provided in Section 6 of the Interim Orders (such collateral, the "Cash Collateral"). The Debtor is not able to use the Cash Collateral without the Prepetition Secured Parties' consent or this Court's authorization after notice and a hearing pursuant to section 363(c)(2) of the Bankruptcy Code. The Prepetition Secured Parties are willing to consent to the Debtor's use of the Cash Collateral, expressly limited to, and conditioned upon, the terms and conditions specified in the Interim Orders. The Prepetition Secured Parties assert that any and all cash of the Debtor, including cash, cash equivalents and other amounts on deposit or maintained in the Debtor's accounts, negotiable instruments, investment property and securities, cash generated from the sale of energy and capacity, any amounts generated by the collection of the Debtor's accounts receivable, and any proceeds of the Prepetition Collateral, wherever located, arising prior to the Petition Date, together with all proceeds of any of the foregoing, constitute the

Prepetition Secured Parties' Collateral, including cash collateral within the meaning of section 363(a) of the Bankruptcy Code.

(ii) *Prepetition Credit Documents*. Prior to the Petition Date, the Debtor and/or certain of its affiliates, as applicable, were party to, among other things: (a) that certain Loan and Security Agreement, dated as of May 26, 2023, by and among TRAG LLC ("TRAG"), as lender, Omnis Global Technologies, LLC ("Omnis Global"), as borrower, and Omnis Fuel Technologies, LLC ("Omnis Energy") and Quantum Pleasants LLC ("Quantum"), each as an obligor and grantor of a security interest thereunder, as amended by that certain Amendment No. 1, dated June 30, 2023, that certain Amendment No. 2, dated July 9, 2024, and that certain Amendment No. 3, dated August 1, 2024, and as further amended by the Forbearance Agreement (as defined below) (as may be further amended, restated, supplemented, or otherwise modified from time to time, the "May 2023 Loan Agreement"); (b) that certain Intellectual Property Security Agreement, dated as of May 26, 2023, by and between TRAG, as secured party, and Omnis Advanced Technologies, LLC ("Omnis Advanced" and collectively with Omnis Global, Omnis Energy, and Quantum, the "Omnis Parties"), as grantor (as has been, and as may be further, amended, restated, supplemented, or otherwise modified from time to time, the "TRAG IPSA"); (c) that certain Loan and Security Agreement, dated as of June 2, 2023, by and among RG Energy LLC ("RGE"), as lender, Omnis Global, as borrower, and Omnis Energy and any Qualified Affiliate (as defined therein) party thereto, each as an obligor and grantor of a security interest thereunder, as amended by that certain Amendment No. 1, dated June 30, 2023 and that certain Amendment No. 2, dated July 9, 2024, and as further amended by the Forbearance Agreement (as may be further amended, restated, supplemented or otherwise modified from time to time, the "June 2023 Loan Agreement"); (d) that certain Intellectual Property Security Agreement, dated as of June 2, 2023,

by and between RGE, as secured party, and Omnis Advanced, as grantor (as has been, and as may be further, amended, restated, supplemented or otherwise modified from time to time, the "RGE IPSA"); (e) that certain Loan and Security Agreement, dated as of November 8, 2023, by and among TRAG, as lender, Omnis Energy, as borrower, and Omnis Global and any Qualified Affiliate (as defined therein) party thereto, each as a party thereto (as may be further amended, restated, supplemented or otherwise modified from time to time, the "November 2023 Loan Agreement"); (f) that certain Loan and Security Agreement, dated as of January 14, 2025, by and among TRAG, as lender, Omnis Energy, as borrower, and Omnis Global and Quantum, each as an obligor and grantor of a security interest thereunder, as amended by the Forbearance Agreement (as may be further amended, restated, supplemented or otherwise modified from time to time, the "January 2025 Loan Agreement"); (g) that certain Secured Promissory Note, dated as of March 31, 2025, made by Omnis Energy, as borrower, and Omnis Global, and Quantum, each as an obligor, in favor of TRAG, as lender, as amended by the Forbearance Agreement (as may be further amended, restated, supplemented or otherwise modified from time to time, the "March 2025 Note"); and (h) that certain Amended and Restated Forbearance Agreement, dated as of February 6, 2026, by and among TRAG and RGE, each as a lender, and Omnis Global, Omnis Energy, Quantum, and the Debtor, each as an obligor thereunder and, in the case of the Debtor, as grantor of a first-priority security interest in all of its property and assets, including the Pleasants Power Station[4] located at One Power Station Boulevard, Belmont, West Virginia (the "Power Plant") (the "Forbearance Agreement" and, together with each of the foregoing and all related security agreements, collateral agreements, pledge agreements, control agreements, deeds of trust,

[4] "Pleasants Power Station" includes a two-unit, 1,278-megawatt coal-fired power plant, together with related buildings, facilities, electrical generation infrastructure, and transmission powerlines, situated on approximately 190 acres of real property in Belmont, West Virginia.

assignments, financing statements and guarantees, and other related documents, the "Prepetition Credit Documents"). TRAG and RGE are referred to herein collectively as the "Prepetition Secured Parties" and the loans and other credit accommodations extended under the Prepetition Credit Documents are referred to herein collectively as the "Prepetition Credit Facility." Each of the Prepetition Credit Documents to which the Debtor is a party is valid, binding, non-voidable, and enforceable against the Debtor in accordance with its terms.

(iii) *Prepetition Secured Obligations*. As of the Petition Date, under the Prepetition Credit Documents, the Prepetition Secured Parties are owed, without defense, counterclaim, or offset of any kind, over $80 million plus all other debts, liabilities, fees, costs, expenses, penalties, premiums, indemnities and other charges owing under or in connection with the Prepetition Credit Documents (collectively, the "Prepetition Secured Obligations"), and pursuant to the Forbearance Agreement, the Debtor has pledged all of its property and assets to secure the Prepetition Secured Obligations. The Prepetition Secured Obligations and the Prepetition Credit Documents constitute (1) the legal, valid, binding, enforceable, and non-avoidable obligations and agreements, enforceable in accordance with their terms; and (2) allowed claims under sections 502, 506 and 1111(b) of the Bankruptcy Code. The Prepetition Liens (as defined below), the Prepetition Secured Obligations, and all payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition Secured Parties by or on behalf of the Debtor prior to the Petition Date under or in connection with the Prepetition Credit Facility are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, nature, or description pursuant to the Bankruptcy Code or other applicable law.

(iv) *Prepetition Liens and Prepetition Collateral*. To secure the Prepetition Secured Obligations, the Debtor granted to the Prepetition Secured Parties valid, binding, non-avoidable, properly perfected and enforceable first-priority liens on and security interests (collectively, the "Prepetition Liens") in all property and assets of the Debtor, whether now owned or hereafter acquired, wherever located, including, without limitation, the Power Plant, all personal property, fixtures, real property interests, leasehold interests, mineral rights, accounts, chattel paper (tangible and electronic), documents, books and records (whether intangible, electronic, or any other form), equipment, commercial tort claims, general intangibles (including payment intangibles and software), other tangible and intangible property, goods, instruments, inventory, letter of credit rights, supporting obligations, and all accessions, additions, attachments, replacements, substitutions, and upgrades to any of the foregoing, and all proceeds, products, rents, issues, profits, returns, income, distributions, and other rights arising out of or relating to any of the foregoing (including insurance, indemnities, warranties, and claims for loss or damage) (collectively, the "Prepetition Collateral").

(v) The Prepetition Liens were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and in consideration for, among other things, the loans extended by the Prepetition Secured Parties under the Prepetition Credit Documents, the proceeds of which were used to acquire, and to fund and support the operations of, the Power Plant. The Prepetition Liens (A) are valid, binding, enforceable and non-avoidable, properly perfected, liens on and security interests in the Prepetition Collateral, (B) are not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, attack, setoff, offset, recoupment, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code), impairment, or any other

challenge of any kind, (C) are subject and/or subordinate only to those other valid, properly perfected, and unavoidable senior priority liens and security interests existing as of the Petition Date securing valid, binding and unavoidable debt permitted under the Prepetition Credit Documents or arising by operation of an applicable statute, including any such liens in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Permitted Encumbrances"), and (D) constitute the legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Credit Documents.

