**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| OMNIS PLEASANTS, LLC,[1] | ) | Case No. 26-11169 (KBO) |
| Debtor. | ) | |
| | ) | **Hearing Date: November 18, 2026, at 10:00 a.m. (ET)** |
| | ) | **Obj Deadline: October 27, 2026, at 4:00 p.m. (ET)** |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF SEPTEMBER 12, 2026**

The above-captioned debtor and debtor in possession (the "Debtor") files this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as its attorneys effective as of September 12, 2026. In support of this Application, the Debtor submits the declaration of Alexandra F. Schwarzman, the president of Alexandra Schwarzman, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Schwarzman Declaration"), which is attached hereto as **Exhibit B** and the declaration of David Hindman, the Chief Executive Officer of Omnis Pleasants, LLC d/b/a Pleasants Power Station, which is attached hereto as **Exhibit C** (the "Hindman Declaration"). In further support of this Application, the Debtor respectfully states as follows.

[1] The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia 26134.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Rules.

**Background**

4. On July 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2026, Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC filed a motion to dismiss or, in the alternative, appoint a chapter 11 trustee in this chapter 11 case [Docket No. 93], which is currently set for hearing on December 8, 2026. No official committees have been appointed or designated.

5. A description of the Debtor's business, the reasons for commencing the chapter 11 case, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of David Hindman, as Chief Executive Officer of Omnis*

*Pleasants, LLC, d/b/a Pleasants Power Station, in Support of Chapter 11 Petition and First Day Motions*, filed on July 27, 2026 [Docket No. 10], incorporated herein by reference.

**Relief Requested**

6. On September 11, 2026, the Court entered an order [Docket No. 263] denying the *Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Herbert Smith Freehills Kramer (US) LLP as Attorneys for the Debtor and Debtor in Possession Effective as of the Petition Date* [Docket No. 83]. By this Application, the Debtor seeks entry of the Order authorizing the retention and employment of Kirkland as its attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtor and Kirkland dated September 12, 2026 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to the Order and incorporated herein by reference.[2]

**Kirkland's Qualifications**

7. The Debtor seeks to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

8. Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re GoHealth, Inc.*, No. 26-10914 (TMH) (Bankr. D. Del. Jul. 23, 2026); *In re West Marine, Inc.*, No. 26-10794 (KBO) (Bankr. D. Del.

[2] On September 4, 2026, the Court entered the *Order Authorizing the Retention and Employment of Young Conaway Stargatt & Taylor, LLP as Co-Counsel for the Debtor, Effective as of the Petition Date* [Docket No. 248], which authorized the retention and employment of Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as co-counsel for the Debtor. Young Conaway shall handle matters that the Debtor may encounter that cannot be handled appropriately by Kirkland because of a conflict of interest. It is intended that the services of Young Conaway shall complement, and not duplicate, the services to be rendered by Kirkland. Moreover, the responsibilities of Young Conaway shall be confined to discrete legal matters that are distinct from the matters handled by Kirkland. Young Conaway shall act on its own and will not act under the direct supervision of Kirkland.

May 17, 2026); *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Sept. 18, 2025); *In re Marelli Automotive Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. Aug. 25, 2025); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. Jul. 24, 2025).[3]

9. In preparing for its representation of the Debtor in this chapter 11 case, Kirkland has become familiar with the Debtor's business and many of the legal issues that have arisen, as well as the potential legal issues that may arise, in the context of this chapter 11 case. The Debtor believes that Kirkland is both well-qualified and uniquely able to represent the Debtor in this chapter 11 case in an efficient and timely manner.

**Services to be Provided**

10. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtor requests the retention and employment of Kirkland to render the following legal services:

a. advising the Debtor with respect to its powers and duties as debtor in possession in the continued management and operation of its businesses and properties;

b. advising and consulting on the conduct of this chapter 11 case, including all of the legal and administrative requirements of operating in chapter 11;

c. attending meetings and negotiating with representatives of creditors and other parties in interest;

d. taking all necessary actions to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor, and representing the Debtor in negotiations concerning litigation in which the Debtor is involved, including objections to claims filed against the Debtor's estate;

e. preparing pleadings in connection with this chapter 11 case, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtor's estate;

[3] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Kirkland.

f. representing the Debtor in connection with obtaining authority to continue using cash collateral and postpetition financing;

g. advising the Debtor in connection with any potential sale of assets;

h. appearing before the Court and any appellate courts to represent the interests of the Debtor's estate;

i. advising the Debtor regarding tax matters;

j. taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k. performing all other necessary legal services for the Debtor in connection with the prosecution of this chapter 11 case, including: (i) analyzing the Debtor's leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtor's assets; and (iii) advising the Debtor on corporate and litigation matters.

