**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| OMNIS PLEASANTS, LLC, | ) | Case No. 26-11169 (KBO) |
| Debtor.[1] | ) | **Re: Docket No. 371** |

# INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN JUNIOR POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") promulgated by the United States Bankruptcy Court for the District of Delaware (the "Court"), seeking entry of an interim order (this "Interim Order") and a Final Order (as defined below), that, among other things:

(a) authorizes the Debtor to obtain postpetition financing on a junior secured basis, on the terms and conditions set forth herein and the term sheet attached as **Exhibit 1** hereto (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "DIP Term Sheet"),[2] by and among the Debtor and JMB Capital Partners Lending, LLC ("JMB" and together with its subsidiaries, affiliates, designees, and permitted assignees, the "Junior DIP Lender"), comprising a non-amortizing junior secured

---

1 The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is 1 Power Station Blvd., Belmont, West Virginia 26134.

2 Capitalized terms used but not defined in this Interim Order shall have the meanings ascribed to such terms in the DIP Term Sheet.

debtor-in-possession delayed-draw term loan facility, subordinated in right of payment and lien priority to the Prepetition Secured Obligations and the Adequate Protection Obligations (each as defined in the Cash Collateral Orders (as defined below), to the extent set forth herein, and together with any other obligations arising under the Senior Documents (as defined below), the "Senior Obligations") as set forth herein and in the DIP Term Sheet, in an aggregate principal amount of up to $75,000,000 (the "Junior DIP Facility"; and the commitments thereunder, the "DIP Commitments" and the term loans extended thereunder, the "DIP Loans"), pursuant to which (i) up to $20,000,000 of the DIP Commitments (the "Interim DIP Loans") shall be available upon the entry, and subject to the terms, of the Interim Order and the Cash Collateral Orders and (ii) up to the full amount of the DIP Commitments *less* the amount(s) drawn under the Interim DIP Loans (the "Subsequent DIP Loans" and, together with the Interim DIP Loans, the "DIP Borrowings" and, each, a "DIP Borrowing") shall be available upon the entry of the Final Order, in each case in accordance with the Interim Order or Final Order (as applicable) and the Cash Collateral Orders, and consistent with the Approved Budget (as defined below, subject to Permitted Variances (as defined in the Cash Collateral Orders)), the DIP Term Sheet, and, as applicable, the credit agreement for the Junior DIP Facility (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement" and, together with the DIP Term Sheet, the Intercreditor Provisions (as defined below), any ancillary, collateral, or related documents and agreements, as the case may be, this Interim Order, and the Final Order, each as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "DIP Documents");

(b) authorizes the Debtor, on an interim basis, to: (i) execute, deliver, and perform under the DIP Term Sheet and the other DIP Documents, as applicable, and to perform all such other and further acts as may be required in connection therewith; (ii) incur all loans, advances, extensions of credit and financial accommodations, and pay all principal, interest, premiums or similar amounts, fees (including, without limitation, the Commitment Fee and the Exit Fee (in each case in accordance with and as defined in the DIP Term Sheet)), costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts under the Junior DIP Facility, whether or not such obligations arose before or after the date of entry of the Interim Order, whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration, or otherwise, in each case, in accordance with the DIP Term Sheet, including the Intercreditor Provisions, and this Interim Order (collectively, the "Junior DIP Obligations"); and (iii) perform such other and further acts as may be necessary, required, or desirable to implement and effectuate the terms of this Interim Order, the DIP Term Sheet, the other DIP Documents, and the transactions contemplated thereunder;

(c) authorizes the Debtor, on an interim basis, to grant to the Junior DIP Lender the Junior DIP Liens (as defined below) in all DIP Collateral (as defined below), as set

forth in this Interim Order, subject to the Carve Out (as defined below), and subject to the relative priorities set forth in this Interim Order;

(d) authorizes the Debtor, on an interim basis, to grant to the Junior DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, as well as liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, as further described herein, on all DIP Collateral and all proceeds thereof (including, effective upon entry of the Final Order, proceeds of Avoidance Actions (as defined below), Cash Collateral (as defined in the Cash Collateral Orders (as defined below)), and all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtor in any deposit or securities account or accounts as of the entry of this Interim Order), against the Debtor in respect of all Junior DIP Obligations, subject to the Carve Out, the Senior Obligations, the Senior Liens, the Senior Claims (as defined below), and the Intercreditor Provisions, as set forth in this Interim Order;

(e) authorizes the Debtor, on an interim basis, to use the proceeds of the Junior DIP Facility and the DIP Collateral, in accordance with the terms and conditions set forth in this Interim Order, the DIP Term Sheet, the Cash Collateral Orders, and the other DIP Documents;

(f) modifies the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Interim Order and the DIP Term Sheet, as set forth herein or therein;

(g) waives any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order and provides for the immediate effectiveness of this Interim Order;

(h) approves certain stipulations, waivers, and releases by the Debtor (and its applicable related parties and representatives) with respect to, *inter alia*, the Junior DIP Lender, the DIP Term Sheet, the Junior DIP Liens, and the Junior DIP Obligations;

(i) effective upon entry of the Final Order, approves the Debtor's waiver of the right to surcharge the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(j) effective upon entry of the Final Order, approves the Debtor's waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral;

(k) effective upon entry of the Final Order, waiving any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(l) (i) approves, on a final basis, the Commitment Fee and the Exit Fee in this Interim Order, and further, (ii) authorizes and directs the Debtor to make non-refundable,

irrevocable, and final payments on account of the principal, interest, fees (including the Commitment Fee and the Exit Fee, in each case, in accordance with the DIP Term Sheet), expenses and other amounts payable under the DIP Term Sheet, each as applicable, as such amounts become due and payable, all to the extent provided in, and in accordance with, this Interim Order, the DIP Term Sheet, and the Intercreditor Provisions; and

(m) schedules a final hearing (the "Final Hearing") on the Motion to consider entry of a final order (in form and substance acceptable to the Junior DIP Lender and reasonably acceptable to the Senior Secured Parties, the "Final Order" and, together with this Interim Order, the "DIP Orders") authorizing the relief requested in the Motion on a final basis and approving the form of notice with respect to such Final Hearing, which order shall be in form and substance acceptable to the Junior DIP Lender and reasonably acceptable to the Senior Secured Parties.

The Court, having considered the Motion, the DIP Term Sheet, the exhibits attached thereto, the declarations filed in support thereof, the evidence submitted, and the arguments proffered or adduced at the interim hearing held before this Court on November 18, 2026 (the "Interim Hearing"), and upon the record of the Chapter 11 Case; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable, and represents a sound exercise of the Debtor's business judgment, and is necessary for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. *Petition Date*. On July 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing the Chapter 11 Case.

B. *Debtor-in-Possession*. The Debtor continues to manage and operate its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Case.

C. *Committee Formation*. As of the date hereof, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official statutory committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code. On August 4, 2026, the U.S. Trustee filed the *Statement That Unsecured Creditors' Committee Has Not Been Appointed* [Docket No. 66] indicating an insufficient response to the U.S. Trustee's communication and contact for service on the committee.

D. *Jurisdiction and Venue*. This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case and the proceedings

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1.

E. *Debtor's Stipulations, Releases and Acknowledgments Regarding Junior DIP Lender and the Junior DIP Facility*. In requesting the Junior DIP Facility, and in exchange for and as a material inducement to the Junior DIP Lender to provide the Junior DIP Facility, the Debtor, for itself, its estate, and all representatives of its estate, admits, stipulates, acknowledges and agrees as follows:

(i) No Control. The Junior DIP Lender does not control the Debtor or its properties or operations, does not have authority to determine the manner in which the Debtor's operations are conducted, and is not a control person or insider (as defined in the Bankruptcy Code) of the Debtor or any of its affiliates by virtue of any of the actions taken in connection with this Interim Order, the Junior DIP Facility, the Junior DIP Liens, the Junior DIP Claims, the DIP Collateral, the Junior DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder.

(ii) No Claims, Defenses, or Causes of Action. As of the date hereof, there exist no claims, defenses or any other Cause of Action[4] of any nature or description whatsoever that may be asserted by the Debtor, its estate, predecessors, successors and assigns, against the Junior DIP Lender or any of its current, former and future affiliates, subsidiaries, funds or managed accounts, officers, directors, managers, members, equity holders, partners, principals, employees, representatives, agents, attorneys, advisors, consultants and other professionals, and the predecessors in interest, successors and assigns of each of the foregoing (collectively, the "Representatives"), in their capacities as such, in each case, arising from, in connection with, or related to this Interim Order, the Junior DIP Facility,

[4] The term "Cause of Action" means any action, cause of action, claim, counter-claim, cross-claim, defense, account, objection, challenge, offset, setoff, demand, liability, responsibility, dispute, remedy, indebtedness, obligation, guaranty, right, interest, indemnity, assertion, allegation, suit, controversy, proceeding, loss, damage, injury, reimbursement obligation, attorneys' fees, costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, whether assertable directly or derivatively, including, without limitation, all legal and equitable theories of recovery, arising under the Bankruptcy Code or applicable non-bankruptcy law, whether local, state or federal U.S. or foreign common law, statute, law, rule, regulation, or by contract, of every nature or description whatsoever.

the Junior DIP Liens, the Junior DIP Claims, the DIP Collateral, the Junior DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder.

(iii) Releases. Effective as of the date of entry of this Interim Order, the Debtor, on behalf of itself and its estate, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Junior DIP Lender and its Representatives (in their capacities as such) of and from any and all Causes of Action that the Debtor, its estate, predecessors, successors and assigns at any time had, now have or that their respective successors and assigns may have against the Junior DIP Lender and its Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or after the Petition Date and prior to the date of this Interim Order, in each case, arising under, in connection with or related to this Interim Order, the Junior DIP Facility, the Junior DIP Liens, the Junior DIP Claims, the DIP Collateral, the Junior DIP Obligations, the DIP Term Sheet or the transactions contemplated thereunder or hereunder, including, without limitation, (a) any claim or Cause of Action seeking avoidance, whether under chapter 5 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state or federal statute, common law, or otherwise, (b) any so-called "lender liability" or equitable subordination claims or defenses, (c) any claims or Causes of Action arising under the Bankruptcy Code, (d) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling (effective upon entry of the Final Order), surcharge (effective upon entry of the Final Order), recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to this Interim Order, the Junior DIP Facility, the Junior DIP Liens, the Junior DIP Claims, the DIP Collateral, the Junior DIP Obligations, the DIP Term Sheet or the transactions contemplated thereunder or hereunder, or (e) any claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection or priority of the Junior DIP Facility, the Junior DIP Liens, the Junior DIP Claims, the DIP Collateral, the Junior DIP Obligations, the DIP Term Sheet or the transactions contemplated thereunder or hereunder; *provided*, *however*, that nothing contained in this subparagraph (iii) shall relieve the Junior DIP Lender from fulfilling any of its commitments under, and in accordance with, the DIP Term Sheet.

(iv) Cash Collateral. Any and all of the Debtor's Cash Collateral (as defined in the Cash Collateral Orders) constitutes or will constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which the Junior DIP Lender has an interest, subject to the Senior Liens, the lien priorities set forth in paragraph 6(c), and the Intercreditor Provisions.

F. *Good Cause*. Good cause has been shown for the entry of this Interim Order and for the authorization of the Debtor to obtain financing pursuant to the DIP Documents (including the DIP Term Sheet), and the entry of this Interim Order is in the best interests of the Debtor, its estate, its creditors, and other parties in interest. The relief requested in the Motion is fair and

reasonable and in the best interest of the Debtor and its estate, and essential for the continued operation of the Debtor's business and the preservation of the value of the Debtor's assets.

