**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| OMNIS PLEASANTS, LLC,[1] | ) | Case No. 26-11169 (KBO) |
| Debtor. | ) | **Re: Docket No. 86** |

**ORDER (I) AUTHORIZING AND APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures for the Sale of the Debtor's Assets, (II) Scheduling Certain Dates and Deadlines Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtor to Designate a Stalking Horse Bidder and Offer Bid Protections Related Thereto, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 86] (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order (this "Sale Order"): (a) approving the Sale

---

1 The last four digits of the Debtor's tax identification number are 2673. The location of the Debtor's principal place of business and the Debtor's service address is One Power Station Boulevard, Belmont, West Virginia, 26134.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures Order, the Bidding Procedures, or the Asset Purchase Agreement (as defined herein), as applicable.

Transaction by and between the Debtor (the "Seller") and Pleasants Power Generation, LLC (in its capacity as the purchaser of the Purchased Assets (as defined herein), the "Purchaser") to acquire certain assets as set forth in that certain asset purchase agreement attached hereto as **Exhibit 1** (the "Asset Purchase Agreement" and such assets, the "Purchased Assets"), including: (i) the Pleasants Power Station located in Belmont, West Virginia (the "Plant"), (ii) all inventory of the Business owned by Seller and other tangible personal property and/or improvements to real property associated with the Plant constituting Purchased Assets, (iii) the Debtor's Business Intellectual Property, and (iv) certain other assets and Assumed Liabilities;[3] (b) authorizing and approving the Debtor to enter into the Asset Purchase Agreement; (c) authorizing the Debtor to sell the Purchased Assets to the Purchaser free and clear of all Interests (as defined below) pursuant to section 363(f) of the Bankruptcy Code and the terms set forth in the Asset Purchase Agreement and this Sale Order; (d) authorizing the assumption and assignment of certain leases of nonresidential real property and other executory contracts in connection therewith; and (e) granting related relief; and upon the First Day Declaration and the *Declaration of Xander Hector in Support of Entry of the Order (I) Authorizing and Approving the Sale of the Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 394] (the "Sale Declaration") in support of the Sale Transaction; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the

[3] Any references in this Sale Order to specific assets being acquired or liabilities being assumed by the Purchaser pursuant to the Asset Purchase Agreement, including the term "Purchased Assets" or those terms and phrases used in subparagraphs (a)(i)-(iv) of this paragraph are for reference only and any and all assets to be acquired or liabilities to be assumed by the Purchaser are set forth in totality in the Asset Purchase Agreement. Notwithstanding anything to the contrary in this Sale Order, to the extent of any inconsistency between this Sale Order and the Asset Purchase Agreement with respect to assets being acquired or liabilities being assumed by the Purchaser, the Asset Purchase Agreement shall control in all respects.

*Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having entered the Stalking Horse Approval Order [Docket No. 355]; and the auction (the "Auction") for the Purchased Assets having occurred on November 12, 2026 in accordance with the Bidding Procedures; and the Debtor, in consultation with the Consultation Parties, having chosen Pleasants Power Generation, LLC as the Successful Bidder [Docket No. 383] for having the highest or otherwise best Qualified Bid; and this Court having reviewed and considered the Motion, the Asset Purchase Agreement, and any and all objections to the Sale Transaction; and this Court having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT:**[4]

[4] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**I. Notice.**

A. As evidenced by (i) publication of the Sale Notice in the *New York Times* on October 13, 2026 [Docket No. 321] and (ii) the certificates filed with the Court [Docket Nos. 104, 301, 330, 341, 360, and 377], proper, adequate, and sufficient notice of, and a reasonable opportunity to object or to be heard regarding the entry of this Sale Order, and the transactions contemplated under the Asset Purchase Agreement, including the assumption, assignment and/or transfer of the Assumed Contracts, have been provided to all parties entitled thereto. Such notice constitutes good and sufficient notice of, and a reasonable opportunity to object or be heard regarding, the Motion and the entry of this Sale Order under sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002 (including, without limitation, 2002(i)), 6004, and 6006, and Local Rule 2002-1(b). No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Motion or the entry of this Sale Order need be given to any entity.

B. In accordance with, and as provided by, the Bidding Procedures Order, the Debtor filed the *Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* on September 29, 2026 [Docket No. 292] (the "Initial Contract Assumption Notice") and the *Amended and Supplemental Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* on November 11, 2026 [Docket No. 366] (the "Amended Contract Assumption Notice," and, together with the Initial Contract Assumption Notice, the "Contract Assumption Notices"), including the potential list of executory contracts and unexpired leases to be assumed in connection with the Sale Transaction, attached as Schedule 1 to the Contract Assumption Notices, and was served on the applicable Contract Counterparties via overnight mail, first class mail, or electronic mail as reflected in the applicable affidavit of service

[Docket Nos. 301, 330, and 377]. For the avoidance of doubt, creditors who were served the Contract Assumption Notices were properly served and notified and therefore are subject to the Contract Objection Deadline and the Auction Results Objection Deadline (each as defined in the Contract Assumption Notices). The Contract Assumption Notices are reasonably calculated to provide all non-Debtor counterparties to the Assumed Contracts with proper notice of the potential assumption and assignment of their Assumed Contract and the proposed Cure Costs relating thereto.

C. The manner of service of the Contract Assumption Notices complied with the Bidding Procedures Order, was proper, timely, adequate, sufficient, and appropriate under the circumstances and no further notice need be given in respect of the assumption and assignment of the executory contracts and unexpired leases that may be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement (the "Assumed Contracts") or establishing Cure Costs (as defined herein). Contract Counterparties to the Assumed Contracts have had an adequate opportunity to object to and be heard regarding the potential assumption and assignment of the Assumed Contracts and the associated Cure Costs, if any.

**II. Disclosures.**

D. The disclosures made by the Debtor in the Motion and related documents filed with the Court concerning the Sale Transaction are sufficient under the circumstances and no other or further disclosures to any party or this Court are or shall be required.

**III. Compliance with the Bidding Procedures Order.**

E. As demonstrated by the record, the Sale Declaration in support of the Sale Transaction and the evidence proffered or adduced at the Hearing, the Debtor has complied in all material respects with the Bidding Procedures and the Bidding Procedures Order. The Debtor and

its professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtor's fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

F. The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets. The Debtor and its advisors conducted a robust marketing and sale process in accordance with the Bidding Procedures Order, as more fully detailed in the Sale Declaration. The sale process and the Bidding Procedures were duly noticed, designed and conducted in a non-collusive and good-faith manner, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Purchased Assets, or who the Debtor believed may have had an interest in acquiring the Purchased Assets, to make an offer to purchase the Purchased Assets.

G. The Purchaser is the Successful Bidder, and the Asset Purchase Agreement sets forth the terms of the Successful Bid for the Purchased Assets in accordance with the Bidding Procedures Order. The Purchaser has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Asset Purchase Agreement, and the Sale Transaction and the Asset Purchase Agreement comply with the Bidding Procedures Order and all other applicable orders of this Court.