(vi) *Validity of Prepetition Secured Obligations*. The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtor to the extent set forth in the Forbearance Agreement, and under section 1111(b) of the Bankruptcy Code (as applicable), enforceable in accordance with their respective terms, and no portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations owing under the Prepetition Credit Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, setoff, offset, subordination (whether equitable, contractual, or otherwise), recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502, 506 and 1111(b) of the Bankruptcy Code.

(vii) *No Control*. None of the Prepetition Secured Parties controls (or has in the past controlled) the Debtor or its properties or operations, has authority to determine the manner

in which the Debtor's operations are conducted, or is a control person or insider of the Debtor or any of its affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Orders, the Prepetition Credit Documents, or the Prepetition Credit Facility. None of Prepetition Secured Parties shall (a) have liability to any third party or be deemed to be in control of the Debtor's operations or to be acting as a "controlling person," "responsible person," or "owner" or "operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, is used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. (as amended, "CERCLA"), or any other federal or state statute) or (ii) owe any fiduciary duty to the Debtor, its creditors or its estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor.

(viii) *No Claims Against Prepetition Secured Parties*. The Debtor holds no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind (including any challenge, avoidance, disallowance, disgorgement, recharacterization, or subordination) against any of the Prepetition Secured Parties and/or with respect to the Collateral, in each case, arising out, relating to, or in connection with the Debtor and/or any of the Prepetition Credit Documents and/or the transactions contemplated thereunder. The Debtor and the Debtor's estate, on behalf of itself and its past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby unconditionally, irrevocably, and fully forever waives, discharges and releases any and all claims, counterclaims, causes of action, defenses, or setoff rights against each of the Prepetition Secured Parties, and each of their respective former, current or future officers, directors, employees, agents, sub-agents, representatives, owners, members, partners, attorneys, consultants, advisors, affiliates and

predecessors in interest, and the Collateral, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, and whether arising at law or in equity, under tort (including lender liability) or contract, including recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, relating to, or in connection with the Debtor and/or any of the Prepetition Credit Documents and/or the transactions contemplated thereunder.

E. *Adequate Protection for the Prepetition Secured Parties*. The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Collateral, the imposition of the automatic stay, the consent to the Carve-Out to the extent set forth herein, and any other act or omission which may cause diminution in the value of their rights or interests in the Collateral (collectively, the "Diminution in Value"). As adequate protection for such Diminution in Value, the Prepetition Secured Parties will receive the adequate protection described in the Interim Orders. In exchange for such adequate protection, the Prepetition Secured Parties have consented to the Debtor's use of the Prepetition Collateral, solely on the terms and conditions set forth in the Interim Orders. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by section 363 and all other relevant provisions of the Bankruptcy Code and are necessary to obtain such consent. The terms of the proposed adequate protection arrangements and of the use of the Collateral are fair and reasonable, reflect the Debtor's prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Collateral. The Prepetition Secured Parties reserve the right to seek additional adequate protection beyond the

adequate protection provided in the Interim Orders, and nothing in the First Interim Order, this Second Interim Order, or otherwise shall be deemed or construed to limit, impair or otherwise prejudice the Prepetition Secured Parties' rights to seek and/or obtain such other or additional adequate protection or any other relief during this chapter 11 case.

F. *Good Cause*. The Debtor has requested immediate entry of this Second Interim Order under Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2. Good cause has been shown for immediate entry of this Second Interim Order, and the entry of this Second Interim Order is in the best interests of the Debtor, its estate, and its stakeholders.

G. *Good Faith*. The terms of the Collateral, including Cash Collateral arrangement described in the Interim Orders are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The Debtor's use of the Collateral, including Cash Collateral in accordance with the terms of the Interim Orders has been negotiated in good faith and at arm's length among the Debtor and the Prepetition Secured Parties, and the consent of the Prepetition Secured Parties to the Debtor's use of Collateral, including Cash Collateral in accordance with the terms hereof shall be deemed to have been made in "good faith." Accordingly, the Prepetition Secured Parties' claims, superpriority claims, replacement liens, and other protections granted pursuant to this Second Interim Order will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Second Interim Order, solely to the extent such claims, superpriority claims, replacement liens, and other protections exist as of the date of any such subsequent reversal, modification, vacatur, amendment, re-argument, or reconsideration, unless such authorization(s) or the granting of such priority or lien(s) were stayed pending appeal.

H. *Necessity for Relief Requested; Immediate and Irreparable Harm*. The Debtor's business is the ownership and operation of the Pleasants Power Station, an electric generating facility located at One Power Station Boulevard, Belmont, West Virginia. The Debtor has an immediate need to use the Collateral to, among other things, preserve and maximize the value of the Debtor's assets, absent which immediate and irreparable harm will result to the Debtor, its estate, and its creditors. The preservation and maintenance of the Debtor's assets and business are necessary and appropriate to maximize value available for distribution to creditors. Absent the Debtor's ability to use Collateral, the Debtor would not have any available sources of working capital and would be unable to pay its operating expenses or maintain its assets, to the detriment of the Debtor's estate and creditors. Additionally, the use of Collateral avoids the immediate need for the Debtor to obtain postpetition financing, which would require the Debtor to, among other things, incur fees in connection with such financing and otherwise would result in additional expense for the Debtor and its estate. The Prepetition Secured Parties and the Debtor have negotiated at arm's length and in good faith regarding the Debtor's use of Collateral during the pendency of this chapter 11 case. Accordingly, this Court finds that entry of this Second Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate, is critical to the Debtor's ability to maximize the value of its estate, is in the best interests of the Debtor's estate, and is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets and properties.

I. *Proper Exercise of Business Judgment; Arm's-Length, Good-Faith Negotiations*. Based on the Motion, the First Day Declaration, and the record presented to this Court at the Interim Hearing, (i) the terms of adequate protection to be granted to the Prepetition Secured Parties hereunder, (ii) the terms on which the Debtor may continue to use Prepetition Collateral as

reflected herein, and (iii) the Collateral arrangements described herein pursuant to this Second Interim Order, in each case: (a) are fair, reasonable, and the best available to the Debtor under the circumstances; (b) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties; and (c) are supported by reasonably equivalent value and fair consideration. The use of Prepetition Collateral was negotiated in good faith and at arm's length among the Debtor and the Prepetition Secured Parties.

J. *Consent by Prepetition Secured Parties*. The Prepetition Secured Parties have consented to the Debtor's use of Prepetition Collateral, including Cash Collateral, in accordance with and subject to the terms and conditions provided for in the Interim Orders.

K. *Notice*. In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier, or hand delivery, to certain parties-in-interest, including: (i) the Office of the U.S. Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the entities appearing on the Debtor's list of thirty (30) largest unsecured creditors; (iii) the Prepetition Secured Parties and their counsel; (iv) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (vi) the Securities and Exchange Commission; (vii) the West Virginia Economic Development Authority (the "WVEDA"); (viii) Bilt Technology LLC; (ix) the Federal Energy Regulatory Commission; (x) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Prepetition Collateral; and (xi) those persons who have formally appeared in this chapter 11 case and requested service under Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The notice given by the Debtor of the Motion, the relief requested therein, and of the Interim Hearing complies with the requirements of the Bankruptcy Rules and the Local Rules.

The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Second Interim Order to be granted with immediate effect, and no other or further notice is required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. Motion Granted. The Motion is **GRANTED** on an interim basis to the extent provided herein. Any objection to the Motion, to the extent not withdrawn, waived, or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice. This Second Interim Order shall become effective immediately upon its entry.