**Professional Compensation**

11. Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with this chapter 11 case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure Kirkland will use in this chapter 11 case are the same as the hourly rates and corresponding rate structure that Kirkland uses in other restructuring matters, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required during the pendency of this chapter 11 case. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

12. Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13. Kirkland's current hourly rates for matters related to this chapter 11 case range as follows:[4]

| **Billing Category**[5] | **U.S. Range** |
|---|---|
| Partners | $1,395-$2,975 |
| Of Counsel | $875-$2,495 |
| Associates | $825-$1,775 |
| Paraprofessionals | $385-$775 |

14. Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

4 For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart. In addition, the rate ranges provided for in the Application may change if an individual leaves or joins Kirkland. In either case, Kirkland does not intend to update the ranges for such circumstances.

5 Although Kirkland does not anticipate using contract attorneys during this chapter 11 case, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtor with respect to fees billed by such attorneys. Any contract attorneys or non-attorneys who are employed by the Debtor in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

6 For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtor, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

15. The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in this chapter 11 case.

16. It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

17. To ensure compliance with all applicable deadlines in this chapter 11 case, from time-to-time, Kirkland utilizes the services of overtime secretaries. Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtor for overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtor consistent with prepetition practices.

18. Kirkland currently charges the Debtor $0.16 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in this chapter 11 case. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

**Compensation Received by Kirkland from the Debtor**

19. Because of the unique circumstances surrounding Kirkland's postpetition engagement, Kirkland has not requested a "special purpose retainer" (also known as an "advance payment retainer") as defined in Rule 1.5(d) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007) in this chapter 11 case.

20. Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

21. Kirkland did not incur any fees or expenses related to the Debtor's chapter 11 case before the Petition Date. Accordingly, as of the Petition Date, the Debtor did not owe Kirkland any amounts for legal services rendered before the Petition Date.

**Kirkland's Disinterestedness**

22. To the best of the Debtor's knowledge and as disclosed herein and in the Schwarzman Declaration, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and (b) Kirkland has no connection to the Debtor, its creditors, or other parties in interest, except as may be disclosed in the Schwarzman Declaration.

23. Kirkland will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Supporting Authority**

24. The Debtor seeks retention of Kirkland as its attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

25. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing: (A) the need for the employment; (B) the name of the [firm] to be employed; (C) the reasons for the selection; (D) the professional services to be rendered; (E) any proposed arrangement for compensation; and (F) to the best of the applicant's knowledge, all the [firm's] connections with: the debtor; creditors; any other party in interest; their respective attorneys and accountants; the United States trustee; and any person employed in United States trustee's office.

Fed. R. Bankr. P. 2014.

26. The Debtor submits that for all the reasons stated above and in the Schwarzman Declaration, the retention and employment of Kirkland as counsel to the Debtor is warranted. Further, as stated in the Schwarzman Declaration, Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and has no connection to the Debtor, its creditors, or other parties in interest, except as may be disclosed in the Schwarzman Declaration.

**Notice**

27. The Debtor has provided notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the parties included on the Debtor's list of thirty (30)

largest unsecured creditors; (c) the office of the attorney general for each of the states in which the Debtor operates; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) counsel to TRAG, LLC and RG Energy, LLC; (g) counsel to Omnis Fuel Technologies, LLC d/b/a Omnis Energy and Quantum Pleasants, LLC; and (h) any party that is entitled to notice pursuant to Bankruptcy Rule 2002. A copy of this Application is also available on the website of the Debtor's notice and claims agent at https://cases.stretto.com/pleasantspowerstation. In light of the nature of the relief requested, the Debtor submits that no other or further notice is required.

**No Prior Request**

28. No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 12, 2026
Houston, Texas

*/s/ David Hindman*
David Hindman
Omnis Pleasants, LLC d/b/a Pleasants Power Station
Chief Executive Officer