G. *Need for Postpetition Financing*. The Debtor has an immediate and critical need to obtain postpetition financing pursuant to the Junior DIP Facility on an interim basis, in order to, among other things, (i) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Case; (ii) perform necessary repairs in connection with the Outages; (iii) fund any obligations benefiting from the Carve Out; (iv) continue the orderly operation of its business for the benefit of all its stakeholders; (v) maintain business relationships with customers, vendors, and suppliers; (vi) make payroll for its employees; and (vii) satisfy other working capital and operational needs, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Term Sheet, including the Approved Budget (subject to Permitted Variances). The Debtor's access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the Junior DIP Facility is necessary and vital to, among other things, preserve and maximize the value of the Debtor and its estate. The Debtor and its estate will be immediately and irreparably harmed if the financing under the Junior DIP Facility is not obtained pursuant to the terms of this Interim Order and, as applicable, the DIP Term Sheet. Entry of this Interim Order is necessary and appropriate to avoid such harm to the Debtor, its estate, and other parties in interest.

H. *No Junior Credit Available on More Favorable Terms*. The Debtor is unable to obtain junior financing or other financial accommodations from sources other than the Junior DIP Lender on terms more favorable than those provided under the Junior DIP Facility, the DIP Term Sheet and this Interim Order, including financing secured solely by liens on property of the Debtor and its estate that are not otherwise subject to a lien or secured solely by a junior lien on property

of the Debtor and its estate that is subject to a lien. The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtor is also unable to obtain adequate secured credit for money borrowed under sections 364(c)(1) and 364(c)(2) of the Bankruptcy Code without, among other things, the Debtor granting to the Junior DIP Lender (i) the Junior DIP Liens on all DIP Collateral, (ii) the Junior DIP Claims, and (iii) certain rights, benefits and protections to the Junior DIP Lender, in each case, upon the terms and subject to the conditions set forth in this Interim Order and in the DIP Term Sheet.

I. *Use of Junior DIP Facility Proceeds*. As a condition to providing the Junior DIP Facility, the Junior DIP Lender required, and the Debtor has agreed, that all proceeds of the DIP Loans shall be used and/or applied, consistent with the Approved Budget (subject to Permitted Variances), for, among others, the following purposes: (i) working capital, capital expenditures, and other general corporate purposes of the Debtor; (ii) professional fees and expenses of the Debtor's estate in administering the Chapter 11 Case (including fees incurred prior to the Closing Date), in accordance with the Bankruptcy Code and any orders of the Bankruptcy Court, as applicable; (iii) fees and expenses payable under the Junior DIP Facility, including, without limitation, the Commitment Fee, the Exit Fee, and professional fees and expenses of the Junior DIP Lender (including legal fees and expenses incurred prior to entry of the Interim Order and the Closing Date); (iv) interest and other amounts payable under the Junior DIP Facility and the DIP Documents; (v) funding of the Carve Out (including the Funded Reserve Account) and payment of the fees and expenses of the Debtor's Professional Persons in accordance with the Cash Collateral Orders and this Interim Order; (vi) interest, fees, expenses and other amounts owed or payable to the Senior Secured Parties, including legal fees and expenses of the Senior Secured

Parties' professionals and the Adequate Protection Obligations; and (vii) any other purpose not prohibited by this Interim Order or the Cash Collateral Orders, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Term Sheet; *provided* that the funding of the Carve Out (including the Funded Reserve Account), the payment of the fees and expenses of the Debtor's Professional Persons, the payment of the interest, fees, expenses and other amounts owed or payable to the Senior Secured Parties (including under the Cash Collateral Orders), and the payment of the fees, expenses, interest and other amounts payable under the Junior DIP Facility and the DIP Documents shall not be required to comply with, or be limited by, the Approved Budget (subject to Permitted Variances). For the avoidance of doubt, the occurrence of one or more budget variances, without more, shall not constitute an Event of Default under the DIP Term Sheet or the other DIP Documents.

J. *Senior Secured Parties' Consent & Adequate Protection*. On September 30, 2026, the Court entered the *Second Interim Order (I) Authorizing Postpetition Use of Prepetition Collateral, Including Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 298] (as in effect on the date hereof, the "Second Interim Cash Collateral Order" and, together with any subsequent interim or final order authorizing the Debtor's use of cash collateral, in form and substance acceptable to the Senior Secured Parties and the Junior DIP Lender to the extent it materially and adversely affects the Junior DIP Lender, the "Cash Collateral Orders"). TRAG LLC and RG Energy LLC (collectively, the "Senior Secured Parties" and each, a "Senior Secured Party") have consented to the Debtor's use of the Prepetition Collateral (as defined in the Cash Collateral Orders), including Cash Collateral, pursuant to the terms and conditions set forth in the Cash Collateral Orders, and such consent, together with the

Senior Secured Parties' consent to the entry of this Interim Order and the Debtor's entry into the Junior DIP Facility, the incurrence of the Junior DIP Liens, the Junior DIP Obligations, and the Junior DIP Claims, in each case, is conditioned upon the Cash Collateral Orders remaining in full force and effect, including the Adequate Protection Obligations and the Adequate Protection Package (each as defined in the Second Interim Cash Collateral Order) continuing to be granted to the Senior Secured Parties, and this Interim Order (including the Intercreditor Provisions) and the other DIP Documents being in form and substance acceptable (or, as applicable, reasonably acceptable) to the Senior Secured Parties. Nothing in this Interim Order shall modify or impair the Adequate Protection Obligations or the Adequate Protection Package granted to the Senior Secured Parties under the Cash Collateral Orders, or the Cash Collateral Orders, which remain in full force and effect. Paragraphs 6 and 7 of the Second Interim Cash Collateral are incorporated herein by reference as if fully set forth herein.

K. *Limitation on Charging Expenses against Collateral*. As a material inducement to the Junior DIP Lender's agreement to provide the Junior DIP Facility and to subject its liens and superpriority claims to payment of the Carve Out, the Senior Liens, the Senior Claims, and the Intercreditor Provisions, the Junior DIP Lender is entitled, effective upon entry of the Final Order and subject to the Intercreditor Provisions, and solely with respect to the Junior DIP Lender and the Junior DIP Obligations, to (i) a waiver of the equitable doctrine of "marshaling" or any similar doctrine, (ii) a waiver of the provisions of sections 506(c) of the Bankruptcy Code or any similar applicable law with respect to the DIP Collateral, and (iii) a waiver of the equities of the case exception under section 552(b) of the Bankruptcy Code.

L. *Proper Exercise of Business Judgment*. After considering all available alternatives, the Debtor has concluded, in the exercise of its business judgment, that the Junior DIP Facility

represents the best source of debtor-in-possession financing available at this time and is in the best interests of all stakeholders. Based on the Motion, the evidence submitted, and the record presented to the Court at the Interim Hearing, the terms of the Junior DIP Facility (i) were negotiated in good faith and at arm's length among the Debtor, the Junior DIP Lender, and their respective advisors, (ii) are fair, reasonable, and the best available to the Debtor under the circumstances, (iii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and (iv) are supported by reasonably equivalent value and fair consideration. Absent access to the Junior DIP Facility upon the terms set forth in this Interim Order and the DIP Term Sheet, the Debtor, its estate, its creditors, and other parties-in-interest will be immediately and irreparably harmed.

M. *Good Faith*. The Junior DIP Facility and the terms of the DIP Term Sheet and this Interim Order have been negotiated in good faith and at arm's length among the Debtor, the Junior DIP Lender, and their respective advisors and Representatives, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with, the Junior DIP Facility, the DIP Term Sheet and this Interim Order, including, without limitation, all loans, advances, extensions of credit and other financial accommodations made and guarantees issued pursuant to the DIP Term Sheet, shall each be deemed to have been extended by the Junior DIP Lender and each of its affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits and protections granted to the Junior DIP Lender (and each of the successors and permitted assigns thereof) pursuant to this Interim Order and the DIP Term Sheet (including, without limitation, all Junior

DIP Obligations, Junior DIP Liens, and Junior DIP Claims), shall be entitled to the protection of section 364(e) of the Bankruptcy Code to the fullest extent available under applicable law.

N. *Initial Budget*. The Debtor has prepared and delivered to the Junior DIP Lender and its advisors an initial budget, a copy of which is attached to this Interim Order as **Exhibit 2** (together with any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet and the other DIP Documents, the "Initial Budget"). The Initial Budget reflects, among other things, for the 13-week period commencing on or around the week of entry of this Interim Order, the Debtor's projected operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each one-week period covered thereby. The Initial Budget may be modified, amended, extended, and updated from time to time by delivery of a revised budget (each, a "Proposed Budget") in accordance with the DIP Term Sheet. If the Junior DIP Lender and the Senior Secured Parties approve the Proposed Budget in writing (with email from counsel to each of the Junior DIP Lender and the Senior Secured Parties being sufficient), then such Proposed Budget shall be deemed the "Approved Budget" for the period covered thereby. If the Junior DIP Lender and/or the Senior Secured Parties do not approve the Proposed Budget in writing, then the then-effective Approved Budget shall continue in effect and remain unchanged until an updated Approved Budget has been agreed. For purposes of this Interim Order, the Initial Budget shall be the Approved Budget (unless and until superseded by a subsequent Approved Budget in accordance with the DIP Term Sheet). The Approved Budget has been prepared by the Debtor, its management, and its advisors. The Debtor believes that the Approved Budget is reasonable under the circumstances. In determining to enter into the Junior DIP Facility as provided for herein, the Junior DIP Lender is relying, in part, on the Debtor's agreement to comply with the terms of this Interim Order and the other DIP

Documents, and to use good faith, commercially reasonable efforts to comply with the Approved Budget; *provided*, *however*, that, notwithstanding anything to the contrary in this Interim Order or the other DIP Documents, the Junior DIP Lender acknowledges and agrees that the Junior DIP Facility shall not be subject to a budget-variance covenant or any financial maintenance covenant, and the occurrence of one or more budget variances, without more, shall not constitute a default or Event of Default under the DIP Term Sheet, this Interim Order, or the other DIP Documents, regardless of the occurrence of any similar "Event of Default" as described under the Cash Collateral Orders.

O. *Notice*. Notice of the Motion and the Interim Hearing complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Rules.

P. *Immediate Entry*. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and 6003, and the Local Rules. Unless the relief set forth in this Interim Order is granted, the Debtor's estate will be immediately and irreparably harmed. Consummation of the Junior DIP Facility upon the terms set forth in this Interim Order and the DIP Term Sheet are consistent with the Debtor's exercise of its fiduciary duties. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and the Local Rules. The Motion and this Interim Order comply with the requirements of Local Rule 4001-2.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the declarations filed in support of the Motion, the evidence adduced at the Interim Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. *Motion Granted*. The interim relief sought in the Motion is hereby granted and the Junior DIP Facility is approved and authorized, on an interim basis, upon the terms and conditions set forth in this Interim Order and the DIP Term Sheet. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights inconsistent with this Interim Order, are hereby denied and overruled. This Interim Order shall become effective and enforceable immediately upon its entry.