**IV. Good Faith.**

H. The sale process, the Bidding Procedures, the Auction, and the negotiation of the Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement, were

conducted in a non-collusive and good faith manner, and were substantively and procedurally fair to all parties in interest. The Purchaser is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. Neither the Purchaser nor any of its Affiliates, officers, directors, members, partners, principals, or shareholders (or the equivalent thereof) or any of their respective representatives, attorneys, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of the Debtor, and, therefore, each such person is entitled to the full protections of section 363(m), and otherwise has proceeded in good faith in all respects in connection with this chapter 11 case in that: (i) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the applicable Purchased Assets; (ii) the Purchaser's offer was subject to a thorough and competitive marketing process; (iii) all payments to be made by the Purchaser and other agreements or arrangements entered into, or to be entered into, by the Purchaser in connection with the Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement have been disclosed; (iv) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (v) the negotiation and execution of the Asset Purchase Agreement, including the Sale Transaction contemplated thereby, were at arms'-length and in good faith. The evidence presented demonstrated that there was no insider influence or improper conduct by the Purchaser or any of its Affiliates in connection with the negotiation of the Sale Transaction with the Debtor. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction, and the Purchaser would not consummate the Sale Transaction without such protections.

**V. Highest or Otherwise Best Offer.**

I. The Asset Purchase Agreement is a fair and reasonable offer to purchase the Purchased Assets and constitutes the highest or otherwise best offer for the Purchased Assets and there was no other transaction available or presented that would have yielded as favorable a result for the Debtor's estate. The Debtor's determination, in consultation with its advisors and the Consultation Parties, that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and that no further marketing of the Purchased Assets would produce a result greater or more favorable than that presented by the Asset Purchase Agreement constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Motion and the Asset Purchase Agreement and the consummation of the Sale Transaction is in the best interests of the Debtor's chapter 11 estate, its creditors, and all parties in interest. The Debtor's decision to enter into the Asset Purchase Agreement and to consummate the transactions contemplated thereunder constitutes a proper exercise of the fiduciary duties of the Debtor and its officers and directors. The Asset Purchase Agreement provides fair and reasonable terms for the purchase of the Purchased Assets. Approval and entry of this Sale Order, approval and authorization for the Debtor to enter into the Asset Purchase Agreement, and the consummation of the transactions contemplated thereunder will maximize the value of the Purchased Assets, and in turn, the Debtor's estate, and are, accordingly, in the best interests of the Debtor, its estate, its creditors, and all other parties in interest. The Sale Transaction should be approved.

J. The Debtor has also determined, in a valid and sound exercise of its business judgment and in consultation with its advisors, that the next highest or otherwise best Qualified Bid (the "Designated Back-Up Bid") for all or substantially all of the Purchased Assets was that of Belmont Power Holdings LLC (the "Designated Back-Up Bidder").

## VI. No Collusion.

K. The Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement cannot be avoided under section 363(n) of the Bankruptcy Code. None of the Debtor, the Purchaser, or any of their respective Affiliates, officers, directors, members, partners, principals, or shareholders (or the equivalent thereof) or any of their respective representatives, attorneys, successors, or assigns have engaged in any conduct that would cause or permit the consummation of the Sale Transaction or the other transactions contemplated by the Asset Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

## VII. Purchaser Not Successor.

L. By consummating the Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement, neither the Purchaser nor any of its Affiliates are a mere continuation of the Debtor or the Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between the Purchaser, any of its Affiliates, and the Debtor. By consummating the Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement, neither the Purchaser nor any of its Affiliates shall be deemed to be holding itself out as a continuation of the Debtor based on the Sale Transaction, the Asset Purchase Agreement, any subsequent documentation entered into for purposes of consummating such transaction, or this Sale Order. The Purchaser is not a successor to the Debtor's estate by reason of any theory of law or equity, and the Sale Transaction, including the assumption and assignment of the Assumed Contracts, does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtor. Neither the Purchaser nor any of its Affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be

responsible for any obligation or liability of the Debtor (or any Affiliates thereof) or the Debtor's estate, except to the extent expressly provided in the Asset Purchase Agreement.

**VIII. Validity of Transfer.**

M. The Asset Purchase Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtor, its estate, or its Affiliates. All consideration to be provided by the Purchaser in connection with the Sale Transaction has been disclosed. None of the Debtor, the Purchaser, or their respective Affiliates, is entering into the Asset Purchase Agreement, or proposing to consummate the Sale Transaction, fraudulently, for the purpose of completing a statutory or common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.

N. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

O. The Debtor is the sole and lawful owner of the Purchased Assets. The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The transfer of each of the Purchased Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Purchased Assets, which transfer vests or will vest the Purchaser with all legal, equitable and beneficial right, title, and interest of the Debtor to the Purchased Assets and, except as otherwise specifically and expressly provided herein or in the Asset Purchase Agreement, free

and clear of all Interests, relating to, accruing or arising any time prior to the Closing Date (with such Interests attaching to the proceeds of the Sale Transaction in the order of their priority, and with the same validity, extent, force, and effect as such Interests have against the Purchased Assets prior to the Closing Date), other than (i) Permitted Liens, (ii) Liens created by the Purchaser, and (iii) Assumed Liabilities (each as defined in the Asset Purchase Agreement) (collectively, the "Permitted Exceptions"), including, for the avoidance of doubt, Cure Costs or any other obligations arising under the Assumed Contracts to the extent set forth in the Asset Purchase Agreement or this Sale Order. For the avoidance of doubt, "Permitted Exceptions" does not include any Lien released by this Sale Order or attaching to the proceeds of the Sale Transaction, including the Adequate Protection Liens and the Prepetition Liens.

P. Subject to the entry of this Sale Order, the Debtor: (a) has full requisite corporate or other organizational power and authority to execute, deliver, and perform its obligations under the Asset Purchase Agreement and all other documents contemplated thereby, and (b) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of its obligations under the Asset Purchase Agreement and to consummate the Sale Transaction, including as required by its organizational documents, and, upon execution thereof, the Asset Purchase Agreement and the related documents were or will be duly and validly executed and delivered by the Debtor and enforceable against the Debtor in accordance with their terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, constituted or will constitute a valid and binding obligation of the Debtor.

Q. No government, regulatory, or other consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, were required for the execution, delivery,

and performance by the Debtor of the Asset Purchase Agreement or the consummation of the Sale Transaction contemplated thereby. No consents or approvals of the Debtor, other than those expressly provided for in the Asset Purchase Agreement (including any approvals required under section 203 of the Federal Power Act, the HSR Act, and by the Federal Communications Commission) or this Sale Order, are required for the Debtor to consummate the Sale Transaction.