2. Authorization to Use Collateral. The Debtor is authorized on an interim basis to use the Collateral subject to compliance with the Approved Budget (as defined below) and the Interim Orders during the period commencing on the date of entry of the First Interim Order through the Termination Date (as defined below), in an amount not to exceed at any time the aggregate amount of disbursements projected in the Approved Budget, subject to the Permitted Variances (as defined herein) and the other terms of paragraph 3(e) hereof, from the Petition Date through the date of measurement, or such other amounts as may be agreed to in writing by the Prepetition Secured Parties.

3. Budget.

(a) Subject to the other provisions of the Interim Orders, the Debtor may use the Collateral subject to compliance with the budget annexed hereto as **Exhibit 1** (as the same may be updated from time to time with the prior written consent of the Prepetition Secured Parties, the "Approved Budget"), in the amounts and during the periods in which such expenses are

projected in the Approved Budget to be paid, subject to the Permitted Variances and the other terms of paragraph 3(e) hereof.

(b) Commencing on August 3, 2026, by no later than 5:00 p.m. (prevailing Eastern Time), and every 28 calendar days thereafter, the Debtor shall deliver to the Prepetition Secured Parties a revised budget updating the budget line items for the 13-week period following delivery of such revised budget (each, a "Proposed Budget"), which Proposed Budget shall be in form and substance acceptable to the Prepetition Secured Parties. If the Prepetition Secured Parties approve the Proposed Budget in writing (with email from counsel to the Prepetition Secured Parties being sufficient), then such Proposed Budget shall be deemed the Approved Budget for the period covered. If the Prepetition Secured Parties do not approve the Proposed Budget in writing, then the Approved Budget shall continue in effect and remain unchanged until an updated Approved Budget has been agreed.

(c) Beginning on the Wednesday during the second full week following the Petition Date, and every other Wednesday thereafter, the Debtor shall deliver a budget variance report (the "Budget Variance Report") to the Prepetition Secured Parties by 5:00 p.m. (prevailing Eastern Time). The Budget Variance Report shall set forth, as of the preceding Saturday of such two-week period, variances of all actual amounts received or disbursed on a line-item basis relative to the amounts projected for each such line item in the Approved Budget for the prior cumulative two-week period (the "Testing Period").[5] Each Budget Variance Report shall also show cash balances.

(d) To the extent requested, the Debtor's financial advisors shall, beginning the second full week following the Petition Date, establish a standing weekly call with advisors to the

[5] For purposes of this Second Interim Order, payments made in respect of any of the Debtor's hedging arrangements or other swap transactions shall not be included in the calculation of actual amounts received or disbursed with respect to the Budget Variance Report.

Prepetition Secured Parties to address questions related to the Budget Variance Report and other information that is reasonably requested by the Prepetition Secured Parties.

(e) Notwithstanding the Approved Budget, the following limited variances shall be permitted (each such variance, a "Permitted Variance," and all such variances collectively, the "Permitted Variances"), each measured at the end of each applicable Testing Period: (i) the actual total receipts, excluding cash receipts related to revenues from power generation and also presented in the Approved Budget as receipts from "Generation," during such Testing Period shall not be less than eighty-five percent (85%) of the total projected receipts set forth in the Approved Budget for such Testing Period; and (ii) the actual total disbursements during such Testing Period shall not exceed one hundred fifteen percent (115%) of the projected disbursements set forth in the Approved Budget for such Testing Period, in each case, excluding (x) disbursements related to the Debtor's hedging activities and also estimated in the Approved Budget as "Potential Hedge Mark-to-Market (MtM) Posting" and (y) the professional fees and expenses of administering this chapter 11 case (including payment of fees incurred prior to funding the Professional Fee Reserve) in accordance with the Bankruptcy Code and any order of the Bankruptcy Court, as applicable.

(f) Notwithstanding anything to the contrary set forth herein or otherwise, none of the Collateral or the Carve-Out may be used: (i) to investigate (except as expressly provided in this paragraph 3(f)), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against any of the Prepetition Secured Parties (each in their capacities as such) or seeking relief that would impair the rights and remedies of the Prepetition Secured Parties under the Prepetition Credit Documents or the Interim Orders, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Committee

in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter that is adverse to the interests of any of the Prepetition Secured Parties, (B) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, any of the Prepetition Secured Obligations or the Prepetition Liens, or (C) for monetary, injunctive, or other affirmative relief against any of the Prepetition Secured Parties or with respect to any of the Prepetition Liens; (ii) to object to or challenge in any way the legality, validity, extent, priority, perfection, or enforceability of any claims, liens, or interests (including the Prepetition Liens) held by or on behalf of any of the Prepetition Secured Parties; (iii) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions (as defined herein), against any of the Prepetition Secured Parties; (iv) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Secured Obligations, or any other rights or interests of the Prepetition Secured Parties under the Prepetition Credit Documents or herein; or (v) to prevent, hinder or otherwise delay the exercise by any of the Prepetition Secured Parties of any rights under the Interim Orders, or to take any action that, if successful, would be reasonably likely to result in an Event of Default; *provided* that an amount not to exceed $25,000 of the Prepetition Collateral (including any Prepetition Collateral used to fund the Carve-Out) may be used exclusively by a Committee, if appointed, solely to investigate (but not prepare, initiate, or prosecute) the foregoing matters with respect to the Prepetition Secured Obligations and the Prepetition Collateral within the Challenge Period (as defined herein).

4. Effect of Stipulation on Third Parties.

(a) Subject to the terms of paragraph 4(b) hereof, each stipulation, admission, and agreement contained in the Interim Orders, including, without limitation, the Debtor's Stipulations, shall be binding upon the Debtor, its estate, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor), creditors, equity holders, responsible persons, examiners with expanded powers, any other estate representatives, and any other third parties and all of their successors in interest and assigns, including, without limitation, any Committee, under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

(b) Nothing in this Second Interim Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of this paragraph 4(b), to assert claims against any of the Prepetition Secured Parties, on behalf of the Debtor, the Debtor's bankruptcy estate, or the Debtor's creditors, or to otherwise challenge the Debtor's Stipulations, in each case arising from the Prepetition Credit Documents to which the Debtor is a party, including in relation to (i) the validity, extent, priority, or perfection of the security interests and liens of the Prepetition Secured Parties, (ii) the validity, allowance, priority, or amount of the Prepetition Secured Obligations, or (iii) any liability of any of the Prepetition Secured Parties, in each case, arising from the Prepetition Credit Documents to which the Debtor is a party, in each case whether under sections 502 or 506 of the Bankruptcy Code or otherwise (collectively, the "Prepetition Lien and Claim Matters"); *provided* that, and solely to the extent that, any such party in interest (including the Committee, if any) with standing and requisite authority (other than the Debtor, as to which any Challenge is irrevocably waived and relinquished)

timely files the appropriate papers, and timely commences the appropriate proceeding required under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 3(f) of this Second Interim Order), challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than 75 calendar days from entry of the First Interim Order (the "Challenge Period"), which Challenge Period may be extended only by (A) prior written agreement of the Prepetition Secured Parties or (B) order of the Court for cause shown; *provided, however*, that the Challenge Period shall be extended solely for Omnis Energy, Quantum, WVEDA, and Kuro Infrastructure Delaware, Inc. ("Kuro") to the date that is five (5) business days after the Bid Deadline (as defined in the Bidding Procedures);[6] *provided* that each of Omnis Energy, Quantum, WVEDA, and Kuro meets and confers with counsel to each of the Debtor and Prepetition Secured Parties prior to seeking standing or commencing a Challenge; *provided*, *further*, that any chapter 7 or chapter 11 trustee appointed or elected prior to the expiration of the Challenge Period will have the longer of (x) the remaining Challenge Period and (y) 30 days from the date of such trustee's appointment or election to commence a Challenge. The timely filing of a motion seeking standing to file a Challenge before the termination of the Challenge Period that attaches a proposed pleading commencing such Challenge shall toll the Challenge Period only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court. Any pleadings filed in any Challenge proceeding shall set forth with specificity the basis

[6] "Bidding Procedures" means the Bidding Procedures (as defined therein) attached to *Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 265], as may be amended from time to time.

for such Challenge and any Challenge not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred. Upon a successful Challenge pursuant to this paragraph 4(b), the Court may fashion any appropriate remedy.