2. *Authorization of Junior DIP Facility and DIP Term Sheet.*

(a) Authorization of DIP Term Sheet. The Debtor is authorized to enter into the Junior DIP Facility on an interim basis subject to the terms and conditions of this Interim Order, the DIP Term Sheet, and the Cash Collateral Orders. The Debtor is hereby authorized to (i) execute, deliver and perform all of its obligations under the DIP Term Sheet, the other DIP Documents (as the case may be), and this Interim Order; and (ii) execute, deliver and perform under any and all other instruments, certificates, agreements and other documents (including, without limitation, the execution and/or recordation of collateral, pledge and security documents, mortgages and deeds of trust (if applicable) and financing statements), and perform all such other and further acts that may be necessary, required or desirable for the Debtor to perform its obligations under the Junior DIP Facility, the DIP Term Sheet, the other DIP Documents (as the case may be), and this Interim Order and to implement the transactions contemplated thereunder and hereunder. Unless and until the DIP Credit Agreement and the other definitive DIP Documents are executed and delivered, the DIP Term Sheet and this Interim Order (and, upon its entry, the Final Order), and the Cash Collateral Orders shall be the sole documents governing the Junior DIP Facility and the Draws (as defined in the DIP Term Sheet) made prior to the Closing Date, and the

execution of definitive DIP Documents (other than the DIP Term Sheet and this Interim Order, including the Intercreditor Provisions) shall not be a condition to the Initial Draw (as defined in the DIP Term Sheet) or any Draw prior to the Closing Date.

(b) Authorization to Borrow Interim DIP Loans. The Debtor is hereby authorized to borrow the Interim DIP Loans and to incur and pay all applicable interest, premiums and fees (including, without limitation, the Commitment Fee and the Exit Fee (including the Initial Exit Fee and, if applicable, the Additional Exit Fee), each of which is hereby approved on a final basis), professional fees and expenses, costs, expenses, charges and other amounts payable hereunder and under the DIP Term Sheet, subject to the terms and conditions (including any payment priorities and any availability limitations and conditions precedent to such DIP Borrowing) set forth in the DIP Term Sheet, the Cash Collateral Orders, and this Interim Order (including the Intercreditor Provisions); *provided* that the Additional Exit Fee shall be fully earned only upon delivery of the Extension Notice, and the earned portion of the Exit Fee shall be payable solely from the proceeds of the DIP Loans, in each case as set forth in the DIP Term Sheet. The Debtor is hereby authorized to use the proceeds of the DIP Borrowings under the Junior DIP Facility solely in the manner and for the purposes expressly permitted under the DIP Term Sheet, this Interim Order, the Cash Collateral Orders, and the other DIP Documents.

(c) DIP Fees and Expenses; Indemnification. The Debtor is hereby authorized and directed to pay, as and when due, any and all (i) fees, premiums or other payments payable under the DIP Term Sheet (including, without limitation, the Commitment Fee and the Exit Fee, which, in the case of the Commitment Fee, shall be paid from the proceeds of the Initial Draw, as set forth in the DIP Term Sheet), (ii) subject to the DIP Documents and the Intercreditor Provisions, amounts due (or that may become due) in respect of the indemnification obligations

under the DIP Term Sheet, which shall be limited to actual losses, claims, damages, liabilities and reasonable and documented out-of-pocket expenses, and (iii) reasonable and documented out-of-pocket costs, expenses and disbursements of the Junior DIP Lender payable under the DIP Term Sheet and this Interim Order, including the reasonable and documented fees and expenses of Norton Rose Fulbright US LLP, as counsel to the Junior DIP Lender, and Morris James LLP, as local Delaware bankruptcy counsel to the Junior DIP Lender (the "Junior DIP Lender Advisors"); *provided* that no fees or expenses of any other counsel, financial advisor or other advisor to the Junior DIP Lender shall be reimbursable without the prior written consent of the Debtor and the Senior Secured Parties (not to be unreasonably withheld, conditioned, or delayed), and in the case of each of the foregoing clauses (i)-(iii), whether or not such payments, premiums, fees, costs, expenses or other amounts arose before or after the date of entry of this Interim Order, without the need to file fee or retention applications with the Court, and all such payments, premiums, fees, costs, expenses and other amounts are hereby approved. Such indemnity shall not extend to any loss, claim, damage, liability or expense (a) arising from the material breach of any obligation of such indemnitee under the DIP Documents, (b) arising from any dispute solely among indemnitees (other than any dispute that involves an act or omission of the Debtor), or (c) which a court of competent jurisdiction has determined by final, non-appealable judgment to have arisen from the gross negligence, bad faith, willful misconduct, or actual fraud of such indemnitee. In the case of the foregoing clause (iii), any invoices submitted for payment may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of

the attorney work product doctrine), shall be delivered to the Debtor, and shall be promptly paid by the Debtor, on a monthly basis as appropriate, upon receipt of any such invoices, subject to paragraph 12 with respect to fees and expenses incurred after the Initial Draw.

3. *Junior DIP Obligations*.

(a) Upon execution and delivery of the DIP Term Sheet, the DIP Term Sheet shall constitute valid, binding, enforceable, and nonavoidable obligations of the Debtor, and shall be fully enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any estate representative or trustee appointed in the Chapter 11 Case or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of the Chapter 11 Case or any such successor case (the "Successor Case"), in each case, in accordance with the terms of the DIP Term Sheet and this Interim Order.

(b) Upon execution and delivery of the DIP Term Sheet, the Debtor shall be liable for all Junior DIP Obligations, including, without limitation, all loans, advances, extensions of credit, financial accommodations, principal, interest, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, whether or not such obligations arose before or after the date of entry of this Interim Order, whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration, demand or otherwise, in each case, which may now or from time to time be owing by the Debtor to the Junior DIP Lender under the DIP Term Sheet or this Interim Order. Subject to the Intercreditor Provisions and the Waiting Period Procedures, the Junior DIP Obligations shall be due and payable, without notice or demand,

and the DIP Commitments shall automatically terminate on the Maturity Date (as defined in the DIP Term Sheet).

(c) All obligations incurred, payments made, and transfers or grants of security and liens set forth in this Interim Order and the DIP Term Sheet by the Debtor are granted to or for the benefit of the Debtor for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. No obligation, payment, transfer, or grant of liens and security interests under this Interim Order or the DIP Term Sheet to the Junior DIP Lender (including, without limitation, the Junior DIP Obligations, the Junior DIP Liens, and the Junior DIP Claims) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action or any other claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling (effective upon entry of the Final Order), surcharge (effective upon entry of the Final Order), recovery, or any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (in each case in accordance with and subject to the fee review procedures set forth in paragraph 12 hereof).

4. *No Obligation to Extend Credit*. The Junior DIP Lender shall have no obligation to make any loan or advance under the DIP Term Sheet, unless all of the conditions precedent to the making of such loan or advance by the Junior DIP Lender under the DIP Term Sheet and this Interim Order have been satisfied in full (or waived) in accordance with the terms of the DIP Term Sheet and this Interim Order, as applicable. Notwithstanding anything contained in this Interim

Order or the DIP Term Sheet to the contrary, in no event shall the aggregate principal amount of the DIP Loans available or outstanding under the DIP Term Sheet at any time (after giving effect to all DIP Borrowings previously made or requested) exceed the total DIP Commitments.

5. *No Duty to Monitor Compliance*. The Junior DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of DIP Collateral, and the Junior DIP Lender and its advisors may rely upon the Debtor's and its advisors' representations that the use of DIP Collateral complies with and is in accordance with the requirements of this Interim Order and the DIP Term Sheet.

6. *Junior DIP Liens.*

(a) Junior DIP Liens. Effective upon entry, and subject to the terms of this Interim Order and Cash Collateral Orders, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreements or other action to take possession or control of any DIP Collateral), as security for the prompt and complete payment and performance of all Junior DIP Obligations when due (whether at stated maturity, by acceleration or otherwise), the Junior DIP Lender is hereby granted valid, binding, enforceable, nonavoidable, and automatically and properly perfected liens and security interests (collectively, the "Junior DIP Liens") in all DIP Collateral, subject and subordinate to the Carve Out, the Senior Obligations, the Senior Liens, and the other Permitted Prior Liens, and subject to the relative priorities set forth in paragraph 6(c) of this Interim Order, the Cash Collateral Orders, and the Intercreditor Provisions; *provided* that the Junior DIP Liens on the DIP Account Funds shall have the priority set forth in paragraph 38 of this Interim Order.

(b) DIP Collateral. The term "DIP Collateral" means all of the Debtor's and its estate's right, title and interest in, to and under all of the Debtor's and its estate's assets and properties, including, but not limited to, the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: (i) all Collateral (as defined in the Cash Collateral Orders) securing the obligations owed to and/or the loans made by the Senior Secured Parties (the "Senior Collateral") under or in connection with the Prepetition Credit Documents (as defined in the Cash Collateral Orders), the Cash Collateral Orders, and/or the DIP Orders (as applicable) (collectively, the "Senior Documents") and/or subject to the liens and security interests granted to the Senior Secured Parties under the Senior Documents (such liens and security interests, together with the Prepetition Liens and the Adequate Protection Liens (each as defined in the Cash Collateral Orders), the "Senior Liens"); (ii) all Cash Collateral; (iii) the DIP Account Funds; (iv) any and all other assets of the Debtor (if any), including unencumbered assets, comprising contracts (including, without limitation, any Acceptable Stalking Horse Purchase Agreement (as defined in the DIP Term Sheet)), contract rights, licenses, general intangibles (including, without limitation, all payment intangibles), instruments (including, without limitation, promissory notes), equipment (including, without limitation, documents of title), accounts, documents, goods, vehicles, inventory, furniture, fixtures, commercial tort claims, cash, cash equivalents, accounts receivable, chattel paper, letters of credit and letter of credit rights, securities (whether or not marketable), limited liability company interests, investment property (including, without limitation, all of the issued and outstanding capital stock or equity interests of the Debtor's future subsidiaries (including any foreign subsidiaries), if any, all securities, accounts and security entitlements related thereto and all commodity accounts and contracts), guarantees, arbitration awards, money, rights to the payment of money (including, without limitation, tax refunds and any

other extraordinary payments), insurance, receivables, receivables records, securities accounts, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all present and future intercompany debt, fee interests in real property owned by the Debtor, all patents, copyrights, trademarks, service marks, all trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), together with all books and records relating to the foregoing, all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing, including insurance proceeds or other proceeds (as such terms are defined in the Uniform Commercial Code as in effect from time to time in the State of New York); (v) effective upon entry of the Final Order, all proceeds from any and all causes of action under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral; and (vi) effective upon entry of the Final Order, all proceeds from Avoidance Actions,[5] recoveries related thereto, and property received or recovered on account thereof. Notwithstanding anything to the contrary herein or in the DIP Term Sheet, the DIP Collateral shall not include, and no Junior DIP Lien shall be granted on or attach to, any of the following (collectively, the "Excluded Property"): (a) any intent-to-use trademark application prior to the filing and acceptance of a statement of use or amendment to allege use with respect thereto, to the extent that the grant of a lien thereon would impair the validity or enforceability of such application or any registration issuing therefrom; or (b) any asset or property to the extent that the grant of a lien thereon is prohibited by applicable law; *provided*, *however*, that notwithstanding anything to the contrary in the foregoing, the Excluded Property shall not include

[5] The term "Avoidance Actions" means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of any debtor or its estate or other authorized parties in interest under the Bankruptcy Code or other applicable law, including, without limitation, actions or remedies under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, fraudulent transfer laws.

any proceeds of such property; *provided*, *further*, that at such time as any property in clauses (a) or (b) (or the proceeds thereof) no longer constitutes Excluded Property, such property and the proceeds thereof shall immediately and automatically constitute DIP Collateral and the Junior DIP Liens shall immediately and automatically attach to all of the Debtor's right, title and interest in, to and under, such property, junior in all respects to any Senior Liens (which, for the avoidance of doubt, to the extent not already attached, shall attach immediately and automatically to such property). Any Junior DIP Lien on proceeds of Avoidance Actions shall be subject to the entry of the Final Order and junior to any Senior Liens, and such proceeds shall be turned over to the Senior Secured Parties consistent with the Intercreditor Provisions.