**IX. Binding Agreement.**

R. The Asset Purchase Agreement is a valid and binding contract between the Seller and the Purchaser and shall be enforceable pursuant to its terms. The Asset Purchase Agreement and the Sale Transaction contemplated therein, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and any chapter 7 or chapter 11 trustee appointed with respect to the Debtor, and shall not be subject to rejection or avoidance by the foregoing parties or any other person. The terms and provisions of the Asset Purchase Agreement, the other agreements contemplated by the Asset Purchase Agreement, and this Sale Order, as applicable, shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors (whether known or unknown), the Purchaser, and each of their respective Affiliates, successors, and assigns, and any affected third parties, including, without limitation, all persons asserting encumbrances (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties, and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors or any trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law. The

provisions of this Sale Order and the terms and provisions of the Asset Purchase Agreement and other agreements contemplated by the Asset Purchase Agreement, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtor, dismissing this chapter 11 case, or converting this chapter 11 case to a case under chapter 7. The rights and interests granted pursuant to this Sale Order, the Asset Purchase Agreement, and each other agreement contemplated by the Asset Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Bound Parties and their respective successors and assigns (as applicable), including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee, party, entity, or other fiduciary appointed for the Debtor under any provision of the Bankruptcy Code, whether the Debtor is proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the Asset Purchase Agreement, each other agreement contemplated by the Asset Purchase Agreement, and this Sale Order without the need for further order of the Court.

**X. Free and Clear Sale.**

S. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full. Upon the Closing of the Sale Transaction and subject to the terms of this Sale Order, the Debtor may sell the Purchased Assets free and clear of all liens, including Junior DIP Liens (as defined in the *Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Junior Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 371] (the "DIP Motion")), claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), liabilities (including any liability that results from, relates

to, or arises out of tort or any other product liability claim), interests, rights, and encumbrances, of any kind or nature whatsoever (other than the Permitted Exceptions), including, without limitation, hypothecations, mortgages, security deeds, deeds of trust, debts, levies, indentures, restrictions (whether on voting, sale, transfer, or disposition or otherwise), leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts other title retention agreements and similar impositions, options, judgments, offsets, rights of recovery, rights of preemption, rights of setoff, profit sharing interest, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims, environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan or ERISA (including any pension or retirement plan), WARN Act claims or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state, provincial and local taxes, including, but not limited to, sales, income, use or any other type of tax), escheatment claims, reclamation claims, obligations (including Junior DIP Obligations (as defined in the DIP Motion)), liabilities, demands, and guaranties, and other encumbrances relating to, accruing, or arising any time prior to the Closing Date, duties, responsibilities, obligations, demands, commitments, assessments, costs, expense, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances, guaranties, pledges, consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, security interests, charges,

options (including in favor of third parties), rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, rights of first refusal, rights and restrictions of any kind or nature whatsoever against the Debtor or the Purchased Assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for taxes of or against the Debtor, and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or theories of liability related to acting in concert or active participation with the Debtor or related theories (each of the foregoing being as of the Closing Date and all of the foregoing collectively being referred to in this Sale Order as "Interests") in the Purchased Assets, unless otherwise set forth in this Sale Order.

T. Subject to the terms of this Sale Order, upon the Closing of the Sale Transaction, the Debtor may sell the Purchased Assets free and clear of all Interests (other than the Permitted Exceptions) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5)

of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object or who withdrew their objections to the Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2) with such Interests attaching to the proceeds of the Sale Transaction as set forth in this Sale Order. Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f), including that such holders of Interests are adequately protected by having their Interests in the Purchased Assets, if any, attach to the proceeds of the Sale Transaction of the applicable Purchased Assets, with the same validity, force, and effect that such Interests had prior to the Sale Transaction, subject to any claims and defenses the Debtor and its estate may possess with respect thereto. If the Sale Transaction were not free and clear of all Interests, or if the Purchaser would, or in the future could, be liable for any of such Interests (other than the Permitted Exceptions), the Purchaser would not have entered into and consummated the Sale Transaction, thus adversely affecting the Debtor and its estate and creditors. In addition, the sale of the Purchased Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Exceptions) would be of substantially less benefit to the Debtor's estate. The total consideration to be provided under the Sale Transaction reflects the Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, subject to the terms of this Sale Order, with title to and possession of the applicable Purchased Assets free and clear of all Interests (other than the Permitted Exceptions).

**XI. Cure Costs and Adequate Assurance of Future Performance.**

U. The assumption and assignment of the Assumed Contracts listed in the Asset Purchase Agreement and set forth on **Exhibit 2** attached hereto pursuant to the terms of this Sale Order is integral to the Sale Transaction, does not constitute unfair discrimination, and is in the best interests of the Debtor and its estate, its creditors, and all other parties in interest, and

represents the reasonable exercise of sound and prudent business judgment by the Debtor. Subject to the terms and conditions of the Asset Purchase Agreement and this Sale Order, the Purchaser shall: (a) to the extent necessary and in accordance with its obligations under the Asset Purchase Agreement, cure or provide adequate assurance of cure, of any default existing prior to the date of such assumption and assignment with respect to the Assumed Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of assumption and assignment with respect to the Assumed Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code. The obligation of the Purchaser to pay Cure Costs in accordance with the terms of the Asset Purchase Agreement and to perform the obligations under the Assumed Contracts shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The Debtor has demonstrated that assuming and assigning the Assumed Contracts in connection with the Sale Transaction is an exercise of its sound business judgment, and that such assumption and assignment is in the best interests of the Debtor's estate, for the reasons set forth in the Motion and the Sale Declaration and on the record at the Hearing, including, without limitation, because the assumption and assignment of the Assumed Contracts in connection with the Sale Transaction will maintain the ongoing business of the Debtor, limit the losses of counterparties to Assumed Contracts, and maximize the distribution to creditors of the Debtor. Any parties to Assumed Contracts that did not object to the assumption, assignment or transfer of their applicable Assumed Contract, or to their applicable Cure Cost, or whose objections were withdrawn or otherwise resolved, are deemed to have

consented thereto for all purposes to the assumption, assignment, and transfer of such Assumed Contract pursuant to this Sale Order.

**XII. Compelling Circumstances for an Immediate Sale.**

V. Good and sufficient reasons for approval of the Asset Purchase Agreement and the Sale Transaction have been articulated. The relief requested in the Motion and provided for herein is in the best interests of the Debtor, its estate, its creditors and other parties in interest. The Debtor has demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Asset Purchase Agreement, and (b) compelling circumstances for the Sale Transaction outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtor's estate and the Sale Transaction will provide the means for the Debtor to maximize distributions to creditors.

**XIII. Sale Transaction Not a Sub Rosa Plan.**

W. The sale and assignment of the Purchased Assets outside of a chapter 11 plan pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan for the Debtor. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I. General Provisions.**

1. The relief requested in the Motion is granted and approved, and the Sale Transaction contemplated thereby is authorized and approved as set forth in this Sale Order.