(c) Binding Effect. To the extent no Challenge is timely and properly commenced during the Challenge Period by a party in interest with requisite standing, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before this Court, and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to the Interim Orders, become binding, conclusive, and final on the Debtor, its estate, all creditors, any person, entity, or party in interest in this chapter 11 case, and the successors and assigns, as applicable, of any of the foregoing, and in any Successor Case for all purposes, and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtor's estate. Notwithstanding the foregoing, if any Challenge is timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding and preclusive, as provided in this paragraph, on the Debtor, any Committee, and any other person, entity or party in interest, except as to any such findings, stipulations and admissions that were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. More specifically, as to (i) any parties in interest, including any Committee, that fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (ii) any and all matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner, or any other

estate representative appointed in this chapter 11 case, or any chapter 7 trustee, any examiner, or any other estate representative appointed, as applicable, in any Successor Case) shall be deemed to be forever waived and barred; (B) all of the findings, the Debtor's Stipulations, waivers, releases, affirmations, and other stipulations hereunder as to the priority, extent, validity, and enforceability of the Prepetition Liens and the Prepetition Secured Obligations shall be of full force and effect and forever binding upon the Debtor's estate and all creditors, interest holders, and other parties in interest in this chapter 11 case and any Successor Case; and (C) the Prepetition Secured Parties and each of their respective agents, officers, directors, employees, attorneys, consultants, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Lien and Claim Matters and shall not be subject to any further objection or challenge by any party at any time.

(d) No Standing. Nothing in the Interim Orders vests or confers on any "person" (as such term is defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtor and/or its estate, including, without limitation, any Challenge with respect to the Prepetition Credit Documents, the Prepetition Liens, and/or the Prepetition Secured Obligations.

5. Termination Date. Unless otherwise ordered by this Court, the Debtor's authorization, and the Prepetition Secured Parties' consent, to use Prepetition Collateral, including Cash Collateral in accordance with the Interim Orders shall terminate on the earliest to occur of (the "Termination Date"): (a) the last date of the trial (if any) regarding Omnis Energy and Quantum's pending motion to dismiss [Docket No. 93] and 11:59 p.m. (prevailing Eastern Time) on December 31, 2026, whichever is earlier, if the Final Order (in form and substance acceptable to the Debtor and the Prepetition Secured Parties) has not been entered by the Court on or before

such date, unless such date is extended pursuant to the written consent of the Prepetition Secured Parties (which may be by email from counsel to the Prepetition Secured Parties to counsel to the Debtor); (b) the Outside Date (as defined herein); (c) the effective date of a confirmed chapter 11 plan in this chapter 11 case; (d) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtor; and (e) the delivery by the Prepetition Secured Parties to counsel to the Debtor, the U.S. Trustee, and counsel to the Committee (if appointed) of notice of the occurrence of an Event of Default (as defined below).

6. Adequate Protection. As adequate protection against any Diminution in Value of the Prepetition Secured Parties' interests in the Collateral resulting from (a) the imposition of the automatic stay or (b) the Debtor's use, sale, or disposition of the Collateral during this chapter 11 case (the "Adequate Protection Obligations"), the Prepetition Secured Parties shall receive the following adequate protection (collectively, the "Adequate Protection Package"):

(a) Adequate Protection Liens. Subject to the Carve-Out and the terms of the Interim Orders, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth in the Interim Orders, including, without limitation, the Debtor's Stipulations, the Prepetition Secured Parties were granted in the First Interim Order and continue to be granted hereby, effective as of the Petition Date and without the necessity of the execution by the Debtor (or the recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, additional and replacement valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in, and liens on (the "Adequate Protection Liens"), all of the right, title, and interest of the Debtor and its estate (as created pursuant to section 541(a) of the Bankruptcy Code) in, to, and under any and all tangible and intangible property and assets of the Debtor, whether

existing before, on, or arising after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, together with the proceeds, products, rents, and profits thereof, including, without limitation, all cash and any investment of such cash, securities, money, letters of credit, letter-of-credit rights, inventory, accounts receivable, other rights to payment, contracts, properties, plants, fixtures, machinery, vehicles, mineral rights, equipment, general intangibles, goods, investment property, documents, instruments, securities, chattel paper, commercial tort claims (whether now existing or hereafter arising and whether or not specifically identified), interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, and all causes of action and property recovered as a result of transfers or obligations avoided or actions maintained pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law (such actions, the "Avoidance Actions," and any proceeds therefrom, the "Avoidance Proceeds") (collectively, to the extent acquired or arising after the Petition Date, the "Postpetition Collateral" and, together with the Prepetition Collateral, the "Collateral"); *provided* that, prior to the entry of the Final Order, the Adequate Protection Liens shall not attach to any Avoidance Actions or Avoidance Proceeds. Nothing in the Interim Orders constitutes a finding or ruling that any lien, security interest, or encumbrance asserted by any party, other than the Prepetition Secured Parties, is valid, senior, enforceable, prior, perfected, or non-avoidable, and the Prepetition Secured Parties expressly reserve all rights to challenge the validity, priority, enforceability, seniority, avoidability, perfection, extent and amount of any such asserted lien or security interest. The Adequate Protection Liens shall be subject or junior only to (i) the Carve-Out and (ii) the Permitted Encumbrances. Moreover, the Adequate Protection Liens shall

not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, (y) any intercompany claim, whether secured or unsecured, of the Debtor or any affiliate of the Debtor, or (z) any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise, except as expressly provided in the Interim Orders and other than a lien perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code. The Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, and any successors thereto, including, without limitation, any trustee, examiner, or other estate representative appointed in this chapter 11 case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (a "Successor Case"). For the avoidance of doubt, the First Interim Order and/or this Second Interim Order shall be sufficient and conclusive evidence of the granting, creation, attachment, validity, perfection, enforceability, and priority of the Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any Postpetition Collateral) to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the Prepetition Secured Parties to the priorities granted herein.

(b) Allowed Superpriority Claim. Pursuant to sections 503 and 507(b) of the Bankruptcy Code, the Prepetition Secured Parties, effective as of the entry of the First Interim

Order, were granted by the First Interim Order and hereby continue to be granted an allowed superpriority administrative expense claim (the "Superpriority Claim") in this chapter 11 case or any Successor Case, solely to the extent of any Diminution in Value of the Prepetition Collateral, which claim shall be junior only to the Carve-Out and shall be senior to and have priority over all other administrative expenses pursuant to the Bankruptcy Code and all other claims against the Debtor or its estate in this chapter 11 case or any Successor Case, at any time existing or arising, of any kind or nature whatsoever. Subject to the Carve-Out, the Superpriority Claim shall be payable from and have recourse to all assets and properties of the Debtor, but shall not be payable from Avoidance Actions or Avoidance Proceeds except as provided by the Final Order. Except for the Carve-Out, the Superpriority Claim shall not be made subject to, or *pari passu* with, any claim heretofore or hereinafter granted or created in this chapter 11 case or any Successor Case, and shall be valid and enforceable against the Debtor, its estate, and any successors or assigns thereto, including, without limitation, any trustee appointed in this chapter 11 case or any Successor Case. Except as expressly provided in the Interim Orders, the Adequate Protection Liens, the Superpriority Claim, and all other rights and remedies of the Prepetition Secured Parties granted by the Interim Orders shall survive, shall maintain their priority as provided in the Interim Orders, and shall not be modified, impaired or discharged by the entry of an order converting this chapter 11 case to a Successor Case or dismissing this chapter 11 case.