(c) Priority of Junior DIP Liens. The Junior DIP Liens shall have the following ranking and priorities, subject in all cases to the Carve Out, the Permitted Prior Liens (which shall include the Senior Liens), and the Intercreditor Provisions. As used herein, "Permitted Prior Liens" means the Senior Liens and any other valid, perfected, non-avoidable lien or security interest as of the Petition Date (including any such liens or security interests that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code):

(i) *Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Junior DIP Liens shall be valid, binding, continuing, enforceable, nonavoidable, fully and automatically perfected liens and security interests in all DIP Collateral, if any, that is not otherwise subject to a Permitted Prior Lien, junior only to the Carve Out and the Adequate Protection Liens (as defined in the Cash Collateral Orders).

(ii) *Junior Liens.* Pursuant to section 364(c)(3) of the Bankruptcy Code, the Junior DIP Liens shall be valid, binding, continuing, enforceable, nonavoidable, fully and automatically perfected junior liens and security interests in all DIP Collateral (including, without limitation, the Collateral (as defined in the Cash Collateral Orders)) that is subject to a Senior Lien or other Permitted Prior Lien, which Junior DIP Liens shall be subject and junior to such Senior Lien, other Permitted Prior Lien, and the Carve Out.

(iii) *Other Liens*. Except for the Carve Out, the Adequate Protection Liens, the Senior Liens, the other Permitted Prior Liens, the Senior Claims, and as otherwise provided in the Intercreditor Provisions, the Junior DIP Liens shall not be made subject or junior to, or *pari passu* with, (A) any lien, security interest or claim heretofore

or hereinafter granted in the Chapter 11 Case or any Successor Case, including any lien, security interest or claim granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor, (B) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise, (C) any intercompany or affiliate claim, lien or security interest of the Debtor or its affiliates, or (D) any other lien, security interest or claim arising under section 363 or 364 of the Bankruptcy Code or otherwise granted on or after the date hereof.

(d) To the fullest extent permitted by the Bankruptcy Code, subject to the DIP Term Sheet (including the Intercreditor Provisions) and the Cash Collateral Orders, any provision of any lease, license, contract or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person or entity, in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest, or proceeds thereof or other collateral related thereto, shall have no force or effect with respect to the transactions granting the Junior DIP Liens in any such fee, leasehold, interest, or other collateral, or in the proceeds of any assignment and/or sale thereof by the Debtor in favor of the Junior DIP Lender in accordance with the DIP Term Sheet and this Interim Order.

7. *Junior DIP Claims*. Pursuant to and to the extent permitted by sections 364(c)(1) and 364(e) of the Bankruptcy Code, the Junior DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor in the Chapter 11 Case and any Successor Case on account of the Junior DIP Obligations, junior and subordinate in all respects to the Senior Claims and the Carve Out, but otherwise with priority over any and all other secured claims, administrative expense claims, priority claims, and unsecured claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c) (effective upon entry of the Final Order), 507, 546, 726, 1113 or

1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code (the "Junior DIP Claims"); *provided*, *however*, that (a) the Junior DIP Claims shall be junior and subordinate to the Superpriority Claim (as defined in the Cash Collateral Orders) and all other claims of the Senior Secured Parties arising under or in connection with the Senior Documents (collectively, the "Senior Claims"), and (b) the Junior DIP Claims shall not have priority over any stalking horse bid protections approved by the Court in the Chapter 11 Case with respect to an Acceptable Stalking Horse Purchase Agreement, solely to the extent payable from the proceeds of an alternative transaction. The Junior DIP Claims shall (x) for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and (y) be subject and subordinate to the Carve Out and the Senior Claims. The Junior DIP Claims shall be payable by the Debtor and shall have recourse to all DIP Collateral, subject to the Carve Out, the Senior Claims, and the Intercreditor Provisions. The Junior DIP Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided in section 364(e) of the Bankruptcy Code, including in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

8. *Use of DIP Collateral.*

(a) The Debtor is hereby authorized to use the proceeds of DIP Loans in accordance with this Interim Order, the DIP Documents, the Cash Collateral Orders, and the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the DIP Term Sheet and this Interim Order (including the Carve Out); *provided* that the funding of the Carve Out (including the Funded Reserve Account), the payment of the fees and expenses of the Professional Persons, the payment of the interest, fees, expenses and other amounts owed or payable to the Senior Secured Parties (including under the Cash Collateral Orders), and the

payment of the fees, expenses, interest and other amounts payable under the Junior DIP Facility and the DIP Documents shall not be required to comply with, or be limited by, the Approved Budget. The Debtor's use of Collateral, including Cash Collateral, shall be governed by the Cash Collateral Orders absent prior written consent of the Senior Secured Parties or further order of the Court.

(b) Without the prior written consent of the Junior DIP Lender (as set forth in the DIP Term Sheet), the Senior Secured Parties, or order of the Court after notice and a hearing, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) outside the ordinary course of business, except as expressly permitted by the DIP Term Sheet (including pursuant to the Bidding Procedures or an Acceptable Stalking Horse Purchase Agreement). All proceeds from asset sales, indebtedness, insurance recoveries, condemnation, or otherwise, will be deposited and applied as required by this Interim Order (including paragraphs 37 and 39 hereof), the Cash Collateral Orders, and the DIP Term Sheet. No reinvestment of the net proceeds of any asset sales or other proceeds shall be permitted without the prior written consent of the Junior DIP Lender, in its sole discretion.

9. *Budget and Variance Reporting*. The Debtor shall deliver each Proposed Budget and each Variance Report to the Junior DIP Lender and the Senior Secured Parties in accordance with the DIP Term Sheet; *provided*, *however*, that, notwithstanding anything to the contrary in this Interim Order or the other DIP Documents, the Junior DIP Lender acknowledges and agrees that the Junior DIP Facility shall not be subject to a budget-variance covenant or any financial maintenance covenant, and the occurrence of one or more budget variances, without more, shall not constitute a default or Event of Default under the DIP Term Sheet, this Interim Order, or the

other DIP Documents, regardless of the occurrence of any similar "Event of Default" as described under the Cash Collateral Orders.

10. *Weekly Fee Statement Reporting*. Beginning on the first Friday after entry of the Interim Order, the Debtor shall provide the Junior DIP Lender and Norton Rose Fulbright US LLP with a weekly report reflecting the aggregated contents of the Weekly Statements (or Final Statements, as applicable) provided by the Professional Persons.

11. *Adequate Protection for the Senior Secured Parties*. Paragraphs 6 and 7 of the Second Interim Cash Collateral are incorporated herein by reference as if fully set forth herein. Subject to the following proviso, nothing herein modifies, impairs, or expands the Adequate Protection Obligations or the Adequate Protection Package; *provided* that the DIP Bank Account shall also constitute Collateral.

12. *Fees and Expenses*. The Junior DIP Lender professionals shall not be required to file fee applications with the Court with respect to any fees or expenses payable hereunder, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall, by email, be provided to counsel to the Debtor and the U.S. Trustee (the "Fee Notice Parties"); *provided*, *however*, that if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within five (5) business days after delivery of such invoices (the "Fee Objection Period"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and

expenses shall be promptly paid by the Debtor, and, in any event, no later than three (3) business days after expiration of the Fee Objection Period; *provided further*, *however*, that if a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, the undisputed portion shall promptly be paid by the Debtor, and in any event, no later than three (3) business days after expiration of the Fee Objection Period, and the disputed portion shall only be paid upon resolution of such objection by the applicable parties or by order of the Court. Any hearing on an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice shall be limited to the reasonableness of the fees, costs and expenses, as well as the adequacy of documentation supporting same, that are the subject of such objection.

13. *Reservation of Rights*. Notwithstanding anything herein to the contrary, but subject to the DIP Term Sheet, the Intercreditor Provisions, and the Cash Collateral Orders, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Junior DIP Lender to seek any other or supplemental relief in respect of the Debtor; (b) the rights of the Junior DIP Lender under the DIP Term Sheet, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Junior DIP Lender. Notwithstanding anything contained herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's or

any party-in-interest's right to oppose (on an emergency basis if need be) any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

14. *Amendments*. Without the need for further notice to or approval of this Court, the Debtor is authorized to execute, deliver and perform under one or more amendments, waivers, consents, or other modifications to and under the DIP Term Sheet, in each case, in accordance with the provisions of the DIP Term Sheet governing amendments thereto (and otherwise in form and substance acceptable to the Junior DIP Lender and reasonably acceptable to the Senior Secured Parties); *provided*, *however,* that (i) any amendment, waiver, consent, or other modification that (a) shortens the maturity of the extensions of credit thereunder; (b) increases the aggregate commitments thereunder; (c) increases the rate of interest or any fee payable thereunder; or (d) is otherwise material (each, a "Material DIP Amendment"), shall be subject to the Court's approval, and (ii) no amendment or modification to the DIP Term Sheet shall be made without the prior written consent of the Senior Secured Parties (such consent not to be unreasonably withheld, conditioned, or delayed) and the Junior DIP Lender (email from counsel to the Senior Secured Parties and the Junior DIP Lender, as applicable, being sufficient).

15. *Modification of Automatic Stay*. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without further notice to or order of this Court, to permit: (a) the Debtor to grant the Junior DIP Liens and the Junior DIP Claims, and to perform such acts as the Junior DIP Lender may request to assure the perfection and priority of the Junior DIP Liens; (b) the Debtor to incur all liabilities and obligations, including all of the Junior DIP Obligations, to the Junior DIP Lender as contemplated under this Interim Order and the DIP Term Sheet; (c) the Debtor to pay all amounts required hereunder and under the DIP Term

Sheet; (d) the Junior DIP Lender to retain and apply payments made in accordance with the terms of this Interim Order and the DIP Term Sheet; (e) subject to paragraph 21(b) of this Interim Order, and the terms and conditions of the DIP Term Sheet (including the Intercreditor Provisions), the Junior DIP Lender to exercise, upon the occurrence and during the continuance of any DIP Termination Event, all rights and remedies provided for in this Interim Order, the DIP Term Sheet or applicable law; (f) the Debtor to perform under this Interim Order and the DIP Term Sheet, and to take any and all other actions that may be required, necessary, or desirable for the performance by the Debtor under this Interim Order and the DIP Term Sheet and the implementation of the transactions contemplated hereunder and thereunder; and (g) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Term Sheet.

16. *Perfection of Junior DIP Liens*.

(a) This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Term Sheet, in each case, subject to the DIP Term Sheet (including the Intercreditor Provisions) including, without limitation, the Junior DIP Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the Junior DIP Lender to the priorities granted herein (each,

a "Perfection Act") (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b) Without in any way limiting the automatically effective perfection of the liens granted hereunder and the DIP Term Sheet (including, without limitation, the Junior DIP Liens), subject to the DIP Term Sheet (including the Intercreditor Provisions), the Junior DIP Lender is hereby authorized, but not required, as it may determine for any reason, to execute, file and record (and to execute in the name of the Debtor, as its true and lawful attorneys, with full power of substitution, to the maximum extent permitted under applicable law) or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, and preserve the liens and security interests granted hereunder or under the DIP Term Sheet or to otherwise evidence such liens and security interests in all DIP Collateral; *provided*, *however*, that, whether or not the Junior DIP Lender determines to execute, file, record or otherwise effectuate any Perfection Act with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to objection, challenge, dispute, avoidance, recharacterization or subordination as of the entry of this Interim Order. Upon the request of the Junior DIP Lender, without any further consent of any party, the Junior DIP Lender and the Debtor are authorized, and the Debtor is directed, to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Junior DIP Lender to further validate, perfect, preserve and enforce the Junior DIP Liens. All such documents will be deemed to have been recorded and filed as of the entry of this Interim Order.