2. All objections to the Motion or the relief requested therein that have not been withdrawn or otherwise resolved are overruled on the merits and denied with prejudice; *provided* that objections to assumption or assignment that are unresolved as of the date of this Sale Order shall be considered at a later date in connection with any proposed assumption or assignment of such applicable Assumed Contract. All persons and entities with actual or constructive notice of the relief sought in the Motion and set forth in this Sale Order that failed to timely object thereto are deemed to consent to such relief, including for purposes of section 363(f)(2) of the Bankruptcy Code. All Auction Results Objections, including objections to the Purchaser's adequate assurance of future performance, were heard at the Hearing (as needed) and are overruled. Any party that failed to timely object by the Sale Objection Deadline, the Contract Objection Deadline, or the Auction Results Objection Deadline, as applicable, is forever barred from asserting such objection.

3. Notice of the Motion, the Auction, the Hearing, the Sale Transaction, and the Debtor's marketing and sale process for the Purchased Assets was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4. The Designated Back-Up Bidder is hereby approved as the Back-Up Bidder, and the Designated Back-Up Bid is hereby approved and authorized as the Back-Up Bid. If the Debtor seeks consummation of a Sale Transaction pursuant to the Back-Up Bid, the terms and conditions of the Back-Up Bid will be fully determined and approved at a later date pursuant to a separate sale order reasonably acceptable in form and substance to the Back-Up Bidder, and consistent with the terms of the Back-Up Bid, Bidding Procedures Order, and Bidding Procedures.

5. The Court's findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference.

## II. Approval of the Asset Purchase Agreement.

6. The Asset Purchase Agreement and all other ancillary documents, including, without limitation, each other document contemplated by the Asset Purchase Agreement or necessary or appropriate to complete the transactions provided for in the Asset Purchase Agreement, and all of the terms and conditions thereof, and the Sale Transaction and related transactions contemplated therewith, are hereby approved in all respects, pursuant to section 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006. The failure specifically to include any particular terms of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Transaction be authorized and approved in its entirety as set forth in this Sale Order.

7. Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, and subject to the terms of this Sale Order, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the sale of the Purchased Assets to the Purchaser pursuant to and substantially in accordance with the terms and conditions of the Asset Purchase Agreement, (b) transfer and assign all right, title, and interest to all assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Asset Purchase Agreement, (c) enter into all other agreements contemplated by the Asset Purchase Agreement and consummate all other transactions contemplated by the Asset Purchase Agreement, (d) close the Sale Transaction as contemplated in the Asset Purchase Agreement and this Sale Order, and (e) execute and deliver, perform under, consummate, and implement the Asset Purchase Agreement, together with all additional instruments and ancillary documents that may be reasonably necessary or desirable to implement the sale, or as may be reasonably necessary or appropriate to the

performance of the obligations as contemplated by the Asset Purchase Agreement, and such other documentation.

8. Subject to the terms of this Sale Order, the Debtor and the Purchaser are hereby authorized to take any and all actions as may be necessary and desirable to implement the Sale Transaction contemplated in the Asset Purchase Agreement, and any actions taken by the Debtor or the Purchaser necessary and desirable to implement such Sale Transaction prior to the date of this Sale Order, are hereby approved and ratified.

9. The terms and provisions of the Asset Purchase Agreement and this Sale Order, as applicable, shall be binding in all respects upon the Debtor, its estate, all creditors, all holders of equity interests in the Debtor, all holders of any claims against the Debtor, any holders of claims against or on some or all of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtor, the Purchaser, any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in this chapter 11 case or upon a conversion to chapter 7 of the Bankruptcy Code of the Debtor's case, and any filing agents, filing officers, title agents, recording agencies, secretaries of state, and other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. The terms and provisions of the Asset Purchase Agreement, each other agreement contemplated by the Asset Purchase Agreement, and this Sale Order shall inure to the benefit of the Debtor, its estate and its creditors, the Purchaser and its Affiliates, and any other affected third parties, including all persons asserting any claims in the Purchased Assets to be sold pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any

chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding. This Sale Order shall survive any dismissal or conversion of this chapter 11 case or any dismissal of any subsequent chapter 7 case.

10. The sale of the Purchased Assets to the Purchaser under the Asset Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration, negotiated at arm's length, under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Purchased Assets are located, and the sale of the Purchased Assets to the Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories, whether under the Bankruptcy Code or the laws of the United States, any state, territory, possession thereof, or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

11. To the maximum extent permitted under applicable law, as applicable to the Asset Purchase Agreement, the Purchaser or its Affiliates, to the extent provided by the Asset Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor constituting Purchased Assets, subject to compliance with applicable non-bankruptcy law governing the transfer or assignment of such licenses, permits, registrations, governmental authorizations, or approvals, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the Purchaser or its Affiliates as of the Closing Date and to the extent provided by the Asset Purchase Agreement, in each case to the extent transferable under applicable non-bankruptcy law and subject to any required governmental notice, consent, approval, or other applicable transfer requirements. To the extent provided by section 525 of the Bankruptcy Code, no Governmental Body may revoke or suspend

any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Purchaser or its Affiliates on account of the filing or pendency of this chapter 11 case or the consummation of the Sale Transaction. Each and every federal, state, provincial, foreign and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction, subject to compliance with applicable non-bankruptcy law. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, provincial, foreign or local government agency, department, or office. For the avoidance of doubt, nothing in this paragraph shall be construed to dispense with any notice, consent, approval, filing, or other requirement applicable to the transfer or assignment of any license, permit, registration, governmental authorization or approval under applicable non-bankruptcy law, to constitute any governmental consent or approval otherwise required by such law, or to limit the police and regulatory authority of any Governmental Body with respect to the Purchaser or the Purchased Assets following the Closing Date.

12. Effective upon the Closing Date and except to the extent expressly included in the Permitted Exceptions or as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade or other creditors holding Interests against the Debtor or the Purchased Assets, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement,

understanding, law, equity, or otherwise, arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, or the transfer of the Purchased Assets, hereby are forever barred and estopped from asserting any Interests relating to the Debtor, Purchased Assets, or the transfer of the Purchased Assets, against the Purchaser and its Affiliates or their respective assets or property, or the Purchased Assets transferred to the Purchaser (it being understood that such Interests shall attach solely to the proceeds of the Sale Transaction at the Closing in the order of priority of such Interests, with the same validity, force, and effect which such Interests had prior to the Closing), including, without limitation, taking any of the following actions with respect to any Interest relating to the Debtor, the Purchased Assets, or the transfer of the Purchased Assets (other than to the extent expressly set forth in the Asset Purchase Agreement or this Sale Order): (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates or their respective assets or properties (including the Purchased Assets); (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates, or their respective assets or properties (including the Purchased Assets); (c) creating, perfecting, or enforcing any Interest against the Purchaser or its Affiliates or their respective assets or properties (including the Purchased Assets); (d) asserting an Interest as a setoff or right of subrogation of any kind against any obligation due the Purchaser or its Affiliates; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; (f) to the extent provided in Section 525 of the Bankruptcy Code, revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Purchased Assets or conduct any of the businesses operated with respect to such assets; or (g) interfering with, preventing, restricting, prohibiting, or otherwise