(c) Payment of Fees and Expenses. The Debtor shall pay in cash, without the need for the filing of formal fee applications, all reasonable and documented (x) out-of-pocket costs and expenses of the Prepetition Secured Parties and (y) fees, costs, expenses, and charges, including out-of-pocket expenses for travel, incurred by the professionals retained by the Prepetition Secured Parties, including DLA Piper LLP (US) and McDermott Will & Schulte LLP. All payments of

professional fees, expenses, and disbursements authorized under this paragraph shall be made immediately upon expiration of the ten (10) day review period (which time period may be extended by the applicable professional) (the "Review Period") after receipt by the Debtor, the Committee (if any), and the U.S. Trustee of invoices therefor (the "Invoiced Fees"), if no objection to Invoiced Fees is filed. The invoices for such Invoiced Fees shall be in summary form (which shall not be required to include time entry detail, but shall include a general, brief description of the nature of matters for which services were performed); *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential, or proprietary information. The Debtor, the Committee (if any), and the U.S. Trustee may object to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within the Review Period setting forth the specific objections to the Disputed Invoiced Fees. The Debtor shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees immediately after expiration of the Review Period; and (ii) any Disputed Invoiced Fees immediately after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees. Any and all amounts paid by the Debtor pursuant to this paragraph, including any amounts incurred prior to the Petition Date, are (x) deemed permitted uses of Collateral and are not subject to the Approved Budget or the Permitted Variances and (y) not subject to recharacterization, avoidance, subordination or disgorgement.

(d) Postpetition Interest. The Debtor shall pay to the Prepetition Secured Parties on the first business day of each calendar month after the entry of the First Interim Order, an amount equal to all accrued and unpaid postpetition interest (at the non-default rate), fees, and costs under the Prepetition Credit Documents. For the avoidance of doubt, the payment of interest pursuant to this paragraph shall be without prejudice to the rights of the Prepetition Secured Parties to assert

claims for payment of interest at the default rate in accordance of the Prepetition Credit Documents.

(e) Sale Milestones. The Debtor shall continue to pursue the sale of all or substantially all of the Debtor's assets and, by not later than August 13, 2026, shall have filed a motion (in form and substance acceptable to the Prepetition Secured Parties, which consent shall not be unreasonably withheld, the "Bidding Procedures Motion") seeking entry of an order establishing bidding procedures, setting sale milestones, and seeking approval of a stalking horse bidder, which bidding procedures, milestones, and stalking horse purchase agreement shall be in form and substance acceptable to the Prepetition Secured Parties (which consent shall not be unreasonably withheld) for the sale of all or substantially all of the Debtor's assets (in form and substance acceptable to the Prepetition Secured Parties, which consent shall not be unreasonably withheld, the "Bidding Procedures Order"), which may be consummated either through a confirmed chapter 11 plan or pursuant to section 363 of the Bankruptcy Code.

(f) Compliance with the Budget. The Debtor shall comply with the Approved Budget on the terms provided herein, subject to the Permitted Variances and the other terms of paragraph 3(e) hereof.

(g) Additional Adequate Protection. As further adequate protection:

(i) except as expressly permitted pursuant to the Bidding Procedures Order or any "first day" or "second day" orders, each of which shall be in form and substance reasonably acceptable to the Prepetition Secured Parties, the Debtor shall not use, sell, dispose, transfer, license or lease any material asset outside the ordinary course of business, or seek authority of this Court (to the extent required by Section 363 of the Bankruptcy Code) without obtaining

the prior written reasonable consent of the Prepetition Secured Parties (which consent may be granted by an email from counsel); and

(ii) the Debtor shall provide drafts of all pleadings or documents the Debtor intends to file with this or any other court to counsel to the Prepetition Secured Parties, DLA Piper (US), as soon as reasonably practicable, but in no event less than two (2) days before such filing (unless a shorter period is agreed among counsel to the Debtor and counsel to the Prepetition Secured Parties) (which pleadings and documents shall be in form and substance acceptable to the Prepetition Secured Parties, which consent shall not be unreasonably withheld).

7. Adequate Protection Reservation of Rights. The receipt by the Prepetition Secured Parties of the Adequate Protection Package provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Furthermore, this Second Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Collateral or for additional adequate protection at any time. Any amendment or modification to the Adequate Protection Package shall require the prior written consent of the Prepetition Secured Parties.

8. Modification of Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the Prepetition Secured Parties to perform any act authorized or permitted under or by virtue of the First Interim Order, this Second Interim Order or the Prepetition Credit Documents to which the Debtor is a party, including, without limitation, (i) to implement the Collateral arrangements authorized by the First Interim Order and/or this Second Interim Order,

(ii) to take any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in the Collateral, (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Secured Obligations, including, without limitation, all interest, fees, costs, and expenses permitted under the Prepetition Credit Documents, and apply such payments to the Prepetition Secured Obligations, (iv) to provide any notices to the Debtor or take any other action as contemplated by and in accordance with the First Interim Order and/or this Second Interim Order, and (v) immediately following the expiration of the Remedies Notice Period (as defined herein), to take any action and exercise all rights and remedies provided to them by the First Interim Order, this Second Interim Order, the Prepetition Credit Documents to which the Debtor is a party, or applicable law.

9. Cash Management and Deposit Accounts. The Debtor shall maintain its cash management arrangements in a manner consistent with any interim or final orders entered by this Court authorizing the Debtor to continue its cash management system. The Debtor shall not open any new deposit account, securities account, or other account into which Collateral, including Cash Collateral, or proceeds of Collateral are or will be deposited at any financial institution without the prior written consent of the Prepetition Secured Parties or an order of the Court, and no such order shall permit the Debtor to deposit funds into any such account before the applicable depository institution has executed a deposit account control agreement in form and substance acceptable to the Prepetition Secured Parties granting the Prepetition Secured Parties control within the meaning of section 9-104 of the Uniform Commercial Code. The Debtor shall use commercially reasonable efforts to cause each existing depository institution to execute such a deposit account control agreement within three (3) days of entry of the First Interim Order.

10. Maintenance and Insurance of Collateral. Unless and until the Prepetition Secured Obligations are paid in full in cash or otherwise satisfied on terms acceptable to the Prepetition Secured Parties, the Debtor shall maintain sufficient insurance coverage for the Collateral. Upon entry of the First Interim Order and to the fullest extent provided by applicable law, each of the Prepetition Secured Parties shall have been, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtor that in any way relates to the Collateral.

11. Reporting; Rights of Access and Information. The Debtor shall timely provide the Prepetition Secured Parties (i) reasonable access to the Debtor's facilities, management, books, and records, (ii) copies of all financial reporting required to be delivered under the Prepetition Credit Documents and, on a monthly basis, income statements, balance sheet statements, and cash flow statements, and (iii) copies (delivery to counsel being sufficient) of all written materials provided by the Debtor to any statutory committee appointed in this chapter 11 case or any other party in interest. The Debtor is further directed to allow the Prepetition Secured Parties, and their representatives and advisors, reasonable access to the Debtor's premises, information systems, facilities, management, books, and records. The Debtor shall comply with the rights of access and information afforded to the Prepetition Secured Parties under the Prepetition Credit Documents.