(c) A certified copy of this Interim Order may be (but need not be) filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and

all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Junior DIP Lender to take all actions referenced in this paragraph.

17. *Protection of Junior DIP Lender's Rights*.

(a) Subject to the Intercreditor Provisions and the Cash Collateral Orders, to the extent any Person has been noted as a secured party on any security document or otherwise has possession of or control with respect to any DIP Collateral after the date of entry of this Interim Order, then such Person shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Junior DIP Lender, and such Person shall comply with the instructions of the Junior DIP Lender (and, solely with respect to the Prepetition Collateral, the Senior Secured Parties) with respect to the exercise of such possession or control.

(b) Subject to entry of the Final Order, the Intercreditor Provisions, and the Cash Collateral Orders, in the event that any other person or entity, in each case, that holds a lien on or security interest in DIP Collateral that is junior or otherwise subordinate to the Junior DIP Liens receives any DIP Collateral or proceeds of DIP Collateral, or receives any payment on account of such lien or security interest in the DIP Collateral (whether in connection with the exercise of any right or remedy (including setoff), payment or distribution from the Debtor, mistake, or otherwise), prior to the Payment in Full of all Junior DIP Obligations (or the portion of the Junior DIP Obligations having priority with respect to such payment), such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the Junior DIP Lender, and shall immediately turn over all such proceeds

on account of Junior DIP Obligations having priority to the Junior DIP Lender in the same form as received, with any necessary endorsements, for application in accordance with the DIP Term Sheet, this Interim Order, and the Cash Collateral Orders.

(c) Except as expressly provided in this Interim Order (including with respect to the Senior Liens, the Senior Claims, and the Intercreditor Provisions) or the DIP Term Sheet, each of the Junior DIP Liens: (A) shall not be made junior or subordinated to (i) any lien, security interest or claim heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case, whether under section 364(d) of the Bankruptcy Code or otherwise, (ii) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise, (iii) any lien arising after the Petition Date including, without limitation, any lien or security interest granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor, or (iv) any intercompany or affiliate lien or claim; and (B) shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, 550 or 551 of the Bankruptcy Code.

18. *Maintenance of DIP Collateral*. Until such time as all Senior Obligations and Junior DIP Obligations are Paid in Full,[6] the Debtor shall continue to maintain all property, operational, and other insurance as required under the DIP Documents and applicable law. Upon

---

[6] The term "Paid in Full" or "Payment in Full" means (x) with respect to the Junior DIP Obligations, the irrevocable and indefeasible payment in full in cash of all Junior DIP Obligations, other than continuing indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently, and finally expired or shall have been terminated, cancelled, and discharged and (y) with respect to the Senior Obligations and any other obligations, charges, or amounts owed to the Senior Secured Parties, the irrevocable and indefeasible payment in full in cash of all such Senior Obligations, including other obligations, charges and amounts payable by the Debtor under the Senior Documents, other than continuing indemnification and expense reimbursement obligations for which no claim or demand has yet been asserted, and all commitments thereunder shall have irrevocably, permanently, and finally expired or shall have been terminated, cancelled, and discharged.

the entry of this Interim Order, and subject to the rights of Senior Secured Parties in respect of the DIP Collateral, the Junior DIP Lender shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the Debtor that in any way relates to the DIP Collateral (including all property damage and business interruption insurance policies of the Debtor, whether expired, currently in place, or to be put in place in the future). Notwithstanding the foregoing, and subject to the rights of the Senior Secured Parties in respect of the DIP Collateral, the Debtor shall take any actions reasonably requested by the Junior DIP Lender to have the Junior DIP Lender added as an additional insured and lender loss payee on each such insurance policy.

19. *Cash Management*. Until such time as all Junior DIP Obligations are Paid in Full, the Debtor shall maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order, the *Final Order (I) Authorizing the Debtor to (A) Continue to Operate Its Cash Management System and Honor Prepetition Obligations Related Thereto, (B) Maintain Existing Bank Accounts, and (C) Maintain Existing Business Forms; (II) Suspending the Time to Comply with 11 U.S.C. § 345(b); and (III) Granting Related Relief* [Docket No. 144], and any subsequent order of the Court authorizing the continued use of the cash management system. The Debtor shall not open any new deposit or securities account that is not subject to the liens and security interests of the Junior DIP Lender (in which case it shall be subject to the lien priorities and other provisions set forth in this Interim Order and the Cash Collateral Orders), excluding the Funded Reserve Account.

20. *Reporting*. The Debtor shall provide the Junior DIP Lender and Junior DIP Lender Advisors with the reporting and other information required to be provided to the Junior DIP Lender under the DIP Term Sheet. Without limiting the requirements contained herein or in the DIP Term

Sheet, the Debtor shall provide the Junior DIP Lender and its counsel and the Senior Secured Parties with the Approved Budget, each Proposed Budget, and each Variance Report (contemporaneously with when the same is required to be delivered under the DIP Term Sheet). Nothing herein shall limit any covenant, reporting requirement, or consent right in favor of the Senior Secured Parties under the Senior Documents, the Cash Collateral Orders, and/or the Intercreditor Provisions.

21. *DIP Termination Events; Exercise of Remedies.*

(a) DIP Termination Events. The occurrence of an Event of Default (as defined in the DIP Term Sheet), shall constitute a "DIP Termination Event" under this Interim Order (each a "DIP Termination Event," and the date upon which such DIP Termination Event occurs, the "DIP Termination Date"), unless waived in writing by the Junior DIP Lender and, where applicable, by the Senior Secured Parties (in each case, as set forth in the DIP Term Sheet).

(b) Remedies Upon DIP Termination Event. Subject in all respects to the DIP Term Sheet, including the Intercreditor Provisions (including the standstill set forth in paragraph 37 hereof) and the rights and remedies of the Senior Secured Parties, upon the occurrence and during the continuation of a DIP Termination Event, the Junior DIP Lender may deliver written notice (including via email) of the occurrence of such DIP Termination Event to counsel to the Debtor, the Senior Secured Parties, and the U.S. Trustee (the "Remedies Notice"[7] and such date, the "DIP Termination Declaration Date"), and, without further notice to, hearing of, application to, or order from the Court, subject to the expiration of the Waiting Period (as defined below), the automatic stay provisions of section 362 of the Bankruptcy Code shall be

[7] For the avoidance of doubt, the Remedies Notice, or any other notice contemplated under this paragraph 21, may be included in the Carve Out Trigger Notice.

vacated and modified to the extent necessary to permit the Junior DIP Lender to (in each case, subject to the Carve Out): (i) deliver a Carve Out Trigger Notice; (ii) declare the termination, reduction or restriction of the DIP Commitments (to the extent any such commitment remains), whereupon the DIP Commitments shall be terminated, reduced, or restricted; (iii) declare the Junior DIP Obligations then outstanding to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtor; (iv) upon written election by the Junior DIP Lender to the Debtor, charge interest at the default rate under the DIP Term Sheet on the outstanding DIP Loans; and (v) subject to this Interim Order and the rights and remedies of the Senior Secured Parties, take any other action or exercise any other right or remedy permitted under the DIP Term Sheet, this Interim Order, or applicable law (the procedures set forth in this paragraph 21(b), the "Waiting Period Procedures"); *provided* that, notwithstanding anything to the contrary in this Interim Order or the DIP Documents, so long as there are any Senior Obligations outstanding, the Junior DIP Lender shall have no right and shall take no action to foreclose upon, or recover in connection with, the Junior DIP Liens on the DIP Collateral, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral (other than with respect to the DIP Account Funds following the Maturity Date and the expiration of the Waiting Period, and subject to the priorities set forth herein and in the DIP Term Sheet with respect to such funds); *provided*, *further*, that, even if the Maturity Date occurs and the Junior DIP Obligations are accelerated, the Junior DIP Lender shall not sell any DIP Collateral without the consent of the Senior Secured Parties. The Debtor may seek an emergency hearing before the Court (an "Emergency Hearing") solely during the period beginning on the DIP Termination Declaration Date and through the date that is five (5) business days after the DIP Termination Declaration Date (such period, the "Waiting Period"). If an Emergency Hearing

cannot be scheduled prior to the expiration of the Waiting Period, the Waiting Period shall be deemed automatically extended until such time as the matter can be heard by the Court. During the Waiting Period, the Debtor shall continue to have the right to use DIP Collateral (including, without limitation, Cash Collateral) in accordance with the terms of this Interim Order, the Cash Collateral Orders, and the Approved Budget (subject to Permitted Variances), solely to pay any expenses necessary to (i) preserve the Debtor's going-concern value, (ii) contest, in good faith, the occurrence of the Event of Default (other than, for the avoidance of doubt, the occurrence of the Maturity Date under the DIP Documents), and (iii) fund the Carve Out.

(c) Unless the Court orders otherwise during the Waiting Period, following the expiration of the Waiting Period, without further notice to, hearing or order from the Court, and subject in all respects to the DIP Term Sheet and the Intercreditor Provisions, the automatic stay of section 362 of the Bankruptcy Code shall automatically be vacated and modified to the extent necessary to permit the Junior DIP Lender to exercise any and all rights and remedies available to it under this Interim Order, the DIP Term Sheet, and applicable law.

22. *No Waiver by Failure to Seek Relief.* The rights and remedies of the Junior DIP Lender are cumulative and not exclusive of any rights or remedies that the Junior DIP Lender may have under the DIP Term Sheet, applicable law or otherwise. The failure or delay on the part of the Junior DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Term Sheet or applicable law, as the case may be, shall not constitute a waiver of any of its rights hereunder, thereunder or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Interim Order or the other DIP Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Interim Order or the other DIP

Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Term Sheet. No consent, approval, or similar rights of the Junior DIP Lender under the DIP Documents shall be implied by any inaction or acquiescence by the Junior DIP Lender.

23. *Carve Out.*

(a) *Carve Out*. As used in this Interim Order, the term "Carve Out" means an amount equal to the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (collectively, the "Statutory Fees"), without regard to the notice set forth in clause (iii) below; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, without regard to the notice set forth in clause (iii) below; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, excluding any success or transaction fees (the "Allowed Professional Fees"), incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and by the creditors' committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Junior DIP Lender and/or the Senior Secured Parties, as applicable, of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the Junior DIP Lender and/or the Senior Secured Parties of the

Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap," of which the foregoing $500,000 shall be funded into the Funded Reserve Account (as defined herein)). The "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Junior DIP Lender and/or the Senior Secured Parties, as applicable, to the Debtor, its lead restructuring counsel, the U.S. Trustee, and counsel to the creditors' committee (if any), which notice may be delivered upon the occurrence and during the continuation of an Event of Default and termination of the Debtor's right to use Cash Collateral, as applicable, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b) *Delivery of Weekly Fee Statements*. Not later than 7:00 p.m. (New York time) on the third business day of each week starting with the first full calendar week following the entry of the Second Interim Cash Collateral Order, each Professional Person shall deliver to the Debtor a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtor (each such statement, a "Weekly Statement"); *provided* that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date, and the Debtor shall cause such

Weekly Statement and Final Statement to be delivered promptly to the Junior DIP Lender and the Senior Secured Parties. If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserve with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c) *Carve Out Reserves.*

(i) Commencing with the week ended October 10, 2026, and on or before the Thursday of each week thereafter, the Debtor shall utilize all cash on hand as of such date and, to the extent insufficient, any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statements delivered on the immediately prior Wednesday to the Debtor, the Senior Secured Parties, and the Junior DIP Lender, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (B) the Post-Carve Out Trigger Notice Cap, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the two weeks occurring after the most recent Calculation Date. The Debtor shall deposit and hold such amounts in a segregated account maintained by the Debtor in trust (the "Funded Reserve Account") to pay such Allowed Professional Fees (the "Funded Reserves") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from the Funded Reserve Account.