enjoining the consummation of the Sale Transaction as approved by this Sale Order. Following, and after giving effect to, the Closing, no such persons or entities shall assert or pursue against the Purchaser or its Affiliates or the Purchased Assets any such Interest relating to the Debtor, the Purchased Assets, or the transfer of the Purchased Assets directly or indirectly, in any manner whatsoever, except to the extent expressly included in Permitted Exceptions or as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order. For the avoidance of doubt, notwithstanding the foregoing or anything to the contrary in this Sale Order, nothing in this Sale Order shall release, waive, enjoin, or preclude any Interest in or against the Debtor or any affiliate (as defined in the Bankruptcy Code) of the Debtor.

**III. Transfer of the Purchased Assets**

13. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, upon the Closing of the Sale Transaction contemplated under the Asset Purchase Agreement, the Debtor is authorized to transfer the Purchased Assets, including but not limited to the Assumed Contracts, to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Sale Order and such transfer of the Purchased Assets shall constitute a legal, valid, binding, and effective transfer and shall vest the Purchaser with title to the Purchased Assets and, upon the Closing of the Sale Transaction contemplated under the Asset Purchase Agreement, shall be free and clear of all Interests (other than the Permitted Exceptions), with all such Interests to attach to the proceeds of the Sale Transaction of the applicable Purchased Assets in the order of priority of such Interests, with the same validity, force, and effect which such Interests had prior to the Sale Transaction, subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess with respect thereto (other than such rights, claims, and defenses against the Prepetition Secured Parties

(as defined herein), which shall be subject to the Cash Collateral Order).[5] All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser or its designee on the Closing Date or at such time thereafter as the Purchaser may request.

14. Those holders of Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented to the Sale Transaction being free and clear of their claims pursuant to section 363(f)(2) of the Bankruptcy Code with such Interests attaching to the proceeds of the Sale Transaction as set forth in this Sale Order. Those holders of Interests who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Interests in the Purchased Assets, if any, attach to the proceeds of the Sale Transaction in the same order of priority and with the same validity, force, and effect that such Interests had immediately prior to the Closing, subject to all parties' rights to object and/or challenge such Interests.

15. Nothing in this Sale Order or any of the Sale Documents (as defined herein) shall, and entry of this Sale Order or the consummation of the Sale Transaction shall not, waive, release, extinguish, discharge, subordinate, cancel, or otherwise affect the Prepetition Secured Parties' Adequate Protection Liens, Prepetition Liens, Superpriority Claims (in each case, as such terms are defined in the Cash Collateral Order), (collectively, the "Lender Liens & Claims") or other

---

5 "Cash Collateral Order" means the *Second Interim Order (I) Authorizing Postpetition Use of Prepetition Collateral, including Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 298] (the "Second Interim Cash Collateral Order"), together with any subsequent interim or final order authorizing the Debtor's use of cash collateral, in form and substance acceptable to the Prepetition Secured Parties (as defined in the Second Interim Cash Collateral Order).

Interests, or the Junior DIP Liens or the Junior DIP Obligations (collectively, the "Junior DIP Lender Liens & Claims"), in each case, (a) against, on, or in any Collateral, including Cash Collateral (each as defined in the Cash Collateral Order), that is not a Purchased Asset, or (b) against, on or in any of the proceeds of the Sale Transaction, which Prepetition Secured Parties' Lender Liens & Claims and Interests and the Junior DIP Lender Liens & Claims shall continue in full force and effect notwithstanding the consummation of the Sale Transaction.

16. Without limiting paragraph 12 hereof, effective upon the Closing of the Sale Transaction contemplated in the Asset Purchase Agreement, and except to the extent included in Assumed Liabilities or as otherwise provided in the Asset Purchase Agreement or this Sale Order, all persons and entities who may or do hold Interests in the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets owned by the Debtor, the operation or ownership of the Purchased Assets by the Debtor prior to the Closing Date, or the transfer of such Purchased Assets to the Purchaser hereby are forever barred, estopped, and permanently enjoined from asserting or pursuing such Interests against (a) the Purchaser, its Affiliates, successors, assigns, or its property, in each case, relating to the Purchased Assets, or (b) the Purchased Assets.

17. Except as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order, after the Closing of the sale, the Debtor shall have no further liability with respect to the Purchased Assets first arising from and after the Closing, and subject to the terms of this Sale Order, any claims, whether administrative or otherwise, relating to or first arising from such Purchased Assets after the Closing of the sale asserted against the Debtor shall be deemed disallowed. For the avoidance of doubt, notwithstanding anything to the contrary contained in this

Sale Order, the Purchaser is assuming only the Assumed Liabilities as set forth in the Asset Purchase Agreement and shall not be responsible for any other liabilities.

18. Effective upon the Closing of the Sale Transaction contemplated in the Asset Purchase Agreement, and subject to the terms of this Sale Order, if any person or entity that has filed financing statements, mortgages, mechanic's claims, *lis pendens*, or other documents or agreements evidencing claims against the Purchased Assets has not delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all Interests that the person or entity has with respect to the Purchased Assets, then only with respect to the Purchased Assets that are purchased by the Purchaser (or its designee) pursuant to the Asset Purchase Agreement and this Sale Order: (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets; (b) the Purchaser (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the Purchased Assets (except with respect to Permitted Exceptions) as of the Closing Date; and (c) upon consummation of the Sale Transaction, the Purchaser (or its designee) may seek, as necessary, in this Court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Interests that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Purchased Assets. Notwithstanding the foregoing, the provisions of this Sale Order shall be self-executing and neither the Debtor nor the Purchaser (or its designee) shall be required

to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

19. Effective upon the Closing Date, the Debtor is authorized to execute and deliver a deed conveying the Owned Real Property that constitutes a Purchased Asset (the "Purchased Real Property") to the Purchaser or its permitted designee. The Purchaser or its designee may record such deed, a certified copy of this Sale Order, and any other instrument reasonably necessary to evidence or implement the transfer of the Purchased Real Property in the real property records of Pleasants County, West Virginia. Subject to the terms of this Sale Order, including the attachment of Interests to the proceeds of the Sale Transaction as set forth in this Sale Order, recording the certified Sale Order shall constitute conclusive evidence that the sale of the Purchased Real Property shall be free and clear of the ownership interests of the Debtor, and its predecessors and successors in interest; any unrecorded equitable or legal interests in the Purchased Real Property asserted by any person or entity, or their respective predecessors and successors in interest; and the claims or interests asserted by any person or entity, or their respective predecessors and successors in interest, against the Purchased Real Property.