12. Events of Default. The occurrence of any of the following events, unless waived in writing by the Prepetition Secured Parties (which may be by email from counsel to the Prepetition Secured Parties to counsel to the Debtor), shall constitute an event of default hereunder (each, an "Event of Default," and the period between the entry of the First Interim Order and the occurrence of an Event of Default, the "Interim Period"):

a. 11:59 PM (Prevailing Eastern Time) on the date that is 180 days after the entry of the First Interim Order (unless extended with the consent of the Prepetition Secured Parties on the terms herein) (the "Outside Date");

b. the Debtor's failure to comply with any provision of the First Interim Order or this Second Interim Order where such failure shall have continued unremedied for three (3) business days after delivery of notice thereof by the Prepetition Secured Parties; *provided*, *however*, that no such right to cure shall apply to Debtor's failure to (i) pay any amounts as and when due under the terms of the First Interim Order or this Second Interim Order, (ii) comply with any of the milestones set forth in the First Interim Order or this Second Interim Order, and/or (iii) comply with or perform under Sections 3, 5, 6(c), 6(d), 6(e), 6(f), 6(g), 27, and/or 28(i), 28(ii), 28(iii), and 28(vi) of the First Interim Order or this Second Interim Order;

c. the First Interim Order or this Second Interim Order ceases, for any reason, to be in full force and effect;

d. the Court shall have entered an order amending, modifying, reversing, revoking, staying, rescinding, vacating, supplementing, extending, or otherwise modifying the First Interim Order or this Second Interim Order without the consent of the Prepetition Secured Parties;

e. the date of the Debtor's filing of any application, motion, or other pleading seeking approval of debtor in possession financing without the consent of the Prepetition Secured Parties, or the entry of an order approving debtor in possession financing for the Debtor without the consent of the Prepetition Secured Parties;

f. the date an application, motion, or other pleading is filed by the Debtor for the approval of any superpriority claim or any lien that is *pari passu* with or senior to the Superpriority Claim, the Adequate Protection Liens, the Prepetition Liens or the Prepetition Secured Obligations without the prior written consent of the Prepetition Secured Parties;

g. the date the Debtor or any affiliate of the Debtor (unless the Debtor opposes such action by such affiliate) files any pleading or commences any action against any Prepetition Secured Party challenging the validity or enforceability of any of the Prepetition Secured Obligations or any of the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to any of the Prepetition Secured Obligations;

h. the date any court enters an order dismissing this chapter 11 case, converting this chapter 11 case to a Successor Case, appointing a chapter 11 trustee in this chapter 11 case, or an examiner with expanded powers relating to the operation of the Debtor or administration of this chapter 11 case, or terminates

the Debtor's exclusive periods under section 1121 of the Bankruptcy Code, unless, in each case, consented to in writing by the Prepetition Secured Parties;

i. the Debtor files any motion seeking authority to sell all or substantially all of the Prepetition Collateral outside the ordinary course of business without the prior written consent of the Prepetition Secured Parties (which consent shall not be unreasonably withheld);

j. (i) prior to termination of the exclusivity period, the Debtor files a chapter 11 plan and (ii) following termination of the exclusivity period, any party, without the prior written consent of the Prepetition Secured Parties that proposes treatment of the Prepetition Secured Obligations in any manner other than an indefeasible payment in full, in cash, on the effective date of such plan;

k. failure to deliver to the Prepetition Secured Parties any of the documents or other information required to be delivered pursuant to the First Interim Order or this Second Interim Order as and when due, if not cured within three (3) business days of receipt of notice by the Debtor (which cure period shall not apply to the delivery of pleadings or documents required under paragraph 6(g)(ii) hereof);

l. failure to comply with the Approved Budget, subject to the Permitted Variances and the other terms of paragraph 3(e) of the Interim Orders, or the use of any Cash Collateral in a manner not permitted by the Approved Budget and the Interim Orders;

m. the making of any payments in respect of prepetition obligations, except as permitted pursuant to the Approved Budget or otherwise permitted pursuant to the First Interim Order or this Second Interim Order, any "first day" or "second day" order, or with the prior written consent of the Prepetition Secured Parties;

n. entry of an order or judgment by this Court or any other court granting relief from the automatic stay, without the consent of the Prepetition Secured Parties, that would allow a third party to recover or obtain possession of any property of the Debtor's estate with a value in excess of $250,000;

o. the entry of an order of the Court that impairs in any way the security interests, liens, priority claims or rights granted to any of the Prepetition Secured Parties;

p. any material misrepresentation by the Debtor in the financial reporting or certifications to be provided by the Debtor to the Prepetition Secured Parties under the First Interim Order or this Second Interim Order;

q. the Debtor fails to provide any additional adequate protection ordered by the Court and such failure continues unremedied for more than three (3) business days;

r. any request by the Debtor to seek relief under the Bankruptcy Code, including without limitation under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (A) the rights and remedies of the Prepetition Secured Parties against the Debtor as provided in the First Interim Order or this Second Interim Order or the Prepetition Credit Documents or (B) the exercise of such rights or remedies by the Prepetition Secured Parties in accordance with the First Interim Order or this Second Interim Order or the Prepetition Credit Documents; *provided* that the Prepetition Secured Parties may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Parties;

s. the earlier of (i) the last date of the trial regarding Omnis Energy and Quantum's pending motion to dismiss [Docket No. 93] and (ii) 11:59 p.m. (prevailing Eastern Time) on December 31, 2026, if the Final Order has not been entered in form and substance acceptable to the Prepetition Secured Parties by such date; and

t. the date of the Final Hearing, if this Second Interim Order is modified at the Final Hearing in a manner unacceptable to the Prepetition Secured Parties.

13. Exercise of Remedies. The Debtor shall provide notice to counsel to the Prepetition Secured Parties immediately upon knowledge of the occurrence of any Event of Default. Upon the occurrence and during the continuation of an Event of Default, unless such Event of Default has been waived in writing (which may be by email from counsel to the Prepetition Secured Parties to counsel to the Debtor), the automatic stay imposed under section 362 of the Bankruptcy Code is hereby modified to permit the Prepetition Secured Parties, upon the delivery of written notice (the "Termination Notice") to counsel to the Debtor, counsel to any Committee (if appointed), and the U.S. Trustee (collectively, the "Remedies Notice Parties"), at the conclusion of the Remedies Notice Period, to: (a) terminate and/or revoke the Debtor's right under the Interim Orders to use any Collateral; (b) subject to the Carve-Out, freeze monies or balances in any accounts subject to a control agreement or otherwise subject to a lien in favor of the Prepetition Secured Parties pursuant to the terms of the Interim Orders; (c) take any act to create, validate, evidence, attach,

or perfect any lien, security interest, right, or claim in the Collateral; and (d) take any action and exercise all rights and remedies provided to them by the First Interim Order, this Second Interim Order, the Prepetition Credit Documents, applicable law, or otherwise; *provided* that, notwithstanding anything in this Second Interim Order to the contrary, prior to the exercise of any right by the Prepetition Secured Parties set forth in clauses (a) through (d) of this paragraph, the automatic stay imposed under section 362 of the Bankruptcy Code shall not be so modified for a period of five (5) calendar days (the "Remedies Notice Period") from the Remedies Notice Parties' receipt of the Termination Notice. Notwithstanding anything to the contrary set forth herein, during the Remedies Notice Period, the Debtor may use Prepetition Collateral to pay only the following amounts and expenses: (i) the Carve-Out; (ii) amounts that the Debtor has determined in good faith are necessary for the preservation of the Debtor's business and its estate during the Remedies Notice Period, in each case not to exceed any amounts set forth in the Approved Budget; and (iii) amounts otherwise approved in advance in writing (which may be by email from counsel to the Prepetition Secured Parties to counsel to the Debtor) by the Prepetition Secured Parties. On the first business day following the end of the Remedies Notice Period, unless otherwise ordered by this Court and subject to the Carve-Out, the Debtor will immediately cease using Collateral, and the Prepetition Secured Parties may thereupon exercise the rights and remedies available under the Prepetition Credit Documents, the First Interim Order, this Second Interim Order, or applicable non-bankruptcy law, including, without limitation, foreclosing upon and selling all or a portion of the Collateral to collect any amounts payable to the Prepetition Secured Parties pursuant to the Interim Orders and applying the same to such obligations. The automatic stay under section 362 of the Bankruptcy Code shall be deemed immediately modified and vacated to the extent necessary to permit such actions. Any delay or failure of any of the Prepetition Secured Parties to exercise

rights under any Prepetition Credit Document, the First Interim Order or this Second Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise. Notwithstanding the occurrence of a Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under the Interim Orders as of such date shall survive the Termination Date.