(ii) On the day on which a Carve Out Trigger Notice is given by the Senior Secured Parties and/or the Junior DIP Lender, as applicable, to the Debtor with a copy to counsel to the creditors' committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtor to, and the Debtor shall, utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees, and the Debtor shall deposit and hold such amounts in a segregated account maintained by the Debtor in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtor to utilize all cash on hand as of

such date, including cash in the Funded Reserve Account, and any available cash thereafter held by the Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap, and the Debtor shall deposit and hold such amounts in a segregated account maintained by the Debtor in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.

(d) *Application of Carve Out Reserves.*

(i) All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of paragraph 23(a) (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until the Pre-Carve Out Amounts are indefeasibly paid in full, and, if the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph 23(d)(iii), all remaining funds shall be distributed first to the Senior Secured Parties on account of the Senior Obligations until Paid in Full, then to the Junior DIP Lender on account of the Junior DIP Obligations until Paid in Full, and thereafter in accordance with applicable rights and priorities as of the Petition Date and as otherwise set forth in the Cash Collateral Orders and the DIP Order.

(ii) All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of paragraph 23(a) (the "Post-Carve Out Amounts"), and, if the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph 23(d)(iii), all remaining funds shall be distributed to the Senior Secured Parties until the Senior Obligations are Paid in Full, then to the Junior DIP Lender on account of the Junior DIP Obligations until Paid in Full.

(iii) Notwithstanding anything to the contrary in the Prepetition Credit Documents, the Second Interim Cash Collateral Order, or the DIP Orders, if either of the Carve Out Reserves is not funded in full in the amounts set forth in paragraph 23(c), then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively (subject to the limits contained in the Post-Carve Out Trigger Notice Cap), shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in paragraph 23(c), prior to making any payments to the Senior Secured Parties and/or the Junior DIP Lender, as applicable.

(iv) Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Credit Documents, or the DIP Orders, following delivery of a Carve Out Trigger Notice, neither the Senior Secured Parties nor the Junior DIP Lender shall sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but the Senior Secured Parties shall have a first-lien and

automatically perfected security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Senior Secured Parties until the Senior Obligations are Paid in Full and thereafter to the Junior DIP Lender until the Junior DIP Obligations are Paid in Full. Notwithstanding the foregoing, any remaining funds in the Carve Out Reserves attributable to DIP Account Funds shall be paid first to the Junior DIP Lender until the Junior DIP Obligations are Paid in Full.

(v) Further, notwithstanding anything to the contrary in the DIP Orders, (A) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described herein), and (B) in no way shall the Initial Budget, any subsequent Approved Budget, the Carve Out, the Post-Carve Out Trigger Notice Cap or the Carve Out Reserves, or any of the foregoing, be construed as a cap or limitation on the amount of Statutory Fees or the Allowed Professional Fees due and payable by the Debtor. For the avoidance of doubt and notwithstanding anything to the contrary in the Prepetition Credit Documents or the Second Interim Cash Collateral Order, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, the Prepetition Secured Obligations, the Junior DIP Claims, the Junior DIP Liens, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations and/or the Junior DIP Obligations. Disbursements by the Debtor from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Term Sheet or otherwise increase or reduce the Junior DIP Obligations.

(e) *Payment of Allowed Professional Fees Prior to Termination Declaration Date*. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(f) *Payment of Allowed Professional Fees on or After the Termination Declaration Date*. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date or the Maturity Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(g) *No Direct Obligation to Pay Allowed Professional Fees*. None of the Senior Secured Parties nor the Junior DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Senior Secured Parties and/or the Junior DIP

Lender, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

24. *Limitations on Use of DIP Collateral, Carve Out or Other Funds*. Notwithstanding anything contained in this Interim Order or any other order of the Court to the contrary, no DIP Collateral, DIP Loans, proceeds of any of the foregoing, any portion of the Carve Out, or any other funds, may be used (nor shall any professional fees, costs, or expenses be paid or applied in connection therewith) by the Debtor, any statutory or non-statutory committees appointed or formed in the Chapter 11 Case, or any other party-in-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or examiner with expanded powers appointed or elected for the Debtor in the Chapter 11 Case or any Successor Case), directly or indirectly:

(a) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, initiate, commence, support or prosecute (or finance the initiation or prosecution of) any claim, counterclaim, cross-claim, Cause of Action, suit, arbitration, proceeding, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any nature or description (whether for monetary, injunctive, affirmative relief or otherwise) against the Junior DIP Lender or its Representatives, including, without limitation, (i) any objection or challenge to the amount, validity, enforceability, extent, perfection or priority of the DIP Term Sheet, the Junior DIP Obligations (including, for the avoidance of doubt, the Commitment Fee and the Exit Fee), the Junior DIP Liens, or the DIP Collateral, (ii) any Avoidance Actions, (iii) any so-called "lender liability" claims, (iv) any claim or Cause of Action seeking the invalidation, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharging or recovery with respect to the Junior DIP Liens, the Junior DIP Obligations (including, for the avoidance of doubt, the Commitment Fee and the Exit Fee), the DIP Term Sheet, or the DIP Collateral, (v) any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, against the Junior DIP Lender or its Representatives;

(b) to object to, appeal or otherwise challenge this Interim Order, the Junior DIP Facility, the Junior DIP Obligations (including, for the avoidance of doubt, the Commitment Fee and the Exit Fee), the Junior DIP Liens, the DIP Term Sheet or the transactions contemplated hereunder or thereunder; *provided* that nothing herein shall impair the rights of such parties to object to the entry of the Final Order;

(c) to object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections, or benefits granted to the Junior DIP Lender under this Interim Order or the DIP Term Sheet (other than to contest whether a DIP Termination Event has occurred and is continuing, the propriety of the Junior DIP Lender's termination and/or acceleration of the Junior DIP Obligations, or the calculation of the amounts owed thereunder);

(d) to object to or seek to prevent, hinder, interfere with or otherwise delay the Junior DIP Lender's assertion, enforcement, exercise of remedies or realization upon any DIP Collateral in accordance with this Interim Order, the DIP Term Sheet or the other DIP Documents (as applicable) (other than to contest whether a DIP Termination Event has occurred and is continuing, the propriety of the Junior DIP Lender's termination and/or acceleration of the Junior DIP Obligations, the calculation of the amounts owed thereunder, or the appropriate remedy for any default);

(e) to seek or request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code, or otherwise, that is senior to or *pari passu* with the Junior DIP Liens or the Junior DIP Claims from a party other than the Junior DIP Lender or the Senior Secured Parties, unless such financing is sufficient to cause the Payment in Full of the Senior Secured Obligations and the Payment in Full of all Junior DIP Obligations at the closing of such financing (or as otherwise agreed in writing by the Junior DIP Lender);

(f) to seek or request authorization to obtain superpriority claims or liens or security interests (other than the Carve Out, the Senior Liens, the Superpriority Claim, any other liens, claims, interests and encumbrances of the Senior Secured Parties, any liens or claims consented to by the Senior Secured Parties in accordance with the Intercreditor Provisions, and other liens or security interests expressly permitted under the DIP Term Sheet or the Cash Collateral Orders) in any portion of the DIP Collateral that are senior to or *pari passu* with the Junior DIP Liens, or the Junior DIP Claims unless permitted under the DIP Documents or the Cash Collateral Orders, or unless with respect to the Junior DIP Liens and Junior DIP Claims, all Junior DIP Obligations and claims granted to the Junior DIP Lender under the DIP Orders have been refinanced with the Junior DIP Lender's consent or have been Paid in Full (or as otherwise agreed in writing by the Junior DIP Lender), but subject to the Intercreditor Provisions;

(g) to seek or request to use DIP Collateral or sell or otherwise dispose of DIP Collateral, in each case, outside the ordinary course of business and not in accordance with this Interim Order, and the Approved Budget (subject to Permitted Variances), without the prior written consent of the Junior DIP Lender and the Senior Secured Parties;

(h) to seek to pay any material amount on account of any claims arising prior to the commencement of the Chapter 11 Case, unless such payments are (i) permitted by this Interim Order, (ii) permitted by any "first day" or "second day" order of the Court, any other order of the Court entered prior to entry of this Interim Order, any other order of the Court reasonably acceptable to the Junior DIP Lender and the Senior Secured Parties, or the Cash Collateral Orders, or made pursuant to a chapter 11 plan, (iii) permitted under the DIP Documents or otherwise consistent with the Approved Budget (subject to the

Permitted Variances), or (iv) agreed to in writing by the Junior DIP Lender (email from counsel to the Junior DIP Lender being sufficient); or

(i) in connection with any matters prohibited under the Cash Collateral Orders.

25. *Limitation on Charging Expenses*. Effective upon entry of the Final Order, and except to the extent of the Carve Out or as provided in this Interim Order, no costs or expenses of administration of the Chapter 11 Case or any Successor Case at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Junior DIP Lender upon the DIP Collateral shall be charged against or recovered from the DIP Collateral, whether pursuant to section 506(c) of the Bankruptcy Code, any other legal or equitable doctrine (including unjust enrichment) or otherwise, without the prior written consent of the Junior DIP Lender and the Senior Secured Parties, in their respective sole discretion, with respect to the DIP Collateral, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by the Junior DIP Lender or the Senior Secured Parties.

26. *No Marshaling*. Subject to entry of the Final Order, and the applicable Intercreditor Provisions, in no event shall the Junior DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Junior DIP Obligations, and all proceeds of the DIP Collateral shall be received and applied in accordance with this Interim Order, the DIP Term Sheet, and the Cash Collateral Orders. Further, subject to entry of the Final Order granting such relief, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Junior DIP Lender with respect to proceeds, products, offspring or profits of any DIP Collateral.

27. *Binding Effect; Successors and Assigns*. Immediately upon entry of this Interim Order, (i) the provisions of the DIP Term Sheet shall, subject to the Debtor's entry into the Junior DIP Facility, be binding on the parties thereto, and (ii) this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Case and any Successor Case, including without limitation, the Junior DIP Lender, the Senior Secured Parties, any committee appointed or formed in the Chapter 11 Case and any Successor Case, and their respective successors and permitted assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Case or any Successor Case, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor), and shall inure to the benefit of, as applicable, the Debtor, the Junior DIP Lender, the Senior Secured Parties, and their respective successors and permitted assigns; *provided*, for the avoidance of doubt, that the Junior DIP Lender shall have no obligation to make any loan, permit the use of DIP Collateral (including any Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of the Debtor in the Chapter 11 Case or any Successor Case. The Junior DIP Lender may not assign or participate any of its DIP Commitments or DIP Loans to any of the parties on file with the Junior DIP Lender and the Senior Secured Parties without the prior written consent of the Debtor and the Senior Secured Parties (except that no such consent shall be required while an Event of Default has occurred and is continuing), and any permitted assignee or participant shall, as a condition to such assignment or participation, become a party to and be bound by the DIP Term Sheet, this Interim Order, the Cash Collateral Orders, and the Intercreditor Provisions.

28. *No Modification of Interim Order*. Until and unless the Senior Obligations and the Junior DIP Obligations have been Paid in Full, the Debtor irrevocably waives the right to seek,

and shall not seek or consent to, directly or indirectly, without the prior written consent of the Junior DIP Lender and the Senior Secured Parties, (a) any modification, stay, vacatur or amendment to this Interim Order, (b) the allowance of any claim against the Debtor in the Chapter 11 Case or any Successor Case equal or superior to the Junior DIP Claims (other than the Carve Out, the Superpriority Claim, and other Senior Claims), (c) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the Junior DIP Liens, except as expressly permitted hereunder (including the Senior Liens), under the Cash Collateral Orders, or under the DIP Term Sheet, or (d) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Interim Order (other than the Cash Collateral Orders).