20. This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

21. Subject to the terms and provisions of the Asset Purchase Agreement, the Purchaser is hereby authorized in connection with the consummation of the Sale Transaction to transfer or direct the transfer of any or all of the Purchased Assets (or any rights to acquire the Purchased Assets) to its nominees, and/or direct and indirect subsidiaries, in a manner as it, in its sole and absolute discretion, deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets to its direct and indirect subsidiaries with all of the rights and protections accorded under this Sale Order and the Asset Purchase Agreement, and the Debtor shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

22. Immediately upon the Closing of the Sale Transaction, the Debtor shall utilize the cash proceeds from the Sale Transaction to fund a reserve into a segregated account (the "Segregated Account") in an amount sufficient to pay in full all outstanding obligations owed and/or estimated to be owed or accruing to the Prepetition Secured Parties under the Prepetition Credit Documents (as defined in the Cash Collateral Order) and the Cash Collateral Order, which amount shall be provided by the Prepetition Secured Parties to the Debtor prior to the Closing. Neither funding the Segregated Account nor entry of the Sale Order adjudicates the validity, extent, or priority of Industrial Accessories Company's ("IAC") asserted lien or any competing Interest. The Debtor shall not remove such proceeds from the Segregated Account absent further order of the Court or the consent of the Prepetition Secured Parties; *provided* that prior to removing such proceeds from the Segregated Account without a further order of the Court but with the consent of the Prepetition Secured Parties, the Debtor shall provide IAC at least five

(5) business days' prior written notice thereof; *provided*, *further*, that, for so long as the West Virginia Economic Development Authority ("WVEDA")'s Challenge Period (as defined in the Cash Collateral Order) has not expired or terminated, prior to removing such proceeds from the Segregated Account without a further order of the Court but with the consent of the Prepetition Secured Parties, the Debtor shall provide WVEDA at least five (5) business days' prior written notice thereof (the "WVEDA Notice Period"). During the WVEDA Notice Period, WVEDA may raise an informal objection to the removal of proceeds from the Segregated Account (email being sufficient) to the Debtor and Prepetition Secured Parties, and, if the parties cannot resolve such informal objection, the parties shall bring such objection to the Court to be heard and adjudicated. For the avoidance of doubt, nothing herein shall expand any rights WVEDA may have under paragraph 4(b) of the Cash Collateral Order.

23. Subject to the terms of the Cash Collateral Order, all parties in interest reserve any right they may have to object to, or otherwise contest, the appropriate allocation of the proceeds of the Sale Transaction.

**IV. No Successor or Transfer Liability**

24. Upon the Closing Date, except as provided in the Asset Purchase Agreement (including with respect to the Assumed Liabilities) and this Sale Order, the entry of this Sale Order and the Asset Purchase Agreement shall mean that the Purchaser (and any of its Affiliates, successors, or assigns), as the result of any action taken in connection with the Asset Purchase Agreement, the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or the transfer or operation of the Purchased Assets, shall not be, nor be deemed to: (a) be a legal successor or successor employer to the Debtor, or otherwise be deemed

a successor to the Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise(s) of the Debtor, or otherwise be deemed to be acting in concert or active participation with the Debtor, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the WARN Act (29 U.S.C. §§ 2101 *et seq*.) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA; *provided* that nothing herein shall release the Purchaser from any Assumed Liability or from its obligations as owner or operator of the Purchased Assets from and after the Closing Date, (ii) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), (iii) any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine, or (iv) any consumer protection law or doctrine with

respect to the Debtor's liability under such law, rule or regulation or doctrine, including, without limitation, any liabilities, penalties, costs, debts, or obligations imposed by the Federal Trade Commission and/or Bureau of Consumer Protection, of or required to be paid by the Debtor.

25. Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement and this Sale Order, neither the Purchaser nor any of its Affiliates, successors or assigns shall have any responsibility for (a) any liability or other obligation of the Debtor related to the Purchased Assets or (b) any claims against the Debtor or any of its predecessors or Affiliates. By virtue of the Purchaser's purchase of the Purchased Assets, neither the Purchaser nor any of its Affiliates shall have any liability whatsoever with respect to the Debtor's (or its predecessors' or Affiliates') businesses or operations or the Debtor's (or its predecessors' or Affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or any theory based on acting in concert or active participation with the Debtor, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, de facto merger or substantial continuity, labor and employment (including, but not limited to, WARN or COBRA), consumer protection law, or products liability law, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date or such later time as Purchaser is assigned and assumes any Assumed Contract (collectively, with the potential claims set forth in paragraph 24 above, "Successor or

Transferee Liability”). The Purchaser would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability.

26. Effective from and after the Closing, in accordance with section 13.22 of the Asset Purchase Agreement, none of the Buyer Released Parties shall have or incur any liability to, or be subject to any action by the Debtor or its estate, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Asset Purchase Agreement and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the Asset Purchase Agreement and this Sale Order.

27. Except as set forth in the Asset Purchase Agreement and this Sale Order, nothing shall require the Purchaser or any of its Affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, fringe benefit or any trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

28. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions that are approved by this Sale Order, including, without limitation, the Asset Purchase Agreement and the Sale Transaction.

## V. Assumption and Assignment of Assumed Contracts

29. The service of the Contract Assumption Notices complied with the Bidding Procedures Order, was due, proper, timely, adequate, sufficient, and appropriate under the

circumstances and no further notice need be given in respect of the assumption and assignment of the Assumed Contracts or establishing Cure Costs. Contract Counterparties to the Assumed Contracts have had an adequate opportunity to object to and be heard regarding the potential assumption and assignment of the Assumed Contracts and the associated Cure Costs, if any.

30. The Debtor is hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, in accordance with the terms of the Asset Purchase Agreement and this Sale Order, the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever (other than as otherwise specifically and expressly provided herein), and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

31. The Cure Costs listed on **Exhibit 2** to this Sale Order are the sole amounts necessary to be paid upon the assumption of the Assumed Contracts under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A). All Cure Costs, if any, shall be paid as set forth in the Asset Purchase Agreement. Upon the payment of the Cure Costs, if any, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. After the payment of the Cure Costs, none of the Debtor or the Purchaser shall have any further liabilities to the counterparties to the Assumed Contracts other than the Purchaser's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

32. **Exhibit 2** to this Sale Order may be modified following entry of this Sale Order in accordance with paragraph 16 of the Bidding Procedures Order and the Asset Purchase Agreement.