14. Carve Out.

(a) As used in this Second Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (collectively, the "Statutory Fees"), without regard to the notice set forth in (iii) below; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, without regard to the notice set forth in (iii) below; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, excluding any success or transaction fees (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the creditors' committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Prepetition Secured Parties of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the Prepetition Secured Parties of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise

(the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap," of which the foregoing $500,000 shall be funded into the Funded Reserve Account (as defined herein) from the Cash Collateral). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Secured Parties to the Debtor, its lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee (if any), which notice may be delivered upon the occurrence and during the continuation of an Event of Default (as defined herein) and termination of the Debtor's right to use Cash Collateral, as applicable, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b) Delivery of Weekly Fee Statements. Not later than 7:00 p.m. (New York time) on the third business day of each week starting with the first full calendar week following the entry of this Second Interim Order, each Professional Person shall deliver to the Debtor a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtor (each such statement, a "Weekly Statement"); *provided* that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtor shall cause such Weekly Statement and Final

Statement to be delivered promptly to the Prepetition Secured Parties). If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c) Carve Out Reserves.

(i). Commencing with the week ended October 10, 2026, and on or before the Thursday of each week thereafter, the Debtor shall utilize all cash on hand as of such date and, to the extent insufficient, any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statements delivered on the immediately prior Wednesday to the Debtor and the Prepetition Secured Parties, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (B) the Post-Carve Out Trigger Notice Cap, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the two weeks occurring after the most recent Calculation Date. The Debtor shall deposit and hold such amounts in a segregated account maintained by the Debtor in trust (the "Funded Reserve Account") to pay such Allowed Professional Fees (the "Funded Reserves") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii). On the day on which a Carve Out Trigger Notice is given by the Prepetition Secured Parties to the Debtor with a copy to counsel to the Creditors' Committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtor to, and the Debtor shall utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtor shall deposit and hold such amounts in a segregated account maintained by the Debtor in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtor to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by the Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtor shall deposit and hold such amounts in a segregated account maintained by the Debtor in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.

(d) Application of Carve Out Reserves.

(i). All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until the Pre-Carve Out Amounts are indefeasibly paid in full. If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph 14(d)(iii)

below, all remaining funds shall be distributed first to the Prepetition Secured Parties on account of the Prepetition Secured Obligations until indefeasibly paid in full, and thereafter in accordance with applicable rights and priorities as of the Petition Date and as otherwise set forth in this Second Interim Order.

(ii). All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (a)(iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"). If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph 14(d)(iii) below, all remaining funds shall be distributed to the Prepetition Secured Parties, in accordance with their rights and priorities as of the Petition Date.

(iii). Notwithstanding anything to the contrary in the Prepetition Credit Documents, this Second Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in paragraph 14(c), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively (subject to the limits contained in the Post-Carve Out Trigger Notice Cap), shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in paragraph 14(c), prior to making any payments to the Prepetition Secured Parties.

(iv). Notwithstanding anything to the contrary in the Prepetition Credit Documents or this Second Interim Order, following delivery of a Carve Out Trigger Notice, the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but shall have a first-lien and automatically perfected security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Secured Parties.

(v). Further, notwithstanding anything to the contrary in this Second Interim Order, (A) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (B) in no way shall the initial Approved Budget, any subsequent Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of Statutory Fees or the Allowed Professional Fees due and payable by the Debtor. For the avoidance of doubt and notwithstanding anything to the contrary in the Prepetition Credit Documents or this Second Interim Order, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, the Prepetition Secured Obligations, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(e) Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(f) No Direct Obligation to Pay Allowed Professional Fees. None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the chapter 11 case or any successor case under any chapter of the Bankruptcy Code. Nothing in this Second Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(g) Payment of Allowed Professional Fees on or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination

Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

15. Release. Subject to the Challenge provisions set forth in paragraph 4(b) hereof, effective upon entry of the First Interim Order, the Debtor, on behalf of itself and its estate (including any successor trustee or other estate representative in this chapter 11 case or any Successor Case) and any party acting by, or through, the Debtor or its estate, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever waives and releases the Prepetition Secured Parties and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case solely in their capacity as such, of any and all claims, counterclaims, causes of action, defenses, or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Prepetition Credit Documents or the transactions contemplated under any such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," any challenge or claim to the exercise of remedies, recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and any and all claims and causes of action regarding the validity, priority, perfection, or putative avoidability of the liens or the claims of the Prepetition Secured Parties.

16. Reversal, Modification, Vacatur, or Stay. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Second Interim Order shall not affect the validity or

enforceability of any Adequate Protection Liens, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Obligations, incurred prior to the effective date of such reversal, modification, vacatur, or stay unless the grant of the Adequate Protection Package to the Prepetition Secured Parties is stayed pending the appeal of this Second Interim Order. Notwithstanding any reversal, modification, vacatur, or stay, (a) this Second Interim Order shall govern, in all respects, any use of Collateral or the Adequate Protection Package incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Secured Parties shall be entitled to all the benefits and protections granted by this Second Interim Order with respect to any such use of Collateral or such Adequate Protection Package incurred by the Debtor unless the Debtor's use of Collateral or the grant of the Adequate Protection Package to the Prepetition Secured Parties is stayed pending the appeal of this Second Interim Order.

17. No Waiver for Failure to Seek Relief. The failure or delay of any Prepetition Secured Party to seek relief or otherwise exercise any rights and remedies under the First Interim Order, this Second Interim Order, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise by the Prepetition Secured Parties.

18. Section 507(b) Reservation. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for the Adequate Protection Obligations during this chapter 11 case. Nothing contained herein shall be deemed a finding by this Court, or an acknowledgment by the Prepetition Secured Parties, that the Adequate Protection

Package does, in fact, adequately protect the Prepetition Secured Parties against any Diminution in Value of their interests in and against the Prepetition Collateral.

19. Final Hearing. The Court will conduct a hearing to consider the entry of an order on a final basis on a date to be determined after the Sale Hearing (as set forth and defined in the Bidding Procedures); *provided* that prior to scheduling such final hearing, counsel for each of the Debtor, TRAG, RGE, Omnis Energy, and Quantum (each a "Discovery Party," and collectively, the "Discovery Parties") will meet and confer regarding the scheduling of such hearing and a related discovery timeline; *provided*, *further*, that (i) all discovery related to the Motion and (ii) any deadline for any Discovery Party to respond to any demand relating to the same shall be stayed and deferred until after the Discovery Parties meet and confer regarding the scheduling of a final hearing on the Motion and related discovery timeline.

20. Section 506(c) Waiver. Upon entry of the Final Order, and subject to approval by this Court therein, no costs or expenses of administration which have been or may be incurred in this chapter 11 case or any Successor Case at any time shall be charged against the Prepetition Secured Parties or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, and all rights to surcharge the Prepetition Secured Parties or the Collateral under sections 105 or 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtor and all parties in interest in this chapter 11 case or any Successor Case.

21. Section 552(b) Waiver; No Marshalling. The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. Upon entry of the Final Order, and subject to approval by this Court therein, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties

with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Postpetition Collateral. Subject to entry of the Final Order, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Collateral, including the Postpetition Collateral and the Prepetition Collateral, the Superpriority Claim, or the Prepetition Secured Obligations, and all proceeds of the Postpetition Collateral and the Prepetition Collateral shall be received and applied in accordance with the Prepetition Credit Documents.

22. No Marshaling of Non-Debtor Assets. Subject to and effective upon entry of a Final Order, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine regardless of any assets of any person other than the Debtor that may collateralize the Prepetition Secured Obligations.

23. Good Faith. Based on the findings set forth in the Interim Orders and the record made during the Interim Hearing, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Debtor and the Prepetition Secured Parties are hereby found to be entities that have acted in good faith in connection with the negotiation and entry of the Interim Orders and are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

24. No Third-Party Rights. Except as otherwise expressly provided herein, this Second Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

25. No Liability to Third Parties. In permitting the use of the Collateral or in exercising any rights or remedies as and when permitted pursuant to the First Interim Order or this Second Interim Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person," or "owner or

operator" with respect to the operation or management of the Debtor, so long as such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by the Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, the Worker Adjustment and Retraining Notification Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors, or its estate, nor shall they constitute or be deemed to constitute a joint venture or partnership with the Debtor. Furthermore, nothing in the First Interim Order or this Second Interim Order shall in any way be construed or interpreted to impose upon the Prepetition Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtor and/or its "affiliates" as such term is defined in section 101(2) of the Bankruptcy Code.