29. *Proceeds of Subsequent Financings*. Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all of the Junior DIP Obligations, either the Debtor, its estate, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in the Chapter 11 Case or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Interim Order or the DIP Term Sheet, then, unless otherwise agreed in writing by the Junior DIP Lender (to the extent of its consent rights under the DIP Term Sheet) and the Senior Secured Parties, all of the cash proceeds derived from such credit or debt intended to refinance the Junior DIP Obligations shall immediately be paid to the Senior Secured Parties until the Discharge of Senior Obligations, and then to the Junior DIP Lender on account of its Junior DIP Obligations pursuant to the DIP Term Sheet.

30. *Preservation of Rights Granted Under Interim Order.*

(a) Good Faith Under Section 364(e) of the Bankruptcy Code. The Junior DIP Lender has acted in good faith in connection with this Interim Order, the Junior DIP Facility and the DIP Term Sheet, and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and upon the record made at the Interim Hearing and during the Chapter 11 Case, the Junior DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. To the extent provided in section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order or the DIP Term Sheet are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect (i) the validity or enforceability of advances previously made hereunder or under the DIP Term Sheet by the Junior DIP Lender to the Debtor, (ii) the validity or enforceability of any obligation, indebtedness or liability incurred under this Interim Order or the DIP Term Sheet by the Debtor to the Junior DIP Lender, (iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or benefits granted hereunder or under the DIP Term Sheet, or (iv) the payment of any fees, costs, expenses or other amounts, in the case of each of the foregoing, prior to the actual receipt of written notice by the Junior DIP Lender, to be sent as of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification or vacatur, any such claim, lien, or security interest, right, privilege, remedy or benefit shall be governed in all respects by the original provisions of this Interim Order and the DIP Term Sheet.

(b) Survival. Notwithstanding anything contained herein or in the DIP Term Sheet to the contrary, the terms and provisions of this Interim Order and the DIP Term Sheet (including, without limitation, all of the claims, liens and security interests, rights, priorities,

privileges, remedies, benefits, and protections granted to the Junior DIP Lender under this Interim Order and the DIP Term Sheet), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties-in-interest, and shall be governed by the original provisions of this Interim Order and maintain their priorities as set forth in this Interim Order, and shall not be modified, impaired, or discharged by any order that may be entered (i) confirming any chapter 11 plan in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing the Chapter 11 Case, (iv) pursuant to which the Court abstains from hearing the Chapter 11 Case, or (v) approving the sale or disposition of any DIP Collateral (except as expressly permitted in the DIP Term Sheet), in each case, until all of the Senior Obligations and the Junior DIP Obligations have been Paid in Full (unless the Junior DIP Lender and the Senior Secured Parties have otherwise agreed in writing).

(c) Dismissal/Conversion. If any order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the Junior DIP Lender hereunder and under the DIP Term Sheet shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order and the DIP Term Sheet until all Junior DIP Obligations have been Paid in Full, subject to the terms of the DIP Term Sheet and the Intercreditor Provisions (and that all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections, notwithstanding such dismissal or conversion, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing this Interim Order, the DIP Term Sheet, and all of the

claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the Junior DIP Lender and the Senior Secured Parties.

31. *Loss or Damage to Collateral*. So long as the Junior DIP Lender complies with its obligations under the DIP Term Sheet and does not engage in willful misconduct, gross negligence, or actual fraud in respect thereof, (a) the Junior DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the Debtor.

32. *Proofs of Claim*. The Junior DIP Lender shall not be required to file a proof of claim or request for payment of administrative expenses in the Chapter 11 Case or any Successor Case in order to assert claims for payment or otherwise in respect of the Junior DIP Obligations. The Debtor's stipulations, acknowledgments and provisions of this Interim Order are deemed sufficient to and do constitute timely filed proofs of claim or requests for payment of administrative expenses in respect of such claims arising under the DIP Documents against the Debtor. Any order entered by the Court establishing a bar date in the Chapter 11 Case or any Successor Case, including the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 286], shall not apply to the Junior DIP Lender or the Junior DIP Obligations; *provided*, *however*, that, notwithstanding any order entered by the Court establishing a bar date in the Chapter 11 Case or any Successor Case to the contrary, the Junior DIP Lender, in its sole discretion, may (but is not

required to) file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Case and any Successor Case, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtor's Chapter 11 Case. Such consolidated or master proofs of claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by the Debtor to the applicable party, which instruments, agreements, or other documents will be provided upon reasonable written request to the Junior DIP Lender, as the case may be. Any proof of claim filed by or on behalf of the Junior DIP Lender shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

33. *Limitation of Liability*. Nothing in this Interim Order, the DIP Term Sheet or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Junior DIP Lender of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the Debtor or its affiliates in the operation of its business, its restructuring efforts or in connection with the administration of the Chapter 11 Case. In determining to make any loan or extension of credit under the DIP Term Sheet, the Junior DIP Lender shall not (a) be deemed to be in control of the operations or participating in the management of the Debtor, (b) owe any fiduciary duty to the Debtor or its creditors, shareholders (or other equity or membership interest holders) or estate, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of the Debtor (as such terms or any similar terms are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

34. *Payments Free and Clear*. Subject to the Carve Out and the DIP Term Sheet (including the Intercreditor Provisions), any and all payments or proceeds remitted to the Junior DIP Lender pursuant to the DIP Term Sheet, the other DIP Documents, this Interim Order, the Final Order (if and when entered) or any subsequent order of this Court shall be irrevocable (subject, solely in the case of certain professional fees for counsel to the Junior DIP Lender, to the fee review procedures set forth in paragraph 12 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge asserted or assessed by, through or on behalf of the Debtor or otherwise.

35. *Third-Party Beneficiary*. Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect, or incidental beneficiary; *provided* that the Senior Secured Parties shall be express third-party beneficiaries.

36. *Inconsistency*. In the event of any conflict or inconsistency between (x) the DIP Term Sheet and the terms of this Interim Order, the terms of this Interim Order, as applicable, shall govern, and (y) this Interim Order and the Cash Collateral Orders, the Cash Collateral Orders (except as to the Carve Out) shall govern and control; *provided* that this Interim Order shall govern with respect to the Carve Out. Unless expressly stated herein, nothing in the DIP Term Sheet nor any of the DIP Documents shall affect the Cash Collateral Orders, which remain in full force and effect in accordance with their terms, subject to (i) any pending objections and (ii) agreed upon extensions of the Challenge Period pursuant to the Cash Collateral Orders (including the meet and confer requirements therein). In the event of any dispute regarding whether there exists a conflict, the parties to the dispute may seek an emergency hearing before the Court, which shall have sole

jurisdiction to determine whether a conflict exists. To the extent the conflict pertains to whether or not an Event of Default has occurred or is continuing, then, pending the hearing, the Debtor shall continue to have the right to use DIP Collateral (including, without limitation, Cash Collateral) in accordance with the terms of this Interim Order, the Cash Collateral Orders, and the Approved Budget (subject to Permitted Variances), solely to: (i) preserve the Debtor's going-concern value, (ii) contest, in good faith, the occurrence of the Event of Default or the consequences thereof (other than, for the avoidance of doubt, the occurrence of the Maturity Date under the DIP Documents), and (iii) fund the Carve Out.

37. *Intercreditor Provisions*. The provisions of this paragraph 37 (together with the other subordination provisions of this Interim Order and the Intercreditor Provisions (as defined in the DIP Term Sheet), collectively, the "Intercreditor Provisions") shall govern the relative rights of the Senior Secured Parties and the Junior DIP Secured Parties. As used herein, "Junior DIP Secured Party" means the Junior DIP Lender and any other holder of any Junior DIP Obligations (collectively, the "Junior DIP Secured Parties").

(a) Subordination. Until the Payment in Full of all Senior Obligations (the "Discharge of Senior Obligations"), the Junior DIP Obligations and Junior DIP Liens are subordinated to the Senior Obligations and Senior Liens, regardless of the perfection, any defect in, or avoidance of any Senior Lien, and the Junior DIP Claims are junior to all Senior Claims and the Carve Out; *provided* that, pursuant and subject to paragraph 4 of the Second Interim Cash Collateral Order, solely to the extent (i) a party in interest for whom the Challenge Period has not expired or terminated with standing and requisite authority (other than the Debtor and the Junior DIP Secured Party as to which any Challenge is irrevocably waived and relinquished) timely files the appropriate papers and timely commences a Challenge challenging the Prepetition Lien and

Claim Matters prior to expiration or termination of the Challenge Period and (ii) a court of competent jurisdiction enters a final, non-appealable order granting the Challenge as to those findings, stipulations, and admissions that were expressly and successfully challenged in such Challenge as set forth in such order (a "Challenge Order"), then the Junior DIP Obligations and the Junior DIP Liens shall not be subordinated with respect to the assets subject to such successful Challenge. Nothing in this Interim Order shall override, abridge, modify or amend the provisions of the Cash Collateral Orders or expand any person's or entity's challenge rights (including any Challenge Period) under the Cash Collateral Orders.[8] Notwithstanding the foregoing or anything else in the Intercreditor Provisions, the payment blockage, turnover, and the lien subordination provisions thereof shall not apply to the DIP Account Funds (as defined in this Interim Order) or any payment therefrom, which shall be governed by paragraph 38 of this Interim Order.

(b) Consent Rights; Plan Voting. In addition to those consent rights of the Senior Secured Parties under the Cash Collateral Order, the Senior Secured Parties' consent (such consent not to be unreasonably withheld) shall be required for all material documents relating to the Junior DIP Facility and the DIP Documents, including this Interim Order, and any amendments thereto. Until the Discharge of the Senior Obligations, (a) the Junior DIP Lender shall be deemed to consent to any matter the Senior Secured Parties (in accordance with the Cash Collateral Orders) approve to the extent it does not materially and adversely affect the Junior DIP Lender or the Junior DIP Obligations; (b) to the extent the Junior DIP Lender otherwise has a consent right, the Junior DIP Lender shall not unreasonably withhold, delay, or condition such consent to any matter the Senior Secured Parties (in accordance with the Cash Collateral Orders) approve, unless otherwise

[8] Capitalized terms used but not otherwise defined in this paragraph 37(a) shall have the meanings ascribed to them in the Second Interim Cash Collateral Order.

expressly provided herein; and (c) no Junior DIP Secured Party may propose, support, vote for, or oppose any chapter 11 plan without the Senior Secured Parties consent.

(c) No Lien Challenge. No Junior DIP Secured Party may, directly or indirectly, pursue, initiate, contest, or challenge, or join, support, or fund any challenge to, the validity, priority, perfection, extent, or enforceability of the Senior Obligations, Senior Claims, or Senior Liens, or assert, file, prosecute or pursue, directly or indirectly, or support any other person or entity in asserting, filing, prosecuting or pursuing (directly or indirectly), any claim or cause of action, including any equitable subordination, recharacterization, or lender-liability claim or Avoidance Action against any Senior Secured Party.