The Purchaser may remove any contract or lease from **Exhibit 2** to this Sale Order no later than five (5) Business Days prior to the Closing in accordance with section 2.5(b) of the Asset Purchase Agreement, and any contract or lease so removed shall not be an Assumed Contract. No contract or lease that was not listed on the Contract Assumption Notices shall be assumed and assigned pursuant to this Sale Order unless the Debtor has filed and served a Supplemental Assumption Notice in accordance with paragraph 16(c) of the Bidding Procedures Order and the applicable Contract Objection Deadline has passed without a timely objection, or any timely objection has been resolved by agreement or order of the Court. Following the Closing, the Debtor shall file a notice identifying the final list of Assumed Contracts assumed and assigned to the Purchaser pursuant to this Sale Order, which notice shall be supplemented as any contract whose dispute remains pending as of the Closing is resolved.

33. To the extent any non-Debtor counterparty to an Assumed Contract has failed to timely object to a proposed Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as the Cure Cost listed on **Exhibit 2** to this Sale Order and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time. The non-Debtor counterparty to an Assumed Contract is forever bound by the applicable Cure Cost and, upon payment of the Cure Cost as provided herein and in the Asset Purchase Agreement, is hereby barred from taking any action against the Purchaser with respect to any claim for cure under the Assumed Contract.

34. With respect to the Assumed Contracts and except as otherwise specifically and expressly provided herein: (a) the Debtor may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtor may assign each of the Assumed Contracts to the Purchaser in accordance with sections 363 and 365 of the Bankruptcy

Code, and any provisions in any of the Assumed Contracts that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition, renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect solely in connection with the Sale Transaction contemplated pursuant to this Sale Order and the Asset Purchase Agreement and the assumption and assignment of the Assumed Contracts in connection therewith; (c) subject to the Purchaser's payment of Cure Costs, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of each Assumed Contract have been satisfied; (d) the Assumed Contracts shall be transferred and assigned to, and following the date of such transfer and assignment remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer; and (e) from and after the effective date of any assumption and assignment, the Debtor shall be relieved from any further liability with respect to the Assumed Contracts after such assumption and assignment to the Purchaser pursuant to section 365(k) of the Bankruptcy Code.

35. Upon the effective date of the assignment of any Assumed Contract to the Purchaser, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all rights, title, and interest of such Assumed Contract.

36. Except as otherwise specifically and expressly provided in this Sale Order, in accordance with section 2.5 of the Asset Purchase Agreement, all Cure Costs, shall be paid and otherwise cured by the Purchaser.

37. Upon the Debtor's assignment of the Assumed Contracts to the Purchaser under the provisions of this Sale Order or any additional orders of this Court, and the payment of any Cure Costs by the Purchaser pursuant to the terms hereof and the Asset Purchase Agreement, no default shall exist under any Assumed Contract and no counterparty to any Assumed Contract shall be permitted to declare a default under such Assumed Contract or to otherwise take action against the Debtor or the Purchaser or their respective assets as a result of the Debtor's financial condition, bankruptcy, or failure to perform any obligation under the relevant Assumed Contract. Each non-Debtor party to an Assumed Contract hereby is (a) deemed to have consented to the Debtor's assumption and assignment of the Assumed Contract as provided for herein and in the Asset Purchase Agreement and (b) forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor, the Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, or, against the Purchaser, any counterclaim, defense, recoupment, setoff, or any other claim asserted or assertable against the Debtor, except as otherwise specifically and expressly provided in this Sale Order, and (ii) imposing or charging against the Purchaser or its respective Affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtor's assumption and assignment to the Purchaser of the Assumed Contracts. Any provision in any Assumed Contract that purports to declare a breach, default, or termination as a result of a change of control of the Purchased Assets is hereby deemed unenforceable solely in connection with the Sale Transaction contemplated pursuant to this Sale Order and the Asset Purchase Agreement and the assumption and assignment of the Assumed Contracts in connection therewith under section 365(f) of the Bankruptcy Code.

38. The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

39. On the effective date of the assignment of any Assumed Contracts to the Purchaser, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts effective as of the date of such assignment.

40. All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser (and shall not charge the Debtor or the Purchaser), any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the sale of the Purchased Assets.

41. All timely filed objections to this Sale Order related *solely* to the assumption or assumption and assignment of an Assumed Contract, related Cure Costs, or adequate assurance in connection with an Assumed Contract which have not been resolved between the Debtor, the Purchaser, and the applicable contract counterparty prior to the entry of this Sale Order shall be continued to a future hearing which shall be noticed by the Debtor. Such disputes related *solely* to the assumption or assumption and assignment of an Assumed Contract, related Cure Costs, or adequate assurance shall be adjudicated by the Court if the Debtor, the Purchaser, and the applicable contract counterparty are unable to come to a resolution.

42. In the event of a dispute as of the Closing Date regarding the assumption and assignment or Cure Cost of any proposed Assumed Contract, the assumption and assignment of

such Assumed Contract, and payment of any applicable Cure Cost, shall be made in accordance with this Sale Order and section 2.5(d) of the Asset Purchase Agreement.

43. The assignment of each of the Assumed Contracts to the Purchaser are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

**VI. Other Provisions.**

44. Notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, no contract between the Debtor and Oracle America, Inc., successor in interest to NetSuite, Inc. ("Oracle"), shall be transferred without Oracle's written consent or further order of the Court. In addition, no provision of this Sale Order or the Asset Purchase Agreement shall authorize (a) the transfer of any Oracle license agreement to any third party; or (b) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent. Arguments, including related to assumption, assignment and/or cure of any Oracle agreements are adjourned to a later date and all parties' rights regarding these issues are preserved.

45. Notwithstanding any provision to the contrary in this Sale Order, the Asset Purchase Agreement, or any other document related to the sale (together with the Asset Purchase Agreement, the "Sale Documents"), nothing shall (a) release, nullify, preclude or enjoin the enforcement of any police or regulatory power of the United States or any liability of the United States that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Sale Order; (b) be construed to limit the authority of the Federal Energy Regulatory Commission ("FERC") to investigate conduct, require the production of documents, testimony and information, determine compliance with the

Federal Power Act, FERC regulations, tariffs, market rules, or Commission orders, or otherwise exercise any authority granted by law; (c) affect the setoff or recoupment rights of the United States; (d) confer exclusive jurisdiction to the Court as to the United States except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (e) authorize the assumption, assignment, sale or other transfer of any federal (i) grants, (ii) grant funds, (iii) property acquired or improved through grant funds, (iv) contracts, (v) agreements, (vi) awards, (vii) task orders, (viii) property, (ix) intellectual property, (x) patents, (xi) leases, (xii) certifications, (xiii) applications, (xiv) registrations, (xv) billing numbers, (xvi) national provider identifiers, (xvii) provider transaction access numbers, (xviii) licenses, (xix) permits, (xx) covenants, (xxi) inventory, (xxii) guarantees, (xxiii) indemnifications, (xxiv) data, (xxv) records, or (xxvi) any other interests belonging to the United States (collectively, "Federal Interests") without compliance by the Debtor and Purchaser with all terms of the Federal Interests and with all applicable bankruptcy and non-bankruptcy law; (f) be interpreted to set cure amounts as to the United States or to require the United States to novate, approve, or otherwise consent to the sale, assumption, assignment, or other transfer of any Federal Interests; (g) waive, alter, or otherwise limit the United States' property rights; or (h) expand the scope of section 525 of the Bankruptcy Code. Nothing herein shall subject the Purchaser to any liability of the Debtor to a Governmental Body related to the Debtor's pre-Closing operations that is not an Assumed Liability.