26. Master Proof of Claim. None of the Prepetition Secured Parties will be required to file proofs of claim in this chapter 11 case or any Successor Case, and the Debtor's Stipulations shall be deemed to constitute a timely filed proof of claim for each of the Prepetition Secured Parties against the Debtor; *provided*, *however*, that the Prepetition Secured Parties are hereby authorized, in their sole discretion, to file (and amend and/or supplement, as they see fit) a master proof of claim for their claims arising from the Prepetition Credit Documents in accordance with any order entered by this Court in relation to the establishment of a bar date in this chapter 11 case; *provided*, *further*, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proof of claim against the Debtor.

27. Disposition of Collateral. The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral outside the ordinary course of business, other than as expressly provided in the Interim Orders (including the Approved Budget) or any other Order of this Court (which shall be in form and substance acceptable to the Prepetition Secured Parties, which consent shall not be unreasonably withheld).

28. Debtor's Waivers/Covenants. At all times during this chapter 11 case prior to the indefeasible payment in full in cash of the Prepetition Secured Obligations, and whether or not an Event of Default has occurred, the Debtor irrevocably waives and covenants not to seek authority to take any of the following actions, other than as expressly provided for in the Interim Orders, or unless the Prepetition Secured Parties otherwise consent in writing: (i) use Collateral under section 363 of the Bankruptcy Code other than as set forth herein; (ii) obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code; (iii) challenge the application of any payments authorized hereunder pursuant to section 506(b) of the Bankruptcy Code, or assert that the value of the Prepetition Collateral is less than the Prepetition Secured Obligations; (iv) propose, support, file, or otherwise have a plan of reorganization or liquidation that does not provide for the indefeasible payment in full in cash in full satisfaction of all Prepetition Secured Obligations on the effective date of such plan or to which the Prepetition Secured Parties have consented in writing; (v) seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the Prepetition Secured Parties as provided in the Interim Orders and the Prepetition Credit Documents or any Prepetition Secured Party's exercise of such rights or remedies; or (vi) challenge, contest, or otherwise seek

to impair or object to the validity, extent, enforceability, or priority of any Prepetition Secured Party's postpetition liens and claims.

29. Credit Bid Rights. Nothing in this Second Interim Order or any other order of this Court shall impair or limit the right of the Prepetition Secured Parties to credit bid any or all of the Prepetition Secured Obligations in connection with any sale of any Prepetition Collateral, whether under section 363 of the Bankruptcy Code, a chapter 11 plan, or otherwise, to the fullest extent permitted by section 363(k) of the Bankruptcy Code. Any such credit bid shall be subject to section 363(k) of the Bankruptcy Code.

30. Order as Financing Statement. A certified copy of this Second Interim Order may, in the discretion of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Second Interim Order for filing and recording. The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit such filings and recordings.

31. Discharge Waiver. Subject to the entry of the Final Order, the obligations of the Debtor with respect to the Superpriority Claim and the Adequate Protection Liens shall not be discharged by the entry of an order confirming any plan of reorganization in this chapter 11 case, notwithstanding section 1141(d) of the Bankruptcy Code, unless (i) such order is entered with the prior written consent of the Prepetition Secured Parties or (ii) the Superpriority Claim has been indefeasibly paid in full in cash on or before the effective date of such plan.

32. Survival. The provisions of the Interim Orders and any actions taken pursuant thereto shall survive the entry of any order: (a) confirming any chapter 11 plan in this chapter 11

case; (b) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing this chapter 11 case. The terms and provisions of the Interim Orders, including, for the avoidance of doubt, the provisions of paragraph 4 hereof, as well as the Adequate Protection Package granted pursuant to the Interim Orders, shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and the claims and liens provided for herein and in the First Interim Order shall maintain their priority as provided by the First Interim Order, this Second Interim Order and the Prepetition Credit Documents to which the Debtor is a party, and to the maximum extent permitted by law, until all of the Prepetition Secured Obligations are indefeasibly paid and satisfied in full in cash.

33. No Avoidance. No obligations incurred or payments or other transfers made by or on behalf of the Debtor to or for the benefit of the Prepetition Secured Parties on account of the adequate protection granted, or the use of Collateral authorized, under the First Interim Order or this Second Interim Order shall be avoidable or recoverable from the Prepetition Secured Parties under any section of the Bankruptcy Code or any other federal, state, or other applicable law; *provided* that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 4(b) hereof with respect to the Prepetition Secured Obligations.

34. Effect of Dismissal. If this chapter 11 case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, such dismissal or conversion shall not affect the rights of the Prepetition Secured Parties under the First Interim Order or this Second Interim Order to the extent of the adequate protection provided thereunder or hereunder, and all rights and remedies thereunder and hereunder of the Prepetition Secured Parties to the extent of the adequate protection provided thereunder and hereunder shall remain in full force and effect as if this chapter 11 case had not, as applicable, been dismissed or converted. If an order dismissing this chapter 11 case is

entered, the adequate protection granted to and conferred upon the Prepetition Secured Parties as of such date shall continue in full force and effect and this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Adequate Protection Obligations detailed herein. The provisions of the Interim Orders, and any actions taken pursuant thereto, shall survive the entry of, and shall govern with respect to any conflict with, any order that may be entered confirming any chapter 11 plan in this chapter 11 case, dismissing this chapter 11 case, or converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

35. The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

36. The requirements of Bankruptcy Rule 6003(b) are satisfied.

37. Order Effective upon Entry. Notwithstanding any applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule to the contrary, the terms and conditions of this Second Interim Order shall be immediately effective and enforceable upon its entry.

38. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

39. Binding Effect of this Second Interim Order. The provisions of this Second Interim Order shall be valid and binding upon all parties in interest in this chapter 11 case, including, without limitation, the Prepetition Secured Parties, any statutory committee that may be appointed in this chapter 11 case, including, without limitation, any Committee, and the Debtor and its respective successors and assigns (including any trustee hereafter appointed or elected for the Debtor's estate, whether in this chapter 11 case or any Successor Case, an examiner appointed under section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate), from and after

the entry of this Second Interim Order by this Court, and shall inure to the benefit of the Prepetition Secured Parties, the Debtor, and their respective successors and assigns. Such binding effect is a benefit of the Prepetition Secured Parties' bargain in connection with the Debtor's use of Cash Collateral and is an integral part of this Second Interim Order.

40. Reservation of Rights Regarding Emissions Allowances. Notwithstanding anything to the contrary contained in this Second Interim Order, entry of this Second Interim Order shall be without prejudice to the rights, claims, positions, arguments, causes of action, and defenses of the Debtor, Pleasants LLC, the Prepetition Secured Parties, or any other party in interest with respect to the ownership or entitlement to any emissions allowances that are the subject of the arbitration captioned *Pleasants, LLC v. Quantum Pleasants, LLC and Omnis Pleasants, LLC*, Case No. 01-24-0008-8768, before the American Arbitration Association (the "Emissions Allowances"). Nothing in this Second Interim Order shall constitute a finding, admission, stipulation, or determination that the Emissions Allowances are or are not property of the Debtor's estate, constitute collateral or cash collateral, or are subject to any lien, security interest, or other encumbrance.

41. Retention of Jurisdiction. This Court has and will retain jurisdiction and power to enforce this Second Interim Order in accordance with its terms and to adjudicate all matters arising from or related to the implementation, interpretation, or enforcement of this Second Interim Order.

**Dated: September 30th, 2026**
**Wilmington, Delaware**

Ka B. Ow

**KAREN B. OWENS**
**CHIEF JUDGE**