(d) Application of Proceeds; Payment Blockage; Turnover. All proceeds of DIP Collateral, distributions, and enforcement recoveries shall be applied as follows: (A) with respect to any DIP Collateral that is subject to a Permitted Prior Lien: *first*, to the Carve Out; *second*, to the Senior Obligations until Paid in Full; *third*, to the Adequate Protection Obligations until Paid in Full; *fourth*, to the Junior DIP Obligations until Paid in Full; and *fifth*, to the Debtor or such other Person as may be lawfully entitled thereto; and (B) with respect to any unencumbered DIP Collateral, if any: *first*, to the Carve Out; *second*, to the Adequate Protection Obligations until Paid in Full; and *third*, to the Junior DIP Obligations until Paid in Full, subject in all respects to the payment blockage and turnover provisions set forth below (such that any amounts otherwise distributable to the Junior DIP Lender shall be turned over to the Senior Secured Parties and applied to the Prepetition Secured Obligations and the Adequate Protection Obligations until the Discharge of Senior Obligations); provided, however, that, notwithstanding the foregoing, pursuant and subject to paragraph 4 of the Second Interim Cash Collateral Order, solely to the extent (i) a party in interest for whom the Challenge Period has not expired or terminated with

standing and requisite authority (other than the Debtor and any Junior DIP Secured Party as to which any Challenge is irrevocably waived and relinquished) timely files the appropriate papers and timely commences a Challenge challenging the Prepetition Lien and Claim Matters by the Challenge Period and (ii) a court of competent jurisdiction enters a Challenge Order, then the turnover obligations of the Junior DIP Lender set forth herein shall not apply with respect to the assets subject to such successful Challenge.[9] No payment shall be made on any of the Junior DIP Obligations before the Discharge of Senior Obligations, other than (x) interest and fees payable, (y) the reasonable and documented fees and expenses of the Junior DIP Lender's professionals payable under paragraph 2(c) of this Interim Order, and (z) payments from Excess Sale Proceeds in accordance with paragraph 39 of this Interim Order, in each case, as set forth in and in accordance with the DIP Term Sheet and this Interim Order. Any amount received in breach of this subparagraph shall be held in trust for, and turned over to, the Senior Secured Parties. This subparagraph shall not apply to the DIP Account Funds or any payment therefrom.

(e) Standstill; Release of Liens. Unless and until the Discharge of Senior Obligations, no Junior DIP Secured Party may, without the Senior Secured Parties' consent, accelerate, enforce, exercise remedies or setoff, credit bid, or seek stay relief (other than with respect to the DIP Account Funds following the DIP Termination Date and the expiration of the Waiting Period). Unless and until the Discharge of Senior Obligations, the Senior Secured Parties shall exclusively control enforcement, and the Junior DIP Liens shall be automatically released on any disposition of DIP Collateral the Senior Secured Parties approve and upon the release of the Senior Liens. Junior DIP Secured Parties may file proofs of claim and take any action necessary

---

[9] Capitalized terms used but not otherwise defined in this paragraph 37(d) shall have the meanings ascribed to them in the Second Interim Cash Collateral Order.

to preserve their claims that is not adverse to the Senior Secured Parties. Notwithstanding the foregoing, upon the occurrence of clause (i) or clause (iii) of the definition of the Maturity Date, the Junior DIP Lender and the Senior Secured Parties agree to jointly control enforcement, which, for the avoidance of doubt, shall not alter the priority of the Senior Obligations or Junior DIP Obligations; provided, however, that the Junior DIP Lender cannot sell any DIP Collateral without the Senior Secured Parties' consent. The occurrence of an Event of Default under the DIP Documents shall terminate the DIP Commitments, but, until the Discharge of Senior Obligations, the Junior DIP Lender may not accelerate, exercise remedies, or receive payment of principal on account of such Event of Default except (a) as provided in paragraph 39 of this Interim Order or (b) as otherwise ordered by the Court following notice and a hearing. Any right of the Junior DIP Lender to credit bid shall be subject to the Intercreditor Provisions and to section 363(k) of the Bankruptcy Code.

(f) Acknowledgment Regarding Unencumbered Assets. The Junior DIP Secured Parties acknowledge that, as of the date hereof, the Debtor has informed the Junior DIP Secured Parties that the Cash Collateral Orders, including the Adequate Protection Package provided therein, remain in full force and effect in accordance with their terms, and that as a result the Debtor has no unencumbered assets or property.

(g) Prepayments. Voluntary Prepayments of the DIP Loans may be permitted subject to and in accordance with the DIP Term Sheet, and only following the Discharge of Senior Obligations (or with the prior written consent of the Senior Secured Parties) or, at any time and without such consent, from DIP Account Funds (subject to the priorities with respect to those DIP Account Funds as described in the DIP Term Sheet and this Interim Order). Mandatory

Prepayments may be permitted subject to and in accordance with the DIP Term Sheet from and after the Discharge of Senior Obligations.

(h) Bankruptcy Waivers. No Junior DIP Secured Party may (i) object to or condition any use of Cash Collateral, financing junior or otherwise subordinate to the Junior DIP Obligations (other than financing by the Senior Secured Parties), adequate protection, or carve-out approved by the Senior Secured Parties; (ii) seek adequate protection; (iii) oppose any credit bid by any of the Senior Secured Parties under section 363(k) of the Bankruptcy Code; (iv) assert any claim under section 506(c) or 552(b) of the Bankruptcy Code; (v) contest any section 1111(b) election by any of the Senior Secured Parties; (vi) seek dismissal or conversion of the Chapter 11 Case, or appointment of a trustee or examiner in the Chapter 11 Case; or (vii) assert marshaling.

38. *DIP Bank Account*. DIP Loan proceeds shall be funded into a segregated bank account to be opened or otherwise designated by the Debtor (the "DIP Bank Account"), which shall be subject to a four-party deposit account control agreement among the Debtor, the depository bank, the Senior Secured Parties, and the Junior DIP Lender, in form and substance acceptable to the Senior Secured Parties and the Junior DIP Lender (the "DACA"), to be entered into within thirty (30) days after the entry of the Final Order, subject to an automatic 30-day extension if the Debtor is using commercially reasonable efforts to obtain the DACA; *provided* that the Senior Secured Parties shall not exercise control over, or freeze or sweep, any DIP Account Funds until the Junior DIP Obligations are Paid in Full. Notwithstanding anything herein or in the Cash Collateral Orders, but subject in all respects to the Intercreditor Provisions, the Junior DIP Lender shall have a first-priority lien, subject only to the Carve Out, on the DIP Bank Account and all funds therein (the "DIP Account Funds"), and any Senior Lien or Superpriority Claim on or against the DIP Account Funds shall be junior to the Junior DIP Liens. Funds disbursed in accordance

with the Approved Budget shall cease to be DIP Account Funds. Only proceeds of the DIP Loans shall be deposited into the DIP Bank Account, and funds in the DIP Bank Account shall be disbursed solely in accordance with the Approved Budget (subject to the Permitted Variances) or to fund the Carve Out; *provided* that the Carve Out shall be funded as described in the DIP Term Sheet and this Interim Order.

39. *Sale Proceeds; Senior Reserve; Paydown*. Upon the consummation of the sale or other disposition of all or substantially all of the assets of the Debtor pursuant to section 363 of the Bankruptcy Code or otherwise (each, a "Sale Transaction"), and subject to the Carve Out, the Debtor shall utilize the cash proceeds from such Sale Transaction to fund a reserve into a segregated account (the "Segregated Account"), which proceeds and Segregated Account shall be subject to the Senior Liens pursuant to the Cash Collateral Orders, in an amount sufficient for the Payment in Full of all outstanding, and/or estimated to be owed or accruing, Senior Obligations, which amount shall be provided by the Senior Secured Parties to the Debtor and the Junior DIP Lender no later than three (3) business days before the closing of such Sale Transaction (or such later date as the Debtor, the Senior Secured Parties, and the Junior DIP Lender may agree). The Debtor shall not remove such proceeds from the Segregated Account absent further order of the Court or the consent of the Senior Secured Parties; *provided* that prior to making any distribution from the Segregated Account without a further order of the Court but with the consent of the Senior Secured Parties, the Debtor shall provide Industrial Accessories Company ("IAC") at least five (5) business days' prior written notice thereof. Subject to the Carve Out, any proceeds of a Sale Transaction in excess of (i) the amounts required for the Payment in Full of all outstanding, and/or estimated to be owed or accruing, Senior Obligations and funded into the Segregated Account and (ii) an amount equal to the amount of IAC's claim asserted against the Debtor (the "IAC Reserve,"

and the proceeds in excess of the amounts in clauses (i) and (ii) of this paragraph 39, the "Excess Sale Proceeds") shall be paid to the Junior DIP Lender upon the closing of such sale (or as soon as reasonably practicable thereafter) until the Junior DIP Obligations (including the Exit Fee) are Paid in Full. For the avoidance of doubt, the IAC Reserve shall be subject to any person or entity's right to object to or contest the IAC claim and related asserted lien, and the reservation of the IAC Reserve amount is not intended as a concession or acknowledgement that such claim or lien is valid or allowed. Notwithstanding anything to the contrary in the DIP Term Sheet, the Cash Collateral Orders, or this Interim Order, a payment to the Junior DIP Lender from Excess Sale Proceeds in accordance with this paragraph shall not violate the payment blockage or turnover provisions of the Intercreditor Provisions.

40. *Modification to the Cash Collateral Orders.* The occurrence of an Event of Default under the DIP Documents or of the DIP Termination Date (after giving effect to the Waiting Period) shall constitute an "Event of Default" and "Termination Date", as applicable, under and as defined in the Cash Collateral Orders.

41. *Effectiveness*. This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective as of the entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

42. *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

43. *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order. When used in this Interim Order, the word "including" shall not imply limitation.

44. *Necessary Action*. The Debtor is authorized to take any and all such actions as are necessary, required, or appropriate to implement and effectuate the terms of this Interim Order, the DIP Term Sheet and the transactions contemplated hereunder and thereunder.

45. *Retention of Jurisdiction*. The Court retains jurisdiction to hear, determine, interpret and, if applicable, enforce the terms of any and all matters arising from or related to the Junior DIP Facility, the DIP Term Sheet, and this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

46. *Final Hearing*. The Final Hearing shall be held on **December 18, 2026 at 3:00 p.m. (ET) (prevailing Eastern Time)**, and any objections to the final relief sought in the Motion shall be filed with the Court no later than **December 2, 2026 at 4:00 p.m. (prevailing Eastern Time)** and served upon the following: (a) co-counsel to the Junior DIP Lender, (i) Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, New York 10019, Attn: Robert M. Hirsh (robert.hirsh@nortonrosefulbright.com), Francisco Vazquez (francisco.vazquez@nortonrosefulbright.com), James A. Copeland (james.copeland@nortonrosefulbright.com) and (ii) Morris James LLP, 600 North King Street, Wilmington, Delaware 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com); (b) co-counsel to the Debtor, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg (joshua.sussberg@kirkland.com), and 333 West Wolf Point Plaza,

Chicago, Illinois 60654, Attn: Alexandra F. Schwarzman (alexandra.schwarzman@kirkland.com) and Gabriela Z. Hensley (gabriela.hensley@kirkland.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com), Robert F. Poppiti, Jr. (rpoppiti@ycst.com), S. Alexander Faris (afaris@ycst.com), and James C. Diver (jdiver@ycst.com); (c) counsel to the Senior Secured Parties, DLA Piper LLP (US), 1251 6th Avenue, New York, New York 10020, Attn: Kristine Manoukian (kristine.manoukian@us.dlapiper.com), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: R. Craig Martin (craig.martin@us.dlapiper.com), and 500 Eighth Street NW, Washington, D.C. 20004, Attn: Erik F. Stier (erik.stier@us.dlapiper.com); and (d) Office of the U.S. Trustee, U.S. Department of Justice, 844 North King Street, Room 2207, Wilmington, Delaware 19801, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov).

47. *Notice of Entry of Interim Order*. The Debtor shall, in accordance with Local Rule 9013-1(m)(iv), serve copies of this Interim Order on the parties that have been given notice of the Interim Hearing and on any party that has filed a request for notices with this Court.

**Dated: November 18th, 2026**
**Wilmington, Delaware**

**KAREN B. OWENS**
**CHIEF JUDGE**