46. Following the Closing Date, no holder of an Interest in or against the Debtor or the Purchased Assets, nor any other person or entity, shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interest or any actions that the

Debtor or its successors, including any chapter 11 or chapter 7 trustee, has taken or may take in this chapter 11 case or any successor chapter 7 case.

47. After the Closing Date: (a) other than Cure Costs, which shall be handled in accordance with the terms of this Sale Order and the Asset Purchase Agreement, neither the Debtor nor any successor in interest, including any chapter 11 or chapter 7 trustee in this chapter 11 case or any successor chapter 7 case, shall consent or agree to the allowance of any claim to the extent it would constitute a Permitted Exception without the prior written consent of the Purchaser (not to be unreasonably withheld, conditioned, or delayed); and (b) the Purchaser shall have standing to object to any claim against the Debtor and its estate to the extent that, if allowed, it would constitute a Permitted Exception, and the Court will retain jurisdiction to hear and determine any such objections.

48. Nothing in the Sale Documents shall be interpreted to release or exculpate the Purchaser from submitting any applications to FERC that may be required under Section 203 or 204 of the Federal Power Act and Part 33 of the regulations of FERC.

49. Nothing in this Sale Order or the Sale Documents shall release any entities or individuals who received document preservation notices from FERC from the obligation to preserve documents and data or authorize the destruction, alteration, transfer beyond reach, concealment, or withholding of any books, records, communications, electronically stored information, market submissions, bids, offers, operational records, accounting records, or other information that may be relevant to any investigation, inquiry, audit, examination, enforcement action, or proceeding by FERC or any other federal governmental unit. Any purchaser or successor custodian that obtains possession or control of records relevant to any federal governmental investigation shall maintain such records and make them available as required by applicable law.

50. Nothing in this Sale Order or the Sale Documents shall release, exculpate, impair, enjoin, discharge, or otherwise affect any claim, cause of action, investigation, or proceeding of FERC: (a) against any current or former officer, director, employee, agent, contractor, consultant, representative, or other person arising from or related to pre-Closing conduct; or (b) involving any non-debtor entity, Affiliate, parent, subsidiary, contractor, consultant, representative, asset manager, energy manager, market participant, or other third party arising from or related to pre-Closing conduct.

51. In addition, nothing in the Sale Documents shall nullify the United States' right to assert against the Debtor or its estate any liability with respect to obligations concerning Federal Interests that are nondischargeable under applicable law, or any defense of the Debtor or its estate with respect thereto.

52. Except as provided in footnote 3 of this Sale Order, in the event of an inconsistency or conflict between any provision of the Sale Documents and any provision of this Sale Order, the provisions of this Sale Order shall govern.

53. The Sale Transaction and any other transactions contemplated by the Asset Purchase Agreement and the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate any transaction shall not affect the validity of such transaction (including, for the avoidance of doubt, the sale of the Purchased Assets free and clear of all Interests as set forth in and subject to the terms of this Sale Order (unless such Interest constitutes a Permitted Lien (as that term is defined in the Asset Purchase Agreement))), unless such authorization and consummation of such transaction was stayed pending such appeal. The Purchaser is a good-faith

purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Purchaser has not colluded with any potential purchaser or any other parties interested in the Purchased Assets, and therefore the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

54. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without further order of this Court, to (i) allow the Purchaser to deliver any notice provided for in the Asset Purchase Agreement and any ancillary documents and (ii) allow the Purchaser to take any and all actions permitted under this Sale Order, the Asset Purchase Agreement, the other agreements contemplated by the Asset Purchase Agreement, and any other ancillary documents in accordance with the terms and conditions thereof.

55. The Debtor, including its officers, employees, and agents, is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Asset Purchase Agreement and this Sale Order. The Debtor shall be, and it hereby is, authorized to take all such actions as may be necessary to effectuate the terms of the Asset Purchase Agreement and this Sale Order and the relief granted pursuant to this Sale Order.

56. From time to time, as and when requested by any party, each party to the Sale Transaction and other agreements contemplated by the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction and other transactions contemplated by the Asset Purchase Agreement, including such actions as may be necessary to

vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and interest in and to the Purchased Assets.

57. The parties to the Sale Transaction and the other agreements contemplated by the Asset Purchase Agreement may make any non-material modifications, amendments, or supplements to such agreement and to any related agreements, documents, or other instruments in accordance with the terms thereof, subject to the Consultation Parties' rights (including consent rights) thereunder and the Bidding Procedures Order without further order of this Court.

58. Notwithstanding anything to the contrary in this Sale Order, the Asset Purchase Agreement, or any other Sale Document, nothing herein or therein shall: (a) waive, release, extinguish, discharge, subordinate, cancel or otherwise affect any claims, liens (including the Lender Liens & Claims and Interests on the proceeds of the Sale Transaction), adequate protection or superpriority claims, deficiency claims, Interests, or other rights or remedies of the Prepetition Secured Parties, whether under any of the Prepetition Credit Documents, the Cash Collateral Order, applicable law, or otherwise, or the Junior DIP Lender Liens & Claims; *provided* that upon the Closing of the Sale Transaction, the Lender Liens & Claims and other Interests of the Prepetition Secured Parties and the Junior DIP Lender Liens & Claims shall automatically attach to the proceeds of the Sale Transaction in the order of their priority, and with the same validity, force, and effect that they now have as against the Purchased Assets such that the Purchased Assets are transferred to the Purchaser free and clear of the Lender Liens & Claims and other Interests of the Prepetition Secured Parties and the Junior DIP Lender Liens & Claims against the Purchased Assets pursuant to the terms of this Sale Order; and/or (b) amend, abridge, terminate or otherwise modify any of the Prepetition Credit Documents, the Cash Collateral Order, any of the stipulations, admissions, releases, or other terms of the Prepetition Credit Documents or the Cash Collateral

Order and/or any of the DIP Documents (as defined in the DIP Motion). Nothing in this Sale Order or the Sale Documents shall affect the Prepetition Secured Parties' Lender Liens & Claims or other Interests on, against, or relating to, the Purchased Assets prior to Closing.

59. The Court shall retain jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement entered into for purposes of consummating the Sale Transaction, the other transactions contemplated by the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale of the Purchased Assets.

**Dated: November 18th, 2026**
**Wilmington, Delaware**

**KAREN B. OWENS**
**CHIEF JUDGE**